**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; HOUSING RESEARCH & ADVOCACY CENTER; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK; DEUTSCHE BANK AG; DEUTSCHE BANK NATIONAL TRUST; DEUTSCHE BANK TRUST COMPANY AMERICAS; OCWEN FINANCIAL CORP.; and ALTISOURCE PORTFOLIO SOLUTIONS, INC., <br><br> Defendants. | Case No. 1:18-cv-00839 <br><br> Judge Harry D. Leinenweber |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS "DEUTSCHE BANK," DEUTSCHE BANK AG, DEUTSCHE BANK
NATIONAL TRUST COMPANY, AND DEUTSCHE BANK TRUST COMPANY
AMERICAS**

DB2/ 33180949

## TABLE OF CONTENTS

Page

I. "DEUTSCHE BANK" IS ERRONEOUSLY NAMED AS A DEFENDANT. ................. 1

II. PLAINTIFFS LACK STANDING TO SUE DEUTSCHE BANK AG. ........................... 1

III. PLAINTIFFS LACK STANDING TO SUE DBNTC AND DBTCA IN ANY CAPACITY OTHER THAN THEIR SPECIFIC TRUSTEE CAPACITIES. .................. 3

IV. THE CLAIMS FAIL BECAUSE, AS HUD HAS DETERMINED, RMBS TRUSTEES DO NOT MAINTAIN OR MARKET REO PROPERTIES ......................... 4

CONCLUSION ................................................................................................................. 7

DB2/ 33180949

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Deutsche Bank Nat. Trust Co.*
2013 WL 3320455 (S.D. Cal. July 1, 2013) ...............................................................................5

*Briscoe v. Deutsche Bank Nat'l Trust Co.*
No. 08-C-1279, 2008 WL 4852977 (N.D. Ill. Nov. 7, 2008) (Zagel, J.) ...................................3

*City of Cincinnati v. Deutsche Bank Nat. Trust Co.*
897 F. Supp. 2d 633 (S.D. Ohio 2012) ...............................................................................2, 3, 4

*Commerzbank AG v. U.S. Bank Nat'l Ass'n*
277 F. Supp. 3d 483, 488 (S.D.N.Y. 2017)................................................................................4

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*
838 F.2d 66 (2d Cir. 1988).........................................................................................................5

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)...................................................................................................................2

*Mayo v. GMAC Mortg., LLC*
2010 WL 9073441 (W.D.Mo. 2010) .....................................................................................2, 3

*Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n*
2018 WL 1411106 (N.D. Cal. Mar. 21, 2018)...................................................................5, 6, 7

*Pac. Life Ins. Co. v. Bank of New York Mellon*
No. 17 Civ. 1388 (KPF), 2018 WL 1382105 (S.D.N.Y. 2018) .................................................5

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*
338 F.3d 773 (7th Cir. 2003) .....................................................................................................1

**Other Authorities**

Am. Bankers Ass'n, Corporate Trust Comm., "The Trustee's Role in Asset-Backed Securities" (Nov. 9, 2010), *available at* https://www.aba.com/aba/documents/press/RoleoftheTrusteeinAsset-BackedSecuritiesJuly2010.pdf .............................5

https://www.sec.gov/Archives/edgar/data/1355513/000090514806003334/efc6-1339_5853127ex991.txt..................................................................................................................5

Talcott J. Franklin and Thomas F. Nealon III, Mortgage and Asset Backed Secs. Litig. Handbook, § 5:106 ....................................................................................................4

DB2/ 33180949

Plaintiffs' Complaint (ECF No. 1) should be dismissed for the reasons set forth in the Memorandum in Support of Defendants' Joint Motion to Dismiss (ECF No. 30). Additionally, the Complaint should be dismissed as to "Deutsche Bank," Deutsche Bank AG ("DB AG"), Deutsche Bank National Trust Company ("DBNTC"), and Deutsche Bank Trust Company Americas ("DBTCA") for several additional reasons.[1] First, as Plaintiffs have acknowledged, "Deutsche Bank" is not an entity capable of being sued. Second, DB AG and the Trustee Defendants (as named, without specifying their correct trustee capacities) do not hold title to any of the REO properties at issue. Finally, even if the Trustee Defendants were properly named, this Court should follow the U.S. Department of Housing and Urban Development's ("HUD's") determination that Plaintiffs' Fair Housing Act claims cannot lie against RMBS trustees (a/k/a "indenture trustees"), because their roles are expressly limited and simply do not include the property maintenance, marketing, or sale functions that are the subject of Plaintiffs' claims.

