**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; HOUSING RESEARCH & ADVOCACY CENTER; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:18-cv-00839<br><br>Judge Harry D. Leinenweber |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| DEUTSCHE BANK; DEUTSCHE BANK AG; DEUTSCHE BANK NATIONAL TRUST; DEUTSCHE BANK TRUST COMPANY AMERICAS; OCWEN FINANCIAL CORP.; and ALTISOURCE PORTFOLIO SOLUTIONS, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.     Introduction ............................................................................................................ 1

II.    The Complaint Inadequately Pleads Discrimination .......................................... 2

    A.    Plaintiffs' Disparate-Impact Theory Fails .............................................. 2

        1.    The Complaint does not adequately allege racial disparities .................... 2

        2.    Plaintiffs allege no specific policy causing the alleged disparities ........... 4

    B.    Plaintiffs' Disparate-Treatment Theory Fails ........................................ 7

        1.    The Complaint inadequately pleads discriminatory intent ....................... 7

        2.    Claims against Ocwen and Altisource fail for additional reasons ............ 9

III.    Plaintiffs Inadequately Plead Proximate Causation ........................................ 10

IV.    Plaintiffs Inadequately Plead Additional Claim-Specific Elements ................ 12

    A.    Plaintiffs Do Not State a Claim Under Sections 3604 and 3605 of the FHA ...... 12

    B.    Plaintiffs Do Not State a "Perpetuation of Segregation" Claim .......................... 14

    C.    Plaintiffs' Section 3617 Claim Misconstrues the Law ........................................ 13

V.    Plaintiffs' Claims Are Facially Untimely ....................................................... 14

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Muriello,*
217 F.3d 517 (7th Cir. 2000) ...................................................2

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................4, 7, 8, 9

*Bank of Am. Corp. v. City of Miami,*
137 S. Ct. 1296 (2017)...............................................1, 10, 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...................................................9

*Bloch v. Frischholz,*
587 F.3d 771 (7th Cir. 2009) ...................................8, 13, 16

*Chudasama v. Mazda Motor Corp.,*
123 F.3d 1353 (11th Cir. 1997) ...................................9

*City of L.A. v. Wells Fargo & Co.,*
2015 WL 4398858 (C.D. Cal. July 17, 2015), *aff'd*, 691 F. App'x 453 (9th
Cir. 2017) ...................................................15

*City of L.A. v. JPMorgan Chase & Co.,*
2014 WL 3854332 (C.D. Cal. Aug. 5, 2014)...................................................9

*City of Miami v. Bank of Am. Corp.,*
171 F. Supp. 3d 1314 (S.D. Fla. 2016). ...................................4, 15

*City of Phila. v. Wells Fargo & Co.,*
2018 WL 424451 (E.D. Pa. Jan. 16, 2018)...................................................6

*Comm. Concerning Cmty. Improvement v. City of Modesto,*
583 F.3d 690 (9th Cir. 2009) ...................................13

*Cnty. of Cook v. HSBC N. Am. Holdings Inc.,*
2018 WL 2431987 (N.D. Ill. May 30, 2018)...................................................2, 11

*Cnty. of Cook v. HSBC N. Am. Holdings Inc.,*
136 F. Supp. 3d 952 (N.D. Ill. 2015) ...................................2

*Cnty. of Cook v. Wells Fargo & Co.,*
2018 WL 1469003 (N.D. Ill. Mar. 26, 2018)...................................................6, 11

*Doe v. R.R. Donnelley & Sons Co.*,
    42 F.3d 439 (7th Cir. 1994) ...................................................................15

*Heights Cmty. Cong. v. Hilltop Realty, Inc.*,
    774 F.2d 135 (6th Cir. 1985) ...................................................................12

*Huntington Branch, NAACP v. Town of Huntington*,
    844 F.2d 926 (2d Cir. 1988)......................................................................14

*Jersey Heights Neighborhood Ass'n v. Glendening*,
    174 F.3d 180 (4th Cir. 1999) ...................................................................13

*Linkletter v. W. & S. Fin. Grp. Inc.*,
    851 F.3d 632 (6th Cir. 2017) ...................................................................14

*Mayo v. GMAC Mortg., LLC*,
    2010 WL 9073441 (W.D. Mo. Mar. 1, 2010)..........................................5

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    672 F.3d 482 (7th Cir. 2012) .....................................................................6

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
    558 F.2d 1283 (7th Cir. 1977) .................................................................13

*Michon v. Ugarte*, 2017 WL 622236,
    (N.D. Ill. Feb. 15, 2017)............................................................................4

*Miller v. Countrywide Bank, N.A.*,
    571 F. Sup. 2d 251 (D. Mass. 2008) .........................................................6

*Morgan v. Harris Trust & Sav. Bank*,
    867 F.2d 1023 (7th Cir. 1989) .............................................................4, 16

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)................................................................................16

*Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n*,
    294 F. Supp. 3d 940 (N.D. Cal. 2018) ........................................2, 6, 7, 8

*Ortiz v. Werner Enters., Inc.*,
    834, F3d 760, 765 (7th Cir. 2016) ............................................................7

