# EXHIBIT F
# (PART 2 OF 3)

46

&lt;PAGE&gt;

## Article Three

### ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01.    Servicer to Service Mortgage Loans.

For and on behalf of the Certificateholders, the Servicer shall service and administer the Mortgage Loans in accordance with this Agreement and the Servicing Standard.

The Servicer shall not make or permit any modification, waiver, or amendment of any term of any Mortgage Loan that would cause any REMIC created under this Agreement to fail to qualify as a REMIC or result in the imposition of any tax under section 860F(a) or section 860G(d) of the Code.

Without limiting the generality of the foregoing, the Servicer, in its own name or in the name of the Depositor and the Trustee, is hereby authorized and empowered by the Depositor and the Trustee, when the Servicer believes it appropriate in its reasonable judgment, to execute and deliver, on behalf of the Trustee, the Depositor, the Certificateholders, or any of them, any instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments, with respect to the Mortgage Loans, and with respect to the Mortgaged Properties held for the benefit of the Certificateholders. The Servicer shall prepare and deliver to the Depositor or the Trustee any documents requiring execution and delivery by either or both of them appropriate to enable the Servicer to service and administer the Mortgage Loans to the extent that the Servicer is not permitted to execute and deliver such documents pursuant to the preceding sentence. Upon receipt of the documents, the Depositor or the Trustee shall execute the documents and deliver them to the Servicer.

The Servicer further is authorized and empowered by the Trustee, on behalf of the Certificateholders and the Trustee, in its own name, when the Servicer believes it appropriate in its best judgment to register any Mortgage Loan on the MERS(R) System, or cause the removal from the registration of any Mortgage Loan on the MERS(R) System, to execute and deliver, on behalf of the Trustee and the Certificateholders or any of them, any and all instruments of assignment and other comparable instruments with respect to such assignment or re-recording of a Mortgage in the name of MERS, solely as nominee for the Trustee and its successors and assigns.

In accordance with and to the extent of the Servicing Standard, the Servicer shall advance funds necessary to effect the payment of taxes and assessments on the Mortgaged Properties, which advances shall be reimbursable in the first instance from related collections from the Mortgagors pursuant to Section 3.07, and further as provided in Section 3.09. The costs incurred by the Servicer in effecting the timely payments of taxes and assessments on the Mortgaged Properties and related insurance premiums shall not, for the purpose

of calculating monthly distributions to the Certificateholders, be added to the Stated Principal Balances of the related Mortgage Loans, notwithstanding that the Mortgage Loans so permit.

Nothing in this Agreement to the contrary shall limit the Servicer from undertaking any legal action that it may deem appropriate with respect to the Mortgage Loans including, without limitation, any rights or causes of action arising out of the origination of the Mortgage Loans.

<div align="center">47</div>

&lt;PAGE&gt;

Section 3.02.    [Reserved].

Section 3.03.    Rights of the Depositor and the Trustee in Respect of the Servicer.

The Depositor may, but is not obligated to, enforce the obligations of the Servicer under this Agreement and may, but is not obligated to, perform, or cause a designee to perform, any defaulted obligation of the Servicer under this Agreement and in connection with any such defaulted obligation to exercise the related rights of the Servicer under this Agreement; provided that the Servicer shall not be relieved of any of its obligations under this Agreement by virtue of such performance by the Depositor or its designee. Neither the Trustee nor the Depositor shall have any responsibility or liability for any action or failure to act by the Servicer nor shall the Trustee or the Depositor be obligated to supervise the performance of the Servicer under this Agreement or otherwise.

Section 3.04.    [Reserved].

Section 3.05.    Trustee to Act as Servicer.

If the Servicer for any reason is no longer the Servicer under this Agreement (including because of the occurrence or existence of an Event of Default), the Trustee or its successor shall assume all of the rights and obligations of the Servicer under this Agreement arising thereafter (except that the Trustee shall not be

(i) liable for losses of the Servicer pursuant to Section 3.10 or any acts or omissions of the predecessor Servicer hereunder,

(ii) obligated to make Advances if it is prohibited from doing so by applicable law,

(iii) obligated to effectuate repurchases or substitutions of Mortgage Loans hereunder, including repurchases or substitutions pursuant to Section 2.02 or 2.03,

(iv) responsible for expenses of the Servicer pursuant to Section 2.03, or

(v) deemed to have made any representations and warranties of the Servicer hereunder). Any assumption shall be subject to Section 7.02.

Notwithstanding anything else in this Agreement to the contrary, in no event shall the Trustee be liable for any servicing fee or for any differential in the amount of the Servicing Fee paid under this Agreement and the amount necessary to induce any successor Servicer to act as successor Servicer under this Agreement and the transactions provided for in this Agreement.

        Section 3.06.        Collection of Mortgage Loan Payments;
Certificate Account; Distribution Account.

        (a) In accordance with and to the extent of the Servicing Standard, the
Servicer shall make reasonable efforts in accordance with the customary and
usual standards of practice of prudent mortgage servicers to collect all
payments called for under the Mortgage Loans to the extent the procedures are
consistent with this Agreement and any related Required Insurance Policy.
Consistent with the foregoing, the Servicer may in its discretion (i) waive
any late payment charge or, subject to Section 3.21, any Prepayment Charge in
connection with the prepayment of a Mortgage Loan and (ii) extend the due
dates for payments due on a Delinquent Mortgage Loan for a period not greater
than 125 days. In connection with a seriously delinquent or defaulted Mortgage
Loan, the Servicer may, consistent with the Servicing

                                   48

<PAGE>


Standard, waive, modify or vary any term of that Mortgage Loan (including
modifications that change the Mortgage Rate, forgive the payment of principal
or interest or extend the final maturity date of that Mortgage Loan ), accept
payment from the related Mortgagor of an amount less than the Stated Principal
Balance in final satisfaction of that Mortgage Loan, or consent to the
postponement of strict compliance with any such term or otherwise grant
indulgence to any Mortgagor if in the Servicer's determination such waiver,
modification, postponement or indulgence is not materially adverse to the
interests of the Certificateholders (taking into account any estimated loss
that might result absent such action) and is expected to minimize the loss on
such Mortgage Loan; provided, however, the Servicer shall not initiate new
lending to such Mortgagor through the Trust and cannot, except as provided in
the immediately succeeding sentence, extend the maturity of any Mortgage Loan
past the date on which the final payment is due on the latest maturing
Mortgage Loan as of the Cut-off Date. With respect to no more than 5% of the
Mortgage Loans (measured by aggregate Cut-off Date Principal Balance of the
Mortgage Loans), the Servicer may extend the maturity of a Mortgage Loan past
the date on which the final payment is due on the latest maturing Mortgage
Loan as of the Cut-off Date, but in no event more than one year past such
date. In the event of any such arrangement, the Servicer shall make Advances
on the related Mortgage Loan in accordance with Section 4.01 during the
scheduled period in accordance with the amortization schedule of the Mortgage
Loan without modification thereof because of the arrangements. The Servicer
shall not be required to institute or join in litigation with respect to
collection of any payment (whether under a Mortgage, Mortgage Note, or
otherwise or against any public or governmental authority with respect to a
taking or condemnation) if it reasonably believes that enforcing the provision
of the Mortgage or other instrument pursuant to which the payment is required
is prohibited by applicable law. The Servicer shall not have the discretion to
sell any Delinquent or defaulted Mortgage Loan.

        (b) [Reserved].

        (c) [Reserved].

        (d) The Servicer shall establish and maintain a Certificate Account into
which the Servicer shall deposit on a daily basis (1) within two Business Days
of receipt (in the case of items (i) through (iii) below) and (2) within one
Business Day of receipt (in the case of all other items), except as otherwise
specified herein, the following payments and collections received by it in
respect of Mortgage Loans after the Cut-off Date (other than in respect of
principal and interest due on the Mortgage Loans by the Cut-off Date) and the
following amounts required to be deposited hereunder:

        (i) all payments on account of principal on the Mortgage Loans,

including Principal Prepayments;

        (ii) all payments on account of interest on the Mortgage Loans, net of the Servicing Fee;

        (iii) all Insurance Proceeds, Subsequent Recoveries and Liquidation Proceeds, other than proceeds to be applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor in accordance with the Servicer's normal servicing procedures;

        (iv) any amount required to be deposited by the Servicer pursuant to Section 3.06(f) in connection with any losses on Permitted Investments;

        (v) any amounts required to be deposited by the Servicer pursuant to Sections 3.10 and 3.12;

<center>49</center>

<PAGE>

        (vi) all Purchase Prices from the Servicer or Seller and all Substitution Adjustment Amounts;

        (vii) all Advances made by the Servicer pursuant to Section 4.01;

        (viii) any other amounts required to be deposited under this Agreement; and

        (ix) all Prepayment Charges collected.

In addition, with respect to any Mortgage Loan that is subject to a buydown agreement, on each Due Date for the Mortgage Loan, in addition to the monthly payment remitted by the Mortgagor, the Servicer shall cause funds to be deposited into the Certificate Account in an amount required to cause an amount of interest to be paid with respect to the Mortgage Loan equal to the amount of interest that has accrued on the Mortgage Loan from the preceding Due Date at the Mortgage Rate net of the Servicing Fee Rate on that date.

The foregoing requirements for remittance by the Servicer shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments in the nature of late payment charges or assumption fees, if collected, need not be remitted by the Servicer. If the Servicer remits any amount not required to be remitted, it may at any time withdraw that amount from the Certificate Account, any provision in this Agreement to the contrary notwithstanding. The withdrawal or direction may be accomplished by delivering written notice of it to the Trustee or any other institution maintaining the Certificate Account that describes the amounts deposited in error in the Certificate Account. The Servicer shall maintain adequate records with respect to all withdrawals made pursuant to this Section 3.06. All funds deposited in the Certificate Account shall be held in trust for the Certificateholders until withdrawn in accordance with Section 3.09.

(e) The Trustee shall establish and maintain the Distribution Account on behalf of the Certificateholders. The Trustee shall, promptly upon receipt, deposit in the Distribution Account and retain in the Distribution Account the following:

        (i) the aggregate amount remitted by the Servicer to the Trustee pursuant to Section 3.09(a);

        (ii) any amount deposited by the Servicer pursuant to Section 3.06(f) in connection with any losses on Permitted Investments; and

(iii) any other amounts deposited under Section 4.08 or any other Section of this Agreement that are required to be deposited in the Distribution Account.

If the Servicer remits any amount not required to be remitted, it may at any time direct the Trustee in writing to withdraw that amount from the Distribution Account, any provision in this Agreement to the contrary notwithstanding. The direction may be accomplished by delivering an Officer's Certificate to the Trustee that describes the amounts deposited in error in the Distribution Account. All funds deposited in the Distribution Account shall be held by the Trustee in trust for the Certificateholders until disbursed in accordance with this Agreement or withdrawn in accordance with Section 3.09. In no event shall the Trustee incur liability for withdrawals from the Distribution Account at the direction of the Servicer.

(f) Each institution at which the Certificate Account is maintained shall invest the funds in such account as directed in writing by the Servicer in Permitted Investments, which shall mature not later

50

<PAGE>

than the second Business Day preceding the related Distribution Account Deposit Date (except that if the Permitted Investment is an obligation of the institution that maintains the account, then the Permitted Investment shall mature not later than the Business Day preceding the Distribution Account Deposit Date) and which shall not be sold or disposed of before its maturity. The funds in the Distribution Account shall remain uninvested. All such Permitted Investments shall be made in the name of the Trustee, for the benefit of the Certificateholders. All income realized from any such investment of funds on deposit in the Certificate Account shall be for the benefit of the Servicer as servicing compensation and shall be remitted to it monthly as provided in this Agreement. The amount of any realized losses on Permitted Investments in the Certificate Account shall promptly be deposited by the Servicer in the Certificate Account. The Trustee shall not be liable for the amount of any loss incurred in respect of any investment or lack of investment of funds held in the Certificate Account and made in accordance with this Section 3.06.

(g)   [Reserved]

(h) The Servicer shall give notice to the Trustee, the Seller, each Rating Agency and the Depositor of any proposed change of the location of the Certificate Account not later than 30 days and not more than 45 days prior to any change of this Agreement. The Trustee shall give notice to the Servicer, the Seller, each Rating Agency and the Depositor of any proposed change of the location of the Distribution Account not later than 30 days and not more than 45 days prior to any change of this Agreement.

Section 3.07.     Collection of Taxes, Assessments and Similar Items; Escrow Accounts.

(a) To the extent required by the related Mortgage Note and not violative of current law, the Servicer shall establish and maintain one or more accounts (each, an "Escrow Account") and deposit and retain therein all collections from the Mortgagors (or advances) for the payment of taxes, assessments, hazard insurance premiums or comparable items for the account of the Mortgagors. Nothing herein shall require the Servicer to compel a Mortgagor to establish an Escrow Account in violation of applicable law.

(b) Withdrawals of amounts so collected from the Escrow Accounts may be made only to effect timely payment of taxes, assessments, hazard insurance premiums, condominium or PUD association dues, or comparable items, to

reimburse (without duplication) the Servicer out of related collections for any payments made pursuant to Section 3.01 (with respect to taxes and assessments and insurance premiums) and Section 3.10 (with respect to hazard insurance), to refund to any Mortgagors any sums determined to be overages, to pay interest, if required by law or the related Mortgage or Mortgage Note, to Mortgagors on balances in the Escrow Account or to clear and terminate the Escrow Account at the termination of this Agreement in accordance with Section 9.01. The Escrow Accounts shall not be a part of the Trust Fund.

(c) The Servicer shall advance any payments referred to in Section 3.07(a) that are not timely paid by the Mortgagors or advanced by the Servicer on the date when the tax, premium or other cost for which such payment is intended is due, but the Servicer shall be required so to advance only to the extent that such advances, in the good faith judgment of the Servicer, will be recoverable by the Servicer out of Insurance Proceeds, Liquidation Proceeds or otherwise.

Section 3.08.     Access to Certain Documentation and Information Regarding the Mortgage Loans.

The Servicer shall afford the Depositor and the Trustee reasonable access to all records and documentation regarding the Mortgage Loans and all accounts, insurance information and other matters

51

<PAGE>

relating to this Agreement, such access being afforded without charge, but only upon reasonable request and during normal business hours at the office designated by the Servicer.

Upon reasonable advance notice in writing, the Servicer will provide to each Certificateholder or Certificate Owner that is a savings and loan association, bank, or insurance company certain reports and reasonable access to information and documentation regarding the Mortgage Loans sufficient to permit the Certificateholder or Certificate Owner to comply with applicable regulations of the OTS or other regulatory authorities with respect to investment in the Certificates. The Servicer shall be entitled to be reimbursed by each such Certificateholder or Certificate Owner for actual expenses incurred by the Servicer in providing the reports and access.

Section 3.09.     Permitted Withdrawals from the Certificate Account and the Distribution Account.

(a) The Servicer may (and, in the case of clause (ix) below, shall) from time to time make withdrawals from the Certificate Account for the following purposes:

(i) to pay to the Servicer (to the extent not previously retained) the servicing compensation to which it is entitled pursuant to Section 3.15, and to pay to the Servicer, as additional master servicing compensation, earnings on or investment income with respect to funds in or credited to the Certificate Account;

(ii) to reimburse the Servicer or successor Servicer for the unreimbursed Advances made by it, such right of reimbursement pursuant to this subclause (ii) being limited to amounts received on the Mortgage Loans in respect of which the Advance was made;

(iii) to reimburse the Servicer or successor Servicer for any Nonrecoverable Advance previously made by it;

(iv) to reimburse the Servicer for Insured Expenses from the

related Insurance Proceeds;

(v) to reimburse the Servicer for (a) unreimbursed Servicing Advances, the Servicer's right to reimbursement pursuant to this clause (a) with respect to any Mortgage Loan being limited to amounts received on the Mortgage Loans that represent late recoveries of the payments for which the advances were made pursuant to Section 3.01 or Section 3.07, (b) unreimbursed Servicing Advances made in respect of a Mortgage Loan for which such Servicing Advances are no recoverable from the Mortgagor and (c) for unpaid Servicing Fees as provided in Section 3.12;

(vi) to pay to the purchaser, with respect to each Mortgage Loan or property acquired in respect of such Mortgage Loan that has been purchased pursuant to Section 2.02, 2.03, or 3.12, all amounts received thereon after the date of such purchase;

(vii) to reimburse the Seller, the Servicer, or the Depositor for expenses incurred by any of them and reimbursable pursuant to Section 6.03;

(viii) to withdraw any amount deposited in the Certificate Account and not required to be deposited in the Certificate Account;

52

<PAGE>

(ix) by the Distribution Account Deposit Date, to withdraw (1) the Available Funds and the Trustee Fee for the Distribution Date, to the extent on deposit, and (2) the Prepayment Charges on deposit, and remit such amount to the Trustee for deposit in the Distribution Account; and

(x) to clear and terminate the Certificate Account upon termination of this Agreement pursuant to Section 9.01.

The Servicer shall keep and maintain separate accounting, on a Mortgage Loan by Mortgage Loan basis, to justify any withdrawal from the Certificate Account pursuant to subclauses (i), (ii), (iv), (v) and (vi). Before making any withdrawal from the Certificate Account pursuant to subclause (iii), the Servicer shall deliver to the Trustee an Officer's Certificate of a Servicing Officer indicating the amount of any previous Advance determined by the Servicer to be a Nonrecoverable Advance and identifying the related Mortgage Loans and their respective portions of the Nonrecoverable Advance.

(b) The Trustee shall withdraw funds from the Distribution Account for distributions to Certificateholders in the manner specified in this Agreement (and to withhold from the amounts so withdrawn the amount of any taxes that it is authorized to withhold pursuant to the last paragraph of Section 8.11). In addition, the Trustee may from time to time make withdrawals from the Distribution Account for the following purposes:

(i) to pay to itself the Trustee Fee for the related Distribution Date;

(ii) to withdraw and return to the Servicer any amount deposited in the Distribution Account and not required to be deposited therein; and

(iii) to clear and terminate the Distribution Account upon termination of the Agreement pursuant to Section 9.01.

Section 3.10.　　Maintenance of Hazard Insurance; Maintenance of Primary Insurance Policies.

(a) The Servicer shall maintain, for each Mortgage Loan, hazard insurance with extended coverage in an amount that is at least equal to the lesser of

      (i) the maximum insurable value of the improvements securing the Mortgage Loan and

      (ii) the greater of (y) the outstanding principal balance of the Mortgage Loan and (z) an amount such that the proceeds of the policy are sufficient to prevent the Mortgagor or the mortgagee from becoming a co-insurer.

Each policy of standard hazard insurance shall contain, or have an accompanying endorsement that contains, a standard mortgagee clause. Any amounts collected under the policies (other than the amounts to be applied to the restoration or repair of the related Mortgaged Property or amounts released to the Mortgagor in accordance with the Servicer's normal servicing procedures) shall be deposited in the Certificate Account. Any cost incurred in maintaining any insurance shall not, for the purpose of calculating monthly distributions to the Certificateholders or remittances to the Trustee for their benefit, be added to the principal balance of the Mortgage Loan, notwithstanding that the Mortgage Loan so permits. Such costs shall be recoverable by the Servicer out of late payments by the related Mortgagor or out of Liquidation Proceeds to the extent permitted by Section 3.09. No earthquake or other additional

<div align="center">53</div>

<PAGE>

insurance is to be required of any Mortgagor or maintained on property acquired in respect of a Mortgage other than pursuant to any applicable laws and regulations in force that require additional insurance. If the Mortgaged Property is located at the time of origination of the Mortgage Loan in a federally designated special flood hazard area and the area is participating in the national flood insurance program, the Servicer shall maintain flood insurance for the Mortgage Loan. The flood insurance shall be in an amount equal to the least of (i) the original principal balance of the related Mortgage Loan, (ii) the replacement value of the improvements that are part of the Mortgaged Property, and (iii) the maximum amount of flood insurance available for the related Mortgaged Property under the national flood insurance program.

