# EXHIBIT F
# (PART 3 OF 3)

https://www.sec.gov/Archives/edgar/data/1384691/000090514807000184/efc7-0019_6006707ex991.txt

100

&lt;PAGE&gt;

Article Eleven

EXCHANGE ACT REPORTING

Section 11.01.    Filing Obligations.

The Servicer, the Trustee and the Seller shall reasonably cooperate with
the Depositor in connection with the satisfaction of the Depositor's reporting
requirements under the Exchange Act with respect to the Trust Fund. In
addition to the information specified below, if so requested by the Depositor
for the purpose of satisfying its reporting obligation under the Exchange Act,
the Servicer, the Trustee and the Seller shall provide the Depositor with (a)
such information which is available to such Person without unreasonable effort
or expense and within such timeframe as may be reasonably requested by the
Depositor to comply with the Depositor's reporting obligations under the
Exchange Act and (b) to the extent such Person is a party (and the Depositor
is not a party) to any agreement or amendment required to be filed, copies of
such agreement or amendment in EDGAR-compatible form.

Section 11.02.    Form 10-D Filings.

(a) In accordance with the Exchange Act, unless no reporting obligation
under the Exchange Act exists at such time with respect to the Trust Fund, the
Trustee shall prepare for filing and file within 15 days after each
Distribution Date (subject to permitted extensions under the Exchange Act)
with the Commission with respect to the Trust Fund, a Form 10-D with copies of
the Monthly Report and, to the extent delivered to the Trustee, no later than
five calendar days following the Distribution Date, such other information
identified by the Depositor or the Servicer, in writing, to be filed with the
Commission (such other information, the "Additional Designated Information").
If the Depositor or Servicer directs that any Additional Designated
Information is to be filed with any Form 10-D, the Depositor or Servicer, as
the case may be, shall specify the Item on Form 10-D to which such information
is responsive and, with respect to any Exhibit to be filed on Form 10-D, the
Exhibit number. Any information to be filed on Form 10-D shall be delivered to
the Trustee in EDGAR-compatible form or as otherwise agreed upon by the
Trustee and the Depositor or the Servicer, as the case may be, at the
Depositor's expense, and any necessary conversion to EDGAR-compatible format
will be at the Depositor's expense. At the reasonable request of, and in
accordance with the reasonable directions of, the Depositor or the Servicer,
subject to the two preceding sentences, the Trustee shall prepare for filing
and file an amendment to any Form 10-D previously filed with the Commission
with respect to the Trust Fund. The Depositor shall sign the Form 10-D filed
on behalf of the Trust Fund.

The Trustee shall prepare each Form 10-D and, no later than five
Business Days prior to the date on which such Form 10-D is required to be
filed, deliver a copy of such Form 10-D to the Depositor for review. No later
than the Business Day following the receipt thereof, the Depositor shall
notify the Trustee of any changes to be made to the Form 10-D. The Trustee
shall make any changes thereto requested by the Depositor and deliver the
final Form 10-D to the Depositor for signature no later than three Business
Days prior to the date on which such Form 10-D must be filed by the Trustee in
accordance with this Section 11.02. The Depositor shall execute the final Form

10-D and deliver the same to the Trustee via electronic mail
(DBSEC.Notifications@db.com) or facsimile no later than the Business Day
following receipt of the same (which, unless not received within such time
frame from the Trustee, shall be no later than two Business Days prior to the
date on which the Form 10-D is required to be filed), with an original
executed hard copy to follow by overnight courier.

    (b) No later than each Distribution Date, any party responsible for
providing Additional Designated Information shall notify the Depositor and the
Trustee of any Form 10-D Disclosure Item, together with a description of any
such Form 10-D Disclosure Item in form and substance reasonably

                                    101

<PAGE>


acceptable to the Depositor. In addition to such information as the Servicer
and the Trustee are obligated to provide pursuant to other provisions of this
Agreement, if so requested by the Depositor, each of the Servicer and the
Trustee shall provide such information which is available to the Servicer and
the Trustee, as applicable, without unreasonable effort or expense regarding
the performance or servicing of the Mortgage Loans (in the case of the
Trustee, based on the information provided by the Servicer) as is reasonably
required to facilitate preparation of distribution reports in accordance with
Item 1121 of Regulation AB. Such information shall be provided concurrently
with the Remittance Reports in the case of the Servicer and the Monthly
Statement in the case of the Trustee, commencing with the first such report
due not less than five Business Days following such request.

    (c) The Trustee shall not have any responsibility to file any items
(other than those generated by it) that have not been received in a format
suitable (or readily convertible into a format suitable) for electronic filing
via the EDGAR system and shall not have any responsibility to convert any such
items to such format (other than those items generated by it or that are
readily convertible to such format). The Trustee shall have no liability to
the Certificateholders, the Trust Fund, the Servicer or the Depositor with
respect to any failure to properly prepare or file any of Form 10-D to the
extent that such failure is not the result of any negligence, bad faith or
willful misconduct on its part. The Trustee will not have any duty to verify
the accuracy or sufficiency of any information to be included in any Form 10-D
not provided by it.

    (d) The Trustee shall have no liability with respect to any failure to
properly prepare and file such periodic reports resulting or relating to the
Trustee's inability or failure to obtain any information not resulting from
its own negligence or willful misconduct.

    Section 11.03.    Form 8-K Filings.

    The Servicer shall prepare and file on behalf of the Trust Fund any Form
8-K required by the Exchange Act. Each Form 8-K must be signed by the
Servicer. Any reporting party identified on Exhibit T shall promptly notify
the Depositor and the Servicer (if the notifying party is not the Servicer),
but in no event later than one (1) Business Day after its occurrence, of any
Reportable Event of which it has actual knowledge. Each Person shall be deemed
to have actual knowledge of any such event to the extent that it relates to
such Person or any action or failure to act by such Person.

    Section 11.04.    Form 10-K Filings.

    Prior to March 30th of each year, commencing in 2007 (or such earlier
date as may be required by the Exchange Act), the Depositor shall prepare and
file on behalf of the Trust Fund a Form 10-K, in form and substance as
required by the Exchange Act. A senior officer in charge of the servicing

function of the Servicer shall sign each Form 10-K filed on behalf of the
Trust Fund. Such Form 10-K shall include as exhibits each (i) annual
compliance statement described under Section 3.17, (ii) annual report on
assessments of compliance with servicing criteria described under Section
11.07 and (iii) accountant's report described under Section 11.07. Each Form
10-K shall also include any Sarbanes-Oxley Certification required to be
included therewith, as described in Section 11.05.

     If the Item 1119 Parties listed on Exhibit T have changed since the
Closing Date, no later than March 1 of each year, the Depositor shall provide
each of the Servicer and the Trustee via electronic mail
(DBSEC.Notifications@db.com) with an updated Exhibit T setting forth the Item
1119 Parties. No later than March 15 of each year, commencing in 2007, the
Servicer and the Trustee shall notify the Depositor and the Servicer of any
Form 10-K Disclosure Item, together with a description of any such Form 10-K
Disclosure Item in form and substance reasonably acceptable to the Depositor.
Additionally, each of the Servicer and the Trustee shall provide, and shall
cause each Reporting Subcontractor retained by the Servicer or the Trustee, as
applicable, the following information no later than March 15 of each year in


                                   102
<PAGE>


which a Form 10-K is required to be filed on behalf of the Trust Fund: (i) if
such Person's report on assessment of compliance with servicing criteria
described under Section 11.07 or related registered public accounting firm
attestation report described under Section 11.07 identifies any material
instance of noncompliance, notification of such instance of noncompliance and
(ii) if any such Person's report on assessment of compliance with servicing
criteria or related registered public accounting firm attestation report is
not provided to be filed as an exhibit to such Form 10-K, information
detailing the explanation why such report is not included.

     Section 11.05.    Sarbanes-Oxley Certification.

     Each Form 10-K shall include a certification (the "Sarbanes-Oxley
Certification") required by Rules 13a-14(d) and 15d-14(d) under the Exchange
Act (pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 and the rules
and regulations of the Commission promulgated thereunder (including any
interpretations thereof by the Commission's staff)). No later than March 15 of
each year, beginning in 2007, the Servicer and the Trustee shall (unless such
person is the Certifying Person), and the Servicer shall cause each Reporting
Subcontractor and the Trustee shall cause each Reporting Subcontractor to,
provide to the Person who signs the Sarbanes-Oxley Certification (the
"Certifying Person") a certification (each, a "Performance Certification"), in
the form attached hereto as Exhibit R, on which the Certifying Person, the
entity for which the Certifying Person acts as an officer, and such entity's
officers, directors and Affiliates (collectively with the Certifying Person,
"Certification Parties") can reasonably rely. The senior officer in charge of
the servicing function of the Servicer shall serve as the Certifying Person on
behalf of the Trust Fund. Neither the Servicer nor the Depositor will request
delivery of a certification under this clause unless the Depositor is required
under the Exchange Act to file an annual report on Form 10-K with respect to
the Trust Fund. In the event that prior to the filing date of the Form 10-K in
March of each year, the Trustee or the Depositor has actual knowledge of
information material to the Sarbanes-Oxley Certification, the Trustee or the
Depositor, as the case may be, shall promptly notify the Servicer and the
Depositor. The respective parties hereto agree to cooperate with all
reasonable requests made by any Certifying Person or Certification Party in
connection with such Person's attempt to conduct any due diligence that such
Person reasonably believes to be appropriate in order to allow it to deliver
any Sarbanes-Oxley Certification or portion thereof with respect to the Trust
Fund.

Section 11.06.     Form 15 Filing.

Prior to January 30 of the first year in which the Depositor is able to do so under applicable law, the Trustee on behalf of the Depositor shall file a Form 15 relating to the automatic suspension of reporting in respect of the Trust Fund under the Exchange Act.

Section 11.07.     Report on Assessment of Compliance and Attestation.

(a) On or before March 15 of each calendar year, commencing in 2007, unless no reporting obligation under the Exchange Act exists at such time with respect to the Trust Fund:

(i) Each of the Servicer and the Trustee shall deliver to the Depositor and the Servicer a report (in form and substance reasonably satisfactory to the Depositor) regarding the Servicer's or the Trustee's, as applicable, assessment of compliance with the Servicing Criteria during the immediately preceding calendar year, as required under Rules 13a-18 and 15d-18 of the Exchange Act and Item 1122 of Regulation AB. Such report shall be signed by an authorized officer of such Person and shall address each of the Servicing Criteria applicable to such party specified on a certification delivered to the Depositor concurrently with the execution of this Agreement. To the extent any of the Servicing Criteria are not applicable to such Person, with

103

<PAGE>

respect to asset-backed securities transactions taken as a whole involving such Person and that are backed by the same asset type backing the Certificates, such report shall include such a statement to that effect. The Depositor and the Servicer, and each of their respective officers and directors shall be entitled to rely on upon each such servicing criteria assessment.

(ii) Each of the Servicer and the Trustee shall deliver to the Depositor and the Servicer a report of a registered public accounting firm reasonably acceptable to the Depositor that attests to, and reports on, the assessment of compliance made by Servicer or the Trustee, as applicable, and delivered pursuant to the preceding paragraphs. Such attestation shall be in accordance with Rules 1-02(a)(3) and 2-02(g) of Regulation S-X under the Securities Act and the Exchange Act, including, without limitation that in the event that an overall opinion cannot be expressed, such registered public accounting firm shall state in such report why it was unable to express such an opinion. Such report must be available for general use and not contain restricted use language. To the extent any of the Servicing Criteria are not applicable to such Person, with respect to asset-backed securities transactions taken as a whole involving such Person and that are backed by the same asset type backing the Certificates, such report shall include such a statement to that effect.

(iii) The Servicer shall cause each Reporting Subcontractor to deliver to the Depositor an assessment of compliance and accountant's attestation as and when provided in paragraphs (a) and (b) of this Section 11.07.

(iv) The Trustee shall cause each Reporting Subcontractor to deliver to the Depositor and the Servicer an assessment of compliance and accountant's attestation as and when provided in paragraphs (a) and (b) of this Section.

(v) The Servicer shall execute (and the Servicer shall cause each Reporting Subcontractor to execute) a reliance certificate to enable the Certification Parties to rely upon each (A) annual compliance statement provided pursuant to Section 3.17, (B) annual report on assessments of compliance with servicing criteria provided pursuant to this Section 11.07 and (C) accountant's report provided pursuant to this Section 11.07 and shall include a certification that each such annual compliance statement or report discloses any deficiencies or defaults described to the registered public accountants of such Person to enable such accountants to render the certificates provided for in this Section 11.07.

(vi) The Trustee shall execute (and the Trustee shall cause each Reporting Subcontractor to execute) a reliance certificate to enable the Certification Parties to rely upon each (A) annual report on assessments of compliance with servicing criteria provided pursuant to this Section 11.07 and (C) accountant's report provided pursuant to this Section 11.07 and shall include a certification that each such report discloses any deficiencies or defaults described to the registered public accountants of such Person to enable such accountants to render the certificates provided for in this Section 11.07.

(b) In the event the Servicer, the Trustee or Reporting Subcontractor is terminated or resigns during the term of this Agreement, such Person shall provide documents and information required by this Section 11.07 with respect to the period of time it was subject to this Agreement or provided services with respect to the Trust Fund, the Certificates or the Mortgage Loans.

(c) An assessment of compliance provided by a Subcontractor pursuant to Section 11.07(a)(iii) or (iv) need not address any elements of the Servicing Criteria other than those specified by the Servicer or the Trustee, as applicable, pursuant to Section 11.07(a)(i).

<center>104</center>

&lt;PAGE&gt;

Section 11.08.     Use of Subcontractors.

(a)     [Reserved].

(b) It shall not be necessary for the Servicer or the Trustee to seek the consent of the Depositor or any other party hereto to the utilization of any Subcontractor. The Servicer or the Trustee, as applicable, shall promptly upon request provide to the Depositor (or any designee of the Depositor, such as the Servicer or administrator) a written description (in form and substance satisfactory to the Depositor) of the role and function of each Subcontractor utilized by such Person, specifying (i) the identity of each such Subcontractor, (ii) which (if any) of such Subcontractors are "participating in the servicing function" within the meaning of Item 1122 of Regulation AB, and (iii) which elements of the Servicing Criteria will be addressed in assessments of compliance provided by each Subcontractor identified pursuant to clause (ii) of this paragraph.

As a condition to the utilization of any Subcontractor determined to be a Reporting Subcontractor, the Servicer or the Trustee, as applicable, shall cause any such Subcontractor used by such Person for the benefit of the Depositor to comply with the provisions of Sections 11.07 and 11.09 of this Agreement to the same extent as if such Subcontractor were the Servicer (except with respect to the Servicer's duties with respect to preparing and filing any Exchange Act Reports or as the Certifying Person) or the Trustee, as applicable. The Servicer or the Trustee, as applicable, shall be responsible for obtaining from each Subcontractor and delivering to the

Depositor and the Servicer, any assessment of compliance and attestation required to be delivered by such Subcontractor under Section 11.05 and Section 11.07, in each case as and when required to be delivered.

    Section 11.09.    Amendments.

    In the event the parties to this Agreement desire to further clarify or amend any provision of this Article 11, this Agreement shall be amended to reflect the new agreement between the parties covering matters in this Article 11 pursuant to Section 10.01, which amendment shall not require any Opinion of Counsel or Rating Agency confirmations or the consent of any Certificateholder.

    If, during the period that the Depositor is required to file Exchange Act Reports with respect to the Trust Fund, the Servicer is no longer an Affiliate of the Depositor, the Depositor shall assume the obligations and responsibilities of the Servicer in this Article 11 with respect to the preparation and filing of the Exchange Act Reports and/or acting as the Certifying Person, if the Depositor has received indemnity from such successor Servicer satisfactory to the Depositor, and such Servicer has agreed to provide a Sarbanes-Oxley Certification to the Depositor substantially in the form of Exhibit U.

<div align="center">* * * * * *</div>

<div align="center">105</div>

&lt;PAGE&gt;

    IN WITNESS WHEREOF, the Depositor, the Trustee, and the Seller and Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

                  INDYMAC MBS, INC.
                    as Depositor


                  By:  /s/ Jill Jacobson
                       -------------------------
                       Name:  Jill Jacobson
                       Title:  Vice President


                  DEUTSCHE BANK NATIONAL TRUST
                    COMPANY,
                    as Trustee


                  By:  /s/ Jennifer Hermansader
                       -------------------------
                       Name:  Jennifer Hermansader
                       Title:  Associate

```
                    By:  /s/ Marion Hogan
                         ------------------------
                         Name:  Marion Hogan
                         Title:  Associate




                    INDYMAC BANK, F.S.B.
                       as Seller and Servicer


                    By:  /s/ Jill Jacobson
                         ------------------------
                         Name:  Jill Jacobson
                         Title:  Vice President
```

<PAGE>

```
STATE OF CALIFORNIA        )
                           :  ss.:
COUNTY OF Los Angeles      )
```

   On this 28th day of December, 2006, before me, personally appeared Jill
Jacobson, known to me to be a Vice President of IndyMac MBS, Inc., one of the
entities that executed the within instrument, and also known to me to be the
person who executed it on behalf of said entity, and acknowledged to me that
such entity executed the within instrument.

   IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official
seal the day and year in this certificate first above written.

```
                              /s/ Evan Fitzsimon
                              ------------------------
                              Notary Public
```

[NOTARIAL SEAL]

1

<PAGE>


STATE OF CALIFORNIA        )
                           : ss.:
COUNTY OF Orange           )

     On this 21st day of December, 2006, before me, personally appeared
Jennifer Hermansader and Marion Hogan, known to me to be an Associate and an
Associate, respectively, of Deutsche Bank National Trust Company, one of the
entities that executed the within instrument, and also known to me to be the
person who executed it on behalf of said entity, and acknowledged to me that
such entity executed the within instrument.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official
seal the day and year in this certificate first above written.


                              /s/ Tony T. Trinh
                              -------------------------
                              Notary Public

[NOTARIAL SEAL]


2

<PAGE>


STATE OF CALIFORNIA        )
                           : ss.:
COUNTY OF Los Angeles      )

     On this 28th day of December, 2006, before me, personally appeared Jill
Jacobson, known to me to be a Vice President of IndyMac Bank, F.S.B., one of
the entities that executed the within instrument, and also known to me to be
the person who executed it on behalf of said entity, and acknowledged to me
that such entity executed the within instrument.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official
seal the day and year in this certificate first above written.


                              /s/ Evan Fitzsimon
                              -------------------------
                              Notary Public

[NOTARIAL SEAL]

3

<PAGE>

Schedule I

MORTGAGE LOAN SCHEDULE [DELIVERED AT CLOSING TO TRUSTEE]

S-I-1

<PAGE>

Schedule II

INDYMAC MBS, INC. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR41

Representations and Warranties of the Seller/Servicer

Indy Mac Bank, F.S.B. ("IndyMac") hereby makes the representations and
warranties set forth in this Schedule II to the Depositor and the Trustee, as
of the Closing Date. Capitalized terms used but not otherwise defined in this
Schedule II shall have the meanings assigned thereto in the Pooling and
Servicing Agreement (the "Pooling and Servicing Agreement") relating to the
above-referenced Series, among IndyMac, as seller and Servicer, IndyMac MBS,
Inc., as depositor, and Deutsche Bank National Trust Company, as trustee and
as Supplemental Interest Trustee.

        (1) IndyMac is duly organized as a federally insured savings bank
and is validly existing and in good standing under the laws of the
United States of America and is duly authorized and qualified to
transact any business contemplated by the Pooling and Servicing
Agreement to be conducted by IndyMac in any state in which a Mortgaged
Property is located or is otherwise not required under applicable law to
effect such qualification and, in any event, is in compliance with the
doing business laws of any such state, to the extent necessary to ensure
its ability to enforce each Mortgage Loan, to service the Mortgage Loans
in accordance with the Pooling and Servicing Agreement and to perform
any of its other obligations under the Pooling and Servicing Agreement

in accordance with the terms thereof.

(2) IndyMac has the full corporate power and authority to sell and service each Mortgage Loan, and to execute, deliver and perform, and to enter into and consummate the transactions contemplated by the Pooling and Servicing Agreement and has duly authorized by all necessary corporate action on the part of IndyMac the execution, delivery and performance of the Pooling and Servicing Agreement; and the Pooling and Servicing Agreement, assuming the due authorization, execution and delivery thereof by the other parties thereto, constitutes a legal, valid and binding obligation of IndyMac, enforceable against IndyMac in accordance with its terms, except that (a) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(3) The execution and delivery of the Pooling and Servicing Agreement by IndyMac, the sale and servicing of the Mortgage Loans by IndyMac under the Pooling and Servicing Agreement, the consummation of any other of the transactions contemplated by the Pooling and Servicing Agreement, and the fulfillment of or compliance with the terms thereof are in the ordinary course of business of IndyMac and will not (A) result in a material breach of any term or provision of the charter or by-laws of IndyMac or (B) materially conflict with, result in a material breach, violation or acceleration of, or result in a material default under, any other material agreement or instrument to which IndyMac is a party or by which it may be bound, or (C) constitute a material violation of any statute, order or regulation applicable to IndyMac of any court, regulatory body, administrative agency or governmental body having jurisdiction over IndyMac (including the OTS, the Federal Deposit Insurance Corporation or any other governmental entity having regulatory authority over IndyMac); and IndyMac is not in breach or violation of any material indenture or other material agreement or instrument, or in violation of any statute, order or regulation of any court, regulatory body, administrative agency or governmental body having jurisdiction over it (including the OTS, the Federal Deposit Insurance

S-II-1

<PAGE>

Corporation or any other governmental entity having regulatory authority over IndyMac) which breach or violation may materially impair IndyMac's ability to perform or meet any of its obligations under the Pooling and Servicing Agreement.

(4) IndyMac is an approved servicer of conventional mortgage loans for FNMA or FHLMC or is a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act.

(5) No litigation is pending or, to the best of IndyMac's knowledge, threatened against IndyMac that would prohibit the execution or delivery of, or performance under, the Pooling and Servicing Agreement by IndyMac.

(6) IndyMac is a member of MERS in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the MERS Mortgage Loans for as long as such Mortgage Loans are registered with MERS.

(7) Notwithstanding any federal or state law to the contrary, the Servicer shall not impose such Prepayment Charge at any time when the mortgage is accelerated as a result of the borrower's default in making the scheduled payments.

(8) The beneficial owner of the payments made to the Supplemental Interest Trust under the Corridor Contract is a "U.S. person" (as that term is used in section 1.1441-4(a)(3)(ii) of United States Treasury Regulations) for United States federal income tax purposes and an "Exempt recipient" within the meaning of section 1.6049-4(c)(1)(ii) of United States Treasury Regulations and is either a financial institution or is not acting as an agent for a person that is not a United States Person for U.S. federal income tax purposes. IndyMac Bank, F.S.B. understands that the Trustee is relying on this information in connection with the execution of the Corridor Contract.

S-II-2

<PAGE>

Schedule III

INDYMAC MBS, INC.
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2006-AR41

Representations and Warranties as to the Mortgage Loans

IndyMac Bank, F.S.B. ("IndyMac") hereby makes the representations and warranties set forth in this Schedule III to the Depositor and the Trustee, as of the Closing Date or if so specified in this Schedule III, as of the Cut-off Date with respect to each Mortgage Loan. Capitalized terms used but not otherwise defined in this Schedule III shall have the meanings assigned to them in the Pooling and Servicing Agreement (the "Pooling and Servicing Agreement") relating to the above-referenced Series, among IndyMac, as seller and Servicer, IndyMac MBS, Inc., as depositor, and Deutsche Bank National Trust Company, as trustee and as Supplemental Interest Trustee.

(1) The information set forth on Schedule I to the Pooling and Servicing Agreement with respect to each Mortgage Loan is true and correct in all material respects as of the Closing Date.

(2) All regularly scheduled monthly payments due with respect to each Mortgage Loan up to and including the Due Date before the Cut-off Date have been made; and as of the Cut-off Date, no Mortgage Loan had a regularly scheduled monthly payment that was 60 or more days Delinquent during the twelve months before the Cut-off Date.

(3) With respect to any Mortgage Loan that is not a Cooperative Loan, each Mortgage is a valid and enforceable first lien on the Mortgaged Property subject only to (a) the lien of nondelinquent current real property taxes and assessments and liens or interests arising under or as a result of any federal, state or local law, regulation or ordinance relating to hazardous wastes or hazardous substances and, if the related Mortgaged Property is a unit in a condominium project or

planned unit development, any lien for common charges permitted by
statute or homeowner association fees, (b) covenants, conditions and
restrictions, rights of way, easements and other matters of public
record as of the date of recording of such Mortgage, such exceptions
appearing of record being generally acceptable to mortgage lending
institutions in the area wherein the related Mortgaged Property is
located or specifically reflected in the appraisal made in connection
with the origination of the related Mortgage Loan, and (c) other matters
to which like properties are commonly subject which do not materially
interfere with the benefits of the security intended to be provided by
such Mortgage.

     (4) Immediately before the assignment of the Mortgage Loans to the
Depositor, the Seller had good title to, and was the sole owner of, each
Mortgage Loan free and clear of any pledge, lien, encumbrance or
security interest and had full right and authority, subject to no
interest or participation of, or agreement with, any other party, to
sell and assign the same pursuant to the Pooling and Servicing
Agreement.

     (5) As of the Closing Date and as to any Mortgage Loan, there was
no delinquent tax or assessment lien against the related Mortgaged
Property.

     (6) There is no valid offset, defense or counterclaim to any
Mortgage Note or Mortgage, including the obligation of the Mortgagor to
pay the unpaid principal of or interest on such Mortgage Note.

<center>S-III-1</center>

&lt;PAGE&gt;

     (7) There are no mechanics' liens or claims for work, labor or
material affecting any Mortgaged Property which are or may be a lien
prior to or equal with, the lien of such Mortgage, except those which
are insured against by the title insurance policy referred to in item
(11) below.

     (8) No Mortgaged Property has been materially damaged by water,
fire, earthquake, windstorm, flood, tornado or similar casualty
(excluding casualty from the presence of hazardous wastes or hazardous
substances, as to which the Seller makes no representation) so as to
affect adversely the value of the related Mortgaged Property as security
for the Mortgage Loan.

     (9) Each Mortgage Loan at origination complied in all material
respects with applicable local, state and federal laws and regulations,
including usury, equal credit opportunity, real estate settlement
procedures, truth-in-lending, and disclosure laws, or any noncompliance
does not have a material adverse effect on the value of the related
Mortgage Loan.

     (10) The Seller has not modified the Mortgage in any material
respect (except that a Mortgage Loan may have been modified by a written
instrument which has been recorded or submitted for recordation, if
necessary, to protect the interests of the Certificateholders and which
has been delivered to the Trustee); satisfied, cancelled or subordinated
such Mortgage in whole or in part; released the related Mortgaged
Property in whole or in part from the lien of such Mortgage; or executed
any instrument of release, cancellation, modification or satisfaction
with respect thereto.

     (11) A lender's policy of title insurance together with a
condominium endorsement and extended coverage endorsement, if

applicable, in an amount at least equal to the Cut-off Date Principal
Balance of each such Mortgage Loan or a commitment (binder) to issue the
same was effective on the date of the origination of each Mortgage Loan
and each such policy is valid and remains in full force and effect.

(12) Each Mortgage Loan was originated (within the meaning of
Section 3(a)(41) of the Securities Exchange Act of 1934, as amended) by
an entity that satisfied at the time of origination the requirements of
Section 3(a)(41) of the Securities Exchange Act of 1934, as amended.

(13) All of the improvements which were included for the purpose
of determining the Appraised Value of the Mortgaged Property lie wholly
within the boundaries and building restriction lines of such property,
and no improvements on adjoining properties encroach upon the Mortgaged
Property, unless such failure to be wholly within such boundaries and
restriction lines or such encroachment, as the case may be, does not
have a material effect on the value of the Mortgaged Property.

(14) As of the date of origination of each Mortgage Loan, no
improvement located on or being part of the Mortgaged Property is in
violation of any applicable zoning law or regulation unless such
violation would not have a material adverse effect on the value of the
related Mortgaged Property. All inspections, licenses and certificates
required to be made or issued with respect to all occupied portions of
the Mortgaged Property and, with respect to the use and occupancy of the
same, including certificates of occupancy and fire underwriting
certificates, have been made or obtained from the appropriate
authorities, unless the lack thereof would not have a material adverse
effect on the value of the Mortgaged Property.

                                  S-III-2

<PAGE>

(15) The Mortgage Note and the related Mortgage are genuine, and
each is the legal, valid and binding obligation of the maker thereof,
enforceable in accordance with its terms and under applicable law.

(16) The proceeds of the Mortgage Loan have been fully disbursed
and there is no requirement for future advances thereunder.

(17) The related Mortgage contains customary and enforceable
provisions which render the rights and remedies of the holder thereof
adequate for the realization against the Mortgaged Property of the
benefits of the security, including, (i) in the case of a Mortgage
designated as a deed of trust, by trustee's sale, and (ii) otherwise by
judicial foreclosure.

(18) With respect to each Mortgage constituting a deed of trust, a
trustee, duly qualified under applicable law to serve as such, has been
properly designated and currently so serves and is named in such
Mortgage, and no fees or expenses are or will become payable by the
Certificateholders to the trustee under the deed of trust, except in
connection with a trustee's sale after default by the Mortgagor.

(19) At the Cut-off Date, the improvements upon each Mortgaged
Property are covered by a valid and existing hazard insurance policy
with a generally acceptable carrier that provides for fire and extended
coverage and coverage for such other hazards as are customarily required
by institutional single family mortgage lenders in the area where the
Mortgaged Property is located, and the Seller has received no notice
that any premiums due and payable thereon have not been paid; the
Mortgage obligates the Mortgagor thereunder to maintain all such

insurance including flood insurance at the Mortgagor's cost and expense.
Anything to the contrary in this item (19) notwithstanding, no breach of
this item (19) shall be deemed to give rise to any obligation of the
Seller to repurchase or substitute for such affected Mortgage Loan or
Loans so long as the Servicer maintains a blanket policy pursuant to the
second paragraph of Section 3.10(a) of the Pooling and Servicing
Agreement.

(20) If at the time of origination of each Mortgage Loan, the
related Mortgaged Property was in an area then identified in the Federal
Register by the Federal Emergency Management Agency as having special
flood hazards, a flood insurance policy in a form meeting the
then-current requirements of the Flood Insurance Administration is in
effect with respect to the Mortgaged Property with a generally
acceptable carrier.

(21) There is no proceeding pending or threatened for the total or
partial condemnation of any Mortgaged Property, nor is such a proceeding
currently occurring.

(22) There is no material event which, with the passage of time or
with notice and the expiration of any grace or cure period, would
constitute a material non-monetary default, breach, violation or event
of acceleration under the Mortgage or the related Mortgage Note; and the
Seller has not waived any material non-monetary default, breach,
violation or event of acceleration.

(23) Each Mortgage File contains an appraisal of the related
Mortgaged Property in a form acceptable to FNMA or FHLMC. Appraisal Form
1004 or Form 2055 has been obtained.

(24) Any leasehold estate securing a Mortgage Loan has a stated
term of not less than five years in excess of the term of the related
Mortgage Loan.


                              S-III-3

<PAGE>


(25) Each Mortgage Loan was selected from among the outstanding
one- to four-family mortgage loans in the Seller's portfolio at the
Closing Date as to which the representations and warranties made with
respect to the Mortgage Loans set forth in this Schedule III can be
made. No such selection was made in a manner intended to adversely
affect the interests of the Certificateholders.

(26) No more than 0.04% of the Mortgage Loans as of the Cut-off
Date are Cooperative Loans.

(27) [Reserved].

(28) None of the Mortgage Loans is a "high cost" loan, "covered"
loan (excluding home loans defined as "covered home loans" in the New
Jersey Home Ownership Security Act of 2002 that were originated between
November 26, 2003 and July 7, 2004), "high risk home" or "predatory"
loan or any other similarly designated loan as defined under any state,
local or federal law, as defined by applicable predatory and abusive
lending laws.

(29) Each Mortgage Loan at the time it was made complied in all
material respects with applicable local, state, and federal laws,
including, but not limited to, all applicable predatory and abusive
lending laws.

(30) [Reserved].

(31) No proceeds from any Mortgage Loan underlying the Certificates were used to finance single-premium credit insurance policies.

(32) None of the Mortgage Notes related to the Mortgage Loans impose a Prepayment Charge on the related Mortgage Loan for a term in excess of five years from the origination of the Mortgage Loan.

(33) [Reserved].

(34) No Mortgage Loan is subject to the requirements of the Home Ownership and Equity Protection Act of 1994.

(35) No borrower was encouraged or required to select a Mortgage Loan product offered by the Mortgage Loan's originator that is a higher cost product designed for less creditworthy borrowers, unless at the time of the Mortgage Loan's origination, such borrower did not qualify taking into account credit history and debt-to-income ratios, for a lower-cost credit product then offered by the Seller or any affiliate of the Seller. If, at the time of loan application, the borrower may have qualified for a lower-cost credit product then offered by any mortgage lending affiliate of the Seller, the Seller referred the borrower's application to such affiliate for underwriting consideration.

(36) The methodology used in underwriting the extension of credit for each Mortgage Loan employs objective mathematical principles that relate the borrower's income, assets and liabilities to the proposed payment and such underwriting methodology does not rely on the extent of the borrower's equity in the collateral as the principal determining factor in approving such credit extension. Such underwriting methodology confirmed that at the time of origination (application/approval) the borrower had a reasonable ability to make timely payments on the Mortgage Loan.

