**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:18-cv-00839<br><br><br><br><br><br><br><br><br><br><br>Judge Harry D. Leinenweber<br>Magistrate Judge Sidney I. Schenkier |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC.; and ALTISOURCE SOLUTIONS, INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT BY DEFENDANTS DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE, AND DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS TRUSTEE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

I.      BACKGROUND ......................................................................................................... 2

II.     PLAINTIFFS' CLAIMS FAIL BECAUSE THE TRUSTEES DO NOT
MAINTAIN OR MARKET THE REO PROPERTIES AT ISSUE .................................. 5

       A.     The Trustees Have Limited, Contractually Defined Duties .................................. 5

       B.     Servicers Are Not "Agents" of an RMBS Trustee .................................................. 7

       C.     The Conditional "Back-Up" Servicing Role Described in the Governing
Agreements Does Not Saddle the Trustees With Any Responsibility for
REO Properties ................................................................................................. 12

III.    THE 2016 HUD DECISION CONFIRMS THAT AS RMBS TRUSTEES, THE
TRUSTEES CANNOT BE RESPONSIBLE FOR ANY OF THE CONDUCT AT
ISSUE ...................................................................................................................... 13

IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS TO PROPERTIES TO
WHICH THE TRUSTEES DID NOT HOLD TITLE .................................................... 14

V.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS TO PROPERTIES FOR
WHICH THE AMENDED COMPLAINT LACKS SUFFICIENT
INFORMATION TO IDENTIFY THE APPLICABLE GOVERNING
AGREEMENTS ......................................................................................................... 15

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Deutsche Bank Nat. Trust Co.*,
  2013 WL 3320455 (S.D. Cal. July 1, 2013) ...................................................4, 10

*Bakal v. U.S. Bank N.A.*,
  15-cv-6976, 2018 WL 1726053 (S.D.N.Y. Apr. 2, 2018) ........................................6

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*,
  838 F.2d 66 (2d Cir. 1988)....................................................................................5

*Faith Assembly v. Titledge of N.Y. Abstract, LLC*,
  961 N.Y.S.2d 542 (N.Y. App. Div. 2013) ............................................................10

*Fixed Income Shares: Series M v. Citibank, N.A.*,
  69 N.Y.S.3d 288 (N.Y. App. Div. 2018) ................................................................5

*In re Amaranth Natural Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008).....................................................................7

*Johnson v. Fed. Home Loan Mortg. Corp.*,
  No. C12-1712 TSZ, 2013 WL 2445367 (W.D. Wash. June 5, 2013), *aff'd*, 793
  F.3d 1005 (9th Cir. 2015) ......................................................................................8

*Jones v. Aegis Wholesale Corp.*,
  No. 2:15-cv-01134-JAM-CKD, 2015 WL 9260837 (E.D. Cal. Dec. 18, 2015)........................8

*Kinda Lake Towing, L.P. v. Donat Insurance Services, LLC*,
  2016 WL 5339438 (N.D. Ill. Sept. 20, 2016) .....................................................7, 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................................14

*Magnini v. Centegra Health System*,
  34 N.E.3d 1115 (Ill. App. 2015) ......................................................................8, 10

*Nat'l Fair Hous. All. v. Bank of America, N.A.*,
  1:18-cv-01919-CCB, ECF No. 1 (D. Md. June 26, 2018) .....................................14

*Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n*,
  2018 WL 1411106 (N.D. Cal. Mar. 21, 2018)..................................................4, 14

*Peak Partners, LP v. Republic Bank*,
  191 F. App'x 118 (3d Cir. 2006) ............................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Spano v. V & J Nat'l Enterprises, LLC*,
    264 F. Supp. 3d 440 (W.D.N.Y.) ..................................................................................7, 9, 10

*STS Partners Fund, L.P. v. Deutsche Bank Securities, Inc.*,
    53 N.Y.S.3d 632 (N.Y. App. Div. 2017) ..................................................................................6

*Tobin v. Nationstar Mortgage Inc.*,
    No. 16-cv-00836, 2016 WL 1948786 (C.D. Cal. May 2, 2016) ...............................................8

*Wisconsin Central Ltd. v. TiEnergy, LLC*,
    894 F.3d 851 (7th Cir. 2018) ...................................................................................................7

*Wright v. Associated Ins. Cos. Inc.*,
    29 F.3d 1244 (7th Cir. 1994) ...................................................................................................4

