# Exhibit A

to Plaintiffs' Response to Supplemental Memorandum in Support of Motion to Dismiss Amended Complaint Filed by the Deutsche Bank Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; HOUSING RESEARCH & ADVOCACY CENTER; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK; DEUTSCHE BANK AG; DEUTSCHE BANK NATIONAL TRUST; DEUTSCHE BANK TRUST COMPANY AMERICAS; OCWEN FINANCIAL CORP.; and ALTISOURCE PORTFOLIO SOLUTIONS, INC., <br><br> Defendants. | Case No. 1:18-cv-00839 <br><br> Judge Harry D. Leinenweber |

**DECLARATION OF JENNIFER K. SOULE IN OPPOSITION TO**
**SUPPLEMENTAL MEMORANDUM OF DEUTSCHE BANK DEFENDANTS**

Jennifer K. Soule, under penalty of perjury, states based upon personal knowledge that the following facts are true and correct:

1.  I am a partner at Soule, Bradtke & Lambert, and am lead counsel for Plaintiffs in this matter. I have personal knowledge of the facts stated herein and could and would competently testify thereto if called as a witness.

2.  Attached as Exhibit 1 is a true and correct copy of excerpts of the April 2, 2015 Order Granting Motion for Summary Adjudication of the Superior Court of the State of California in Case No. BC488436, *People of the State of California v. U.S. Bank National Association.* Also included in Exhibit 1 is the Reply to Opposition to Motion for Summary Adjudication By The People As To The Securitization Trustee's Second Affirmative Defense in the foregoing case.

3.  Attached as Exhibit 2 is a true and correct copy of excerpts from the Office of Comptroller of Currency, Comptroller's Handbook: "Other Real Estate Owned," (September 2013).

4.  Attached as Exhibit 3 is a true and correct copy of excepts of the Federal Reserve Board's, "Questions and Answers For Federal Reserve-Regulated Institutions Related to the Management of Other Real Estate Owned Assets," (September 2013).

5.  Attached as Exhibit 4 is a true and correct copy of excerpted provisions of certain PSAs made available to Plaintiffs by the Deutsche Bank Defendants on March 1, 2019, in accord with Deutsche Bank filing a sample PSA, and in lieu of Deutsche Bank filing all PSAs with the Court. To assist in identification, we have written in the top right hand corner of each document the PSA Code identifying the PSA from which the excerpt came. The non-sample PSA related

documents were transmitted to me subsequent to the filing of Defendants' current Motions to Dismiss.

6. The Trustees' March 1, 2019 electronic transmission of PSA-related documents to me consisted of 4.75 gigabytes and included 615 files, thousands of pages long. Plaintiffs' initial review of these documents could not be completed as of April 12, 2019 and is ongoing.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge from information in my personal possession and information conveyed to me.


Dated: April 12, 2019        By:    /s/ _Jennifer K. Soule_

# Exhibit 1

to Jennifer K. Soule Declaration in Opposition to Supplemental Memorandum of Deutsche Bank Defendants

**RECEIVED**

APR 0 1 2015

Dept. 323

MICHAEL N. FEUER, City Attorney (SBN 111529)
TINA HESS, Assistant City Attorney (SBN 143900)
SUZANNE V. SPILLANE, Deputy City Attorney (SBN 164476)
BEN DELFIN, Deputy City Attorney (SBN 281607)
OFFICE OF THE LOS ANGELES CITY ATTORNEY
CRIMINAL BRANCH
200 North Main Street, 500 City Hall East
Los Angeles, California 90012-4131
Phone: (213) 978-8122
Facsimile: (213) 978-8112
Attorneys for Plaintiff, The People of the State of California

**FILED**
Superior Court of California
County of Los Angeles

APR 0 2 2015

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.<br><br>                    Defendants.<br>_____<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.<br><br>          Cross-Complainants,<br><br>          vs.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>          Cross-Defendants.<br>_____ | Case No.: BC488436<br><br>[PROPOSED] ORDER GRANTING MOTION FOR SUMMARY ADJUDICATION<br><br>The Hon. Elihu M. Berle<br><br>Date: March 6, 2015<br>Time: 9:00 am<br>Department: 323<br>Complaint Filed: July 16, 2012<br>Trial Date: February 22, 2016 |

The motion by Plaintiff, The People of the State of California ("People") for summary adjudication as to the Second Affirmative Defense of Impossibility due to Non-Ownership of Defendant U.S. Bank National Association, in its capacity as trustee (the "Motion") came on for hearing in Department 323 of this Court on March 6, 2015, at 9:00 a.m., before the Honorable Elihu

---

[PROPOSED] ORDER GRANTING MOTION FOR SUMMARY ADJUDICATION

1

1  M. Berle. Deputy City Attorneys Suzanne Spillane and Ben Delfin appeared on behalf of the People.

2  Michael Collyard, Esq. and Michael Geibelson, Esq. of Robins, Kaplan, Miller & Ciresi LLP appeared

3  on behalf of Defendant Securitization Trustee U.S. Bank ("Trustee"). Traci Lovitt, Esq. and David

4  Adler, Esq. of Jones Day appeared on behalf of U.S. Bank, N.A. Steven Ellis, Esq. of Goodwin

5  Procter appeared on behalf of Cross-Defendant Bank of America, N.A. Matthew Heartney, Esq. of

6  Arnold & Porter, LLP appeared on behalf of Cross-Defendants One West Bank and J.P. Morgan

7  Chase. Michael Bubman, Esq. of Mirman Bubman & Nahmias, LLP appeared on behalf of Cross-

8  Defendant PNC Bank. Robert Norman, Jr. Esq. of Houser & Allison appeared on behalf of Cross-

9  Defendants Ocwen Loan Servicing, LLC, and Homeward Residential. Conrad Sison, Esq. of Locke

10  Lord Bissell & Liddell, LLP appeared on behalf of Cross-Defendant Select Portfolio Servicing.

11  Bronwyn Pollock, Esq. of Mayer Brown appeared on behalf of Cross-Defendants Citimortgage and

12  Citi Residential. Adam Bentley, Esq. of Arent Fox appeared on behalf of Cross-Defendant Wells

13  Fargo Bank, N.A. Mary Kate Sullivan, Esq. of Severson & Werson appeared on behalf of Cross-

14  Defendants Nation Star, Greentree Servicing and Specialized Loan Servicing. Aaron Goldstein, Esq.

15  of Perkins Coie, LLP appeared on behalf of Cross-Defendant Caliber Home Loans.

16          *Statement of Reasons and Specification of Evidence*

17          The entirety of the People's Motion is based on the evidence of the recorded deeds for 186 of

18  the subject properties, which are also identified as Issues 1 through 186. People's Separate Statement

19  (SSUF) 1 through 186. People's Request for Judicial Notice (RJN) 1 through 186. The People also

20  submitted statements previously made by Trustee in court filings. RJN 191-193. The People also

21  submitted Trustee's court filings in an unlawful detainer action. RJN 194.

22          The People met their initial burden on the Motion. The evidence submitted by the People

23  demonstrates that through various foreclosures the Trustee obtained absolute legal title and ownership

24  of the properties identified in the RJN Exhibits 1-186, including all incidents of ownership, such as the

25  right to possession, free of all claims by a mortgagor or trustor. *Hohn v. Riverside County Flood*

26  *Control and Water Conservation District* (1964) 228 Cal.App.2d 605. Having met their initial burden,

27  the burden shifted to Trustee to show the existence of a triable material issue of fact. Neither Trustee's

28

1  legal arguments, nor its evidence, raise genuine issues of material fact as to the ownership of the

2  foreclosed properties. Trustee submitted six exhibits as evidence including excerpts from inspection

3  logs of four properties located at 1525 East O Street, 13240 West Aztec Street, 716 South Bonnie Brae

4  Street and 4416 South 6th Avenue, a Trustee's Deed for the property located at 11515 North Balboa

5  Boulevard and the transcript from the September 11, 2014 hearing before the Court on this matter.

6      Trustee's request to deny the motion or grant defendant a continuance pursuant to California

7  Code of Civil Procedure 437c(h) is denied because defendant has failed to show how any of the

8  discovery it stated it seeks is necessary to opposing a motion that strictly tests the legal ownership, and

9  not liability, allegedly flowing from ownership or other facts going to other defenses.

10      The Court granted Plaintiff's Request for Judicial Notice of the recorded deeds, Exhibits 1

11  through 190 therein pursuant to Evidence Code Section 452(h) and Exhibits 191-194 under Evidence

12  Code Section 452(d).

13      **THEREFORE IT IS ORDERED:**

14      1. The People's Request for Judicial Notice is granted as to Exhibits 1 through 190 pursuant to

15  Cal. Evid. Code Section 452(h) and Exhibits 191 through 194 pursuant to Section 452(d) of the

16  California Evidence Code;

17      2. The People's Motion is granted insofar as it completely disposes of the Trustee's Second

18  Affirmative Defense regarding the specific properties to which Trustee obtained legal title through

19  foreclosure identified in Issues 1-186 and 189-192. The Court denies the Motion as to the properties in

20  Issues 187 and 188 without prejudice;

21      3. Defendant's request to deny or continue the motion for summary adjudication pursuant to

22  Ca. Code of Civil Procedure Section 437c(h) (to seek additional discovery) is denied. Trustee was not

23  deprived of any facts essential to oppose the Motion. All of the requested discovery concerns liability

24  and is irrelevant to the Trustee's ownership of the 190 properties identified in Issues 1-186 and 189-

25  192; and

26      4. Defendant's evidentiary objections to People's evidence in support of their Motion are

27  overruled.

28

---

**[PROPOSED] ORDER GRANTING MOTION FOR SUMMARY ADJUDICATION**

The Court therefore finds as follows:

**ISSUE NO. 1:** Defendant USBT's Second Affirmative Defense of Impossibility due to non-ownership of the property located at 237 East 103rd Street, Los Angeles, California 90003 fails as a matter of law because Defendant USBT, as Trustee for the C-Bass Mortgage Loan Asset-Backed Certificates Trust, Series 2006-CB8, was conferred absolute legal title and ownership of the property, including all incidents of ownership, such as the right to possession, free of all claims by a mortgagor or trustor, located at 237 East 103rd Street, Los Angeles, California 90003 on September 4, 2007, as evidenced by Trustee's certified Deed of Trust, Document No. 20072104351 relating to Assessor's Parcel Number ("APN") 6063010028.

**ISSUE NO. 2:** Defendant USBT's Second Affirmative Defense of Impossibility due to non-ownership of the property located at 419 West 103rd Street, Los Angeles, California 90003 is without merit because Defendant USBT, as Trustee for the Lehman Brothers - Structured Asset Investment Loan Trust SAIL 2006-3, was conferred absolute legal title and ownership of the property, including all incidents of ownership, such as the right to possession, free of all claims by a mortgagor or trustor, located at 419 West 103rd Street, Los Angeles, California 90003 on July 21, 2008, as evidenced by Trustee's Deed of Trust Upon Sale, Document No. 20081324218 relating to APN 6054035016.

**ISSUE NO. 3:** Defendant USBT's Second Affirmative Defense of Impossibility due to non-ownership of the property located at 1512 East 106th Street, Los Angeles, California 90002 is without merit because Defendant USBT, as Trustee for the RAMP 2006NC2, was conferred absolute legal title and ownership of the property, including all incidents of ownership, such as the right to possession, free of all claims by a mortgagor or trustor, located at 1512 East 106th Street, Los Angeles, California 90002 on February 4, 2009, as evidenced by Trustee's Deed of Trust Upon Sale, Document No. 20090206769 relating to APN 6065015014.

**ISSUE NO. 4:** Defendant USBT's Second Affirmative Defense of Impossibility due to non-ownership of the property located at 828 West 108th Street, Los Angeles, California 90044 is without merit because Defendant USBT, as Trustee for the Certificateholders of Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2007-D, was conferred absolute legal title and

1  all claims by a mortgagor or trustor, located at 925 North Virgil Avenue, Los Angeles, California

2  90029 on September 5, 2007, as evidenced by Trustee's Deed of Trust Upon Sale, Document No.

3  20072104234 relating to APN 5539008003.

