**EXHIBIT C**

4707.03 - Standards for securing and maintaining vacant buildings.

A vacant building or structure shall be secured in accordance with all of the following requirements:

- A. All windows, doors, openings, or holes in the structure shall be covered with minimum one-half (½) inch weather protected CDX plywood tightly fitted to the exterior of the opening; and
    - B. The CDX plywood shall be attached with appropriate length galvanized bolts or two (2) inch galvanized screws; and shall be painted to be compatible with the exterior of the structure; and
    - C. The roof and flashing shall be sound, tight, and not have defects that admit water. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. The use of sheets of plastic or tarpaulins or similar materials does not satisfy the requirements of this paragraph;
    - D. All graffiti shall be removed; and
    - E. The vacant building or structure and premise shall be maintained in compliance with;
        1. Title 7, the Health Safety and Sanitation Code as it relates to interior and exterior sanitation, infestation, and high grass and weed requirements C.C.C. § 705.03, C.C.C. § 707.03, C.C.C. § 709.03, and C.C.C. § 713.03; and,
        2. Title 45, the Columbus Housing Code C.C.C. § 4521.04, C.C.C. § 4525.01, C.C.C. § 4525.03, C.C.C. § 4525.08, C.C.C. § 4525.11, C.C.C. § 4525.13, C.C.C. § 4525.14; and,
        3. Title 9, the Streets, Parks and Public Properties Code as it relates to the maintenance of the public sidewalks adjacent to the premise and house number requirements, C.C.C. § 905.06, and C.C.C. § 907.01.

(Ord. 0946-04 § 2 (part); Ord. 897-05 § 4 (part): Ord. 374-06 § 5; Ord. 1132-2008 Attach. (part).)

# MILWAUKEE CODE OF ORDINANCES

## VOLUME 2

Building and Zoning Code



Published by Authority of the
**COMMON COUNCIL**

Edited by Legislative Reference Bureau
Office of the City Clerk

upon the property. In order to overcome such presumption, the owner must show by a preponderance of the evidence that such acts were based upon good cause. "Good cause" as used in this paragraph means that the owner must show a good reason for his or her action, other than one related to or caused by the operation of this section, such as normal rental increases due to tax increases or increased maintenance costs.

    6.    PROSECUTION. Use of rent withholding shall not prohibit the commissioner from prosecuting violations of the code relating to the property.

    7.    COERCION. a. Any person who accepts, as a result of harassment or coercion, rental payments for premises subject to rent withholding under this section shall be subject to a forfeiture of not less than $100 nor more than $2,000 whether the rental payments are tendered by or on behalf of the tenant occupying the premises at the time rent withholding is authorized or by, or on behalf of, any subsequent or other tenant who occupies the premises during the existence of such rent withholding authorization. Each payment accepted shall constitute a separate violation.

    b.    Any tenant who willfully and maliciously uses or attempts to use this section to harass a lessor shall be subject to a forfeiture of not less than $100 nor more than $2,000.

**200-22.5. Registration of Residential Properties Pending Foreclosure.** 1. FINDINGS. The common council finds that a significant relationship exists among residential properties in the foreclosure process, the prevalence of blight and abandoned buildings, increased calls for police service, higher incidence of fires, both accidental and intentional, and decline and disinvestment in neighborhoods. Residential property owners involved in foreclosure have less incentive to maintain their properties, and properties in foreclosure have a higher incidence of building code violations than properties not in foreclosure. The foreclosure process may also result in abandonment. Abandoned buildings become havens for vandalism, arson and drug crimes, draining valuable governmental resources and creating a significant reduction in quality of life for the surrounding neighborhood. Registration, inspection and aggressive monitoring of residential properties in the foreclosure process help to stabilize and improve affected neighborhoods and aid in code enforcement efforts, as well as public safety. A mortgagee that does not register, inspect, secure and maintain, as required in this section, places an undue and inappropriate burden on the taxpayers of the city and poses an increased risk to public health, safety and welfare.

