**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER; OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:18-cv-00839<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Judge Harry D. Leinenweber<br>Magistrate Judge Sidney I. Schenkier |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC.; and ALTISOURCE SOLUTIONS, INC., | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 1

I.    The Second Amended Complaint Inadequately Pleads Discrimination. .......................... 1

    A.    Plaintiffs' Disparate Impact Theory Fails. ............................................ 1

        1.    The Second Amended Complaint Does Not Adequately Allege Racial Disparities. ................................................................... 1

        2.    Plaintiffs' Statistical Evidence Against Ocwen And Altisource Is Fundamentally Flawed For Additional Reasons. ....................................... 4

        3.    The Second Amended Complaint Does Not Adequately Identify A Policy That Caused The Alleged Disparities. ........................................... 5

    B.    Plaintiffs' Disparate Treatment Theory Fails Because Plaintiffs Still Do Not Plausibly Allege Discriminatory Intent. ................................................ 6

II.    The Second Amended Complaint's Superficial Changes Fail to Cure Plaintiffs' Legally Insufficient Proximate Causation Allegations. .................................................... 8

    A.    *City of Miami* And *Wells Fargo* Still Support Dismissal Of Plaintiffs' Claims. ................................................................................................ 9

    B.    Out-of-Circuit Authority Does Not Merit A Different Outcome ........................ 10

III.    The Second Amended Complaint Inadequately Pleads Claim-Specific Elements. ......... 12

    A.    Plaintiffs Fail To State A Section 3604 Claim. .............................................. 12

    B.    Plaintiffs Fail To State A Section 3605 Claim. .............................................. 13

    C.    Plaintiffs Fail To State A Claim For Perpetuating Segregation. .......................... 13

IV.    Plaintiffs' Allegations Outside Of The Applicable Two-Year Statute Of Limitations Warrant Dismissal. .......................................................................... 13

CONCLUSION ...................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Access Living of Metro. Chicago, Inc. v. City of Chicago*,
   372 F. Supp. 3d 663 (N.D. Ill. 2019) ...............................................................2, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ *passim*

*Bank of America Corp. v. City of Miami*,
   137 S. Ct 1296 (2017) ...........................................................................9, 10, 11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................5, 13

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ....................................................................6

*Chudasama v. Mazda Motor Corp.*,
   123 F.3d 1353 (11th Cir. 1997) .................................................................5

*City of Los Angeles v. JPMorgan Chase & Co.*,
   2014 WL 3854332 (C.D. Cal. Aug. 5, 2014) .................................................4

*City of Miami v. Wells Fargo & Co.*,
   923 F.3d 1160 (11th Cir. 2019) .............................................................10, 11, 12

*County of Cook v. Bank of Am. Corp*,
   2018 WL 1561725 (N.D. Ill. Mar. 30, 2018) ...............................................9

*County of Cook v. Bank of Am. Corp.*,
   181 F. Supp. 3d 513 (N.D. Ill. 2015) .........................................................15

*County of Cook v. Wells Fargo*,
   314 F. Supp. 3d 975 (N.D. Ill. 2018) .....................................................9, 10, 15

*EEOC v. N. Gibson Sch. Corp.*,
   266 F.3d 607 (7th Cir. 2001) ..................................................................14

*Latimore v. Citibank, F.S.B.*,
   979 F. Supp. 662 (N.D. Ill. 1997) ............................................................8

*Michon v. Ugarte*,
   2017 WL 622236 (N.D. Ill. Feb. 15, 2017) ...............................................3

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Munguia v. Ill.*,
  2010 WL 3172740 (N.D. Ill. Aug. 11, 2010) ............................................................................4

*Nat'l Fair Hous. All. v. Bank of Am.*,
  2019 WL 3241126 (D. Md. July 18, 2019)................................................................4, 8, 10, 15

*Nat'l Fair Hous. All. v. Fed. Nat'l Mort. Assoc.*,
  294 F.Supp.3d 940 (N.D. Cal. 2018) ......................................................................................8

*Ortiz v. Werner Enters., Inc.*,
  834 F.3d 760 (7th Cir. 2016) ...................................................................................................7

*Ricci v. DeStefano*,
  557 U.S. 557 (2009)................................................................................................................3

*Shanoff v. Ill. Dep't of Human Servs.*,
  258 F.3d 696 (7th Cir. 2001) ...........................................................................................14, 15

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
  135 S. Ct. 2507 (2015)............................................................................................................3

*Wetzel v. Glen St. Andrew Living Cmty., LLC*,
  901 F.3d 856 (7th Cir. 2018) ...................................................................................................7

*Wigginton v. Bank of Am. Corp.*,
  770 F.3d 521 (7th Cir. 2014) ...................................................................................................7

