# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, | Case No. 1:18-cv-00839<br><br>Judge Harry D. Leinenweber<br>Magistrate Judge Sidney I. Schenkier |
| Plaintiffs, | |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC.; and ALTISOURCE SOLUTIONS, INC., | |
| Defendants. | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT BY DEFENDANTS DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE, AND DEUTSCHE BANK TRUST
COMPANY AMERICAS, AS TRUSTEE**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

    A.    This Court Already Ruled that the Trustees Cannot Be Held Liable Based Solely on Holding Legal Title to the Properties at Issue. ...................................... 1

        1.    The Court's Prior Ruling is the Law of the Case. ....................................... 1

        2.    The Court Correctly Found That *Wetzel* Does Not Apply Here. ............... 3

    B.    Plaintiffs' Discussion of the Trust Indenture Act Misconstrues the Trustees' Argument that the Trustees' Relevant Duties Are the Same No Matter How the RMBS Trusts Are Structured. ...................................................... 5

    C.    Plaintiffs Fail to Allege an Agency Relationship Between the Trustees and the Entities Responsible for Servicing the Properties at Issue. .............................. 5

    D.    Plaintiffs Fail to Rebut that the Governing Agreements, As With the Example Trust, "Strip" the Trustees of Responsibility for Maintenance or Marketing of the Properties at Issue. .................................................................... 7

    E.    Plaintiffs Concede The Trustees Did Not Hold Title to Nine Properties. ............. 8

CONCLUSION .................................................................................................................... 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*
  603 F.3d 23 (2d Cir. 2010) ..................................................................................................5

*Jones v. Capital Cities/ABC Inc.*
  168 F.R.D. 477 (S.D.N.Y. 1996) .........................................................................................7

*MidWest Trading Group, Inc. v. GlobalTranz Enterprises, Inc.*
  59 F.Supp.3d 887 (N.D. Ill. 2014) ......................................................................................6

*Muick v. Glenayre Electronics*
  280 F.3d 741 (7th Cir. 2002) ..............................................................................................6

*Natural Res. Def. Counsel v. Metro. Water Reclamation Dist. of Greater Chicago*
  226 F. Supp. 3d 904, 910 (N.D. Ill. 2016) ..........................................................................2

*Pincus v. Pabst Brewing Co.*
  752 F. Supp. 871 (E.D. Wis. 1990) .....................................................................................2

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*
  109 F.Supp.3d 587, 597 (S.D.N.Y. 2015) ...........................................................................5

*Santora v. Starwood Hotel & Resorts Worldwide, Inc.*
  580 F.Supp.2d 673 (N.D. Ill. 2008) ....................................................................................7

*Wetzel v. Glen St. Andrew Living Community, LLC*
  901 F.3d 856 (7th Cir. 2018) .......................................................................................2, 3, 4

*Whitley v. Taylor Bean & Whitacker Mortg. Corp.*
  607 F.Supp.2d 885 (N.D. Ill. 2009) ....................................................................................7

*Wisconsin Central Ltd. v. TiEnergy, LLC*
  894 F.3d 851 (7th Cir. 2018) ..............................................................................................6

**Statutes**

15 U.S.C.
  § 77ccc .................................................................................................................................5

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ......................................................................................5

REST. (SECOND) OF PROP.: LAND & TEN. § 6.1 ............................................................................4

## INTRODUCTION

In their successful motion to dismiss the original complaint, and in their opening brief challenging Plaintiffs' renewed attempts to state a claim, the Trustees established that they did not perform or have the authority to perform the challenged servicing activities. The applicable Governing Agreements allocate no role to the Trustees with respect to the challenged conduct, and Plaintiffs cannot contend otherwise. Faced with that reality, Plaintiffs fall back to an argument that this Court already rejected: that simply holding legal title to properties subjects the Trustees to automatic liability for third parties' allegedly discriminatory servicing. The Court also already rejected Plaintiffs' assertion that a 2018 Seventh Circuit decision—which was decided and submitted to the Court *before* the Court granted Defendants' motion to dismiss—warrants any contrary ruling. Nor can Plaintiffs' scattershot references to immaterial provisions of the Governing Agreements cure Plaintiffs' failure to allege facts sufficient to establish that Ocwen and/or Altisource acted as agents of the Trustees with respect to the challenged servicing conduct. Accordingly, Plaintiffs' claims against the Trustees should be dismissed in their entirety.[1]

