**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, et al., | |
| Plaintiffs, | Case No. 18-cv-00839 |
| v. | Judge Harry D. Leinenweber |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC; and ALTISOURCE SOLUTIONS, INC. | Magistrate Judge Sidney I. Schenkier |
| | Jury Trial Demanded |
| Defendants. | |

## NOTICE OF FILING

Pursuant to the Court's August 19, 2019 Order, Plaintiffs hereby file the attached opinion in *National Fair Housing Alliance, et al. v. Federal National Mortgage Association,* Case No. 16-06969 JSW (N.D. Cal. Aug. 12, 2019).

Respectfully Submitted,

   */s/ Jennifer K Soule*

| | | |
|---|---|---|
| Jennifer K. Soule | Stephen M. Dane | Morgan Williams |
| James G. Bradtke | Yiyang Wu | *National Fair Housing Alliance* |
| Kelly K. Lambert | *Relman, Dane & Colfax PLLC* | 1331 Pennsylvania Ave, NW |
| *Soule, Bradtke & Lambert* | 1225 19th Street, N.W. | Suite 650 |
| 402 Campbell Street | Suite 600 | Washington, DC 20004 |
| Suite 100 | Washington, DC 20036 | *Attorney for Plaintiffs* |
| Geneva, IL 60134 | *Attorneys for Plaintiffs* | |
| *Attorneys for Plaintiffs* | | |

Dated: August 26, 2019

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), <br><br> Defendant. | No. C 16-06969 JSW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART FANNIE MAE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

Now before the Court is the motion to dismiss the first amended complaint filed by Defendant Federal National Mortgage Association ("Fannie Mae"). Having considered the parties' arguments, relevant legal authority, the Court hereby GRANTS IN PART and DENIES IN PART Fannie Mae's motion to dismiss.

## BACKGROUND

Plaintiffs National Fair Housing Alliance, Inc., Fair Housing Advocates of Northern California, Connecticut Fair Housing Center, Denver Metro Fair Housing Center, Fair Housing Center of Central Indiana, Fair Housing Center of the Greater Palm Beaches, Fair Housing Center of West Michigan, Fair Housing Continuum, Inc., Greater New Orleans Fair Housing Action Center, HOPE Fair Housing Center, Housing Opportunities Made Equal of Virginia, Housing & Research Advocacy Center, Miami Valley Fair Housing Center, Metro Fair Housing Services, Inc., Metropolitan Milwaukee Fair Housing Council, North Texas Fair Housing Center, Open Communities, South Suburban Housing Center, and Toledo Fair Housing Center

(collectively "Plaintiffs") here allege that, after the housing crisis in 2008, in violation of the Fair Housing Act, Fannie Mae failed to perform basic maintenance on foreclosed properties it suddenly owned in minority neighborhoods around the country, even while it did perform routine maintenance on properties it came to own in predominantly white neighborhoods.

When a home mortgage owned by Fannie Mae goes into default and foreclosure, Fannie Mae obtains the title to the home and, after a completed foreclosure sale, the home is referred to as "Real Estate Owned" or "REO." (First Amended Complaint ("FAC") ¶ 4.) As a result of the housing crisis, Fannie Mae obtained title to a "significant number of REO dwellings covered by the Fair Housing Act." (*Id.*) Once an REO property, Fannie Mae "assumes all duties and responsibilities of ownership, including ordinary maintenance, while it markets the dwelling for sale to the general public." (*Id.* at ¶ 5.) Fannie Mae's stated strategy is to "maintain each property in [its] inventory at a level of market-readiness both inside and outside of the property, supporting neighborhood stabilization." (*Id.*) The stated mission of the maintenance team is "to ensure the quality of our REO property maintenance services, consistently producing best-in-class, market-ready properties and maintaining them until removal from our inventory." (*Id.*)

