IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:18-cv-00839 |
| v. ) | |
| ) | Honorable Harry D. Leinenweber |
| DEUTSCHE BANK NATIONAL TRUST, AS ) | |
| TRUSTEE; DEUTSCHE BANK TRUST ) | Magistrate Judge Sidney I. Schenkier |
| COMPANY AMERICAS, AS TRUSTEE; OCWEN ) | |
| FINANCIAL CORP.; and ALTISOURCE ) | |
| PORTFOLIO SOLUTIONS, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL DISCOVERY**

Defendants, Deutsche Bank National Trust Company, as trustee, and Deutsche Bank Trust Company Americas, as trustee (collectively, the "Trustees"); Altisource Solutions, Inc. ("Altisource"); and Ocwen Loan Services, LLC n/k/a PHH Mortgage Corporation ("Ocwen"), by and through their undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37.2, respectfully move this Court for an order compelling Plaintiffs to produce documents responsive to the Defendants' requests for production concerning Plaintiffs' regression analysis expressly relied on by Plaintiffs in their Second Amended Complaint, as described below.

**I.     INTRODUCTION**

In their Second Amended Complaint (the "SAC"), Plaintiffs sue Defendants under the Fair Housing Act asserting housing discrimination based on Plaintiffs' statistical regression analysis discussed in the SAC. That regression analysis was created using property inspection data generated by Plaintiffs themselves that, according to Plaintiffs, "ruled out" other possible causes for the supposedly disparate race-based conditions related to the care and maintenance of real

estate owned (REO) properties to which the Trustees allegedly held title." (Pls.' Resp. to Defs.' Joint Mot. to Dismiss, Dkt. No. 66, at 15.) It was presented by Plaintiffs in the SAC as a definitive demonstration of the proof of their claims. (*See, e.g.,* SAC ¶¶ 153, 171.) In order to test Plaintiffs' assertions regarding the regression analysis in the SAC and defend against these charges, in May 2020, Defendants each served requests for production of documents concerning the creation of that regression analysis, including the data inputs and exclusions for the REO properties that Plaintiffs inspected. In response, however, Plaintiffs only agreed to produce the "completed regression analysis," and have repeatedly refused to provide the underlying data that was used to perform that regression analysis, or communications or other materials related to how that analysis was generated.

Plaintiffs' refusal to provide the actual data supporting their regression analysis is baseless. The "completed" regression analysis provided by Plaintiffs is just one statistical conclusion reflecting the supposed relationship between independent variables. In this case, it is used by Plaintiffs to seek to show supposed discrimination by the Defendants in their maintenance of REO properties in communities of color. In order to challenge the reliability of that all-important regression analysis, Defendants need access to the inputs to that regression analysis. Yet, in a remarkable move at this stage of this litigation, Plaintiffs now assert that the regression analysis that undergirds their entire case and that was used to fend off Defendants' Rule 12(b)(6) motion is only "preliminary," and therefore discovery is either irrelevant or "premature." Regardless of whether that regression analysis is final or preliminary, the underlying data used to perform that analysis is plainly relevant to the defense of this lawsuit. Moreover, Plaintiffs cannot shield information related to the analysis from discovery simply by labelling it "preliminary." Indeed, even if Plaintiffs' were to adopt a different regression analysis in the future, Defendants would still

be entitled to probe analysis represented in the SAC to see how Plaintiffs altered it. The regression analysis repeatedly invoked by Plaintiffs in the SAC is central to this lawsuit, and Defendants are entitled to discovery concerning it.

## II.     RULE 37.2 COMPLIANCE

On September 16 and 17, 2020, Ocwen and Altisource sent Plaintiffs two letters setting forth the deficiencies in Plaintiffs' initial discovery responses. (*See* Ex. A and Ex. B.) Pursuant to Local Rule 37, Ocwen and Altisource met and conferred with Plaintiffs on September 29, 2020, and October 6, 2020 to discuss their disputes regarding Plaintiffs' discovery responses. During the conferences, the parties discussed a number of issues regarding Plaintiffs' discovery responses including Plaintiffs' failure to produce information related to their statistical analysis. The parties did not reach an agreement regarding the production of these materials during the calls, and Plaintiffs suggested the parties may be at an impasse. On November 2, 2020, Plaintiffs sent Ocwen and Altisource a letter addressing certain discovery disputes but did not address whether they had changed their position with regard to information underlying their statistical analysis. (*See* Ex. C.) On December 2, 2020, Ocwen and Altisource reiterated their concerns about Plaintiffs' failure to provide this information and asked Plaintiffs to confirm whether they were still unwilling to identify the requested information. (*See* Ex. D, p. 2-3.) Plaintiffs did not respond.