## I. "DEUTSCHE BANK" IS ERRONEOUSLY NAMED AS A DEFENDANT.

"Deutsche Bank" is merely a trade name used for marketing purposes, *see* Declaration of Kenneth M. Kliebard ("Kliebard Decl.") ¶ 2, Ex. A,[2] and is not a separate legal entity capable of being served or sued. Thus, Plaintiffs agreed not to serve "Deutsche Bank," and no waiver of service was returned on its behalf. (*Id.*) By the parties' mutual agreement that Deutsche Bank was erroneously named as a defendant, all claims against "Deutsche Bank" should be dismissed.

## II. PLAINTIFFS LACK STANDING TO SUE DEUTSCHE BANK AG.

Plaintiffs lack Article III standing to assert claims against DB AG. Standing requires an injury in fact that is concrete and particularized, actual or imminent, fairly traceable to the

---

[1] DBNTC was incorrectly named in this action as "Deutsche Bank National Trust." DBNTC and DBTCA collectively are referred to herein as the "Trustee Defendants." The Trustee Defendants, "Deutsche Bank," and DB AG collectively are referred to herein as the "Deutsche Bank Defendants."

[2] The Court may consider "affidavits or other evidence" in evaluating whether jurisdiction exists. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).

defendant's challenged conduct, and likely to be redressed by a decision of the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiffs' claims are all predicated upon the foundational allegation that the "Deutsche Bank Defendants" *collectively*[3] held title to the foreclosed, REO properties at issue. Compl. ¶¶ 3, 35; *see also, e.g.*, ¶ 1 (Defendants discriminated in the maintenance/marketing of properties "owned by Deutsche Bank"); ¶ 5 (Plaintiffs examined properties "owned by the Deutsche Bank Defendants"). That foundational allegation is false as to DB AG.[4]

DB AG is a foreign bank that does *not* serve as a trustee of residential mortgage-backed securities ("RMBS") secured by mortgages on U.S. properties, and therefore does not hold title to such properties as trustee. On this point, other courts have so concluded as a matter of law. *See*, *e.g.*, *Cincinnati*, 897 F. Supp. 2d at 637-39 (dismissing claims against DB AG where all of the claims related to property maintenance practices were "premised actions and inactions concerning properties that are or were 'owned' by one of the Defendants").

Not surprisingly, as DB AG does not act in that role, the Complaint alleges no specific conduct by DB AG. Because all claims against the Deutsche Bank Defendants are premised on blanket allegations of their collective "ownership" of REO properties, but DB AG does not hold title to any of the residential REO properties at issue (in any capacity), Plaintiffs' alleged injuries are not traceable to any alleged misconduct by DB AG and those claims should be dismissed.

---

[3] Plaintiffs' failure to plead any specific allegations as to any *individual* Deutsche Bank Defendant provides another basis to dismiss these Defendants. *See, e.g., City of Cincinnati v. Deutsche Bank Nat. Trust Co.*, 897 F. Supp. 2d 633, 638 (S.D. Ohio 2012) ("It is not enough for the [plaintiff] to assert that every corporate entity with 'Deutsche Bank' in its name engaged in the complained-of business practices or owned some property without some factual allegations that make such a claim plausible."); *Mayo v. GMAC Mortg., LLC*, 2010 WL 9073441, at *3 (W.D.Mo. 2010) ("[T]he Complaint . . . is silent with respect to how specifically DBNTC in its individual capacity supposedly violated the MSMLA. Asserting a list of legal conclusions that have been . . . brought against a collection of defendants . . . is not enough to state a claim for relief . . . under *Ashcroft* [*v. Iqbal*].").