*Ponticiello v. Aramark Unif. & Career Apparel Servs., Inc.*,
    2006 WL 2699416 (N.D. Ill. Sept. 19, 2006) ........................................15

*Ricci v. DeStefano*,
    557 U.S. 557 (2009)..................................................................................4

iii

*Shanoff v. Ill. Dep't of Human Servs*,
258 F.3d 696 (7th Cir. 2001) ...............................................................16

*Southend Neighborhood Improvement Ass'n v. Cnty. of St. Clair*,
743 F.2d 1207 (7th Cir. 1984) ..............................................................13

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
135 S. Ct. 2507 (2015) ..................................................................2, 3, 10

*United States v. Lewis*,
411 F.3d 838 (7th Cir. 2005) ...............................................................16

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ...............................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................5, 6

*Walker v. City of Lakewood*,
272 F.3d 1114 (9th Cir. 2001) ..............................................................14

*Wallace v. Chi. Hous. Auth.*,
321 F. Supp. 2d 968 (N.D. Ill. 2004) ....................................................16

*Watson v. Fort Worth Bank & Trust*,
487 U.S. 977 (1988) ............................................................................5, 6

*Wigginton v. Bank of Am. Corp.*,
770 F.3d 521 (7th Cir. 2014) .................................................................7

*Willborn v. Sabbia*,
2011 WL 1900455 (N.D. Ill. May 19, 2011) ....................................7, 14

**Other Authorities**

42 U.S.C. § 3604 ................................................................................12, 13, 14

42 U.S.C. § 3605 ....................................................................................12, 13

42 U.S.C. § 3617 ...........................................................................................14

Fed. R. Civ. P. 12(b)(6) ..................................................................................2

24 C.F.R. § 100.65(b)(2) ..............................................................................13

24 C.F.R. § 100.70 .......................................................................................12

I.    **Introduction**

Plaintiffs' response to Defendants' motion to dismiss (Dkt. 41, "Opposition") fails to overcome the authorities that contradict Plaintiffs' flawed claims.  HUD—the authority charged with enforcing the FHA—flatly rejected the same statistical methodology that forms the entire basis for Plaintiffs' disparate-impact claim.  A federal court recently dismissed Plaintiffs' similar disparate-treatment claims for failing to plead the requisite discriminatory intent.  So too, three judges in this District recently applied the Supreme Court's proximate cause ruling in *City of Miami* to dismiss FHA claims that, like Plaintiffs' claims, asserted only indirect injuries. Further, the Seventh Circuit has held that the FHA does not regulate property maintenance where, as here, Plaintiffs do not plausibly allege any connection to the availability of housing.

Beyond these global shortcomings, Plaintiffs do not allege any of the "Deutsche Bank Defendants" performed the conduct giving rise to the alleged maintenance disparities, and fail to identify a specific policy of any of the "Deutsche Bank Defendants" for those alleged disparities. Plaintiffs have thus not plausibly alleged the existence of any adverse disparate impact caused by a race-neutral policy, as required to state a disparate-impact claim.  Plaintiffs also have not stated a disparate-treatment claim against Ocwen or Altisource—the only claim alleged against them— for Defendant-specific reasons.   In attempting to show that Ocwen and Altisource were motivated by an intent to discriminate—an essential element of any disparate-treatment claim— Plaintiffs cite their study.  But Plaintiffs admit they do not know if the properties they studied were maintained by Ocwen, Altisource, or a third party.  Plaintiffs thus lack any basis to claim that Ocwen or Altisource improperly maintained those properties, much less intentionally discriminated.  For these and other reasons discussed below and in Defendants' opening brief, the Complaint should be dismissed in its entirety.

1

## II.     The Complaint Inadequately Pleads Discrimination

### A.     Plaintiffs' Disparate-Impact Theory Fails.

#### 1.     The Complaint does not adequately allege racial disparities.

Defendants' opening brief ("Br.") showed that Plaintiffs' disparate-impact claim should be dismissed because that claim rests upon a fundamentally flawed statistical methodology.  In response, Plaintiffs assert that Defendants challenge only causation and "do not actually dispute . . . that Plaintiffs have adequately pleaded the alleged disparity."  Opp. at 7-8.  That is false.  *See* Br. at 7 ("The Complaint does not adequately allege racial disparities.").  Defendants challenge Plaintiffs' statistical methodology (*e.g.*, a study based on one-time property visits cannot show discrimination in property maintenance), not causation.  Thus, Plaintiffs' argument that they need not "prove" causation is a classic straw-man argument.  Opp. at 8.  In any event, Plaintiffs' suggestion that causation is immune from Rule 12(b)(6) contradicts the requirement that FHA plaintiffs "allege facts at the pleading stage . . . demonstrating a causal connection." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2523 (2015).[1]

Plaintiffs' attempt to prop up their study's methodology also fails on multiple grounds. First, Plaintiffs cannot demonstrate property maintenance flaws based on a single property visit because, as HUD observed, such a "snapshot" visit at most shows "whether a particular deficiency existed at a particular time on a particular day."  Kane Dec., Ex. A at 19.  Plaintiffs' response that they controlled for how long properties were REO misses the point.  Opp. at 9.  A property could be REO for 10 or 1,000 days when Plaintiffs visited.  Either way, if the property