If the Servicer obtains and maintains a blanket policy insuring against hazard losses on all of the Mortgage Loans, it shall have satisfied its obligations in the first sentence of this Section 3.10. The policy may contain a deductible clause on terms substantially equivalent to those commercially available and maintained by comparable servicers. If the policy contains a deductible clause and a policy complying with the first sentence of this Section 3.10 has not been maintained on the related Mortgaged Property, and if a loss that would have been covered by the required policy occurs, the Servicer shall deposit in the Certificate Account, without any right of reimbursement, the amount not otherwise payable under the blanket policy because of the deductible clause. In connection with its activities as Servicer of the Mortgage Loans, the Servicer agrees to present, on behalf of itself, the Depositor, and the Trustee for the benefit of the Certificateholders, claims under any blanket policy.

(b) The Servicer shall not take any action that would result in non-coverage under any applicable Primary Insurance Policy of any loss that, but for the actions of the Servicer, would have been covered thereunder. The Servicer shall not cancel or refuse to renew any Primary Insurance Policy that is in effect at the date of the initial issuance of the Certificates and is

required to be kept in force hereunder unless the replacement Primary Insurance Policy for the canceled or non-renewed policy is maintained with a Qualified Insurer. The Servicer need not maintain any Primary Insurance Policy if maintaining the Primary Insurance Policy is prohibited by applicable law. The Servicer agrees, to the extent permitted by applicable law, to effect the timely payment of the premiums on each Primary Insurance Policy, and any costs not otherwise recoverable shall be recoverable by the Servicer from the related liquidation proceeds.

In connection with its activities as Servicer of the Mortgage Loans, the Servicer agrees to present, on behalf of itself, the Trustee and the Certificateholders, claims to the insurer under any Primary Insurance Policies and, in this regard, to take any reasonable action in accordance with the Servicing Standard necessary to permit recovery under any Primary Insurance Policies respecting defaulted Mortgage Loans. Any amounts collected by the Servicer under any Primary Insurance Policies shall be deposited in the Certificate Account.

Section 3.11.        Enforcement of Due-On-Sale Clauses; Assumption Agreements.

(a) Except as otherwise provided in this Section 3.11, when any property subject to a Mortgage has been conveyed by the Mortgagor, the Servicer shall to the extent that it has knowledge of the conveyance and in accordance with the Servicing Standard, enforce any due-on-sale clause contained in any Mortgage Note or Mortgage, to the extent permitted under applicable law and governmental regulations, but only to the extent that enforcement will not adversely affect or jeopardize coverage under any Required Insurance Policy. Notwithstanding the foregoing, the Servicer is not required to exercise these rights with respect to a Mortgage Loan if the Person to whom the related Mortgaged Property has been conveyed or is proposed to be conveyed satisfies the conditions contained in the Mortgage Note and Mortgage related thereto and the consent of the mortgagee under the Mortgage Note or Mortgage is not otherwise so required under the Mortgage Note or Mortgage as a condition to the transfer.

54

<PAGE>

If (i) the Servicer is prohibited by law from enforcing any due-on-sale clause, (ii) coverage under any Required Insurance Policy would be adversely affected, (iii) the Mortgage Note does not include a due-on-sale clause, or (iv) nonenforcement is otherwise permitted hereunder, the Servicer is authorized, subject to Section 3.11(b), to take or enter into an assumption and modification agreement from or with the person to whom the property has been or is about to be conveyed, pursuant to which the person becomes liable under the Mortgage Note and, unless prohibited by applicable state law, the Mortgagor remains liable thereon. The Mortgage Loan must continue to be covered (if so covered before the Servicer enters into the agreement) by the applicable Required Insurance Policies.

The Servicer, subject to Section 3.11(b), is also authorized with the prior approval of the insurers under any Required Insurance Policies to enter into a substitution of liability agreement with the Person, pursuant to which the original Mortgagor is released from liability and the Person is substituted as Mortgagor and becomes liable under the Mortgage Note. Notwithstanding the foregoing, the Servicer shall not be deemed to be in default under this Section 3.11 because of any transfer or assumption that the Servicer reasonably believes it is restricted by law from preventing, for any reason whatsoever.

(b) Subject to the Servicer's duty to enforce any due-on-sale clause to the extent set forth in Section 3.11(a), in any case in which a Mortgaged

Property has been conveyed to a Person by a Mortgagor, and the Person is to enter into an assumption agreement or modification agreement or supplement to the Mortgage Note or Mortgage that requires the signature of the Trustee, or if an instrument of release signed by the Trustee is required releasing the Mortgagor from liability on the Mortgage Loan, the Servicer shall prepare and deliver to the Trustee for signature and shall direct the Trustee, in writing, to execute the assumption agreement with the Person to whom the Mortgaged Property is to be conveyed, and the modification agreement or supplement to the Mortgage Note or Mortgage or other instruments appropriate to carry out the terms of the Mortgage Note or Mortgage or otherwise to comply with any applicable laws regarding assumptions or the transfer of the Mortgaged Property to the Person. In connection with any such assumption, no material term of the Mortgage Note may be changed.

In addition, the substitute Mortgagor and the Mortgaged Property must be acceptable to the Servicer in accordance with its underwriting standards as then in effect. Together with each substitution, assumption, or other agreement or instrument delivered to the Trustee for execution by it, the Servicer shall deliver an Officer's Certificate signed by a Servicing Officer stating that the requirements of this subsection have been met in connection with such Officer's Certificate. The Servicer shall notify the Trustee that any substitution or assumption agreement has been completed by forwarding to the Trustee the original of the substitution or assumption agreement, which in the case of the original shall be added to the related Mortgage File and shall, for all purposes, be considered a part of the Mortgage File to the same extent as all other documents and instruments constituting a part of the Mortgage File. The Servicer will retain any fee collected by it for entering into an assumption or substitution of liability agreement as additional servicing compensation.

Section 3.12.    Realization Upon Defaulted Mortgage Loans.

The Servicer shall use reasonable efforts in accordance with the Servicing Standard to foreclose on or otherwise comparably convert the ownership of assets securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments. In connection with the foreclosure or other conversion, the Servicer shall follow the Servicing Standard and shall follow the requirements of the insurer under any Required Insurance Policy. The Servicer shall not be required to expend its own funds in connection with any foreclosure or towards the restoration of any property unless it determines (i) that the restoration or foreclosure will increase the proceeds of liquidation of the Mortgage Loan after reimbursement to itself of restoration

55

<PAGE>

expenses and (ii) that restoration expenses will be recoverable to it through Liquidation Proceeds (respecting which it shall have priority for purposes of withdrawals from the Certificate Account). The Servicer shall be responsible for all other costs and expenses incurred by it in any foreclosure proceedings. The Servicer is entitled to reimbursement of such costs and expenses from the liquidation proceeds with respect to the related Mortgaged Property, as provided in the definition of Liquidation Proceeds. If the Servicer has knowledge that a Mortgaged Property that the Servicer is contemplating acquiring in foreclosure or by deed in lieu of foreclosure is located within a one mile radius of any site listed in the Expenditure Plan for the Hazardous Substance Clean Up Bond Act of 1984 or other site with environmental or hazardous waste risks known to the Servicer, the Servicer will, before acquiring the Mortgaged Property, consider the risks and only take action in accordance with its established environmental review procedures.

With respect to any REO Property, the deed or certificate of sale shall be taken in the name of the Trustee for the benefit of the Certificateholders, or its nominee, on behalf of the Certificateholders. The Trustee's name shall be placed on the title to the REO Property solely as the Trustee hereunder and not in its individual capacity. The Servicer shall ensure that the title to the REO Property references the Pooling and Servicing Agreement and the Trustee's capacity hereunder. Pursuant to its efforts to sell the REO Property, the Servicer shall either itself or through an agent selected by the Servicer protect and conserve the REO Property in accordance with the Servicing Standard.

The Servicer shall perform the tax reporting and withholding required by sections 1445 and 6050J of the Code with respect to foreclosures and abandonments, the tax reporting required by section 6050H of the Code with respect to the receipt of mortgage interest from individuals and, if required by section 6050P of the Code with respect to the cancellation of indebtedness by certain financial entities, by preparing any required tax and information returns, in the form required.

If the Trust Fund acquires any Mortgaged Property as aforesaid or otherwise in connection with a default or imminent default on a Mortgage Loan, the REO Property shall only be held temporarily, shall be actively marketed for sale, and the Servicer shall dispose of the Mortgaged Property as soon as practicable, and in any case before the end of the third calendar year following the calendar year in which the Trust Fund acquires the property. Notwithstanding any other provision of this Agreement, no Mortgaged Property acquired by the Trust Fund shall be rented (or allowed to continue to be rented) or otherwise used for the production of income by or on behalf of the Trust Fund.

The decision of the Servicer to foreclose on a defaulted Mortgage Loan shall be subject to a determination by the Servicer that the proceeds of the foreclosure would exceed the costs and expenses of bringing a foreclosure proceeding. The proceeds received from the maintenance of any REO Properties, net of reimbursement to the Servicer for costs incurred (including any property or other taxes) in connection with maintenance of the REO Properties and net of unreimbursed Servicing Fees, Advances, and Servicing Advances, shall be applied to the payment of principal of and interest on the related defaulted Mortgage Loans (with interest accruing as though the Mortgage Loans were still current and adjustments, if applicable, to the Mortgage Rate were being made in accordance with the Mortgage Note) and all such proceeds shall be deemed, for all purposes in this Agreement, to be payments on account of principal and interest on the related Mortgage Notes and shall be deposited into the Certificate Account. To the extent the net proceeds received during any calendar month exceeds the amount attributable to amortizing principal and accrued interest at the related Mortgage Rate on the related Mortgage Loan for the calendar month, the excess shall be considered to be a partial prepayment of principal of the related Mortgage Loan.

The proceeds from any liquidation of a Mortgage Loan, as well as any proceeds from an REO Property, will be applied in the following order of priority: first, to reimburse the Servicer for any related

56

<PAGE>

unreimbursed Servicing Advances or Servicing Fees or for any related unreimbursed Advances, as applicable; second, to reimburse the Servicer, as applicable, and to reimburse the Certificate Account for any Nonrecoverable Advances (or portions thereof) that were previously withdrawn by the Servicer pursuant to Section 3.09(a)(iii) that related to the Mortgage Loan; third, to accrued and unpaid interest (to the extent no Advance has been made for such

amount or any such Advance has been reimbursed) on the Mortgage Loan or related REO Property, at the Adjusted Net Mortgage Rate to the Due Date occurring in the month in which such amounts are required to be distributed; and fourth, as a recovery of principal of the Mortgage Loan. The Servicer will retain any Excess Proceeds from the liquidation of a Liquidated Mortgage Loan as additional servicing compensation pursuant to Section 3.15.

The Servicer may agree to a modification of any Mortgage Loan at the request of the related Mortgagor if (i) the modification is in lieu of a refinancing and (ii) the Servicer purchases that Mortgage Loan from the Trust Fund as described below. Upon the agreement of the Servicer to modify a Mortgage Loan in accordance with the preceding sentence, the Servicer shall purchase that Mortgage Loan and all interest of the Trustee in that Mortgage Loan shall automatically be deemed transferred and assigned to the Servicer and all benefits and burdens of ownership thereof, including the right to accrued interest thereon from the date of purchase and the risk of default thereon, shall pass to the Servicer. The Servicer shall promptly deliver to the Trustee a certification of a Servicing Officer to the effect that all requirements of this paragraph have been satisfied with respect to a Mortgage Loan to be repurchased pursuant to this paragraph.

The Servicer shall deposit the Purchase Price for any Mortgage Loan repurchased pursuant to Section 3.12 in the Certificate Account pursuant to Section 3.06 within one Business Day after the purchase of the Mortgage Loan. Upon receipt by the Trustee of written notification of any such deposit signed by a Servicing Officer, the Trustee shall release to the Servicer the related Mortgage File and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in the Servicer any Mortgage Loan previously transferred and assigned pursuant hereto. The Servicer covenants and agrees to indemnify the Trust Fund against any liability for any "prohibited transaction" taxes and any related interest, additions, and penalties imposed on the Trust Fund established hereunder as a result of any modification of a Mortgage Loan effected pursuant to this Section, or any purchase of a Mortgage Loan by the Servicer in connection with a modification (but such obligation shall not prevent the Servicer or any other appropriate Person from contesting any such tax in appropriate proceedings and shall not prevent the Servicer from withholding payment of such tax, if permitted by law, pending the outcome of such proceedings). The Servicer shall have no right of reimbursement for any amount paid pursuant to the foregoing indemnification, except to the extent that the amount of any tax, interest, and penalties, together with interest thereon, is refunded to the Trust Fund.

Section 3.13.    Trustee to Cooperate; Release of Mortgage Files.

Upon the payment in full of any Mortgage Loan, or the receipt by the Servicer of a notification that payment in full will be escrowed in a manner customary for such purposes, the Servicer will immediately notify the Trustee by delivering a Request for Release substantially in the form of Exhibit N. Upon receipt of the request, the Trustee shall promptly release the related Mortgage File to the Servicer, and the Trustee shall at the Servicer's direction execute and deliver to the Servicer the request for reconveyance, deed of reconveyance, or release or satisfaction of mortgage or such instrument releasing the lien of the Mortgage in each case provided by the Servicer, together with the Mortgage Note with written evidence of cancellation thereon. The Servicer is authorized to cause the removal from the registration on the MERS System of such Mortgage and to execute and deliver, on behalf of the Trustee and the Certificateholders or any of them, any and all instruments of satisfaction or cancellation or of partial or full release. Expenses incurred in connection with any instrument of satisfaction or deed of reconveyance shall be chargeable to the related Mortgagor.

57

From time to time and as shall be appropriate for the servicing or foreclosure of any Mortgage Loan, including for such purpose collection under any policy of flood insurance, any fidelity bond or errors or omissions policy, or for the purposes of effecting a partial release of any Mortgaged Property from the lien of the Mortgage or the making of any corrections to the Mortgage Note or the Mortgage or any of the other documents included in the Mortgage File, the Trustee shall, upon delivery to the Trustee of a Request for Release in the form of Exhibit M signed by a Servicing Officer, release the Mortgage File to the Servicer or its designee. Subject to the further limitations set forth below, the Servicer shall cause the Mortgage File or documents so released to be returned to the Trustee when the need therefor by the Servicer no longer exists, unless the Mortgage Loan is liquidated and the proceeds thereof are deposited in the Certificate Account, in which case the Servicer shall deliver to the Trustee a Request for Release in the form of Exhibit N, signed by a Servicing Officer.

If the Servicer at any time seeks to initiate a foreclosure proceeding in respect of any Mortgaged Property as authorized by this Agreement, the Servicer shall deliver to the Trustee, for signature, as appropriate, any court pleadings, requests for trustee's sale, or other documents necessary to effectuate such foreclosure or any legal action brought to obtain judgment against the Mortgagor on the Mortgage Note or the Mortgage or to obtain a deficiency judgment or to enforce any other remedies or rights provided by the Mortgage Note or the Mortgage or otherwise available at law or in equity.

Section 3.14.    Documents, Records and Funds in Possession of the Servicer to be Held for the Trustee.

The Servicer shall account fully to the Trustee for any funds it receives or otherwise collects as Liquidation Proceeds or Insurance Proceeds in respect of any Mortgage Loan. All Mortgage Files and funds collected or held by, or under the control of, the Servicer in respect of any Mortgage Loans, whether from the collection of principal and interest payments or from Liquidation Proceeds, including any funds on deposit in the Certificate Account, shall be held by the Servicer for and on behalf of the Trustee and shall be and remain the sole and exclusive property of the Trustee, subject to the applicable provisions of this Agreement. The Servicer also agrees that it shall not create, incur or subject any Mortgage File or any funds that are deposited in the Certificate Account, the Distribution Account, or any Escrow Account, or any funds that otherwise are or may become due or payable to the Trustee for the benefit of the Certificateholders, to any claim, lien, security interest, judgment, levy, writ of attachment, or other encumbrance, or assert by legal action or otherwise any claim or right of setoff against any Mortgage File or any funds collected on, or in connection with, a Mortgage Loan, except, however, that the Servicer shall be entitled to set off against and deduct from any such funds any amounts that are properly due and payable to the Servicer under this Agreement.

Section 3.15.    Servicing Compensation.

As compensation for its activities hereunder, the Servicer may retain or withdraw from the Certificate Account the Servicing Fee for each Mortgage Loan for the related Distribution Date. Notwithstanding the foregoing, the Servicing Fee payable to the Servicer shall be reduced by the lesser of the aggregate of the Prepayment Interest Shortfalls with respect to the Distribution Date and the aggregate Compensating Interest for the Distribution Date.

The Servicer may retain or withdraw from the Certificate Account the Servicing Fee for each Mortgage Loan for the related Distribution Date. If the Servicer directly services a Mortgage Loan, the Servicer may retain the Servicing Fee for its own account as compensation for performing services. Additional servicing compensation in the form of Excess Proceeds, Prepayment

Interest Excess, assumption fees, late payment charges and all income net of any losses realized from Permitted Investments shall be retained by the Servicer to the extent not required to be deposited in the Certificate

58

<PAGE>

Account pursuant to Section 3.06. The Servicer shall be required to pay all expenses incurred by it in connection with its servicing activities hereunder (including payment of any premiums for hazard insurance, and any Primary Insurance Policy and maintenance of the other forms of insurance coverage required by this Agreement) and shall not be entitled to reimbursement therefor except as specifically provided in this Agreement.

     Section 3.16.     Access to Certain Documentation.

     The Servicer shall provide to the OTS and the FDIC and to comparable regulatory authorities supervising Holders of Certificates and Certificate Owners and the examiners and supervisory agents of the OTS, the FDIC, and such other authorities, access to the documentation regarding the Mortgage Loans required by applicable regulations of the OTS and the FDIC. Access shall be afforded without charge, but only upon reasonable prior written request and during normal business hours at the offices designated by the Servicer. Nothing in this Section 3.16 shall limit the obligation of the Servicer to observe any applicable law prohibiting disclosure of information regarding the Mortgagors and the failure of the Servicer to provide access as provided in this Section 3.16 as a result of such obligation shall not constitute a breach of this Section 3.16.

     Section 3.17.     Annual Statement as to Compliance.

     (a) By March 1 of each year, commencing with 2007, the Servicer shall deliver to the Trustee via electronic mail (DBSEC.Notifications@db.com) and the Depositor an Officer's Certificate signed by two Servicing Officers stating, as to each signer thereof, that (i) a review of the activities of the Servicer during the preceding calendar year (or applicable portion thereof) and of the performance of the Servicer under this Agreement has been made under such officer's supervision, and (ii) to the best of such officer's knowledge, based on the review, the Servicer has fulfilled all its obligations under this Agreement, in all material respects throughout the year (or applicable portion thereof), or, if there has been a failure to fulfill any obligation in any material respect, specifying each failure known to the officer and the nature and status thereof.