S-III-4

<PAGE>

(37) No Mortgage Loan is a "High-Cost Home Loan" as defined in any of the following statutes: the Georgia Fair Lending Act, as amended (the "Georgia Act"), the New York Banking Law 6-1, the Arkansas Home Loan Protection Act effective July 16, 2003 (Act 1340 of 2003), the Kentucky high-cost home loan statute effective June 24, 2003 (Ky. Rev. Stat. Section 360.100), the New Jersey Home Ownership Act effective November 27, 2003 (N.J.S.A. 46:10B-22 et seq.), or the New Mexico Home Loan Protection Act effective January 1, 2004 (N.M. Stat. Ann ss.ss. 58-21A-1 et seq.). With respect to any Mortgage Loan subject to the Georgia Act and secured by owner occupied real property or an owner occupied manufactured home located in the state of Georgia and originated (or modified) on or after October 1, 2002 through and including March 7, 2003, such Mortgage Loan was originated by IndyMac. No Mortgage Loan is a "High-Risk Home Loan" as defined in the Illinois High-Risk Home Loan Act effective January 1, 2004 (815 Ill. Comp. Stat. 137/1 et seq.). No Mortgage Loan is a "High-Cost Home Mortgage Loan" as defined in Massachusetts Predatory Home Loan Practices Act, effective November 6, 2004 (Mass. Ann. Laws Ch. 183C). None of the Mortgage Loans that are secured by property located in the State of Illinois are in violation of the provisions of the Illinois Interest Act (815 Ill. Comp. Stat. 205/1 et. seq.).

(38) Each Mortgage Loan has been underwritten and serviced

substantially in accordance with the Seller's guidelines, subject to
such variances as are reflected on the Mortgage Loan Schedule or that
the Seller has approved.

(39) No Mortgage Loan is a High Cost Loan or Covered Loan, as
applicable (as such terms are defined in the then-current version of
Standard & Poor's LEVELS(R) Glossary, which is now Version 5.7, Appendix
E) and no Mortgage Loan originated on or after Oct. 1, 2002 through
March 6, 2003 is governed by the Georgia Fair Lending Act.

(40) The Pooling and Servicing Agreement creates a valid and
continuing "security interest" (as defined in Section 1-201(37) of the
UCC) in each Mortgage Note in favor of the Trustee, which security
interest is prior to all other liens and is enforceable as such against
creditors of and purchasers from the Depositor. Each Mortgage Note
constitutes "promissory notes" (as defined in Section 9-102(a)(65) of
the UCC). Immediately before the assignment of each Mortgage Note to the
Trustee, the Depositor had good and marketable title to such Mortgage
Note free and clear of any lien, claim, encumbrance of any Person. All
original executed copies of each Mortgage Note have been or shall be
delivered to the Trustee within five Business Days following the Closing
Date. Other than the security interest granted to the Trustee, the
Depositor has not pledged, assigned, sold, granted a security interest
in, or otherwise conveyed any Mortgage Note. The Depositor has not
authorized the filing of and is not aware of any financing statements
against the Depositor that include a description of any of the Mortgage
Notes. The Depositor is not aware of any judgment or tax liens filed
against the Depositor. None of the Mortgage Notes has any marks or
notations indicating that they have been pledged, assigned or otherwise
conveyed to any Person other than the Trustee.

(41) To the best of the Seller's knowledge, there was no fraud
involved in the origination of any Mortgage Loan by the mortgagee or by
the Mortgagor, any appraiser or any other party involved in the
origination of the Mortgage Loan.

(42) Each Loan is a "qualified mortgage" under Section 860G(a)(3)
of the Code.

                              S-III-5

<PAGE>


                            Schedule IV

                          INDYMAC MBS, INC.
                MORTGAGE PASS-THROUGH CERTIFICATES,
                          SERIES 2006-AR41

                       Form of Monthly Report

                     [on file with the Trustee]




                              S-IV-1
<PAGE>

EXHIBIT A

[FORM OF SENIOR CERTIFICATE]

[UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.]

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE").

[NO TRANSFER OF A CERTIFICATE SHALL BE MADE UNLESS THE TRANSFEREE OF THE CERTIFICATE HAS PROVIDED TO THE TRUSTEE A CORRECT, COMPLETE AND DULY EXECUTED TAX CERTIFICATION FORM (U.S. INTERNAL REVENUE SERVICE FORM W-9 W-8BEN, W-8IMY, W-8EXP OR W-8ECI, AS APPLICABLE, (OR ANY SUCCESSOR FORM THERETO), TOGETHER WITH APPROPRIATE ATTACHMENTS) AS A CONDITION TO SUCH TRANSFER AND AGREES TO UPDATE SUCH TAX CERTIFICATION FORM (I) UPON EXPIRATION OF ANY SUCH TAX CERTIFICATION FORM, (II) AS REQUIRED UNDER THEN APPLICABLE U.S. TREASURY REGULATIONS AND (III) PROMPTLY UPON LEARNING THAT ANY TAX CERTIFICATION FORM PREVIOUSLY PROVIDED HAS BECOME OBSOLETE OR INCORRECT. UPON RECEIPT OF ANY SUCH TAX CERTIFICATION FORM FROM A TRANSFEREE OF ANY COVERED CERTIFICATE, THE TRUSTEE SHALL PROVIDE SUCH TAX CERTIFICATION FORM TO THE SUPPLEMENTAL INTEREST TRUSTEE. THE SUPPLEMENTAL INTEREST TRUSTEE SHALL PROVIDE SUCH TAX CERTIFICATION FORM TO THE CORRIDOR COUNTERPARTY. EACH HOLDER OF A CERTIFICATE AND EACH TRANSFEREE THEREOF SHALL BE DEEMED TO HAVE CONSENTED TO THE TRUSTEE AND THE SUPPLEMENTAL INTEREST TRUSTEE FORWARDING TO THE CORRIDOR COUNTERPARTY ANY SUCH TAX CERTIFICATION FORM IT HAS PROVIDED AND UPDATED IN ACCORDANCE WITH THESE TRANSFER RESTRICTIONS. ANY PURPORTED SALES OR TRANSFERS OF ANY COVERED CERTIFICATE TO A TRANSFEREE WHICH DOES NOT COMPLY WITH THESE REQUIREMENTS SHALL BE DEEMED NULL AND VOID UNDER THIS POOLING AND SERVICING AGREEMENT.]

A-1

<PAGE>

Certificate No.            :

Cut-off  Date              :

First Distribution Date    :

Initial Certificate
Balance of this
Certificate
("Denomination")           :       $

```
Initial Certificate
Balances of all
Certificates of this
Class                    :        $

CUSIP                    :

Interest Rate            :        %

Maturity Date            :
```

<div align="center">

INDYMAC MBS, INC.
IndyMac INDX Mortgage Loan Trust 200_-_
Mortgage Pass-Through Certificates, Series 200_-_
Class [__]

</div>

evidencing a percentage interest in the distributions allocable to the Certificates of the above-referenced Class with respect to a Trust Fund consisting primarily of a pool of conventional mortgage loans (the "Mortgage Loans") secured by first liens on one- to four-family residential properties.

<div align="center">

IndyMac MBS, Inc., as Depositor

</div>

Principal in respect of this Certificate is distributable monthly as set forth herein or in the Agreement (defined below). Accordingly, the Certificate Balance at any time may be less than the Certificate Balance as set forth herein. This Certificate does not evidence an obligation of, or an interest in, and is not guaranteed by the Depositor, the Seller, the Servicer or the Trustee referred to below or any of their respective affiliates. Neither this Certificate nor the Mortgage Loans are guaranteed or insured by any governmental agency or instrumentality.

This certifies that is the registered owner of the Percentage Interest evidenced by this Certificate (obtained by dividing the denomination of this Certificate by the aggregate Initial Certificate Balances of all Certificates of the Class to which this Certificate belongs) in certain monthly distributions with respect to a Trust Fund consisting primarily of the Mortgage Loans deposited by IndyMac MBS, Inc. (the "Depositor"). The Trust Fund was created pursuant to a Pooling and Servicing Agreement dated as of the Cut-off Date specified above (the "Agreement") among the Depositor, IndyMac Bank, F.S.B., as seller (in such capacity, the "Seller") and as servicer (in such capacity, the "Servicer"), and Deutsche Bank National Trust Company, as trustee (the "Trustee") and as Supplemental Interest Trustee. To the extent not defined herein, the capitalized terms used herein have the meanings assigned in the Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of the acceptance hereof assents and by which such Holder is bound.

<div align="center">

A-2

</div>

<PAGE>

So long as the Corridor Contract is in effect, neither this certificate nor any interest herein may be transferred unless the transferee represents to the Trustee either (i) that such transferee is not a Plan, or (ii) that[, in addition to the transferee satisfying requirements of the Underwriter Exemption,] the purchase and holding of the Certificate satisfy the requirements for exemptive relief under PTCE 84-14, PTCE 90-1, PTCE 91-38, PTCE 95-60, PTCE 96-23, the service provider exemption provided under 408(b)17 of ERISA and Section 4975(d)(20) of the Code or a similar exemption. In the event such a representation letter is not delivered, one of the foregoing

representations, as appropriate, shall be deemed to have been made by the transferee's acceptance of the Certificate. In the event that such representation is violated, such transfer or acquisition shall be void and of no effect.

Reference is hereby made to the further provisions of this Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

This Certificate shall not be entitled to any benefit under the Agreement or be valid for any purpose unless manually countersigned by an authorized signatory of the Trustee.

<div align="center">A-3</div>

&lt;PAGE&gt;

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed.

Dated: _____, 20__

DEUTSCHE BANK NATIONAL TRUST COMPANY,
    as Trustee

By _____

Countersigned:

By _____
    Authorized Signatory of
    DEUTSCHE BANK NATIONAL TRUST COMPANY,
    as Trustee

<div align="center">A-4</div>

&lt;PAGE&gt;

<div align="center">EXHIBIT B</div>

<div align="center">[FORM OF SUBORDINATED CERTIFICATE]</div>

[UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.]

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A
"REGULAR INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE
TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL
REVENUE CODE OF 1986, AS AMENDED (THE "CODE").

NO TRANSFER OF A CERTIFICATE SHALL BE MADE UNLESS THE TRANSFEREE OF THE
CERTIFICATE HAS PROVIDED TO THE TRUSTEE A CORRECT, COMPLETE AND DULY EXECUTED
TAX CERTIFICATION FORM (U.S. INTERNAL REVENUE SERVICE FORM W-9 W-8BEN, W-8IMY,
W-8EXP OR W-8ECI, AS APPLICABLE, (OR ANY SUCCESSOR FORM THERETO), TOGETHER WITH
APPROPRIATE ATTACHMENTS) AS A CONDITION TO SUCH TRANSFER AND AGREES TO UPDATE
SUCH TAX CERTIFICATION FORM (I) UPON EXPIRATION OF ANY SUCH TAX CERTIFICATION
FORM, (II) AS REQUIRED UNDER THEN APPLICABLE U.S. TREASURY REGULATIONS AND
(III) PROMPTLY UPON LEARNING THAT ANY TAX CERTIFICATION FORM PREVIOUSLY
PROVIDED HAS BECOME OBSOLETE OR INCORRECT. UPON RECEIPT OF ANY SUCH TAX
CERTIFICATION FORM FROM A TRANSFEREE OF ANY COVERED CERTIFICATE, THE TRUSTEE
SHALL PROVIDE SUCH TAX CERTIFICATION FORM TO THE SUPPLEMENTAL INTEREST
TRUSTEE. THE SUPPLEMENTAL INTEREST TRUSTEE SHALL PROVIDE SUCH TAX
CERTIFICATION FORM TO THE CORRIDOR COUNTERPARTY. EACH HOLDER OF A CERTIFICATE
AND EACH TRANSFEREE THEREOF SHALL BE DEEMED TO HAVE CONSENTED TO THE TRUSTEE
AND THE SUPPLEMENTAL INTEREST TRUSTEE FORWARDING TO THE CORRIDOR COUNTERPARTY
ANY SUCH TAX CERTIFICATION FORM IT HAS PROVIDED AND UPDATED IN ACCORDANCE WITH
THESE TRANSFER RESTRICTIONS. ANY PURPORTED SALES OR TRANSFERS OF ANY COVERED
CERTIFICATE TO A TRANSFEREE WHICH DOES NOT COMPLY WITH THESE REQUIREMENTS
SHALL BE DEEMED NULL AND VOID UNDER THIS POOLING AND SERVICING AGREEMENT.

THIS CERTIFICATE IS SUBORDINATED IN RIGHT OF PAYMENT TO CERTAIN
CERTIFICATES AS DESCRIBED IN THE AGREEMENT REFERRED TO HEREIN.

[THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF
1933, AS AMENDED (THE "ACT"). ANY RESALE OR TRANSFER OF THIS CERTIFICATE
WITHOUT REGISTRATION THEREOF UNDER THE ACT MAY ONLY BE MADE IN A TRANSACTION
EXEMPTED FROM THE REGISTRATION REQUIREMENTS OF THE ACT AND IN ACCORDANCE WITH
THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN.]

B-1

<PAGE>

[NEITHER THIS CERTIFICATE NOR ANY INTEREST HEREIN MAY BE TRANSFERRED
UNLESS THE TRANSFEREE REPRESENTS TO THE TRUSTEE THAT SUCH TRANSFEREE IS NOT
AND IS NOT INVESTING ON BEHALF OF OR WITH PLAN ASSETS OF AN EMPLOYEE BENEFIT
PLAN SUBJECT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS
AMENDED ("ERISA"), OR A PLAN SUBJECT TO SECTION 4975 OF THE CODE, OR, IF THE
CERTIFICATE HAS BEEN THE SUBJECT OF AN ERISA-QUALIFYING UNDERWRITING, DELIVERS
A REPRESENTATION IN ACCORDANCE WITH THE PROVISIONS OF THE AGREEMENT REFERRED
TO HEREIN, OR DELIVERS TO THE TRUSTEE AN OPINION OF COUNSEL IN ACCORDANCE WITH
THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN. NOTWITHSTANDING ANYTHING
ELSE TO THE CONTRARY HEREIN, ANY PURPORTED TRANSFER OF THIS CERTIFICATE TO OR
ON BEHALF OF AN EMPLOYEE BENEFIT PLAN SUBJECT TO ERISA OR TO SECTION 4975 OF
THE CODE WITHOUT THE OPINION OF COUNSEL SATISFACTORY TO THE TRUSTEE AS
DESCRIBED ABOVE SHALL BE VOID AND OF NO EFFECT.]

B-2

<PAGE>

Certificate No.                    :

Cut-off Date                       :

First Distribution Date            :

Initial Certificate
Balance of this
Certificate
("Denomination")                   :        $

Initial Certificate
Balances of all
Certificates of this
Class                              :        $

CUSIP                              :


INDYMAC MBS, INC.
IndyMac INDX Mortgage Loan Trust 200_-_
Mortgage Pass-Through Certificates, Series 200_-_
Class [____]

evidencing a percentage interest in the distributions
allocable to the Certificates of the above-referenced Class with
respect to a Trust Fund consisting primarily of a pool of
conventional mortgage loans (the "Mortgage Loans") secured by
first liens on one- to four-family residential properties.

IndyMac MBS, Inc., as Depositor

Principal in respect of this Certificate is distributable monthly as set forth
herein or in the Agreement (defined below). Accordingly, the Certificate
Balance at any time may be less than the Certificate Balance as set forth
herein. This Certificate does not evidence an obligation of, or an interest
in, and is not guaranteed by the Depositor, the Seller, the Servicer or the
Trustee referred to below or any of their respective affiliates. Neither this
Certificate nor the Mortgage Loans are guaranteed or insured by any
governmental agency or instrumentality.

This certifies that is the registered owner of the Percentage Interest
evidenced by this Certificate (obtained by dividing the denomination of this
Certificate by the aggregate Initial Certificate Balances of the denominations
of all Certificates of the Class to which this Certificate belongs) in certain
monthly distributions with respect to a Trust Fund consisting primarily of the
Mortgage Loans deposited by IndyMac MBS, Inc. (the "Depositor"). The Trust
Fund was created pursuant to a Pooling and Servicing Agreement dated as of the
Cut-off Date specified above (the "Agreement") among the Depositor, IndyMac
Bank, F.S.B., as seller (in such capacity, the "Seller"), and as servicer (in
such capacity, the "Servicer"), and Deutsche Bank National Trust Company, as
trustee (the "Trustee") and as Supplemental Interest Trustee. To the extent
not defined herein, the capitalized terms used herein have the meanings
assigned in the Agreement. This Certificate is issued under and is subject to
the terms, provisions and conditions of the Agreement, to which Agreement the
Holder of this Certificate by virtue of the acceptance hereof assents and by
which such Holder is bound.

<PAGE>

[No transfer of a Certificate of this Class shall be made unless such transfer is made pursuant to an effective registration statement under the Securities Act and any applicable state securities laws or is exempt from the registration requirements under said Act and such laws. In the event that a transfer is to be made in reliance upon an exemption from the Securities Act and such laws, in order to assure compliance with the Securities Act and such laws, the Certificateholder desiring to effect such transfer and such Certificateholder's prospective transferee shall each certify to the Trustee in writing the facts surrounding the transfer. In the event that such a transfer is to be made within three years from the date of the initial issuance of Certificates pursuant hereto, there shall also be delivered (except in the case of a transfer pursuant to Rule 144A of the Securities Act) to the Trustee an Opinion of Counsel that such transfer may be made pursuant to an exemption from the Securities Act and such state securities laws, which Opinion of Counsel shall not be obtained at the expense of the Trustee, the Seller, the Servicer or the Depositor. The Holder hereof desiring to effect such transfer shall, and does hereby agree to, indemnify the Trustee and the Depositor against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.]