**STATUTES**

Fair Empl. & Housing Act (FEHA) ..............................................................................................13

**REGULATIONS**

17 C.F.R. 229.1122(a)(1)..............................................................................................................11

## INTRODUCTION

The claims asserted in the first Amended Complaint[1] (ECF No. 58) concern alleged wrongdoing arising from the maintenance and sale of bank-owned properties (the "REO properties") held in RMBS trusts (the "Trusts"). Defendants Deutsche Bank National Trust Company[2] and Deutsche Bank Trust Company Americas serve as trustees (in such capacities, each a "Trustee," and collectively, the "Trustees") of certain of those Trusts. Plaintiffs do not allege that the Trustees themselves undertook any of the challenged conduct, which instead was performed by trust servicers Ocwen Loan Servicing, LLC ("Ocwen") and Altisource Solutions, Inc. ("Altisource," and collectively with Ocwen, the "Servicers").[3] Instead, Plaintiffs reassert what amounts to a strict liability theory against the Trustees by virtue of the Trustees holding bare legal title to the REO properties on behalf of the Trusts and Trust beneficiaries, a theory squarely rejected by the Court in an opinion that serves as the law of this case. Namely, the Court rejected Plaintiffs' contention that the Trustees "are stuck on the hook for FHA compliance" by virtue of the Trustees' status as title holders of the REO properties at issue. In an attempt to plead their way around this holding, Plaintiffs have added allegations in the Amended Complaint seeking to support their incorrect assertions that (1) the Servicers are agents of the Trustees, or (2) the Trustees are somehow responsible for servicing because of their alleged roles as "back-up" servicers. Plaintiffs miss the mark.

Even though the detailed contracts governing the Trusts do not designate a Servicer as an "agent" of any Trustee, Plaintiffs attempt to conjure such a relationship from provisions that show

---

[1] Citations herein to the "FAC" are to the first Amended Complaint.
[2] DBNTC was incorrectly named in this action as "Deutsche Bank National Trust."
[3] The Trustees refer to Ocwen and Altisource as "Servicers" with respect to these Trusts based on allegations in the Amended Complaint that these entities "acted as primary servicers for the Deutsche Bank REO properties during the period covered by this Complaint." FAC ¶ 64. This, and other allegations described below, are assumed true solely for the purposes of this motion.

the opposite: Servicers and Trustees are independent, arms-length service providers, and the Trustee does not select or appoint the Servicers. The new allegations leveled in the Amended Complaint show that the contracts dictate the terms of the Servicers' duties and performance and leave any gaps to the Servicer's own discretion in accordance with the "Servicing Standard." This standard requires the Servicers to service REO properties owned by the Trusts as they would service properties owned by themselves. Plaintiffs' own allegations make clear that the Servicers' actions with respect to the REO properties—which are the only actions relevant to Plaintiffs' claims—are governed by the Servicing Standard, and *not* the Trustees, eviscerating any suggestion the Trustees are somehow controlling the Servicers' conduct. Thus, Plaintiffs' conclusory assertion of an agency relationship are inconsistent with the factual allegations leveled in the Amended Complaint.

Plaintiffs' arguments concerning "back-up" servicing are similarly lacking and undercut by Plaintiffs' own factual allegations. As Plaintiffs allege, the role of "back-up" servicer is a contingent one: a "back-up" servicer does not take on any servicing duties unless a Servicer is first terminated. Because Plaintiffs currently allege that Ocwen and Altisource directly undertook the allegedly wrongful servicing actions, on the facts alleged, the contingent "back-up" servicing duties could not have attached to the Trustees with respect to the REO properties, because the Servicers were still performing their servicing roles. Plaintiffs have pled this legal theory into irrelevance.

Accordingly, for these reasons and the reasons stated in the contemporaneously filed Memorandum in Support of Defendants' Joint Motion to Dismiss the Amended Complaint, Plaintiffs' claims against the Trustees should be dismissed.

## I.     BACKGROUND

For the convenience of the Court, the Trustees provide the following brief background

information regarding the Trustees' roles and responsibilities with respect to the REO properties at issue. Where such information already was reflected in the Trustees' original motion to dismiss (ECF No. 33) or this Court's November 19, 2018 Memorandum Opinion and Order (ECF No. 54) ("Order"), the Trustees have cited or quoted it to limit duplicative briefing.