4      **ISSUE NO. 183:**  Defendant USBT's Second Affirmative Defense of Impossibility due to non-

5  ownership of the property located at 3915 South Walton Avenue, Los Angeles, California 90037 is

6  without merit because Defendant USBT, as Trustee for the Structured Asset Investment Loan Trust,

7  2005-8, was conferred absolute legal title and ownership of the property, including all incidents of

8  ownership, such as the right to possession, free of all claims by a mortgagor or trustor, located at 3915

9  South Walton Avenue, Los Angeles, California 90037 on May 15, 2008, as evidenced by Trustee's

10  Deed of Trust Upon Sale, Document No. 20080883058 relating to APN 5037020033.

11      **ISSUE NO. 184:**  Defendant USBT's Second Affirmative Defense of Impossibility due to non-

12  ownership of the property located at 602 North Wilton Place, Los Angeles, California 90004 is without

13  merit because Defendant USBT, as Trustee for the Harborview 2006-4 Trust Fund, was conferred

14  absolute legal title and ownership of the property, including all incidents of ownership, such as the

15  right to possession, free of all claims by a mortgagor or trustor, located at 602 North Wilton Place, Los

16  Angeles, California 90004 on February 5, 2008, as evidenced by Trustee's Deed of Trust Upon Sale,

17  Document No. 20080284905 relating to APN 5522007024.

18      **ISSUE NO. 185:**  Defendant USBT's Second Affirmative Defense of Impossibility due to non-

19  ownership of the property located at 1152 North Wilton Place, Los Angeles, California 90038 is

20  without merit because Defendant USBT, as Trustee for the Structured Asset Investment Loan Trust,

21  2005-9, was conferred absolute legal title and ownership of the property, including all incidents of

22  ownership, such as the right to possession, free of all claims by a mortgagor or trustor, located at 1152

23  North Wilton Place, Los Angeles, California 90038 on March 15, 2011, as evidenced by Trustee's

24  Deed of Trust Upon Sale, Document No. 20110405340 relating to APN 5536007029.

25      **ISSUE NO. 186:**  Defendant USBT's Second Affirmative Defense of Impossibility due to non-

26  ownership of the property located at 213 North Windsor Boulevard, Los Angeles, California 90004 is

27  without merit because Defendant USBT, as Trustee for the Bear Stearns Asset Backed Securities,

28

---

**[PROPOSED] ORDER GRANTING MOTION FOR SUMMARY ADJUDICATION**

1    Series 2006-AC1, was conferred absolute legal title and ownership of the property, including all

2    incidents of ownership, such as the right to possession, free of all claims by a mortgagor or trustor,

3    located at 213 North Windsor Boulevard, Los Angeles, California 90004 on May 4, 2011, as evidenced

4    by Trustee's Deed of Trust Upon Sale, Document No. 20110652848 relating to APN 5515032008.

5

6

7    DATED: April 2, 2015

8

9                               Honorable Elihu M. Berle

10                                Los Angeles Superior Court Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER GRANTING MOTION FOR SUMMARY ADJUDICATION**

1  MICHAEL N. FEUER, City Attorney (SBN 111529)
   TINA HESS, Assistant City Attorney (SBN 143900)
2  SUZANNE V. SPILLANE, Deputy City Attorney (SBN 164476)
   OFFICE OF THE LOS ANGELES CITY ATTORNEY
3  CRIMINAL AND SPECIAL LITIGATION BRANCH
   200 North Main Street, 500·City Hall East
4  Los Angeles, California 90012-4131
   Phone:  (213) 473-6922
5  Facsimile:  (213) 978-8112

6  Attorneys for Plaintiff, The People of the State of California

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST

10

11 THE PEOPLE OF THE STATE OF          )  Case No.: BC488436
   CALIFORNIA,                         )
12                                     )  **REPLY TO OPPOSITION TO MOTION**
              Plaintiff,               )  **FOR SUMMARY ADJUDICATION BY**
13                                     )  **THE PEOPLE AS TO THE**
        vs.                            )  **SECURITIZATION TRUSTEE'S**
14                                     )  **SECOND AFFIRMATIVE DEFENSE OF**
   U.S. BANK NATIONAL ASSOCIATION, et  )  **IMPOSSIBILITY DUE TO NON-**
15 al.                                 )  **OWNERSHIP**
                                       )
16            Defendants.              )
                                       )  [Declaration of Suzanne V. Spillane, People's
17 _____    )  Opposition of Defendant Trustee's Objections
                                       )  to the People's Request for Judicial Notice in
18                                     )  Support of its Motion, and People's
   U.S. BANK NATIONAL ASSOCIATION, et  )  Objections to the Declaration of Michael A.
19 al.                                 )  Collyard, the Declaration of Peter C. Ihrig, the
                                       )  Affidavit of John G. Richards II and the
20            Cross-Complainants,      )  Affidavit of John G. Richards II and
                                       )  Defendant Trustee's Evidence/Exhibits in
21      vs.                            )  Opposition concurrently filed herewith]
                                       )
22 WELLS FARGO BANK, N.A., et al.,     )  The Hon. Elihu M. Berle
                                       )
23            Cross-Defendants.        )  Date:  January 21, 2015
                                       )  Time:  10:00 am
24 _____    )  Department:  323
                                          Complaint Filed:  July 16, 2012
25                                        Trial Date:  None

26

27

28

                                      1
REPLY TO OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY THE PEOPLE

## TABLE OF AUTHORITIES

**CASES**

*Ace American Ins. Co. v. Walker*

121 Cal. App. 4th 1017, 1023 (2004) ................................................................7

*Aguilar v. Atlantic Richfield, Co.*

25 Cal.4th 826, 850 (2001) .........................................................................1,2

*Bracey v. Gray*

49 Cal. App. 2d 274, 277-278 (1942) .............................................................5

*Brown v. Copp*

105 Cal. App. 2d 1, 6 (1951)..........................................................................5

*California Water & Telephone Co. v. County of Los Angeles*

253 Cal. App. 2d 16, 22 (1967) .....................................................................9

*Central Sav. Bank v. Lake*

201 Cal. 438, 448 (1927) ...........................................................................5,6

*Chick v. Security -First Natl. Bank of Los Angeles*

7 Cal. 2d 718 (1936) ....................................................................................6

*Conroy v. Regents of University of California*

45 Cal. 4th 1244, 1250 (2009)........................................................................4

*Cookey v. Alexakis*

123 Cal. App. 4th 246, 254-57 (2004) ............................................................7

*Cwyner v. City & County of San Francisco*

90 Cal. App. 4th 637, 664-665 (2001).............................................................5

*DiStefano v. Forester*

85 Cal. App. 4th 1249, 1265 (2001).................................................................3

*FSR Brokerage, Inc., v. Sup. Ct.*

35 Cal. App. 4th 69, 75-76 (1995)................................................................7,8

*Greenspan v. LADT LLC*

191 Cal. App. 4th 486, 521 (2010)..................................................................6

1  *Hohn v. Riverside County Floor Control & Water Conservation Dist.*
2   228 Cal. App. 2d 605, 610 (1964) ................................................................................. 5,6
3  *Knapp & Doherty*
4   123 Cal. App. 4th 76, 101 (2004) ...................................................................................... 7
5  *Martin v. Lockheed Missiles & Space Co.*
6   29 Cal. App. 4th 1718, 1735 (1994) ................................................................................... 2
7  *Najah v. Scottsdale Insurance Co.*
8   230 Cal. App. 4th 125, 138 (2014) ..................................................................................... 3
9  *North Coast Women's Care Medical Group, Inc. v. Sup. Ct.*
10  44 Cal. 4th 1145, 1160 (2008) ......................................................................................... 10
11 *O'Grady v. Sup. Ct.*
12  139 Cal. App. 4th 1423, 1455 (2006) ................................................................................. 9
13 *Oakland Raiders v. National Football League*
14  131 Cal. App. 621, 648 (2005) ........................................................................................... 5
15 *Pac. Legal Foundation v. Cal. Coastal*
16  33 Cal. 3d 158, 170 (1982) ................................................................................................. 9
17 *Pillsbury v. Karmgard*
18  22 Cal. App. 4th 743, 753 (1994) ....................................................................................... 4
19 *Powers v. Ashton*
20  45 Cal. App. 3d 783, 787 (1975) ......................................................................................... 4
21 *Rochlis v. Walt Disney Co.*
22  19 Cal. App. 4th 201, 219 (1993) ..................................................................................... 2,3
23 *Saks v. Damon Raike & Co*
24  7 Cal. App. 4th 419, 427 (1992) ......................................................................................... 4
25 *Sangster v. Paetkau*
26  68 Cal. 4th 151, 163 (1998) ............................................................................................... 2
27 *Santa Ana Unified School Dist. v. Orange County Develop. Agency*
28  90 Cal. App. 4th 404-411 (1945) ...................................................................................... 2,3

*St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co.*

  111 Cal. App. 4th 1234, 1248 (2003) ........................................................................................4

*Turner v. Anheuser-Busch, Inc.*

  7 Cal. 4th 1238 (1994)...........................................................................................................2,5

*Vandermost v. Bowen*

  53 Cal. 4th 421, 452 (2012) ...........................................................................................9


STATUTES

Cal. Civil Code § 882.020(a).........................................................................................................5

Code Civil Proc. § 473(c)(h) ........................................................................................................7

Code Civil Proc. § 473(c)(p)(1)....................................................................................................2

Code Civil Proc. § 473(c)(s)..........................................................................................................1

REPLY TO OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY THE PEOPLE

# **TABLE OF CONTENTS**

Page(s)

I.  INTRODUCTION ................................................................................. 1

II.  LEGAL STANDARD ......................................................................... 1

III.  ARGUMENT ...................................................................................... 2

    A.  Defendant Trustee Has Not Established a Triable Issue of Material Fact.... 2

        1.  The Opposition Addresses Other Affirmative Defenses,
            Not the Second ................................................................ 3

        2.  Possession and Control is Irrelevant and Immaterial to
            People's Motion .............................................................. 4

    B.  Defendant Trustee is Subject to California Trust and Property Law ............ 5

    C.  Defendant Trustee's Request That People's Motion be Denied or
        Continued To Allow For Additional Discovery Should be Denied ............... 6

        1.  Proposed Discovery is Not Essential to Adjudicating
            People's Motion .............................................................. 6

        2.  Defendant Trustee Failed to Diligently Pursue Proposed
            Discovery At Earlier Date ................................................. 7

    D.  The Motion Completely Disposes of the Second Affirmative Defense
        Of Impossibility Due to Non-Ownership ...................................... 8

IV.  CONCLUSION .................................................................................. 10

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY THE PEOPLE**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

For more than *five years*, Defendant U.S. Bank National Association, in its capacity as trustee ("Defendant Trustee") for the various residential mortgage-backed security (RMBS) trusts alleged in the Second Amended Complaint (SAC), has taken the position that it does not own and is not responsible for properties[1] to which it has taken title through foreclosure. The purpose of the instant motion is simply to obtain a ruling on the legal issue of ownership. Intent on delaying this case indefinitely, Defendant Trustee declined to stipulate to resolving this legal issue pursuant to Section 437c(s) of the Code of Civil Procedure. Hence, the People of the State of California ("People") filed the instant motion to adjudicate Defendant Trustee's Second Affirmative Defense – "Impossibility Based on Non-Ownership."[2]

The People filed their Motion for Summary Adjudication ("MSA") of the Second Affirmative Defense of Defendant Trustee to adjudicate the singular issue framed by Defendant Trustee's Answer: *ownership*. The MSA establishes that there is no triable issue of material fact because Defendant Trustee acquired title and ownership of the properties through foreclosure. Thus, the People have met their burden.

Defendant Trustee's Opposition to the MSA ("Opp.") fails to establish that ownership of the properties is a triable issue. Defendant Trustee neither presents binding legal authorities to support its arguments nor controverts the Trustee's Deeds. Because Defendant failed to establish a triable issue as to ownership, the MSA should be granted.

## II.     LEGAL STANDARD

The legal standard governing each party's burden on a motion for summary adjudication is well established. The moving party bears the initial burden of production to make a *prima facie* showing that there is no triable issues of material fact. *Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826, 850 (2001). If the moving party meets this burden, it shifts the burden of production to the

---

[1] In footnote 2 of its Memorandum in Support of its Motion for Summary Adjudication (MSA), the People inadvertently identified the issues pertaining to the four properties with rescinded trustee's deeds as Issue Nos. 187-190. The correct Issue Nos. are 189-192. See People's SSUF, ¶¶ 189-192; Exhs. 189-192 to People's RJN.

[2] In footnote 1 of its Opposition, Defendant Trustee requests that the People stipulate that U.S. Bank, in its individual capacity, does not own all the properties at issue except one. The People are unable to so stipulate at this time because the relationship between Defendant Trustee and U.S. Bank individually is unclear.

---

1

1   opposing party to present evidence to make a *prima facie* showing that a triable issue of material fact

2   exists. *Id.* An opposing party cannot rely on mere allegations or denials in its pleadings and must "set

3   forth the specific facts showing that a triable issue of material fact exists." Code Civ. Proc. § 473c,

4   subd. (p)(1); *see Santa Ana Unified School Dist. v. Orange County Develop. Agency*, 90 Cal. App. 4th

5   404, 411 (2001). These facts must be established with admissible evidence sufficient to raise a triable

6   issue. It is well settled that claims and theories not supported by admissible evidence do not raise

7   triable issues. *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 219 (1993) [overturned on other

8   grounds in *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238 (1994)]. An opposing party ". . . must

9   produce *substantial responsive* evidence sufficient to establish a triable issue of material fact . . . ."

10  *Sangster v. Paetkau*, 68 Cal. App. 4th 151, 163 (1998) (emphasis added). "For this purpose, responsive

11  evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is

12  insufficient to establish a triable issue of material fact. *Id.* (citing *Martin v. Lockheed Missiles & Space

13  Co.*, 29 Cal. App. 4th 1718, 1735 (1994)). In order to create a triable issue of material fact, the

14  opposing party's evidence must be directed to issues raised by the pleadings. *Distefano v. Forester*, 85

15  Cal. App. 4th 1249, 1265 (2001).

16  ### III.   ARGUMENT

17  ### A.  DEFENDANT TRUSTEE HAS NOT ESTABLISHED A TRIABLE ISSUE OF

18  ### MATERIAL FACT.