    2.    PURPOSE AND SCOPE. The purpose of this section is to establish a registration program to monitor residential properties pending foreclosure to identify at-risk properties, and to regulate the securing and maintenance of abandoned residential properties in foreclosure. This section is intended to reduce and prevent neighborhood blight, to ameliorate conditions that threaten public health, safety and welfare, to promote neighborhood stability and residential occupancy by preserving the condition and appearance of residential properties, and to maintain residential property values and assessments. It is declared a matter of public policy and an exercise of the city's police power that mortgagees initiating foreclosure proceedings against a residential property are required to register with the city. This registration process will give city agencies the means of contacting those responsible for the foreclosure proceedings and mortgages at issue, those responsible for the inspections required in this section, and those responsible for the securing and maintenance of abandoned property as required in this section. The purpose of the registration fee is to partially recover administrative costs associated with this registry. Nothing in this section shall be construed as waiving, relieving or otherwise excusing an owner of residential property from complying with applicable building codes and ordinances, and the owner shall at all times remain responsible and liable therefor. Nothing in this section is intended to affect the right to foreclose as provided by state law.

    3.    DEFINITIONS. In this section:

    a.    "Abandoned property" means a property that is vacant as a result of the relinquishment of occupancy, possession or control by a mortgagor and those claiming by, through or under the mortgagor, including tenants, whether or not the mortgagor relinquished equity and title. A residential property may be deemed abandoned when there is evidence of conditions, taken separately or as a whole, which would lead a reasonable person to conclude that the property is abandoned, including:

    a-1.    Presence of overgrown or dead vegetation.

    a-2.    Accumulation of newspapers, circulars, flyers or mail.

    a-3.    Past-due utility notices.

    a-4.    Accumulation of junk, litter, trash or debris.

    a-5.    Absence of window treatments, such as blinds, curtains or shutters.

**200-22.5-4 Administration and Enforcement**

a-6. Absence of furnishings and personal items.

a-7. Statements by neighbors, delivery agents or similarly-situated persons that the property is vacant.

a-8. Any of the items specified in s. 846.102(2), Wis. Stats.

b. "Accessible structure" means a building that is accessible through a compromised door, wall, window or similar building feature and that is unsecured in a manner that allows access to interior space by unauthorized persons.

c. "Agent" means a person or entity, including a servicing company, acting on behalf of the mortgagee regarding the mortgage or mortgage loan, the foreclosure proceedings, or the mortgaged property, including the inspection, maintenance and securing duties required in this section, except that an attorney shall not be deemed to be an agent if the attorney is retained solely to represent the mortgagee or agent in connection with the foreclosure proceedings in court.

d. "Foreclosure" means the process prescribed by ch. 846, Wis. Stats., and the process for non-judicial sale authorized by a power of sale clause in a mortgage.

e. "Mortgage" means a written instrument creating a lien on real property whereby the property is used as security or collateral for performance of an act or payment of funds. For purposes of this section, mortgage also includes a land contract.

f. "Mortgagee" means the person or entity to which the mortgage has been granted or assigned.

g. "Mortgagor" means the person or entity that granted the mortgage.

h. "Occupied property" means a residential property with a structure on which any person, including an owner, operator, or tenant, but not a trespasser, lives, sleeps, cooks or otherwise maintains actual possession.

i. "Residential property" means a property used in whole or in part for residential purposes, including single-family, 2-family and multi-family dwellings, and mixed-use commercial and residential structures, but not residential condominium units.

j. "Servicing company" means a person or entity that provides services to the mortgagee, or to an agent of a mortgagee, including debt servicing, collection of payments, administration of escrow and insurance accounts, managing loss mitigation, foreclosing, and securing and managing properties on behalf of the mortgagee or the mortgagee's agent.