**STATUTES**

42 U.S.C. § 3604................................................................................................................12, 13

42 U.S.C. § 3605.....................................................................................................................13

Plaintiffs' Second Amended Complaint ("SAC") fails to cure the deficiencies that already led the Court to dismiss Plaintiffs' claims once. *See* ECF No. 54 ("MTD Order"). Nothing in Plaintiffs' opposition ("Opp.") warrants a different result this time. In rejecting various aspects of the Court's prior ruling, Plaintiffs effectively concede that the allegations in the Second Amended Complaint still cannot support FHA claims under the law as it was properly applied by the Court. Plaintiffs' claims are also based on a fatally-flawed study, regardless of the time period at issue. Plaintiffs' flawed claims should once again be dismissed, but this time with prejudice.

## ARGUMENT

## I. The Second Amended Complaint Inadequately Pleads Discrimination.

### A. Plaintiffs' Disparate Impact Theory Fails.

#### 1. The Second Amended Complaint Does Not Adequately Allege Racial Disparities.

Defendants' opening brief ("Br.") showed that Plaintiffs' disparate impact claim should be dismissed because the claim rests upon a fundamentally flawed statistical methodology that HUD itself has rejected. Br. at 6-10; Sostrin Dec., Ex. B. In response, Plaintiffs assert that Defendants challenge only whether Plaintiffs have "conclusively *proven … caus[ation]*" and "do not actually dispute … that Plaintiffs have adequately pleaded the alleged disparity." Opp. at 18. That is false. *See* Br. at 6 ("The [SAC] does not adequately allege racial disparities."). Defendants broadly challenge Plaintiffs' flawed statistical methodology (*i.e.*, a study based on one-time property visits cannot show discrimination in maintenance) as the foundation of Plaintiffs' allegations of disparities in the maintenance of REO properties. Thus, Plaintiffs' argument that they need not "prove" causation at the pleading stage (Opp. at 18-19) is a classic straw-man argument.[1]

Plaintiffs' feeble attempt to prop up their study's flawed methodology fails on multiple

---

[1] Defendants address Plaintiffs' failure to sufficiently allege proximate causation in Part II below.

grounds. First, as this Court noted, "Plaintiffs inspected the condition of each property only once." MTD Order at 3. Plaintiffs cannot demonstrate maintenance flaws based on a single visit because, as HUD observed, a "snapshot" visit at most shows "whether a particular deficiency existed at a particular time on a particular day." Sostrin Dec., Ex. B at 19. Plaintiffs argue that one-time visits are a "normal testing methodology," but they cite an example where, unlike here, a single visit is capable of identifying discrimination, *e.g.*, a "typical rental test" that investigates whether an applicant is turned away. Opp. at 20 n.3. Plaintiffs' assertion that they controlled for how long properties were REO (*id.* at 19) also misses the point. A property could be REO for 10 or 1,000 days when Plaintiffs visited. Either way, if the alleged property damage occurred shortly before the visit, Plaintiffs merely assume without corroboration that it was ignored by Defendants and reflects discriminatory conduct. Plaintiffs also argue that a one-time visit suffices because some issues take "considerable time" to develop (*id.*), yet many factors analyzed by Plaintiffs can occur at any time (*e.g.*, trash, broken windows, graffiti). SAC ¶ 89.[2]

Second, Plaintiffs did not control for the condition of each property when it became REO. Br. at 8-9. Plaintiffs argue that the initial condition of the property is "largely irrelevant" because the deficiencies they tested supposedly "take very little time" to cure. Opp. at 20. The SAC does not allege this, because it cannot: water damage and wood rot, among other conditions studied by Plaintiffs, are not easy fixes. SAC ¶ 89. Even if Plaintiffs' contention were correct, it again misses the point. Without controlling for initial property conditions, Plaintiffs' study cannot show that Defendants spent more or less time or money maintaining properties in minority areas.

---

[2] Plaintiffs cite *Access Living of Metro. Chicago, Inc. v. City of Chicago*, 372 F. Supp. 3d 663, 671 (N.D. Ill. 2019), which unremarkably held that a complaint need not identify specific inspection dates or "development-by-development or unit-by-unit level details." Opp. at 19-20 & n.3. *Access Living* is inapposite because Defendants are not asserting that Plaintiffs should allege the dates of their single visits or provide property-level details. Rather, Defendants assert that Plaintiffs' single-visit study is inherently incapable of showing discrimination in property maintenance, as HUD found. Sostrin Dec., Ex. B.