## ARGUMENT

**A.   This Court Already Ruled that the Trustees Cannot Be Held Liable Based Solely on Holding Legal Title to the Properties at Issue.**

   **1.   The Court's Prior Ruling is the Law of the Case.**

The Court already rejected Plaintiffs' argument that "Defendants are stuck on the hook for FHA compliance no matter what" simply "because Defendants (as trustees) owned the REO properties in this case." ECF No. 54 ("MTD Order") at 12-13.[2] Yet, nearly a third of Plaintiffs'

---

[1] The Court can dismiss Plaintiffs' claims against the Trustees based on the arguments raised in the Trustees' supplemental motion to dismiss alone. However, the Court also should dismiss Plaintiffs' claims against the Trustees for the reasons stated in the Defendants' joint motion to dismiss.
[2] All page number citations to docket items correspond to the ECF pagination, unless stated otherwise.

-1-

opposition rehashes this unavailing argument. The Court's ruling that an RMBS trustee cannot be held liable based solely on its status as the bare legal title holder of a mortgage loan, MTD Order at 12-13, is the law of the case. *See* ECF No. 73 ("Trustee Mot.") at 11; *Natural Res. Def. Counsel v. Metro. Water Reclamation Dist. of Greater Chicago*, 226 F. Supp. 3d 904, 910 (N.D. Ill. 2016) ("The law of the case doctrine teaches that, unless it becomes evident that a ruling was clearly erroneous, a court's decision on a rule of law should continue to govern the same issue in the same case."); *Pincus v. Pabst Brewing Co.*, 752 F. Supp. 871, 872 (E.D. Wis. 1990) (quoting *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir. 1972)) ("The law of the case doctrine 'is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter.'"). The Court's prior ruling on this issue governs, and that should end the inquiry.

Plaintiffs try to sidestep the Court's ruling by insisting in an argument relegated to a footnote that a court can reconsider "a prior decision when there has been a change in controlling authority, or when the prior decision was clearly erroneous." ECF No. 78 ("Opp.") at 3, n.3. As a preliminary matter, this Court made it clear that "[a]rguments appearing only in footnotes are waived." Order at 5. Regardless, this argument falls short because Plaintiffs did not timely move for reconsideration of the Court's Order, have not identified any subsequent change in controlling authority, and, in any event, fail to demonstrate that the Order was clearly erroneous. If Plaintiffs believed the Court's decision was erroneous, their window to move for reconsideration of that decision closed months ago.

Beyond that, no new authority justifies Plaintiffs' request to revisit this aspect of the Court's prior order. Plaintiffs' argument that the Court should reconsider its ruling based on the Seventh Circuit's "recent[]" decision in *Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856 (7th Cir. 2018), is a non-starter. Opp. at 4. Plaintiffs conveniently omit that *Wetzel* was

decided *three months before* the Order.  Moreover, Plaintiffs specifically identified *Wetzel* in a notice of supplemental authority that they filed *before* the Court ruled on Defendants' original motion to dismiss.  ECF No. 52.  In fact, when it granted Plaintiffs' motion to submit *Wetzel* as supplemental authority, the Court expressly concluded that *Wetzel* "does not materially change the Court's perspective" reflected in the Order.  ECF No. 54 (docket text).  In other words, *Wetzel* is *not* "intervening" authority at all, and provides no basis to disturb the Court's ruling on this issue.

Nor can Plaintiffs demonstrate that the Court's reading of *Wetzel* (or any other authority) was "clearly erroneous."  Instead, as discussed bellowed, Plaintiffs simply rehash the same arguments that the Court previously considered and rejected.