Plaintiffs allege that Fannie Mae is required, under the Fair Housing Act, to maintain all REO properties, regardless of their location, "without regard to race, color, . . . or national origin." (*Id.* at ¶ 7.) Between July 2011 and October 2015, Plaintiffs allege that they "conducted a comprehensive investigation of [Fannie Mae]'s real estate related activities in communities of color, including predominantly African-American and Latino neighborhoods, and predominantly white neighborhoods in 38 metropolitan areas throughout the United States." (*Id.* at ¶ 3.) Plaintiffs allege that over the course of four years, they investigated over 2,300 properties owned and maintained by Fannie Mae, and accumulated over 49,000 photographs. (*Id.* at ¶¶ 7, 10.) Plaintiffs allege that their investigation revealed that "Fannie Mae and its agents have failed to conduct routine exterior maintenance and marketing of REO properties in communities of color, thereby leaving those REO properties in a state of neglect, while satisfactorily conducting routine exterior maintenance and marketing of its REO properties in

1 predominantly white neighborhoods, therefore leaving those REO properties in a materially
2 better condition." (*Id.* at ¶ 8.)

3 Although Plaintiffs allege that they alerted Fannie Mae regarding the findings of their
4 investigation in order to secure voluntary compliance with the Fair Housing Act, Plaintiffs
5 allege that Fannie Mae "did not change its behavior. With discriminatory intent and deliberate
6 indifference to the discriminatory purpose and effects of its policies and practices, Fannie Mae
7 continued to maintain its REO properties differently because of the predominant race and
8 national origin of neighborhoods." (*Id.* at ¶ 20.) As a result of these practices, Plaintiffs allege
9 that "Fannie Mae stigmatizes communities of color as less desirable than predominantly white
10 neighborhoods. The prospects for integration in the affected neighborhoods are reduced
11 because white buyers are deterred from purchasing homes in neighborhoods with poorly
12 maintained REO properties, leaving the existing segregated racial composition of these
13 neighborhoods unchanged." (*Id.* at ¶ 24.)

14 Plaintiffs filed suit to allege violation of the Fair Housing Act which makes it unlawful
15 to discriminate against any person in the terms, conditions, or privileges of sale or rental of a
16 dwelling, or in the provision of services or facilities in connection therewith, because of race or
17 national origin. (*Id.* at ¶ 306, citing 42 U.S.C. § 3604(b).) Plaintiffs allege that Fannie Mae's
18 conduct discriminates in the marketing and sale of dwellings to persons because of race or
19 national origin. (*Id.*) Plaintiffs allege that Fannie Mae has "designed a national practice and
20 policy of having its lower-level agents and employees determine whether to conduct an REO
21 exterior maintenance task and how to conduct it. Fannie Mae's practice thus gave these agents
22 and employees the ability to exercise high levels of discretion with minimal input from Fannie
23 Mae. [This] practice and policy of committing REO exterior maintenance decisions to the
24 subjective and unguided discretion of its lower-level agents ha[s] caused a disproportionately
25 adverse impact on communities of color." (*Id.* at ¶ 174.) This unguided delegation of
26 discretion without independent quality checks "resulted in REO properties in communities of
27 color receiving less exterior maintenance than REO properties in predominantly white
28

3

neighborhoods. The observed disparities persist even after a regression analysis for non-racial factors." (*Id.* at ¶ 177.)

The complaint is replete with allegations that the maintenance decisions were delegated to low-level employees and agents to decide when and how maintenance tasks would be undertaken. Plaintiffs allege that Fannie Mae did not specify when exterior REO maintenance should be performed, where in contrast, "Fannie Mae provided detailed instructions to its agents with regard to other REO services, including directing them to perform tasks on a monthly basis." (*Id.* at ¶ 175.) The complaint details Fannie Mae's practices which allowed for little or any knowledge of whether properties actually required exterior maintenance and their failure to perform independent quality control on the majority of the properties. (*Id.* at ¶ 176.) Plaintiffs also detail how, after a report by the Office of the Inspector General of the Fair Housing Finance Agency criticized Fannie Mae's quality control protocol, "noting that there was 'significant risk' that it would be insufficient to assess the quality of REO maintenance activities over a sustained period of time," Fannie Mae still did not alter its practices. (*Id.*) Plaintiffs further allege that the data from their investigation establishes that "the exterior maintenance of REO properties under Fannie Mae's maintenance practices and policies varied based on the age and/or the value of the properties." (*Id.* at ¶ 178.)