Similarly, on January 5, 2021, the Trustees sent Plaintiffs a letter outlining the deficiencies in Plaintiffs' discovery responses. (*See* Ex. E.) On January 19, 2021, counsel for the Trustees and the Plaintiffs discussed disputes regarding Plaintiffs' responses to the Trustee's Interrogatories and Document Requests during a telephone conference pursuant to Local Rule 37. On behalf of the Trustees, Kurt Rademacher and Ajani Brown participated in the telephone call. For the Plaintiffs, James Bradke participated in the telephone call. During this call, the parties discussed various issues and deficiencies with Plaintiffs' responses to the Trustees' discovery requests. The parties

were unable to reach an agreement concerning the Trustees' requests for information concerning Plaintiffs' regression analysis. In correspondence dated January 25, 2021, Plaintiffs acknowledged the impasse with respect to these materials. (*See* Ex. F, at p. 4.) Nonetheless, the Trustees sent a letter to Plaintiffs on February 9, 2021 again requesting that Plaintiffs reconsider their position with respect to these materials. (*See* Ex. G.) Plaintiffs again refused to produce the requested materials.

### III. ARGUMENT

#### A. The Discovery Standard.

As this Court counseled at the last hearing when the Trustees' counsel mentioned this brewing dispute, discovery should be "liberal." (Ex. H, Feb. 11, 2021, Hrg. Tr. at 9 lines 9-13) ("as far as the discovery is concerned, I think I've made it pretty clear that I'm in favor of liberal discovery. And so unless it's pretty clearly not appropriate, my suggestion would be to give up and proceed with discovery.") Pursuant to the Federal Rules of Civil Procedure (the "Rules"), a party is entitled to discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). The Rules further state that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Koken v. Am. Patriot Ins. Agency, Inc.,* No. 05 C 1049, 2006 WL 1749689, at *3 (N.D. Ill. June 20, 2006). Where, as here, the parties have conferred and cannot resolve a discovery dispute, Rule 37 provides an avenue through which a party may seek an order compelling a party to respond to discovery. Fed. R. Civ. P. 37(a)(3)(B).

#### B. Plaintiffs Should Be Compelled To Produce Information Underlying The Regression Analysis Pled in the SAC.

Defendants have propounded a number of Requests for Production that seek to uncover the facts underlying the "regression analysis" described in the Second Amended Complaint. (*See* Ex.

4

I (Trustees' RFPs), pp. 8-10 (RFP Nos. 21-22, 26-33); Ex. J (Ocwen and Altisource's Joint RFPs), pp. 9-13 (RFP Nos. 11, 17, 25, 31-36).) Defendants seek information concerning both properties included in the regression analysis,[1] and those excluded from the analysis.[2] For example, Trustees' Request for Production No. 29 requests that Plaintiffs produce "[a]ll underlying data supporting Plaintiffs' Statistical Analysis . . . ." (Ex. I, p. 10.) Trustees' Request for Production No. 21 requests that Plaintiffs produce "(a) a list of Properties excluded from Plaintiffs' Statistical Analysis for the reason that they 'appeared to be occupied,' and (b) any assessment showing the effects that exclusion of such Properties had on Plaintiffs' Statistical Analysis. (Ex. I, p. 8); *see also* Ex. J, p. 11 (Joint RFP No. 25). Such underlying data is squarely subject to discovery under the Rules. *See Johnson v. City of Rockford*, No. 15 CV 50064, 2018 WL 1508482, at *8 (N.D. Ill. Mar. 27, 2018) (documents reviewed or considered by expert subject not protected from disclosure); *see also Hudson v. Arcelormittal Burns Harbor, LLC*, 16-cv-41, 2017 WL 2471541, at *5 (N.D. Ind. June 8, 2017) ("work-product protection does not apply to communications that identify facts or data the attorney provided and the expert considered, or assumptions the attorney provided and the expert relied on." (citation omitted)).

Nonetheless, in response to these requests, Plaintiffs object on the ground that discovery concerning their regression analysis is "premature," asserting that "prior to the due date for testifying experts, Plaintiffs will only produce the completed regression analysis." (Ex. K, pp. 10-

---

[1] *See* Ex. K, pp. 11-17 (Plaintiffs' responses to Request for Production No. 22 (seeking information for regression analysis properties designated by Plaintiffs as "work . . . ongoing"), No. 28 (list of variables considered "non-racial" with respect to analysis in Paragraph 106 of SAC), No. 29 (data underlying regression analysis), No. 30 (list of variables considered "non-racial" with respect to analysis in Paragraph 107 of SAC), No. 31 (underlying data from analysis in Paragraph 107 of SAC), No. 33 (list of variables considered "non-racial" with respect to analysis in Paragraph 108 of SAC), No. 32 (list of variables considered "non-racial" with respect to analysis in Paragraph 108 of SAC), and No. 33 (underlying data from analysis in Paragraph 108 of SAC)).