[4] As is explained in Sections I and III, it is also false as to "Deutsche Bank" (which is not an entity at all) and DBNTC and DBTCA (absent specification of their correct trustee capacities).

### III. PLAINTIFFS LACK STANDING TO SUE DBNTC AND DBTCA IN ANY CAPACITY OTHER THAN THEIR SPECIFIC TRUSTEE CAPACITIES.

Plaintiffs' claims should be dismissed as to DBNTC and DBTCA because the Complaint fails to name those entities in the proper legal capacities in which they hold title to REO properties, *i.e.*, **as trustees of specific RMBS trusts**.

Plaintiffs' claims against DBNTC and DBTCA rest on the foundational allegation that, as trustees for RMBS trusts, those entities hold title to the specific residential properties identified in the Complaint. *See, e.g.*, Compl. ¶¶ 1, 3, 5, 35. It is well-settled, however, that claims against DBNTC and DBTCA relating to properties held by RMBS trusts for which they acted as trustee ***can only*** be maintained against DBNTC and DBTCA in their capacities as trustees for those specific trusts. Courts routinely dismiss claims for lack of standing when they assert claims against DBNTC and DBTCA generally and without specifying specific trustee capacities, finding that DBNTC and DBTCA in their capacities as trustees of specific RMBS trusts are separate entities under the law from DBNTC and DBTCA in other trustee capacities, in their individual capacities, or with no capacity specified. *See, e.g.*, *Briscoe v. Deutsche Bank Nat'l Trust Co.*, No. 08-C-1279, 2008 WL 4852977 (N.D. Ill. Nov. 7, 2008) (Zagel, J.) (dismissing claims against DBNTC because a loan was held by DBNTC only in its trustee capacity); *Cincinnati*, 897 F. Supp. 2d at 639 (dismissing claims against DBNTC and DBTCA where allegations concerned properties to which they held title as trustees of specific RMBS trusts); *Mayo v. GMAC Mortg., LLC*, 2010 WL 9073441 at *3 (dismissing claims against DBNTC because plaintiffs asserted only "generic factual allegations and legal conclusions against the Defendants collectively . . . [and were] silent with respect to how DBNTC in its individual capacity supposedly violated the law").

DBNTC and DBTCA do not hold title to REO properties in any capacity other than as

trustees of specific RMBS trusts. *See Cincinnati*, 897 F. Supp. 2d at 637-39 (dismissing DBNTC and DBTCA "as individual entities" where the claims related to properties to which they held title "solely in their capacity as Trustees" of "certain [RMBS] trusts"). Plaintiffs' allegations acknowledge this significant distinction. *See, e.g.*, Compl. ¶ 3 (the "Deutsche Bank Defendants" "are the owners of record, *as trustee*, of thousands of foreclosed homes"); ¶ 35 (the "Deutsche Bank Defendants" "own and maintain REO properties *as trustee*"); ¶ 55 ("[w]hen a foreclosure occurs, the *trustee* becomes the legal owner of record of the property") (emphasis added).

Plaintiffs fail to name DBNTC and DBTCA in their capacities as trustees of the trusts that allegedly held the properties at issue, and as such those claims fail for lack of standing.

## IV. THE CLAIMS FAIL BECAUSE, AS HUD HAS DETERMINED, RMBS TRUSTEES DO NOT MAINTAIN OR MARKET REO PROPERTIES.

Even if Plaintiffs had properly named the Trustee Defendants in the capacities that are linked to the properties at issue in this case, the claims against DBNTC or DBTCA fail because any maintenance, marketing, or sale of trust-held REO properties is performed solely by RMBS *servicers*, not RMBS *trustees*. Thus, this Court should follow HUD's finding that Plaintiffs' Fair Housing Act claims cannot lie against RMBS trustees such as the Trustee Defendants.