---

[1] Plaintiffs' cases do not hold otherwise.  *Allen v. Muriello*, 217 F.3d 517, 522 (7th Cir. 2000), held that fact issues existed as to defendants' stated reasons for disparately treating housing applicants, not that causation is always a question of fact.  Following *County of Cook v. HSBC North America Holdings Inc.*, 136 F. Supp. 3d 952 (N.D. Ill. 2015), Judge Lee dismissed the case in part for inadequately pleading proximate cause.  *See id.*, 2018 WL 2431987, at *3-*10 (N.D. Ill. May 30, 2018).  Defendants respectfully submit, for all the reasons cited in their opening brief, that *National Fair Housing Alliance v. Federal National Mortgage Ass'n*, 294 F. Supp. 3d 940 (N.D. Cal. 2018) ("*Fannie Mae*"), incorrectly declined to address the statistical methodology that Plaintiffs expressly describe in the Complaint.

was damaged the day before the visit, Plaintiffs would incorrectly assert race discrimination. Plaintiffs also argue a one-time visit study suffices because *some* issues like overgrown grass take "considerable time" to develop, *id.*; yet many of Plaintiffs' factors can happen *at any time* (*e.g.*, trash, broken windows, graffiti). Compl. ¶ 72. The Complaint does not allege that any disparities, much less statistically significant ones, would remain if these factors were omitted.

Second, Plaintiffs did not control for the condition of each property when it became REO. Plaintiffs argue this is irrelevant because the "deficiencies" they tested supposedly can be quickly cured. Opp. at 9. The Complaint does not allege this, because it cannot: water damage and wood rot, among others, are not easy fixes. Even if Plaintiffs' contention were correct, it again misses the point. Without controlling for initial property conditions, Plaintiffs cannot allege Defendants spent more or less time or money maintaining properties in minority areas.

Third, Plaintiffs' study conveniently ignores properties that were occupied or where maintenance work was occurring. Plaintiffs respond, without any support, that properties are rarely occupied after foreclosure. Opp. at 10. Plaintiffs fail to allege statistical disparities would exist had they considered occupied properties—which they did not. Further, Plaintiffs ignore that they cannot assert disparities "by excluding the very properties that show evidence" of proper ongoing maintenance. Kane Dec., Ex. A (HUD Determination) at 23.

Fourth, Plaintiffs assert statistically significant disparities only by aggregating properties across 30 cities, ignoring that some cities *require* actions that Plaintiffs declare discriminatory. Plaintiffs contend that they do not need to plead statistically significant disparities. Opp. at 10. But their cases state only that different tests can be used to measure statistical significance, not that disparate-impact claims may be based on statistically insignificant results. To the contrary, Plaintiffs must allege "a prima facie case of disparate impact … at the pleading stage" (*Inclusive

*Communities*, 135 S. Ct. at 2523), which requires "a significant statistical disparity." *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009); *accord Morgan v. Harris Trust & Sav. Bank*, 867 F.2d 1023, 1027 (7th Cir. 1989). Plaintiffs also argue they "can" account for differences in cities' property maintenance requirements later. Opp. at 11. But Plaintiffs first must state a claim before they can "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Fifth, Plaintiffs' allegations of statistically significant disparities depend upon their inclusion of properties visited outside the limitations period. Plaintiffs offer no defense of this aggregation, which was squarely rejected in *City of Miami v. Bank of America Corp.*, 171 F. Supp. 3d 1314, 1320 n.3 (S.D. Fla. 2016).

For these reasons, HUD correctly rejected Plaintiffs' methodology. Plaintiffs ask the Court to disregard HUD's decision. Opp. at 31 n.20. But Plaintiffs ignore precedent holding that agency determinations are judicially noticeable (*see* Br. at 6 n.6), instead relying upon an inapposite case declining to consider factual assertions in a police report. *Michon v. Ugarte*, 2017 WL 622236, at *3 (N.D. Ill. Feb. 15, 2017) (Opp. at 31 n.20). Plaintiffs also argue that HUD based its decision in part on evidence refuting their allegations of discrimination (Opp. at 9), ignoring that Defendants rely only on HUD's rejection of Plaintiffs' methodology, not its evidentiary findings.[2] Plaintiffs' identical methodology in this case is equally flawed.

### 2. Plaintiffs allege no specific policy causing the alleged disparities.

Unable to satisfy their burden to articulate a specific policy that caused the alleged disparities, Plaintiffs double down on the assertion that the Deutsche Bank Defendants' alleged "disavowal" of legal responsibility for REO property maintenance and marketing obligations

---

[2] Plaintiffs improperly try to evade this Court's page limit by incorporating their 50-page request for reconsideration filed with HUD. Opp. at 9 n.4; Soule Dec., Ex. A. Tellingly, Plaintiffs withdrew their request before HUD could resolve it, and for good reason—it does nothing to counter the fundamental methodological flaws that HUD identified.