     (b) [Reserved].

     (c) The Trustee shall forward a copy of each such statement to each Rating Agency. Copies of such statement shall be provided by the Trustee to any Certificateholder or Certificate Owner upon request at the Servicer's expense, provided such statement is delivered by the Servicer to the Trustee.

     Section 3.18.     Errors and Omissions Insurance; Fidelity Bonds.

     The Servicer shall obtain and maintain in force (a) policies of insurance covering errors and omissions in the performance of its obligations as Servicer hereunder and (b) a fidelity bond covering its officers, employees, and agents. Each policy and bond shall, together, comply with the requirements from time to time of FNMA or FHLMC for persons performing servicing for mortgage loans purchased by FNMA or FHLMC. If any policy or bond ceases to be in effect, the Servicer shall obtain a comparable replacement policy or bond from an insurer or issuer meeting the above requirements as of the date of the replacement.

Section 3.19.     The Corridor Contract.

   The Depositor shall cause the Supplemental Interest Trustee to enter into an interest rate corridor transaction evidenced by the Corridor Contract. The Supplemental Interest Trustee's rights to receive certain proceeds of the Corridor Contract shall be rights of the Supplemental Interest Trust under this

<center>59</center>

<PAGE>

Agreement, shall be an asset of the Supplemental Interest Trust and shall not be an asset of the Trust Fund nor of any REMIC. The Supplemental Interest Trustee shall deposit any amounts received from time to time that constitute payment of Net Rate Carryover to the LIBOR Certificates from the Corridor Counterparty into the Distribution Account.

   The Supplemental Interest Trustee shall be subject to a standard of care identical to that of the Trustee under Article Eight of this Agreement.

   Beginning on the Distribution Date in January 2007 and on each Distribution Date thereafter through the Corridor Contract Termination Date, amounts received on the Corridor Contract will be paid to the Supplemental Interest Trustee. The Supplemental Interest Trustee will then disburse the portion of these amounts that is owed to the LIBOR Certificates to the Distribution Account and then distribute those amounts to pay any Net Rate Carryover to the LIBOR Certificates. Any amounts remaining after this application will be transferred to the Supplemental Interest Trust and then distributed to Credit Suisse Securities (USA) LLC and will not be available for the payment of any Net Rate Carryover on any class of certificates on future Distribution Dates unless the Corridor Contract is subject to early termination, in which case any early termination payment received by the Supplemental Interest Trustee in respect of the Corridor Contract will be deposited by the Supplemental Interest Trustee in the Supplemental Interest Reserve Fund. If Net Rate Carryover is due to the LIBOR Certificates on any Distribution Date, the Supplemental Interest Trustee will distribute an amount from the Supplemental Interest Reserve Fund to the Distribution Account for payment to the trustee to cover any Net Rate Carryover until the Corridor Contract Termination Date.

   With respect to the Corridor Contract and any Distribution Date on or after January 2007 up to and including the Corridor Contract Termination Date, the amount payable by the Corridor Counterparty under the Corridor Contract will equal the product of (i) the excess, if any, of (x) the lesser of (A) One-Month LIBOR (as determined by the Corridor Counterparty) and (B) the Corridor Contract Ceiling Rate, over (y) the Corridor Contract Strike Rate for that Distribution Date, (ii) the Corridor Contract Notional Balance for that Distribution Date and (iii) (x) the number of days in the related Interest Accrual Period divided by (y) 360.

   The Supplemental Interest Trustee will allocate amounts received under the Corridor Contract between Credit Suisse Securities (USA) LLC and the Distribution Account. Amounts allocated to the Distribution Account will equal to the product of (i) the excess, if any, of (x) the lesser of (A) One-Month LIBOR (as determined by the Corridor Contract Counterparty) and (B) the Corridor Contract Ceiling Rate, over (y) the Corridor Contract Strike Rate for that Distribution Date, (ii) the lesser of (x) the aggregate Class Certificate Balance of the LIBOR Certificates and (y) the Corridor Contract Notional Balance for that date and (iii) (x) the number of days in the related Interest Accrual Period divided by (y) 360.

   If the Corridor Contract is terminated early and, the Corridor Counterparty pays a termination payment to the Supplemental Interest Trustee,

that amount will be deposited in the Supplemental Interest Reserve Fund and
such amount will be either used to purchase a replacement corridor contract or
disbursed on future Distribution Dates to the Distribution Account to pay Net
Rate Carryover to the holders of the LIBOR Certificates until the Corridor
Contract Termination Date.

Upon the Supplemental Interest Trustee obtaining actual knowledge of the
rating of the Corridor Counterparty falling below the Approved Rating
Thresholds (as defined in the Corridor Contract), the Supplemental Interest
Trustee shall negotiate an ISDA Credit Support Annex with the Corridor
Counterparty that meets the terms of the Corridor Contract. If an ISDA Credit
Support Annex is negotiated, the Supplemental Interest Trustee shall demand
payment of the Delivery Amount (as defined

60

<PAGE>

in the ISDA Credit Support Annex). In addition, if an ISDA Credit Support
Annex is negotiated, the Supplemental Interest Trustee shall set up an account
in accordance with Section 4.08 to hold cash or other eligible investments
pledged under such ISDA Credit Support Annex. Any cash or other eligible
investments pledged under an ISDA Credit Support Annex shall not be part of
the Supplemental Interest Trust or the Distribution Account unless they are
applied in accordance with such ISDA Credit Support Annex to make a payment
due to the Supplemental Interest Trustee pursuant to the Corridor Contract.

Upon the Supplemental Interest Trustee obtaining actual knowledge of an
Event of Default (as defined in the Corridor Contract) or Termination Event
(as defined in a Corridor Contract) for which the Supplemental Interest
Trustee has the right to designate an Early Termination Date (as defined in a
Swap Contract), the Supplemental Interest Trustee shall act at the written
direction of the Depositor as to whether to designate an Early Termination
Date; provided, however, that the Supplemental Interest Trustee shall provide
written notice to each Rating Agency following the Event of Default or
Termination Event. Upon the termination of a Corridor Contract under the
circumstances contemplated by this Section 3.19, the Supplemental Interest
Trustee shall use its reasonable best efforts to enforce its rights as may be
permitted by the terms of such Corridor Contract and consistent with the terms
hereof.

Section 3.20.    Notification of Adjustments.

On each Adjustment Date, the Servicer shall make interest rate
adjustments for each Mortgage Loan in compliance with the requirements of the
related Mortgage and Mortgage Note and applicable regulations. The Servicer
shall execute and deliver the notices required by each Mortgage and Mortgage
Note and applicable regulations regarding interest rate adjustments. The
Servicer also shall provide timely notification to the Trustee of all
applicable data and information regarding such interest rate adjustments and
the Servicer's methods of implementing such interest rate adjustments and
Scheduled Payment adjustments. Upon the discovery by the Servicer or the
Trustee that the Servicer has failed to adjust or has incorrectly adjusted a
Mortgage Rate or a monthly payment pursuant to the terms of the related
Mortgage Note and Mortgage, the Servicer shall immediately deposit in the
Certificate Account from its own funds the amount of any loss caused thereby
without reimbursement therefor; provided, however, the Servicer shall not be
liable with respect to any interest rate adjustments made by any servicer
prior to the Servicer.

Section 3.21.    Prepayment Charges.

The Servicer will not waive any part of any Prepayment Charge unless the
waiver relates to a default or a reasonably foreseeable default, the

Prepayment Charge would cause an undue hardship to the related borrower, the Mortgaged Property is sold by the Mortgagor, the collection of any Prepayment Charge would violate any relevant law or regulation or the waiving of the Prepayment Charge would otherwise benefit the Trust Fund and it is expected that the waiver would maximize recovery of total proceeds taking into account the value of the Prepayment Charge and related Mortgage Loan and doing so is standard and customary in servicing similar Mortgage Loans (including any waiver of a Prepayment Charge in connection with a refinancing of a Mortgage Loan that is related to a default or a reasonably foreseeable default). The Servicer will not waive a Prepayment Charge in connection with a refinancing of a Mortgage Loan that is not related to a default or a reasonably foreseeable default.

If a Prepayment Charge is waived other than as permitted by the prior sentence, then the Servicer is required to pay the amount of such waived Prepayment Charge, for the benefit of the Holders of the Class P Certificates, by depositing such amount into the Distribution Account from its own funds, without any right of reimbursement therefor, together with and at the time that the amount prepaid on the related Mortgage Loan is required to be deposited into the Distribution Account.

61

<PAGE>


Article Four

DISTRIBUTIONS AND ADVANCES BY THE SERVICER

Section 4.01.     Advances.

(a) The Servicer shall determine on or before each Servicer Advance Date whether it is required to make an Advance pursuant to the definition thereof. If the Servicer determines it is required to make an Advance, it shall, on or before the Servicer Advance Date, either (i) deposit into the Certificate Account an amount equal to the Advance or (ii) make an appropriate entry in its records relating to the Certificate Account that any Amount Held for Future Distribution has been used by the Servicer in discharge of its obligation to make any such Advance. Any funds so applied shall be replaced by the Servicer by deposit in the Certificate Account no later than the close of business on the next Servicer Advance Date. The Servicer shall be entitled to be reimbursed from the Certificate Account for all Advances of its own funds made pursuant to this Section 4.01 as provided in Section 3.09. The obligation to make Advances with respect to any Mortgage Loan shall continue if such Mortgage Loan has been foreclosed or otherwise terminated and the Mortgaged Property has not been liquidated. The Servicer shall inform the Trustee of the amount of the Advance to be made on each Servicer Advance Date no later than the second Business Day before the related Distribution Date.

(b) If the Servicer determines that it will be unable to comply with its obligation to make the Advances as and when described in the second sentence of Section 4.01(a), it shall use its best efforts to give written notice thereof to the Trustee (each such notice an "Advance Notice"; and such notice may be given by telecopy), not later than 3:00 P.M., New York time, on the Business Day immediately preceding the related Servicer Advance Date, specifying the amount that it will be unable to deposit (each such amount an "Advance Deficiency") and certifying that such Advance Deficiency constitutes an Advance hereunder and is not a Nonrecoverable Advance. If the Trustee receives a Trustee Advance Notice on or before 3:00 P.M., New York time on a Servicer Advance Date, the Trustee is entitled to immediately terminate the Servicer under Section 7.01, and shall, not later than 3:00 P.M., New York time, on the related Distribution Date, deposit in the Distribution Account an amount equal to the Advance Deficiency identified in such Trustee Advance Notice unless it is prohibited from so doing by applicable law.

Notwithstanding the foregoing, the Trustee shall not be required to make such deposit if the Trustee shall have received written notification from the Servicer that the Servicer has deposited or caused to be deposited in the Certificate Account an amount equal to such Advance Deficiency by 3:00 P.M. New York time on the related Distribution Date. If the Trustee has not terminated the Servicer, the Servicer shall reimburse the Trustee for the amount of any Advance (including interest at the Prime Rate on the day of such reimbursement published in The Wall Street Journal) on such amount, made by the Trustee pursuant to this Section 4.01(b) not later than the second day following the related Servicer Advance Date. In the event that the Servicer does not reimburse the Trustee in accordance with the requirements of the preceding sentence, the Trustee shall immediately (a) terminate all of the rights and obligations of the Servicer under this Agreement in accordance with Section 7.01 and (b) subject to the limitations set forth in Section 3.05, assume all of the rights and obligations of the Servicer hereunder.

(c) The Servicer shall, not later than the close of business on the Business Day immediately preceding each Servicer Advance Date, deliver to the Trustee a report (in form and substance reasonably satisfactory to the Trustee) that indicates (i) the Mortgage Loans with respect to which the Servicer has determined that the related Scheduled Payments should be advanced and (ii) the amount of the related Scheduled Payments. The Servicer shall deliver to the Trustee on the related Servicer Advance Date an Officer's Certificate of a Servicing Officer indicating the amount of any proposed Advance determined by the Servicer to be a Nonrecoverable Advance.

62

<PAGE>

Section 4.02.　　Priorities of Distribution.

(a) Distributions of Interest Funds. On each Distribution Date, the Interest Funds for such Distribution Date shall be allocated by the Trustee from the Distribution Account in the following order of priority, until such Interest Funds have been fully distributed:

(i) concurrently, to each Class of Senior Certificates, the related Interest Distribution Amount and the unpaid Interest Carry Forward Amount, pro rata based on the Interest Distribution Amount and the Interest Carry Forward Amount for each such Class;

(ii) sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6 and Class M-7 Certificates, in that order, the Interest Distribution Amount and the Interest Carry Forward Amount for that Class of Certificates for that Distribution Date; and

(iii) for application as part of the Excess Cashflow for that Distribution Date, pursuant to Section 4.02(c) below.

(b) Distributions of Principal Distribution Amount. On each Distribution Date, an amount up to the Principal Distribution Amount for that Distribution Date shall be allocated by the Trustee from the Distribution Account in the following priority:

(i) For each Distribution Date prior to the Stepdown Date or on which a Trigger Event is in effect, in the following priority:

(A) to the Class A-R Certificates until its Class Certificate Balance is reduced to zero;

(B) concurrently to the Class A-1, Class A-2, Class A-3 and Class A-4 Certificates, pro rata, until their respective Class Certificate Balances are reduced to zero;

       (C) sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6 and Class M-7 Certificates, in that order, until their respective Class Certificate Balances are reduced to zero; and

       (D) any remainder as part of the Excess Cashflow to be allocated as described under Section 4.02(c) below.

    (ii) For each Distribution Date on or after the Stepdown Date and on which a Trigger Event is not in effect in the following priority:

       (A) the Senior Principal Distribution Amount, concurrently, to the Class A-1, Class A-2, Class A-3 and Class A-4 Certificates, pro rata, until their respective Class Certificate Balances are reduced to zero:

       (B) sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6 and Class M-7 Certificates, in that order, the Subordinated Class Principal Distribution Target Amount for each such Class until their respective Class Certificate Balances are reduced to zero; and

       (C) any remainder as part of the Excess Cashflow to be allocated as described under 4.02(c) below.

<div align="center">63</div>

&lt;PAGE&gt;

    (c) Distributions of Excess Cashflow. With respect to any Distribution Date, any Excess Cashflow will be distributed to the Classes of Certificates in the following priority, in each case to the extent of remaining Excess Cashflow:

    (i) to the Classes of LIBOR Certificates then entitled to receive distributions in respect of principal, in an amount equal to the Extra Principal Distribution Amount for that Distribution Date, distributable to those Classes as part of the Principal Distribution Amount pursuant to Section 4.02(b) of this Agreement;

    (ii) concurrently, to (x) the Class A-1 and Class A-2 Certificates and (y) the Class A-3 Certificates, pro rata, based on the aggregate Unpaid Realized Loss Amount for the Class A-1 and Class A-2 Certificates, and the Unpaid Realized Loss Amount for the Class A-3 Certificates, the Unpaid Realized Loss Amount for such class; with amounts allocated pursuant to clause (x) to be allocated sequentially to the Class A-1 and Class A-2 Certificates in that order;

    (iii) sequentially, to the Class A-4, Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6 and Class M-7 Certificates, in that order, the Unpaid Realized Loss Amount for each such Class;

    (iv) to the Carryover Reserve Fund and then from the Carryover Reserve Fund, concurrently, to the Classes of Senior Certificates, pro rata, based on their entitlement, to the extent needed to pay the Net Rate Carryover for each such Class after giving effect to amounts allocated to the Supplemental Interest Trust in respect of the Corridor Contract;

    (v) to the Carryover Reserve Fund and then from the Carryover Reserve Fund, sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6 and Class M-7 Certificates, in that order, to the extent needed to pay any unpaid Net Rate Carryover for

each such Class;

(vi) to the Class C Certificateholders, an amount up to the Class C Distributable Amount for such Distribution Date; and

(vii) to the Class A-R Certificates.

(d)  [Reserved.]

(e) To the extent that a Class of LIBOR Certificates receives interest in excess of the Net Rate Cap, such interest shall be deemed to have been paid to the Carryover Reserve Fund and then paid by the Carryover Reserve Fund to those Certificateholders. For purposes of the Code, amounts deemed deposited in the Carryover Reserve Fund shall be deemed to have first been distributed to the Class C Certificates. To the extent that a Class of LIBOR Certificates receives interest in excess of the Net Rate Cap and such interest is paid pursuant to Section 4.02(c), such interest shall be deemed to have been paid to the Supplemental Interest Trust and then paid by the Supplemental Interest Trustee to those Certificateholders.

(f) On each Distribution Date, all amounts representing Hard Prepayment Charges and Soft Prepayment Charges received during the related Prepayment Period shall be paid to the Class P-1 and Class P-2 Certificates, respectively, (including amounts deposited in connection with the full or partial waiver of such Prepayment Charge Amount pursuant to Section 3.21). On the Distribution Date immediately following the expiration of the latest Prepayment Charge Period of the Mortgage Loans, the

<center>64</center>

&lt;PAGE&gt;

$100 held in trust for each of the Class P-1 and Class P-2 Certificates will be distributed to the holders of the Class P Certificates.

(g) Application of Applied Realized Loss Amounts. On each Distribution Date, the Trustee shall allocate the Applied Realized Loss Amount to reduce the Class Certificate Balances of the Subordinated Certificates and the Class A-4 Certificates, sequentially, to the Class M-7, Class M-6, Class M-5, Class M-4, Class M-3, Class M-2, Class M-1 and Class A-4 Certificates, in that order, until their respective Class Certificate Balances are reduced to zero. Thereafter, any such excess will be applied, to the Class A-1, Class A-2 and Class A-3 Certificates, pro rata, to the Class A-1 and Class A-2 Certificates on the one hand, based on the aggregate Class Certificate Balance of the Class A-1 and Class A-2 Certificates, and to the Class A-3 Certificates on the other hand, based on its Class Certificate Balance, in each case until the respective Class Certificate Balances are reduced to zero; provided, however, that any such excess allocated to the Class A-1 and Class A-2 Certificates will be allocated sequentially, to the Class A-2 and Class A-1 Certificates, in that order, until their respective Class Certificate Balances are reduced to zero.

(h) Application of Subsequent Recoveries. If Subsequent Recoveries have been received with respect to a Liquidated Mortgage Loan, the amount of such Subsequent Recoveries will be applied, first, concurrently to the Class A-1, Class A-2 and Class A-3 Certificates, pro rata, based on their respective Unpaid Realized Loss Amounts, second to the Class A-4 Certificates, and, third, sequentially, in the order of payment priority, to each Class of Subordinated Certificates, to increase the Class Certificate Balance of each such Class to which Realized Losses have been allocated but in by not more than the amount of Unpaid Realized Loss Amounts on that Class of Certificates. Holders of such Certificates will not be entitled to any payment in respect of Current Interest on the amount of such increases for any Interest Accrual Period preceding the Distribution Date on which such increase occurs. Any such

increases shall be applied pro rata to the Certificate Balance of each Certificate of such Class.

Section 4.03.    [Reserved].

Section 4.04.    [Reserved].

Section 4.05.    Monthly Statements to Certificateholders.