[No transfer of a Certificate of this Class shall be made unless the Trustee shall have received either (i) a representation [letter] from the transferee of such Certificate, acceptable to and in form and substance satisfactory to the Trustee, to the effect that such transferee is not an employee benefit plan or other benefit plan subject to Section 406 of ERISA or Section 4975 of the Code, or a person acting on behalf of or investing plan assets of any such plan, which representation letter shall not be an expense of the Trustee or the Servicer, (ii) if the Certificate has been the subject of an ERISA-Qualifying Underwriting, a representation that the transferee is an insurance company which is purchasing such Certificate with funds contained in an "insurance company general account" (as such term is defined in Section V(e) of Prohibited Transaction Class Exemption 95-60 ("PTCE 95-60")) and that the purchase and holding of such Certificate are covered under Sections I and III of PTCE 95-60 or (iii) in the case of any such Certificate presented for registration in the name of an employee benefit plan subject to ERISA or Section 4975 of the Code (or comparable provisions of any subsequent enactments), or a trustee of any such plan or any other person acting on behalf of any such plan, an Opinion of Counsel satisfactory to the Trustee and addressed to the Trustee and the Servicer to the effect that the purchase and holding of such Certificate will not result in a nonexempt prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Trustee or the Servicer to any obligation in addition to those undertaken in the Agreement, which Opinion of Counsel shall not be an expense of the Trustee, the Servicer or the Trust Fund. Notwithstanding anything else to the contrary herein, any purported transfer of a Certificate of this Class to or on behalf of an employee benefit plan subject to ERISA or to Section 4975 of the Code without the opinion of counsel satisfactory to the Trustee as described above shall be void and of no effect.]

Reference is hereby made to the further provisions of this Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

This Certificate shall not be entitled to any benefit under the Agreement or be valid for any purpose unless manually countersigned by an authorized signatory of the Trustee.

B-4

<PAGE>

        IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly
executed.

Dated: _____, 20__


                             DEUTSCHE BANK NATIONAL TRUST COMPANY,
                                as Trustee


                        By _____


Countersigned:

By _____
    Authorized Signatory of
    DEUTSCHE BANK NATIONAL TRUST COMPANY,
    as Trustee




                              B-5
<PAGE>


                          EXHIBIT C

                  [FORM OF CLASS A-R CERTIFICATE]

        SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A
"RESIDUAL INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE
TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL
REVENUE CODE OF 1986, AS AMENDED (THE "CODE").

        NEITHER THIS CERTIFICATE NOR ANY INTEREST HEREIN MAY BE TRANSFERRED
UNLESS THE PROPOSED TRANSFEREE DELIVERS TO THE TRUSTEE A TRANSFER AFFIDAVIT IN
ACCORDANCE WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN.

        NEITHER THIS CERTIFICATE NOR ANY INTEREST HEREIN MAY BE TRANSFERRED
UNLESS THE TRANSFEREE REPRESENTS TO THE TRUSTEE THAT SUCH TRANSFEREE IS NOT
AND IS NOT INVESTING ON BEHALF OF OR WITH PLAN ASSETS OF AN EMPLOYEE BENEFIT
PLAN SUBJECT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS
AMENDED ("ERISA"), OR A PLAN SUBJECT TO SECTION 4975 OF THE CODE, OR, IF SUCH
PURCHASER IS AN INSURANCE COMPANY, DELIVERS A REPRESENTATION IN ACCORDANCE
WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN, OR DELIVERS TO THE
TRUSTEE AN OPINION OF COUNSEL IN ACCORDANCE WITH THE PROVISIONS OF THE
AGREEMENT REFERRED TO HEREIN. NOTWITHSTANDING ANYTHING ELSE TO THE CONTRARY
HEREIN, ANY PURPORTED TRANSFER OF THIS CERTIFICATE TO OR ON BEHALF OF AN
EMPLOYEE BENEFIT PLAN SUBJECT TO ERISA OR TO SECTION 4975 OF THE CODE WITHOUT
THE OPINION OF COUNSEL SATISFACTORY TO THE TRUSTEE AS DESCRIBED ABOVE SHALL BE
VOID AND OF NO EFFECT.

C-1

<PAGE>

| | | |
|---|---|---|
| Certificate No. | : | |
| Cut-off Date | : | |
| First Distribution Date | : | |
| Initial Certificate Balance of this Certificate ("Denomination") | : | $ |
| Initial Certificate Balances of all Certificates of this Class | : | $ |
| CUSIP | : | |

INDYMAC MBS, INC.
IndyMac INDX Mortgage Loan Trust 200_-_
Mortgage Pass-Through Certificates, Series 200_-_

evidencing the distributions allocable to the Class A-R
Certificates with respect to a Trust Fund consisting primarily of
a pool of conventional mortgage loans (the "Mortgage Loans")
secured by first liens on one- to four-family residential
properties.

IndyMac MBS, Inc., as Depositor

Principal in respect of this Certificate is distributable monthly as set forth
herein or in the Agreement (defined below). Accordingly, the Certificate
Balance at any time may be less than the Certificate Balance as set forth
herein. This Certificate does not evidence an obligation of, or an interest
in, and is not guaranteed by the Depositor, the Seller, the Servicer or the
Trustee referred to below or any of their respective affiliates. Neither this
Certificate nor the Mortgage Loans are guaranteed or insured by any
governmental agency or instrumentality.

This certifies that _____ is the registered owner of the
Percentage Interest (obtained by dividing the denomination of this Certificate
by the aggregate Initial Certificate Balances of the denominations of all
Certificates of the Class to which this Certificate belongs) in certain
monthly distributions with respect to a Trust Fund consisting of the Mortgage
Loans deposited by IndyMac MBS, Inc. (the "Depositor"). The Trust Fund was
created pursuant to a Pooling and Servicing Agreement dated as of the Cut-off
Date specified above (the "Agreement") among the Depositor, IndyMac Bank,
F.S.B., as seller (in such capacity, the "Seller") and as servicer (in such
capacity, the "Servicer"), and Deutsche Bank National Trust Company, as
trustee (the "Trustee") and as Supplemental Interest Trustee. To the extent
not defined herein, the capitalized terms used herein have the meanings

assigned in the Agreement. This Certificate is issued under and is subject to
the terms, provisions and conditions of the Agreement, to which Agreement the
Holder of this Certificate by virtue of the acceptance hereof assents and by
which such Holder is bound.

Any distribution of the proceeds of any remaining assets of the Trust Fund
will be made only upon presentment and surrender of this Class A-R Certificate
at the Corporate Trust Office.

                                    C-2
<PAGE>

No transfer of a Class A-R Certificate shall be made unless the Trustee shall
have received either (i) a representation letter from the transferee of such
Certificate, acceptable to and in form and substance satisfactory to the
Trustee, to the effect that such transferee is not an employee benefit plan or
other benefit plan subject to Section 406 of ERISA or Section 4975 of the
Code, or a person investing on behalf of or with plan assets of any such plan,
which representation letter shall not be an expense of the Trustee or the
Servicer, (ii) a representation that the purchaser is an insurance company
which is purchasing such Certificate with funds contained in an "insurance
company general account" (as such term is defined in Section V(e) of
Prohibited Transaction Class Exemption 95-60 ("PTCE 95-60")) and that the
purchase and holding of such Certificate are covered under Sections I and III
of PTCE 95-60 or (iii) in the case of any such Certificate presented for
registration in the name of an employee benefit plan subject to ERISA or
Section 4975 of the Code (or comparable provisions of any subsequent
enactments), or a trustee of any such plan or any other person acting on
behalf of any such plan, an Opinion of Counsel satisfactory to the Trustee and
addressed to the Trustee and the Servicer to the effect that the purchase and
holding of such Class A-R Certificate will not result in a nonexempt
prohibited transaction under Section 406 of ERISA or Section 4975 of the Code
and will not subject the Trustee or the Servicer to any obligation in addition
to those undertaken in the Agreement, which Opinion of Counsel shall not be an
expense of the Trustee, the Servicer or the Trust Fund. Notwithstanding
anything else to the contrary herein, any purported transfer of a Class A-R
Certificate to or on behalf of an employee benefit plan subject to ERISA or to
Section 4975 of the Code without the opinion of counsel satisfactory to the
Trustee as described above shall be void and of no effect.

Each Holder of this Class A-R Certificate will be deemed to have agreed to be
bound by the restrictions of the Agreement, including but not limited to the
restrictions that (i) each person holding or acquiring any Ownership Interest
in this Class A-R Certificate must be a Permitted Transferee, (ii) no
Ownership Interest in this Class A-R Certificate may be transferred without
delivery to the Trustee of (a) a transfer affidavit of the proposed transferee
and (b) a transfer certificate of the transferor, each of such documents to be
in the form described in the Agreement, (iii) each person holding or acquiring
any Ownership Interest in this Class A-R Certificate must agree to require a
transfer affidavit and to deliver a transfer certificate to the Trustee as
required pursuant to the Agreement, (iv) each person holding or acquiring an
Ownership Interest in this Class A-R Certificate must agree not to transfer an
Ownership Interest in this Class A-R Certificate if it has actual knowledge
that the proposed transferee is not a Permitted Transferee and (v) any
attempted or purported transfer of any Ownership Interest in this Class A-R
Certificate in violation of such restrictions will be absolutely null and void
and will vest no rights in the purported transferee.

Reference is hereby made to the further provisions of this Certificate set
forth on the reverse hereof, which further provisions shall for all purposes
have the same effect as if set forth at this place.

This Certificate shall not be entitled to any benefit under the Agreement or
be valid for any purpose unless manually countersigned by an authorized
signatory of the Trustee.

                              C-3
<PAGE>


     IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly
executed.

Dated:  _____, 20__


                         DEUTSCHE BANK NATIONAL TRUST COMPANY,
                            as Trustee


                         By _____


Countersigned:

By _____
   Authorized Signatory of
   DEUTSCHE BANK NATIONAL TRUST COMPANY,
   as Trustee




                              C-4
<PAGE>


                         EXHIBIT D

                        [RESERVED]

D-1

<PAGE>

EXHIBIT E

[Form of Reverse of Certificates]

INDYMAC MBS, INC.
IndyMac INDX Mortgage Loan Trust 200_-_
Mortgage Pass-Through Certificates, Series 200_-_

This Certificate is one of a duly authorized issue of Certificates designated as IndyMac MBS, Inc. Mortgage Pass-Through Certificates, of the Series specified on the face hereof (herein collectively called the "Certificates"), and representing a beneficial ownership interest in the Trust Fund created by the Agreement.

The Certificateholder, by its acceptance of this Certificate, agrees that it will look solely to the funds on deposit in the Distribution Account for payment hereunder and that the Trustee is not liable to the Certificateholders for any amount payable under this Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

This Certificate does not purport to summarize the Agreement and reference is made to the Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced thereby, and the rights, duties and immunities of the Trustee.

Pursuant to the terms of the Agreement, a distribution will be made on the 25th day of each month or, if such 25th day is not a Business Day, the Business Day immediately following (the "Distribution Date"), commencing on the first Distribution Date specified on the face hereof, to the Person in whose name this Certificate is registered at the close of business on the applicable Record Date in an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amount required to be distributed to Holders of Certificates of the Class to which this Certificate belongs on such Distribution Date pursuant to the Agreement. The Record Date applicable to each Distribution Date is the last Business Day of the month next preceding the month of such Distribution Date.

Distributions on this Certificate shall be made by wire transfer of immediately available funds to the account of the Holder hereof at a bank or other entity having appropriate facilities therefor, if such Certificateholder shall have so notified the Trustee in writing at least five Business Days prior to the Record Date and such Certificateholder shall satisfy the conditions to receive such form of payment set forth in the Agreement, or, if not, by check mailed by first class mail to the address of such Certificateholder appearing in the Certificate Register. The final distribution on each Certificate will be made in like manner, but only upon presentment and surrender of such Certificate at the Corporate Trust Office or such other location specified in the notice to Certificateholders of such final distribution.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Trustee and the rights of the Certificateholders under the Agreement at any time by the Depositor, the Servicer and the Trustee with the consent of the Holders of Certificates affected by such amendment evidencing the requisite Percentage Interest, as provided in the Agreement. Any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon

the transfer hereof or in exchange therefor or in lieu hereof whether or not
notation of such consent is made upon this Certificate. The Agreement also
permits the amendment thereof, in certain limited circumstances, without the
consent of the Holders of any of the Certificates.

<center>E-1</center>

&lt;PAGE&gt;


        As provided in the Agreement and subject to certain limitations therein
set forth, the transfer of this Certificate is registrable in the Certificate
Register of the Trustee upon surrender of this Certificate for registration of
transfer at the Corporate Trust Office, accompanied by a written instrument of
transfer in form satisfactory to the Trustee and the Certificate Registrar
duly executed by the holder hereof or such holder's attorney duly authorized
in writing, and thereupon one or more new Certificates of the same Class in
authorized denominations and evidencing the same aggregate Percentage Interest
in the Trust Fund will be issued to the designated transferee or transferees.

        The Certificates are issuable only as registered Certificates without
coupons in denominations specified in the Agreement. As provided in the
Agreement and subject to certain limitations therein set forth, Certificates
are exchangeable for new Certificates of the same Class in authorized
denominations and evidencing the same aggregate Percentage Interest, as
requested by the Holder surrendering the same.

        No service charge will be made for any such registration of transfer or
exchange, but the Trustee may require payment of a sum sufficient to cover any
tax or other governmental charge payable in connection therewith.

        The Depositor, the Servicer, the Seller and the Trustee and any agent of
the Depositor or the Trustee may treat the Person in whose name this
Certificate is registered as the owner hereof for all purposes, and neither
the Depositor, the Trustee, nor any such agent shall be affected by any notice
to the contrary.

        On any Distribution Date on which the aggregate Stated Principal Balance
of the Mortgage Loans is less than ten percent (10%) of the Cut-off Date Pool
Principal Balance, the Servicer will have the option to repurchase, in whole,
from the Trust Fund all remaining Mortgage Loans and all property acquired in
respect of the Mortgage Loans at a purchase price determined as provided in
the Agreement. In the event that no such optional termination occurs, the
obligations and responsibilities created by the Agreement will terminate upon
the later of the maturity or other liquidation (or any advance with respect
thereto) of the last Mortgage Loan remaining in the Trust Fund or the
disposition of all property in respect thereof and the distribution to
Certificateholders of all amounts required to be distributed pursuant to the
Agreement. In no event, however, will the trust created by the Agreement
continue beyond the expiration of 21 years from the death of the last survivor
of the descendants living at the date of the Agreement of a certain person
named in the Agreement.

        Any term used herein that is defined in the Agreement shall have the
meaning assigned in the Agreement, and nothing herein shall be deemed
inconsistent with that meaning.

<center>E-2</center>

&lt;PAGE&gt;

## ASSIGNMENT
----------

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto _____

_____

(Please print or typewrite name and address including postal zip code of assignee)

the Percentage Interest evidenced by the within Certificate and hereby authorizes the transfer of registration of such Percentage Interest to assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Trustee to issue a new Certificate of a like denomination and Class, to the above named assignee and deliver such Certificate to the following address:

_____

Dated: _____

                          _____
                          Signature by or on behalf of assignor


### DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____
_____,
for the account of _____,
account number _____, or, if mailed by check, to_____
_____
_____.
Applicable statements should be mailed to _____
_____
_____

This information is provided by _____,
the assignee named above, or _____,

as its agent.


                              E-3

<PAGE>


STATE OF CALIFORNIA        )
                           :  ss.:
COUNTY OF _____   )

On the  th day of _____, 20__ before me, a notary public in and for said State, personally appeared _____, known to me who, being by

me duly sworn, did depose and say that he executed the foregoing instrument.

_____
Notary Public

[Notarial Seal]

E-4

<PAGE>

EXHIBIT F

[FORM OF CLASS P CERTIFICATE]

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE").

THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"). ANY RESALE OR TRANSFER OF THIS CERTIFICATE WITHOUT REGISTRATION THEREOF UNDER THE ACT MAY ONLY BE MADE IN A TRANSACTION EXEMPTED FROM THE REGISTRATION REQUIREMENTS OF THE ACT AND IN ACCORDANCE WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN.