Plaintiffs base their claims on an examination of 1,141 properties alleged to be "owned" by the Trustees "after foreclosure" ("REO properties"). *See* FAC ¶¶ 3, 5; *id.* App'x A (listing the properties). As this Court stated, "[t]he REO properties at issue here all have mortgages which have been pooled together to form residential mortgage-backed securities ('RMBS'). Such securities are created when an investment bank purchases thousands of residential mortgages and then pools them together." Order at 11.

Plaintiffs do not allege that the Trustees engaged in the allegedly discriminatory property maintenance services at the heart of their claims. Rather, Plaintiffs allege that the Trustees "utilized Ocwen and/or Altisource to provide property maintenance services" for the properties at issue. FAC ¶ 35. Plaintiffs acknowledge that the Trustees—acting in their distinct legal capacity as RMBS trustees—have different roles and responsibilities with respect to these REO properties than Ocwen and Altisource. *See* FAC ¶¶ 54, 56 (alleging that "a trustee" and a "loan servicer" are different parties to an RMBS transaction that perform different functions).

RMBS trusts are governed by various pooling and servicing agreements ("PSAs"), indentures, trust agreements, and servicing agreements (collectively and with respect to the Trusts at issue, the "Governing Agreements"), which allocate responsibilities among the parties to those agreements. *See* ECF No. 33 at 8, n. 6; Order at 11. The Governing Agreements designate "a trustee to hold title to the real estate securing the RMBS," on the one hand, and they separately designate one or more "servicer[s] to preserve and manage the property," on the other. Order at

-3-

11.  "In this case, the Deutsche Bank Defendants are the PSA-designated trustees; Ocwen and Altisource are the servicers."  *Id.*

The PSA governing IndyMac INDX Mortgage Loan Trust 2006-AR41 ("AR41 Trust PSA"), which the Trustees cited in their original motion to dismiss and of which this Court took judicial notice of in its Order, is an example of a Governing Agreement with respect to the issues involved in this litigation.  *See* ECF No. 47-1, Ex. F (attaching a copy of the publicly available AR41 Trust PSA); Order at 14.[4]  The Trustees' limited duties and responsibilities set forth in the AR41 Trust PSA are representative of the types of duties and responsibilities of the Trustees in the Governing Agreements for the RMBS trusts identified as associated with the REO properties.  *See* Kliebard Decl. ¶¶ 8-11 (comparing the relevant provisions in the AR41 Trust PSA—discussed at length in the Court's Order and below—to identical or similar provisions in the governing agreements for the trusts that encompass the other properties at issue in Plaintiffs' Amended Complaint).  Crucially, those duties and responsibilities do ***not*** include the activities that form the basis of Plaintiffs' claims, *i.e.* maintaining and marketing for sale REO properties.

In dismissing Plaintiffs' claims in the Order, the Court rejected theories still relied on by Plaintiffs in the Amended Complaint.  Namely, the Court rejected Plaintiffs' contention that the Trustees "are stuck on the hook for FHA compliance" by virtue of the Trustees' status as title holders of the REO properties at issue.  Order at 12-13.  The Court was not prepared at that stage to dismiss Plaintiffs' claims as they relate to *all* Trusts without "a sufficient basis to hold that all

---

[4] Courts routinely take judicial notice of PSAs as publicly available records whose authenticity cannot reasonably be questioned.  *See, e.g., Alexander v. Deutsche Bank Nat. Trust Co.*, 2013 WL 3320455, at *3 (S.D. Cal. July 1, 2013) (taking judicial notice of a PSA available on the SEC's website).  Moreover, "documents attached to a motion to dismiss are considered part of the pleadings if they are referenced in the plaintiff's complaint and are central to his claim."  *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citation omitted).  The Governing Agreements are central to Plaintiffs' claims against the Trustees, as it is those contracts that assign these defendants to "serve in the capacity of a . . . trustee . . . related to REO Properties."  *See* FAC ¶ 54.

of the pertinent PSAs mimic that allocation." *Id.* at 17. However, these contract terms—as discussed at length in Section II, below—are standard in residential mortgage loan securitization contracts like the Governing Agreements. *See* Kliebard Decl. ¶¶ 3, 5-11. Plaintiffs have added no allegations in the Amended Complaint plausibly suggesting that the Trustees for some reason assumed responsibility for servicing REO properties. The Court also raised a question in the Order concerning the Trustees' alleged designation as "back-up" servicers, and whether that role could support any of Plaintiffs' legal theories. Order at 17. However, as explained in more detail below, Plaintiffs' attempts to bolster their allegations concerning "back-up" servicing in the Amended Complaint only demonstrate the irrelevance of any "back-up" servicing role.