19  In the MSA, the People carried their initial burden of production by submitting Trustee's Deeds or

20  Grant Deeds for example properties in the SAC owned by Defendant Trustee. The Trustee's Deeds

21  prove that Defendant Trustee acquired absolute title and ownership of the properties in the SAC.

22  People's Separate Statement of Undisputed Facts ("SSUF"), ¶¶ 1 - 186; Exhs. 1 – 186 to People's

23  RJN. The Grant Deeds establish that Defendant Trustee conveyed title. *Id.* By satisfying their initial

24  burden, People shifted the burden of production to Defendant Trustee. *See Aguilar v. Atlantic Richfield

25  Co.*, *supra*, 25 Cal. 4th at 850. To establish a triable issue of material fact, Defendant Trustee must

26  present substantial responsive and admissible evidence that proves it does not now own and has never

27  owned the properties. *See Rochlis v. Walt Disney Co.*, *supra*, 19 Cal. App. 4th at 219; *See also*

28

1 | *Sangster v. Paetkau, supra*, 68 Cal. App. 4th at 163. Defendant Trustee failed to do so in its

2 | Opposition.

### 1. The Opposition Addresses Other Affirmative Defenses, Not the Second.

4 | In order to create a triable issue of material fact, the opposing party's evidence must be

5 | directed to issues raised by the pleadings. *Distefano v. Forester, supra*, 85 Cal. App. 4th at 1265. The

6 | MSA addresses ownership. Conversely, the Opposition addresses issues *other* than ownership,

7 | including issues pertaining to its Cross-Complaint: the timing of the alleged violations; the scope of

8 | title; tenancy issues like possession and control (which is alleged in Defendant Trustee's Sixteenth

9 | Affirmative Defense); and the responsibilities of the servicers and how the servicers have the

10 | responsibility to maintain the properties. Opp., pp. 7-8; Declaration of Michael Collyard ("Collyard

11 | Decl.") at ¶ 21. These red herrings should be disregarded. By way of example only, without citing to

12 | any legal authority, Defendant Trustee argues that the People are required to prove the "scope" of

13 | Defendant's title and relies on an alleged senior interest allegedly affecting its title to the property

14 | located at 11515 Balboa Boulevard ("Balboa Property"), which is the People's Issue No. 72. Opp. at

15 | p. 8. Assuming for the sake of argument that there is a senior lien or encumbrance, it would not void

16 | Defendant Trustee's title. Foreclosure is subject to senior encumbrances. See *Najah v. Scottsdale*

17 | *Insurance Co.*, 230 Cal. App. 4th 125, 138 (2014).[3]

18 | Defendant Trustee also argues that the MSA ignores the *possibility* of incorrect deeds. This

19 | too should be disregarded because ". . . claims and theories unsupported by admissible evidence do not

20 | raise a triable issue." Opp., p. 8; *Rochlis v. Walt Disney Co., supra*, 19 Cal. App. 4th at 219.

21 | Defendant Trustee argues that it has never served as trustee for JPALT 2006-A5, the trust linked to the

22 | property located at 12806 West Oxnard Street ("Oxnard Property"). Opp. at pp. 8-9; Affidavit of John

23 | G. Richards II (Richards Aff.) at ¶ 11. However, the Trustee's Deed for 12806 West Oxnard Street

24 | identifies Defendant as trustee for JPALT 2006-A5. Exh. 157 to People's RJN, Trustee's Deed Upon

25 | Sale for the Oxnard Property.

26 | More important, in support of its demurrer, Defendant submitted a declaration by Leonard

27 | McMorrow that admitted that the Trustee's Deeds, including the one for the Oxnard Property, and

---

28 | [3] Defendant Trustee recently sold the Balboa Property to another trust (for which it serves as trustee) despite the alleged senior interest. Declaration of Suzanne Spillane ("Spillane Decl.") at ¶ 11, Exh. 8.

REPLY TO OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY THE PEOPLE

1   various Grant Deeds are true representations of the trust's ownership of the properties. Exh. 191 to

2   People's RJN, McMorrow Decl., ¶¶ 4, 6. Admissions in pleadings ". . . are *conclusive* concessions of

3   the truth of those matters, are effectively removed as issues from the litigation, and may not be

4   contradicted, by the party whose pleadings are used against him or her." *St. Paul Mercury Ins. Co. v.*

5   *Frontier Pac. Ins. Co.*, 111 Cal. App. 4th 1234, 1248 (2003) [quoting Weil & Brown, Cal. Practice

6   Guide: Civil Procedure Before Trial (The Rutter Group 2002), ¶ 10:147, p. 10-49] (emphasis in

7   original). Because a trust is not a separate entity from its trustee, such an admission amounts to a

8   judicial admission that the Trustee's Deeds and Grant Deeds are true representations of Defendant

9   Trustee's ownership of the properties. *See Powers v. Ashton*, 45 Cal. App. 3d 783, 787 (1975); *see*

10  *also Saks v. Damon Raike & Co.*, 7 Cal. App. 4th 419, 427 (1992); *Pillsbury v. Karmgard,* 22 Cal.

11  App. 4th 743, 753 (1994). Therefore, Defendant Trustee cannot now dispute the accuracy of any Grant

12  or Trustee's Deed, including the one for the Oxnard Property.

13      **2.      Possession and Control is Irrelevant and Immaterial to People's Motion.**

14          In a desperate attempt to expand the scope of its Second Affirmative Defense, Defendant

15  Trustee improperly conflates the issue of possession and control with ownership by arguing that the

16  MSA fails because it does not address impossibility due to the lack of possession and control. Opp. at

17  p. 9. However, Defendant Trustee's argument fails for two reasons.

18          First, the MSA pertains solely to the issue of ownership. Defendant Trustee does not mention

19  possession or control in its Second Affirmative Defense, which states ". . . Plaintiff's Causes of Action

20  are barred by the doctrine of impossibility because the Securitization Trustee does not nor has it ever

21  *owned* the foreclosed properties that were owned by the relevant Securitization Trust." Defendant

22  Turstee's Answer at p. 53, ¶ 2 (emphasis added). Because "[t]he materiality of a disputed fact is

23  measured by the pleadings . . . which set the boundaries of the issues to be resolved at summary

24  judgment . . .," possession and control are immaterial for purposes of the MSA. *Conroy v. Regents of*

25  *University of California*, 45 Cal. 4th 1244, 1250 (2009) (citing *Turner v. Anheuser-Busch, Inc.*, 7 Cal.

26

27

28

1    4th 1238, 1252 (1994) and *Oakland Raiders v. National Football League*, 131 Cal. App. 621, 648

2    (2005)).[4]

3         Second, this argument incorrectly assumes that, in order to prove ownership, the People must

4    establish that Defendant Trustee had possession and control. Not so. "A sale conducted in accordance

5    with the terms of a power of sale in a mortgage or trust deed, on its consummation by a conveyance,

6    confers the *absolute legal title* on the purchaser. The purchaser obtains not only the fee but also all the

7    incidents, including the *right to possession* free of all claims on the part of the mortgagor or trustor."

8    *Hohn v. Riverside County Flood Control & Water Conservation Dist.*, 228 Cal. App. 2d 605, 610

9    (1964) [citing 34 Cal. Jur. 2d, Mortgages, § 473, p. 154], superseded by Cal. Civ. Code § 882.020,

10   subd. (a) on other grounds (emphasis added); *see Central Sav. Bank v. Lake*, 201 Cal. at 438, 448

11   (1927) ("[n]or do we find any merit in the contention of the defendants that the trustees' deed

12   transferred to the purchaser the naked fee only and not the right of possession."); *see also Bracey v.*

13   *Gray*, 49 Cal. App. 2d 274, 277-278 (1942); *Brown v. Copp*, 105 Cal. App. 2d 1, 6 (1951). In other

14   words, possession and control of the properties is a *consequence* of, *not* a prerequisite for title and

15   ownership. The *Cwynar* case cited by Defendant Trustee supports this position. Opp. at p. 9; *See*,

16   *e.g.*, *Cwynar v. City & County of San Francisco,* 90 Cal. App. 4th 637, 664-65 (2001) ("[u]nder the

17   traditional conception of property, the *most important of the various rights of an owner is the right of*

18   *possession* which includes the right to exclude others from occupying or using the space.") (emphasis

19   added).

20   **B. DEFENDANT TRUSTEE IS SUBJECT TO CALIFORNIA TRUST AND PROPERTY**

21   **LAW.**

22        Defendant Trustee concedes in its Opposition that, at common law, ". . . a fundamental duty of

23   trustees was 'to preserve and maintain trust assets,' which specifically entailed the right and duty to

24   take and keep control of the trust property." Opp. at 17, ll. 25-27 (citations omitted). Defendant

25   Trustee nonetheless argues that securitization trusts are "different legal animals" and lack control and

26   authority over trust property. Opp. at 17-18 (citations omitted). Defendant Trustee appears to argue

27

28   [4] In its Opposition, Defendant claims it lacked or lacks possession and control of the properties due to property specific
     circumstances, limits set in the Pooling and Servicing Agreements ("PSAs"), or alleged limits on the exercise of its
     property rights. Opp. at pp. 10-12.

REPLY TO OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY THE PEOPLE

1  that it is entitled to special treatment in the form of an exemption from California law. Defendant

2  predominantly relies on out-of-state legal authorities[5] that are neither convincing nor binding on this

3  Court to support its argument that a trustee who acquires title through a trustee's deed obtains *only*

4  bare legal title without the right to possession and control. Opp. at 14, 17-18. However, the California

5  Supreme Court rejected this very argument in *Central Sav. Bank, supra*, which is factually very

6  similar to this matter. 201 Cal. at 448 ("[n]or do we find any merit in the contention of the defendants

7  that the trustees' deed transferred to the purchaser the *naked* fee only and not the right of possession.")

8  (emphasis added). California case law is *very* clear: a trustee who obtains title to real property through

9  foreclosure acquires absolute title and ownership of the property, including the right to possession and

10 control. *Hohn v. Riverside County Flood Control & Water Conservation Dist., supra*, 228 Cal. App.

11 2d at 610; *see Central Sav. Bank, supra*, 201 Cal. at 448. It is also well established in California that "a

12 trust is not a legal person which can own property or enter into contracts" and "[i]t is the trustee or

13 trustees who hold title to assets that make up the trust. . . ." *Greenspan v. LADT LLC*, 191 Cal. App.

14 4th 486, 521 (2010).

15 **C. DEFENDANT TRUSTEE'S REQUEST THAT PEOPLE'S MOTION BE DENIED**

16 **OR CONTINUED TO ALLOW FOR ADDITIONAL DISCOVERY SHOULD BE**

17 **DENIED.**

18 Defendant Trustee's request that the MSA be denied or continued to allow for additional

19 discovery should be denied because (1) the proposed discovery is not *essential* to opposing or

20 adjudicating the MSA and (2) Defendant's failure to exercise diligence in obtaining the proposed

21 discovery at an earlier date.

22 **1. Proposed Discovery Is Not Essential to Adjudicating People's Motion.**

23 Defendant Trustee, by its own admission, seeks discovery that is "extensive and spans the

24 *entire* case" including discovery pertaining to its Cross-Complaint against the servicers (e.g.,

25 responsibilities of the servicers, how the servicers maintain properties, and what prevented the

26 servicers from remediating violations). Collyard Decl. at ¶ 21. This is simply a disingenuous attempt

27

28 [5] Defendant Trustee also relies on *Chick v. Security-First Natl. Bank of Los Angeles*, 7 Cal. 2d 718 (1936), which is inapposite. In *Chick*, the trustee held merely a leasehold estate. *Id.* at 721. Here, Defendant Trustee acquired *absolute* title and ownership of the properties.

1    to further stall the case because Section 437c(h) of the Code of Civil Procedure allows continuances

2    only for facts *essential* to oppose the motion. Cal. C. Civ. Proc. § 437c, subd. (h) ("[i]f it appears . . .

3    that facts *essential* to justify opposition [to summary adjudication] may exist cannot . . . then be

4    presented, the court shall deny the motion, or order a continuance to permit . . . discovery to be had . . .

5    ." [emphasis added]). "The non-moving party seeking a continuance 'MUST SHOW . . . the facts to

6    be obtained are essential to opposing the motion . . . .'" *Ace American Ins. Co. v. Walker*, 121 Cal.

7    App. 4th 1017, 1023 (2004) (citation omitted) (emphasis in original); *see FSR Brokerage, Inc. v. Sup.*

8    *Ct.*, 35 Cal. App. 4th 69, 75-76 (1995); *see also Knapp v. Doherty*, 123 Cal. App. 4th 76, 101 (2004).

9    A court "need not grant a continuance where the proposed discovery is focused on matters beyond the

10   scope of the dispositive issues framed by the pleadings." *Ace American Ins. Co. v. Walker*, *supra*, 121

11   Cal. App. 4th at 1023. A denial of a continuance is proper where the evidence sought is unrelated to

12   the issue being adjudicated or pertains to a cross-complaint. *Id*. at 1023-25.