**4.** REGISTRATION REQUIRED. a. Within 5 working days of filing with the court of the foreclosure proceedings against a residential property, the mortgagee, or agent, shall register the property in the name of the mortgagee with the commissioner on a form or by an electronic process prescribed by the commissioner. This form shall include all of the following:

a-1. Information identifying the property by address and tax key number.

a-2. The mortgagor of record and the mortgagee of record.

a-3. The register of deeds recording document number for the mortgage being foreclosed and the date of recording.

a-4. The current owner of the note or instrument secured by the mortgage, and the registered agent and registered office for that owner.

a-5. The date of recording of the lis pendens for commencement of the foreclosure proceedings.

a-6 The case number of the foreclosure action and the plaintiff in the foreclosure action.

a-7. The servicing company or other agent acting on behalf of the mortgagee, and the registered agent and registered office for that servicing company or agent.

a-8. Contact information for a person with the mortgagee or agent who will be responsible for inspecting, securing and maintaining the property, as required under this section.

b. A mortgagee or agent for a residential property in foreclosure proceedings for whom the proceedings were initiated prior to the effective date of this ordinance [city clerk to insert date], who remains subject to the foreclosure proceedings, and who has registered with the city shall be subject to the periodic inspection and other requirements of this section.

**5.** AMENDMENT. Within 20 days of a change in information for the registration of a property, including a change in ownership of the mortgage or a change in agent, servicing company or contact person, the mortgagee or the mortgagee's agent shall file an amended registration with the commissioner on a form or by an electronic process prescribed by the commissioner.

**6.** TERMINATION OF REGISTRATION. a. To terminate a registration, the mortgagee or the mortgagee's agent shall file a registration termination with the commissioner on a form or by an electronic process prescribed by the commissioner within 10 days of either of the following, whereupon the duties of the mortgagor or the agent under this section shall cease:

Administration and Enforcement 200-22.5-7

a-1. A court-confirmed sale of the property in foreclosure, with the deed having been issued in the foreclosure proceedings, and the deed or evidence of the deed having been recorded in the register of deeds office.

a-2. A court order dismissing the foreclosure proceedings, and a discharge of the lis pendens having been recorded in the register of deeds office.

b. The mortgagee or agent shall provide, in the termination filing, the register of deeds recording information for one of the following:

b-1. The deed or the evidence of the deed, as provided in par. a-1.

b-2. The lis pendens discharge, as provided in par. a-2.

c. If the court dismisses the foreclosure proceedings due to a discharge or satisfaction of the mortgage, the mortgagee or agent shall also provide, with the termination filing, the register of deeds recording information for the discharge or satisfaction of the mortgage.

7. INSPECTION OF RESIDENTIAL PROPERTY. a. Initial Inspection. Whenever a mortgagee or agent initiates foreclosure proceedings against a residential property, the mortgagee or agent shall cause a physical inspection to be made of the property not later than 30 days from the date of filing of the foreclosure proceedings. One or more photographs shall be taken of the property accurately portraying the condition of the exterior premises. Photographs shall be dated and preserved.

b. Periodic Inspections. The mortgagee or agent shall perform a re-inspection of the property subject to the foreclosure proceedings at least once every 30 days following the initial inspection until a registration termination is filed. One or more photographs shall be taken at each re-inspection and shall be dated and preserved.

c. Records. A mortgagee or agent shall maintain written records, including photographs, of any inspection or re-inspection required by this section, and, in the case of abandoned property, records of actions taken under sub. 9. Written records and photographs of inspection and re-inspection shall be made available to the commissioner upon request.

8. NOTIFICATION OF ABANDONED RESIDENTIAL PROPERTY. If inspection of the residential property required under sub. 7 shows the property is abandoned, or if the mortgagee or agent otherwise becomes aware of abandonment, the mortgagee or agent shall file notification of the abandoned property within 5 working days on a form or by an electronic process prescribed by the commissioner that includes a description of the external condition of the property and whether there is an accessible structure on the property. The notification filing shall identify the person residing in the 7-county area identified in s. 200-52.5-2-j authorized by the mortgagee to enter upon the property and to conduct repairs or maintenance, and secure access, as required in sub. 9.