Third, as this Court noted, Plaintiffs "chose not to include in their data those properties that 'appeared to be occupied or [where] work was actively occurring at the time of the site visits.'" MTD Order at 3; *see* Br. at 3. Plaintiffs have no explanation for excluding properties where repair work was actively occurring. Plaintiffs cannot assert disparities "by excluding the very properties that show evidence" of proper ongoing maintenance. Sostrin Dec., Ex. B (HUD) at 23. Plaintiffs argue without support that properties are rarely occupied after foreclosure (Opp. at 21), but they fail to allege that statistical disparities would exist had they considered occupied properties.

Fourth, Plaintiffs assert statistically significant disparities only by aggregating properties across 30 cities, ignoring that some cities require the very actions that Plaintiffs declare discriminatory. Br. at 9-10. Plaintiffs insist they "can" account for differences in cities' maintenance requirements later (Opp. at 22), but Plaintiffs must state a claim before they can "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs also contend that they do not need to plead a particular level of statistically significant disparities. Opp. at 21. But their cases state only that different tests can be used to measure statistical significance, not that disparate-impact claims may be based on statistically insignificant results. Plaintiffs must allege "a prima facie case … at the pleading stage" (*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2523 (2015)), which requires "a significant statistical disparity." *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009).

For these reasons, HUD correctly rejected Plaintiffs' methodology in the *U.S. Bank* matter. Plaintiffs ask the Court to disregard HUD's decision. Opp. at 23-26. But Plaintiffs ignore Seventh Circuit precedent holding that agency determinations are judicially noticeable (see Br. at 5 n.2), instead relying upon an inapposite case declining to consider factual assertions in a police report (*Michon v. Ugarte*, 2017 WL 622236, at *3 (N.D. Ill. Feb. 15, 2017)) and other inapposite cases

noting that an agency's decision not to prosecute is not appealable. Opp. at 24. Plaintiffs also attach a request for reconsideration that they filed in the *U.S. Bank* matter. *See* Soule Dec., Ex. A-1. Tellingly, Plaintiffs withdrew that request before HUD could resolve it (Dkt. 41 at 31), and for good reason—it does nothing to counter the fundamental methodological flaws that HUD identified. Finally, Plaintiffs cite a settlement in a different case with Wells Fargo as evidence that HUD purportedly believes that "such disparities can violate the [FHA]." Opp. at 24-25 & n.6. But that settlement says nothing about the validity of Plaintiffs' single-visit study, and Wells Fargo did not admit any liability in settling that case. *See* Conciliation Agreement at 2-3.[3]

### 2. Plaintiffs' Statistical Evidence Against Ocwen And Altisource Is Fundamentally Flawed For Additional Reasons.

Plaintiffs concede they do not know whether Ocwen, Altisource, or some third party maintained the visited properties. SAC ¶¶ 35, 64.[4] Plaintiffs request discovery to find out and assert that Ocwen and Altisource can then "point the finger at each other." Opp. at 22-23. But Plaintiffs admit that parties *other than* Ocwen and Altisource maintained some of the properties. SAC ¶ 35. This is not simply a matter of "which Defendant" is responsible for which property. Rather, Plaintiffs' study includes properties that none of the Defendants are responsible for, which Plaintiffs concede is why FHA claims were dismissed in *City of Los Angeles v. JPMorgan Chase & Co.*, 2014 WL 3854332 (C.D. Cal. Aug. 5, 2014). *See* Opp. at 23 n.5. Plaintiffs cannot state a plausible claim against Ocwen and Altisource without *any* statistical evidence specific to either of

---

[3] Plaintiffs recently submitted *Nat'l Fair Hous. All. v. Bank of Am.*, 2019 WL 3241126 (D. Md. July 18, 2019), as supplemental authority. In that case, the court acknowledged that "defendants' critique of [plaintiffs'] investigation composite variables … may have some merit," but deferred the issue to summary judgment. *Id.* at *12. Defendants respectfully submit that the court erred on this point (and others). As this Court acknowledged, when a statistical study has fundamental flaws apparent on the face of the complaint, dismissal is appropriate. *See Munguia v. Ill.*, 2010 WL 3172740, at *9, 11 (N.D. Ill. Aug. 11, 2010); *see also* Br. at 6-7 (collecting cases); MTD Order at 25-26.

[4] As discussed at length in the Trustees' supplemental briefing, Plaintiffs do not (and cannot) allege that the Trustees themselves maintained the properties that they visited.

them. "[A] complaint must allege facts" stating a claim "before proceeding to discovery." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007); *see Iqbal*, 556 U.S. at 678; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("'Discovery … is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.'").