### 2. The Court Correctly Found That *Wetzel* Does Not Apply Here.

Even if the Court were to look again at *Wetzel* as somehow dispositive on the issues in the Trustees' motion, as the Court already concluded, Plaintiffs' reliance on *Wetzel* is misplaced.  *Wetzel* involved a hostile living environment created by tenants and employees of a senior living facility for a tenant who was subjected to verbal and physical results by building tenants and staff.  901 F.3d at 859-60.  When the tenant complained of mistreatment, the defendants used contractual rights that they had granted themselves to retaliate and seek to evict her.  *Id.* at 860-62.  The *Wetzel* court opined that "[h]ad the management defendants done nothing but listen, we might have a more limited case."  *Id.* at 860.

Contrary to Plaintiffs' assertions, the *Wetzel* court did not conclude that the corporate defendants' *ownership* status, alone, subjected them to liability under the FHA.  Indeed, *Wetzel* actually *undercuts* Plaintiffs' theory by reaffirming that liability under the FHA cannot attach *unless* the defendant has an independent legal duty to control the discriminatory conduct.  *Id.* at 865.  The *Wetzel* court's decision turned on the fact that the defendant, as a landlord, deliberately contracted for itself the power to ensure tenants were not subjected to discriminatory conduct.  *Id.*

-3-

The court further found that the landlord defendant *could not* disclaim its duty to protect its tenant from the harassment and violence to which she was subjected because the landlord was subject to duties under property law to "provide its tenants a residence that is free from 'interference with a permissible use of the leased property. . . .'" *Id.* (quoting REST. (SECOND) OF PROP.: LAND & TEN. § 6.1). By contrast, numerous courts, including *this Court* in *this case*, have recognized that the duties of an RMBS trustee *can* be expressly limited (by the settlors of the relevant RMBS trusts— *not* the Trustees themselves) to those set forth in a trust governing contract, with the remaining duties being undertaken by other deal parties (like servicers). *See* MTD Order at 15 (citing cases).

Plaintiffs' assertion that the Trustees must be held liable for servicing misconduct to avoid "impair[ing]" enforcement of the FHA, Opp. at 3, is belied by Plaintiffs' own pleading. Plaintiffs have identified Ocwen and Altisource as the parties who they allege actually undertook the challenged conduct and sued those parties as well. In *Wetzel*, the court concluded that *some* party needed to be responsible for the alleged misconduct. Here, by contrast, Plaintiffs insist they should be permitted to sue multiple parties—with distinct legal and contractually assigned obligations with respect to the properties at issue—for the same alleged discriminatory servicing conduct. As demonstrated in the Trustees' motion, the Governing Agreements do not present a situation in which all responsibility for property maintenance is disclaimed. Rather, from the outset, the Governing Agreements simply assign that responsibility to parties *other than the Trustees*. *See* Trustee Mot. at 10-11. That does not run afoul of either the FHA or *Wetzel*.

Consistent with the Supreme Court's guidance in *Inclusive Communities*, enforcing this limitation and precluding Plaintiffs from alleging claims that cannot lie against the Trustees would ensure that claims are properly brought against only those defendants for whom a plaintiff can make out a *prima facie* case of discrimination at the pleading stage.

**B.     Plaintiffs' Discussion of the Trust Indenture Act Misconstrues the Trustees' Argument that the Trustees' Relevant Duties Are the Same No Matter How the RMBS Trusts Are Structured.**

The Trustees have explained the critical distinction between indenture trustees, like the Trustees, and ordinary trustees. Trustees' Mot. at 9-10. Plaintiffs' response that the Trust Indenture Act does not apply is a non-sequitur, and their assertion that an RMBS trustee whose duties are governed by a PSA is akin to an "ordinary" trustee is unsupportable. *See* Opp. at 8-9.