After a temporary stay of the case, Fannie Mae moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and pursuant to Rule 12(b)(1) for failure of Plaintiffs to establish standing. The Court granted in part and denied in part Fannie Mae's motion, finding that Plaintiffs had adequately alleged facts sufficient to make a claim for organizational standing. In addition, the Court held that although Plaintiffs had pled facts sufficient to state a disparate impact claim, they had failed to allege sufficient facts regarding discriminatory motive. On this basis, the Court denied Fannie Mae's motion to dismiss the claim for disparate impact and granted its motion to dismiss the claim for disparate treatment, with leave to amend.

On April 10, 2018, Plaintiffs filed a first amended complaint seeking to address the deficiencies in pleading intent in support of their disparate treatment claim. In response, Fannie

4

Mae has again moved to dismiss on the basis that Plaintiffs have still not stated a claim for intentional discrimination and also on the separate basis that the Housing and Economic Recovery Act of 2008 ("HERA") precludes Plaintiffs' claims for punitive damages, attorneys' fees, and injunctive relief.

The Court shall address other specific facts as necessary in the remainder of its order.

## ANALYSIS

**A.     Applicable Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 544. If the allegations are

5

insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.     Claim for Disparate Treatment.**

In its first order granting Fannie Mae's motion to dismiss the disparate treatment claim, the Court found that plausible allegations of discriminatory motive were necessary to maintain such a claim. The Court granted Plaintiffs leave to amend to assert such facts. Plaintiffs have amended their allegations to include various examples of differing treatment in the communities of foreclosed homes and have alleged that the agents hired by Fannie Mae acted intentionally when distributing their maintenance services. Plaintiffs also allege that they had informed Fannie Mae of the details of their substantive findings and allege that Fannie Mae did not change its behavior. On this basis, the Court now finds that Plaintiffs have alleged a claim for disparate treatment.

In order to show disparate treatment based on race, "a plaintiff must establish that the defendant was *motivated* to discriminate against the plaintiff on the basis of race." *Garcia v. Country Wide Financial Corp.*, 2008 WL 7842104, at *7 (C.D. Cal. Jan. 17, 2008) (citing *AFSCME v. State of Washington*, 770 F.2d 1401, 1406-07 (9th Cir. 1985) (emphasis in original)). "Where a plaintiff challenges a defendant's policy, the plaintiff must establish that the defendant implemented the policy 'because of, and not merely in spite of,' its adverse effect on the protected group." *Id.* (citing *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)). "Proof of discriminatory motive is crucial to a disparate treatment claim." *Gamble v. City of Escondido*, 104 F.3d 300, 305-06 (9th Cir. 1997).

In response to the Court's earlier dismissal, Plaintiffs have amended their complaint in various ways. Plaintiffs have added allegations regarding: (1) intentional, but not necessarily intentional discriminatory, conduct; (2) allegations that Fannie Mae acted with deliberate indifference and reckless disregard of the effects of their conduct; (3) statistical confirmation of the margin of maintenance deficiencies to support the conclusion that such effect must be the result of intentional racial discrimination; and (4) pre-suit communications indicating that

6

Fannie Mae was aware of the effect of their conduct and its alleged decision not to change its conduct going forward.

As the Court found in its previous order, there are sufficient allegations to establish a claim for disparate impact, considering the disparate impact and segregative effect of Fannie Mae's actions. However, the Court reviews the categories of the amendments concerning Fannie Mae's conduct and the Court finds that Plaintiffs have set out sufficient allegations of intentional conduct.