[2] *See* Ex. K, pp. 10-11 (Plaintiffs' response to Request for Production No. 21 (document concerning properties excluded from analysis on the basis that they "appeared to be occupied").

5

11.) To support their position, Plaintiffs point to a magistrate judge's decision in a separate case they filed against Fannie Mae in California. (*See* Ex. L (citing *NFHA v. Federal Nat'l Mortgage Ass'n*, No. 16-cv-06969-JSW (N.D. Cal. Apr. 13, 2020) (Corley, M. J.) (*"Fannie Mae"*)).[3] Plaintiffs' reliance on the magistrate's decision in *Fannie Mae* is misplaced. In *Fannie Mae*, the defendant sought "any preliminary or interim versions of the regression analysis," which the magistrate judge found "premature," because the plaintiffs could decide to rely on a different analysis upon summary judgment. *Fannie Mae* at 2-3. Plaintiffs wield this decision to deny the Trustees discovery of the *factual inputs and exclusions from* Plaintiffs' regression model, not just prior drafts of it. *Fannie Mae* has no bearing on the former requests (and, as explained below, runs contrary to this jurisdiction's law on the latter).

Indeed, the requested inputs and exclusions are relevant regardless of whether Plaintiffs revise the regression analysis they have previously relied on. For example, if Plaintiffs have excluded an inspected REO property from their regression analysis[4] that happens to be a well-maintained property in a minority neighborhood, it is relevant to *Defendants' defense*, regardless of whether it serves as the basis of Plaintiffs' next iteration on their regression analysis. Such requests plainly clear the bar of relevant evidence. *See Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 391 (N.D. Ill. 2012) ("[T]he only question under Rule 26 is whether discovery will lead to [relevant] evidence."). Moreover, even if Plaintiffs might revise their regression analysis, they have not suggested they are forgoing reliance on its factual inputs – particularly the materials related to property inspections that they are currently seeking to shield from disclosure.[5]

---

[3] The *Fannie Mae* decision is attached hereto as Exhibit L.
[4] *See* Ex. I, p. 9, Request No. 26 ("All Documents concerning the exclusion from Plaintiffs' Statistical Analysis of Properties for which Plaintiffs conducted an Inspection.")
[5] *See* Ex. K, pp. 10-11 (objecting to Request No. 21, seeking documents concerning properties deemed "occupied"), p. 13 (objecting to Request No. 26, seeking documents concerning excluded properties), p. 15 (objecting to Request No. 29, seeking all underlying data supporting the regression analysis).

Plaintiffs should be compelled to produce such documents in their entirety, now, and not be allowed to produce those documents selectively at some undefined time in the future.

      **C.**      **Prior Iterations of the "Completed" Regression Analysis Pled in the SAC Are Subject to Discovery.**

Defendants also seek discovery of prior iterations and alternative models used by Plaintiffs in seeking to support their allegations in the SAC. (*See* Ex. I, p. 9, Request No. 27; Ex. J, p. 13, Joint Request No. 34.) Plaintiffs refused to produce such documents, invoking Rule 26(b)(4)(C). (*See* Ex. K, p. 14; Ex. N, p. 19.)

Rule 26(b)(4)(C) protects from disclosure "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." In other words, this exception is limited to materials required to be produced by Rule 26(a)(2). Rule 26(a)(2) governs "disclosure of expert testimony" and sets forth the disclosure standards applicable to expert reports. The regression analysis described in the SAC, however, is not "expert testimony" under the Rules. Rather, its existence, creation, and conclusions are *facts* pled in the SAC (*see* SAC ¶¶ 103, 106, 107, 108, 153, 171.) Plaintiffs do not allege in the SAC that the regression analysis was created by a testifying expert, or that its purported conclusions are the findings of a testifying expert. Rather, Plaintiffs allege the conclusions of their regression analysis as *facts*. (*See, e.g.,* SAC, ¶ 153 ("The foregoing policies of the Deutsche Bank Defendants have a disproportionate adverse impact on communities of color, as shown by the statistical disparities and regression analysis described in this complaint."). Defendants are entitled to discovery that will lead to relevant evidence, *see Tellabs*, 283 F.R.D. at 391; the ways in which Plaintiffs iterated their model to reach the serious conclusions pled in the SAC plainly fit this description.