When an RMBS trust is created, the sponsor/settlor forming the trust – which is *not* the RMBS trustee – designates one or more servicers as the sole entities responsible for servicing mortgage loans and properties held in the trusts. *See Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 488 (S.D.N.Y. 2017) (summarizing RMBS securitization process). Servicing the trust's loans and properties includes maintaining and marketing REO properties. *See* Talcott J. Franklin and Thomas F. Nealon III, Mortgage and Asset Backed Secs. Litig. Handbook, § 5:106 ("[S]ervicers are responsible for enforcing the terms of a defaulted securitized loan" including "foreclosing on the property and/or ... pursuing other related

remedies"). By contrast, the duties of RMBS trustees, such as DBNTC and DBTCA, are expressly and specifically limited to duties such as holding title to trust property—but do *not* include the activities challenged here, *i.e.* maintaining and marketing for sale REO properties.[5] For example, the trust instrument creating IndyMac INDX Mortgage Loan Trust 2006-AR41 ("AR41 Trust")[6] gives the RMBS Trustee only sharply circumscribed duties: "The Trustee . . . shall undertake to perform such duties and *only* such duties as are specifically set forth in this Agreement . . . . [T]he duties and obligations of the trustee shall be determined *solely* by the express provisions of this Agreement" PSA § 8.01 (emphasis added). Its only duty relevant to these claims is to hold title to trust property for the benefit of the trust beneficiaries. PSA § 2.01.

The PSA vests *all* responsibility for servicing mortgage loans and managing collateral properties following foreclosure with the Servicer, stating that "[f]or and on behalf of the Certificate holders the *Servicer shall service and administer the Mortgage Loans* in accordance with this Agreement and the Servicing Standard." PSA § 3.01 (emphasis added). The "Servicing Standard" requires the Servicer to act with "[t]hat degree of skill and care exercised by the Servicer with respect to mortgage loans comparable to the Mortgage Loans serviced by

---

[5] The role of an RMBS trustee is distinct from that of an "ordinary trustee." *See Pac. Life Ins. Co. v. Bank of New York Mellon*, No. 17 Civ. 1388 (KPF), 2018 WL 1382105, at *2 (S.D.N.Y. 2018); *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) ("Unlike the ordinary trustee, . . . an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement."); Am. Bankers Ass'n, Corporate Trust Comm., "The Trustee's Role in Asset-Backed Securities" (Nov. 9, 2010), *available at* https://www.aba.com/aba/documents/press/RoleoftheTrusteeinAsset-BackedSecuritiesJuly2010.pdf ("The trust instruments . . . and relevant law do not give the trustee any powers or duties with respect to foreclosure, maintenance, sale or disposition of properties that are collateral for the MBS securities. Those . . . are conferred exclusively on loan servicers, who generally are appointed by the depositor or seller of the loans to the MBS trust.").

[6] The trust instruments creating RMBS trusts and defining the respective roles of the trustee and servicer are typically called pooling and servicing agreements, or "PSAs." *See* Compl. ¶ 53. All references here are to the AR41 Trust PSA, which has been selected as an example PSA that governs one of the trusts that holds a property identified in the Complaint. *See* Kliebard Decl. ¶ 3. It is publicly available at: https://www.sec.gov/Archives/edgar/data/1384691/000090514807000184/efc7-0019_6006707ex991.txt. Courts routinely take judicial notice of PSAs as publicly available records whose authenticity cannot reasonably be questioned. *See, e.g.*, *Alexander v. Deutsche Bank Nat. Trust Co.*, 2013 WL 3320455, at *3 (S.D. Cal. July 1, 2013) (taking judicial notice of a PSA available on the SEC's website).

the Servicer for itself or others." PSA § 1.01. The PSA vests the Servicer with broad authority: "the Servicer may in its discretion undertake any such action that it may deem appropriate in respect to this agreement and the rights and duties of the parties hereto . . . ." PSA § 6.03. It also empowers the Servicer alone to foreclose on delinquent loans, and pursuant to the Servicer's efforts to sell the mortgaged property, the "***Servicer shall*** either itself or through an agent selected by the Servicer ***protect and conserve***" the property. PSA § 3.12 (emphasis added).