(which neither the governing agreements of the applicable RMBS trusts nor applicable case law imposes on them)[3] somehow constitutes a "policy" that caused the alleged disparate impact. Opp. at 11. Yet, Plaintiffs do not contest that their limited "policy" allegations are not specific to any particular Defendant. *See* Br. at 11. That alone is a sufficient basis for dismissal. *See, e.g.*, *Mayo v. GMAC Mortg., LLC*, 2010 WL 9073441, at *3 (W.D. Mo. Mar. 1, 2010) ("[a]sserting a list of legal conclusions that have been fused together . . . and brought against a collection of defendants . . . is not enough to state a claim for relief").

Plaintiffs also do not dispute that they lack sufficient factual allegations to establish this purported "policy." *See* Br. at 12. Instead of supporting their "policy" allegations with facts, Plaintiffs contend courts "frequently allow[] challenges to policies of inappropriate delegation of discretion and authority under the FHA." Opp. at 11-12. But Plaintiffs have not plausibly alleged any such threshold "delegation" of property maintenance responsibilities—and there is none.

Further, Plaintiffs' authorities are inapposite. In both *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991, 999 (1988), and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011) (Opp. at 11), the plaintiffs alleged employment discrimination through conduct the defendants delegated to their employees. Here, unlike in an employer-employee context, there is no basis to attribute the acts of the independent third parties whose conduct allegedly caused the disparities (*i.e.*, servicers acting pursuant to applicable PSAs) to the Defendants with the challenged "policy" (*i.e.*, the Deutsche Bank Defendants). Plaintiffs do not plausibly allege that the Deutsche Bank Defendants "delegated" any property maintenance tasks to other parties (nor could they); instead, they merely allege that the Deutsche Bank Defendants have a "policy" of disclaiming responsibility for the servicers' challenged conduct. Even if that could be

---

[3] *See* Deutsche Bank Defendants' Supplemental Memorandum (Dkt. 33) at 4-7.

considered "delegation of discretion and authority" (and it cannot), the Supreme Court has held that the mere implementation of a "discretionary system" or an act of "delegation" is not enough to state a disparate impact claim; rather, plaintiffs must identify the *specific*, allegedly delegated *policy or practice* that caused the alleged disparities. *See Watson*, 487 U.S. at 994 ("plaintiff must begin by identifying the specific employment practice that is challenged."); *Dukes*, 564 U.S. at 357 (quoting *Watson* for the same). Plaintiffs fail to do so.

These same distinctions also apply to Plaintiffs' other authorities. *See* Opp. at 11-12. In *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489 (7th Cir. 2012), plaintiff challenged *internal* "company-wide policies" that authorized Merrill Lynch's "brokers, rather than managers," to take specific discretionary actions with a discriminatory impact. In *County of Cook v. Wells Fargo & Co.*, 2018 WL 1469003, at *12 (N.D. Ill. Mar. 26, 2018), the challenged policy was not an act of "inappropriate delegation," but rather Wells Fargo's own "equity-stripping practice." In *Miller v. Countrywide Bank, N.A.*, 571 F. Sup. 2d 251, 255 (D. Mass. 2008), plaintiffs alleged that Countrywide implemented a "discretionary pricing policy" that allowed its employees and agents to "add various charges and fees based on subjective non-risk factors and which, in turn, ha[d] a racially discriminatory impact." In *City of Philadelphia v. Wells Fargo & Co.*, 2018 WL 424451 at *4 (E.D. Pa. Jan. 16, 2018), plaintiffs alleged disparate impact based on "at least seven specific policies," some of which simply "involve[d] discretion" by Wells Fargo employees. Plaintiffs' recent lawsuit against Fannie Mae similarly alleges that Fannie Mae delegated its own maintenance obligations to its own "low-level employees and agents," who performed them in an allegedly discriminatory manner under Fannie Mae policies. *Fannie Mae*, 294 F. Supp. 3d at 944; *see* Br. at 12-13. None of these cases concern a "policy" of "disavowing . . . legal obligations." Compl. ¶ 115. Instead, they concern specific policies that

6

allegedly caused discriminatory outcomes based on discretionary actions taken by the defendants' own employees and agents. *See* Opp. at 11. Plaintiffs must plausibly allege a "specific policy" attributable to the Deutsche Bank Defendants that caused the alleged discriminatory impact at issue. Plaintiffs fail to do so, and as such, their disparate-impact claims warrant dismissal.

### B.     Plaintiffs' Disparate-Treatment Theory Fails.

#### 1.     The Complaint inadequately pleads discriminatory intent.

A disparate-treatment claim requires discriminatory intent. *See* Br. at 13. Plaintiffs cannot deny their Complaint lacks non-conclusory allegations that Defendants engaged in the challenged conduct *because of* a desire to discriminate based on race. Instead, Plaintiffs argue that a discriminatory motive "can be inferred" when their factual allegations are "viewed as a whole." Opp. at 14. To support this argument, Plaintiffs cite inapplicable legal standards from employment-discrimination cases (*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)), quote dicta from a case affirming dismissal of FHA claims (*Wigginton v. Bank of Am. Corp.*, 770 F.3d 521, 522 (7th Cir. 2014)), and mischaracterize holdings (*Willborn v. Sabbia*, 2011 WL 1900455, at *6 (N.D. Ill. May 19, 2011)). None of these cases allow a disparate-treatment FHA claim to proceed where, as here, the Complaint omits allegations that Defendants acted *because of* racial animus. Further, Plaintiffs fail to address Defendants' cited cases, including decisions in this District, that apply *Iqbal* to dismiss FHA claims based on conclusory allegations of discriminatory intent. *See* Br. at 13-14.