(a) Not later than each Distribution Date, the Trustee shall prepare and make available on its website at https://www.tss.db.com/invr to each Certificateholder, the Servicer and the Depositor a statement for the related distribution of:

(i) the applicable Record Dates, Interest Accrual Periods and Determination Dates for calculating distributions for such Distribution Date;

(ii) the amount of funds received from the Servicer for such Distribution Date separately identifying amounts received in respect of the Mortgage Loans and the amount of Advances included in the distribution on the Distribution Date;

(iii) the Servicing Fee and Trustee Fee for such Distribution Date;

(iv) the aggregate amount of expenses paid from amounts on deposit in (x) the Certificate Account and (y) the Distribution Account;

(v) the amount of the distribution allocable to principal, separately identifying the aggregate amount of any Principal Prepayments and Liquidation Proceeds included therein;

65

<PAGE>

(vi) the amount of the distribution allocable to interest, any Class Unpaid Interest Amounts included in the distribution and any remaining Class Unpaid Interest Amounts after giving effect to the distribution;

(vii) if the distribution to the Holders of any Class of Certificates is less than the full amount that would be distributable to them if sufficient funds were available, the amount of the shortfall and the allocation of the shortfall between principal and interest;

(viii) the aggregate amount of Realized Losses and in the aggregate incurred and Subsequent Recoveries, if any, received during the preceding calendar month and aggregate Realized Losses through such Distribution Date;

(ix) the Class Certificate Balance of each Class of Certificates before and after giving effect to the distribution of principal on the Distribution Date;

(x) the Pass-Through Rate for each Class of Certificates with respect to the Distribution Date;

(xi) the number of Mortgage Loans and the Pool Stated Principal Balance as the first day of the related Due Period and the last day of the related Due Period;

(xii) as of the last day of the related Due Period:

(A) the weighted average mortgage rate of the Mortgage Loans, and

(B) the weighted average remaining term to maturity of the Mortgage Loans;

(xiii) the number and aggregate outstanding balance of the Mortgage Loans in each Loan Group as of the end of the preceding calendar month:

(A) delinquent (exclusive of Mortgage Loans in foreclosure) (1) 30 to 59 days, (2) 60 to 89 days and (3) 90 or more days and

(B) in foreclosure and delinquent (1) 30 to 59 days, (2) 60 to 89 days and (3) 90 or more days,

as of the close of business on the last day of the calendar month preceding the Distribution Date;

(xiv) for each of the preceding 12 calendar months, or all calendar months since the Cut-off Date, whichever is less, the aggregate dollar amount of the Scheduled Payments (A) due on all Outstanding Mortgage Loans on the Due Date in such month and (B) delinquent sixty (60) days or more (determined in the same manner as for determining Scheduled Payment delinquencies that result in a Mortgage Loan being a 60+ Day Delinquent Loan) on the Due Date in such month;

(xv) with respect to any Mortgage Loan that became an REO Property during the preceding calendar month, the loan number and Stated Principal Balance of the Mortgage Loan as of the close of business on the Determination Date preceding the Distribution Date;

66

<PAGE>

(xvi) the total number and principal balance of any REO Properties as of the close of business on the Determination Date preceding the Distribution Date;

(xvii) the aggregate amount of Principal Prepayments received during the related Prepayment Period and the number of Mortgage Loans subject to such Principal Prepayments;

(xviii) the aggregate amount of Advances reimbursed during the related Due Period, the general source of funds for such reimbursements and the aggregate amount of Advances outstanding as of the close of business on the Distribution Date;

(xix) the aggregate amount of Servicing Advances reimbursed during the related Due Period, the general source of funds for such reimbursements and the aggregate amount of Servicing Advances outstanding as of the close of business on the Distribution Date;

(xx) the aggregate number and outstanding principal balance of Mortgage Loans repurchased during the related Due Period due to material breaches of representations and warranties regarding such Mortgage Loans;

(xxi) [Reserved];

(xxii) [Reserved];

(xxiii) [Reserved];

(xxiv) with respect to the second Distribution Date, the number and aggregate balance of any Delayed Delivery Mortgage Loans not delivered within the time periods specified in the definition of Delayed Delivery Mortgage Loans; and

(xxv) Hard and Soft Prepayment Charges collected, waived, and paid by the Servicer.

The Trustee's responsibility for disbursing the above information to the Certificateholders is limited to the availability, timeliness and accuracy of the information derived from the Servicer.

By each Determination Date the Servicer shall provide to the Trustee in electronic form the information needed to determine the distributions to be made pursuant to Section 4.02 and any other information on which the Servicer and the Trustee mutually agree.

(b) On or before the fifth Business Day following the end of each Prepayment Period (but in no event later than the third Business Day prior to the related Distribution Date), the Servicer shall deliver to the Trustee (which delivery may be by electronic data transmission) a report in substantially the form set forth as Schedule IV.

(c) Within a reasonable period of time after the end of each calendar year, the Trustee shall cause to be furnished to each Person who at any time during the calendar year was a Certificateholder, a statement containing the information set forth in clauses (a)(v) and (a)(vi) of this Section 4.06 aggregated for such calendar year or applicable portion thereof during which such Person was a Certificateholder. Such obligation of the Trustee shall be deemed to have been satisfied to the extent that substantially comparable information shall be provided by the Trustee pursuant to any requirements of the Code as from time to time in effect.

67

<PAGE>

Section 4.06.      Carryover Reserve Fund.

(a) On the Closing Date, the Trustee shall establish and maintain in its name, in trust for the benefit of the Holders of the LIBOR Certificates, a Carryover Reserve Fund. The Carryover Reserve Fund shall be an Eligible Account, and funds on deposit therein shall be held separate and apart from, and shall not be commingled with, any other moneys, including, without limitation, other moneys of the Trustee held pursuant to this Agreement. The Carryover Reserve Fund shall not be an asset of any REMIC established by this Agreement.

(b) On any Distribution Date for which there is Net Rate Carryover with respect to any Class of LIBOR Certificates, the Trustee shall withdraw funds from the Carryover Reserve Fund for distribution to the LIBOR Certificates and the Class C Certificates in the manner specified in Section 4.02(e) (and to withhold from the amounts so withdrawn the amount of any taxes that it is authorized to retain pursuant to the third to last paragraph of Section 8.11). In addition, the Trustee may from time to time make withdrawals from the Carryover Reserve Fund for the following purposes:

(i) to withdraw any amount deposited in the Carryover Reserve Fund and not required to be deposited therein; and

(ii) clear and terminate the Carryover Reserve Fund upon the termination of this Agreement pursuant to Section 9.01.

(c) Funds in the Carryover Reserve Fund shall not be invested. The Class C Certificates shall evidence ownership of the Carryover Reserve Fund for federal income tax purposes.

(d) Upon termination of the Trust Fund any amounts remaining in the Carryover Reserve Fund shall be distributed to Credit Suisse Securities (USA) LLC and will not be available to cover any Net Rate Carryover on subsequent Distribution Dates.

Section 4.07.    Determination of Pass-Through Rates for LIBOR Certificates.

On each LIBOR Determination Date so long as the LIBOR Certificates are outstanding, the Trustee will determine LIBOR on the basis of the British Bankers' Association ("BBA") "Interest Settlement Rate" for one-month deposits in U.S. dollars as found on Moneyline Telerate Page 3750 as of 11:00 a.m. London time on each LIBOR Determination Date.

(a) If LIBOR cannot be determined as provided in the first paragraph of this Section 4.07, the Trustee shall either (i) request each Reference Bank to inform the Trustee of the quotation offered by its principal London office for making one-month United States dollar deposits in leading banks in the London interbank market, as of 11:00 a.m. (London time) on such LIBOR Determination Date or (ii) in lieu of making any such request, rely on such Reference Bank quotations that appear at such time on the Reuters Screen LIBO Page (as defined in the International Swap Dealers Association Inc. Code of Standard Wording, Assumptions and Provisions for Swaps, 1986 Edition), to the extent available.

(b) LIBOR for the next Interest Accrual Period for a Class of LIBOR Certificates will be established by the Trustee on each LIBOR Determination Date as follows:

(i) If on any LIBOR Determination Date two or more Reference Banks provide such offered quotations, LIBOR for the next Interest Accrual Period for a Class of LIBOR Certificates shall be the arithmetic mean of such offered quotations (rounding such arithmetic mean upwards if necessary to the nearest whole multiple of 1/32%).

68

<PAGE>

(ii) If on any LIBOR Determination Date only one or none of the Reference Banks provides such offered quotations, LIBOR for the next Interest Accrual Period for a Class of LIBOR Certificates shall be whichever is the higher of (i) LIBOR as determined on the previous LIBOR Determination Date or (ii) the Reserve Interest Rate. The "Reserve Interest Rate" shall be the rate per annum which the Trustee determines to be either (i) the arithmetic mean (rounded upwards if necessary to the nearest whole multiple of 1/32%) of the one-month United States dollar lending rates that New York City banks selected by the Trustee are quoting, on the relevant LIBOR Determination Date, to the principal London offices of at least two of the Reference Banks to which such quotations are, in the opinion of the Trustee, being so made, or (ii) in the event that the Trustee can determine no such arithmetic mean, the lowest one-month United States dollar lending rate which New York City banks selected by the Trustee are quoting on such LIBOR Determination Date to leading European banks.

(iii) If on any LIBOR Determination Date the Trustee is required but is unable to determine the Reserve Interest Rate in the manner provided in paragraphs (a) and (b)(i) and (ii) above, LIBOR shall be

LIBOR as determined on the preceding LIBOR Determination Date, or, in the case of the first LIBOR Determination Date, the Default Initial LIBOR Rate.

(c) Until all of the LIBOR Certificates are paid in full, the Trustee will at all times retain at least four Reference Banks for the purpose of determining LIBOR with respect to each LIBOR Determination Date. The Servicer initially shall designate the Reference Banks. Each "Reference Bank" shall be a leading bank engaged in transactions in Eurodollar deposits in the international Eurocurrency market, shall not control, be controlled by, or be under common control with, the Trustee and shall have an established place of business in London. If any such Reference Bank should be unwilling or unable to act as such or if the Servicer should terminate its appointment as Reference Bank, the Trustee shall promptly appoint or cause to be appointed another Reference Bank. The Trustee shall have no liability or responsibility to any Person for (i) the selection of any Reference Bank for purposes of determining LIBOR or (ii) any inability to retain at least four Reference Banks which is caused by circumstances beyond its reasonable control.

(d) The Pass-Through Rate for each Class of LIBOR Certificates for each related Interest Accrual Period shall be determined by the Trustee on each LIBOR Determination Date so long as the LIBOR Certificates are outstanding on the basis of LIBOR and the respective formulae appearing in footnotes corresponding to the LIBOR Certificates in the table relating to the Certificates in the Preliminary Statement.

(e) In determining LIBOR, any Pass-Through Rate for the LIBOR Certificates, any Interest Settlement Rate, or any Reserve Interest Rate, the Trustee may conclusively rely and shall be protected in relying upon the offered quotations (whether written, oral or on the Dow Jones Markets) from the BBA designated banks, the Reference Banks or the New York City banks as to LIBOR, the Interest Settlement Rate or the Reserve Interest Rate, as appropriate, in effect from time to time. The Trustee shall not have any liability or responsibility to any Person for (i) the Trustee's selection of New York City banks for purposes of determining any Reserve Interest Rate or (ii) its inability, following a good-faith reasonable effort, to obtain such quotations from, the BBA designated banks, the Reference Banks or the New York City banks or to determine such arithmetic mean, all as provided for in this Section 4.08.

(f) The establishment of LIBOR and each Pass-Through Rate for the LIBOR Certificates by the Trustee shall (in the absence of manifest error) be final, conclusive and binding upon each Holder of a Certificate and the Trustee.

69

<PAGE>

Section 4.08.     Supplemental Interest Trust and Supplemental Interest Reserve Fund

On the Closing Date, there is hereby established a separate trust (the "Supplemental Interest Trust"), the assets of which shall consist of the Supplemental Interest Trustee's rights and obligations under the Corridor Contract and that will be treated as a "grantor trust" for federal income tax purposes. The Supplemental Interest Trust shall be maintained by the Supplemental Interest Trustee, who initially shall be the Trustee. The Supplemental Interest Trustee shall hold the assets of the Supplemental Interest Trust in trust for the benefit of the Holders of the Covered Certificates. For federal income tax purposes, the Supplemental Interest Trust shall be owned by the Seller.

On the Closing Date, the Supplemental Interest Trustee shall establish and maintain a Supplemental Interest Reserve Fund in the name of the

Supplemental Interest Trustee, in trust for the benefit of the Holders of the Covered Certificates. The Supplemental Interest Reserve Fund shall be an Eligible Account, and funds on deposit in the account shall be held separate and apart from, and shall not be commingled with, any other moneys, including without limitation, other moneys held by the Trustee pursuant to this Agreement. The Supplemental Interest Trustee shall deposit in the Supplemental Interest Reserve Fund all amounts received from the Corridor Counterparty regarding any termination payment made under the Corridor Contract.

The Supplemental Interest Trustee shall deposit in the Distribution Account all amounts received from the Corridor Counterparty to be paid to the LIBOR Certificates for any Distribution Date pursuant to the Corridor Contract. If the Supplemental Interest Trustee shall also deposit into the Distribution Account any amount not required to be deposited in that account, it may at any time withdraw such amount from the Distribution Account, any provision in this Agreement to the contrary notwithstanding. Funds in the Distribution Account shall be held uninvested. The Seller shall be the owner of the Supplemental Interest Trust for federal tax purposes. The Supplemental Interest Trustee shall account for the Supplemental Interest Trust as an outside reserve fund within the meaning of Treasury regulation 1.860G-2(h) and not an asset of any REMIC created pursuant to this Agreement.

Amounts on deposit in the Distribution Account shall be withdrawn by the Supplemental Interest Trustee in connection with any Distribution Date on which there exists a Net Rate Carryover for the Corridor Certificates to pay the amount of such Net Rate Carryover (to the extent of funds on deposit in the Distribution Account from the Corridor Contract). On any Distribution Date, any amounts on deposit in Corridor Account in excess of the amounts required to pay Net Rate Carryover for that date will be distributed to Credit Suisse Securities (USA) LLC.

70

<PAGE>

## Article Five

### THE CERTIFICATES

Section 5.01.    The Certificates.

The Certificates shall be substantially in the forms attached hereto as exhibits. The Certificates shall be issuable in registered form, in the minimum denominations, integral multiples of $1 in excess thereof (except that one Certificate in each Class may be issued in a different amount which must exceed the applicable minimum denomination) and aggregate denominations per Class set forth in the Preliminary Statement.

Subject to Section 9.02 respecting the final distribution on the Certificates, on each Distribution Date the Trustee shall make distributions to each Certificateholder of record on the preceding Record Date either (x) by wire transfer in immediately available funds to the account of such holder at a bank or other entity having appropriate facilities therefor, if such Holder has so notified the Trustee at least five Business Days before the related Record Date or (y) by check mailed by first class mail to such Certificateholder at the address of such holder appearing in the Certificate Register.

The Trustee shall execute the Certificates by the manual or facsimile signature of an authorized officer. Certificates bearing the manual or facsimile signatures of individuals who were, at the time such signatures were affixed, authorized to sign on behalf of the Trustee shall bind the Trustee, notwithstanding that such individuals or any of them have ceased to be so authorized before the countersignature and delivery of any such Certificates or did not hold such offices at the date of such Certificate. No Certificate shall be entitled to any benefit under this Agreement, or be valid for any purpose, unless countersigned by the Trustee by manual signature, and such countersignature upon any Certificate shall be conclusive evidence, and the only evidence, that such Certificate has been duly executed and delivered hereunder. All Certificates shall be dated the date of their countersignature. On the Closing Date, the Trustee shall countersign the Certificates to be issued at the direction of the Depositor, or any affiliate thereof.

The Depositor shall provide the Trustee, on a continuous basis with an adequate inventory of Certificates to facilitate transfers.

Section 5.02.    Certificate Register; Registration of Transfer and Exchange of Certificates.

(a) The Trustee shall maintain, in accordance with Section 5.06, a Certificate Register for the Trust Fund in which, subject to subsections (b) and (c) below and to such reasonable regulations as it may prescribe, the Trustee shall provide for the registration of Certificates and of transfers and exchanges of Certificates as herein provided. Upon surrender for registration of transfer of any Certificate, the Trustee shall execute and deliver, in the name of the designated transferee or transferees, one or more new Certificates of the same Class and aggregate Percentage Interest.

At the option of a Certificateholder, Certificates may be exchanged for other Certificates of the same Class in authorized denominations and evidencing the same aggregate Percentage Interest upon surrender of the Certificates to be exchanged at the office or agency of the Trustee. Whenever any Certificates are so surrendered for exchange, the Trustee shall execute, authenticate, and deliver the Certificates that the Certificateholder making the exchange is entitled to receive. A written instrument of transfer in form satisfactory to the Trustee duly executed by the holder of a Certificate or his attorney duly authorized in writing shall accompany every Certificate presented or surrendered for registration of transfer or exchange.

71

<PAGE>

No service charge to the Certificateholders shall be made for any registration of transfer or exchange of Certificates, but payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any transfer or exchange of Certificates may be required.

All Certificates surrendered for registration of transfer or exchange shall be cancelled and subsequently destroyed by the Trustee in accordance with the Trustee's customary procedures.