NEITHER THIS CERTIFICATE NOR ANY INTEREST HEREIN MAY BE TRANSFERRED UNLESS THE TRANSFEREE DELIVERS TO THE TRUSTEE A REPRESENTATION LETTER TO THE EFFECT THAT SUCH TRANSFEREE IS NOT AND IS NOT INVESTING ON BEHALF OF OR WITH PLAN ASSETS OF AN EMPLOYEE BENEFIT PLAN SUBJECT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), OR A PLAN SUBJECT TO SECTION 4975 OF THE CODE, OR, IF THE CERTIFICATE HAS BEEN THE SUBJECT OF AN ERISA-QUALIFYING UNDERWRITING, A REPRESENTATION IN ACCORDANCE WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN, OR DELIVERS AN OPINION OF COUNSEL IN ACCORDANCE WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN. NOTWITHSTANDING ANYTHING ELSE TO THE CONTRARY HEREIN, ANY PURPORTED TRANSFER OF THIS CERTIFICATE TO OR ON BEHALF OF AN EMPLOYEE BENEFIT PLAN SUBJECT TO ERISA OR TO SECTION 4975 OF THE CODE WITHOUT THE OPINION OF COUNSEL SATISFACTORY TO THE TRUSTEE AS DESCRIBED ABOVE SHALL BE VOID AND OF NO EFFECT.

F-1

<PAGE>

```
Certificate No.                  :

Cut-off Date                     :

First Distribution Date          :

Initial Certificate Balance
of this Certificate
("Denomination")                 :   $

Initial Certificate Balances
of all Certificates
of this Class                    :   $

CUSIP                            :


Interest Rate                    :


Maturity Date                    :
```

                         INDYMAC MBS, INC.
              IndyMac INDX Mortgage Loan Trust 200_-__
             Mortgage Pass-Through Certificates, Series 200_-__

                           Class P-[1][2]

        evidencing a percentage interest in the distributions allocable to the
        Certificates of the above-referenced Class with respect to a Trust Fund
        consisting primarily of a pool of conventional mortgage loans (the
        "Mortgage Loans") secured by first liens on one- to four-family
        residential properties.

Distributors in respect of this Certificate are distributable monthly as set
forth herein. Accordingly, the Certificate Balance at any time may be less
than the Certificate Balance as set forth herein. This Certificate does not
evidence an obligation of, or an interest in, and is not guaranteed by the
Depositor, the Seller, the Servicer or the Trustee referred to below or any of
their respective affiliates. Neither this Certificate nor the Mortgage Loans
are guaranteed or insured by any governmental agency or instrumentality.

This certifies that _____ is the registered owner of the Percentage
Interest evidenced by this Certificate (obtained by dividing the denomination
of this Certificate by the aggregate of the denominations of all Certificates
of the Class to which this Certificate belongs) in certain monthly
distributions with respect to a Trust Fund consisting primarily of the
Mortgage Loans deposited by IndyMac MBS, Inc. (the "Depositor"). The Trust
Fund was created pursuant to a Pooling and Servicing Agreement dated as of the
Cut-off Date specified above (the "Agreement") among the Depositor, IndyMac
Bank, F.S.B., as seller and Servicer (the "Seller" or the "Servicer," as
appropriate), and Deutsche Bank National Trust Company, as trustee (the
"Trustee") and as Supplemental Interest Trustee. To the extent not defined
herein, the capitalized terms used herein have the meanings assigned in the

                              F-2

<PAGE>


Agreement. This Certificate is issued under and is subject to the terms,

provisions and conditions of the Agreement, to which Agreement the Holder of
this Certificate by virtue of the acceptance hereof assents and by which such
Holder is bound.

The Certificates are limited in right of payment to certain collections and
recoveries respecting the Mortgage Loans, all as more specifically set forth
herein and in the Agreement. As provided in the Agreement, withdrawals from
the Distribution Account may be made from time to time for purposes other than
distributions to Certificateholders, such purposes including reimbursement of
advances made, or certain expenses incurred, with respect to the Mortgage
Loans.

This Certificate does not have a Certificate Balance or Pass-Through Rate and
will be entitled to distributions only to the extent set forth in the
Agreement. In addition, any distribution of the proceeds of any remaining
assets of the Trust will be made only upon presentment and surrender of this
Certificate at the Corporate Trust Office or the office or agency maintained
by the Trustee.

No transfer of a Certificate of this Class shall be made unless such
disposition is exempt from the registration requirements of the Securities Act
of 1933, as amended (the "1933 Act"), and any applicable state securities laws
or is made in accordance with the 1933 Act and such laws. In the event of any
such transfer, the Trustee shall require the transferor to execute a
transferor certificate (in substantially the form attached to the Pooling and
Servicing Agreement) and deliver either (i) an Investment Letter or the Rule
144A Letter, in either case substantially in the form attached to the
Agreement, or (ii) a written Opinion of Counsel to the Trustee that such
transfer may be made pursuant to an exemption, describing the applicable
exemption and the basis therefor, from the 1933 Act or is being made pursuant
to the 1933 Act, which Opinion of Counsel shall be an expense of the
transferor.

No transfer of a Certificate of this Class shall be made unless the Trustee
shall have received either (i) a representation letter from the transferee of
such Certificate, acceptable to and in form and substance satisfactory to the
Trustee, to the effect that such (x) transferee is not an employee benefit
plan subject to Section 406 of ERISA or Section 4975 of the Code, or a person
acting on behalf of or investing plan assets of any such plan, which
representation letter shall not be an expense of the Trustee or (y) if the
Certificate has been the subject of an ERISA-Qualifying Underwriting, a
representation that the transferee is an insurance company that is purchasing
such Certificate with funds contained in an "insurance company general
account" (as such term is defined in Section V(e) of Prohibited Transaction
Class Exemption 95-60 ("PTCE 95-60") and that the purchase and holding of such
Certificate satisfy the requirements for exemptive relief under Sections I and
III of PTCE 95-60 or (ii) in the case of a Certificate presented for
registration in the name of an employee benefit plan subject to ERISA, or a
plan or arrangement subject to Section 4975 of the Code (or comparable
provisions of any subsequent enactments), or a trustee of any such plan or any
other person acting on behalf of any such plan or arrangement or using such
plan's or arrangement's assets, an Opinion of Counsel satisfactory to the
Trustee, which Opinion of Counsel shall not be an expense of the Trustee, the
Servicer or the Trust Fund, addressed to the Trustee and the Servicer, to the
effect that the purchase and holding of such Certificate will not result in a
nonexempt prohibited transaction under ERISA or Section 4975 of the Code and
will not subject the Trustee or the Servicer to any obligation in addition to
those expressly undertaken in this Agreement or to any liability.

Reference is hereby made to the further provisions of this Certificate set
forth on the reverse hereof, which further provisions shall for all purposes
have the same effect as if set forth at this place.

This Certificate shall not be entitled to any benefit under the Agreement or
be valid for any purpose unless manually countersigned by an authorized

signatory of the Trustee.

<div align="center">F-3</div>

&lt;PAGE&gt;

<div align="center">*          *          *</div>

<div align="center">F-4</div>

&lt;PAGE&gt;

      IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed.

Dated: _____, ____

                  DEUTSCHE BANK NATIONAL TRUST
                  COMPANY,
                  as Trustee


                  By _____

Countersigned:


By _____
      Authorized Signatory of
      DEUTSCHE BANK NATIONAL TRUST
      COMPANY, as Trustee

F-5

<PAGE>

INDYMAC MBS, INC.
IndyMac INDX Mortgage Loan Trust 200_-__
Mortgage Pass-Through Certificates

This Certificate is one of a duly authorized issue of Certificates designated as IndyMac MBS, Inc. Mortgage Pass-Through Certificates, of the Series specified on the face hereof (herein collectively called the "Certificates"), and representing a beneficial ownership interest in the Trust Fund created by the Agreement.

The Certificateholder, by its acceptance of this Certificate, agrees that it will look solely to the funds on deposit in the Distribution Account for payment hereunder and that the Trustee is not liable to the Certificateholders for any amount payable under this Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

This Certificate does not purport to summarize the Agreement and reference is made to the Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced thereby, and the rights, duties and immunities of the Trustee.

Pursuant to the terms of the Agreement, a distribution will be made on the 25th day of each month or, if such 25th day is not a Business Day, the Business Day immediately following (the "Distribution Date"), commencing on the first Distribution Date specified on the face hereof, to the Person in whose name this Certificate is registered at the close of business on the applicable Record Date in an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amount required to be distributed to Holders of Certificates of the Class to which this Certificate belongs on such Distribution Date pursuant to the Agreement. The Record Date applicable to each Distribution Date is the last Business Day of the month next preceding the month of such Distribution Date.

Distributions on this Certificate shall be made by wire transfer of immediately available funds to the account of the Holder hereof at a bank or other entity having appropriate facilities therefor, if such Certificateholder shall have so notified the Trustee in writing at least five Business Days prior to the related Record Date and such Certificateholder shall satisfy the conditions to receive such form of payment set forth in the Agreement, or, if not, by check mailed by first class mail to the address of such Certificateholder appearing in the Certificate Register. The final distribution on each Certificate will be made in like manner, but only upon presentment and surrender of such Certificate at the Corporate Trust Office or such other location specified in the notice to Certificateholders of such final distribution.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Trustee and the rights of the Certificateholders under the Agreement at any time by the Depositor, the Servicer and the Trustee with the consent of the Holders of Certificates affected by such amendment evidencing the requisite Percentage Interest, as provided in the Agreement. Any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in exchange therefor or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable in the Certificate Register of the Trustee upon surrender of this Certificate for registration of transfer at the Corporate Trust Office, accompanied by a written instrument of transfer in form satisfactory to the Trustee and the Certificate Registrar duly executed by the holder hereof or such holder's attorney duly authorized in writing, and thereupon one or more new Certificates of the same

                                  F-6
<PAGE>


Class in authorized denominations and evidencing the same aggregate Percentage Interest in the Trust Fund will be issued to the designated transferee or transferees.

The Certificates are issuable only as registered Certificates without coupons in denominations specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, Certificates are exchangeable for new Certificates of the same Class in authorized denominations and evidencing the same aggregate Percentage Interest, as requested by the Holder surrendering the same.

No service charge will be made for any such registration of transfer or exchange, but the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

The Depositor, the Servicer, the Seller and the Trustee and any agent of the Depositor or the Trustee may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and neither the Depositor, the Trustee, nor any such agent shall be affected by any notice to the contrary.

On any Distribution Date on which the aggregate Stated Principal Balance of the Mortgage Loans is less than ten percent (10%) of the Cut-off Date Pool Principal Balance, the Servicer will have the option to repurchase, in whole, from the Trust Fund all remaining Mortgage Loans and all property acquired in respect of the Mortgage Loans at a purchase price determined as provided in the Agreement. In the event that no such optional termination occurs, the obligations and responsibilities created by the Agreement will terminate upon the later of the maturity or other liquidation (or any advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund or the disposition of all property in respect thereof and the distribution to Certificateholders of all amounts required to be distributed pursuant to the Agreement. In no event, however, will the trust created by the Agreement continue beyond the expiration of 21 years from the death of the last survivor of the descendants living at the date of the Agreement of a certain person named in the Agreement.

Any term used herein that is defined in the Agreement shall have the meaning assigned in the Agreement, and nothing herein shall be deemed inconsistent with that meaning.

F-7

<PAGE>

ASSIGNMENT
----------

       FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and
transfer(s) unto _____

_____
(Please print or typewrite name and address including postal zip code of
assignee)

the Percentage Interest evidenced by the within Certificate and hereby
authorizes the transfer of registration of such Percentage Interest to
assignee on the Certificate Register of the Trust Fund.

       I (We) further direct the Trustee to issue a new Certificate of a like
denomination and Class, to the above named assignee and deliver such
Certificate to the following address:

_____

Dated:

                              _____
                              Signature by or on behalf of assignor

DISTRIBUTION INSTRUCTIONS

       The assignee should include the following for purposes of distribution:

       Distributions shall be made, by wire transfer or otherwise, in
immediately available funds to _____
_____,
for the account of _____,
account number                    , or, if mailed by check, to_____
_____.
Applicable statements should be mailed to _____
_____
_____.

       This information is provided by _____,
the assignee named above, or _____,
as its agent.

F-8

<PAGE>

STATE OF _____ )
                                ) ss.:
COUNTY OF _____ )

On the th day of _____, 20__ before me, a notary public in and
for said State, personally appeared _____, known to me who, being
by me duly sworn, did depose and say that he executed the foregoing
instrument.

_____
                                            Notary Public

[Notarial Seal]


                                    F-9
<PAGE>

                              EXHIBIT G-1

                  FORM OF INITIAL CERTIFICATION OF TRUSTEE

                                  [date]

[Depositor]

[Servicer]

[Seller]

_____

_____

                Re:  Pooling and Servicing Agreement among
                     IndyMac MBS, Inc., as Depositor, IndyMac
                     Bank, F.S.B., as Seller and Servicer, and
                     Deutsche Bank National Trust Company, as
                     Trustee, Mortgage Pass-Through
                     Certificates, Series 200 -
                     -------------------------------------------

Gentlemen:

     In accordance with Section 2.02 of the above-captioned Pooling and
Servicing Agreement (the "Pooling and Servicing Agreement"), the undersigned,
as Trustee, hereby certifies that, as to each Mortgage Loan listed in the
Mortgage Loan Schedule (other than any Mortgage Loan listed in the attached
schedule), it has received:

     (i) the original Mortgage Note, endorsed as provided in the following
form: "Pay to the order of _____, without recourse"; and

(ii) an executed assignment of the Mortgage (which may be included in a blanket assignment or assignments); provided, however, that it has received no assignment with respect to any Mortgage for which the Mortgaged Property is located in the Commonwealth of Puerto Rico.

Based on its review and examination and only as to the foregoing documents, such documents appear regular on their face and to such Mortgage Loan.

The Trustee has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Pooling and Servicing Agreement. The Trustee makes no representations as to: (i) the validity, legality, priority, perfection, sufficiency, enforceability or genuineness of any of the documents contained in each Mortgage File of any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

G-1-1

<PAGE>

DEUTSCHE BANK NATIONAL TRUST COMPANY,
    as Trustee

By:_____
       Name:
       Title:

G-1-2

<PAGE>

EXHIBIT G-2

[RESERVED

G-2-1

`<PAGE>`

EXHIBIT G-3

FORM OF DELAY DELIVERY CERTIFICATION

[date]

[Depositor]

[Servicer]

[Seller]

_____

_____

Re:     Pooling and Servicing Agreement among
        IndyMac MBS, Inc., as Depositor, IndyMac
        Bank, F.S.B., as Seller and Servicer, and
        Deutsche Bank National Trust Company, as
        Trustee, Mortgage Pass-Through
        Certificates, Series 200 -
        -----------------------------------------

Gentlemen:

     Reference is made to the Initial Certification of Trustee relating to
the above-referenced series, with the schedule of exceptions attached thereto
(the "Schedule A"), delivered by the undersigned, as Trustee, on the Closing
Date in accordance with Section 2.02 of the above-captioned Pooling and
Servicing Agreement (the "Pooling and Servicing Agreement"). The undersigned
hereby certifies that, as to each Mortgage Loan that is a Delay Delivery
Mortgage Loan listed on Schedule A attached hereto (other than any Mortgage
Loan paid in full or listed on Schedule B attached hereto) it has received:

    (i)    the original Mortgage Note, endorsed by the Seller or the
           originator of such Mortgage Loan, without recourse in the
           following form:  "Pay to the order of _____
           without recourse", with all intervening endorsements that
           show a complete chain of endorsement from the originator to
           the Seller, or, if the original Mortgage Note has been lost
           or destroyed and not replaced, an original lost note
           affidavit from the Seller, stating that the original
           Mortgage Note was lost or destroyed, together with a copy
           of the Mortgage Note;

    (ii)   the original recorded Mortgage;

    (iii)  an executed assignment of the Mortgage to "Deutsche Bank National
           Trust Company, as trustee under the Pooling and Servicing
           Agreement dated as of December 1, 2006, without recourse" (each
           such assignment, when duly and validly completed, to be in
           recordable form and sufficient to effect the assignment of and

        transfer to the assignee thereof, under the Mortgage to which such
        assignment relates);

(iv)    the original recorded assignment or assignments of the Mortgage
        together with all interim recorded assignments of such Mortgage;

(v)     the original or copies of each assumption, modification, written
        assurance or substitution agreement, if any, with evidence of
        recording thereon if recordation thereof is permissible under
        applicable law; and


                                G-3-1
<PAGE>


(vi)    the original or duplicate original lender's title policy and all
        riders, if any, thereto or, in the event such original title
        policy has not been received from the insurer, any one of an
        original title binder, an original preliminary title report or an
        original title commitment, or a copy thereof certified by the
        title company, with the original policy of title insurance to be
        delivered within one year of the Closing Date.

    In the event that in connection with any Mortgage Loan for which the
Seller cannot deliver the original recorded Mortgage or all interim recorded
assignments of the Mortgage satisfying the requirements of clause (ii), (iii)
or (iv), as applicable, the Trustee has received, in lieu thereof, a true and
complete copy of such Mortgage and/or such assignment or assignments of the
Mortgage, as applicable, each certified by the Seller, the applicable title
company, escrow agent or attorney, or the originator of such Mortgage Loan, as
the case may be, to be a true and complete copy of the original Mortgage or
assignment of Mortgage submitted for recording.

    Based on its review and examination and only as to the foregoing
documents, (i) such documents appear regular on their face and related to such
Mortgage Loan, and (ii) the information set forth in items (i), (iv), (vi) and
(xv) (solely as of origination, not as of the Cut-off Date) of the definition
of the "Mortgage Loan Schedule" in Section 1.01 of the Pooling and Servicing
Agreement accurately reflects information set forth in the Mortgage File.