## II. PLAINTIFFS' CLAIMS FAIL BECAUSE THE TRUSTEES DO NOT MAINTAIN OR MARKET THE REO PROPERTIES AT ISSUE

### A. The Trustees Have Limited, Contractually Defined Duties.

As observed by a number of courts, using the term "trustee" to describe the role of an indenture trustee or corporate trustee, such as an RMBS trustee, is inapt and can create confusion and misperceptions about the duties of an RMBS trustee's role. One court labeled a corporate trustee a "different legal animal" than an ordinary trustee. *Peak Partners, LP v. Republic Bank*, 191 F. App'x 118, 122 (3d Cir. 2006). As explained by the Second Circuit, in contrast to an ordinary trustee: "an indenture trustee is more like a stakeholder whose duties and obligations are *exclusively defined* in the terms of the indenture agreement." *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (emphasis added); *see also Fixed Income Shares: Series M v. Citibank, N.A.*, 69 N.Y.S.3d 288, 289 (N.Y. App. Div. 2018) (no implied duties could be read into PSA against the trustee); Order at 15-16 (discussing how "ordinary and indenture trustees are different" under applicable case law and HUD's recent determination).

In the Amended Complaint, Plaintiffs add the allegation that "[t]he Deutsche Bank

Defendants frequently serve in the capacity of non-indentured trustee under PSAs related to REO properties." FAC ¶ 54. The Amended Complaint does not explain how the structure of a securitization—whether a common law trust governed by a PSA or a statutory trust governed by an indenture—is relevant to Plaintiffs' claims or a trustee's duties. Regardless, both indentures and PSAs contain nearly identical limitations on trustee duties and responsibilities, and courts have repeatedly recognized that these limitations apply regardless of securitization structure. *See*, *e.g.*, *Bakal v. U.S. Bank N.A.*, 15-cv-6976, 2018 WL 1726053, at *11-12 (S.D.N.Y. Apr. 2, 2018) (no duties can be implied against RMBS trustee under trust governed by PSA); *STS Partners Fund, L.P. v. Deutsche Bank Securities, Inc.*, 53 N.Y.S.3d 632, 669-70 (N.Y. App. Div. 2017) (dismissing claims against indenture trustee).

Under the express terms of the Governing Agreements, the Trustees play no role in the day-to-day servicing of the mortgage loans within the Trusts. That role is specifically granted to the Servicers alone: the Governing Agreements charge the Servicers with "servic[ing] and administer[ing] the Mortgage Loans in accordance with this Agreement and the Servicing Standard" on "for and on behalf of Certificateholders." *See* AR41 Trust PSA § 3.01; *see* Order at 17 (acknowledging that this PSA "designates all property-maintenance responsibilities to the servicers alone"). While loans are performing, the Servicers are responsible for sending statements and correspondence, handling escrow and insurance payments, performing customer service, and collecting payments. *See* AR41 Trust PSA §§ 3.01-3.02. When loans become delinquent, the Servicers are responsible for notifying borrowers of their delinquencies, working with borrowers to cure defaults or modify loans, instituting and prosecuting foreclosure actions, and then repairing, as necessary, and selling foreclosed properties. *Id.* In the performance of its duties, a Servicer occasionally may require the cooperation of the Trustee, because the Trustee holds legal title to

the mortgage loans. *See* AR41 Trust PSA § 3.13. The Governing Agreements anticipate these situations by detailing the action that the Trustee is required to undertake. *See id.*

Consistent with this contractually specified breakdown of responsibilities, the Amended Complaint alleges that defendants Ocwen and Altisource are responsible for "property preservation and maintenance and other services for REO properties . . . ." FAC ¶ 3; *see also id.* ¶ 56. While Plaintiffs continue to assert in the Amended Complaint that the Trustees, as bare legal title holders, are liable for servicing actions taken with respect to the REO properties (FAC ¶ 60), in dismissing the Complaint, the Court already ruled that "property ownership is ***not*** a trump card in FHA suits; rather, when the alleged FHA malfeasant is not an agent of the owner, the owner may indeed escape liability." Order at 13 (emphasis added).