13        The MSA pertains only to the issue of ownership.  Hence, any proposed discovery which does

14   not pertain to ownership is <u>not</u> essential to opposing the MSA.  Because Trustee's Deeds and Grant

15   Deeds are the only documents relevant to ownership, the People submit that no further discovery is

16   needed for the Court to rule on the MSA. In addition, the fact that Defendant Trustee has been in

17   possession of all of the relevant City agencies' investigative files since at least November 2013 is clear

18   evidence that Defendant Trustee's request for a continuance is just another stall tactic. Collyard Decl.

19   at ¶¶ 7-8.

20        Moreover, while Defendant Trustee seeks a continuance from the Court to seek additional

21   evidence spanning "the entire case", none of Defendant Trustee's theories were identified in its

22   response to People's Form Interrogatory 15.1, which requested the factual bases for its affirmative

23   defenses, including the Second Affirmative Defense. Spillane Decl. at ¶ 8; Exh. 5.

24        **2.    Defendant Trustee Failed to Diligently Pursue Proposed Discovery at Earlier Date.**

25        A court may deny a request for a continuance of a hearing on the ground that the party seeking

26   a continuance failed to diligently seek the proposed discovery sooner. *Cookey v. Alexakis*, 123 Cal.

27   App. 4th 246, 254 (2004). A declaration from the party requesting a continuance *must* explain why the

28   discovery sought could not be completed sooner. *Id*. at 257. A denial of a continuance is appropriate

---

7

REPLY TO OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY THE PEOPLE

1    where "more than adequate time existed in order to secure discovery responses" by the time of the

2    hearing. *FSR Brokerage, Inc. v. Sup. Ct.*, 35 Cal. App. 4th 69, 76 (1995) (Court of Appeals for the

3    Second Appellate District finding that 11 months was adequate time to obtain necessary discovery

4    responses).

5        Here, Defendant Trustee was informed of the rampant code violations at some of the properties

6    in 2009. Spillane Decl. at ¶ 3; Exh. 1. In July 2012, the original complaint in this matter was filed. *Id.*

7    at ¶ 5. In November 2013, Defendant Trustee received the investigation file on each property. Collyard

8    Decl. at ¶ 8. On April 9, 2014, the Court entered a stay on all discovery. Collyard Decl. at ¶ 2. On

9    October 6, 2014, the Court lifted the discovery stay as to 35 properties that the parties selected for

10   mediation. *Id.* at ¶ 3. In his declaration, Defendant Trustee's Counsel fails to explain why Defendant

11   Trustee could not obtain the proposed discovery during the 18 months period prior to the discovery

12   stay or thereafter seek to have it lifted. Clearly, Defendant Trustee has had more than adequate time to

13   obtain the proposed discovery. See *FSR Brokerage, Inc. v. Sup. Ct.*, *supra*, 35 Cal. App. 4th at 76

14   (Court of Appeals finding that 11 months was adequate time to obtain necessary discovery). Defendant

15   Trustee's request for a continuance is especially troubling in light of the fact that it was made aware of

16   code violations at the properties as far back as 2009. Spillane Decl. at ¶ 3. Because Defendant Trustee

17   failed to diligently pursue the proposed discovery sooner, its request for dismissal of the MSA or a

18   continuance should be denied.

19    **D. THE MOTION COMPLETELY DISPOSES OF THE SECOND AFFIRMATIVE**

20        **DEFENSE OF IMPOSSIBILITY DUE TO NON-OWNERSHIP.**

21        The MSA pertains to an issue of law, which if decided by this Court, would completely dispose

22   of Defendant Trustee's Second Affirmative Defense. Simply, Issue Nos. 187 and 188 in the MSA seek

23   a ruling on whether Defendant Trustee's Second Affirmative Defense of Impossibility due to non-

24   ownership fails by virtue of the fact that Defendant Trustee acquired title and ownership of properties

25   in the City of Los Angeles through foreclosure. SAC at ¶ 6.

26        In its Opposition, Defendant Trustee argues that the MSA does not completely dispose of its

27   Second Affirmative Defense because the People have not presented evidence identifying the

28   "Unidentified Properties." Opp., at p. 5, ll. 12-14. Defendant Trustee opposes the MSA on what

REPLY TO OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY THE PEOPLE

1  appears to be ripeness grounds. The People respectfully submit that Defendant Trustee's Second

2  Affirmative Defense fails because Defendant Trustee's ownership is ripe for adjudication.

3       The ripeness requirement of the justiciability doctrine prohibits courts from issuing "purely

4  advisory opinions." *Vandermost v. Bowen*, 53 Cal. 4th 421, 452 (2012). "It is rooted in the

5  fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract

6  differences of legal opinions." *Pac. Legal Foundation v. Cal. Coastal Com.*, 33 Cal. 3d 158, 170

7  (1982). "[A] controversy is 'ripe' when it has reached...the point that the facts have sufficiently

8  congealed to permit an intelligent and useful decision to be made." *Id.* (quoting *California Water &*

9  *Telephone Co. v. County of Los Angeles*, 253 Cal. App. 2d 16, 22 (1967)). The requirement should not

10  prevent courts from ruling on concrete disputes when refraining would "simply produce a multiplicity

11  of proceedings" and unnecessarily consume judicial resources. *O'Grady v. Sup. Ct.*, 139 Cal. App. 4th

12  1423, 1455 (2006).

13       In *O'Grady*, the plaintiff, Apple, Inc., obtained civil subpoenas against multiple individuals,

14  including O'Grady, in attempt to reveal the source of leaked trade secrets. *Id.* at 1432-36. Although

15  plaintiff served the subpoenas on only two of the individuals, all those who were subpoenaed moved

16  for a protective order based on reporting privileges. *Id.* at 1450. Apple argued that disputes involving

17  the unserved subpoenas were not ripe and the trial court agreed, holding that ruling on the motions of

18  the unserved individuals would constitute an advisory opinion. *Id.* at 1453. The Court of Appeal

19  reversed and found that the facts sufficiently "congealed" to rule on the protective order because, by

20  securing the subpoenas, Apple "ended any speculation about its intention to seek discovery from

21  [O'Grady], thereby creating "a concrete dispute concerning its right to do so." *Id.* at 1453-55. The

22  Court of Appeal found that declining to rule on the motion would "simply produce a multiplicity of

23  proceedings" presenting virtually identical facts and applying identical law, thereby unnecessarily

24  consuming judicial resources. *Id.* at 1455.

25       Here too, the facts have sufficiently "congealed" to justify the Court ruling on Defendant

26  Trustee's Second Affirmative Defense. The SAC relates to all properties to which Defendant Trustee

27  obtained title through foreclosure. SAC at ¶ 6. The People provided the Trustee's Deeds for

28  properties identified as examples in the SAC. Hence, with respect to these properties, the People have

1    conclusively established that Defendant Trustee obtained absolute title and ownership. People's

2    SSUF, ¶¶ 1 - 186; Exhs. 1 – 186 to RJN. The facts that govern the properties alleged as examples and

3    the other properties are the same: *Defendant acquired title and ownership through foreclosure.*

4    Because the facts governing whether Defendant Trustee owns the other properties have sufficiently

5    "congealed", the issue is ripe for adjudication.

6       Even if the Court refrains from ruling on the other properties, the People's MSA completely

7    disposes of the Second Affirmative Defense as it applies to Issue Nos. 1-186. The California Supreme

8    Court has held that, where an affirmative defense fails under one theory but could succeed under an

9    alternative theory, summary adjudication of that defense is appropriate so long as the defendant is not

10    barred from presenting evidence on the alternative theory. *North Coast Women's Care Medical Group,*

11    *Inc. v. Sup. Ct.*, 44 Cal. 4th 1145, 1160-62 (2008) ("*North Coast*"). Under *North Coast*, the Court can

12    and should rule on Issue Nos. 1-186 because the Second Affirmative Defense fails as a matter of law.

13    *Id*. at 1160-62. The People have established that Defendant Trustee acquired title and ownership of

14    the properties that are subject of Issue Nos. 1-186. People's SSUF, ¶¶ 1 - 186; Exhs. 1 – 186 to RJN. A

15    ruling on these issues, which would not preclude Defendant Trustee from presenting evidence as to

16    Issue Nos. 187 and 188 at trial, would completely dispose of the Second Affirmative Defense as it

17    applies to each property and trust identified in Issue Nos. 1-186.

18                   **IV.    CONCLUSION**

19       For the foregoing reasons, Defendant Trustee's Second Affirmative Defense of Impossibility

20    due to non-ownership fails as a matter of law. Therefore, the People respectfully request that this Court

21    grant the MSA.

22    Date: January 7, 2015

23                   MICHAEL N. FEUER, City Attorney
                     TINA HESS, Assistant City Attorney

24                   SUZANNE V. SPILLANE, Deputy City Attorney
                     OFFICE OF THE LOS ANGELES CITY ATTORNEY

25                   CRIMINAL AND SPECIAL LITIGATION BRANCH

26

27                   By: _____
                     SUZANNE SPILLANE

28                      Attorney for Plaintiff,
                     The People of the State of California

REPLY TO OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY THE PEOPLE

# Exhibit 2

to Jennifer K. Soule Declaration in Opposition to Supplemental Memorandum of Deutsche Bank Defendants

# Comptroller's Handbook A-OREO

# Safety and Soundness



# Other Real Estate Owned

## Version 1.0, September 2013



Office of the
Comptroller of the Currency

Washington, DC 20219

Version 1.0

## Obligations and Actions

- In acquiring title to foreclosed properties, a bank assumes the primary responsibilities of an owner, including providing maintenance and security, paying taxes and insurance, and serving as landlord for rental properties.
  - The bank should communicate with localities, including homeowners' associations, about specific requirements with respect to foreclosed residential properties. For example, localities may have requirements for upkeep—such as lawn mowing, property maintenance, and security—and the requirements may become applicable at different stages of the foreclosure process.
  - If it fails to take these actions, the bank should be aware of potential nuisance actions or the exercise of local receivership powers to seize properties.
- For Federal Housing Administration (FHA)-insured mortgages, the bank must ensure compliance with property and preservation guidance issued by the U.S. Department of Housing and Urban Development (HUD) to preserve the insurance claim and obtain reimbursements for allowable expenses.
- Following foreclosure, the bank must record its ownership interest in local land records.
- Banks must comply with OREO appraisal and accounting requirements.
- Banks should maintain appropriate insurance on the property.
- Some localities may require registration of foreclosed properties, properties in foreclosure, or vacant properties. Banks should be aware of and comply with such requirements.
- The Protecting Tenants at Foreclosure Act of 2009 provides tenants with protections from eviction resulting from foreclosure on the properties they are renting. The "Protecting Tenants at Foreclosure Act" booklet of the *Comptroller's Handbook* provides additional information and examination guidance.
  - When a bank takes title to a house after foreclosure, it must honor any existing rental agreement with a bona fide tenant and must provide 90 days' notice to the tenant before eviction, whether or not the tenant has a rental agreement.
  - State laws may impose additional requirements that are not preempted by the Protecting Tenants at Foreclosure Act.
  - Additional potential requirements with respect to rental properties include
    - reviewing the lease to determine if the property can be shown to prospective purchasers.
    - returning any security deposit upon termination of the rental agreement.
- The Servicemembers Civil Relief Act provides servicemembers relief from certain obligations when military service affects the servicemember's ability to meet or attend to civil matters. The "Servicemembers Civil Relief Act" booklet of the *Comptroller's Handbook* provides additional information and examination guidance.
  - Real property acquired by a servicemember before the servicemember's military service began cannot be sold, foreclosed, or seized during the period of military service and for a period subsequent to the military service. Prior to December 31, 2014, the period extends an additional year. Subsequent to December 31, 2014, the extension period reverts to 90 days. These restrictions can be superseded with the approval of a court or a written agreement in which the servicemember agrees to waive certain rights.

# Exhibit 3

to Jennifer K. Soule Declaration in Opposition to Supplemental Memorandum of Deutsche Bank Defendants

**Questions and Answers
For Federal Reserve-Regulated Institutions[1]
Related to the Management of
Other Real Estate Owned (OREO) Assets**

**June 27, 2012**

**TABLE OF CONTENTS**

I.   TRANSFERING AN ASSET TO OREO ................................................................. 2

II.  REPORTING TREATMENT AND CLASSIFICATION ...................................... 3

III. APPRAISAL CONCEPTS ................................................................................... 5

IV.  ONGOING PROPERTY MANAGEMENT ......................................................... 7

V.   OPERATIONAL AND LEGAL ISSUES............................................................. 10

VI.  SALE AND TRANSFER OF OREO ................................................................... 12

---

[1] For purposes of this Q&A document, "institution" refers to a financial institution regulated by the Federal Reserve, including state member banks, bank holding companies, and savings and loan holding companies.

Management should have an information system to monitor and analyze OREO properties that is appropriate for the institution's OREO portfolio size and complexity.