9. DUTY TO SECURE, MAINTAIN AND POST ABANDONED PROPERTY. a. The property maintenance duties of a mortgagee or agent with an abandoned residential property shall be limited to the following:

a-1. Ensuring that there are no accessible structures on the premises.

a-2. Ensuring that there are no conditions upon the property presenting an immediate risk to public health, safety or welfare, including:

a-2-a. Removing or abating fire hazards.

a-2-b. Removing or containing potentially toxic materials and explosives.

a-2-c. Securing the perimeters of swimming pools, ponds or other bodies of water.

a-2-d. Maintaining public walkways and thoroughfares free from ice, snow, mud and other debris consistent with the requirements of par. d.

a-2-e. Mowing grass and eliminating weeds and other plant growth consistent with the requirements of par. d.

b. A mortgagee or agent shall include a statement in the abandonment notification identifying action taken or planned to be taken to comply with the requirements of par. a.

c. Upon filing notification of the abandoned property or at the time that notification is required to be made, and until there has been a registration termination filed regarding the abandoned property, the commissioner may make a finding that the condition of the property constitutes an immediate threat to public health, safety and welfare and, upon such finding, may issue a written order to the mortgagee or agent, or both, to abate the condition. Upon failure to comply with the commissioner's order within 10 days, the mortgagee or agent, or both, shall be responsible and shall be subject to a penalty in the same manner and to the same extent as the owner of the property under any of the following:

c-1. Section 79-12, littering of premises.

c-2. Section 79-13, sidewalks to be kept clean.

c-3. Section 80-13, odors from privy vaults, drains, sewers.

**200-22.5-10 Administration and Enforcement**

c-4. Section 80-17, hay fever weeds, etc.
c-5. Section 80-31, breeding place for flies.
c-6. Section 80-49, nuisance vehicles.
c-7. Section 105-16, icicles on buildings.
c-8. Section 214-11, storing of fuel in a dwelling.
c-9. Section 214-12, securing of pressurized gas cylinders.
c-10. Section 217-13-4, locks.
c-11. Section 236-41, hazardous substance spills.
c-12. Section 275-32-7, vacant structures.
c-13. Section 275-35, graffiti abatement.
c-14. Section 275-81-5, maintenance of premises.
c-15. Section 275-81-6, rat harborages.

d. The minimum requirements of a mortgagee or agent for preservation and protection of residential property, absent a specific order of the commissioner to abate a condition of the premises, shall be consistent with 24 CFR 203.377 and the rules, regulations and other requirements published by the federal housing administration (FHA) of the U.S. department of housing and urban development for the preservation and protection of single-family residential properties secured by FHA loans, as those requirements may be amended by FHA mortgagee letters or otherwise, and as applied by the FHA to the state of Wisconsin, including guidelines related to winterization and heating systems. Under these guidelines, debris removal shall be deemed to include snow and ice removal, and the elimination of weeds and other plant growth, as required in s. 80-17. The commissioner may issue a written order to the mortgagee or agent, or both jointly and severally, to abate the condition. The mortgagee or agent, or both, shall be held liable for failure to abate and for repayment to the city of the reasonable costs incurred by the city related to abatement of conditions that are subject to FHA guidelines specified in this paragraph, or which are subject to an order under par. b and which threaten public health, safety and welfare.

e. A mortgagee or agent, upon receiving information or determining that the residential property is abandoned, and until the property is no longer abandoned, shall post and maintain signs affixed or adjacent to all entrances to the building indicating:

e-1. The name, address and telephone number of the agent authorized by the mortgagee to be responsible for maintenance and management of the property, as specified under sub. 8.

e-2. That no trespassing is allowed upon the premises without consent of the agent.