Plaintiffs' claims suffer from other insurmountable flaws as well. First, even if Ocwen or Altisource became responsible for maintaining a property, Plaintiffs do not know whether that occurred before or after Plaintiffs visited the property. Br. at 12. Plaintiffs admit as much, offering the inadequate response that it would be "astonishing" if they visited "many" of the properties before Ocwen or Altisource obtained authority to maintain them. Opp. at 23. Second, Plaintiffs' failure to allege statistically significant disparities in any one city is only amplified with respect to Ocwen and Altisource after having to "shear down" their data set. Br. at 12. Plaintiffs continue to assert that they do not need to plead particular levels of statistically significant disparities (Opp. at 23), but Plaintiffs cannot rely on statistics that are fundamentally flawed. Br. at 6-7.

>   **3.    The Second Amended Complaint Does Not Adequately Identify A Policy That Caused The Alleged Disparities.**

>>   **a.    Plaintiffs Do Not Adequately Allege A Policy With Respect To The Trustees.**

Plaintiffs do not dispute that the SAC includes the same policy allegations regarding the Trustees as the original complaint. Br. at 12-14; Sostrin Dec., Ex. A at 60-63 (redline of SAC ¶¶ 147-55); Opp. at 8 (describing different aspects of the Trustees' alleged "abdication" policy). Instead, Plaintiffs emphasize that a party's abdication of responsibilities *can*, under certain circumstances, support an FHA claim. Opp. at 8-9. But Plaintiffs ignore the only question that matters. The Court clearly stated that the Trustees' alleged "abdication policy passes muster ***only so long as*** property maintenance was the Deutsche Bank Defendants' responsibility to outsource in the first place." MTD Order at 27 (emphasis added). The Trustees had ***no*** such responsibility.

5

Br. at 12-14; Trustees' Br. at 5-7; Trustees' Reply Br. at 7-8. That is determinative, and leaves Plaintiffs with no policy allegations sufficient to state a claim against the Trustees.

**b. Plaintiffs Do Not Adequately Allege A Policy With Respect To Ocwen And Altisource.**

Defendants' opening brief (at 14-16) showed how the SAC's new policy allegations against Ocwen and Altisource are hopelessly vague and conflicted. Plaintiffs do little to respond other than to re-list the alleged policies and state that the missing particulars will be found in discovery. Opp. at 9–10. But Plaintiffs fall short of tying any policy to any defendant. *See, e.g., Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (affirming dismissal in part where complaint failed to connect specific defendants to specific illegal acts). Because Plaintiffs have only asserted the purported "contours" of policies (Opp. at 40), but have not filled in those contours as to any defendant, they have failed to put any defendant on notice of what acts violate the FHA.

Plaintiffs also wrongly accuse Defendants of conjuring stereotypes. Opp. at 11. But Plaintiffs cannot escape that they allege only in conclusory fashion that Defendants' business practices are "arbitrary" and "without justification." SAC ¶¶ 156(b), 110, 154. These conclusory allegations are unconnected to any supporting facts demonstrating that a marketing, maintenance, or managerial decision was made without a legitimate financial or business reason, a requirement for stating a prima facie case. *See* Br. at 16. The SAC fails to put Defendants on notice of an arbitrary policy that results in a disparate impact and must be dismissed.

**B. Plaintiffs' Disparate Treatment Theory Fails Because Plaintiffs Still Do Not Plausibly Allege Discriminatory Intent.**

Like Plaintiffs' original complaint, the SAC includes no facts alleging that Defendants' conduct was "because of, and not merely in spite of, its [allegedly] adverse effect on the protected group." MTD Order at 31; *see Iqbal*, 556 U.S. at 676-77. Instead, Plaintiffs ask the Court to "infer" a discriminatory motive from the "totality" of their allegations. Opp. at 27. The Court

previously engaged in that exercise and found that Plaintiffs' allegations "[fell] short of that mark." MTD Order at 31. The question, then, is whether the SAC remedies Plaintiffs' insufficient pleadings. It does not. Plaintiffs' statistical allegations still "cannot be relied upon" to show discriminatory intent. MTD Order at 32; *see supra* at 1-4. And Plaintiffs' limited, new allegations are simply more of the same with respect to intent (or lack thereof). *See* Br. at 17-19.

Plaintiffs try to compensate for the SAC's insufficient intent allegations by citing inapplicable legal standards from employment discrimination cases (*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)) and quoting dicta that "[it] does not take much to allege discrimination" from a case that affirmed dismissal of FHA claims (*Wigginton v. Bank of Am. Corp.*, 770 F.3d 521 (7th Cir. 2014)). Opp. at 27. Plaintiffs' reliance on *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856 (7th Cir. 2018), is also misplaced. Opp. at 1, 30. *Wetzel* addressed the inapposite issue of whether a landlord can be liable for discrimination by tenants where it knew about and was deliberately indifferent to the discrimination. *Id.* at 859; *see also* Trustee's Reply Br. at 3-4. Nothing in *Wetzel* changes the long-settled rule that "purposeful discrimination requires more than … 'awareness of consequences.'" *Iqbal*, 556 U.S. at 676.