A PSA may not carry the title "indenture," but it *is* an indenture. *See* Black's Law Dictionary (10th ed. 2014) (def. "indenture," "trust indenture (1843) . . . A document containing the terms and conditions governing a trustee's conduct and the trust beneficiaries' rights."); *cf.* 15 U.S.C. § 77ccc ("The term 'indenture' means any mortgage, deed of trust, trust or other indenture, or similar instrument or agreement (including any supplement or amendment to any of the foregoing), under which securities are outstanding or are to be issued . . . ."); *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 29 (2d Cir. 2010) (PSAs are "trust agreements similar to bond indentures in many respects."). Therefore, the protections afforded trustees under documents styled as "indentures" apply equally by their terms to PSAs. *See Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F.Supp.3d 587, 597 (S.D.N.Y. 2015) (an RMBS trustee's duties are limited to those expressly set forth in its governing agreement "regardless of whether the trust is an indenture trust or a PSA [trust].") (citations omitted). And for reasons explained in the Motion, the role of an RMBS trustee—acting pursuant to a PSA or otherwise—is a completely "different legal animal" than an ordinary trustee. Trustees' Mot. at 9.

**C.     Plaintiffs Fail to Allege an Agency Relationship Between the Trustees and the Entities Responsible for Servicing the Properties at Issue.**

Even if the Court was inclined to revisit its conclusion that, based on the Example Trust, Plaintiffs failed to prove a principal-agent relationship (which it should not do), Plaintiffs still fail

to state a claim. As demonstrated in the Trustees' motion, control is a necessary element of any principal-agent relationship. Cutting through Plaintiffs' sprawling arguments, Plaintiffs still have not alleged any factual allegations of such control with respect to the challenged servicing conduct that gives rise to their claims. Trustees' Mot. at 11-16. The Governing Agreements demonstrate that the Servicers' conduct is controlled by contract, and is *not* subject to Trustee control. *Id.*

Plaintiffs' opposition cites inapposite provisions in the Governing Agreements and baldly asserts that they "bear[] the hallmarks of agency relationship." Opp. at 12. Yet Plaintiffs do not explain *how* those provisions support such a finding. For example, Plaintiffs cite provisions in the Governing Agreements providing that a Trustee can "notify a Servicer of a breach" of the agreement. Opp. at 13. But, like the provisions alleged in the SAC (as discussed in the Trustees' motion), this provision confers no right of *control* as to the servicing activities challenged in this case, since, on its face, it refers to post hoc notifications.

Plaintiffs' proffered authorities do not support Plaintiffs' assertion that Plaintiffs can meet their pleading burden by pleading the ill-defined "hallmarks" of an agency relationship, without pleading a right of control. *See* Opp. at 11. In *Muick v. Glenayre Electronics*, 280 F.3d 741, 742 (7th Cir. 2002), the Seventh Circuit concluded that no agency relationship existed because—as here—"there was no agreement" creating such a relationship. In *MidWest Trading Group, Inc. v. GlobalTranz Enterprises, Inc.*, 59 F.Supp.3d 887 (N.D. Ill. 2014), the court did not purport to consider all of the necessary elements of an agency relationship, since "there [was] no dispute" concerning whether an agency relationship existed in that case. *Id.* at 893. The real "hallmark of the principal/agent relationship is the principal's right to control the conduct of the agent," *Wisconsin Central Ltd. v. TiEnergy, LLC*, 894 F.3d 851, 858 (7th Cir. 2018) (citation omitted), and Plaintiffs have failed to identify any factual allegation, that, if assumed true, would support a

finding that the Trustees controlled the Servicer's conduct with regard to the maintenance or marketing of the properties at issue. Plaintiffs' argument that they can plead an "operational agency" relationship, Opp. at 14, fares no better: none of the allegations cited in the Opposition establish or even suggest Trustee *control* of a Servicer, whether by contract or "operationally," and the concept of an "operational agency relationship" appears to be a creation of Plaintiffs, unsupported by the case law they cite for it.[3]