### 1. Intentional Conduct.

Plaintiffs allege that they have stated a claim for disparate treatment based on Fannie Mae's conduct of "intentional discrimination, including Fannie Mae's intentional discriminatory acts, Fannie Mae's responsibility for the intentional acts of its agents, and Fannie Mae's deliberate indifference to the discriminatory effect of its and/or its agents' acts[.]" (FAC ¶ 1.) Plaintiffs contend that the "documentation of differing treatment supports an inference that Fannie Mae and/or its agents' behavior is intentional, Fannie Mae is deliberately indifferent to the discriminatory consequence of its actions, and that Fannie Mae's policies and practices have a disparate impact upon communities of color, because of race." (*Id.* at ¶ 8.) Plaintiffs allege that the evidence they have accumulated illustrates that Fannie Mae or its agents "have acted with intent, with deliberate indifference to the consequences of their actions, or with reckless disregard for whether their behavior violated the Fair Housing Act." (*Id.* at ¶ 9.)

In an effort to satisfy the Court's requirement that Plaintiffs allege intentionally discriminatory conduct by Fannie Mae, Plaintiffs have added repeated allegations throughout the amended complaint, that Fannie Mae has acted intentionally. (*See* FAC ¶¶ 1, 8-9, 12, 17, 20, 64, 78, 162, 167-70, 172.) Although in each of these amended allegations, Plaintiffs contend that Fannie Mae acted intentionally, there are no facts to support the proposition that the conduct was intentionally discriminatory. Intentional conduct that is not facially discriminatory does not constitute the basis for a claim of disparate treatment under the Fair Housing Act. *See Thomas v. San Francisco Housing Authority*, 2017 WL 878064, at *4 (N.D. Cal. Mar. 6, 2017) (dismissing intentional discrimination claim under the Fair Housing Act

7

where plaintiff had failed to allege the existence of a facially discriminatory policy or facts to support allegations of intentional discriminatory conduct). Accordingly, these amendments do not alter the Court's previous determination that Plaintiffs have failed adequately to allege intentionally discriminatory conduct which is necessary to maintain a disparate treatment claim.

### 2. Deliberate Indifference or Reckless Disregard.

In the alternative to intentional discrimination, Plaintiffs contend that Fannie Mae acted with "deliberate indifference" and "reckless disregard" when adopting policies that had a disparate impact on minority neighborhoods. (*See* FAC ¶¶ 1, 8, 9, 18, 20, 162, 167, 172.) There is no support for the contention that deliberate indifference or reckless disregard can form the legal bases for a claim under the Fair Housing Act for disparate treatment. On the contrary, the allegations that Fannie Mae was aware of the discriminatory impact, but indifferent to it, does not form a basis for an intentional disparate treatment claim. *See Wood v. City of San Diego*, No. 01-cv-01910, 2010 WL 2382335, at *6 (S.D. Cal. June 10, 2010) (dismissing disparate treatment claim in the context of Title VII by holding that "[t]he fact that [defendant] was aware of, or totally indifferent to the discriminatory impact of, its policy is not sufficient to state a claim for relief"); *see also Gamble,* 104 F.3d at 204-05 (noting that courts analyze Fair Housing Act claims under the same framework as employment discrimination claims under Title VII of the Civil Rights Act). Accordingly, the amended allegations of "deliberate indifference" and "reckless disregard" do not alter the Court's previous determination that Plaintiffs have failed adequately to allege intentionally discriminatory conduct which is necessary to maintain a disparate treatment claim.

### 3. Statistical Disparity Does Not Demonstrate Intentional Discrimination.

Plaintiffs argue that the statistical margin of maintenance deficiencies supports their conclusion that such effect must be the result of intentional racial discrimination. (*See, e.g.,* FAC ¶ 12.) As the Court has already found, if a plaintiff could base intentional discrimination on allegations of disparity, every disparate impact claim would suffice to plead a disparate treatment claim. It is simply not enough to demonstrate a disparate impact to make a claim of intentional disparate treatment. *See, e.g., Arlington Heights v. Metro. Hous. Dev. Corp.*, 429