Plaintiffs seek to recast all materials related to the regression analysis as "draft" expert materials excluded from discovery by Rule 26(b)(4)(C) by paradoxically recasting their

7

"completed" regression analysis pled in the SAC as now only "preliminary, " arguing that it is a "certainty" that the regression analysis pled in the SAC will differ from that upon which Plaintiffs will rely later in this case. (Ex. F, p. 4.) Plaintiffs cannot shield from discovery facts pled in their SAC by later seeking to conflate them with post-pleading expert discovery. That Plaintiffs apparently intend to conduct a new analysis in connection with expert discovery does not render the regression analysis pled in the SAC a "draft" of some expert report to come.

Rather, by affirmatively pleading and repeatedly relying on the regression analysis, Plaintiffs have waived any argument that the analysis is a preliminary draft report of some as-yet-identified expert. Plaintiffs presented their regression analysis in the SAC not as a draft, but as a definitive demonstration of their claims. (*See, e.g.,* SAC, ¶ 153 ("The foregoing policies of the Deutsche Bank Defendants have a disproportionate adverse impact on communities of color, as shown by the statistical disparities and regression analysis described in this complaint."); ¶ 171 ("The regression analysis conducted by Plaintiffs rules out various potential non-racial explanations for the differing maintenance between REOs owned by the Deutsche Bank Defendants in minority and non-minority neighborhoods.") Plaintiffs' newfound characterization is also contrary to what Plaintiffs argued in opposing Defendants' joint motion to dismiss: there, Plaintiffs claimed the analysis "***ruled out*** other possible alternative causes for the differing outcomes." (Pls.' Resp. to Defs.' Joint Mot. to Dismiss, Dkt. No. 66, at 15.) Having defeated the second motion to dismiss in reliance on the regression analysis, Plaintiffs should be judicially estopped from now claiming that regression analysis was a mere first draft and outside the scope of discovery. *See Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not

thereafter, simply because his interests have changed, assume a contrary position." (quotations omitted)).

The regression analysis pled in the SAC is simply not an expert report under Rule 26(a)(2), and the discovery exclusion set forth in Rule 26(b)(4)(C) therefore is irrelevant. Plaintiffs should be compelled to produce documents responsive to the Trustees' requests for production.

## IV. CONCLUSION

For the foregoing reasons, Defendants request that the Court grant their Motion to Compel and order the Plaintiffs to provide responsive documents requested in Trustees' Requests for Production Document Request Nos. 21, 22, and 26-33 and Ocwen and Altisource's Joint Requests from Production Document Request Nos. 11, 17, 25, and 31-36.

Dated: March 19, 2021

Respectfully submitted,

By: /s/ *Kenneth M. Kliebard*
Kenneth M. Kliebard
**MORGAN, LEWIS & BOCKIUS LLP**
77 W. Wacker Drive, 5th Floor
Chicago, Illinois 60601
Telephone: 312.324.1000
kenneth.kliebard@morganlewis.com

Kurt W. Rademacher
**Morgan, Lewis & Bockius LLP**
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: 215.963.5000
kurt.rademacher@morganlewis.com

David I. Monteiro
Victor H. Cruz
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, Texas 75201
Telephone: 214.466.4133
david.monteiro@morganlewis.com
victor.cruz@morganlewis.com

9

*Attorneys for Defendants Deutsche Bank National Trust Company, as trustee, and Deutsche Bank Trust Company Americas, as trustee*

By: */s/ Debra Bogo-Ernst*
Debra Bogo-Ernst
Matthew C. Sostrin
Jacey D. Norris
**MAYER BROWN LLP**
71 S. Wacker Drive
Chicago, Illinois 60606
Telephone: 312.782.0600
dernst@mayerbrown.com
msostrin@mayerbrown.com
jnorris@mayerbrown.com

*Attorneys for Defendant Ocwen Loan Servicing, LLC*

By: */s/ Nathan Garroway*
Nathan Garroway (admitted *pro hac vice*)
**DENTONS US LLP**
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
nathan.garroway@dentons.com

Shannon Y. Shin
**DENTONS US LLP**
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone: (312) 876-8000
shannon.shin@dentons.com

Lisa Krigsten (admitted *pro hac vice*)
**DENTONS US LLP**
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Telephone: (816) 460-2400
lisa.krigsten@dentons.com

*Attorneys for Defendant Altisource Solutions, Inc.*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on March 19, 2021, I electronically filed the foregoing document by electronic means through the Court's CM/ECF System which will send notification of such filing to all counsel of record.

*/s/ Kenneth M. Kliebard*
Kenneth M. Kliebard