Thus, Servicers *alone* are entrusted with maintaining trust-held properties. Beyond this, "[n]either the Trustee nor the Depositor shall have *any* responsibility or liability for any action or failure to act by the Servicer nor shall the Trustee or the Depositor be obligated to supervise the performance of the Servicer under this Agreement or otherwise." PSA § 3.03. In other words, even in their capacities as RMBS trustees, neither DBNTC nor DBTCA (i) "maintain" any of the REO properties, (ii) "contracted with Ocwen and/or Altisource to provide property maintenance services" for those properties, or (iii) are responsible if either Ocwen or Altisource fails to meet its obligations. Compl. ¶ 35. The Servicers' obligations were assigned by the settlor of the trust—not the RMBS trustees—and contractually provided for in the terms of the same PSAs that assigned the RMBS trustees their express, limited duties.

Contrary to Plaintiffs' demonstrably false allegations, servicers, not RMBS trustees, initiate and manage *all* aspects of the foreclosure process and the marketing for sale and maintenance of REO properties. That is precisely why HUD has determined that the types of Fair Housing Act claims alleged by Plaintiffs *cannot* be asserted against RMBS trustees like DBNTC and DBTCA. In 2016, HUD issued a Determination of No Reasonable Cause (ECF No. 29-2) regarding a similar complaint brought by some of the plaintiffs in this action, including the NFHA, against U.S. Bank. For most of the properties at issue, U.S. Bank "acted only as an

indenture trustee for the properties' owners." *Id.* at 2. As such, U.S. Bank asserted that it "had no obligations regarding any individual property or knowledge of any action taken by the mortgage originator, servicer, or property preservation contractors." *Id.* HUD acknowledged that "[f]or a trust indenture, ***it is the servicer, not the trustee, who controls properties within the trust***. In contrast, the indenture trustee is more like a legal placeholder with ministerial duties that are defined by the original indenture agreement." *Id.* at n.6 (emphasis added); *see also id.* at 7, n.21 (discussing how an indenture trustee differs from an ordinary trustee).

As a foundation of its ultimate finding that there was "no reasonable cause to believe that Respondents engaged in a pattern or practice of discriminatory treatment as alleged" or violated the FHA, *id.* at 29, HUD found that for the properties that "had loans that had been securitized in various indentured trusts for which U.S. Bank was the indentured trustee, but ***not*** the actual servicer of the property," U.S. Bank (as trustee) "had ***no authority*** to control or select servicers or make decisions regarding these properties such as foreclosure or maintenance scheduling." *Id.* at 7 (emphasis added). Thus, HUD's investigation focused only on the subset of properties that were *serviced* by U.S. Bank. *Id.* at 8, 25. Here, the Trustee Defendants are in precisely the same position as was U.S. Bank as trustee. DBNTC and DBTCA are not alleged to, and do not, act as servicer for any of the REO properties at issue. In fact, unlike other financial institutions like Fannie Mae against whom Plaintiffs have brought similar lawsuits (*e.g.*, *Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n*, 2018 WL 1411106 (N.D. Cal. Mar. 21, 2018)), none of the Deutsche Bank Defendants (including the Trustee Defendants) act as servicer for any RMBS trusts at all. Thus, even if Plaintiffs' claims were alleged against DBNTC and DBTCA in their proper capacities as trustees of trusts that hold the properties at issue, they fail to state a claim.

## CONCLUSION

Thus, all of Plaintiffs' claims against the Deutsche Bank Defendants should be dismissed.

Dated: May 9, 2018

Respectfully submitted,

By: /s/ Kenneth M. Kliebard
Kenneth M. Kliebard
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Telephone: (312) 324-1000

Elizabeth A. Frohlich (*pro hac vice* application to be submitted)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

*Counsel to Defendants "Deutsche Bank," Deutsche Bank AG, Deutsche Bank National Trust Company, and Deutsche Bank Trust Company Americas*

-9-

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on May 9, 2018.

/s/ Kenneth M. Kliebard