The predominant allegations from which Plaintiffs ask this Court to "infer" an allegation of discriminatory motive are the flawed statistical allegations supporting Plaintiffs' disparate-impact claims and Defendants' alleged knowledge thereof. *See* Opp. at 15. Plaintiffs offered these same types of allegations to support their disparate-treatment claim in *Fannie Mae*, which

the court rightly dismissed for inadequately pleading "discriminatory intent." 294 F. Supp. 3d at 949; *see also Iqbal*, 556 U.S. at 676 ("[P]urposeful discrimination requires more than . . . 'awareness of consequences.'"). Here, as in *Fannie Mae*, alleged "statistical disparities" do not establish discriminatory intent, especially given the fundamental flaws in Plaintiffs' study.

The other allegations from which Plaintiffs ask this Court to "infer" a discriminatory motive are the unsubstantiated attacks on Defendants and mischaracterizations of unrelated litigation matters addressed in Defendants' brief. *Compare* Opp. at 15 *with* Br. at 14. In stark contrast to the cases Plaintiffs cite for the proposition that discriminatory intent can be alleged using relevant circumstantial evidence, none of these allegations have any relationship to the actual conduct challenged in this case. *Cf. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977) (identifying the "historical background *of the [challenged] decision*," "legislative administrative history [*of the challenged decision*]," and "specific sequence of events leading up to *the challenged decision*" as evidence of a *direct* relationship showing discriminatory intent) (emphasis added). Plaintiffs ask this Court to adopt the view that alleging *prior*, *unrelated* discriminatory or unlawful conduct by a defendant suffices to establish the discriminatory intent necessary to state a disparate-treatment claim. That is not the law.

Plaintiffs do not and cannot dispute that their "pattern or practice" claims fail to lend any support for their discriminatory-intent allegations. Moreover, only the federal government or a putative class may assert a pattern-or-practice claim, not non-class private litigants like Plaintiffs. *See* Br. at 14-15. Plaintiffs note that Defendants' cited cases addressed Title VII rather than the FHA. *See* Opp. at 17 n.7. But the FHA "'is the functional equivalent of Title VII and so the provisions of these two statutes are given like construction." *Bloch v. Frischholz*, 587 F.3d 771, 779 (7th Cir. 2009). Nor do the cases cited by Plaintiffs help them: each was filed by the

government or a putative class. *See* Opp. at 17-18.

**2.      Claims against Ocwen and Altisource fail for additional reasons.**

Plaintiffs concede they do not know whether Ocwen, Altisource, or another company maintained or marketed the properties Plaintiffs studied. Compl. ¶¶ 35, 64. Plaintiffs request discovery to find out who maintained the subject properties (Opp. at 18), as even Plaintiffs do not suggest they can state disparate-treatment claims against Ocwen or Altisource—the only claims asserted against them—without their statistical allegations. But Plaintiffs admit that *parties other than Ocwen and Altisource* maintained some of the properties. Compl. ¶ 35 (alleging "Ocwen and/or Altisource" maintained "most" subject properties). The issue is thus not simply a matter of "which Defendant" is responsible for which property. Rather, Plaintiffs' study includes properties that parties not before the Court are responsible for, which Plaintiffs concede is the same reason why FHA claims were dismissed in *City of Los Angeles v. JPMorgan Chase & Co.*, 2014 WL 3854332 (C.D. Cal. Aug. 5, 2014). *See* Opp. at 18 n.9.

Further, Plaintiffs cannot base a claim on statistics that lump together properties maintained by Ocwen and Altisource on the theory that one of them may be responsible for the alleged disparities. Otherwise, Plaintiffs could sue every servicer and insist on discovery to find out which one maintained the properties. That is improper, as "a complaint must allege facts" stating a claim "before proceeding to discovery." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007); *see Iqbal*, 556 U.S. at 678; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("'Discovery … is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.'").

Plaintiffs' claims suffer from other flaws as well. First, even if Ocwen or Altisource ultimately became responsible for a subject property, Plaintiffs do not know whether that occurred before Plaintiffs visited the property. Plaintiffs admit as much, offering only the

inadequate response that it would be "surprising" if they visited "most or all" of the properties before Ocwen or Altisource obtained authority for them. Opp. at 19. Second, the non-statistical allegations that Plaintiffs cite in asserting discriminatory intent (*e.g.*, about "corporate cultures") are even weaker as to Ocwen and Altisource, as Plaintiffs appear to concede. *Id.* Third, Plaintiffs do not identify an Ocwen or Altisource policy that caused the alleged disparities. Plaintiffs state that Defendants did not cite a case dismissing disparate-treatment claims on this ground (*id.*), but Plaintiffs neither cite contrary authority nor address the fact that a statistics-based disparate-treatment claim that fails to identify the offending policy would be an end-run around *Inclusive Communities*.