(b) No transfer of a Private Certificate shall be made unless such transfer is made pursuant to an effective registration statement under the Securities Act and any applicable state securities laws or is exempt from the registration requirements under the Securities Act and such state securities laws. If a transfer is to be made in reliance on an exemption from the Securities Act and such state securities laws, to assure compliance with the Securities Act and such state securities laws, the Certificateholder desiring to effect such transfer and such Certificateholder's prospective transferee shall each certify to the Trustee in writing the facts surrounding the transfer in substantially the form set forth in Exhibit J (the "Transferor

Certificate") and deliver to the Trustee either (i) a letter in substantially the form of either Exhibit K (the "Investment Letter") or Exhibit L (the "Rule 144A Letter") or (ii) at the expense of the transferor, an Opinion of Counsel that such transfer may be made pursuant to an exemption from the Securities Act; provided, however, that in the case of the delivery of an Investment Letter in connection with the transfer of any Class C or Class P Certificate to a transferee that is formed with the purpose of issuing notes backed by such Class C or Class P Certificate, as the case may be, clause (b) and (c) of the form of Investment Letter shall not be applicable and shall be deleted by such transferee. The Depositor shall provide to any Holder of a Private Certificate and any prospective transferee designated by that Holder, information regarding the related Certificates and the Mortgage Loans and any other information necessary to satisfy the condition to eligibility in Rule 144A(d)(4) for transfer of the Certificate without registration thereof under the Securities Act pursuant to the registration exemption provided by Rule 144A. The Trustee and the Servicer shall cooperate with the Depositor in providing the Rule 144A information referenced in the preceding sentence, including providing to the Depositor such information regarding the Certificates, the Mortgage Loans, and other matters regarding the Trust Fund as the Depositor reasonably requests to meet its obligation under the preceding sentence. Each Holder of a Private Certificate desiring to effect a transfer shall, and does hereby agree to, indemnify the Trustee, the Depositor, the Seller and the Servicer against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of an ERISA-Restricted Certificate shall be made unless the Trustee shall have received either (i) a representation from the transferee of such Certificate acceptable to and in form and substance satisfactory to the Trustee (if the Certificate is a Private Certificate, the requirement is satisfied only by the Trustee's receipt of a representation letter from the transferee substantially in the form of Exhibit K or Exhibit L, and if the Certificate is a Residual Certificate, the requirement is satisfied only by the Trustee's receipt of a representation letter from the transferee substantially in the form of Exhibit I), to the effect that (x) the transferee is not an employee benefit plan or arrangement subject to section 406 of ERISA or a plan subject to section 4975 of the Code, or a person acting on behalf of any such plan or arrangement or using the assets of any such plan or arrangement to effect the transfer, or (y) if the ERISA-Restricted Certificate has been the subject of an ERISA-Qualifying Underwriting, a representation that the transferee is an insurance company that is purchasing such Certificate with funds contained in an "insurance company general account" (as such term is defined in Section V(e) of Prohibited Transaction Class Exemption 95-60 ("PTCE 95-60") and that the purchase and holding of such Certificate satisfy the requirements for exemptive relief under Sections I and III of PTCE 95-60, or (ii) in the case of any ERISA-Restricted Certificate presented for registration in the name of an employee benefit plan subject to ERISA, or a plan or arrangement subject to section 4975 of the Code (or comparable provisions of any subsequent enactments), or a trustee of any such plan or any other person acting on behalf of any such plan or arrangement or using such plan's or arrangement's assets, an Opinion

72

<PAGE>

of Counsel satisfactory to the Trustee, which Opinion of Counsel shall not be an expense of the Trustee, the Servicer or the Trust Fund, addressed to the Trustee and the Servicer, to the effect that the purchase and holding of such ERISA-Restricted Certificate will not result in a non-exempt prohibited transaction under ERISA or section 4975 of the Code and will not subject the Trustee or the Servicer to any obligation in addition to those expressly undertaken in this Agreement or to any liability. For purposes of the preceding sentence, with respect to an ERISA-Restricted Certificate that is

not a Residual Certificate, if the representation letter or Opinion of Counsel referred to in the preceding sentence is not furnished, the appropriate representation in clause (i) shall be deemed to have been made to the Trustee by the transferee's (including an initial acquirer's) acceptance of the ERISA-Restricted Certificates. If the representation is violated, or any attempt is made to transfer to a plan or arrangement subject to section 406 of ERISA or a plan subject to section 4975 of the Code, or a person acting on behalf of any such plan or arrangement or using the assets of any such plan or arrangement, without the Opinion of Counsel described above, the attempted transfer or acquisition shall be void.

To the extent permitted under applicable law (including ERISA), the Trustee shall be under no liability to any Person for any registration of transfer of any ERISA-Restricted Certificate that is in fact not permitted by this Section 5.02(b) or for making any payments due on such Certificate to the Holder thereof or taking any other action with respect to such Holder under this Agreement so long as the transfer was registered by the Trustee in accordance with the foregoing requirements.

No transfer of a Covered Certificate shall be made unless the transferee of such Certificate has provided to the Trustee a correct, complete and duly executed tax certification form (i.e., U.S. Internal Revenue Service Form W-9, W-8BEN, W-8IMY, W-8EXP or W-8ECI, as applicable, (or any successor form thereto), together with appropriate attachments) as a condition to such transfer and agrees to update such tax certification form (i) upon expiration of any such tax certification form, (ii) as required under then applicable U.S. Treasury regulations and (iii) promptly upon learning that any tax certification form previously provided has become obsolete or incorrect. Upon receipt of any such tax certification form from a transferee of any Covered Certificate, the Trustee shall provide such tax certification form to the Supplemental Interest Trustee. The Supplemental Interest Trustee shall provide such tax certification form to the Corridor Counterparty. Each Holder of a Covered Certificate and each transferee thereof shall be deemed to have consented to the Trustee and the Supplemental Interest Trustee forwarding to the Corridor Counterparty any such tax certification form it has provided and updated in accordance with these transfer restrictions. Any purported sales or transfers of any Covered Certificate to a transferee which does not comply with these requirements shall be deemed null and void under this Agreement.

The Supplemental Interest Trustee and the Trustee shall not be liable for the content or truthfulness of any such tax certification provided to it. The Supplemental Interest Trustee and the Trustee shall only be required to forward any tax certification received by it to the Corridor Counterparty at the last known address provided to it, and shall not be liable for the receipt of such tax certification by the Corridor Counterparty, nor any failure of the Corridor Counterparty to process such certification or to take any action as required under the Corridor Contract, or under applicable law. The Supplemental Interest Trustee and the Trustee shall have no duty to take action to correct any misstatement or omission in any tax certification provided to it and forwarded to the Corridor Counterparty.

(c) Each Person who has or who acquires any Ownership Interest in a Residual Certificate shall be deemed by the acceptance or acquisition of such Ownership Interest to have agreed to be bound by the following provisions, and the rights of each Person acquiring any Ownership Interest in a Residual Certificate are expressly subject to the following provisions:

73

<PAGE>

(i) Each Person holding or acquiring any Ownership Interest in a Residual Certificate shall be a Permitted Transferee and shall promptly notify the Trustee of any change or impending change in its status as a

Permitted Transferee.

(ii) No Ownership Interest in a Residual Certificate may be registered on the Closing Date or thereafter transferred, and the Trustee shall not register the Transfer of any Residual Certificate unless, in addition to the certificates required to be delivered to the Trustee under subparagraph (b) above, the Trustee shall have been furnished with an affidavit (a "Transfer Affidavit") of the initial owner or the proposed transferee in the form of Exhibit I.

(iii) Each Person holding or acquiring any Ownership Interest in a Residual Certificate shall agree (A) to obtain a Transfer Affidavit from any other Person to whom such Person attempts to Transfer its Ownership Interest in a Residual Certificate, (B) to obtain a Transfer Affidavit from any Person for whom such Person is acting as nominee, trustee or agent in connection with any Transfer of a Residual Certificate and (C) not to Transfer its Ownership Interest in a Residual Certificate or to cause the Transfer of an Ownership Interest in a Residual Certificate to any other Person if it has actual knowledge that such Person is not a Permitted Transferee.

(iv) Any attempted or purported Transfer of any Ownership Interest in a Residual Certificate in violation of this Section 5.02(c) shall be absolutely null and void and shall vest no rights in the purported Transferee. If any purported transferee shall become a Holder of a Residual Certificate in violation of this Section 5.02(c), then the last preceding Permitted Transferee shall be restored to all rights as Holder thereof retroactive to the date of registration of Transfer of such Residual Certificate. The Trustee shall be under no liability to any Person for any registration of Transfer of a Residual Certificate that is in fact not permitted by Section 5.02(b) and this Section 5.02(c) or for making any payments due on such Certificate to the Holder thereof or taking any other action with respect to such Holder under this Agreement so long as the Transfer was registered after receipt of the related Transfer Affidavit, Transferor Certificate and either the Rule 144A Letter or the Investment Letter. The Trustee shall be entitled but not obligated to recover from any Holder of a Residual Certificate that was in fact not a Permitted Transferee at the time it became a Holder or, at such subsequent time as it became other than a Permitted Transferee, all payments made on such Residual Certificate at and after either such time. Any such payments so recovered by the Trustee shall be paid and delivered by the Trustee to the last preceding Permitted Transferee of such Certificate.

(v) The Depositor shall use its best efforts to make available, upon receipt of written request from the Trustee, all information necessary to compute any tax imposed under section 860E(e) of the Code as a result of a Transfer of an Ownership Interest in a Residual Certificate to any Holder who is not a Permitted Transferee.

The restrictions on Transfers of a Residual Certificate set forth in this Section 5.02(c) shall cease to apply (and the applicable portions of the legend on a Residual Certificate may be deleted) with respect to Transfers occurring after delivery to the Trustee of an Opinion of Counsel, which Opinion of Counsel shall not be an expense of the Trust Fund, the Trustee, the Seller or the Servicer, to the effect that the elimination of such restrictions will not cause any REMIC created under this Agreement to fail to qualify as a REMIC at any time that the Certificates are outstanding or result in the imposition of any tax on the Trust Fund, a Certificateholder or another Person. Each Person holding or acquiring any Ownership Interest in a Residual Certificate hereby consents to any amendment of this Agreement which, based on an Opinion of Counsel furnished to the Trustee, is reasonably necessary (a) to ensure that the record ownership of, or any beneficial interest in, a Residual Certificate is not transferred, directly or indirectly,

74

&lt;PAGE&gt;

to a Person that is not a Permitted Transferee and (b) to provide for a means to compel the Transfer of a Residual Certificate which is held by a Person that is not a Permitted Transferee to a Holder that is a Permitted Transferee.

(d) The preparation and delivery of all certificates and opinions referred to above in this Section 5.02 in connection with transfer shall be at the expense of the parties to such transfers.

(e) Except as provided below, the Book-Entry Certificates shall at all times remain registered in the name of the Depository or its nominee and at all times: (i) registration of the Certificates may not be transferred by the Trustee except to another Depository; (ii) the Depository shall maintain book-entry records with respect to the Certificate Owners and with respect to ownership and transfers of such Book-Entry Certificates; (iii) ownership and transfers of registration of the Book-Entry Certificates on the books of the Depository shall be governed by applicable rules established by the Depository; (iv) the Depository may collect its usual and customary fees, charges and expenses from its Depository Participants; (v) the Trustee shall deal with the Depository, Depository Participants and Indirect Participants as representatives of the Certificate Owners of the Book-Entry Certificates for purposes of exercising the rights of holders under this Agreement, and requests and directions for and votes of such representatives shall not be deemed to be inconsistent if they are made with respect to different Certificate Owners; and (vi) the Trustee may rely and shall be fully protected in relying upon information furnished by the Depository with respect to its Depository Participants and furnished by the Depository Participants with respect to Indirect Participants and persons shown on the books of such Indirect Participants as direct or indirect Certificate Owners.

All transfers by Certificate Owners of Book-Entry Certificates shall be made in accordance with the procedures established by the Depository Participant or brokerage firm representing the Certificate Owner. Each Depository Participant shall only transfer Book-Entry Certificates of Certificate Owners it represents or of brokerage firms for which it acts as agent in accordance with the Depository's normal procedures.

If (x) (i) the Depository or the Depositor advises the Trustee in writing that the Depository is no longer willing or able to properly discharge its responsibilities as Depository, and (ii) the Trustee or the Depositor is unable to locate a qualified successor or (y) after the occurrence of an Event of Default, Certificate Owners representing at least 51% of the Certificate Balance of the Book-Entry Certificates together advise the Trustee and the Depository through the Depository Participants in writing that the continuation of a book-entry system through the Depository is no longer in the best interests of the Certificate Owners, the Trustee shall notify all Certificate Owners, through the Depository, of the occurrence of any such event and of the availability of definitive, fully-registered Certificates (the "Definitive Certificates") to Certificate Owners requesting the same. Upon surrender to the Trustee of the related Class of Certificates by the Depository, accompanied by the instructions from the Depository for registration, the Trustee shall issue the Definitive Certificates. None of the Servicer, the Depositor or the Trustee shall be liable for any delay in delivery of such instruction and each may conclusively rely on, and shall be protected in relying on, such instructions. The Servicer shall provide the Trustee with an adequate inventory of certificates to facilitate the issuance and transfer of Definitive Certificates. Upon the issuance of Definitive Certificates all references herein to obligations imposed upon or to be performed by the Depository shall be deemed to be imposed upon and performed by the Trustee, to the extent applicable with respect to such Definitive Certificates and the Trustee shall recognize the Holders of the Definitive

Certificates as Certificateholders hereunder; provided that the Trustee shall not by virtue of its assumption of such obligations become liable to any party for any act or failure to act of the Depository.

<div align="center">75</div>

<PAGE>

Section 5.03.        Mutilated, Destroyed, Lost or Stolen Certificates.

If (a) any mutilated Certificate is surrendered to the Trustee, or (b) the Trustee receives evidence to its satisfaction of the destruction, loss, or theft of any Certificate and the Servicer and the Trustee receive the security or indemnity required by them to hold each of them harmless, then, in the absence of notice to the Trustee that the Certificate has been acquired by a Protected Purchaser, and if the requirements of Section 8-406 of the UCC are met and subject to Section 8-405 of the UCC, the Trustee shall execute, countersign, and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost, or stolen Certificate, a new Certificate of like Class, tenor, and Percentage Interest. In connection with the issuance of any new Certificate under this Section 5.03, the Trustee may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith. Any replacement Certificate issued pursuant to this Section 5.03 shall constitute complete and indefeasible evidence of ownership, as if originally issued, whether or not the lost, stolen, or destroyed Certificate is found at any time.

Section 5.04.        Persons Deemed Owners.

The Servicer, the Trustee and any agent of the Servicer or the Trustee may treat the Person in whose name any Certificate is registered as the owner of such Certificate for the purpose of receiving distributions as provided in this Agreement and for all other purposes whatsoever, and none of the Servicer or the Trustee, nor any agent of the Servicer or the Trustee shall be affected by any notice to the contrary.

Section 5.05.        Access to List of Certificateholders' Names and Addresses.

If three or more Certificateholders and/or Certificate Owners (a) request such information in writing from the Trustee, (b) state that such Certificateholders and/or Certificate Owners desire to communicate with other Certificateholders and/or Certificate Owners with respect to their rights under this Agreement or under the Certificates, and (c) provide a copy of the communication which such Certificateholders and/or Certificate Owners propose to transmit, or if the Depositor or Servicer shall request such information in writing from the Trustee, then the Trustee shall, within ten Business Days after the receipt of such request, provide the Depositor, the Servicer or such Certificateholders and/or Certificate Owners at such recipients' expense the most recent list of the Certificateholders of such Trust Fund held by the Trustee. The Depositor and every Certificateholder and/or Certificate Owner, by receiving and holding a Certificate, agree that the Trustee shall not be held accountable because of the disclosure of any such information as to the list of the Certificateholders hereunder, regardless of the source from which such information was derived.

Section 5.06.        Maintenance of Office or Agency.

The Trustee will maintain at its expense an office or offices or agency or agencies in the United States located at DB Services Tennessee, 648 Grassmere Park Rd., Nashville, TN 37211-3658, Attention: Transfer Unit, where Certificates may be surrendered for registration of transfer or exchange. The Trustee will give prompt written notice to the Certificateholders of any

change in such location of any such office or agency.


76

<PAGE>


## Article Six

### THE DEPOSITOR AND THE SERVICER

Section 6.01.    Respective Liabilities of the Depositor and the Servicer.

The Depositor and the Servicer shall each be liable in accordance with this Agreement only to the extent of the obligations specifically and respectively imposed upon and undertaken by them in this Agreement.

Section 6.02.    Merger or Consolidation of the Depositor or the Servicer.

The Depositor and the Servicer will each keep in full effect their existence and their rights and franchises as a corporation and a federal savings bank, respectively, under the laws of the United States or under the laws of one of the states thereof and will each obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement, or any of the Mortgage Loans and to perform its respective duties under this Agreement.

Any Person into which the Depositor or the Servicer may be merged or consolidated, or any Person resulting from any merger or consolidation to which the Depositor or the Servicer shall be a party, or any person succeeding to the business of the Depositor or the Servicer, shall be the successor of the Depositor or the Servicer, as the case may be, hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided, however, that the successor or surviving Person to the Servicer shall be qualified to sell mortgage loans to, and to service mortgage loans on behalf of, FNMA or FHLMC.

As a condition to the effectiveness of any merger or consolidation, at least 15 calendar days prior to the effective date of any merger or consolidation of the Servicer, the Servicer shall provide (x) written notice to the Depositor of any successor pursuant to this Section and (y) in writing and in form and substance reasonably satisfactory to the Depositor, all information reasonably requested by the Depositor in order to comply with its reporting obligation under Item 6.02 of Form 8-K with respect to a replacement Servicer.

Section 6.03.    Limitation on Liability of the Depositor, the Seller, the Servicer, and Others.

None of the Depositor, the Seller, the Servicer or any of the directors, officers, employees or agents of the Depositor, the Seller or the Servicer shall be under any liability to the Certificateholders for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment; provided, however, that this provision shall not protect the Depositor, the Seller, the Servicer or any such Person against any breach of representations or warranties made by it herein or protect the Depositor, the Seller, the Servicer or any such Person from any liability which would otherwise be imposed by reasons of willful misfeasance, bad faith or gross negligence in the performance of duties or because of

reckless disregard of obligations and duties hereunder. The Depositor, the
Seller, the Servicer, and any director, officer, employee or agent of the
Depositor, the Seller or the Servicer may rely in good faith on any document
of any kind prima facie properly executed and submitted by any Person
respecting any matters arising hereunder. The Depositor, the Seller, the
Servicer, and any director, officer, employee or agent of the Depositor, the
Seller or the Servicer shall be indemnified by the Trust Fund and held
harmless against any loss, liability or expense incurred in connection with
any audit, controversy or judicial proceeding relating to a governmental
taxing authority or any legal action relating to this Agreement or the
Certificates, other than any loss, liability or expense related to any
specific

<center>77</center>

&lt;PAGE&gt;

Mortgage Loan or Mortgage Loans (except as any such loss, liability or expense
shall be otherwise reimbursable pursuant to this Agreement) and any loss,
liability or expense incurred because of willful misfeasance, bad faith or
gross negligence in the performance of duties hereunder or because of reckless
disregard of obligations and duties hereunder. None of the Depositor, the
Seller or the Servicer shall be under any obligation to appear in, prosecute
or defend any action that is not incidental to its respective duties hereunder
and which in its opinion may involve it in any expense or liability; provided,
however, that any of the Depositor, the Seller or the Servicer may in its
discretion undertake any such legal action that it may deem appropriate in
respect of this Agreement and the rights and duties of the parties hereto and
interests of the Trustee and the Certificateholders hereunder. In such event,
the legal expenses and costs of such action and any liability resulting
therefrom shall be expenses, costs and liabilities of the Trust Fund, and the
Depositor, the Seller, and the Servicer shall be entitled to be reimbursed
therefor out of the Certificate Account.

      Section 6.04.     Limitation on Resignation of the Servicer.

     The Servicer shall not resign from the obligations and duties hereby
imposed on it except (a) upon appointment of a successor servicer and receipt
by the Trustee of a letter from each Rating Agency that such a resignation and
appointment will not result in a downgrading, qualification or withdrawal of
the rating of any of the Certificates or (b) upon determination that its
duties under this Agreement are no longer permissible under applicable law.
Any such determination under clause (b) permitting the resignation of the
Servicer shall be evidenced by an Opinion of Counsel to such effect delivered
to the Trustee. No such resignation shall become effective until the Trustee
or a successor servicer shall have assumed the Servicer's responsibilities,
duties, liabilities and obligations under this Agreement and the Depositor
shall have received the information described in the following sentence. As a
condition to the effectiveness of any such resignation, at least 15 calendar
days prior to the effective date of such resignation, the Servicer shall
provide (x) written notice to the Depositor of any successor pursuant to this
Section and (y) in writing and in form and substance reasonably satisfactory
to the Depositor, all information reasonably requested by the Depositor in
order to comply with its reporting obligation under Item 6.02 of Form 8-K with
respect to the resignation of the Servicer.