    The Trustee has made no independent examination of any documents
contained in each Mortgage File beyond the review specifically required in the
above-referenced Pooling and Servicing Agreement. The Trustee makes no
representations as to: (i) the validity, legality, priority, perfection,
sufficiency, enforceability or genuineness of any of the documents contained
in each Mortgage File of any of the Mortgage Loans identified on the [Mortgage
Loan Schedule][Loan Number and Borrower Identification Mortgage Loan Schedule]
or (ii) the collectability, insurability, effectiveness or suitability of any
such Mortgage Loan.

    Capitalized words and phrases used herein shall have the respective
meanings assigned to them in the Pooling and Servicing Agreement.


                        DEUTSCHE BANK NATIONAL TRUST COMPANY,
                        as Trustee


                By: _____
                        Name:
                        Title:

                                     G-3-2

<PAGE>


                                  EXHIBIT G-4

                                  [RESERVED]


                                     G-4-1

<PAGE>


                                  EXHIBIT H-1

                     FORM OF FINAL CERTIFICATION OF TRUSTEE

                                    [date]

[Depositor]

[Servicer]

[Seller]


_____


_____

               Re:  Pooling and Servicing Agreement among
                    IndyMac MBS, Inc., as Depositor, IndyMac
                    Bank, F.S.B., as Seller and Servicer, and
                    Deutsche Bank National Trust Company, as
                    Trustee, Mortgage Pass-Through
                    Certificates, Series 200 -
                    ----------------------------------------

Gentlemen:

        In accordance with Section 2.02 of the above-captioned Pooling and
Servicing Agreement (the "Pooling and Servicing Agreement"), the undersigned,
as Trustee, hereby certifies that as to each Mortgage Loan listed in the
Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed on

the attached Document Exception Report) it has received:

    (i) The original Mortgage Note, endorsed in the form provided in Section 2.01(c) of the Pooling and Servicing Agreement, with all intervening endorsements showing a complete chain of endorsement from the originator to the Seller.

    (ii) The original recorded Mortgage.

    (iii) An executed assignment of the Mortgage in the form provided in Section 2.01(c) of the Pooling and Servicing Agreement; provided, however, that it has received no assignment with respect to any Mortgage for which the Mortgaged Property is located in the Commonwealth of Puerto Rico, or, if the Depositor has certified or the Trustee otherwise knows that the Mortgage has not been returned from the applicable recording office, a copy of the assignment of the Mortgage (excluding information to be provided by the recording office).

    (iv) The original or duplicate original recorded assignment or assignments of the Mortgage showing a complete chain of assignment from the originator to the Seller.

    (v) The original or duplicate original lender's title policy and all riders thereto or, any one of an original title binder, an original preliminary title report or an original title commitment, or a copy thereof certified by the title company.

    Based on its review and examination and only as to the foregoing documents, (a) such documents appear regular on their face and related to such Mortgage Loan, and (b) the information set forth in items (i), (ii), (iii), (iv), (vi) and (xi) of the definition of the "Mortgage Loan Schedule" in Section 1.01 of the Pooling and Servicing Agreement accurately reflects information set forth in the Mortgage File.

<center>H-1-1</center>

&lt;PAGE&gt;

    The Trustee has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Pooling and Servicing Agreement. The Trustee makes no representations as to: (i) the validity, legality, priority, perfection, sufficiency, enforceability or genuineness of any of the documents contained in each Mortgage File of any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan. Notwithstanding anything herein to the contrary, the Trustee has made no determination and makes no representations as to whether (i) any endorsement is sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note or (ii) any assignment is in recordable form or sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates.

    Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

<div align="center">

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee

</div>

By: _____
      Name:

Title:


H-1-2

<PAGE>


EXHIBIT H-2

[RESERVED]


H-2-1

<PAGE>


EXHIBIT I

TRANSFER AFFIDAVIT

IndyMac MBS, Inc.
Mortgage Pass-Through Certificates
Series 200_-_

STATE OF CALIFORNIA        )
                           : ss.:
COUNTY OF _____   )

    The undersigned, being first duly sworn, deposes and says as follows:

    1. The undersigned is an officer of _____, the proposed
Transferee of an Ownership Interest in a Class R Certificate (the
"Certificate") issued pursuant to the Pooling and Servicing Agreement, (the
"Agreement"), relating to the above-referenced Series, by and among IndyMac
MBS, Inc., as depositor (the "Depositor"), IndyMac Bank, F.S.B., as seller and
Servicer and Deutsche Bank National Trust Company, as Trustee. Capitalized
terms used, but not defined herein or in Exhibit 1 hereto, shall have the
meanings ascribed to such terms in the Agreement. The Transferee has
authorized the undersigned to make this affidavit on behalf of the Transferee.

    2. The Transferee is, as of the date hereof, and will be, as of the date
of the Transfer, a Permitted Transferee. The Transferee is acquiring its
Ownership Interest in the Certificate for its own account.

3. The Transferee has been advised of, and understands that (i) a tax will be imposed on Transfers of the Certificate to Persons that are not Permitted Transferees; (ii) such tax will be imposed on the transferor, or, if such Transfer is through an agent (which includes a broker, nominee or middleman) for a Person that is not a Permitted Transferee, on the agent; and (iii) the Person otherwise liable for the tax shall be relieved of liability for the tax if the subsequent Transferee furnished to such Person an affidavit that such subsequent Transferee is a Permitted Transferee and, at the time of Transfer, such Person does not have actual knowledge that the affidavit is false.

4. The Transferee has been advised of, and understands that a tax will be imposed on a "pass-through entity" holding the Certificate if at any time during the taxable year of the pass-through entity a Person that is not a Permitted Transferee is the record holder of an interest in such entity. The Transferee understands that such tax will not be imposed for any period with respect to which the record holder furnishes to the pass-through entity an affidavit that such record holder is a Permitted Transferee and the pass-through entity does not have actual knowledge that such affidavit is false. (For this purpose, a "pass-through entity" includes a regulated investment company, a real estate investment trust or common trust fund, a partnership, trust or estate, and certain cooperatives and, except as may be provided in Treasury Regulations, persons holding interests in pass-through entities as a nominee for another Person.)

5. The Transferee has reviewed the provisions of Section 5.02(c) of the Agreement (attached hereto as Exhibit 2 and incorporated herein by reference) and understands the legal consequences of the acquisition of an Ownership Interest in the Certificate including, without limitation, the restrictions on subsequent Transfers and the provisions regarding voiding the Transfer and mandatory sales. The Transferee expressly agrees to be bound by and to abide by the provisions of Section 5.02(c) of the Agreement and the restrictions noted on the face of the Certificate. The Transferee understands and

<div align="center">I-1</div>

<PAGE>

agrees that any breach of any of the representations included herein shall render the Transfer to the Transferee contemplated hereby null and void.

6. The Transferee agrees to require a Transfer Affidavit from any Person to whom the Transferee attempts to Transfer its Ownership Interest in the Certificate, and in connection with any Transfer by a Person for whom the Transferee is acting as nominee, trustee or agent, and the Transferee will not Transfer its Ownership Interest or cause any Ownership Interest to be Transferred to any Person that the Transferee knows is not a Permitted Transferee. In connection with any such Transfer by the Transferee, the Transferee agrees to deliver to the Trustee a certificate substantially in the form set forth as Exhibit J to the Agreement (a "Transferor Certificate") to the effect that such Transferee has no actual knowledge that the Person to which the Transfer is to be made is not a Permitted Transferee.

7. The Transferee does not have the intention to impede the assessment or collection of any tax legally required to be paid with respect to the Certificate.

8. The Transferee's taxpayer identification number is _____.

9. The Transferee has provided to the Trustee a correct, complete and duly executed tax certification form (i.e., U.S. Internal Revenue Service Form W-9 (or any successor form thereto), together with appropriate attachments) as a condition to such transfer and agrees to update such tax certification form

(i) upon expiration of any such tax certification form, (ii) as required under then applicable U.S. Treasury regulations and (iii) promptly upon learning that any tax certification form previously provided has become obsolete or incorrect.

10. The Transferee is a U.S. Person as defined in Code Section 7701(a)(30).

11. The Transferee is aware that the Certificate may be a "noneconomic residual interest" within the meaning of proposed Treasury regulations promulgated pursuant to the Code and that the transferor of a noneconomic residual interest will remain liable for any taxes due with respect to the income on such residual interest, unless no significant purpose of the transfer was to impede the assessment or collection of tax.

12. The Transferee is not a foreign permanent establishment or fixed base (within the meaning of an applicable income tax treaty) of a U.S. taxpayer.

13. The Transferee will not transfer the Certificates, directly or indirectly, to a foreign permanent establishment or fixed base (within the meaning of an applicable income tax treaty) of the Transferee or another U.S. taxpayer.

14. The Transferee will not cause income from the Certificates to be attributable to a foreign permanent establishment or fixed base (within the meaning of an applicable income tax treaty) of the Transferee or another U.S. taxpayer.

15. Either:

     (a) (i) At the time of the transfer, and at the close of each of the Transferee's two fiscal years preceding the Transferee's fiscal year of transfer, the Transferee's gross assets for financial reporting purposes exceed $100 million and its net assets for financial reporting purposes exceed $10 million. For purposes of the preceding sentence, the gross assets and net assets of a Transferee do not include any obligation of any Related Person, as defined below, or any other asset if a principal purpose for holding or acquiring the other asset is to permit the Transferee to


                                   I-2
<PAGE>


     satisfy the conditions of this paragraph 15(a); (ii) The Transferee is an Eligible Corporation, as defined below, and hereby agrees that any subsequent transfer of the interest will be to another Eligible Corporation in a transaction that satisfies this Transfer Affidavit, including this paragraph 15(a); and (iii) The Transferee has not given the Transferor any reason to know that the Transferee will not honor the restrictions on subsequent transfers of the residual interest or that the Transferee cannot or will not pay any taxes associated with the residual interest; or

     (b)(i) The Transferee is a United States Person; (ii) The present value of the anticipated tax liabilities associated with holding the residual interest does not exceed the sum of: (A) The present value of any consideration given to the Transferee to acquire the interest; (B) The present value of the expected future distributions on the interest; and (C) The present value of the anticipated tax savings associated with holding the interest as any REMIC generates losses; and (iii) For purposes of calculating the aforementioned present values: (A) The transferee has assumed that it pays tax at a rate equal to the highest

rate of tax specified in Code Section 11(b)(1) (unless the Transferee has been subject to the alternative minimum tax under Code Section 55 in the preceding two years and will compute its taxable income in the current taxable year using the alternative minimum tax rate, in which case the Transferee can assume that it pays tax at the rate specified in Code Section 55(b)(1)(B) provided the Transferee states in this Transfer Affidavit that it is using such alternate rate and that has been subject to the alternative minimum tax under Code Section 55 in the preceding two years and will compute its taxable income in the current taxable year using the alternative minimum tax rate):and (B) The Transferee uses a discount rate equal to the Federal short-term rate prescribed by section 1274(d) for the month of the transfer and the compounding period used by the Transferee.

The term "Eligible Corporation" means any domestic C corporation (as defined in section 1361(a)(2) of the Code) other than a corporation which is exempt from, or is not subject to, tax under section 11 of the Code, an entity described in section 851(a) or 856(a) of the Code, a REMIC; or an organization to which part I, subchapter T, chapter 1, subtitle A of the Code applies. The Term "Related Person" means any person that bears a relationship to the Transferee enumerated in section 267(b) or 707(b)(1) of the Code, using "20 percent" instead of "50 percent" where it appears under the provisions; or is under common control (within the meaning of section 52(a) and (b) of the Code) with the Transferee.

16. Either (i) the Transferee is not an employee benefit plan that is subject to ERISA or a plan that is subject to Section 4975 of the Code, and the Transferee is not acting on behalf of or with plan assets of such a plan; or (ii) the Transferee is an insurance company that is investing funds contained in an "insurance company general account" (as such term is defined in Section V(e) of Prohibited Transaction Class Exemption 95-60 ("PTCE 95-60") and the purchase and holding of the Class R Certificate satisfy the requirements for exemptive relief under Sections I and III of PTCE 95-60.

                    *          *          *

                              I-3

<PAGE>


        IN WITNESS WHEREOF, the Transferee has caused this instrument to be executed on its behalf, pursuant to authority of its Board of Directors, by its duly authorized officer and its corporate seal to be hereunto affixed, duly attested, this ____ day of _____, 20__.



                    _____
                        Print Name of Transferee



            By:_____
                        Name:
                        Title:


[Corporate Seal]

ATTEST:

[Assistant] Secretary

    Personally appeared before me the above-named _____, known or proved to me to be the same person who executed the foregoing instrument and to be the _____ of the Transferee, and acknowledged that he executed the same as his free act and deed and the free act and deed of the Transferee.

    Subscribed and sworn before me this ____ day of _____, 20__.

              _____

              NOTARY PUBLIC

              My Commission expires the
              ____ day of _____,
              20_.

           I-4

&lt;PAGE&gt;

                    EXHIBIT 1
                   to EXHIBIT I

          Certain Definitions
          -------------------

   "Ownership Interest": As to any Certificate, any ownership interest in such Certificate, including any interest in such Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial.

   "Permitted Transferee": Any Person other than (i) the United States, any State or political subdivision thereof, or any agency or instrumentality of any of the foregoing, (ii) a foreign government, International Organization or any agency or instrumentality of either of the foregoing, (iii) an organization (except certain farmers' cooperatives described in Code Section 521) that is exempt from tax imposed by Chapter 1 of the Code (including the tax imposed by Code Section 511 on unrelated business taxable income) on any excess inclusions (as defined in Code Section 860E(c)(1)) with respect to any Restricted Certificate, (iv) a rural electric and telephone cooperatives described in Code Section 1381(a)(2)(c), (v) an "electing large partnership" as defined in Code Section 775 of (vi) a Person that is not a U.S. Person, and (vii) any other Person so designated by the Depositor based upon an Opinion of Counsel that the Transfer of an Ownership Interest in a Residual Certificate to such Person may cause any REMIC to fail to qualify as a REMIC at any time that certain Certificates are Outstanding. The terms "United States," "State" and "International Organization" shall have the meanings set forth in Code Section 7701 or successor provisions. A corporation will not be treated as an instrumentality of the United States or of any State or political subdivision thereof if all of its activities are subject to tax, and, with the exception of the FHLMC, a majority of its board of directors is not selected by such

governmental unit.

"Person": Any individual, corporation, partnership, joint venture, limited liability company, bank, joint stock company, trust (including any beneficiary thereof), unincorporated organization or government or any agency or political subdivision thereof.

"Transfer": Any direct or indirect transfer or sale of any Ownership Interest in a Certificate, including the acquisition of a Certificate by the Depositor.

"Transferee": Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

I-5

<PAGE>

EXHIBIT 2
to EXHIBIT I

Section 5.02(c) of the Agreement

(c) Each Person who has or who acquires any Ownership Interest in a Residual Certificate shall be deemed by the acceptance or acquisition of such Ownership Interest to have agreed to be bound by the following provisions, and the rights of each Person acquiring any Ownership Interest in a Residual Certificate are expressly subject to the following provisions:

(i) Each Person holding or acquiring any Ownership Interest in a Residual Certificate shall be a Permitted Transferee and shall promptly notify the Trustee of any change or impending change in its status as a Permitted Transferee.

(ii) No Ownership Interest in a Residual Certificate may be registered on the Closing Date or thereafter transferred, and the Trustee shall not register the Transfer of any Residual Certificate unless, in addition to the certificates required to be delivered to the Trustee under subparagraph (b) above, the Trustee shall have been furnished with an affidavit (a "Transfer Affidavit") of the initial owner or the proposed transferee in the form attached hereto as Exhibit I.

(iii) Each Person holding or acquiring any Ownership Interest in a Residual Certificate shall agree (A) to obtain a Transfer Affidavit from any other Person to whom such Person attempts to Transfer its Ownership Interest in a Residual Certificate, (B) to obtain a Transfer Affidavit from any Person for whom such Person is acting as nominee, trustee or agent in connection with any Transfer of a Residual Certificate and (C) not to Transfer its Ownership Interest in a Residual Certificate or to cause the Transfer of an Ownership Interest in a Residual Certificate to any other Person if it has actual knowledge that such Person is not a Permitted Transferee.

(iv) Any attempted or purported Transfer of any Ownership Interest in a Residual Certificate in violation of the provisions of this Section 5.02(c) shall be absolutely null and void and shall vest no rights in the purported Transferee. If any purported

transferee shall become a Holder of a Residual Certificate in
violation of the provisions of this Section 5.02(c), then the last
preceding Permitted Transferee shall be restored to all rights as
Holder thereof retroactive to the date of registration of Transfer
of such Residual Certificate. The Trustee shall be under no
liability to any Person for any registration of Transfer of a
Residual Certificate that is in fact not permitted by Section
5.02(b) and this Section 5.02(c) or for making any payments due on
such Certificate to the Holder thereof or taking any other action
with respect to such Holder under the provisions of this Agreement
so long as the Transfer was registered after receipt of the
Transfer Affidavit, Transferor Certificate and either the Rule
144A Letter or the Investment Letter. The Trustee shall be
entitled but not obligated to recover from any Holder of a
Residual Certificate that was in fact not a Permitted Transferee
at the time it became a Holder or, at such subsequent time as it
became other than a Permitted Transferee, all payments made on
such Residual Certificate at and after either such time. Any such
payments so recovered by the Trustee shall be paid and delivered
by the Trustee to the last preceding Permitted Transferee of such
Certificate.