Plaintiffs vainly seek to amend their way around this Court's ruling in two ways: (1) by asserting that the Servicers are agents of the Trustees (*see* FAC ¶¶ 66-78); and (2) by alleging that the Trustees were "back-up" servicers (*see* FAC ¶¶ 79-83). Neither tactic survives scrutiny.

### B.    Servicers Are Not "Agents" of an RMBS Trustee.

The law is settled that a principal/agent relationship exists only where the principal has the right to control the manner and method in which the agent performs his work *and* the agent has the ability to subject the principal to personal liability. *See Kinda Lake Towing, L.P. v. Donat Insurance Services, LLC*, 2016 WL 5339438, at *5 (N.D. Ill. Sept. 20, 2016) (Leinenweber, J.; quotations omitted)); *see also Wisconsin Central Ltd. v. TiEnergy, LLC*, 894 F.3d 851, 858 (7th Cir. 2018) ("A hallmark of the principal/agent relationship is the principal's right to control the conduct of the agent." (citation omitted)); *accord Spano v. V & J Nat'l Enterprises, LLC*, 264 F.Supp.3d 440, 451 (W.D.N.Y.) (Under New York Law, "[e]ssential to the agency relationship is the notion that the agent acts subject to the principal's direction and control."); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 532 (S.D.N.Y. 2008) (principal-agent

relationship requires the principal's manifestation of intent to grant authority to the agent, agreement by the agent, and maintenance by principal of control over key aspects of the undertaking.).  In order for liability to attach, the alleged conduct must fall within the "scope of the agency."  *Magnini v. Centegra Health System,* 34 N.E.3d 1115, 1121 (Ill. App. 2015).

Fatal to Plaintiffs' claim, the FAC contains no well-pled facts suggesting that the Trustees have the right to control the manner and method of the Servicers' actions with respect to the REO properties.  *See Jones v. Aegis Wholesale Corp.*, No. 2:15-cv-01134-JAM-CKD, 2015 WL 9260837, at *2 (E.D. Cal. Dec. 18, 2015) (dismissing complaint for failure to allege facts showing trustee exercised control over loan servicer); *Tobin v. Nationstar Mortgage Inc.*, No. 16-cv-00836, 2016 WL 1948786 at * 11 (C.D. Cal. May 2, 2016); *cf. Johnson v. Fed. Home Loan Mortg. Corp.*, No. C12-1712 TSZ, 2013 WL 2445367, at *3–5 (W.D. Wash. June 5, 2013), aff'd, 793 F.3d 1005 (9th Cir. 2015) (granting loan purchaser's motion to dismiss complaint for failure to allege facts showing purchaser assumed an agency relationship with the servicer).

More specifically, the Governing Agreements are detailed contracts that set forth the rights and duties of the various parties and beneficiaries.  The Servicers and the Trustees are independent parties to those securitization agreements, each selected by a "sponsor" of the securitization transaction to perform separate and distinct roles within their respective core competencies.  *See* Section I, above; Order at 11.  Plaintiffs are unable to identify a single provision in the Governing Agreements designating a Servicer as a Trustee's agent for purposes of undertaking the Servicer's duties to manage, conserve, and dispose of REO Properties.  To the contrary, the Governing Agreements make clear that the Trustee does not control the Servicer with respect to REO maintenance, or any other mortgage loan servicing duty.  *See* Kliebard Decl. ¶¶ 8-11.  These terms are impossible to square with Plaintiffs' conclusory legal assertion that the Servicers serve as the

-8-

Trustees' agents. The manner in which the Servicers service a particular REO property is controlled not by the Trustees, but instead—as Plaintiffs themselves allege—by the contractual Servicing Standard, which requires the Servicer to maintain properties with the same degree of care as mortgage loans the Servicer services "for itself or others." FAC ¶ 68. The Trustees cannot "control the manner and method" in which the Servicers perform their work, *Kinda Lake Towing*, WL 5339438, at *5, if the manner and method is established by the Servicers' own conduct with respect to loans they service for their own accounts. Plaintiffs' theory of agency falls apart because it is bereft of supporting facts, and therefore Plaintiffs' claims are subject to dismissal. *See Spano*, 264 F.Supp.3d at 451 (on motion to dismiss, "[a] full showing of agency supported by an accepted theory of agency or contract law is required, and generalized allegations of affiliation are insufficient." (internal quotations omitted)).