The following are examples of performance ratios that the institution may choose to monitor:

- Net disposition proceeds as a percentage of original book value of the property
- Valuation reserve as a percentage of OREO values
- Volume and dollar amount of former OREO currently being financed
- OREO holding and management costs as a percentage of OREO
- Legal expense (since foreclosure) related to OREO as a percentage of OREO
- OREO as a percentage of internally criticized assets (which include special mention and classified assets) plus past due
- OREO (by type) as a percentage of corresponding loan type

**20. Q: What controls and processes should institutions have in place to ensure that properties in the OREO inventory are properly maintained and meet local code-enforcement ordinances and other laws?**

A: Institutions should have policies and procedures in place to ensure that properties are maintained in compliance with federal, state, and local laws, including laws governing health and safety, property preservation, fair housing, and property registration. An institution's failure to adhere to these legal requirements can result in fines, litigation, and reputational damage. Further, institutions engaging third-party vendors to carry out functions related to these requirements should ensure that vendors maintain appropriate compliance controls. Reliance on third-party vendors does not relieve an institution of its compliance responsibilities or liability.

**21. Q: In addition to considerations regarding health and safety violations, how should institutions determine which repairs to make before disposition?**

A: Expending funds to repair a property is one strategy for an institution to consider for improving potential recovery on the sale of OREO assets. For instance, repairs may be necessary for the property to qualify for a Federal Housing Administration (FHA)-insured loan, which in turn may attract a greater number of qualified buyers. Institutions should have controls in place to comply with all federal, state, and local laws, including fair housing laws. For example, institutions may not avoid or delay the maintenance or repairs of dwellings based on the racial or ethnic composition of the geographic area where they are located.

**22. Q: What steps should an institution take to comply with existing laws protecting tenants?**

A: Institutions should have controls in place to comply with all federal, state, and local laws related to protecting the rights of tenants, including the federal Protecting Tenants at Foreclosure Act of 2009 (CA letter 09-5), Servicemembers Civil Relief Act (CA letter 05-3),

# Exhibit 4

to Jennifer K. Soule Declaration in Opposition to Supplemental Memorandum of Deutsche Bank Defendants

HB0600PSA

Custodian of a Request for Release, which Request for Release may be in an electronic format in a form acceptable to the Custodian, release the related Custodial File to the Servicer, and the Custodian shall, at the direction of the Servicer, execute such documents as shall be necessary to the prosecution of any such proceedings and the Servicer shall retain the Mortgage File in trust for the benefit of the Trustee. Such Request for Release shall obligate the Servicer to return each and every document previously requested from the Custodial File to the Custodian when the need therefor by the Servicer no longer exists, unless the Mortgage Loan has been liquidated and the Liquidation Proceeds relating to the Mortgage Loan have been deposited in the Collection Account or the Mortgage File or such document has been delivered to an attorney, or to a public trustee or other public official as required by law, for purposes of initiating or pursuing legal action or other proceedings for the foreclosure of the Mortgaged Property either judicially or non-judicially, and the Servicer has delivered to the Custodian a certificate of a Servicing Officer certifying as to the name and address of the Person to which such Mortgage File or such document was delivered and the purpose or purposes of such delivery. Upon receipt of a certificate of a Servicing Officer stating that such Mortgage Loan was liquidated and that all amounts received or to be received in connection with such liquidation that are required to be deposited into the Collection Account have been so deposited, or that such Mortgage Loan has become an REO Property, a copy of the Request for Release shall be released by the Custodian to the Servicer or its designee.

Upon written certification of a Servicing Officer, the Trustee shall execute and deliver to the Servicer copies of any court pleadings, requests for trustee's sale or other documents reasonably necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity, or shall exercise and deliver to the Servicer a power of attorney sufficient to authorize the Servicer to execute such documents on its behalf. Each such certification shall include a request that such pleadings or documents be executed by the Trustee and a statement as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.17   Title, Conservation and Disposition of REO Property.   (a) This Section shall apply only to REO Properties acquired for the account of the Trustee and shall not apply to any REO Property relating to a Mortgage Loan which was purchased or repurchased from the Trustee pursuant to any provision hereof. In the event that title to any such REO Property is acquired, the deed or certificate of sale shall be issued to the Trust, or if not permitted by law, to Deutsche Bank National Trust Company (or, if applicable, the name of the successor Trustee) as Trustee for HSI Asset Securitization Corporation Trust 2006-OPT2 Mortgage Pass-Through Certificates, Series 2006-OPT2, or to its nominee, for the benefit of the Certificateholders.

(b)   The Servicer shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale. The Servicer, either itself or through an agent selected by the Servicer, shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects

BC041PSA

such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.17   Title, Conservation and Disposition of REO Property.   (a) This Section shall apply only to REO Properties acquired for the account of the Trustee and shall not apply to any REO Property relating to a Mortgage Loan which was purchased or repurchased from the Trustee pursuant to any provision hereof.   In the event that title to any such REO Property is acquired, the Servicer shall cause the deed or certificate of sale to be issued in the name of the Trustee, on behalf of the Certificateholders.

(b)   The Servicer shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale. The Servicer, either itself or through an agent selected by the Servicer, shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed. The Servicer shall attempt to sell the same (and may temporarily rent the same for a period not greater than one year, except as otherwise provided below) on such terms and conditions as the Servicer deems to be in the best interest of the Trustee. The Servicer shall notify the Trustee from time to time as to the status of each REO Property.

(c)   The Servicer shall use its best efforts to dispose of the REO Property as soon as possible and shall sell such REO Property in any event within one year after title has been taken to such REO Property, unless the Servicer determines, and gives an appropriate notice to the Trustee to such effect, that a longer period is necessary for the orderly liquidation of such REO Property. If a period longer than one year is permitted under the foregoing sentence and is necessary to sell any REO Property, the Servicer shall report to the Trustee as to the progress being made in selling such REO Property.

(d)   The Servicer shall segregate and hold all funds collected and received in connection with the operation of any REO Property separate and apart from its own funds and general assets and shall deposit such funds in the Collection Account.

(e)   The Servicer shall deposit net of reimbursement to the Servicer for any related outstanding Servicing Advances and unpaid Servicing Fees provided in Section 3.11, or cause to be deposited, on a daily basis in the Collection Account all revenues received with respect to the related REO Property and shall withdraw therefrom funds necessary for the proper operation, management and maintenance of the REO Property.

(f)   The Servicer, upon an REO Disposition, shall be entitled to reimbursement for any related unreimbursed Servicing Advances as well as any unpaid Servicing Fees from proceeds received in connection with the REO Disposition, as further provided in Section 3.11.

(g)   Any net proceeds from an REO Disposition which are in excess of the unpaid principal balance of the related Mortgage Loan plus all unpaid REO Imputed Interest



non-judicially, and the Servicer has delivered to the Trustee a certificate of a Servicing Officer certifying as to the name and address of the Person to which such Mortgage File or such document was delivered and the purpose or purposes of such delivery. Upon receipt of a certificate of a Servicing Officer stating that such Mortgage Loan was liquidated and that all amounts received or to be received in connection with such liquidation that are required to be deposited into the related Collection Account have been so deposited, or that such Mortgage Loan has become an REO Property, a copy of the Request for Release shall be released by the Trustee to the Servicer or its designee. Upon receipt of a Request for Release under this Section 3.16, the Trustee shall deliver the related Custodial File to the Servicer by regular mail, unless the Servicer requests that the Trustee deliver such Custodial File to the Servicer by overnight courier (in which case such delivery shall be at the Servicer's expense); provided, however, that in the event the Servicer has not previously received copies of the relevant Mortgage Loan Documents necessary to service the related Mortgage Loan in accordance with Accepted Servicing Practices, the Depositor shall use reasonable best efforts to cause the applicable Responsible Party to reimburse the Servicer for any overnight courier charges incurred for the requested Custodial Files.

Upon written certification of a Servicing Officer, the Trustee shall execute and deliver to the Servicer copies of any court pleadings, requests for trustee's sale or other documents reasonably necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity, or shall exercise and deliver to the Servicer a power of attorney sufficient to authorize the Servicer to execute such documents on its behalf. Each such certification shall include a request that such pleadings or documents be executed by the Trustee and a statement as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.17   Title, Conservation and Disposition of REO Property.  (a) This Section shall apply only to REO Properties acquired for the account of the Trustee and shall not apply to any REO Property relating to a Mortgage Loan which was purchased or repurchased from the Trustee pursuant to any provision hereof. In the event that title to any such REO Property is acquired, the Servicer shall cause the deed or certificate of sale to be issued in the name of the Trustee, on behalf of the Certificateholders, or the Trustee's nominee.

(b)     The Servicer shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale. The Servicer, either itself or through an agent selected by the Servicer, shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed. The Servicer shall attempt to sell the same (and may temporarily rent the same for a period not greater than one year, except as otherwise provided below) on such terms and conditions as the Servicer deems to be in the best interest of the Trustee.

BA05QIPSA

Section 6.08   Liability of the Servicer.

Notwithstanding any Sub-Servicing Agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Servicer and a Sub-Servicer or reference to actions taken through a Sub-Servicer or otherwise, the Servicer shall remain obligated and primarily liable to the Trustee and the Certificateholders for the servicing and administering of the Mortgage Loans in accordance with the provisions of Section 3.01 without diminution of such obligation or liability by virtue of such Sub-Servicing Agreements or arrangements or by virtue of indemnification from the Sub-Servicer and to the same extent and under the same terms and conditions as if the Servicer alone were servicing and administering the Mortgage Loans.   The Servicer shall be entitled to enter into any agreement with a Sub-Servicer for indemnification of the Servicer by such Sub-Servicer and nothing contained in this Agreement shall be deemed to limit or modify such indemnification.

Section 6.09   No Contractual Relationship Between Sub-Servicers and the NIMS Insurer, the Trustee or Certificateholders.

Any Sub-Servicing Agreement that may be entered into and any transactions or services relating to the Mortgage Loans involving a Sub-Servicer in its capacity as such shall be deemed to be between the Sub-Servicer and the Servicer alone, and the NIMS Insurer, the Trustee and Certificateholders shall not be deemed parties thereto and shall have no claims, rights, obligations, duties or liabilities with respect to the Sub-Servicer except as set forth in Section 6.10.   The Servicer shall be solely liable for all fees owed by it to any Sub-Servicer, irrespective of whether the Servicer's compensation pursuant to this Agreement is sufficient to pay such fees.

Section 6.10   Assumption or Termination of Sub-Servicing Agreements by Trustee.

In the event the Servicer shall for any reason no longer be the Servicer (including termination due to a Servicer Event of Default), the Trustee or its designee shall thereupon assume (or cause its designee or the successor Servicer for the Trustee appointed pursuant to Section 7.02 to assume) all of the rights and obligations of the Servicer under each Sub-Servicing Agreement that the Servicer may have entered into, unless the Trustee elects to terminate any Sub-Servicing Agreement in accordance with its terms as provided in Section 6.07. Upon such assumption, the Trustee, its designee or the successor servicer for the Trustee appointed pursuant to Section 7.02 shall be deemed, subject to Section 6.07, to have assumed all of the Servicer's interest therein and to have replaced the Servicer as a party to each Sub-Servicing Agreement to the same extent as if each Sub-Servicing Agreement had been assigned to the assuming party, except that (i) the Servicer shall not thereby be relieved of any liability or obligations under any Sub-Servicing Agreement and (ii) none of the Trustee, its designee or any successor Servicer shall be deemed to have assumed any liability or obligation of the Servicer that arose before it ceased to be the Servicer.

The Servicer at its expense shall, upon request of the Trustee, deliver to the assuming party all documents and records relating to each Sub-Servicing Agreement and the Mortgage Loans then being serviced and an accounting of amounts collected and held by or on

-113-

DB_NFHA00023222

HB 0602?SA

shall pay the costs of such enforcement at its own expense, and shall be reimbursed therefor only (i) from a general recovery resulting from such enforcement, to the extent, if any, that such recovery exceeds all amounts due in respect of the related Mortgage Loans or (ii) from a specific recovery of costs, expenses or attorneys' fees against the party against whom such enforcement is directed.

(d)     It shall not be necessary for the Servicer to seek the consent of the Depositor, the Trustee, the Master Servicer, the Securities Administrator or other parties hereto to the utilization of a Subcontractor. The Servicer shall give prompt written notice to the Master Servicer and the Depositor of the appointment of any Subcontractor and provide a written description (in form and substance satisfactory to the Depositor) of the role and function of each Subcontractor specifying (i) which, if any, of such Subcontractors are Servicing Function Participants, (ii) which elements of the Servicing Criteria set forth under Item 1122(d) of Regulation AB will be addressed in assessments and attestations of compliance with Relevant Servicing Criteria provided by such Subcontractor identified pursuant to clause (i) of this paragraph.

(e)     As a condition to the utilization of any Subcontractor determined to be a Servicing Function Participant, the Servicer shall cause any such Subcontractor used by the Servicer (or by any Subservicer) to comply with the provisions of Sections 3.22, 3.23, 3.24, 3.30, 6.05, 6.06, 7.01(i) and Exhibit S of this Agreement to the same extent as if such Subcontractor were the Servicer. The Servicer shall be responsible for obtaining from each Subcontractor and delivering the Securities Administrator, the Master Servicer and the Depositor any assessments and attestations of compliance required to be delivered by such Subcontractor pursuant to Sections 3.22 and 3.23, in each case as and when required to be delivered.