**10.** FEES. a. The fee for registration of residential property pending foreclosure, as provided in s. 200-33-47-a, shall be due upon registration.

b. If the registration form is filed more than 5 working days after initiation of the foreclosure proceedings, a late fee shall be charged, as provided in s. 200-33-47-b.

c. The registration form and fee may be transmitted electronically or by any other means to be determined by the commissioner. The registration shall be valid from the date the registration form is completed and filed with the commissioner and the registration fee, including any late fee, is received by the commissioner.

d. There shall be no fee for filing an amended registration or for filing a registration termination.

**11.** PENALTY. a. Failure to Register or to File Amendment. Any mortgagee or agent that fails to register as required under sub. 4, fails to file an amendment as required under sub. 5, or fails to file a termination as required under sub. 6, shall be jointly and severally responsible, and, upon conviction, shall forfeit not less than $500 nor more than $2,000, together with the cost of the action, and in default of payment thereof may be imprisoned as provided by law.

b. Failure to Inspect. Any mortgagee or agent that fails to inspect or re-inspect a property as required under sub. 7 shall be jointly and severally responsible, and, upon conviction, shall forfeit not less than $250 nor more than $1,000, together with the cost of the action, and in default of payment thereof may be imprisoned as provided by law.

c. Failure to Notify about Abandoned Property. Any mortgagee or agent that fails to file notification of an abandoned property as required under sub. 8, shall be jointly and severally responsible, and, upon conviction, shall forfeit not less than $500 nor more than $2,000, together with the cost of the action, and in default of payment thereof may be imprisoned as provided by law.

d. Failure to Secure and Maintain Abandoned Property. Any mortgagee or agent having a duty to register abandoned property that fails its duty to secure and maintain the property as required under sub. 9 shall be jointly and severally responsible, and, upon conviction, shall forfeit not less than $800 nor more than $2,500, together with the cost of the action, and in default of

Sec. 19-233. - Standards for vacant structures.

(a) It is unlawful to maintain vacant structures which are unsecured or do not meet the requirements as set forth in section 19-231(15).

(b) All vacant structures shall be secured as follows:

   (1) *Material requirements.* Door and window security panels shall consist of the following:

   a. One-half-inch sheathing grade plywood;

   b. Three-eighths-inch diameter carriage bolts with nuts and flat steel washers, sufficient in length to fasten the plywood panel to the wood support bracket for both wood frame and concrete block walls; washers to be approximately one (1) inch in diameter;

   c. Two (2) by four (4) utility grade lumber sufficient in length to overlap the window opening six (6) inches on each side;

   d. Galvanized hardware cloth, eight (8) by eight (8) mesh, to cover the vent opening in the plywood panel;

   e. One-and-one-half-inch wood lattice to trim around the screen vent.

   (2) *Installation requirements.*

   a. *Windows.* The plywood shall be cut to fit over the window within the boundaries of the window opening. A three-inch-by-eighteen-inch opening shall be cut into the plywood as shown on the schematic drawing. Cover the opening with the hardware cloth lapping the opening one-half inch on each side and secure to plywood panel. Trim the opening with lattice trim covering the edge of the hardware cloth. Drill four (4) one-half-inch holes into the plywood for the carriage bolts as shown on the schematic drawing. Drill matching holes in the two (2) by four (4) support brackets to align with the holes in the plywood. Paint the panel assembly on both sides and edges with two (2) coats of good quality exterior latex enamel before installation. Install the panel to the window as shown on the schematic drawing. The window glass must be removed prior to installation, unless the windows can be raised or lowered out of the way of the bolts. Install the support brackets in either a vertical or horizontal position, depending on the circumstances, and secure in place with the carriage bolts and nuts on the inside of the window.

   b. *Doors.* All entrance doors are to be nailed closed with twelve-penny nails at twelve (12) inches O.C. around the perimeter of the door jamb and head. When no door exists, the opening is to be secured in the same manner as outlined in paragraph (2)a. of installation requirements, with the exception that no vent opening is required.

(Ord. No. 89-269, § 2(48-173), 10-12-89; Ord. No. 90-124, § 2(48-173), 5-17-90; Ord. No. 96-204, § 34, 9-26-96)