If Plaintiffs could base intentional discrimination claims on mere allegations of disparate results, then every disparate impact claim would suffice to also plead a disparate treatment claim. That is not the law. In fact, three courts—including this one—have already found that Plaintiffs' statistical allegations do not sufficiently allege discriminatory intent. *See Nat'l Fair Hous. All. v. Fed. Nat'l Mort. Assoc.*, 294 F.Supp.3d 940, 949 (N.D. Cal. 2018) ("[T]he allegation of differing treatment … does not necessarily indicate a discriminatory motive."); MTD Order at 31 ("Plaintiffs have failed to allege plausibly that Defendants *intentionally* discriminated."); *Bank of Am.*, 2019 WL 3241126, at *7 n.8 ("No allegations of intent or motive are pled here beyond the

statistics themselves. And while statistical disparities alone may be sufficient in some circumstances to prove intent, the nature of plaintiffs' claims seem closer to a disparate impact theory.") (citations omitted). Neither the limited, new allegations in the SAC, nor the inapposite authority cited in Plaintiffs' opposition, compels any different result.

Nor does Plaintiffs' appeal to the *McDonnell Douglas* burden-shifting framework compel an inference of intentional discrimination. Plaintiffs' sole authority (Opp. at 31) is an out-of-circuit case rejected by this District. *See Latimore v. Citibank, F.S.B.*, 979 F. Supp. 662, 667 (N.D. Ill. 1997) (noting the *McDonnell Douglas* framework applied in *Old W. End Ass'n v. Buckeye Fed. Sav. & Loan*, 675 F. Supp. 1100, 1103 (N.D. Oh. 1987), constructed a "particular formulation of [a] prima facie case [that] has not been used anywhere besides the Northern District of Ohio."). Here, Plaintiffs must allege facts "allow[ing] a factfinder to infer that the defendants acted *because of* racial considerations." *Latimore*, 979 F.Supp. at 667 (emphasis added); *see Iqbal*, 556 U.S. at 676-77. Plaintiffs have not made such allegations, opting instead to allege that properties are disparately treated based on flawed statistical allegations. Even if it applied, Plaintiffs do not establish a prima facie case under the *McDonnell Douglas* framework.

## II. The Second Amended Complaint's Superficial Changes Fail to Cure Plaintiffs' Legally Insufficient Proximate Causation Allegations.

Defendants' opening brief demonstrated that the SAC is devoid of any new allegations of harm that could cure the proximate cause defects identified by the Court in the original complaint. Plaintiffs' opposition seeks to avoid a repeat dismissal of its disparate impact theory by: (i) rearguing the legal authority upon which the Court based its prior ruling; and (ii) invoking out-of-circuit authority—primarily a decision by the court whose flawed proximate cause analysis was reversed by the Supreme Court and is the subject of a petition for rehearing—in the hopes that the Court will abandon its previous, well-reasoned analysis. Both efforts fail.

8

## A. *City of Miami* And *Wells Fargo* Still Support Dismissal Of Plaintiffs' Claims.

In dismissing Plaintiffs' original complaint, the Court held that Plaintiffs did not sufficiently allege proximate causation. MTD Order at 27-31. The Court based that holding, in part, on a thorough analysis of the Supreme Court's decision in *Bank of America Corp. v. City of Miami*, 137 S. Ct 1296 (2017), and this District's decision in *County of Cook v. Wells Fargo*, 314 F. Supp. 3d 975 (N.D. Ill. 2018), among other cases. MTD Order at 27-29; *accord Cnty. of Cook v. Bank of Am. Corp*, 2018 WL 1561725, at *5 (N.D. Ill. Mar. 30, 2018).

Plaintiffs maintain that *City of Miami* does not require dismissal of their claims, and that their "allegations of injury here are as directly related to the Defendants' conduct as the injuries that *County of Cook* and the other relevant cases found to be proximately caused by the defendant's conduct." Opp. at 15. Those positions are irreconcilable with the analysis in the Court's prior ruling. *See* MTD Order at 29-30 ("Defendants … charge that this 'chain-link causation' is too attenuated to pass muster under *City of Miami*…. Unfortunately for Plaintiffs, the Court agrees with [Defendants'] characterization of the complaint."); *id.* at 28, 30 ("*County of Cook v. Wells Fargo* … provides a good example of the line-drawing involved here…. Plaintiffs have not alleged that their injuries resulted directly from Defendants' practice. Instead, as with the too-attenuated allegations in *Wells Fargo*, Plaintiffs experience harm only after (impermissible) intermediate steps…. Climbing this chain requires more steps than the FHA permits.").