Plaintiffs' complaint about the *number* of Governing Agreements examined in the Trustees' motion carries no weight. Opp. at 11. Plaintiffs, not the Trustees, filed claims concerning more than a thousand properties, and they apparently did so without first reviewing the publicly available Governing Agreements relevant to claims concerning those properties. By highlighting the discovery they "would also seek" to support their claims, *id.*, Plaintiffs appear to recognize that the SAC does not *currently* contain sufficient well-pled facts to support their claims. This subjects their claims to dismissal. *See Jones v. Capital Cities/ABC Inc.*, 168 F.R.D. 477, 480 (S.D.N.Y. 1996) ("[T]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists, and a defendant has a right . . . to challenge the legal sufficiency of a complaint's allegations against him, without first subjecting him to discovery procedures.") (citations omitted).

### D. Plaintiffs Fail to Rebut that the Governing Agreements, As With the Example Trust, "Strip" the Trustees of Responsibility for Maintenance or Marketing of the Properties at Issue.

Following the Court's prior decision, the sole remaining question is whether servicers of

---

[3] In *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F.Supp.2d 885, 895 (N.D. Ill. 2009), the court considered, *inter alia*, that (1) there was a written contract between the alleged principal and agent, and (2) there were alleged kickbacks from the agent to the principal. Moreover, the *Whitley* court's holding was based on precedent specific to the "broker-lender context," *id.,* which has no application here. *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F.Supp.2d 673 (N.D. Ill. 2008), concerned apparent authority, *id.* at 675, and makes no reference to an "operational" theory of agency.

the properties at issue in this case, "had exclusive responsibilities to *manage* the properties, which could provide an escape hatch . . . for the [Trustees]," like the servicer of the example trust discussed in DBNTC's prior motion to dismiss. MTD Order at 13. The Trustees' motion unequivocally answers that question in the affirmative through a comprehensive analysis of the applicable Governing Agreements. Trustees' Mot. at 9-11; Kliebard Decl. ¶¶ 11-14. The Trustees demonstrated that, just like the example PSA submitted in support of the Trustees' original motion, the Governing Agreements for *each* of the properties that is the subject of Plaintiffs' claims "strip the trustee of the responsibility of property maintenance." Order at 14; *see* Trustees' Mot. at 10-11 (citing PSA provisions that establish "the Trustees play no role in the day-to-day servicing of the mortgage loans within the Trusts," which is a role "specifically granted to the Servicers alone"); Kliebard Decl. ¶¶ 11-13. In their opposition, Plaintiffs do not even *try* to argue that the provisions analyzed in the Kliebard Declaration differ in any material way from the provisions in the sample PSA that the Court agreed "strip the trustee of the responsibility for servicing maintenance." Order at 14. That is because the language of the PSAs squarely supports the Trustees' position.

### E.  Plaintiffs Concede The Trustees Did Not Hold Title to Nine Properties.

Plaintiffs cannot dispute—and previously *admitted* in a sworn declaration—that the Trustees were not the title holders for nine properties identified in the SAC and discussed in the Kliebard Declaration. Kliebard Decl. ¶ 4. This is not what Plaintiffs characterize as a "factual dispute." Opp. at 15. It is an *undisputed* fact that Plaintiffs blatantly ignored in the SAC. Plaintiffs have no basis to allege claims against the Trustees as to those properties.

### CONCLUSION

For these reasons, as well as those stated in the Trustees' Opening Brief, Plaintiffs' claims against the Trustees should be dismissed with prejudice.

Dated: July 26, 2019

Respectfully submitted,

By: /s/ Kenneth M. Kliebard
Kenneth M. Kliebard
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Telephone: (312) 324-1000

Kevin M. Papay (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

*Counsel to Defendants Deutsche Bank National Trust Company, as Trustee, and Deutsche Bank Trust Company Americas, as Trustee*

## CERTIFICATE OF SERVICE

    The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on July 26, 2019.

                                                         /s/ Kenneth M. Kliebard

DB2/ 36303168