8

U.S. 252, 266-68 (1977) (finding that discriminatory intent was lacking despite the fact that the decision at issue impacted racial minorities more greatly than it did non-minorities); *see also Thomas v. San Francisco Housing Authority*, 2017 WL 878064, at *4-5 (N.D. Cal. Mar. 6, 2017) (dismissing disparate treatment claim on the basis that impact-related allegations do not suffice to allege intentionally discriminatory conduct); *see also Hamilton v. Lincoln Mariners Assocs. Ltd.*, 2014 WL 5180885, at *5 (S.D. Cal Oct. 14, 2014) (holding that dismissal was proper where the complaint failed to allege sufficient factual material to permit the inference that defendants' action were "more likely than not motivated by discriminatory criteria"); *City of Los Angeles v. Bank of America Corp.*, No. 13-cv-09046, 2014 WL 2770083, at *11 (C.D. Cal. June 12, 2014) (holding that "[i]ntentional discrimination requires a party to allege that the lender treated borrowers differently *because of their status*.") (emphasis added). The Court again finds that the allegations do not create an inference of discriminatory intent.

### 4. Pre-Suit Conduct.

Lastly, in an effort to assert intentional conduct, Plaintiffs allege that before filing suit, they informed Fannie Mae of their own nationwide findings and Fannie Mae refused to change policy. Plaintiffs allege that despite their "efforts to get Fannie Mae to voluntarily comply with the Fair Housing Act, Fannie Mae did not change its behavior. . . . That is to say, Fannie Mae made the intentional decision not to change conduct it knew full well was causing harm to predominantly minority neighborhoods, even though it could have ended this discriminatory conduct readily. This deliberate indifference to the known consequences of its action is a violation of the Fair Housing Act." (FAC ¶ 20.) Plaintiffs amend their complaint to add multiple factual allegations of their interaction with Fannie Mae officials after conducting the study that forms the basis for this lawsuit and allege that Fannie Mae failed to meaningfully change their conduct after Plaintiffs informed them of its alleged repercussions. (*See id.* at ¶¶ 157-66, 172.) Plaintiffs contend that Fannie Mae "had knowledge that its behavior and the behavior of its agents might be in violation of the Fair Housing Act by causing discrimination in neighborhoods of color as compared to predominantly white neighborhoods, but [did not change] its behavior." (*Id.* at ¶ 167.)

9

1  Fannie Mae responds by claiming that they did in fact change their behavior, as
2  evidenced by the report issued by the Fair Housing Finance Agency Office of the Inspector
3  General which details Fannie Mae's internal controls to monitor its vendor compliance with
4  contractual requirements and maintenance standards. (*See* Motion at 6-7.) However, Plaintiffs
5  contend that the policies established in the report were not actually implemented. (*See* Opp. Br.
6  at 9-10, n.8.) The dispute regarding whether Fannie Mae adequately implemented corrective
7  action cannot be resolved in this procedural posture. Plaintiffs allegations are sufficient to state
8  knowledge of the alleged discriminatory effect of conduct that Fannie Mae did not change,
9  thereby stating a claim for disparate treatment under the Fair Housing Act on an ongoing basis.
10  Accordingly, the motion to dismiss as to the disparate treatment claim is DENIED.

**C. Housing and Economic Recovery Act Bar.**

12  In the final portion of its motion to dismiss, Fannie Mae argues that the Housing and
13  Economic Recovery Act of 2008 ("HERA"), precludes relief for Plaintiffs' claims for punitive
14  damages and attorneys' fees. HERA provides that "in any case in which the Agency [FHFA] is
15  acting as conservator . . . [t]he Agency shall not be liable for any amounts in the nature of
16  penalties or fines." 12 U.S.C. § 4617(j)(1), (4) (the "Penalty Bar").

17  There is no dispute that since September 2008, FHFA has acted as Conservator of
18  Fannie Mae. The bar applies to Fannie Mae: "Fannie Mae is statutorily exempt from taxes,
19  penalties, and fines to the same extent that the FHFA is." *Nevada ex rel. Hager v. Countrywide
20  Home Loans Servicing, LP*, 812 F. Supp. 2d 1211, 1218 (D. Nev. 2011); *see also Federal
21  Housing Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013) (finding
22  meritless the argument that the Penalty Bar does not apply to Fannie Mae, as servicer of the
23  loan and holding that "FHFA, as conservator, stepped into the shoes of Fannie Mae"); *Higgins
24  v. BAC Home Loans Servicing, LP*, 2014 WL 1332825, at *2-3 (E.D. Ky. Mar. 31, 2014)
25  (holding that "the prohibition against imposing fines and penalties on the Agency applies 'in
26  any case in which the Agency is acting as a conservator or receiver.' When the Agency is
27  acting in that role, there is essentially no distinction between the Agency and Fannie Mae.")
28  (citing 12 U.S.C. § 4617(j)(1)). In this district, the Court has held that demands for penalties,