## III. **Plaintiffs Inadequately Plead Proximate Causation**

Dismissal is also warranted because Plaintiffs' allegations fail to satisfy the proximate cause requirements for FHA claims. Plaintiffs insist they alleged that Defendants' policies "had foreseeable discriminatory results based on the delegees' predictable actions[.]" Opp. at 13. That is not the applicable proximate cause standard. Supreme Court precedent is clear. To plead a viable FHA claim, Plaintiffs must allege "'a *direct* relation between the injury asserted and the injurious conduct alleged,'" such that the alleged injuries generally do not go "'beyond the first step'" in the causal chain, *regardless* of whether the plaintiff's claimed losses are "foreseeable." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017) (emphasis added).

The indirect nature of Plaintiffs' alleged injuries is as apparent from Plaintiffs' own characterizations of their claims: (1) "Defendants have policies of inappropriate abrogation of responsibility and delegating authority"; (2) "Then . . . these polices had foreseeable discriminatory results based on the delegees' predictable actions"; (3) "Then . . . Plaintiffs were forced to divert resources into investigating and combatting the effects of Defendants' actions." Opp. at 13. Plaintiffs concede they were not directly harmed by Defendants' actions. Rather,

10

Plaintiffs purportedly "divert[ed] resources"[4] to "combat" unspecified "effects" of allegedly "foreseeable" discriminatory conduct directed at *third parties*: the minority homeowners who *themselves* experienced alleged discrimination.

Tellingly, Plaintiffs make no effort to distinguish the proximate cause cases cited by Defendants. *See* Br. at 17-19. FHA claims based on similarly indirect allegations of injury were recently dismissed in yet another case in this District.[5] In *County of Cook v. HSBC*, 2018 WL 2431987, at *3 (N.D. Ill. May 30, 2018), Judge Lee granted in part HSBC's motion to dismiss because the complaint failed to "plausibly plead that its injuries were proximately caused by a violation of the FHA." The court acknowledged Congress confers broad standing to bring FHA claims,[6] but explained that the Supreme Court "took a more exacting approach" "[a]s to the question of causation." *Id.* at *4. The court dismissed the county's claims to the extent that its alleged injuries were "too attenuated from HSBC's challenged conduct to proceed," including claims based on costs the county incurred providing social services to the minority homeowners whose homes were foreclosed upon as a result of HSBC's alleged discrimination. *Id.* at *7 ("such injuries are derivative of the injury that HSBC caused to the minority borrowers themselves and, therefore, insufficient to satisfy the directness requirement."). The county's *indirect* injuries resulting from its non-compulsory response to *direct* injuries allegedly suffered by minority homeowners were not sufficient to establish proximate cause under the FHA. That is precisely what is alleged here, which is not enough.

---

[4]Plaintiffs allege no facts to support the assertion that they were "forced to" take any of the actions that preceded their filing of this lawsuit, including their flawed study.
[5]Contrary to Plaintiffs' assertion, *City of Miami* and the three recent *Cook County* decisions show that proximate cause is in fact "appropriate for decision on a motion to dismiss." Opp. at 14.
[6]Plaintiffs would have the Court believe that Defendants' decision not to generally challenge Plaintiffs' standing somehow undermines Defendants' proximate cause argument. *See* Opp. at 13. That is false, as shown by Judge Lee's distinction between standing and the "more exacting" proximate cause standard.

## IV.    Plaintiffs Inadequately Plead Additional Claim-Specific Elements

The Complaint fails to allege facts showing Defendants' alleged conduct made homes unavailable in connection with a real estate transaction, and nothing in the Opposition changes that. Br. at 19-20. Plaintiffs' differing maintenance allegations do not equate to allegations that these differences actually resulted in a disparity of home sales or rentals. As such, the Complaint fails to state a claim under the FHA.

### A.    Plaintiffs Do Not State a Claim Under Sections 3604 and 3605 of the FHA.

Plaintiffs allege that the exterior conditions of homes make them unavailable to potential purchasers by comparing Defendants' alleged conduct to "racial steering" cases where testers sought to purchase a home, but were denied. Opp. at 20-21. This comparison, and Plaintiffs' citations to *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135 (6th Cir. 1985); 24 C.F.R. § 100.70(a), (c), are misplaced.

In *Heights Cmty.*, the court considered whether statements and conduct toward particular testers "would have an untoward effect" on their attempts to "seek[] housing." 774 F.2d at 140. Section 100.70 similarly applies only to persons "seeking, negotiating for, buying or renting a dwelling[,]" calling the prohibited conduct "unlawful steering practices." Such practices, as identified in *Heights Cmty.*, give rise to a Section 3604 or 3605 claim precisely because they identify transactions where housing was made unavailable to certain persons. Here, the Complaint cites no examples of transactions being frustrated in neighborhoods of color at disparate rates when compared to transactions in majority-white neighborhoods. Similarly, it identifies no instance where a party sought to engage in a real estate transaction, but was denied the ability to do so because of Defendants' alleged conduct.