<center>78</center>

&lt;PAGE&gt;

Article Seven

DEFAULT

Section 7.01.        Events of Default.

"Event of Default," wherever used in this Agreement, means any one of
the following events:

(a) any failure by the Servicer to deposit in the Certificate Account or
remit to the Trustee any payment required to be made by it under this
Agreement, which failure continues unremedied for five days after the date on
which written notice of the failure has been given to the Servicer by the
Trustee or the Depositor or to the Servicer and the Trustee by the Holders of
Certificates of any Class evidencing not less than 25% of the aggregate
Percentage Interests of the Class; or

(b) any failure by the Servicer to observe or perform in any material
respect any other of the covenants or agreements on the part of the Servicer
contained in this Agreement (except with respect to a failure related to a
Limited Exchange Act Reporting Obligation), which failure materially affects
the rights of Certificateholders and continues unremedied for a period of 60
days after the date on which written notice of such failure shall have been
given to the Servicer by the Trustee or the Depositor, or to the Servicer and
the Trustee by the Holders of Certificates of any Class evidencing not less
than 25% of the Percentage Interests of the Class; provided that the sixty-day
cure period shall not apply to the initial delivery of the Mortgage File for
Delay Delivery Mortgage Loans nor the failure to repurchase or substitute in
lieu thereof; or

(c) a decree or order of a court or agency or supervisory authority
having jurisdiction in the premises for the appointment of a receiver,
conservator or liquidator in any insolvency, readjustment of debt, marshalling
of assets and liabilities or similar proceedings, or for the winding-up or
liquidation of its affairs, shall have been entered against the Servicer and
such decree or order shall have remained in force undischarged or unstayed for
a period of 60 consecutive days; or

(d) the Servicer shall consent to the appointment of a receiver,
conservator or liquidator in any insolvency, readjustment of debt, marshalling
of assets and liabilities or similar proceedings of or relating to the
Servicer or all or substantially all of the property of the Servicer; or

(e) the Servicer shall admit in writing its inability to pay its debts
generally as they become due, file a petition to take advantage of, or
commence a voluntary case under, any applicable insolvency or reorganization
statute, make an assignment for the benefit of its creditors, or voluntarily
suspend payment of its obligations; or

(f) the Servicer shall fail (i) to make an Advance on the Servicer
Advance Date or (ii) to reimburse in full the Trustee within two days of the
Servicer Advance Date for any Advance made by the Trustee pursuant to Section
4.01(b).

If an Event of Default described in clauses (a) through (f) of this
Section 7.01 occurs, then, and in each and every such case, so long as such
Event of Default shall not have been remedied, the Trustee may, or at the
direction of the Holders of Certificates evidencing Percentage Interests
aggregating not less than 66 2/3%, the Trustee shall by notice in writing to
the Servicer (with a copy to each Rating Agency), terminate all of the rights
and obligations of the Servicer under this Agreement and in the Mortgage Loans
and the proceeds thereof, other than its rights as a Certificateholder
hereunder. In addition, if during the period that the Depositor is required to

file Exchange Act Reports with respect to the Trust Fund, the Servicer shall
fail to observe or perform any of the obligations that constitute a Limited

<div align="center">79</div>

&lt;PAGE&gt;

Exchange Act Reporting Obligation or the obligations set forth in Section
3.17(a) or Section 11.07(a)(i) and (ii), and such failure continues for the
lesser of 10 calendar days or such period in which the applicable Exchange Act
Report can be filed timely (without taking into account any extensions), so
long as such failure shall not have been remedied, the Trustee shall, but only
at the direction of the Depositor, terminate all of the rights and obligations
of the Servicer under this Agreement and in and to the Mortgage Loans and the
proceeds thereof, other than its rights as a Certificateholder hereunder. The
Depositor shall not be entitled to terminate the rights and obligations of the
Servicer if a failure of the Servicer to identify a Subcontractor
"participating in the servicing function" within the meaning of Item 1122 of
Regulation AB was attributable solely to the role or functions of such
Subcontractor with respect to mortgage loans other than the Mortgage Loans.

     On and after the receipt by the Servicer of such written notice, all
authority and power of the Servicer hereunder, whether with respect to the
Mortgage Loans or otherwise, shall pass to and be vested in the Trustee. The
Trustee shall make any Advance that the Servicer failed to make subject to
Section 3.05, whether or not the obligations of the Servicer have been
terminated pursuant to this Section. The Trustee is hereby authorized and
empowered to execute and deliver, on behalf of the Servicer, as
attorney-in-fact or otherwise, any documents and other instruments, and to do
or accomplish all other acts or things necessary or appropriate to effect the
purposes of such notice of termination, whether to complete the transfer and
endorsement or assignment of the Mortgage Loans and related documents, or
otherwise. Unless expressly provided in such written notice, no such
termination shall affect any obligation of the Servicer to pay amounts owed
pursuant to Article VIII. The Servicer agrees to cooperate with the Trustee in
effecting the termination of the Servicer's responsibilities and rights
hereunder, including the transfer to the Trustee of all cash amounts which
shall at the time be credited to the Certificate Account, or thereafter be
received with respect to the Mortgage Loans. If the Servicer fails to make any
Advance required under Section 4.01 of this Agreement, thereby triggering an
Event of Default described in clause (f) of this Section 7.01, the Trustee
shall make such Advance on that Distribution Date.

     Notwithstanding any termination of the activities of the Servicer under
this Agreement, the Servicer shall be entitled to receive, out of any late
collection of a Scheduled Payment on a Mortgage Loan which was due before the
notice terminating such Servicer's rights and obligations as Servicer
hereunder and received after such notice, that portion thereof to which such
Servicer would have been entitled pursuant to Sections 3.09(a)(i) through
(viii), and any other amounts payable to such Servicer hereunder the
entitlement to which arose before the termination of its activities hereunder.

     If the Servicer is terminated, the Trustee shall provide the Depositor
in writing and in form and substance reasonably satisfactory to the Depositor,
all information reasonably requested by the Depositor in order to comply with
its reporting obligation under Item 6.02 of Form 8-K with respect to a
successor servicer in the event the Trustee should succeed to the duties of
the Servicer as set forth herein.

     Section 7.02.     Trustee to Act; Appointment of Successor.

     On and after the time the Servicer receives a notice of termination
pursuant to Section 7.01, the Trustee shall, subject to and to the extent
provided in Section 3.05, be the successor to the Servicer in its capacity as

Servicer under this Agreement and the transactions set forth or provided for
herein and shall be subject to all the responsibilities, duties and
liabilities relating thereto placed on the Servicer by the terms hereof and
applicable law including the obligation to make Advances pursuant to Section
4.01. As compensation therefor, the Trustee shall be entitled to all funds
relating to the Mortgage Loans that the Servicer would have been entitled to
charge to the Certificate Account or Distribution Account if the Servicer had
continued to act hereunder, including, if the Servicer was receiving the
Servicing Fee, the Servicing Fee. Notwithstanding the foregoing, if the
Trustee has become the successor to the Servicer in

<div align="center">80</div>

<PAGE>

accordance with Section 7.01, the Trustee may, if it shall be unwilling to so
act, or shall, if it is prohibited by applicable law from making Advances
pursuant to Section 4.01 or if it is otherwise unable to so act, appoint, or
petition a court of competent jurisdiction to appoint, any established
mortgage loan servicing institution the appointment of which does not
adversely affect the then current rating of the Certificates by each Rating
Agency, as the successor to the Servicer hereunder in the assumption of all or
any part of the responsibilities, duties or liabilities of the Servicer
hereunder. Any successor to the Servicer shall be an institution which is a
FNMA and FHLMC approved seller/servicer in good standing, which has a net
worth of at least $15,000,000, which is willing to service the Mortgage Loans
and which executes and delivers to the Depositor and the Trustee an agreement
accepting such delegation and assignment, containing an assumption by such
Person of the rights, powers, duties, responsibilities, obligations and
liabilities of the Servicer (other than liabilities of the Servicer under
Section 6.03 incurred before termination of the Servicer under Section 7.01),
with like effect as if originally named as a party to this Agreement; provided
that each Rating Agency acknowledges that its rating of the Certificates in
effect immediately before such assignment and delegation will not be qualified
or reduced as a result of such assignment and delegation. Pending appointment
of a successor to the Servicer hereunder, the Trustee shall act in such
capacity as provided above, subject to section 3.03 and unless prohibited by
law. In connection with such appointment and assumption, the Trustee may make
such arrangements for the compensation of such successor out of payments on
Mortgage Loans as it and such successor shall agree; provided, however, that
in no case shall the rate of such compensation exceed the Servicing Fee Rate.
The Trustee and such successor shall take such action, consistent with this
Agreement, as shall be necessary to effectuate any such succession. Neither
the Trustee nor any other successor servicer shall be deemed to be in default
hereunder because of any failure to make, or any delay in making, any
distribution hereunder or any portion thereof or any failure to perform, or
any delay in performing, any duties or responsibilities hereunder, in either
case caused by the failure of the Servicer to deliver or provide, or any delay
in delivering or providing, any cash, information, documents or records to it.

In connection with the termination or resignation of the Servicer
hereunder, either (i) the successor Servicer, including the Trustee if the
Trustee is acting as successor Servicer, shall represent and warrant that it
is a member of MERS in good standing and shall agree to comply in all material
respects with the rules and procedures of MERS in connection with the
servicing of the Mortgage Loans that are registered with MERS, or (ii) the
predecessor Servicer shall cooperate with the successor Servicer either (x) in
causing MERS to execute and deliver an assignment of Mortgage in recordable
form to transfer the Mortgage from MERS to the Trustee and to execute and
deliver such other notices, documents and other instruments as may be
necessary or desirable to effect a transfer of such Mortgage Loan or servicing
of such Mortgage Loan on the MERS(R) System to the successor Servicer or (y)
in causing MERS to designate on the MERS(R) System the successor Servicer as
the servicer of such Mortgage Loan. The predecessor Servicer shall file or

cause to be filed any such assignment in the appropriate recording office. The successor Servicer shall cause such assignment to be delivered to the Trustee promptly upon receipt of the original with evidence of recording thereon or a copy certified by the public recording office in which such assignment was recorded.

Any successor to the Servicer as servicer shall give notice to the Mortgagors of such change of servicer and shall, during the term of its service as servicer, maintain in force the policy or policies that the Servicer is required to maintain pursuant to this Agreement.

Section 7.03.    Notification to Certificateholders.

(a) Upon any termination of or appointment of a successor to the Servicer, the Trustee shall give prompt written notice thereof to Certificateholders and to each Rating Agency.

81

<PAGE>

(b) Within 60 days after the occurrence of any Event of Default, the Trustee shall transmit by mail to all Certificateholders and each Rating Agency notice of each such Event of Default hereunder known to the Trustee, unless such Event of Default shall have been cured or waived.

82

<PAGE>

Article Eight

CONCERNING THE TRUSTEE

Section 8.01.    Duties of the Trustee.

The Trustee, before the occurrence of an Event of Default and after the curing of all Events of Default that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement. In case an Event of Default has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

The Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee that are specifically required to be furnished pursuant to any provision of this Agreement shall examine them to determine whether they are in the form required by this Agreement. The Trustee shall not be responsible for the accuracy or content of any such resolution, certificate, statement, opinion, report, document, order, or other instrument.

No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; provided, however, that, unless an Event of Default known to the Trustee has occurred and is continuing,

(a) the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of the duties and obligations specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee, and the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement which it believed in good faith to be genuine and to have been duly executed by the proper authorities respecting any matters arising hereunder;

(b) the Trustee shall not be liable for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it is finally proven that the Trustee was negligent in ascertaining the pertinent facts; and

(c) the Trustee shall not be liable with respect to any action taken, suffered, or omitted to be taken by it in good faith in accordance with the direction of Holders of Certificates evidencing not less than 25% of the Voting Rights relating to the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Agreement. As long as any Voting Rights are held by parties other than the Seller, its Affiliates, or its agents, Voting Rights of Certificates held by the Seller, its Affiliates or its agents as the Seller shall certify to the Trustee upon any entity obtaining such ownership will be excluded from participating in such voting arrangements, and excluded from determining the 25% threshold.

Section 8.02.     Certain Matters Affecting the Trustee.

Except as otherwise provided in Section 8.01:

(a) the Trustee may request and rely upon and shall be protected in acting or refraining from acting upon any resolution, Officer's Certificate, certificate of auditors or any other certificate, statement,

83

<PAGE>

instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties and the Trustee shall have no responsibility to ascertain or confirm the genuineness of any signature of any such party or parties;

(b) the Trustee may consult with counsel, financial advisers or accountants and the advice of any such counsel, financial advisers or accountants and any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by it hereunder in good faith and in accordance with such Opinion of

Counsel;

(c) the Trustee shall not be liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement;

(d) the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing so to do by Holders of Certificates evidencing not less than 25% of the Voting Rights allocated to each Class of Certificates; provided, however, that no Certificates held by the Seller, the Depositor or any Affiliate shall be given effect for the purpose of calculating any such aggregation of Voting Rights;

(e) the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, accountants or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agents, accountants or attorneys appointed with due care by it hereunder;

(f) the Trustee shall not be required to risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties or in the exercise of any of its rights or powers hereunder if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not assured to it;

(g) the Trustee shall not be liable for any loss on any investment of funds pursuant to this Agreement (other than as issuer of the investment security);

(h) the Trustee shall not be deemed to have knowledge of an Event of Default until a Responsible Officer of the Trustee shall have received written notice thereof;

(i) the Trustee shall be under no obligation to exercise any of the trusts, rights or powers vested in it by this Agreement or to institute, conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any of the Certificateholders, pursuant to this Agreement, unless such Certificateholders shall have offered to the Trustee reasonable security or indemnity satisfactory to the Trustee against the costs, expenses and liabilities which may be incurred therein or thereby;

(j) the Trustee or its Affiliates are permitted to receive additional compensation that could be deemed to be in the Trustee's economic self-interest for (i) serving as investment adviser, administrator, shareholder servicing agent, custodian or sub-custodian with respect to certain of the Permitted Investments, (ii) using Affiliates to effect transactions in certain Permitted Investments and (iii) effecting transactions in certain Permitted Investments. The Trustee does not guarantee the performance of any Permitted Investment; and

84

<PAGE>

(k) The Trustee shall not knowingly take any action that would cause the Trust Fund to fail to qualify as a qualifying special purpose entity.

In order to comply with laws, rules, regulations and executive orders in effect from time to time applicable to banking institutions, including those relating to the funding of terrorist activities and money laundering ("Applicable Law"), the Trustee is required to obtain, verify and record certain information relating to individuals and entities which maintain a

business relationship with the Trustee. Accordingly, each of the parties agrees to provide to the Trustee upon its request from time to time such identifying information and documentation as may be available for such party in order to enable the Trustee to comply with Applicable Law.

Section 8.03.　　　Trustee Not Liable for Certificates or Mortgage Loans.

The recitals contained herein and in the Certificates shall be taken as the statements of the Depositor or the Seller, as the case may be, and the Trustee assumes no responsibility for their correctness. The Trustee makes no representations as to the validity or sufficiency of this Agreement or of the Certificates or of any Mortgage Loan or related document other than with respect to the Trustee's execution and countersignature of the Certificates. The Trustee shall not be accountable for the use or application by the Depositor or the Servicer of any funds paid to the Depositor or the Servicer in respect of the Mortgage Loans or deposited in or withdrawn from the Certificate Account by the Depositor or the Servicer.

Except as provided in Section 2.01(c), the Trustee shall have no responsibility for filing or recording any financing or continuation statement in any public office at any time or to otherwise perfect or maintain the perfection of any security interest or lien granted to it hereunder (unless the Trustee shall have become the successor Servicer). The Trustee makes no representations as to the validity or sufficiency of this Agreement or of the Certificates or of any Mortgage Loan or related document or of MERS or the MERS(R) System other than with respect to the Trustee's execution and counter-signature of the Certificates.

The Trustee executes the Certificates not in its individual capacity but solely as Trustee of the Trust Fund created by this Agreement, in the exercise of the powers and authority conferred and vested in it by this Agreement. Each of the undertakings and agreements made on the part of the Trustee on behalf of the Trust Fund in the Certificates is made and intended not as a personal undertaking or agreement by the Trustee but is made and intended for the purpose of binding only the Trust Fund.

Section 8.04.　　　Trustee May Own Certificates.

The Trustee in its individual or any other capacity may become the owner or pledgee of Certificates with the same rights as it would have if it were not the Trustee.

Section 8.05.　　　Trustee's Fees and Expenses.

As compensation for its activities under this Agreement, on each Distribution Date the Trustee may withdraw from the Distribution Account the Trustee Fee for that Distribution Date. The Trustee and any director, officer, employee, or agent of the Trustee shall be indemnified by the Servicer against any loss, liability, or expense (including reasonable attorney's fees) resulting from any error in any tax or information return prepared by the Servicer or incurred in connection with any claim or legal action relating to

85

<PAGE>

(a) this Agreement, (b) the Certificates, or (c) the performance of any of the Trustee's duties under this Agreement, other than any loss, liability or expense incurred because of willful misfeasance, bad faith or negligence in the performance of any of the Trustee's duties hereunder or incurred by reason of any action of the Trustee taken at the direction of the Certificateholders under this Agreement. This indemnity shall survive the termination of this Agreement or the resignation or removal of the Trustee under this Agreement.

Without limiting the foregoing, except as otherwise agreed upon in writing by the Depositor and the Trustee, and except for any expense, disbursement, or advance arising from the Trustee's negligence, bad faith, or willful misconduct, the Servicer shall pay or reimburse the Trustee, for all reasonable expenses, disbursements, and advances incurred or made by the Trustee in accordance with this Agreement with respect to

      (i) the reasonable compensation, expenses, and disbursements of its counsel not associated with the closing of the issuance of the Certificates, and

      (ii) the reasonable compensation, expenses, and disbursements of any accountant, engineer, or appraiser that is not regularly employed by the Trustee, to the extent that the Trustee must engage them to perform services under this Agreement.

Except as otherwise provided in this Agreement, the Trustee shall not be entitled to payment or reimbursement for any routine ongoing expenses incurred by the Trustee in the ordinary course of its duties as Trustee, Registrar, or Paying Agent under this Agreement or for any other expenses.

    Section 8.06.     Eligibility Requirements for the Trustee.

The Trustee hereunder shall at all times be a corporation or association organized and doing business under the laws of a state or the United States of America, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000, subject to supervision or examination by federal or state authority and with a credit rating which would not cause either of the Rating Agencies to reduce their respective then current ratings of the Certificates (or having provided such security from time to time as is sufficient to avoid such reduction) as evidenced in writing by each Rating Agency. If such corporation or association publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section 8.06 the combined capital and surplus of such corporation or association shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time the Trustee shall cease to be eligible in accordance with this Section 8.06, the Trustee shall resign immediately in the manner and with the effect specified in Section 8.07. The entity serving as Trustee may have normal banking and trust relationships with the Depositor and its affiliates or the Servicer and its affiliates; provided, however, that such entity cannot be an affiliate of the Seller, the Depositor or the Servicer other than the Trustee in its role as successor to the Servicer.

    Section 8.07.     Resignation and Removal of the Trustee.