    (v) The Depositor shall use its best efforts to make
available, upon receipt of written request from the Trustee, all
information necessary to compute any tax imposed

<div align="center">I-6</div>

&lt;PAGE&gt;


under Section 860E(e) of the Code as a result of a Transfer of an
Ownership Interest in a Residual Certificate to any Holder who is
not a Permitted Transferee.

<div align="center">I-7</div>

&lt;PAGE&gt;


<div align="center">EXHIBIT J</div>

<div align="center">FORM OF TRANSFEROR CERTIFICATE</div>

<div align="right">_____, 200___</div>


IndyMac MBS, Inc.
155 North Lake Avenue, 7th Floor
Pasadena, CA  91101
Attention:  Secondary Marketing, Transaction Management

```
DB Services Tennessee
648 Grassmere Park Road
Nashville, TN 37211
Attention:  Transfer Unit IN06Z3
```

```
            Re:  IndyMac MBS, Inc.
                 Mortgage Pass-Through Certificates, Series 200 -, Class
                 --------------------------------------------------------
```

Ladies and Gentlemen:

        In connection with our disposition of the above Certificates we
certify that (a) we understand that the Certificates have not been registered
under the Securities Act of 1933, as amended (the "Act"), and are being
disposed by us in a transaction that is exempt from the registration
requirements of the Act, (b) we have not offered or sold any Certificates to,
or solicited offers to buy any Certificates from, any person, or otherwise
approached or negotiated with any person with respect thereto, in a manner
that would be deemed, or taken any other action which would result in, a
violation of Section 5 of the Act and (c) to the extent we are disposing of a
Class R Certificate, we have no knowledge the Transferee is not a Permitted
Transferee.


                            Very truly yours,



                            _____
                            Print Name of Transferor



                            By:_____
                                Authorized Officer









                                    J-1
  <PAGE>


                              EXHIBIT K

                 FORM OF INVESTMENT LETTER (NON-RULE 144A)


                                        _____, 200__


  IndyMac MBS, Inc.
  155 North Lake Avenue, 7th Floor
  Pasadena, CA  91101
  Attention:  Secondary Marketing, Transaction Management
```

DB Services Tennessee
648 Grassmere Park Road
Nashville, TN 37211
Attention:  Transfer Unit IN06Z3

                Re:  IndyMac MBS, Inc.
                     Mortgage Pass-Through Certificates, Series 200 -, Class
                     -------------------------------------------------------

Ladies and Gentlemen:

                In connection with our acquisition of the above Certificates we
certify that (a) we understand that the Certificates are not being registered
under the Securities Act of 1933, as amended (the "Act"), or any state
securities laws and are being transferred to us in a transaction that is
exempt from the registration requirements of the Act and any such laws, (b) we
are an "accredited investor," as defined in Regulation D under the Act, and
have such knowledge and experience in financial and business matters that we
are capable of evaluating the merits and risks of investments in the
Certificates, (c) we have had the opportunity to ask questions of and receive
answers from the Depositor concerning the purchase of the Certificates and all
matters relating thereto or any additional information deemed necessary to our
decision to purchase the Certificates, (d) either (i) we are not an employee
benefit plan that is subject to the Employee Retirement Income Security Act of
1974, as amended, or a plan or arrangement that is subject to Section 4975 of
the Internal Revenue Code of 1986, as amended, nor are we acting on behalf of
any such plan or arrangement or using the assets of any such plan or
arrangement to effect such acquisition or (ii) if the Certificates have been
the subject of an ERISA-Qualifying Underwriting, we are purchasing the
Certificates with funds contained in an "insurance company general account"
(as such term is defined in Section V(e) of Prohibited Transaction Class
Exemption 95-60 ("PTCE 95-60")) and the purchase and holding of such
Certificates are covered under Sections I and III of PTCE 95-60, (e) we are
acquiring the Certificates for investment for our own account and not with a
view to any distribution of such Certificates (but without prejudice to our
right at all times to sell or otherwise dispose of the Certificates in
accordance with clause (g) below), (f) we have not offered or sold any
Certificates to, or solicited offers to buy any Certificates from, any person,
or otherwise approached or negotiated with any person with respect thereto, or
taken any other action which would result in a violation of Section 5 of the
Act, (g) we will not sell, transfer or otherwise dispose of any Certificates
unless (1) such sale, transfer or other disposition is made pursuant to an
effective registration statement under the Act or is exempt from such
registration requirements, and if requested, we will at our expense provide an
opinion of counsel satisfactory to the addressees of this Certificate that
such sale, transfer or other disposition may be made pursuant to an exemption
from the Act, (2) the purchaser or transferee of such Certificate has executed
and delivered to you a certificate to substantially the same effect as this
certificate, and (3) the purchaser or transferee has otherwise complied with
any conditions for transfer set forth in the Pooling and

                                    K-1

<PAGE>


Servicing Agreement and (h) if we are a corporation purchasing the
Certificates in the State of California, we have a net worth of at least
$14,000,000 according to our most recent audited financial statements.



                                    Very truly yours,

```
                                        _____
                                        Print Name of Transferee


                                   By: _____
                                             Authorized Officer
```

K-2

`<PAGE>`

EXHIBIT L

FORM OF RULE 144A LETTER

_____, 200__

```
IndyMac MBS, Inc.
155 North Lake Avenue, 7th Floor
Pasadena, CA  91101
Attention:  Secondary Marketing, Transaction Management

DB Services Tennessee
648 Grassmere Park Road
Nashville, TN 37211
Attention:  Transfer Unit IN06Z3
```

> Re:   IndyMac MBS, Inc.
>       Mortgage Pass-Through Certificates, Series 200 -, Class
>       --------------------------------------------------------

Ladies and Gentlemen:

In connection with our acquisition of the above Certificates we certify that (a) we understand that the Certificates are not being registered under the Securities Act of 1933, as amended (the "Act"), or any state securities laws and are being transferred to us in a transaction that is exempt from the registration requirements of the Act and any such laws, (b) we have such knowledge and experience in financial and business matters that we are capable of evaluating the merits and risks of investments in the Certificates, (c) we have had the opportunity to ask questions of and receive answers from the Depositor concerning the purchase of the Certificates and all matters relating thereto or any additional information deemed necessary to our decision to purchase the Certificates, (d) either (i) we are not an employee benefit plan that is subject to the Employee Retirement Income Security Act of 1974, as amended, or a plan or arrangement that is subject to Section 4975 of the Internal Revenue Code of 1986, as amended, nor are we acting on behalf of any such plan or arrangement or using the assets of any such plan or arrangement to effect such acquisition, or (ii) if the Certificates have been the subject of an ERISA-Qualifying Underwriting, we are purchasing the Certificates with funds contained in an "insurance company general account" (as defined in Section V(e) of Prohibited Transaction Class Exemption 95-60 ("PTCE 95-60")) and our purchase and holding of the Certificates satisfy the

requirements for exemptive relief under Sections I and III of PTCE 95-60, (e)
we have not, nor has anyone acting on our behalf offered, transferred,
pledged, sold or otherwise disposed of the Certificates, any interest in the
Certificates or any other similar security to, or solicited any offer to buy
or accept a transfer, pledge or other disposition of the Certificates, any
interest in the Certificates or any other similar security from, or otherwise
approached or negotiated with respect to the Certificates, any interest in the
Certificates or any other similar security with, any person in any manner, or
made any general solicitation by means of general advertising or in any other
manner, or taken any other action, that would constitute a distribution of the
Certificates under the Act or that would render the disposition of the
Certificates a violation of Section 5 of the Act or require registration
pursuant thereto, nor will act, nor has authorized or will authorize any
person to act, in such manner with respect to the Certificates, (f) we are a
"qualified institutional buyer" as that term is defined in Rule 144A under the
Act ("Rule 144A") and have completed either of the forms of certification to
that effect attached hereto as Annex 1 or Annex 2, (g) we are aware that the
sale to us is being made in reliance on Rule 144A, (h) we are acquiring the
Certificates for our own account or for resale pursuant to Rule 144A and
further, understand that such Certificates


                                    L-1

<PAGE>


may be resold, pledged or transferred only (A) to a person reasonably believed
to be a qualified institutional buyer that purchases for its own account or
for the account of a qualified institutional buyer to whom notice is given
that the resale, pledge or transfer is being made in reliance on Rule 144A, or
(B) pursuant to another exemption from registration under the Act and (i) if
we are a corporation purchasing the Certificates in the State of California,
we have a net worth of at least $14,000,000 according to our most recent
audited financial statements.



                              Very truly yours,


                              _____
                              Print Name of Transferee


                              By:_____
                                   Authorized Officer




                                    L-2

<PAGE>


                          ANNEX 1 TO EXHIBIT L

QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A
--------------------------------------------------------

[For Transferees Other Than Registered Investment Companies]

          The undersigned (the "Buyer") hereby certifies as follows to the
parties listed in the Rule 144A Transferee Certificate to which this
certification relates with respect to the Certificates described therein:

          1. As indicated below, the undersigned is the President, Chief
Financial Officer, Senior Vice President or other executive officer of the
Buyer.

          2. In connection with purchases by the Buyer, the Buyer is a
"qualified institutional buyer" as that term is defined in Rule 144A under the
Securities Act of 1933, as amended ("Rule 144A") because (i) the Buyer owned
and/or invested on a discretionary basis $ (1) in securities (except for the
excluded securities referred to below) as of the end of the Buyer's most
recent fiscal year (such amount being calculated in accordance with Rule 144A
and (ii) the Buyer satisfies the criteria in the category marked below.

               ____ Corporation, etc. The Buyer is a corporation (other than
          a bank, savings and loan association or similar institution),
          Massachusetts or similar business trust, partnership, or
          charitable organization described in Section 501(c)(3) of the
          Internal Revenue Code of 1986, as amended.

               ____ Bank. The Buyer (a) is a national bank or banking
          institution organized under the laws of any State, territory or
          the District of Columbia, the business of which is substantially
          confined to banking and is supervised by the State or territorial
          banking commission or similar official or is a foreign bank or
          equivalent institution, and (b) has an audited net worth of at
          least $25,000,000 as demonstrated in its latest annual financial
          statements, a copy of which is attached hereto.

               ____ Savings and Loan. The Buyer (a) is a savings and loan
          association, building and loan association, cooperative bank,
          homestead association or similar institution, which is supervised
          and examined by a State or Federal authority having supervision
          over any such institutions or is a foreign savings and loan
          association or equivalent institution and (b) has an audited net
          worth of at least $25,000,000 as demonstrated in its latest annual
          financial statements, a copy of which is attached hereto.

               ____ Broker-dealer. The Buyer is a dealer registered pursuant
          to Section 15 of the Securities Exchange Act of 1934.

               ____ Insurance Company. The Buyer is an insurance company
          whose primary and predominant business activity is the writing of
          insurance or the reinsuring of risks underwritten by insurance
          companies and which is subject to supervision by the insurance
          commissioner or a similar official or agency of a State, territory
          or the District of Columbia.

-------------------
(1) Buyer must own and/or invest on a discretionary basis at least
    $100,000,000 in securities unless Buyer is a dealer, and, in that case,
    Buyer must own and/or invest on a discretionary basis at least $10,000,000
    in securities.

                                    L-3

<PAGE>

_____ State or Local Plan. The Buyer is a plan established and maintained by a State, its political subdivisions, or any agency or instrumentality of the State or its political subdivisions, for the benefit of its employees.

_____ ERISA Plan. The Buyer is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974.

_____ Investment Advisor. The Buyer is an investment advisor registered under the Investment Advisors Act of 1940.

_____ Small Business Investment Company. Buyer is a small business investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

_____ Business Development Company. Buyer is a business development company as defined in Section 202(a)(22) of the Investment Advisors Act of 1940.

3. The term "securities" as used herein does not include (i) securities of issuers that are affiliated with the Buyer, (ii) securities that are part of an unsold allotment to or subscription by the Buyer, if the Buyer is a dealer, (iii) securities issued or guaranteed by the U.S. or any instrumentality thereof, (iv) bank deposit notes and certificates of deposit, (v) loan participations, (vi) repurchase agreements, (vii) securities owned but subject to a repurchase agreement and (viii) currency, interest rate and commodity swaps.

4. For purposes of determining the aggregate amount of securities owned and/or invested on a discretionary basis by the Buyer, the Buyer used the cost of such securities to the Buyer and did not include any of the securities referred to in the preceding paragraph, except (i) where the Buyer reports its securities holdings in its financial statements on the basis of their market value, and (ii) no current information with respect to the cost of those securities has been published. If clause (ii) in the preceding sentence applies, the securities may be valued at market. Further, in determining such aggregate amount, the Buyer may have included securities owned by subsidiaries of the Buyer, but only if such subsidiaries are consolidated with the Buyer in its financial statements prepared in accordance with generally accepted accounting principles and if the investments of such subsidiaries are managed under the Buyer's direction. However, such securities were not included if the Buyer is a majority-owned, consolidated subsidiary of another enterprise and the Buyer is not itself a reporting company under the Securities Exchange Act of 1934, as amended.

5. The Buyer acknowledges that it is familiar with Rule 144A and understands that the seller to it and other parties to the Certificates are relying and will continue to rely on the statements made herein because one or more sales to the Buyer may be in reliance on Rule 144A.

L-4

<PAGE>

6. Until the date of purchase of the Rule 144A Securities, the

Buyer will notify each of the parties to which this certification is made of
any changes in the information and conclusions herein. Until such notice is
given, the Buyer's purchase of the Certificates will constitute a
reaffirmation of this certification as of the date of such purchase. In
addition, if the Buyer is a bank or savings and loan is provided above, the
Buyer agrees that it will furnish to such parties updated annual financial
statements promptly after they become available.


_____
Print Name of Buyer



By:_____
       Name:
       Title:



_____
Date:








                              L-5
<PAGE>


                    ANNEX 2 TO EXHIBIT L

          QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A
          --------------------------------------------------------

          [For Transferees That are Registered Investment Companies]

          The undersigned (the "Buyer") hereby certifies as follows to the
parties listed in the Rule 144A Transferee Certificate to which this
certification relates with respect to the Certificates described therein:

          1. As indicated below, the undersigned is the President, Chief
Financial Officer or Senior Vice President of the Buyer or, if the Buyer is a
"qualified institutional buyer" as that term is defined in Rule 144A under the
Securities Act of 1933, as amended ("Rule 144A") because Buyer is part of a
Family of Investment Companies (as defined below), is such an officer of the
Adviser.

          2. In connection with purchases by Buyer, the Buyer is a
"qualified institutional buyer" as defined in SEC Rule 144A because (i) the
Buyer is an investment company registered under the Investment Company Act of

1940, as amended and (ii) as marked below, the Buyer alone, or the Buyer's Family of Investment Companies, owned at least $100,000,000 in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year. For purposes of determining the amount of securities owned by the Buyer or the Buyer's Family of Investment Companies, the cost of such securities was used, except (i) where the Buyer or the Buyer's Family of Investment Companies reports its securities holdings in its financial statements on the basis of their market value, and (ii) no current information with respect to the cost of those securities has been published. If clause (ii) in the preceding sentence applies, the securities may be valued at market.

____ The Buyer owned $  in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

____ The Buyer is part of a Family of Investment Companies which owned in the aggregate $  in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

3. The term "Family of Investment Companies" as used herein means two or more registered investment companies (or series thereof) that have the same investment adviser or investment advisers that are affiliated (by virtue of being majority owned subsidiaries of the same parent or because one investment adviser is a majority owned subsidiary of the other).

4. The term "securities" as used herein does not include (i) securities of issuers that are affiliated with the Buyer or are part of the Buyer's Family of Investment Companies, (ii) securities issued or guaranteed by the U.S. or any instrumentality thereof, (iii) bank deposit notes and certificates of deposit, (iv) loan participations, (v) repurchase agreements, (vi) securities owned but subject to a repurchase agreement and (vii) currency, interest rate and commodity swaps.

5. The Buyer is familiar with Rule 144A and understands that the parties listed in the Rule 144A Transferee Certificate to which this certification relates are relying and will continue to rely on the statements made herein because one or more sales to the Buyer will be in reliance on Rule 144A. In addition, the Buyer will only purchase for the Buyer's own account.

L-6

<PAGE>

6. Until the date of purchase of the Certificates, the undersigned will notify the parties listed in the Rule 144A Transferee Certificate to which this certification relates of any changes in the information and conclusions herein. Until such notice is given, the Buyer's purchase of the Certificates will constitute a reaffirmation of this certification by the undersigned as of the date of such purchase.

_____
Print Name of Buyer

By: _____
                        Name:
                        Title:


                        _____
                        Date:


                              L-7

<PAGE>

                        EXHIBIT M

                   REQUEST FOR RELEASE
                      (for Trustee)

                    IndyMac MBS, Inc.
              Mortgage Pass-Through Certificates
                      Series 200_-_

Loan Information
----------------

        Name of Mortgagor:

        Servicer
        Loan No.:                _____

Trustee
-------

        Name:                    _____

        Address:                 _____

                                 _____


Trustee
Mortgage File No.:

        The undersigned Servicer hereby acknowledges that it has received from
Deutsche Bank National Trust Company, as Trustee for the Holders of Mortgage
Pass-Through Certificates, of the above-referenced Series, the documents
referred to below (the "Documents"). All capitalized terms not otherwise
defined in this Request for Release shall have the meanings given them in the
Pooling and Servicing Agreement (the "Pooling and Servicing Agreement")

relating to the above-referenced Series among the Trustee, IndyMac Bank, F.S.B., as Seller and Servicer and IndyMac MBS, Inc., as Depositor.

( )     Mortgage Note dated _____, 20_, in the original principal sum of $_____, made by _____. payable to, or endorsed to the order of, the Trustee.

( )     Mortgage recorded on _____ as instrument no. _____ in the County Recorder's Office of the County of _____, State of _____ in book/reel/docket _____ of official records at page/image _____.

( )     Deed of Trust recorded on _____ as instrument no. _____ in the County Recorder's Office of the County of _____, State of _____ in book/reel/docket _____ of official records at page/image _____.

( )     Assignment of Mortgage or Deed of Trust to the Trustee, recorded on _____ as instrument no. _____ in the County Recorder's Office of the County of _____, State of _____ in book/reel/docket _____ of official records at page/image _____.

( )     Other documents, including any amendments, assignments or other assumptions of the Mortgage Note or Mortgage.


                              M-1
<PAGE>

        The undersigned Servicer hereby acknowledges and agrees as follows:

        (1) The Servicer shall hold and retain possession of the Documents in trust for the benefit of the Trustee, solely for the purposes provided in the Agreement.

        (2) The Servicer shall not cause or knowingly permit the Documents to become subject to, or encumbered by, any claim, liens, security interest, charges, writs of attachment or other impositions nor shall the Servicer assert or seek to assert any claims or rights of setoff to or against the Documents or any proceeds thereof.

        (3) The Servicer shall return each and every Document previously requested from the Mortgage File to the Trustee when the need therefor no longer exists, unless the Mortgage Loan relating to the Documents has been liquidated and the proceeds thereof have been remitted to the Certificate Account and except as expressly provided in the Agreement.

        (4) The Documents and any proceeds thereof, including any proceeds of proceeds, coming into the possession or control of the Servicer shall at all times be earmarked for the account of the Trustee, and the Servicer shall keep the Documents and any proceeds separate and distinct from all other property in the Servicer's possession, custody or control.


                        INDYMAC BANK, F.S.B.


                   By: _____
                       Name: _____

Title:

Date:                    , 20

M-2

<PAGE>

EXHIBIT N

REQUEST FOR RELEASE OF DOCUMENTS

To:   Deutsche Bank National Trust Company

Attn: Mortgage Custody Services

Re:   The Pooling and Servicing Agreement dated December 1, 2006 among
      IndyMac Bank, F.S.B. as Servicer, Inc, IndyMac MBS, Inc. and Deutsche
      Bank National Trust Company, as Trustee
      ------------------------------------------------------------

Ladies and Gentlemen:

      In connection with the administration of the Mortgage Loans held by you
as Trustee for IndyMac MBS, Inc., we request the release of the Mortgage Loan
File for the Mortgage Loan(s) described below, for the reason indicated.

      FT Account #:      Pool #:

Mortgagor's Name, Address and Zip Code:
----------------------------------------

Mortgage Loan Number:
---------------------

Reason for Requesting Documents (check one)
-------------------------------

_____1.    Mortgage Loan paid in full (IndyMac hereby certifies that all
            amounts have been received.)

_____2.    Mortgage Loan Liquidated (IndyMac hereby certifies that all
            proceeds of foreclosure, insurance, or other liquidation have
            been finally received.)

_____3.    Mortgage Loan in Foreclosure.

_____4.    Other (explain): _____

      If item 1 or 2 above is checked, and if all or part of the Mortgage File
was previously released to us, please release to us our previous receipt on

file with you, as well as an additional documents in your possession relating
to the above-specified Mortgage Loan. If item 3 or 4 is checked, upon return
of all of the above documents to you as Trustee, please acknowledge your
receipt by signing in the space indicated below, and returning this form.

<div align="center">N-1</div>

<PAGE>

INDYMAC BANK, F.S.B.
888 East Walnut Street
Pasadena, California  91101-7211

By:_____
Name:_____
Title:_____
Date:_____

TRUSTEE CONSENT TO RELEASE AND
ACKNOWLEDGEMENT OF RECEIPT

By:_____
Name:_____
Title:_____
Date:_____

<div align="center">N-2</div>

<PAGE>

<div align="center">EXHIBIT O
---------</div>

[Reserved]
----------

<div align="center">O-1</div>

<PAGE>