Nonetheless, Plaintiffs attempt to cobble together a principal/agent relationship from various provisions in the AR41 Trust PSA. These cited provisions, however, only undercut Plaintiffs' conclusory assertion of agency because they do not grant the Trustee ***any*** control over the Servicer. *See* FAC ¶¶ 66-78. Indeed, numerous of the added allegations define *by contract*, rather than Trustee discretion, the interactions between the Trustee and the Servicer. *See* FAC ¶¶ 70-71, 75.

For starters, Plaintiffs' allegations that certain servicing actions are undertaken by the Servicers "for the benefit of," or "on behalf of," entities other than the Servicers themselves, only demonstrate the unremarkable point that the Servicers are service providers who are undertaking their roles for the benefit of the Trusts and their beneficiaries. *See*, *e.g.*, FAC ¶¶ 67-69. Because none of the cited sections suggests that the Trustees have *control* over work done on their "behalf," those sections do not suggest agency. *Kinda Lake Towing*, WL 5339438, at *5. Moreover, some

of Plaintiffs' cited sections provide that the Servicers are acting on behalf of, or for the benefit of, numerous parties *other than the Trustees*. *See* FAC ¶ 67 (Servicer can take "various actions" "on behalf of the Trustee, the Depositor, the Certificateholders, or any of them . . . ."); ¶ 68 (Servicers "actively market" REO properties "for the benefit of the ***Trust***" (emphasis added)). Even if working "on behalf of" an entity could be equated with control—which it cannot—these allegations undercut any suggestion that the Trustees themselves can exercise such control. *See Spano*, 264 F. Supp. 3d at 451 (work on behalf of alleged principal *and* control are necessary to allege principal agent relationship (citing *Faith Assembly v. Titledge of N.Y. Abstract, LLC*, 961 N.Y.S.2d 542 (N.Y. App. Div. 2013)).

Other allegations added to support alleged Servicer agency in the Amended Complaint have nothing whatsoever to do with REO properties. Even if they could support some limited agency relationship (which for the reasons stated above, they do not), these allegations are irrelevant to the allegedly wrongful servicing actions alleged in the Amended Complaint because, for liability to attach, the wrongful actions must fall within the scope of the agency. *See Magnini*, 34 N.E.3d at 1121. For example, Plaintiffs allege that a Servicer is to "promptly deliver to the Trustee . . . the originals of other documents or instruments constituting the Mortgage File that come into the possession of the Servicer . . . ." FAC ¶ 70. Putting aside that delivering papers does not demonstrate agency or control, Plaintiffs do not allege that this duty has anything to do with the maintenance or disposition of REO properties, which is the entire basis of their pleading. Numerous of Plaintiffs' other allegations suffer similar irrelevance. *See* FAC ¶ 67 (Servicer authorized to undertake "various actions" such as the execution of instruments of cancellation or satisfaction); ¶ 69 (maintenance of "Certificate Account"); ¶ 71 (MERS registration); ¶ 72 (pursuit of insurance claims); ¶ 76 (holding of documents). Even those allegations that *mention* REO

properties in no way connect the maintenance or disposition of those properties to Trustee control. *See* FAC ¶ 73 (titling of REO property); ¶ 74 (mortgage files and funds, including those for REO properties, held "on behalf of the Trustee").

Finally, Plaintiffs selectively, and misleadingly, quote a Regulation AB (or "Reg. AB") certification form attached as an exhibit to the AR41 Trust PSA for the proposition that the Trustees are required to "review[]" servicing activities. FAC ¶ 77 (citing AR41 Trust PSA, Ex. R). In doing so, Plaintiffs improperly conflate mortgage loan servicing as described in the Amended Complaint with servicing for the purposes of Reg. AB, which is defined entirely differently. The Trustees' Reg. AB certification does not recite compliance with *mortgage loan* servicing activities generally, or *REO servicing* specifically, but rather "the servicing criteria set forth in Item 1122(d) of" Reg. AB. AR 41 Trust PSA, Ex. R. Under Reg. AB, the term "servicing" encompasses securitization-level activities unrelated to the servicing of individual mortgage loans, such as maintaining custody of mortgage loan files and distributing payments to certificateholders. 17 C.F.R. 229.1122(d)(1)-(4). In promulgating Reg. AB, the U.S. Securities and Exchange Commission made clear that a party's compliance with Reg. AB disclosure requirements only extends to those criteria "applicable to it," 17 C.F.R. 229.1122(a)(1), based on the contractual duties it assumed under the governing agreements and does not create new duties other than disclosure. As explained above, the Trustees did not assume mortgage loan servicing duties in the Governing Agreements. *See* AR41 Trust PSA § 8.01. As a result, the Trustees' certification of compliance with Reg. AB "servicing criteria" properly would not certify to their compliance with REO property maintenance, since the Governing Agreements do not charge the Trustee with such duties. *See* AR41 Trust PSA, Ex. R.