Section 3.03   Successor Subservicers. The Servicer shall be entitled to terminate any Subservicing Agreement and the rights and obligations of any Subservicer pursuant to any Subservicing Agreement in accordance with the terms and conditions of such Subservicing Agreement. In the event of termination of any Subservicer, all servicing obligations of such Subservicer shall be assumed simultaneously by the Servicer without any act or deed on the part of such Subservicer or Servicer, and the Servicer either shall service directly the related Mortgage Loans or shall enter into a Subservicing Agreement with a successor subservicer which qualifies under Section 3.02.

Any Subservicing Agreement shall include the provision that such agreement may be immediately terminated by the Master Servicer without fee, in accordance with the terms of this Agreement, in the event that the Servicer shall, for any reason, no longer be the Servicer (including termination due to an Event of Default).

Section 3.04   Liability of the Servicer. Notwithstanding any subservicing agreement or the provisions of this Agreement relating to agreements or arrangements between the Servicer and a Subservicer, Subcontractor or other third party or reference to actions taken through a Subservicer, a Subcontractor, another third party or otherwise, the Servicer shall remain obligated and primarily liable to the Trustee and the Trust Fund for the servicing and administering of the Mortgage Loans in accordance with the provisions hereof without diminution of such obligation or liability by virtue of any subservicing, subcontracting or other

NC04OAPSA

Certificate Insurer shall not be required (i) to cure any ambiguity or defect in a Sub-Servicing Agreement, (ii) to correct, modify or supplement any provisions of a Sub-Servicing Agreement, or (iii) to make any other provisions with respect to matters or questions arising under a Sub-Servicing Agreement, which, in each case, shall not be inconsistent with the provisions of this Agreement. Any variation without the consent of the Holders of Certificates entitled to at least 66% of the Voting Rights or the Certificate Insurer from the provisions set forth in Section 3.08 relating to insurance or priority requirements of Sub-Servicing Accounts, or credits and charges to the Sub-Servicing Accounts or the timing and amount of remittances by the Sub-Servicers to the Servicer, are conclusively deemed to be inconsistent with this Agreement and therefore prohibited. The Servicer shall deliver to the Trustee, the Certificate Insurer and the Guarantor copies of all Sub-Servicing Agreements, and any amendments or modifications thereof, promptly upon the Servicer's execution and delivery of such instruments.

(b)     As part of its servicing activities hereunder, the Servicer, for the benefit of the Trustee, the Certificateholders and the Certificate Insurer, shall enforce the obligations of each Sub-Servicer under the related Sub-Servicing Agreement, including, without limitation, any obligation of a Sub-Servicer to make advances in respect of delinquent payments as required by a Sub-Servicing Agreement. Such enforcement, including, without limitation, the legal prosecution of claims, termination of Sub-Servicing Agreements, and the pursuit of other appropriate remedies, shall be in such form and carried out to such an extent and at such time as the Servicer, in its good faith business judgment, would require were it the owner of the related Mortgage Loans. The Servicer shall pay the costs of enforcing the obligations of a Sub-Servicer at its own expense, and shall be reimbursed therefor only (i) from a general recovery resulting from such enforcement, to the extent, if any, that such recovery exceeds all amounts due in respect of the related Mortgage Loans, or (ii) from a specific recovery of costs, expenses or attorneys' fees against the party against whom such enforcement is directed.

SECTION 3.03.     Successor Sub-Servicers.

The Servicer, with the consent of the Controlling Person (as provided in Section 1.04), shall be entitled to terminate any Sub-Servicing Agreement and the rights and obligations of any Sub-Servicer pursuant to any Sub-Servicing Agreement in accordance with the terms and conditions of such Sub-Servicing Agreement. In the event of termination of any Sub-Servicer, all servicing obligations of such Sub-Servicer shall be assumed simultaneously by the Servicer without any act or deed on the part of such Sub-Servicer or the Servicer, and the Servicer either shall service directly the related Mortgage Loans or shall enter into a Sub-Servicing Agreement with a successor Sub-Servicer which qualifies under Section 3.02.

Any Sub-Servicing Agreement shall include the provision that such agreement may be immediately terminated by the Trustee (if the Trustee is acting as a Servicer) without fee, in accordance with the terms of this Agreement, in the event that the Servicer (or the Trustee, if it is then acting as a Servicer) shall, for any reason, no longer be the Servicer (including termination due to a Servicer Event of Default).

SECTION 3.04.     Liability of the Servicer.

Notwithstanding any Sub-Servicing Agreement or the provisions of this Agreement

DB_NFHA00100607

NC040APSA

relating to agreements or arrangements between the Servicer and a Sub-Servicer or reference to actions taken through a Sub-Servicer or otherwise, the Servicer shall remain obligated and primarily liable to the Trustee, the Certificateholders and the Certificate Insurer for the servicing and administering of the Mortgage Loans in accordance with the provisions of Section 3.01 without diminution of such obligation or liability by virtue of such Sub-Servicing Agreements or arrangements or by virtue of indemnification from the Sub-Servicer and to the same extent and under the same terms and conditions as if the Servicer alone were servicing and administering the Mortgage Loans. The Servicer shall be entitled to enter into any agreement with a Sub-Servicer for indemnification of the Servicer by such Sub-Servicer and nothing contained in this Agreement shall be deemed to limit or modify such indemnification.

SECTION 3.05.     No Contractual Relationship Between Sub-Servicers, the Trustee, the Certificate Insurer, the Guarantor or the Certificateholders.

Any Sub-Servicing Agreement that may be entered into and any transactions or services relating to the Mortgage Loans involving a Sub-Servicer in its capacity as such shall be deemed to be between the Sub-Servicer and the Servicer alone, and the Trustee and the Certificateholders, the Certificate Insurer and the Guarantor shall not be deemed parties thereto and shall have no claims, rights, obligations, duties or liabilities with respect to the Sub-Servicer except as set forth in Section 3.06. The Servicer shall be solely liable for all fees owed by it to any Sub-Servicer, irrespective of whether the Servicer's compensation pursuant to this Agreement is sufficient to pay such fees.

SECTION 3.06.     Assumption or Termination of Sub-Servicing Agreements by the Trustee.

In the event the Servicer shall for any reason no longer be the Servicer (including by reason of the occurrence of a Servicer Event of Default), the Trustee, its designee or other successor Servicer shall thereupon assume all of the rights and obligations of the Servicer under each Sub-Servicing Agreement that the Servicer may have entered into, unless the Trustee, such designee or other successor Servicer elects to terminate any Sub-Servicing Agreement in accordance with its terms as provided in Section 3.03. Upon such assumption, the Trustee, its designee or the successor Servicer for the Trustee appointed pursuant to Section 7.02 shall be deemed, subject to Section 3.03, to have assumed all of the Servicer's interest therein and to have replaced the Servicer as a party to each Sub-Servicing Agreement to the same extent as if each Sub-Servicing Agreement had been assigned to the assuming party, except that (i) the Servicer shall not thereby be relieved of any liability or obligations under any Sub-Servicing Agreement that arose before it ceased to be the Servicer and (ii) none of the Trustee, its designee or any successor Servicer shall be deemed to have assumed any liability or obligation of the Servicer that arose before it ceased to be the Servicer.

The Servicer at its expense shall, upon request of the Trustee, deliver to the assuming party all documents and records relating to each Sub-Servicing Agreement and the Mortgage Loans then being serviced and an accounting of amounts collected and held by or on behalf of it, and otherwise use its best efforts to effect the orderly and efficient transfer of the Sub-Servicing Agreements to the assuming party.

DB_NFHA00100608

FR0606 PSA

report and related accountant's attestation required to be delivered by such Subcontractor under Section 3.23, in each case as and when required to be delivered.

Notwithstanding the foregoing, if the Servicer engages a Subcontractor in connection with the performance of any of its duties under this Agreement, the Servicer shall be responsible for determining whether such Subcontractor is a "servicer" within the meaning of Item 1101 of Regulation AB and whether any such affiliate or third-party vendor meets the criteria in Item 1108(a)(2)(i) through (iii) of Regulation AB. If the Servicer determines, pursuant to the preceding sentence, that such Subcontractor is a "servicer" within the meaning of Item 1101 of Regulation AB and meets the criteria in Item 1108(a)(2)(i) through (iii) of Regulation AB, then such Subcontractor shall be deemed to be a Subservicer for purposes of this Agreement, the engagement of such Subservicer shall not be effective unless and until notice is given pursuant to Section 3.02(a) and the Servicer shall comply with Section 3.02(d) with respect thereto.

Section 3.03    Successor Subservicers. The Servicer shall be entitled to terminate any Subservicing Agreement and the rights and obligations of any Subservicer pursuant to any Subservicing Agreement in accordance with the terms and conditions of such Subservicing Agreement; provided, however, that during the period when reports are required to be filed for the Trust under the Exchange Act, the termination, resignation or removal of a Subservicer shall be not be effective until 30 days after written notice is received by both the Depositor and the Trustee that contains all information reasonably necessary to enable the Trustee, pursuant to Section 8.12(g), to accurately and timely report the event under Item 6.02 of Form 8-K pursuant to the Exchange Act (if such reports under the Exchange Act are required to be filed under the Exchange Act). In the event of termination of any Subservicer, all servicing obligations of such Subservicer shall be assumed simultaneously by the Servicer without any act or deed on the part of such Subservicer or the Servicer, and the Servicer either shall service directly the related Mortgage Loans or shall enter into a Subservicing Agreement with a successor Subservicer which qualifies under Section 3.02.

Any Subservicing Agreement shall include the provision that such agreement may be immediately terminated by the Depositor or the Trustee without fee, in accordance with the terms of this Agreement, in the event that the Servicer which is a party to the related Subservicing Agreement shall, for any reason, no longer be the Servicer (including termination due to an Event of Default).

Section 3.04    Liability of the Servicer. Notwithstanding any Subservicing Agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Servicer and a Subservicer or reference to actions taken through a Subservicer or otherwise, the Servicer shall remain obligated and primarily liable to the Trustee for the servicing and administering of the Mortgage Loans in accordance with the provisions of Section 3.01 without diminution of such obligation or liability by virtue of such Subservicing Agreements or arrangements or by virtue of indemnification from the Subservicer and to the same extent and under the same terms and conditions as if the Servicer alone were servicing and administering such Mortgage Loans. The Servicer shall be entitled to enter into any agreement with a Subservicer for indemnification of the Servicer by such Subservicer and nothing contained in this Agreement shall be deemed to limit or modify such indemnification.

-65-

DB_NFHA00032932

FF0606PSA

Property either judicially or non-judicially, and the Servicer has delivered to the Trustee a certificate of a Servicing Officer certifying as to the name and address of the Person to which such Mortgage File or such document was delivered and the purpose or purposes of such delivery. Upon receipt of a certificate of a Servicing Officer stating that such Mortgage Loan was liquidated and that all amounts received or to be received in connection with such liquidation that are required to be deposited into the Collection Account have been so deposited, or that such Mortgage Loan has become an REO Property, a copy of the Request for Release shall be released by the Trustee to the Servicer or its designee. Upon receipt of a Request for Release under this Section 3.16, the Trustee shall deliver the related Custodial File to the requesting Servicer by regular mail, unless the Servicer requests that the Trustee deliver such Custodial File to the Servicer by overnight courier (in which case such delivery shall be at the Servicer's expense); provided, however, that in the event the Servicer has not previously received copies of the relevant Mortgage Loan Documents necessary to service the related Mortgage Loan in accordance with Accepted Servicing Practices, the Depositor shall use reasonable efforts to cause the Responsible Party to reimburse the Servicer for any overnight courier charges incurred for the requested Custodial Files.

Upon written certification of a Servicing Officer, the Trustee shall execute and deliver to the Servicer copies of any court pleadings, requests for trustee's sale or other documents reasonably necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity, or shall execute and deliver to the Servicer a power of attorney sufficient to authorize the Servicer to execute such documents on its behalf. Each such certification shall include a request that such pleadings or documents be executed by the Trustee and a statement as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.17    Title, Conservation and Disposition of REO Property.  (a) This Section shall apply only to REO Properties acquired for the account of the Trustee and shall not apply to any REO Property relating to a Mortgage Loan which was purchased or repurchased from the Trustee pursuant to any provision hereof.  In the event that title to any such REO Property is acquired, the Servicer shall cause the deed or certificate of sale to be issued in the name of the Trustee, on behalf of the Certificateholders, or the Trustee's nominee.

(b)    The Servicer shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale.  The Servicer, either itself or through an agent selected by the Servicer, shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed.  The Servicer shall attempt to sell the same (and may temporarily rent the same for a period not greater than one year, except as otherwise provided below) on such terms and conditions as the Servicer deems to be in the best interest of the Trustee.  The Servicer shall notify the Trustee from time to time as to the status of each REO Property.

DB_NFHA00032945

FF0606PSA

supervision, and (ii) to the best of such officers' knowledge, based on such review, the Servicer or Subservicer, as applicable, has fulfilled all of its obligations under this Agreement or the applicable Subservicing Agreement, as the case may be, in all material respects throughout such year, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officers and the nature and status thereof. Promptly after receipt of each such Officer's Certificate, the Depositor shall review such Officer's Certificate and, if applicable, consult with the Servicer as to the nature of any defaults by the Servicer or any related Subservicer in the fulfillment of any of the Servicer's or Subservicer's obligations. The obligations of the Servicer or Subservicer under this Section apply to each Servicer and Subservicer that serviced a Mortgage Loan during the applicable period, whether or not the Servicer or Subservicer is acting as the Servicer or Subservicer, as applicable, at the time such Officer's Certificate is required to be delivered.