The SAC includes no new, non-conclusory allegations of harm. Br. at 22-27. Instead, Plaintiffs merely reorganized, relabeled, or recycled their original insufficient allegations. *Id.* at 25-26 (comparing the five "new" subsections in SAC ¶¶ 170-193 with the same allegations in the original complaint); *id.* at 26 (noting that the plaintiff-specific injuries alleged in the SAC (¶¶ 195-285) are materially unchanged from the original complaint). Undeterred, Plaintiffs double-down on their strategy and attempt yet again to repackage their harm allegations. *See* Opp. at 13-14. No

matter how many times Plaintiffs repeat them or how they try to reword them, "[m]ost charitably, Plaintiffs' causation argument [still] is that they spend their money seeking to combat segregation, and Defendants' policy (in a roundabout way) buoys it." MTD Order at 29. In the absence of any new allegations sufficient to cure the chain-link causation defects identified by this Court, this Court's well-reasoned analysis of *City of Miami* and *Wells Fargo* still applies with equal force.

### B.     Out-of-Circuit Authority Does Not Merit A Different Outcome.

Because Plaintiffs have no way to remedy their chain-link proximate cause allegations, they try to lower the bar by invoking the Eleventh Circuit's recent decision interpreting the Supreme Court's *City of Miami* decision. *See* Opp. at 11-12 (discussing *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1160 (11th Cir. 2019) ("*City of Miami II*"). Plaintiffs quote dicta at length from *City of Miami II* to suggest that, contrary to the Supreme Court's *City of Miami* holding and subsequent cases that have followed it, "intervening steps" in a causal chain are not fatal to FHA claims. *See* Opp. at 12. This argument falls short for multiple reasons.[5]

As a preliminary matter, unlike the Supreme Court's *City of Miami* decision, the Eleventh Circuit opinion in *City of Miami II* is not controlling authority. Courts in this district have consistently applied *City of Miami* to dismiss FHA claims like Plaintiffs', including in the Cook County cases against Wells Fargo and Bank of America and this Court's prior ruling. An out-of-circuit opinion does not merit a departure from established, consistent precedent in this District. The reliability of *City of Miami II* is further called into question because it is the subject of pending petitions for rehearing and/or rehearing en banc based on the fact that it directly conflicts with the Supreme Court's proximate cause holdings in *City of Miami*. *See City of Miami v. Wells Fargo &*

---

[5] The recent out-of-circuit decision in *Bank of Am.*, 2019 WL 3241126, should similarly be rejected for its reliance on the Eleventh Circuit's flawed proximate cause analysis, which runs contrary to cases in this District, including this Court's prior principled analysis construing the Supreme Court's proximate cause holding in *City of Miami*.

*Co.*, Case No. 14-14544 (11th Cir., filed May 24, 2019); *City of Miami v Bank of Am. Corp.*, Case No. 14-14543 (11th Cir., filed May 24, 2019).

Regardless of how much persuasive weight it carries, *City of Miami II* does not actually support Plaintiffs' argument that proximate cause is well-pleaded in this case. In fact, *City of Miami II* actually undermines Plaintiffs' argument. Miami asserted two theories of injury, and the theory rejected by the Eleventh Circuit is actually more similar to Plaintiffs' claims than the theory for which the court found sufficient proximate cause allegations. Miami alleged that the defendant banks made costlier mortgage loans to minorities, which made borrowers more likely to default on their loans, which led to foreclosures, which led to borrowers vacating their properties, which led to (i) lower property tax revenues and (ii) "increased demand for municipal services … needed to remedy blight and unsafe and dangerous conditions that the foreclosures and vacancies generate." *City of Miami*, 137 S. Ct. at 1301-02. On remand, the Eleventh Circuit found that Miami adequately pled proximate cause in relation to the alleged "injury to its tax base," but not the alleged "increase in expenditures on municipal services." *City of Miami II*, 923 F.3d at 1263-64, 1282. The court found (*id.* at 1264) that the tax injury was purportedly an "automatic" (and therefore a direct) result of foreclosures, while the alleged neighborhood effects and corresponding increase in expenditures on municipal services were more attenuated:

> [T]he City's pleadings fall short of sufficiently alleging "some direct relation" between the Banks' conduct and a claimed increase in expenditures on municipal services. The complaints fail to explain how these kinds of injuries—increases in police, fire, sanitation, and similar municipal expenses—are anything more than merely foreseeable consequences of redlining and reverse-redlining. The [Supreme] Court has told us that foreseeability alone is not enough…. The City's increased expenditures have not been plausibly presented as directly and automatically resulting from the Banks' alleged conduct. Even though we think foreclosures follow directly from the Banks' conduct, there is too much opportunity in the causal chain between foreclosure and increased expenditure for intervening actors and causes to play a role, and there has been no explanation by the City of how we might conceivably isolate the injury attributable to the Banks.