10

1 including requests for punitive and exemplary damages, are barred by HERA regardless
2 whether FHFA is a party in the case, because the FHFA "is acting as conservator of Fannie
3 Mae, and has thereby succeeded to 'all rights, titles, and privileges . . . with respect to [Fannie
4 Mae] and the assets of [Fannie Mae]." *Banneck v. Federal National Mortgage Ass'n*, 17-cv-
5 04657-WHO (N.D. Cal. Dec. 13, 2017) (Dkt. No. 37); *but cf Burke v. Federal National
6 Mortgage Ass'n*, 221 F. Supp. 3d 707, 710 (E.D. Va. 2016) *vacated* 2016 WL 7451624 (holding
7 that the plain language of the statute indicates that the Penalty Bar only applies to the FHFA,
8 not to Fannie Mae).

9 Fannie Mae argues that because punitive damages and attorneys' fees are intrinsically
10 "in the nature of penalties or fines," they cannot be imposed on Fannie Mae during
11 conservatorship and Plaintiffs' demand for such relief fails as a matter of law. Punitive
12 damages are considered penal as they are intended to punish by awarding damages in excess of
13 those actually suffered. *See, e.g., Browing-Ferris Indus. of Vermont, Inc. v. Kelco Disposal,
14 Inc.*, 492 U.S. 257, 297-98 (1989) (citing *Electrical Workers v. Foust*, 442 U.S. 42, 48 (1979))
15 (holding that the weight of authority finds that punitive damages are private fines levied by civil
16 juries); *see also Gray v. Seterus, Inc.*, 233 F. Supp. 3d 865, 872 (D. Ore. 2017) (holding that
17 Fannie Mae is immune from punitive damages under 12 U.S.C. § 4617(j)). Accordingly,
18 Plaintiffs' claim for punitive damages is barred by the Penalty Bar.

19 The parties dispute whether the possible award of attorneys' fees constitutes a barred
20 penalty or whether such fees are not awarded to punish defendants but rather to compensate
21 plaintiffs. The parties have not provided and the Court has been unable to find pertinent
22 authority in this context. However, reading the plain language of the Fair Housing Act
23 provision which permits the Court to award attorneys' fees, the Court finds that the statute
24 clearly differentiates between attorneys' fees and actual and punitive damages, and allows the
25 Court to exercise its discretion to award fees. *See* 42 U.S.C. § 3613(c). If the Court should
26 reach the issue attorneys' fees after assessment of liability in this matter, it would find that the
27 allocation of fees would not be considered punitive in nature but rather awarded to ensure

11

1 reasonable compensation to Plaintiffs. *See, e.g., Corder v. Gates*, 947 F.2d 374, 383 (9th Cir. 1991) ("Attorney's fees are *not* awarded to punish defendants") (emphasis in original).

Lastly, Fannie Mae contends that HERA bars Plaintiffs' request for injunctive relief. Under 12 U.S.C. section 4617(f), "no court may take any action to restrain or affect the exercise of powers or function of [FHFA] as a conservator." Having found that the FHFA has stepped in the shoes of Fannie Mae as its conservator, the Court finds the injunctive bar applies to insulate the conservator from injunctive liability for its conduct. However, because the only injunctive relief sought by Plaintiffs' action is the cessation of violations of the Fair Housing Act, the Court finds that any injunctive relief reiterating this legal obligation will not affect the scope of the Agency's power or function. Should liability be established, the requested injunctive relief to terminate violation of the Fair Housing Act would apply to Fannie Mae and not to the Agency.

**CONCLUSION**

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART Fannie Mae's motion to dismiss the first amended complaint.

**IT IS SO ORDERED.**

Dated: August 12, 2019

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

12