Undaunted, Plaintiffs claim that Sections 3604 and 3605 are broad enough to include instances where poor maintenance affects the "prospective" availability of vacant properties for

sale. Opp. at 21-22. *Southend Neighborhood Improvement Ass'n v. County of St. Clair*, 743 F.2d 1207 (7th Cir. 1984), holds otherwise. In *Southend*, the court rejected FHA claims alleging that a county's failure to maintain homes made them "unavailable[.]" *Id.* at 1209. This is distinct from the "provision of services" issue Plaintiffs state is no longer good law. *See* Opp. at 21; *see also Bloch*, 587 F.3d at 777 (citing *Southend*); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 192 (4th Cir. 1999) (same). A complaint fails to state a claim where, as here, it merely speculates that properties will be made unavailable because their appearance may make them more difficult to sell.

Plaintiffs also incorrectly state that Section 3604(b) and its implementing regulation, 24 C.F.R. § 100.65(b)(2), apply to Defendants' alleged maintenance practices. Section 100.65 contemplates maintenance practices that occur "*after* the tenant or owner has come into possession of the dwelling[.]" *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 713-14 (9th Cir. 2009) (emphasis added). The cases cited by Plaintiffs (Opp. at 22) support the same conclusion—both applied exclusively to denials of maintenance made *after* the properties were occupied. The Complaint makes no allegation that a homeowner's occupation of a home was disturbed by Defendants' alleged maintenance practices, and therefore fails to state a claim under Sections 3604 and 3605.

### B. Plaintiffs Do Not State a "Perpetuation of Segregation" Claim.

Plaintiffs ignore the fact that allegations of perpetuated segregation are outside the zone of interests that the FHA protects, and cannot be proximately attributed to Defendants' alleged conduct. Br. at 21-22. Cases cited by Plaintiffs do not address these issues. *See* Opp. at 22-23. Rather, Plaintiffs' cited cases at most demonstrate that perpetuating segregation is a factor in a court's analysis for *other* claims brought under the FHA. *See Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1289-90 (7th Cir. 1977) (segregation was a "necessary and

foreseeable consequence" creating liability under 3604(a)); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 937-38 (2d Cir. 1988) (analyzing segregation for effects under disparate impact analysis). They do not recognize a free-standing "perpetuation of segregation" claim under the FHA. For all of these reasons, Count IV should be dismissed.

### C. Plaintiffs' Section 3617 Claim Misconstrues the Law.

Plaintiffs attempt to save their Section 3617 claim by stating it is enough that Defendants "interfered with" the rights of minority homeowners and with Plaintiffs' operations. Opp. at 23-24. Even if Section 3617 extends to broad forms of "interference" with housing rights, Plaintiffs do not state why Defendants' alleged poor maintenance occurred *as a result of* a party complaining that their FHA rights were violated, as is required. Plaintiffs try to muddy this issue by stating Section 3617 "covers conduct beyond 'retaliation.'" *Id.* at 24. In fact, Plaintiffs' cited cases hold: "To qualify for a § 3617 claim, a defendant's 'interference' must still be in retaliation for a plaintiff having 'aided or encouraged' another's enjoyment of the housing rights protected [by the Fair Housing Act]." *Linkletter v. W. & S. Fin. Grp. Inc.*, 851 F.3d 632, 638 (6th Cir. 2017); *see also Walker v. City of Lakewood*, 272 F.3d 1114, 1128-30 (9th Cir. 2001) (the interference must be retaliatory to satisfy the "requisite causal link" under Section 3617); *Willborn*, 2011 WL 1900455, at *7 (defendants must interfere with plaintiff "on account of h[is] protected activity"). Plaintiffs have not alleged Defendants' conduct was on account of a party exercising their rights under the FHA, and therefore, fail to state a claim under Section 3617.

### V. **Plaintiffs' Claims Are Facially Untimely**

Plaintiffs invoke the continuing violation doctrine to bootstrap their untimely claims into the applicable limitations periods (after February 26, 2012, for Deutsche Bank and after February

14, 2015, for Ocwen and Altisource),[7] but that limited doctrine does not apply here. First, Plaintiffs fail to allege a violation during the applicable limitations periods that "can serve as the anchor for the earlier conduct[,]" (*Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir. 1994)), as Plaintiffs' statistical allegations rely on data that is outside of the limitations periods. *See City of Miami*, 171 F. Supp. 3d at 1320 n.3 ("[l]umping together eight years of data (2004–2012) to allege a disparity does not make out a plausible claim that a disparity tied to Defendants' policies resulted in a single year (2012) within that data set"). Despite Plaintiffs' elementary statement that a plaintiff is not required to plead "all facts" "to prevail" (Opp. at 25), threadbare conclusory statements, like Plaintiffs' other allegations of discrimination, are insufficient to state a claim during the limitations periods. *See City of Miami*, 171 F. Supp. 3d at 1317-19; *see also City of L.A. v. Wells Fargo & Co.*, 2015 WL 4398858, at *5-*8 (C.D. Cal. July 17, 2015), *aff'd*, 691 F. App'x 453 (9th Cir. 2017) (holding the continuing violation doctrine did not apply because the plaintiff failed to show a FHA violation within the limitations period).