The Trustee may at any time resign and be discharged from the trusts hereby created by giving written notice of resignation to the Depositor, the Servicer, and each Rating Agency not less than 60 days before the date specified in such notice, when, subject to Section 8.08, such resignation is to take effect, and acceptance by a successor trustee in accordance with Section 8.08 meeting the qualifications set forth in Section 8.06. If no successor trustee meeting such qualifications shall have been so appointed and have accepted appointment within 30 days after the giving of such notice or resignation, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor trustee.

<center>86</center>

&lt;PAGE&gt;

As a condition to the effectiveness of any such resignation, at least 15 calendar days prior to the effective date of such resignation, the Trustee

shall provide (x) written notice to the Depositor of any successor pursuant to this Section and (y) in writing and in form and substance reasonably satisfactory to the Depositor, all information reasonably requested by the Depositor in order to comply with its reporting obligation under Item 6.02 of Form 8-K with respect to the resignation of the Trustee.

If at any time the Trustee shall cease to be eligible in accordance with Section 8.06 and shall fail to resign after written request thereto by the Depositor, or if at any time the Trustee shall become incapable of acting, or shall be adjudged as bankrupt or insolvent, or a receiver of the Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, or a tax is imposed with respect to the Trust Fund by any state in which the Trustee or the Trust Fund is located and the imposition of such tax would be avoided by the appointment of a different trustee, or (iv) during the period in which the Depositor is required to file Exchange Act Reports with respect to the Trust Fund, the Trustee fails to comply with its obligations under the last sentence of Section 7.01, the preceding paragraph, Section 8.09 or Article 11 and such failure is not remedied within the lesser of 10 calendar days or such period in which the applicable Exchange Act Report can be filed timely (without taking into account any extensions), then, in the case of clauses (i) through (iii), then the Depositor or the Servicer, or in the case of clause (iv), the Depositor, may remove the Trustee and appoint a successor trustee by written instrument, in triplicate, one copy of which shall be delivered to the Trustee, one copy to the Servicer and one copy to the successor trustee.

The Holders of Certificates entitled to at least 51% of the Voting Rights may at any time remove the Trustee and appoint a successor trustee by written instrument or instruments, in triplicate, signed by such Holders or their attorneys-in-fact duly authorized, one complete set of which shall be delivered by the successor Trustee to the Servicer, one complete set to the Trustee so removed, one complete set to the successor so appointed and one complete set to the Depositor, together with a written description of the basis for such removal. As long as any Voting Rights are held by parties other than the Seller, its Affiliates, or its agents, Voting Rights of Certificates held by the Seller, its Affiliates or its agents as the Seller shall certify to the Trustee upon any such entity obtaining such ownership will be excluded from participating in such voting arrangements, and excluded from determining the 51% threshold. The successor trustee shall notify each Rating Agency of any removal of the Trustee.

Any resignation or removal of the Trustee and appointment of a successor trustee pursuant to this Section 8.07 shall become effective upon acceptance of appointment by the successor trustee as provided in Section 8.08.

Section 8.08.    Successor Trustee.

Any successor trustee appointed as provided in Section 8.07 shall execute, acknowledge and deliver to the Depositor and to its predecessor trustee and the Servicer an instrument accepting such appointment hereunder and thereupon the resignation or removal of the predecessor trustee shall become effective and such successor trustee, without any further act, deed or conveyance, shall become fully vested with all the rights, powers, duties and obligations of its predecessor hereunder, with the like effect as if originally named as trustee herein. The Depositor, the Servicer and the predecessor trustee shall execute and deliver such instruments and do such other things as may reasonably be required for more fully and certainly vesting and confirming in the successor trustee all such rights, powers, duties, and obligations.

No successor trustee shall accept appointment as provided in this Section 8.08 unless, at the time of its acceptance, the successor trustee is eligible under Section 8.06 and its appointment does not

<PAGE>

adversely affect the then current rating of the Certificates and has provided to the Depositor in writing and in form and substance reasonably satisfactory to the Depositor, all information reasonably requested by the Depositor in order to comply with its reporting obligation under Item 6.02 of Form 8-K with respect to a replacement Trustee.

Upon acceptance of appointment by a successor trustee as provided in this Section 8.08, the Depositor shall mail notice of the succession of such trustee hereunder to all Holders of Certificates. If the Depositor fails to mail such notice within 10 days after acceptance of appointment by the successor trustee, the successor trustee shall cause such notice to be mailed at the expense of the Depositor.

Section 8.09.    Merger or Consolidation of the Trustee.

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to the business of the Trustee, shall be the successor of the Trustee hereunder, provided that such corporation shall be eligible under Section 8.06 without the execution or filing of any paper or further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

As a condition to the effectiveness of any merger or consolidation, at least 15 calendar days prior to the effective date of any merger or consolidation of the Trustee, the Trustee shall provide (x) written notice to the Depositor of any successor pursuant to this Section and (y) in writing and in form and substance reasonably satisfactory to the Depositor, all information reasonably requested by the Depositor in order to comply with its reporting obligation under Item 6.02 of Form 8-K with respect to a replacement Trustee.

Section 8.10.    Appointment of Co-Trustee or Separate Trustee.

Notwithstanding any other provisions of this Agreement, at any time, for the purpose of meeting any legal requirements of any jurisdiction in which any part of the Trust Fund or property securing any Mortgage Note may at the time be located, the Servicer and the Trustee acting jointly shall have the power and shall execute and deliver all instruments to appoint one or more Persons approved by the Trustee to act as co-trustee or co-trustees jointly with the Trustee, or separate trustee or separate trustees, of all or any part of the Trust Fund, and to vest in such Person or Persons, in such capacity and for the benefit of the Certificateholders, such title to the Trust Fund or any part thereof, whichever is applicable, and, subject to the other provisions of this Section 8.10, such powers, duties, obligations, rights and trusts as the Servicer and the Trustee may consider appropriate. If the Servicer shall not have joined in such appointment within 15 days after the receipt by it of a request to do so, or in the case an Event of Default shall have occurred and be continuing, the Trustee alone shall have the power to make such appointment. No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 8.06 and no notice to Certificateholders of the appointment of any co-trustee or separate trustee shall be required under Section 8.08.

Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(a) To the extent necessary to effectuate the purposes of this Section 8.10, all rights, powers, duties and obligations conferred or imposed upon the

Trustee, except for the obligation of the Trustee under this Agreement to advance funds on behalf of the Servicer, shall be conferred or imposed upon and exercised or performed by the Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Trustee joining in

<center>88</center>

<PAGE>

such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed (whether as Trustee hereunder or as successor to the Servicer hereunder), the Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the applicable Trust Fund or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Trustee;

(b) No trustee hereunder shall be held personally liable because of any act or omission of any other trustee hereunder and such appointment shall not, and shall not be deemed to, constitute any such separate trustee or co-trustee as agent of the Trustee;

(c) The Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee; and

(d) The Servicer, and not the Trustee, shall be liable for the payment of reasonable compensation, reimbursement and indemnification to any such separate trustee or co-trustee.

Any notice, request or other writing given to the Trustee shall be deemed to have been given to each of the separate trustees and co-trustees, when and as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Agreement and the conditions of this Article VIII. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Trustee or separately, as may be provided therein, subject to all the provisions of this Agreement, specifically including every provision of this Agreement relating to the conduct of, affecting the liability of, or affording protection to, the Trustee. Every such instrument shall be filed with the Trustee and a copy thereof given to the Servicer and the Depositor.

Any separate trustee or co-trustee may, at any time, constitute the Trustee its agent or attorney-in-fact, with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Agreement on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

Section 8.11.    Tax Matters.

It is intended that the assets with respect to which one or more REMIC elections pertaining to the Trust Fund is to be made, as set forth in the Preliminary Statement, shall constitute, and that the conduct of matters relating to such assets shall be such as to qualify such assets as, a "real estate mortgage investment conduit" as defined in and in accordance with the REMIC Provisions. In furtherance of such intention, the Trustee covenants and agrees that it shall act as agent (and the Trustee is hereby appointed to act as agent) on behalf of each REMIC created under this Agreement and that in such capacity it shall:

(a) prepare and file in a timely manner, a U.S. Real Estate Mortgage Investment Conduit Income Tax Return (Form 1066 or any successor form adopted by the Internal Revenue Service) with respect to each REMIC created hereunder and prepare and file with the Internal Revenue Service and applicable state or local tax authorities income tax or information returns for each taxable year with respect to each REMIC described in the Preliminary Statement, containing such information and at the times and in the manner as may be required by the Code or state or local tax laws, regulations, or rules, and furnish to Certificateholders the schedules, statements or information at such times and in such manner as may be required thereby;

<center>89</center>

&lt;PAGE&gt;

(b) within thirty days of the Closing Date, furnish to the Internal Revenue Service, on Forms 8811 or as otherwise may be required by the Code, the name, title, address, and telephone number of the person that the holders of the Certificates may contact for tax information relating thereto, together with such additional information as may be required by such Form, and update such information at the time or times in the manner required by the Code;

(c) make an election that each REMIC created under this Agreement be treated as a REMIC on the federal tax return for its first taxable year (and, if necessary, under applicable state law);

(d) prepare and forward to the Certificateholders and to the Internal Revenue Service and, if necessary, state tax authorities, all information returns and reports as and when required to be provided to them in accordance with the REMIC Provisions, including the calculations of any original issue discount and of taxable income or net loss to the holders of the residual interests in each REMIC created hereunder using the Prepayment Assumption (as defined in the Prospectus Supplement). For purposes of calculating taxable income or net loss to the holders of the residual interests in each such REMIC, the Trustee also shall assume that the indices in respect of any adjustable rate Mortgage Loans are static until the liquidation or purchase of the Mortgage Loans in accordance with Section 9.01 herein;

(e) provide information necessary for the computation of tax imposed on the transfer of a Residual Certificate to a Person that is not a Permitted Transferee, or an agent (including a broker, nominee or other middleman) of a Person that is not a Permitted Transferee, or a pass-through entity in which a Person that is not a Permitted Transferee is the record holder of an interest (the reasonable cost of computing and furnishing such information may be charged to the Person liable for such tax);

(f) to the extent that they are under its control, conduct matters relating to such assets at all times that any Certificates are outstanding so as to maintain the status as any REMIC created under this Agreement under the REMIC Provisions;

(g) not knowingly or intentionally take any action or omit to take any action that would cause the termination of the REMIC status of any REMIC created under this Agreement;

(h) pay, from the sources specified in the last paragraph of this Section 8.11, the amount of any federal or state tax, including prohibited transaction taxes as described below, imposed on any REMIC before its termination when and as the same shall be due and payable (but such obligation shall not prevent the Trustee or any other appropriate Person from contesting any such tax in appropriate proceedings and shall not prevent the Trustee from withholding payment of such tax, if permitted by law, pending the outcome of such proceedings);

(i) ensure that federal, state or local income tax or information returns shall be signed by the Trustee or such other person as may be required to sign such returns by the Code or state or local laws, regulations or rules;

(j) maintain records relating to each REMIC created under this Agreement, including the income, expenses, assets, and liabilities thereof and the fair market value and adjusted basis of the assets determined at such intervals as may be required by the Code, as may be necessary to prepare the foregoing returns, schedules, statements or information; and

(k) as and when necessary and appropriate, represent each REMIC created under this Agreement in any administrative or judicial proceedings relating to an examination or audit by any governmental taxing authority, request an administrative adjustment as to any taxable year of such REMIC, enter into settlement agreements with any governmental taxing agency, extend any statute of

<div align="center">90</div>

&lt;PAGE&gt;

limitations relating to any tax item of such REMIC, and otherwise act on behalf of such REMIC in relation to any tax matter or controversy involving it.

To enable the Trustee to perform its duties under this Agreement, the Depositor shall provide to the Trustee within ten days after the Closing Date all information or data that the Trustee requests in writing and determines to be relevant for tax purposes to the valuations and offering prices of the Certificates, including the price, yield, prepayment assumption, and projected cash flows of the Certificates and the Mortgage Loans. Thereafter, the Depositor shall provide to the Trustee promptly upon written request therefor any additional information or data that the Trustee may, from time to time, reasonably request to enable the Trustee to perform its duties under this Agreement. The Depositor hereby indemnifies the Trustee for any losses, liabilities, damages, claims, or expenses of the Trustee arising from any errors or miscalculations of the Trustee that result from any failure of the Depositor to provide, or to cause to be provided, accurate information or data to the Trustee on a timely basis.

If any tax is imposed on "prohibited transactions" (as defined in section 860F(a)(2) of the Code) of any REMIC created under this Agreement, on the "net income from foreclosure property" of any REMIC created under this Agreement as defined in section 860G(c) of the Code, on any contribution to any REMIC created under this Agreement after the Startup Day pursuant to section 860G(d) of the Code, or any other tax is imposed, including any minimum tax imposed on any REMIC created hereunder pursuant to sections 23153 and 24874 of the California Revenue and Taxation Code, if not paid as otherwise provided for herein, the tax shall be paid by (i) the Trustee, if any such other tax arises out of or results from negligence of the Trustee in the performance of any of its obligations under this Agreement, (ii) the Servicer or the Seller, in the case of any such minimum tax, if such tax arises out of or results from a breach by the Servicer or Seller of any of their obligations under this Agreement, (iii) the Seller, if any such tax arises out of or results from the Seller's obligation to repurchase a Mortgage Loan pursuant to Section 2.02 or 2.03, or (iv) in all other cases, or if the Trustee, the Servicer, or the Seller fails to honor its obligations under the preceding clauses (i), (ii), or (iii), any such tax will be paid with amounts otherwise to be distributed to the Certificateholders, as provided in Section 3.09(b).

The Trustee shall treat the Carryover Reserve Fund and the Supplemental Interest Trust as outside reserve funds within the meaning of Treasury

Regulation 1.860G-2(h) that are owned by the Holders of the Class C
Certificates. The Carryover Reserve Fund and Supplemental Interest Trust shall
not be assets of any REMIC created under this Agreement. The Trustee shall
treat the rights of the Holders of the LIBOR Certificates to receive payments
from the Carryover Reserve Fund and the Supplemental Interest Trust as rights
in an interest rate cap contract written by the Holders of the Class C
Certificates and the Corridor Counterparty. The Trustee is required to allocate
tax basis to this asset. Based on information provided by the Underwriters
it is anticipated that the Trustee will treat the rights of the Holders of the
LIBOR Certificates to receive payments from the Carryover Reserve Fund and the
Supplemental Interest Trust as having a value of approximately $780,000.
Thus, the LIBOR Certificates shall be treated as representing ownership of not
only a Master REMIC regular interest, but also ownership of an interest in an
interest rate cap contract. The Trustee shall file or cause to be filed with
the Internal Revenue Service Form 1041 or such other form as may be applicable
and shall furnish or cause to be furnished, to the Class C Certificateholders
and the LIBOR Certificateholders, the respective amounts described above that
are received, in the time or times and in the manner required by the Code.

The Trustee shall account for the Supplemental Interest Trust as an
asset of a grantor trust under subpart E. Part I of subchapter J of the Code
and not as an asset of any REMIC created hereunder.


                                    91
<PAGE>

                               Article Nine

                                TERMINATION

     Section 9.01.      Termination upon Liquidation or Purchase of the
Mortgage Loans.

     Subject to Section 9.03, the obligations and responsibilities of the
Depositor, the Servicer, and the Trustee created hereby shall terminate upon
the earlier of

     (a) the purchase by the Servicer of all Mortgage Loans (and REO
Properties) at the price equal to the sum of

          (i) 100% of the Stated Principal Balance of each Mortgage Loan
     (other than in respect of a Delinquent Mortgage Loan or REO Property)
     plus one month's accrued interest thereon at the applicable Adjusted
     Mortgage Rate less any amounts collected by the Servicer representing
     principal and interest due after the related Due Date,

          (ii) the lesser of (x) the appraised value of any Delinquent
     Mortgage Loan or REO Property as determined by the higher of two
     appraisals completed by two independent appraisers selected by the
     Servicer at the expense of the Servicer and (y) the Stated Principal
     Balance of each such Delinquent Mortgage Loan or Mortgage Loan related
     to such REO Property, in each case plus accrued and unpaid interest
     thereon at the applicable Adjusted Net Mortgage Rate, and

          (iii) any costs and damages incurred by the Trust Fund in
     connection with any violation by each Mortgage Loan of any predatory or
     abusive lending law, and

     (b) the later of

          (i) the maturity or other liquidation (or any Advance with respect
     thereto) of the last Mortgage Loan and the disposition of all REO
     Property and

(ii) the distribution to Certificateholders of all amounts required to be distributed to them pursuant to this Agreement. In no event shall the trusts created hereby continue beyond the expiration of 21 years from the death of the survivor of the descendants of Joseph P. Kennedy, the late Ambassador of the United States to the Court of St. James's, living on the date of this Agreement.

The right to purchase all Mortgage Loans and REO Properties pursuant to clause (a) above shall be conditioned upon the aggregate Stated Principal Balance of those Mortgage Loans, at the time of any such repurchase, aggregating less than ten percent (10%) of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date. The first Distribution Date on which the right to purchase all Mortgage Loans and REO Properties pursuant to clause (a) above first becomes exercisable is referred to as the "Optional Termination Date." The Servicer shall effect any such repurchase by depositing the purchase price, as calculated above, as of the month preceding the date on which such purchase price shall be distributed to Certificateholders into the Certificate Account. With such repurchase, the Servicer shall acquire any rights or potential rights of the Certificateholders or the Trustee to causes of action against any Person relating to the Mortgage Loans or the origination of the Mortgage Loans, including, without limitation, the right to enforce any breach of a representation or warranty made at any time with respect to the Mortgage Loans.

92

&lt;PAGE&gt;

The Supplemental Interest Trust shall terminate on the earliest of (i) the Corridor Contract Termination Date, (ii) the reduction of the aggregate Class Certificate Balance of the LIBOR Certificates to zero and (iii) the termination of this Agreement.

Section 9.02.      Final Distribution on the Certificates.

If on any Determination Date the Servicer determines that there are no Outstanding Mortgage Loans and no other funds or assets in the Trust Fund other than the funds in the Certificate Account, the Servicer shall direct the Trustee promptly to send a final distribution notice to each Certificateholder. If the Servicer elects to terminate the Trust Fund pursuant to clause (a) of Section 9.01, no later than the 15th day of the month preceding the month of the final Distribution Date the Servicer shall notify the Depositor and the Trustee of the date the Servicer intends to terminate the Trust Fund and of the applicable repurchase price of the Mortgage Loans and REO Properties.

Notice of any termination of the Trust Fund specifying the Distribution Date on which Certificateholders may surrender their Certificates for payment of the final distribution and cancellation shall be given promptly by the Trustee by letter to Certificateholders mailed not earlier than the 15th day and not later than the last day of the month next preceding the month of such final distribution. Any such notice shall specify (a) the Distribution Date upon which final distribution on the Certificates will be made upon presentation and surrender of Certificates at the office therein designated, (b) the amount of such final distribution, (c) the location of the office or agency at which such presentation and surrender must be made, and (d) that the Record Date otherwise applicable to the Distribution Date is not applicable, distributions being made only upon presentation and surrender of the Certificates at the office therein specified. The Servicer will give such notice to each Rating Agency at the time such notice is given to Certificateholders.