```
                        Exhibit P
                [On File with the Trustee]
```

```
                          P-1-1
<PAGE>
```

```
                        EXHIBIT Q
                        ---------

                       [Reserved]
```

```
                          Q-1
<PAGE>
```

```
                        EXHIBIT R

               FORM OF PERFORMANCE CERTIFICATION
                         (Trustee)

    Re:    The Pooling and Servicing Agreement dated as of
           December 1, 2006 (the "Pooling and Servicing
           Agreement") among IndyMac MBS, Inc., as Depositor,
           IndyMac Bank, F.S.B., as Seller and Servicer, and the
           undersigned, as Trustee (the "Trustee")


    I, _____, the _____ of the
Trustee, certify to the Depositor and the Servicer, and their officers, with
the knowledge and intent that they will rely upon this certification, that:

        I have reviewed the report on assessment of the Trustee's
    compliance with the servicing criteria set forth in Item 1122(d) of
    Regulation AB (the "Servicing Criteria"), provided in accordance with
    Rules 13a-18 and 15d-18 under Securities Exchange Act of 1934, as
    amended (the "Exchange Act") and Item 1122 of Regulation AB (the
    "Servicing Assessment"), the registered public accounting firm's
```

attestation report provided in accordance with Rules 13a-18 and 15d-18 under the Exchange Act and Section 1122(b) of Regulation AB (the "Attestation Report"), all reports on Form 10-D containing statements to certificateholders filed in respect of the period included in the year covered by the annual report of the Trust Fund (collectively, the "Distribution Date Statements");

(a) Assuming the accuracy and completeness of the information delivered to the Trustee by the Servicer as provided in the Pooling and Servicing Agreement and subject to paragraph (iv) below, to its knowledge the distribution information determined by the Trustee and set forth in the Distribution Date Statements contained in all Form 10-D's included in the year covered by the annual report of such Trust on Form 10-K for the calendar year 200[ ], is complete and does not contain any material misstatement of fact as of the last day of the period covered by such annual report;

(b) Based solely on the information delivered to the Trustee by the Servicer as provided in the Pooling and Servicing Agreement, the distribution information required under the Pooling and Servicing Agreement to be contained in the Trust Fund's Distribution Date Statements, is included in such Distribution Date Statements;

(c) The Trustee is not certifying as to the accuracy, completeness or correctness of the information which it received from the Servicer and did not independently verify or confirm the accuracy, completeness or correctness of the information provided by the Servicer;

(d) I am responsible for reviewing the activities performed by the Trustee as a person "performing a servicing function" under the Pooling and Servicing Agreement, and based on my knowledge and the compliance review conducted in preparing the Servicing Assessment and except as disclosed in the Servicing Assessment or the Attestation Report, the Trustee has fulfilled its obligations under the Pooling and Servicing Agreement; and

R-2-1

<PAGE>

(e) The Servicing Assessment and Attestation Report required to be provided by the Trustee and by Subcontractor, if any, pursuant to the Pooling and Servicing Agreement, have been provided to the Servicer and the Depositor. Any material instances of noncompliance described in such reports have been disclosed to the Servicer and the Depositor. Any material instance of noncompliance with the Servicing Criteria has been disclosed in such reports.

Date: _____

By: _____
           Name:
           Title:

R-2-2

<PAGE>

EXHIBIT S

FORM OF SERVICING CRITERIA TO BE ADDRESSED IN
ASSESSMENT OF COMPLIANCE STATEMENT

Where there are multiple checks for criteria the attesting party will identify
in their management assertion that they are attesting only to the portion of
the distribution chain they are responsible for in the related transaction
agreements.

<TABLE>
<CAPTION>

| Trustee | Reg AB<br>Reference<br>Notes | Servicing Criteria | Servicer | |
|---------|------------------------------|--------------------|----------|---|
| <C> | <S>　　　<C> | <C> | <C> | |
| | 1122(d)(1)(i) | Policies and procedures are instituted to monitor any performance or other triggers and events of default in accordance with the transaction agreements. | X | X |
| | 1122(d)(1)(ii) | If any material servicing activities are outsourced to third parties, policies and procedures are instituted to monitor the third party's performance and compliance with such servicing activities. | X | X |
| NA | 1122(d)(1)(iii) | Any requirements in the transaction agreements to maintain a back-up servicer for the Pool Assets are maintained. | | |
| | 1122(d)(1)(iv) | A fidelity bond and errors and omissions policy is in effect on the party participating in the servicing function throughout the reporting period in the amount of coverage required by and otherwise | X | |

```
                              in accordance with the terms of
                              the transaction agreements.
        ---------------------------------------------------------------
-----------------------

</TABLE>




                                          S-1
<PAGE>


<TABLE>
<CAPTION>

        ---------------------------------------------------------------
-----------------------
                Reg AB                                    Primary
                Reference                                 Servicer
                        Notes      Servicing Criteria
Trustee
        ---------------------------------------------------------------
-----------------------
---------------------
        <S>                        <C>                     <C>        <C>
<C>
                1122(d)(2)(i)      Payments on pool assets are    X        X
                                   deposited into the appropriate
                                   custodial bank accounts and
                                   related bank clearing accounts no
                                   more than two business days
                                   following receipt, or such other
                                   number of days specified in the
                                   transaction agreements.
        ---------------------------------------------------------------
---------------------
                1122(d)(2)(ii)     Disbursements made via wire    X        X
                                   transfer on behalf of an obligor
                                   or to an investor are made only by
                                   authorized personnel.
        ---------------------------------------------------------------
---------------------
                1122(d)(2)(iii)    Advances of funds or guarantees   X
                                   regarding collections, cash flows
                                   or distributions, and any interest
                                   or other fees charged for such
                                   advances, are made, reviewed and
                                   approved as specified in the
                                   transaction agreements.
        ---------------------------------------------------------------
---------------------
                1122(d)(2)(iv)     The related accounts for the   X        X
                                   transaction, such as cash reserve
                                   accounts or accounts established
                                   as a form of over
                                   collateralization, are separately
                                   maintained (e.g., with respect to
```

```
                                    commingling of cash) as set forth
                                    in the transaction agreements.
------------------------
-----------------------
      1122(d)(2)(v)        Each custodial account is              X              X
                           maintained at a federally insured
                           depository institution as set
                           forth in the transaction
                           agreements. For purposes of this
                           criterion, "federally insured
                           depository institution" with
                           respect to a foreign financial
                           institution means a foreign
                           financial institution that meets
                           the requirements of Rule
                           13k-1(b)(1) of the Securities
                           Exchange Act.
------------------------  -------------------------------------------------------
-----------------------
      1122(d)(2)(vi)       Unissued checks are safeguarded so as to      X
                           prevent unauthorized access.
------------------------  -------------------------------------------------------
-----------------------
      1122(d)(2)(vii)      Reconciliations are prepared on a       X              X
                           monthly basis for all asset-backed
                           securities related bank accounts,
                           including custodial accounts and
                           related bank clearing accounts.
                           These reconciliations are (A) mathematically
                           accurate; (B) prepared within 30 calendar days
                           after the bank statement cutoff date, or such
                           other number of days specified in the
                           transaction agreements; (C) reviewed and
                           approved by someone other than the person who
                           prepared the reconciliation; and (D) contain
                           explanations for reconciling items. These
                           reconciling items are resolved within 90
                           calendar days of their original
                           identification, or such other number of days
                           specified in the transaction agreements.
------------------------  -------------------------------------------------------
-----------------------

</TABLE>




                                    S-2

<PAGE>


<TABLE>
<CAPTION>

          -------------------------------------------------------------------
-----------------------
          Reg AB
          Reference              Servicing Criteria            Servicer      Trustee
Notes     -------------------------------------------------------------------

          -----------------------
          <S>                    <C>                            <C>          <C>
<C>
```

| | | | |
|---|---|---|---|
| 1122(d)(3)(i) | Reports to investors, including those to be filed with the Commission, are maintained in accordance with the transaction agreements and applicable Commission requirements. Specifically, such reports (A) are prepared in accordance with timeframes and other terms set forth in the transaction agreements; (B) provide information calculated in accordance with the terms specified in the transaction agreements; (C) are filed with the Commission as required by its rules and regulations; and (D) agree with investors' or the trustee's records as to the total unpaid principal balance and number of Pool Assets serviced by the Servicer. | X | X |
| 1122(d)(3)(ii) | Amounts due to investors are allocated and remitted in accordance with timeframes, distribution priority and other terms set forth in the transaction agreements. | X | X |
| 1122(d)(3)(iii) | Disbursements made to an investor are posted within two business days to the Servicer's investor records, or such other number of days specified in the transaction agreements. | X | X |
| 1122(d)(3)(iv) | Amounts remitted to investors per the investor reports agree with cancelled checks, or other form of payment, or custodial bank statements. | X | X |

</TABLE>

S-3

<PAGE>

EXHIBIT T

[FORM OF] LIST OF ITEM 1119 PARTIES

ASSET BACKED CERTIFICATES
Series 200_-__

[Date]


Party                          Contact Information
-----                          -------------------








                              T-1

<PAGE>


                         EXHIBIT U

           [FORM OF] SARBANES-OXLEY CERTIFICATION
                  (Replacement of Servicer)


     Re:   IndyMac INDX Mortgage Loan Trust 2006-AR41


     The undersigned Servicer hereby certifies to the Depositor and its
officers, directors and Affiliates (collectively, the "Certification Parties")
as follows, with the knowledge and intent that the Certification Parties will
rely on this Certification in connection with the certification concerning the
Trust Fund to be signed by an officer of the Depositor and submitted to the
Securities and Exchange Commission pursuant to the Sarbanes-Oxley Act of 2002:

     1. I have reviewed the servicer compliance statement of the Servicer
provided in accordance with Item 1123 of Regulation AB (the "Compliance
Statement"), the report on assessment of the Servicer's compliance with the
servicing criteria set forth in Item 1122(d) of Regulation AB (the "Servicing
Criteria"), provided in accordance with Rules 13a-18 and 15d-18 under
Securities Exchange Act of 1934, as amended (the "Exchange Act") and Item 1122
of Regulation AB (the "Servicing Assessment"), the registered public
accounting firm's attestation report provided in accordance with Rules 13a-18
and 15d-18 under the Exchange Act and Section 1122(b) of Regulation AB (the
"Attestation Report"), and all servicing reports, officer's certificates and
other information relating to the servicing of the Mortgage Loans by the
Servicer during 200[ ] that were delivered by the Servicer to the Trustee
pursuant to the Agreement (collectively, the "Servicing Information");

     2. Based on my knowledge, the Servicing Information, taken as a whole,
does not contain any untrue statement of a material fact or omit to state a
material fact necessary to make the statements made, in the light of the
circumstances under which such statements were made, not misleading with
respect to the period of time covered by the Servicing Information;

3. Based on my knowledge, all of the Servicing Information required to be provided by the Servicer under the Agreement has been provided to the Depositor or the Trustee, as applicable;

4. I am responsible for reviewing the activities performed by the Servicer as servicer under the Servicing Agreement (the "Pooling and Servicing Agreement") relating to the above-referenced Series, among IndyMac MBS, Inc., as Depositor, IndyMac Bank, F.S.B., as Seller and Servicer, and Deutsche Bank National Trust Company, as Trustee and based on my knowledge and the compliance review conducted in preparing the Compliance Statement and except as disclosed in the Compliance Statement, the Pooling and Servicing Assessment or the Attestation Report, the Servicer has fulfilled its obligations under the Agreement in all material respects; and

5. The Compliance Statement required to be delivered by the Servicer pursuant to the Pooling and Servicing Agreement, and the Servicing Assessment and Attestation Report required to be provided by the Servicer and by any Reporting Subcontractor pursuant to the Agreement, have been provided to the Depositor. Any material instances of noncompliance described in such reports have been

                                   U-1

<PAGE>


disclosed to the Depositor.  Any material instance of noncompliance with the Servicing Criteria has been disclosed in such reports.

                         [SERVICER]


                         By: _____
                         Name:
                         Title:
                         Date:    _____

                                   U-1


</TEXT>
</DOCUMENT>