Moreover, Plaintiffs omit language in the certification that, to the extent the Trustee's

certification involves activities of the Servicer, the process is not one of the Trustee monitoring, supervising, or reviewing Servicer conduct at all, but is a ministerial function by which the Trustee receives and passes on *unverified* information received from the Servicer: the Trustee provides its response "[b]ased solely on the information delivered to the Trustee by the Servicer" and does "not certify[] as to the accuracy, completeness or correctness of the information it received from the Servicer." AR41 Trust PSA, Ex. R. This is consistent with the express limitations on Trustee duties under the Governing Agreements, which provide that a Trustee is *not* required to make any investigation "into the facts or matters stated" in such reports provided to it. *See* AR41 Trust PSA § 8.02(d).

### C. The Conditional "Back-Up" Servicing Role Described in the Governing Agreements Does Not Saddle the Trustees With Any Responsibility for REO Properties.

Generally, the term "back-up servicer" does not appear in the Governing Agreements, but rather is a colloquial label used to describe a contingent role that could be (but is not necessarily) undertaken by an RMBS trustee in the limited circumstance that (1) the Servicer is formally terminated under the detailed procedures for such termination set forth under the Governing Agreements, and (2) no replacement servicer is selected by the Trustee to take the Servicer's place, in which case the Trustee becomes the servicer until such time as a successor is named.[5]

*Unless and until* a Trustee actually becomes the servicer, it is not charged with undertaking any servicing activities, such as maintaining REO properties. *See* PSA §§ 7.01-7.02. What Plaintiffs describe in the Amended Complaint is the theoretical possibility that a Trustee *could*

---

[5] *See* AR41 Trust PSA § 7.01 (if one of six specific "Events of Default" occurs, several of which grant the Servicer a right of up to 60 days to remedy, the Trustee *may*, or *if directed* by two-thirds of Certificateholders, shall, provide a "notice in writing to the Servicer (with a copy to each Rating Agency)" that terminates the Servicer's servicing rights; AR41 Trust PSA § 7.02 (if, after the termination procedures under Section 7.01 of the PSA are followed, the Trustee may, if "unwilling to act" as Servicer itself, appoint another party to so serve in that role).

become a servicer (because the Trustee is the "back-up"), FAC ¶¶ 79-83.  Plaintiffs fail to allege any facts suggesting that either of the Trustees actually *did* become a servicer, let alone that, upon doing so, they committed a violation in that capacity with respect to any of the REO properties at issue.  Indeed, undermining entirely Plaintiffs' back-up servicer argument, Plaintiffs affirmatively allege that, with respect to the "Deutsche Bank REO properties," it was Ocwen and Altisource that "acted in this [Servicer] capacity"—***not the Trustees***.  FAC ¶ 56; *see also* FAC ¶ 3 ("Defendants Ocwen . . . and Altisource . . . provide property preservation and maintenance and other services for REO properties owned by the Deutsche Bank Defendants."); ¶ 64 ("The Ocwen and/or Altisource Defendants acted as primary servicers for the Deutsche Bank REO properties during the period covered by this Complaint. . . .  If any other servicers acted with regard to the Deutsche Bank REO properties, their activities were de minimis as compared to Ocwen and/or Altisource.").

Stated differently, although the Governing Agreements contain mechanisms by which one of the Trustees theoretically could become a Servicer if a series of specific events occur, the Amended Complaint does not contain any factual allegations suggesting this ever happened. Indeed, if the allegations in the Amended Complaint are assumed true, the pleading forecloses this possibility.  To that extent that a "back-up" servicing role is contemplated by any of the Governing Agreements, it is legally irrelevant for the purposes of Plaintiffs' claims and surviving this motion to dismiss.

## III.    THE 2016 HUD DECISION CONFIRMS THAT AS RMBS TRUSTEES, THE TRUSTEES CANNOT BE RESPONSIBLE FOR ANY OF THE CONDUCT AT ISSUE.