Section 3.23 <u>Annual Reports on Assessment of Compliance with Servicing Criteria; Annual Independent Public Accountants' Attestation Report</u> (a) Not later than March 15th of each calendar year commencing in 2007, the Servicer and the Trustee each shall deliver, and the Servicer shall cause each Subservicer engaged by the Servicer and the Servicer and the Trustee shall cause each Subcontractor utilized by the Servicer (or by any such Subservicer) or the Trustee, as applicable, and determined by the Servicer or the Trustee, as applicable, pursuant to Section 3.02(e) to be "participating in a servicing function" within the meaning of Item 1122 of Regulation AB (in each case, a "<u>Servicing Function Participant</u>"), to deliver, each at its own expense, to the Depositor and the Trustee, a report on an assessment of compliance with the Servicing Criteria applicable to it that contains (A) a statement by such party of its responsibility for assessing compliance with the Servicing Criteria applicable to it, (B) a statement that such party used the Servicing Criteria to assess compliance with the applicable Servicing Criteria, (C) such party's assessment of compliance with the applicable Servicing Criteria as of and for the period ending the end of the fiscal year covered by the Form 10-K required to be filed pursuant to Section 8.12, including, if there has been any material instance of noncompliance with the applicable Servicing Criteria, a discussion of each such failure and the nature and status thereof, and (D) a statement that a registered public accounting firm has issued an attestation report on such Person's assessment of compliance with the applicable Servicing Criteria as of and for such period. Each such assessment of compliance report shall be addressed to the Depositor and signed by an authorized officer of the applicable company, and shall address each of the applicable Servicing Criteria set forth on Exhibit T hereto, or as set forth in the notification furnished to the Depositor and the Trustee pursuant to Section 3.23(c). The Servicer and the Trustee hereby acknowledge and agree that their respective assessments of compliance will cover the items identified on Exhibit T hereto as being covered by such party. The parties to this Agreement acknowledge that where a particular Servicing Criteria has multiple components, each party's assessment of compliance (and related attestation of compliance) will relate only to those components that are applicable to such party. Promptly after receipt of each such report on assessment of compliance, (i) the Depositor shall review each such report and, if applicable, consult with the Servicer or the Trustee as to the nature of any material instance of noncompliance with the Servicing Criteria applicable to it (and each Subservicer or Servicing Function Participant engaged or utilized by the Servicer, such Subservicer or the Trustee, as applicable), as the case may be.

DB_NFHA00032949

LB606PSA

Liquidation Proceeds or Gross Subsequent Recoveries to the extent permitted by Section 3.11(a)(iii) and out of amounts derived from the operation and sale of an REO Property to the extent permitted by Section 3.23. The right to receive the Servicing Fee may not be transferred in whole or in part except in connection with the transfer of all of the Servicer's responsibilities and obligations under this Agreement; provided, however, that the Servicer may pay from the Servicing Fee any amounts due to a Sub-Servicer pursuant to a Sub-Servicing Agreement entered into under Section 3.02.

Additional servicing compensation in the form of Prepayment Interest Excess, assumption or modification fees, late payment charges, NSF fees, reconveyance fees and other similar fees and charges (other than Prepayment Charges) shall be retained by the Servicer only to the extent such fees or charges are received by the Servicer. The Servicer shall also be entitled pursuant to Section 3.11(a)(iv) to withdraw from the Collection Account, and pursuant to Section 3.23(b) to withdraw from any REO Account, as additional servicing compensation, interest or other income earned on deposits therein, subject to Section 3.12. The Servicer shall be required to pay all expenses incurred by it in connection with its servicing activities hereunder (including premiums for the insurance required by Section 3.14, to the extent such premiums are not paid by the related Mortgagors or by a Sub-Servicer, it being understood however, that payment of such premiums by the Servicer shall constitute Servicing Advances and servicing compensation of each Sub-Servicer, and to the extent provided herein and in Section 8.05, the fees and expenses of the Trustee) and shall not be entitled to reimbursement therefor except as specifically provided herein.

Section 3.19    Reports to the Trustee; Collection Account Statements.

Not later than fifteen days after each Distribution Date, the Servicer shall forward to the Trustee, the NIMS Insurer and the Depositor a statement prepared by the Servicer setting forth the status of the Collection Account as of the close of business on such Distribution Date and showing, for the period covered by such statement, the aggregate amount of deposits into and withdrawals from the Collection Account of each category of deposit specified in Section 3.10(a) and each category of withdrawal specified in Section 3.11. Such statement may be in the form of the then current Fannie Mae Monthly Accounting Report for its Guaranteed Mortgage Pass-Through Program with appropriate additions and changes, and shall also include information as to the aggregate of the outstanding principal balances of all of the Mortgage Loans as of the last day of the calendar month immediately preceding such Distribution Date. Copies of such statement shall be provided by the Trustee to any Certificateholder and to any Person identified to the Trustee as a prospective transferee of a Certificate, upon request at the expense of the requesting party, provided such statement is delivered by the Servicer to the Trustee.

Section 3.20    Annual Statement as to Compliance.

The Servicer shall deliver to the Trustee, the Depositor, the NIMS Insurer and each Rating Agency, not later than March 15 of each calendar year beginning in the year following the year of execution of this Agreement through and including the calendar year in which a Form 15 Suspension Notice is filed with respect to the Trust and April 30 of each calendar year thereafter, an Officer's Certificate (an "Annual Statement of Compliance") stating that (i) a review of the activities of the Servicer during the preceding calendar year and of performance under this Agreement or other applicable servicing agreement, if any, has been

HBO 604 PSA

Request for Release may be in an electronic format in a form acceptable to the Custodian, release the related Custodial File to the Servicer, and the Custodian shall, at the direction of the Servicer, execute such documents as shall be necessary to the prosecution of any such proceedings and the Servicer shall retain the Mortgage File in trust for the benefit of the Trustee. Such Request for Release shall obligate the Servicer to return each and every document previously requested from the Custodial File to the Custodian when the need therefor by the Servicer no longer exists, unless the Mortgage Loan has been liquidated and the Liquidation Proceeds relating to the Mortgage Loan have been deposited in the Collection Account or the Mortgage File or such document has been delivered to an attorney, or to a public trustee or other public official as required by law, for purposes of initiating or pursuing legal action or other proceedings for the foreclosure of the Mortgaged Property either judicially or non-judicially, and the Servicer has delivered to the Custodian a certificate of a Servicing Officer certifying as to the name and address of the Person to which such Mortgage File or such document was delivered and the purpose or purposes of such delivery. Upon receipt of a certificate of a Servicing Officer stating that such Mortgage Loan was liquidated and that all amounts received or to be received in connection with such liquidation that are required to be deposited into the Collection Account have been so deposited, or that such Mortgage Loan has become an REO Property, a copy of the Request for Release shall be released by the Custodian to the Servicer or its designee.

Upon written certification of a Servicing Officer, the Trustee shall execute and deliver to the Servicer copies of any court pleadings, requests for trustee's sale or other documents reasonably necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity, or shall exercise and deliver to the Servicer a power of attorney sufficient to authorize the Servicer to execute such documents on its behalf. Each such certification shall include a request that such pleadings or documents be executed by the Trustee and a statement as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.17    Title, Conservation and Disposition of REO Property.  (a) This Section shall apply only to REO Properties acquired for the account of the Trustee and shall not apply to any REO Property relating to a Mortgage Loan which was purchased or repurchased from the Trustee pursuant to any provision hereof. In the event that title to any such REO Property is acquired, the deed or certificate of sale shall be issued to the Trust, or if not permitted by law, to Deutsche Bank National Trust Company (or, if applicable, the name of the successor Trustee) as Trustee for HSI Asset Securitization Corporation Trust 2006-OPT4 Mortgage Pass-Through Certificates, Series 2006-OPT4, or to its nominee, for the benefit of the Certificateholders.

(b)    The Servicer shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale. The Servicer, either itself or through an agent selected by the Servicer, shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed. The Servicer shall attempt to sell the same (and may temporarily rent the same for a period not greater than one year, except as otherwise provided below) on such terms and conditions as the Servicer deems to be in the best interest of the Trustee on behalf of the Certificateholders. The Servicer shall notify the Trustee from time to time as to the status of each REO Property.

(c)    The Servicer shall segregate and hold all funds collected and received in connection with the operation of any REO Property separate and apart from its own funds and general assets and shall deposit such funds in the Collection Account.

(d)    The Servicer shall deposit net of reimbursement to the Servicer for any related outstanding Servicing Advances and unpaid Servicing Fees provided in Section 3.11, or cause to be deposited in the Collection Account, in no event later than two Business Days after the deposit of such funds into the clearing account, all revenues received with respect to the related REO Property and shall withdraw therefrom funds necessary for the proper operation, management and maintenance of the REO Property.

DB_NFHA00061788



Proceeds relating to the Mortgage Loan have been deposited in the related Collection Account or the Mortgage File or such document has been delivered to an attorney, or to a public trustee or other public official as required by law, for purposes of initiating or pursuing legal action or other proceedings for the foreclosure of the Mortgaged Property either judicially or non-judicially, and the Servicer has delivered to the Trustee a certificate of a Servicing Officer certifying as to the name and address of the Person to which such Mortgage File or such document was delivered and the purpose or purposes of such delivery. Upon receipt of a certificate of a Servicing Officer stating that such Mortgage Loan was liquidated and that all amounts received or to be received in connection with such liquidation that are required to be deposited into the related Collection Account have been so deposited, or that such Mortgage Loan has become an REO Property, a copy of the Request for Release of Documents shall be released by the Trustee to the Servicer or its designee upon request therefor.

Upon written certification of a Servicing Officer, the Trustee shall execute and deliver to the Servicer any court pleadings, requests for trustee's sale or other documents reasonably necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity, or shall exercise and deliver to the Servicer a power of attorney sufficient to authorize the Servicer to execute such documents on its behalf. Each such certification shall include a request that such pleadings or documents be executed by the Trustee and a statement as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.17    Title, Conservation and Disposition of REO Property.

(a) This Section shall apply only to REO Properties acquired for the account of the Trustee and shall not apply to any REO Property relating to a Mortgage Loan which was purchased or repurchased from the Trustee pursuant to any provision hereof. In the event that title to any such REO Property is acquired, the deed or certificate of sale shall be issued to the Servicer, or to its nominee, on behalf of the Trustee.

(b) The Servicer shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale. The Servicer, either itself or through an agent selected by the Servicer, shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed. The Servicer shall attempt to sell the same (and may temporarily rent the same for a period not greater than one year, except as otherwise provided below) on such terms and conditions as the Servicer deems to be in the best interest of the Trustee. The Servicer shall notify the Trustee from time to time as to the status of each REO Property.

(c) The Servicer shall use its best efforts to dispose of the REO Property as soon as possible (subject to the Trustee's right to veto any proposed sale of REO Property) and shall

DB_NFHA00087560

HBO600PSA

Custodian of a Request for Release, which Request for Release may be in an electronic format in a form acceptable to the Custodian, release the related Custodial File to the Servicer, and the Custodian shall, at the direction of the Servicer, execute such documents as shall be necessary to the prosecution of any such proceedings and the Servicer shall retain the Mortgage File in trust for the benefit of the Trustee. Such Request for Release shall obligate the Servicer to return each and every document previously requested from the Custodial File to the Custodian when the need therefor by the Servicer no longer exists, unless the Mortgage Loan has been liquidated and the Liquidation Proceeds relating to the Mortgage Loan have been deposited in the Collection Account or the Mortgage File or such document has been delivered to an attorney, or to a public trustee or other public official as required by law, for purposes of initiating or pursuing legal action or other proceedings for the foreclosure of the Mortgaged Property either judicially or non-judicially, and the Servicer has delivered to the Custodian a certificate of a Servicing Officer certifying as to the name and address of the Person to which such Mortgage File or such document was delivered and the purpose or purposes of such delivery. Upon receipt of a certificate of a Servicing Officer stating that such Mortgage Loan was liquidated and that all amounts received or to be received in connection with such liquidation that are required to be deposited into the Collection Account have been so deposited, or that such Mortgage Loan has become an REO Property, a copy of the Request for Release shall be released by the Custodian to the Servicer or its designee.

Upon written certification of a Servicing Officer, the Trustee shall execute and deliver to the Servicer copies of any court pleadings, requests for trustee's sale or other documents reasonably necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity, or shall exercise and deliver to the Servicer a power of attorney sufficient to authorize the Servicer to execute such documents on its behalf. Each such certification shall include a request that such pleadings or documents be executed by the Trustee and a statement as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.17 <u>Title, Conservation and Disposition of REO Property</u>. (a) This Section shall apply only to REO Properties acquired for the account of the Trustee and shall not apply to any REO Property relating to a Mortgage Loan which was purchased or repurchased from the Trustee pursuant to any provision hereof. In the event that title to any such REO Property is acquired, the deed or certificate of sale shall be issued to the Trust, or if not permitted by law, to Deutsche Bank National Trust Company (or, if applicable, the name of the successor Trustee) as Trustee for HSI Asset Securitization Corporation Trust 2006-OPT2 Mortgage Pass-Through Certificates, Series 2006-OPT2, or to its nominee, for the benefit of the Certificateholders.