Here, as in *City of Miami II*, Plaintiffs' claimed injuries are not an "automatic" or direct injury resulting from Defendants' alleged conduct. Plaintiffs claim they were "*required* to spend time and money in response to complaints" and that "Defendants' conduct directly *forced* them to expend money," Opp. at 15-16 (emphasis added), but nothing about the Defendants' alleged conduct "required" or "forced" Plaintiffs to expend the resources that they allege as the basis of their harm. Plaintiffs' alleged increased costs thus are more similar to Miami's increased expenditures on municipal services (for which the Eleventh Circuit held proximate cause was *not* sufficiently alleged) than the tax revenue injuries that allegedly resulted from foreclosures.

The Supreme Court was clear that FHA claims should be dismissed where plaintiffs fail to allege a "direct relation between the injury asserted and the injurious conduct alleged." *City of Miami*, 137 S. Ct. at 1306; MTD Order at 28 (emphasis added). Even *City of Miami II* demonstrates that where, as here, the plaintiffs' alleged harm does not directly result from the alleged FHA violation, their claims should be dismissed at the pleading stage.

**III.    The Second Amended Complaint Inadequately Pleads Claim-Specific Elements.**

**A.    Plaintiffs Fail To State A Section 3604 Claim.**

In a meager attempt to meet the Court's directive to "allege the REO properties were neglected to such an extent as to dissuade purchasers from buying them" (MTD Order at 20-21), the SAC adds a conclusory allegation that Defendants' purported conduct "has had the effect of dissuading purchasers from buying these properties." SAC ¶ 290 (citing Plaintiffs' "familiarity" with REO properties and providing one example in one city); *see id.* ¶¶ 178, 189, 304, 309. Plaintiffs' opposition cites some other conclusory allegations, but they are not new. They are the same allegations that the Court previously found deficient. *Compare* Opp. at 32-33 (citing SAC ¶¶ 164-65, 289) *with* Sostrin Dec., Ex. A (redline comparison). Plaintiffs' assertion that they do

not need to allege "specific instances" or "persons" (Opp. at 33-34) misses the point. Plaintiffs must allege "sufficient factual matter … to 'state a claim to relief that is plausible'" (*Iqbal*, 556 U.S. at 678), not merely "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs' Section 3604 claim is still deficient and should be dismissed.

### B.     Plaintiffs Fail To State A Section 3605 Claim.

In an attempt to meet the Court's directive to "identify specific real-estate transactions impeded by Defendants' conduct" (MTD Order at 21-22), the SAC adds a conclusory allegation that Defendants have purportedly "impeded real estate transactions and development in minority communities." SAC ¶ 327; *see id.* ¶¶ 189, 328, 336. Plaintiffs' assertion that they do not need to make allegations about "specific people" (Opp. at 34-45) again misses the mark. The Court required Plaintiffs to identify specific real-estate transactions purportedly impeded by Defendants' conduct, and contrary to Plaintiffs' assertions, they have not provided it. Again, a formulaic recitation of the elements of a claim is not enough. *Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs' Section 3605 claim is still deficient and should be dismissed.

### C.     Plaintiffs Fail To State A Claim For Perpetuating Segregation.

Plaintiffs do not dispute that their claim for perpetuating segregation depends on their study's statistical analysis of the studied properties. Br. at 28-29; Opp. at 35. The fatal flaws in Plaintiffs' methodology (see *supra* at 1-4) therefore compel dismissal of this claim as well.

### IV.    Plaintiffs' Allegations Outside Of The Applicable Two-Year Statute Of Limitations Warrant Dismissal.

The Court held that Plaintiffs "state[d] clearly" in the original complaint that they "knew back in 2011 that Defendants' conduct transgressed the FHA." MTD Order at 9. Plaintiffs now insist that, on second thought, they were not on notice of statistical disparities with respect to

Defendants in 2011. Instead, Plaintiffs now assert that they only became aware of disparities as to Trustee-owned REOs in 2014, after "completion of the thorough development of evidence against the specific Defendants." Opp. at 12. But this is not the standard for when notice of a violation cuts off the availability of the continuing violation doctrine. Instead, "the doctrine has no application where the time-barred incident put the plaintiff on notice that his rights were being violated." MTD Order at 7 (citing *EEOC v. N. Gibson Sch. Corp.*, 266 F.3d 607, 617 (7th Cir. 2001)) (emphasis added). The fact that Plaintiffs took so long to amass evidence does not erase Plaintiffs' original allegation that, in 2011 they, "placed Defendants on notice of the fact that their discriminatory conduct and practices violate the Fair Housing Act." ECF No. 1 ¶ 88.