Second, the Complaint reveals Plaintiffs knew of the basis of their claims by 2011. Plaintiffs argue that their 2011 press release somehow did not put them on notice of their claims, but they cannot have it both ways. If Plaintiffs' press release was enough to "place[] Defendants on notice[,]"which Defendants do not admit, then it also put Plaintiffs on notice of their own claims. Thus, the continuing violation doctrine also does not apply because Plaintiffs were on notice of their claims before the limitations periods. *See, e.g.*, *Ponticiello v. Aramark Unif. & Career Apparel Servs., Inc.*, 2006 WL 2699416, at *7 (N.D. Ill. Sept. 19, 2006) ("The continuing

---

[7]Plaintiffs contend that "[u]nder Defendants' best case argument, only acts of discrimination occurring between 2011 and February 2012 would be timebarred [sic]." Opp. at 24 n.15. Plaintiffs' argument is incorrect because (i) Plaintiffs have failed to allege a viable claim during the applicable limitations periods, (ii) Ocwen and Altisource are *separate, independent* entities from any Deutsche Bank Defendant, and (iii) there was no proceeding against either Ocwen or Altisource until February 14, 2017. At a *minimum*, Plaintiffs' pre-February 14, 2015 claims against Ocwen and Altisource are time-barred.

violation doctrine . . . is inapplicable when the time-barred incident should have indicated to the plaintiff that her rights were violated . . . .  Since [p]laintiff was on notice of the conduct well in advance of the limitations period, they cannot form part of a 'continuing violation.'"); *see also Shanoff v. Ill. Dep't of Human Servs*, 258 F.3d 696, 703 (7th Cir. 2001) (same).

Third, Plaintiffs do not sufficiently allege a pattern or practice that might allow them to invoke the continuing violation doctrine; rather, Plaintiffs challenge "discrete acts," as each alleged instance of purportedly discriminatory conduct is "separate[ly] actionable." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002).[8]  The continuing violation doctrine is inapplicable to such discrete acts. *See id.*

These independent bases preclude the application of the continuing violation doctrine here, and require dismissal of Plaintiffs' claims. *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) ("complaints do not have to anticipate affirmative defenses to survive . . . dismiss[al].  The exception occurs where . . . the complaint itself sets forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely").

## CONCLUSION

For these reasons and those stated in Defendants' opening briefs, the Complaint should be dismissed.[9]

---

[8]Plaintiffs cite *Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968 (N.D. Ill. 2004) to argue that *Morgan*, a Title VII case, should not apply to an FHA case (Opp. at 26 n.18); however, *Wallace* held "*both Havens and Morgan* inform our analysis of whether" acts occurring before the limitations period are actionable under the FHA. 321 F. Supp. 2d at 972 (emphasis added); *see Bloch*, 587 F.3d at 779 (FHA and Title VII "are given like construction").

[9]Plaintiffs agree that all claims against "Deutsche Bank," Deutsche Bank AG, and Ocwen Financial Corp. should be dismissed, and agree to substitute "Altisource Solutions, Inc." for "Altisource Portfolio Solutions, Inc." in the caption of any amended complaint.  *See* Opp. at 32-34.

Dated:  June 27, 2018                    Respectfully submitted,

                                         By: */s/ Debra Bogo-Ernst*
                                         Debra Bogo-Ernst
                                         Stephen J. Kane
                                         MAYER BROWN LLP
                                         71 South Wacker Drive
                                         Chicago, Illinois 60606
                                         Telephone: (312) 782-0600

                                         *Counsel to Defendant Ocwen Financial Corp.*

                                         By: */s/ Kenneth M. Kliebard*
                                         Kenneth M. Kliebard
                                         MORGAN, LEWIS & BOCKIUS LLP
                                         77 West Wacker Drive, Fifth Floor
                                         Chicago, IL 60601
                                         Telephone:  (312) 324-1000

                                         Elizabeth A. Frohlich (admitted *pro hac vice*)
                                         Kevin M. Papay (admitted *pro hac vice*)
                                         MORGAN, LEWIS & BOCKIUS LLP
                                         One Market, Spear Street Tower
                                         San Francisco, CA 94105
                                         Telephone:  (415) 442-1000

                                         *Counsel to Defendants "Deutsche Bank," Deutsche*
                                         *Bank AG, Deutsche Bank National Trust Company,*
                                         *and Deutsche Bank Trust Company Americas*

                                         By: */s/ Kristine M. Schanbacher*
                                         Kristine M. Schanbacher
                                         DENTONS US LLP
                                         233 South Wacker Drive
                                         Suite 5900
                                         Chicago, IL 60606
                                         Telephone:  (312) 876-8000
                                         Email: kristine.schanbacher@dentons.com

                                         Lisa Krigsten (admitted *pro hac vice*)
                                         DENTONS US LLP
                                         4520 Main Street
                                         Suite 1100
                                         Kansas City, MO 64111
                                         Telephone:  (816) 460-2400
                                         Email: lisa.krigsten@dentons.com

Nathan Garroway (admitted *pro hac vice*)
DENTONS US LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone:  (404) 527-4000
Email: nathan.garroway@dentons.com

*Counsel to Defendant Altisource Solutions, Inc.*
*improperly also named as Altisource Portfolio*
*Solutions, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on June 27, 2018.

/s/      *Debra Bogo-Ernst*