If this notice is given, the Servicer shall cause all funds in the
Certificate Account to be remitted to the Trustee for deposit in the
Distribution Account on the Business Day before the applicable Distribution
Date in an amount equal to the final distribution in respect of the
Certificates. Upon such final deposit with respect to the Trust Fund and the
receipt by the Trustee of a Request for Release therefor, the Trustee shall
promptly release to the Servicer the Mortgage Files for the Mortgage Loans.

Upon presentation and surrender of the Certificates, the Trustee shall
cause to be distributed to the Certificateholders of each Class on the final
Distribution Date and in the order set forth in Section 4.02, an amount equal
to (i) as to each Class of Regular Certificates (other than the Notional
Amount Certificates), its Certificate Balance plus for each such Class accrued
interest thereon (or on their Notional Amount, if applicable) in the case of
an interest-bearing Certificate and (ii) as to the Residual Certificates, any
amount remaining on deposit in the Distribution Account (other than the
amounts retained to meet claims) after application pursuant to clause (i)
above. Notwithstanding the reduction of the Certificate Balance of any Class
of Certificates to zero, such Class will be outstanding hereunder solely for
the purpose of receiving distributions and for no other purpose until the
termination of the respective obligations and responsibilities of the
Depositor, the Servicer and the Trustee hereunder in accordance with Article
Nine. The foregoing provisions are intended to distribute to each Class of
Regular Certificates any accrued and unpaid interest and principal to which
they are entitled based on the Pass-Through Rates and actual Class Certificate
Balances or Notional Amounts set forth in the Preliminary Statement upon
liquidation of the Trust Fund.

If any affected Certificateholder does not surrender its Certificates
for cancellation within six months after the date specified in the above
mentioned written notice, the Trustee shall give a second written notice to
the remaining Certificateholders to surrender their Certificates for
cancellation and receive the final distribution with respect thereto. If
within six months after the second notice all the

93

<PAGE>

applicable Certificates shall not have been surrendered for cancellation, the
Trustee may take appropriate steps, or may appoint an agent to take
appropriate steps, to contact the remaining Certificateholders concerning
surrender of their Certificates, and the cost thereof shall be paid out of the
funds and other assets which remain a part of the Trust Fund. If within one
year after the second notice all Certificates shall not have been surrendered
for cancellation, then the Holders of the Class A-R Certificates shall be
entitled to all unclaimed funds and other assets of the Trust Fund which
remain subject hereto.

Section 9.03.     Additional Termination Requirements.

(a) If the Servicer exercises its purchase option with respect to the
Mortgage Loans as provided in Section 9.01, the Trust Fund shall be terminated
in accordance with the following additional requirements, unless the Trustee
has been supplied with an Opinion of Counsel, at the expense of the Servicer,
to the effect that the failure to comply with the requirements of this Section
9.03 will not (i) result in the imposition of taxes on "prohibited
transactions" on any REMIC created hereunder as defined in section 860F of the
Code, or (ii) cause any REMIC created under this Agreement to fail to qualify
as a REMIC at any time that any Certificates are outstanding:

(b) The Trustee shall sell all of the assets of the Trust Fund to the
Servicer, and, within 90 days of such sale, shall distribute to the

Certificateholders the proceeds of such sale in complete liquidation of each
REMIC created under this Agreement.

(c) The Trustee shall attach a statement to the final federal income tax
return for each REMIC created under this Agreement stating that pursuant to
Treasury Regulation ss. 1.860F-1, the first day of the 90-day liquidation
period for such REMIC was the date on which the Trustee sold the assets of the
Trust Fund to the Servicer.

Section 9.04.    Termination of the Supplemental Interest Trust.

The Supplemental Interest Trust shall terminate on the earlier of the
date on which the aggregate Class Certificate Balance of the LIBOR
Certificates is reduced to zero and the termination of this Agreement.

94

<PAGE>

Article Ten

MISCELLANEOUS PROVISIONS

Section 10.01.    Amendment.

This Agreement may be amended from time to time by the Depositor, the
Servicer and the Trustee without the consent of any of the Certificateholders
(i) to cure any ambiguity or mistake, (ii) to correct any defective provision
in this Agreement or to supplement any provision in this Agreement which may
be inconsistent with any other provision in this Agreement, (iii) to conform
this Agreement to the Prospectus Supplement, (iv) to add to the duties of the
Depositor, the Seller or the Servicer, (v) to modify, alter, amend, add to or
rescind any of the terms or provisions contained in this Agreement to comply
with any rules or regulations promulgated by the Commission from time to time,
(vi) to add any other provisions with respect to matters or questions arising
under this Agreement, or (vii) to modify, alter, amend, add to, or rescind any
of the terms or provisions contained in this Agreement.

No action pursuant to clauses (v), (vi) or (vii) above may, as evidenced
by an Opinion of Counsel (which Opinion of Counsel shall not be an expense of
the Trustee or the Trust Fund), adversely affect in any material respect the
interests of any Certificateholder. The amendment shall not be deemed to
adversely affect in any material respect the interests of the
Certificateholders if the Person requesting the amendment obtains a letter
from each Rating Agency stating that the amendment would not result in the
downgrading, qualification or withdrawal of the respective ratings then
assigned to the Certificates. Any such letter in and of itself will not
represent a determination as to the materiality of any amendment and will
represent a determination only as to the credit issues affecting any rating.
Each party to this Agreement agrees that it will cooperate with each other
party in amending this Agreement pursuant to clause (v) above.

The Trustee, the Depositor, and the Servicer also may at any time and
from time to time amend this Agreement without the consent of the
Certificateholders to modify, eliminate or add to any of its provisions to the
extent necessary or helpful to (i) maintain the qualification of any REMIC
created under this Agreement as a REMIC under the Code, (ii) avoid or minimize
the risk of the imposition of any tax on any REMIC created under this
Agreement pursuant to the Code that would be a claim at any time before the
final redemption of the Certificates, or (iii) comply with any other

requirements of the Code, if the Trustee has been provided an Opinion of
Counsel, which opinion shall be an expense of the party requesting such
opinion but in any case shall not be an expense of the Trustee or the Trust
Fund, to the effect that the action is necessary or helpful for one of the
foregoing purposes.

This Agreement may also be amended from time to time by the Depositor,
the Servicer, and the Trustee with the consent of the Holders of Certificates
evidencing Percentage Interests aggregating not less than 51% of each Class of
Certificates adversely affected thereby for the purpose of adding any
provisions to or changing in any manner or eliminating any of the provisions
of this Agreement or of modifying in any manner the rights of the Holders of
Certificates. As long as any Voting Rights are held by parties other than the
Seller, its Affiliates, or its agents, Voting Rights of Certificates held by
the Seller, its Affiliates or its agents as the Seller shall certify to the
Trustee upon any such entity obtaining such ownership will be excluded from
participating in such voting arrangements, and excluded from determining the
51% threshold. No amendment shall

(i) reduce in any manner the amount of, or delay the timing of,
payments required to be distributed on any Certificate without the
consent of the Holder of such Certificate,

95

<PAGE>

(ii) amend, modify, add to, rescind, or alter in any respect
Section 10.13, notwithstanding any contrary provision of this Agreement,
without the consent of the Holders of Certificates evidencing Percentage
Interests aggregating not less than 66 2/3% (provided, however, that no
Certificates held by the Seller, the Depositor or any Affiliate thereby
shall be given effect for the purpose of calculating any such
aggregation of Percentage Interests), or

(iii) reduce the aforesaid percentages of Certificates the Holders
of which are required to consent to any such amendment, without the
consent of the Holders of all such Certificates then outstanding.

Notwithstanding any contrary provision of this Agreement, the Trustee
shall not consent to any amendment to this Agreement unless (i) it shall have
first received an Opinion of Counsel, which opinion shall not be an expense of
the Trustee or the Trust Fund, to the effect that such amendment will not
cause the imposition of any tax on any REMIC created under this Agreement or
the Certificateholders or cause any REMIC created hereunder to fail to qualify
as a REMIC at any time that any Certificates are outstanding and (ii) because
the Trust Fund is required to be a Qualifying Special Purpose Entity (as that
term is defined in Statement of Financial Accounting Standards No. 140 ("SFAS
140"), in order for the Seller to continue to account for the transfer of the
Mortgage Loans under this Agreement as a sale under SFAS 140, prior to the
parties hereto entering into such an amendment, the Trustee shall receive an
Officer's Certificate, which shall not be an expense of the Trustee or the
Trust Fund, to the effect that such amendment would not "significantly change"
(within the meaning of SFAS 140) the permitted activities of the Trust Fund so
as to cause the Trust Fund to fail to qualify as a Qualifying Special Purpose
Entity.

Promptly after the execution of any amendment to this Agreement
requiring the consent of Certificateholders, the Trustee shall furnish written
notification of the substance or a copy of such amendment to each
Certificateholder and each Rating Agency.

It shall not be necessary for the consent of Certificateholders under
this Section 10.01 to approve the particular form of any proposed amendment,

but it shall be sufficient if such consent shall approve the substance
thereof. The manner of obtaining such consents and of evidencing the
authorization of the execution thereof by Certificateholders shall be subject
to such reasonable regulations as the Trustee may prescribe.

Nothing in this Agreement shall require the Trustee to enter into an
amendment without receiving an Opinion of Counsel (which Opinion shall not be
an expense of the Trustee or the Trust Fund), satisfactory to the Trustee that
(i) such amendment is permitted and is not prohibited by this Agreement and
that all requirements for amending this Agreement have been complied with; and
(ii) either (A) the amendment does not adversely affect in any material
respect the interests of any Certificateholder or (B) the conclusion set forth
in the preceding clause (A) is not required to be reached pursuant to this
Section 10.01.

Section 10.02.    Recordation of Agreement; Counterparts.

This Agreement is subject to recordation in all appropriate public
offices for real property records in all the counties or other comparable
jurisdictions in which any or all of the properties subject to the Mortgages
are situated, and in any other appropriate public recording office or
elsewhere, such recordation to be effected by the Servicer at its expense, but
only upon receipt of an Opinion of Counsel to the effect that such recordation
materially and beneficially affects the interests of the Certificateholders.


                                      96
<PAGE>


For the purpose of facilitating the recordation of this Agreement as
herein provided and for other purposes, this Agreement may be executed
simultaneously in any number of counterparts, each of which counterparts shall
be deemed to be an original, and such counterparts shall constitute but one
and the same instrument.

Section 10.03.    Governing Law.

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE
SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO
BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES
OF THE PARTIES HERETO AND THE CERTIFICATEHOLDERS SHALL BE DETERMINED IN
ACCORDANCE WITH SUCH LAWS.

Section 10.04.    Intention of Parties.

It is the express intent of the parties hereto that the conveyance (i)
of the Mortgage Loans by the Seller to the Depositor and (ii) of the Trust
Fund by the Depositor to the Trustee each be, and be construed as, an absolute
sale thereof. It is, further, not the intention of the parties that such
conveyances be deemed a pledge thereof. However, if, notwithstanding the
intent of the parties, the assets are held to be the property of the Seller or
Depositor, as the case may be, or if for any other reason this Agreement is
held or deemed to create a security interest in either such assets, then (i)
this Agreement shall be deemed to be a security agreement within the meaning
of the UCC and (ii) the conveyances provided for in this Agreement shall be
deemed to be an assignment and a grant (i) by the Seller to the Depositor or
(ii) by the Depositor to the Trustee, for the benefit of the
Certificateholders, of a security interest in all of the assets transferred,
whether now owned or hereafter acquired.

The Seller and the Depositor for the benefit of the Certificateholders
shall, to the extent consistent with this Agreement, take such actions as may
be necessary to ensure that, if this Agreement were deemed to create a
security interest in the Trust Fund, such security interest would be deemed to

be a perfected security interest of first priority under applicable law and
will be maintained as such throughout the term of the Agreement. The Depositor
shall arrange for filing any Uniform Commercial Code continuation statements
in connection with any security interest granted or assigned to the Trustee
for the benefit of the Certificateholders.

Section 10.05.    Notices.

(a)    The Trustee shall use its best efforts to promptly provide notice
to each Rating Agency with respect to each of the following of which it has
actual knowledge:

1.    Any material change or amendment to this Agreement;

2.    The occurrence of any Event of Default that has not been cured;

3.    The resignation or termination of the Servicer or the Trustee and
      the appointment of any successor;

4.    The repurchase or substitution of Mortgage Loans pursuant to
      Section 2.03; and

5.    The final distribution to Certificateholders.


                                97

<PAGE>


In addition, the Trustee shall promptly furnish to each Rating Agency
copies of the following:

1.    Each report to Certificateholders described in Section 4.06;

2.    Each annual statement as to compliance described in Section 3.17;

3.    Each annual independent public accountants' servicing report
      described in Section 11.07; and

4.    Any notice of a purchase of a Mortgage Loan pursuant to Section
      2.02, 2.03 or 3.11.

(b)    All directions, demands and notices hereunder shall be in writing
and shall be deemed to have been duly given when delivered to (a) in the case
of the Depositor, IndyMac MBS, Inc., 155 North Lake Avenue, Pasadena,
California 91101, Attention: Secondary Marketing: Transaction Management; (b)
in the case of the Servicer, IndyMac Bank, F.S.B., 888 East Walnut Street,
Pasadena, California 91101-7211, Attention: Secondary Marketing: Transaction
Management or such other address as may be hereafter furnished to the
Depositor and the Trustee by the Servicer in writing; (c) in the case of the
Trustee to the Corporate Trust Office, Deutsche Bank National Trust Company,
1761 East St. Andrew Place, Santa Ana, California 92705-4934, Attention:
Mortgage Administration IN06Z3, Series 2006-AR41, or such other address as the
Trustee may hereafter furnish to the Depositor or Servicer, (d) in the case of
each of the Rating Agencies, the address specified therefor in the definition
corresponding to the name of such Rating Agency, and (e) in the case of the
Corridor Counterparty, Eleven Madison Avenue, New York, NY 10010-3629, or such
other address as may be hereafter furnished by the Corridor Counterparty..
Notices to Certificateholders shall be deemed given when mailed, first class
postage prepaid, to their respective addresses appearing in the Certificate
Register.

Section 10.06.    Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of
this Agreement shall be for any reason whatsoever held invalid, then such
covenants, agreements, provisions or terms shall be deemed severable from the
remaining covenants, agreements, provisions or terms of this Agreement and
shall in no way affect the validity or enforceability of the other provisions
of this Agreement or of the Certificates or the rights of the Holders thereof.

Section 10.07.    Assignment

Notwithstanding anything to the contrary contained in this Agreement,
except as provided in Section 6.02, this Agreement may not be assigned by the
Servicer without the prior written consent of the Trustee and Depositor.

Section 10.08.    Limitation on Rights of Certificateholders.

The death or incapacity of any Certificateholder shall not operate to
terminate this Agreement or the trust created by this Agreement, nor entitle
such Certificateholder's legal representative or heirs to claim an accounting
or to take any action or commence any proceeding in any court for a petition
or winding up of the trust created hereby, or otherwise affect the rights,
obligations and liabilities of the parties to this Agreement or any of them.

No Certificateholder shall have any right to vote (except as provided in
this Agreement) or in any manner otherwise control the operation and
management of the Trust Fund, or the obligations of the parties to this
Agreement, nor shall anything herein set forth or contained in the terms of
the Certificates

98

<PAGE>

be construed so as to constitute the Certificateholders from time to time as
partners or members of an association; nor shall any Certificateholder be
under any liability to any third party because of any action taken by the
parties to this Agreement pursuant to any provision of this Agreement.

No Certificateholder shall have any right by virtue or by availing
itself of any provisions of this Agreement to institute any suit, action or
proceeding in equity or at law upon or under or with respect to this
Agreement, unless such Holder previously shall have given to the Trustee a
written notice of an Event of Default and of the continuance thereof, as
provided in this Agreement, and unless the Holders of Certificates evidencing
not less than 25% of the Voting Rights evidenced by the Certificates shall
also have made written request to the Trustee to institute such action, suit
or proceeding in its own name as Trustee hereunder and shall have offered to
the Trustee such reasonable indemnity as it may require against the costs,
expenses, and liabilities to be incurred therein or thereby, and the Trustee,
for 60 days after its receipt of such notice, request and offer of indemnity
shall have neglected or refused to institute any such action, suit or
proceeding; it being understood and intended, and being expressly covenanted
by each Certificateholder with every other Certificateholder and the Trustee,
that no one or more Holders of Certificates shall have any right in any manner
whatever by virtue or by availing itself or themselves of any provisions of
this Agreement to affect, disturb or prejudice the rights of the Holders of
any other of the Certificates, or to obtain or seek to obtain priority over or
preference to any other such Holder or to enforce any right under this
Agreement, except in the manner herein provided and for the common benefit of
all Certificateholders. For the protection and enforcement of this Section
10.08, each Certificateholder and the Trustee shall be entitled to any relief
that can be given either at law or in equity. As long as any Voting Rights are
held by parties other than the Seller, its Affiliates, or its agents, Voting
Rights of Certificates held by the Seller, its Affiliates or its agents as the
Seller shall certify to the Trustee upon any such entity obtaining such

ownership will be excluded from participating in such voting arrangements, and excluded from determining the 25% threshold.

      Section 10.09.     Inspection and Audit Rights.

      The Servicer agrees that, on reasonable prior notice, it will permit any representative of the Depositor or the Trustee during the Servicer's normal business hours, to examine all the books of account, records, reports and other papers of the Servicer relating to the Mortgage Loans, to make copies and extracts therefrom, to cause such books to be audited by independent certified public accountants selected by the Depositor or the Trustee and to discuss its affairs, finances and accounts relating to the Mortgage Loans with its officers, employees and independent public accountants (and by this provision the Servicer hereby authorizes said accountants to discuss with such representative such affairs, finances and accounts), all at such reasonable times and as often as may be reasonably requested. Any out-of-pocket expense incident to the exercise by the Depositor or the Trustee of any right under this Section 10.09 shall be borne by the party requesting such inspection; all other such expenses shall be borne by the Servicer.

      Section 10.10.     Certificates Nonassessable and Fully Paid.

      It is the intention of the Depositor that Certificateholders shall not be personally liable for obligations of the Trust Fund, that the interests in the Trust Fund represented by the Certificates shall be nonassessable for any reason whatsoever, and that the Certificates, upon due authentication thereof by the Trustee pursuant to this Agreement, are and shall be deemed fully paid.

      Section 10.11.     Official Record.

      The Seller agrees that this Agreement is and shall remain at all times before the time at which this Agreement terminates an official record of the Seller as referred to in Section 13(e) of the Federal Deposit Insurance Act.

<div align="center">99</div>

&lt;PAGE&gt;

      Section 10.12.     Protection of Assets.

      (a) Except for transactions and activities entered into in connection with the securitization that is the subject of this Agreement, the trust created by this Agreement is not authorized and has no power to:

            (i) borrow money or issue debt;

            (ii) merge with another entity, reorganize, liquidate or sell assets;

            (iii) engage in any business or activities.

      (b) Each party to this Agreement agrees that it will not file an involuntary bankruptcy petition against the Trustee or the Trust Fund or initiate any other form of insolvency proceeding until after the Certificates have been paid in full.

      Section 10.13.     Qualifying Special Purpose Entity.

      Notwithstanding any contrary provision of this Agreement, the Trust Fund shall not hold any property or engage in any activity that would disqualify the Trust Fund from being a qualifying special purpose entity under generally accepted accounting principles.