Though acknowledged by this Court in its Order, it bears repeating that the government entity designated to police Fair Housing Act violations like those alleged by Plaintiffs already determined that the Plaintiffs' claims *cannot* be asserted against RMBS trustees like the Trustees. *See* Order at 15-16.  In 2016, HUD issued a Determination of No Reasonable Cause (ECF No. 29-

2) regarding a similar complaint brought by some of the same plaintiffs in this action, including the NFHA, against U.S. Bank. To the extent that U.S. Bank "acted only as an indenture trustee for the properties' owners" for most of the properties at issue, HUD found no reasonable cause to support the plaintiffs' allegations. *Id.* at 2. HUD acknowledged that "[f]or a trust indenture, *it is the servicer, not the trustee, who controls properties within the trust.*" *Id.* at n.6 (emphasis added); *see also id.* at 7, n.21 (discussing how an indenture trustee differs from an ordinary trustee). Thus, HUD's investigation continued with a focus only on the subset of properties that were *serviced* by U.S. Bank in its individual capacity and not properties for which U.S. Bank's sole connection was that it acted as trustee for a trust that happened to own the loan or REO property. *Id.* at 8, 25.

Here, as discussed above, the Trustees are not alleged to (and do not) act as servicer for any of the REO properties at issue. That distinguishes the Trustees from other financial institutions, such as Fannie Mae and Bank of America, against whom Plaintiffs have brought similar lawsuits. *E.g.*, *Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n*, 2018 WL 1411106 (N.D. Cal. Mar. 21, 2018); *Nat'l Fair Hous. All. v. Bank of America, N.A.*, 1:18-cv-01919-CCB, ECF No. 1 (D.Md. June 26, 2018). Thus, even though Plaintiffs have cured their standing defect by amending their Complaint to allege claims against Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas in their proper capacities as trustees of the Trusts that hold the properties at issue, Plaintiffs nevertheless still fail to state a claim.

## IV.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS TO PROPERTIES TO WHICH THE TRUSTEES DID NOT HOLD TITLE

As described in the accompanying declaration, public records indicate that three properties, contrary to Plaintiffs' allegations, are held in trusts for which a different financial institution—not the Trustees—serves as the RMBS trustee. *See* Kliebard Decl. ¶ 4. Because Plaintiffs' claims are predicated on the Trustees holding legal title to the REO properties (*see* FAC ¶¶ 3, 35) and that

allegation is contradicted by public property records, Plaintiffs' claims should be dismissed with respect to these two properties. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (Article III standing requires an injury in fact that is concrete and particularized, actual or imminent, fairly traceable to the defendant's challenged conduct, and likely to be redressed by a decision of the court).

## V.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS TO PROPERTIES FOR WHICH THE AMENDED COMPLAINT LACKS SUFFICIENT INFORMATION TO IDENTIFY THE APPLICABLE GOVERNING AGREEMENTS

The Trustees' review identified 16 properties for which the Trustees could not connect the properties identified in Plaintiffs' Amended Complaint to an RMBS trust administered by either Trustee because the address in the Amended Complaint either (i) lacks sufficient detail to permit a search of public property records or (ii) matches no property records. *See* Kliebard Decl. ¶ 4. As discussed above, the governing agreements for more than 1,100 of the properties at issue allocate responsibility for REO property maintenance to the Servicers, not the Trustees. *See* Section II, above; Kliebard Decl. ¶¶ 8-11. Plaintiffs allege no facts to plausibly suggest that, even if these 16 properties were held by RMBS trusts administered by the Trustees, the applicable governing agreements would have non-standard provisions that—unlike every other agreement— for some reason imposed servicing obligations on the Trustees. If this Court dismisses Plaintiffs' claims against the Trustees as to the more than 1,100 properties addressed in Exhibit A to the Kliebard Declaration, then it also should dismiss Plaintiffs' claims with respect to the 16 properties for which Plaintiffs alleged insufficient property information.

## CONCLUSION

For these reasons, all of Plaintiffs' claims against the Trustees should be dismissed with prejudice.

Dated: February 28, 2019                                        Respectfully submitted,

By: /s/ Kenneth M. Kliebard
Kenneth M. Kliebard
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Telephone:  (312) 324-1000

Kevin M. Papay (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105
Telephone:  (415) 442-1000

*Counsel to Defendants Deutsche Bank National*
*Trust Company, as Trustee, and Deutsche Bank*
*Trust Company Americas, as Trustee*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on February 28, 2019.


/s/  Kenneth M. Kliebard