(b) The Servicer shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale. The Servicer, either itself or through an agent selected by the Servicer, shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects

BC04C1PSA

such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.17    Title, Conservation and Disposition of REO Property. (a) This Section shall apply only to REO Properties acquired for the account of the Trustee and shall not apply to any REO Property relating to a Mortgage Loan which was purchased or repurchased from the Trustee pursuant to any provision hereof. In the event that title to any such REO Property is acquired, the Servicer shall cause the deed or certificate of sale to be issued in the name of the Trustee, on behalf of the Certificateholders.

(b)    The Servicer shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale. The Servicer, either itself or through an agent selected by the Servicer, shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed. The Servicer shall attempt to sell the same (and may temporarily rent the same for a period not greater than one year, except as otherwise provided below) on such terms and conditions as the Servicer deems to be in the best interest of the Trustee. The Servicer shall notify the Trustee from time to time as to the status of each REO Property.

(c)    The Servicer shall use its best efforts to dispose of the REO Property as soon as possible and shall sell such REO Property in any event within one year after title has been taken to such REO Property, unless the Servicer determines, and gives an appropriate notice to the Trustee to such effect, that a longer period is necessary for the orderly liquidation of such REO Property. If a period longer than one year is permitted under the foregoing sentence and is necessary to sell any REO Property, the Servicer shall report to the Trustee as to the progress being made in selling such REO Property.

(d)    The Servicer shall segregate and hold all funds collected and received in connection with the operation of any REO Property separate and apart from its own funds and general assets and shall deposit such funds in the Collection Account.

(e)    The Servicer shall deposit net of reimbursement to the Servicer for any related outstanding Servicing Advances and unpaid Servicing Fees provided in Section 3.11, or cause to be deposited, on a daily basis in the Collection Account all revenues received with respect to the related REO Property and shall withdraw therefrom funds necessary for the proper operation, management and maintenance of the REO Property.

(f)    The Servicer, upon an REO Disposition, shall be entitled to reimbursement for any related unreimbursed Servicing Advances as well as any unpaid Servicing Fees from proceeds received in connection with the REO Disposition, as further provided in Section 3.11.

(g)    Any net proceeds from an REO Disposition which are in excess of the unpaid principal balance of the related Mortgage Loan plus all unpaid REO Imputed Interest

Depositor or its subsidiaries; or (iii) results in the creation or imposition of any lien, charge or encumbrance which would have a material adverse effect upon the Mortgage Loans or any documents or instruments evidencing or securing the Mortgage Loans;

(f)     There are no actions, suits or proceedings before or against or investigations of, the Depositor pending, or to the knowledge of the Depositor, threatened, before any court, administrative agency or other tribunal, and no notice of any such action, which, in the Depositor's reasonable judgment, might materially and adversely affect the performance by the Depositor of its obligations under this Agreement, or the validity or enforceability of this Agreement;

(g)     The Depositor is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency that may materially and adversely affect its performance hereunder; and

(h)     Immediately prior to the transfer and assignment by the Depositor to the Trustee on the Closing Date, the Depositor had good title to, and was the sole owner of each Mortgage Loan, free of any interest of any other Person, and the Depositor has transferred all right, title and interest in each Mortgage Loan to the Trustee.  The transfer of each Mortgage Note and each Mortgage as and in the manner contemplated by this Agreement is sufficient either (i) fully to transfer to the Trustee, for the benefit of the Certificateholders, all right, title, and interest of the Depositor thereto as note holder and mortgagee or (ii) to grant to the Trustee, for the benefit of the Certificateholders, the security interest referred to in Section 10.04.

It is understood and agreed that the representations, warranties and covenants set forth in this Section 2.07 shall survive delivery of the respective Custodial Files to the Trustee or to a custodian, as the case may be, and shall inure to the benefit of the Trustee.

## ARTICLE III

## ADMINISTRATION AND SERVICING
## OF MORTGAGE LOANS

Section 3.01   <u>Servicer to Service Mortgage Loans</u>.  (a) For and on behalf of the Certificateholders, the Servicer shall service and administer the Mortgage Loans in accordance with the terms of this Agreement and the respective Mortgage Loans and, to the extent consistent with such terms, in compliance with all applicable federal, state and local laws, and in the same manner in which it services and administers similar mortgage loans for its own portfolio, giving due consideration to customary and usual standards of practice of mortgage lenders and loan servicers administering similar mortgage loans but without regard to:

(i)     any relationship that the Servicer, any Subservicer or any Affiliate of the Servicer or any Subservicer may have with the related Mortgagor;

(ii)     the ownership or non-ownership of any Certificate by the Servicer or any Affiliate of the Servicer;

GSO4AJPSA

decree which may be entered against it or the Responsible Party, the Depositor or the Trustee in respect of such claim.

## ARTICLE VII

## DEFAULT

Section 7.01    Events of Default.    "Event of Default," wherever used herein, means any one of the following events:

(a)    any failure by the Servicer to remit to the Trustee any payment required to be made under the terms of this Agreement which continues unremedied for a period of one Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Depositor, or by the Trustee, or to the Servicer, the Depositor and the Trustee by Certificateholders entitled to at least 25% of the Voting Rights; or

(b)    the failure on the part of the Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer set forth in this Agreement which continues unremedied for a period of thirty days after the earlier of (i) the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Depositor or by the Trustee, or to the Servicer, the Depositor and the Trustee by Certificateholders of Certificates entitled to at least 25% of the Voting Rights and (ii) actual knowledge of such failure by a Servicing Officer of the Servicer; provided, however, that in the case of a failure or breach that cannot be cured within 30 days after notice or actual knowledge by the Servicer, the cure period may be extended for an additional 30 days upon delivery by the Servicer to the Trustee of a certificate to the effect that the Servicer believes in good faith that the failure or breach can be cured within such additional time period and the Servicer is diligently pursuing remedial action; or

(c)    the failure by the Servicer in any month, (i) to deliver to the Trustee and the Depositor the Data File and the Market Value Change Report on the Data File Delivery Date, or (ii) to deliver the Servicer Remittance Report to the Trustee, and in each case such failure continues uncured for more than 30 days after written notice of such failure.

(d)    a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Servicer and such decree or order shall have remained in force undischarged or unstayed for a period of sixty days; or

(e)    the Servicer shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Servicer or of or relating to all or substantially all of its property; or

GSO4A2PSA

(f)     the Servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations; or

(g)     any failure of the Servicer to make any P&I Advance on any Remittance Date required to be made from its own funds pursuant to Section 4.01 which continues unremedied for one Business Day immediately following the Remittance Date; or

(h)     a breach of any representation and warranty of the Servicer referred to in Section 2.03(a), which materially and adversely affects the interests of the Certificateholders and which continues unremedied for a period of thirty days after the date upon which written notice of such breach is given to the Servicer by the Trustee or by the Depositor, or to the Servicer, the Trustee and the Depositor by Certificateholders entitled to at least 25% of the Voting Rights in the Certificates; or

(i)     any reduction, withdrawal or qualification of the servicer rating of a Servicer by any Rating Agency which results in the inability of a Servicer to act as a primary or special servicer for or any mortgage-backed or asset-backed transaction rated or to be rated by any Rating Agency.

If an Event of Default described in clauses (a) through (i) of this Section 7.01 shall occur, then, and in each and every such case, so long as such Event of Default shall not have been remedied, the Trustee may, or at the direction of Certificateholders entitled to a majority of the Voting Rights the Trustee shall, by notice in writing to the Servicer (with a copy to each Rating Agency), terminate all of the rights and obligations of the Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof, other than its rights as a Certificateholder hereunder; provided, however, that the Trustee shall not be required to give written notice to the Servicer of the occurrence of an Event of Default described in clauses (b) through (h) of this Section 7.01 unless and until a Responsible Officer of the Trustee has actual knowledge of the occurrence of such an Event of Default. In the event that a Responsible Officer of the Trustee has actual knowledge of the occurrence of an Event of Default described in clause (a) of this Section 7.01, the Trustee shall give written notice to the Servicer of the occurrence of such an event within one Business Day of the first day on which such Responsible Officer obtains actual knowledge of such occurrence; provided that failure to give such notice shall not constitute a waiver of such Event of Default. The Trustee, upon a Responsible Officer having actual knowledge of such default, shall deliver a written notice to the Servicer of the default on any Remittance Date on which a Servicer fails to make any deposit or payment required pursuant to this Agreement (including, but not limited to Advances, to the extent required by this Agreement); provided, however, that if an Event of Default occurs due to the failure of a Servicer to make an Advance to the extent required, the Trustee, as successor Servicer, or another successor Servicer shall, prior to the next Distribution Date, immediately make such Advance. Any such notice to a Servicer shall also be given to each Rating Agency and the Depositor. Notwithstanding any other provision of this Agreement, any remedy with respect to clauses (a) or (g) of this Section 7.01 shall be effective only if taken no later than 8:00 AM Eastern time on the Business Day immediately following (i) with respect to clause (a) of this Section 7.01, the date of written notice to the Servicer, or (ii) with respect to clause (g) of

# Exhibit B

to Plaintiffs' Response to Supplemental Memorandum in Support of Motion to Dismiss Amended Complaint Filed by the Deutsche Bank Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA. | Case No. 18 CV 839 |
| Plaintiffs, | Judge Harry D. Leinenweber<br><br>Magistrate Judge Sidney I. Schenkier<br><br><br>Jury Trial Demanded |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC; and ALTISOURCE SOLUTIONS, INC. | |
| Defendants. | |

**DECLARATION OF LINDSAY AUGUSTINE**

LINDSAY AUGUSTINE, under penalty of perjury, states based upon personal knowledge that the following facts are true and correct:

1. I am the Associate Director of Enforcement & Investigations for the National Fair Housing Alliance ("NFHA).

2. In this position, I have been involved in all aspects of the investigation of the exterior maintenance and marketing of Deutsche Bank REO properties that is at issue in this case. During the course of these inspections, NFHA has investigated over 1,100 properties.

3. I reviewed information collected by NFHA regarding the 19 properties identified in the Kliebard Declaration, submitted with the Supplemental Memorandum in Support of Motion to Dismiss Amended Complaint by Defendants Deutsche Bank National Trust Company, as Trustee, and Deutsche Bank Trust Company Americas, as Trustee.

4. I determined that as to six properties referenced in the Kliebard declaration, the property address was entered incorrectly in the NFHA REO database, although the correct property was, in fact, inspected. These properties are:

- 4921 N 65th St, Milwaukee WI 53218 – Should be **4912** N 65th St, Milwaukee WI 53218
- 3807 N 37th St, Milwaukee WI 53216 – Should be 3708 N **57**$^{th}$ St, Milwaukee WI 53216
- 4280 E 167th St, Cleveland OH 44128 – Should be 4280 E **160**$^{th}$ St, Cleveland OH 44128
- 56 S Liberty St, Elgin IL 60120 – Should be **506** S Liberty St, Elgin IL 60120
- 8828 Dee Rd, Des Plaines IL 60016 – Should be 8828 Dee Rd **Unit E**, Des Plaines IL 60016
- 2101 S Maple Island Rd, Muskegon MI 49442 – Should be **2102** S Maple Island Rd, Muskegon MI 49442.

5. I determined that as to six properties referenced in the Kliebard declaration, Deutsche

1

Bank appears not to have been the owner at the time of the NFHA inspection. The reasons for this occurring included the sale of the property prior to the inspection and one property being returned to the original owner. These six properties are:

- 8307 Laura Ln, District Heights MD 20747

- 946 Burton St SE, Grand Rapids MI 49507

- 1905 S 9th St, Milwaukee WI 53204

- 1111 Bernath Pkwy, Toledo OH 43615

- 1553 NW 15th Ave, Fort Lauderdale FL 33311

- 1900 N Payson St, Baltimore MD 21217.

6. As to four of the properties mentioned in the Kliebard Declaration, it appears from our information that Deutsche Bank was, in fact, the trustee at the time of the inspection. It is possible that one or more of the addresses was confused by Deutsche Bank with similar sounding addresses. In any event, I have saved the deed transfer documents pertaining to these properties when accessible. These four properties are:

- 4808 Sugartree Dr, Dayton OH 45414

- 3811 E 26th Ave Pkwy, Denver CO 80205

- 6836 W 114th Pl, Worth IL 60482 (There is also a 6836 W 114th Street – NFHA evaluated "Place")

- 36005 Wedgewood Dr, Denham Springs LA 70706.

7. As to three properties mentioned in the Kliebard declaration, it appears from our information that HSBC Bank USA National Association was the trustee or record, although it was acting as trustee for Deutsche Alt-A Securities. These properties are:

- 1636 N Forest Park Ave, Baltimore MD 21230

2

- 4712 Mann St, Capitol Heights MD 20743

- 1256 Dunad Ave, Opa-Locka FL 33054.

*Lindsay Augustine*

Lindsay Augustine

Dated: 4-11-2019

3