Even if Plaintiffs had not surveyed any Trustee-held properties at the time, the alleged nationwide disparities identified in 2011 put them on notice of their claims. Moreover, after allegedly surveying 99 properties held by Defendants in 2012, Plaintiffs purported to confirm what they previously claimed to be aware of—that there were consistent trends in the maintenance of REO properties across the universe of their investigation. Opp. at 6. "A plaintiff seeking the doctrine's application must show that it was reasonable of him not to perceive the impingement of his rights until the discriminatory acts had, "through repetition or cumulation, reached the requisite level of severity." MTD Order at 7 (quoting *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 703 (7th Cir. 2001)). Plaintiffs clearly perceived by 2011-12 that the alleged discriminatory practices existed with respect to Defendants. Further, with respect to Ocwen and Altisource, Plaintiffs concede that they were on notice of their claims by no later than 2014 (Opp. at 5-6), yet offer no explanation for waiting until 2017 to file their HUD complaint against Ocwen and Altisource. Thus, even if Plaintiffs were only on notice of their claims by 2014, Plaintiffs are still limited to post-February 14, 2015 actions for Ocwen and Altisource. MTD Order at 9.

Consequently, this Court did not err in finding Plaintiffs' claims were time-barred. Plaintiffs wrongly claim that "the statute of limitations does not begin with respect to an ongoing practice, regardless of when Plaintiffs knew about it." Opp. at 7. In *County of Cook v. Bank of Am. Corp.*, 181 F. Supp. 3d 513, 520 (N.D. Ill. 2015), cited by Plaintiffs, the court ruled that the continuing violation doctrine does not apply if it is apparent that the plaintiff "knew or should have known" about the discriminatory activity. *Id.* (citing *Shanoff*, 258 F.3d at 703).

Unlike the *County of Cook* plaintiffs, Plaintiffs here have alleged (in the original complaint and SAC) that they "knew or should have known" about the violations at issue. Defendants showed as much in their opening brief (Br. at 30-31), which Plaintiffs seemingly ignore. In Plaintiffs' cited supplemental authority, the District of Maryland even recognized that this "notice restriction" bars Plaintiffs' appeal to the continuing violation doctrine in the Seventh Circuit. *Bank of Am.*, 2019 WL 3241126, at *14. Plaintiffs' reliance on *Access Living*, 2019 WL 1429647, at *5-6, inapposite, as there were no facts in that case which would have put the plaintiff on notice of the violation at issue. This Court's prior finding that Plaintiffs were on notice should stand, as should its holding that Plaintiffs cannot allege a continuing violation.

Finally, as Plaintiffs' own cases demonstrate, Plaintiffs' assertion that activity outside the limitations period may be used as evidence (Opp. at 7) does not mean that Plaintiffs can seek relief for time-barred activity, as Plaintiffs attempt to do. *See*, *e.g.*, *Shanoff*, 258 F.3d at 705 ("conduct that occurred before the limitations period is time-barred and not actionable"). Plaintiffs' time-barred allegations must once again be excluded from the SAC.

## CONCLUSION

For these reasons and those stated in Defendants' opening brief, the SAC should be dismissed with prejudice.

Dated: July 26, 2019               Respectfully submitted,

By: /s/ Debra Bogo-Ernst
Debra Bogo-Ernst
Matthew C. Sostrin
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600

*Counsel to Defendant Ocwen Loan Servicing, LLC*

By: /s/ Kenneth M. Kliebard
Kenneth M. Kliebard
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Telephone: (312) 324-1000

Kevin M. Papay (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

*Counsel to Defendants Deutsche Bank National Trust Company, as Trustee, Deutsche Bank Trust Company Americas, as Trustee*

By: /s/ Shannon Shin
Shannon Shin
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Email: shannon.shin@dentons.com

Lisa Krigsten (admitted *pro hac vice*)
DENTONS US LLP
4520 Main Street
Suite 1100
Kansas City, MO 64111
Telephone: (816) 460-2400
Email: lisa.krigsten@dentons.com

16

Nathan Garroway (admitted *pro hac vice*)
DENTONS US LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone:  (404) 527-4000
Email: nathan.garroway@dentons.com

*Counsel to Defendant Altisource Solutions, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on July 26, 2019.

/s/ Debra Bogo-Ernst