# Exhibit B

大成 DENTONS

**Nathan L. Garroway**

nathan.garroway@dentons.com
D    +1 404-527-4391

Dentons US LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA  30308
United States

dentons.com

September 17, 2020

**BY E-MAIL**

Jennifer K. Soule
James G. Bradtke
Kelly K. Lambert
*Soule, Bradtke & Lambert*
402 Campbell Street
Suite 100
Geneva, IL 60134

Stephen M. Dane
Yiyang Wu
*Relman, Dane & Colfax PLLC*
1225 19th Street, N.W.
Suite 600
Washington, DC 20036

Morgan Williams
*National Fair Housing Alliance*
1331 Pennsylvania Ave., NW
Suite 650
Washington, DC 20004

Re:    Rule 37 Letter Regarding Plaintiffs' Responses to Defendants' July 15 Interrogatories

Counsel:

This letter sets forth deficiencies Defendants Altisource Solutions, Inc. ("Altisource") and Ocwen Loan Servicing n/k/a PHH Mortgage Company ("Ocwen" and, with Altisource, "Defendants") have identified in Plaintiffs' objections and responses to Defendants' Joint First Set of Interrogatories served on July 15 ("Interrogatories"). Defendants request the parties meet and confer regarding the items identified below. Unless otherwise noted, capitalized terms have their same meaning as defined in the Interrogatories.

**Noted Deficiencies**

**INTERROGATORY NO. 3: Identify all facts and evidence (including each document, if the fact or evidence is contained in a document) that supports, refutes, or otherwise forms the basis for your contention in the Second Amended Complaint that Plaintiffs have been injured by Defendants' conduct, including but not limited to a calculation of such alleged damages; the basis for that calculation; any mathematical formula used; whether the element of damages is general, special, or consequential damages; identify each document used or relied upon by you to support that calculation; and identify each witness with knowledge of the alleged damages, including the subject of each such witness's knowledge.**

**Rattagan Macchiavello Arocena** ► **Jiménez de Aréchaga, Viana & Brause** ► **Lee International** ► **Kensington Swan** ► **Bingham Greenebaum** ► **Cohen & Grigsby** ► **Sayarh & Menjra** ► **Larraín Rencoret** ► **Hamilton Harrison & Mathews** ► **Mardemootoo Balgobin** ► **HPRP** ► **Zain & Co.** ► **Delany Law** ► **Dinner Martin** ► **For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms**

September 17, 2020
Page 2

dentons.com

Plaintiffs object to this Interrogatory as a contention interrogatory, as unduly burdensome, as being impermissibly compound, and because it asks for the premature disclosure of expert opinions. Plaintiffs provide information from each organization in Exhibits D and E that generally categorize the forms and theories of damages as "Diversion of Resources," "Frustration of Mission," "Community Outreach," and "Lost Opportunities."

Plaintiffs' objections are not well taken. As an initial matter, Defendants disagree that the Interrogatory is a "contention interrogatory" under the Federal Rules of Civil Procedure or applicable case law, as the interrogatory does not request any application of facts to law. Instead, it asks for factual information that supports the amount of damages that Plaintiff intends to seek in this litigation. Moreover, even if it were a contention interrogatory, the law does not support an objection on that ground. FRCP 33 (commentary to 1970 amendment, Subdivision (b)). Such requests are prudent at this stage of discovery to allow Defendants the opportunity to investigate a party's damages through the pending discovery period. *See e.g.*, *Zenith Electronics Corp. v. WH–TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir.2005); *First Health Group Corp. v. United Payors and United Providers*, 1999 WL 515499 (N.D.Ill.1999); *In re Peregrine Fin. Grp. Customer Litig.*, Case No. 12 C 5546, 8 (N.D. Ill. Mar. 20, 2015) ("Contention interrogatories are permitted when answering them could contribute to clarifying the issues.").

As for the second objection, Plaintiffs have alleged several theories of damages and have alluded that they will be significant in scope and amount. *See e.g.*, Second Amended Complaint ¶¶ 174, 200. Defendants are entitled to know the basis for these damage amounts, how Plaintiffs intend to categorize them, as well as what evidence Plaintiffs believe supports their damage theories.

Moreover, the "unduly burdensome" objection seems to directly conflict with the objection for "premature disclosure of expert opinion," as it does appear based upon that objection that Plaintiff has provided such information to its own expert witnesses. Defendants request Plaintiffs describe in particularity the type of information that has been withheld pursuant to this objection. Additionally, Defendants disagree that the Interrogatory is "impermissibly compound." Each issue in this Interrogatory is directly related to the subject matter of Plaintiffs' underlying damages, and are necessitated by Plaintiffs' far-sweeping theories behind those damages. *See e.g.*, *Lamon v. David*, Case No. 3:13 CV 1247 JPG/RJD, 2 (S.D. Ill. Feb. 17, 2017) ("objection based on form of an interrogatory as a compound question is not a proper objection to an interrogatory"); *OCE-Business Sys., Inc. v. Dual Office Suppliers*, Inc. No. 87 C 8613, 1988 WL 37711, at * 1 (Apr. 21, 1988).

Similarly, Plaintiffs use of the expert privilege with respect to the facts and evidence at issue here is inappropriate. Defendants request Plaintiffs identify all facts and information that does not call for an expert opinion, such as facts or evidence showing "diverted resources," or "lost opportunities." There is no reason to delay in producing these initial calculations at the outset of litigation, as described below:

> a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

FRCP 26(a)(1)(A)(iii).

At the very least, Plaintiffs must identify the alleged costs associated with their purported investigative activity that led to this litigation and the information and calculations of that supports the alleged "Diversion of Resources," "Frustration of Mission," "Community Outreach," and "Lost Opportunities" damages, particularly that information that has been or will be provided to any expert witness.

Plaintiffs must also disclose any non-expert estimation of the damages in this case, to the extent they exist.

Please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 4: Identify all Properties that you contend were serviced by Ocwen and any Documents or information supporting your contention.**

Plaintiffs object to this Interrogatory on the basis that the information is easily accessible to Defendants, the term "serviced" is vague, that the information is not publicly available, and that Plaintiffs produced a property list identifying the investigated properties.

Plaintiffs refer to Ocwen as a loan servicer multiple times throughout the Second Amended Complaint (*see e.g.*, ¶¶ 56, 64, 66–78), and make numerous other references to the obligations of "servicers" generally. Defendants request that the parties meet and confer on what an appropriate understanding of the term may be for purposes of this Interrogatory.

Plaintiffs' answer is non-responsive to the extent it fails to identify Documents or information supporting Plaintiffs' allegation that the properties contained in the March 3 list were serviced by Ocwen. Plaintiffs have the obligation to prove their claims, which includes the obligation to provide proof the alleged acts were committed by the Defendants. Whether Defendants may possess some information regarding properties is irrelevant. They are entitled to know what information Plaintiffs relied on in determining what Properties were serviced by Ocwen as well as the documents Plaintiffs possess on this subject.

Further, while Plaintiffs produced a property list on March 3, Plaintiffs' subsequent communications have established that the list is not a complete list of properties evaluated. For instance, the March 3 list substitute several properties for those that were originally included in the Second Amended Complaint. Moreover, on September 1, Plaintiffs requested additional discovery of its own on over 100 additional properties, none of which had been identified by Plaintiffs at any prior point,. Thus, Defendants renew their request that Plaintiffs identify "all" Properties that they contend were serviced by Ocwen.

If Plaintiffs do not have Documents or information supporting their allegation that Ocwen serviced the properties at issue, they may say so. Otherwise, please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 5: Identify all Properties that you contend were owned by either Trustee and any Documents or information supporting your contention.**

Plaintiffs object to this Interrogatory because it seeks information that Defendants have "superior knowledge and access to."

Plaintiffs' answer is non-responsive to the extent it fails to identify Documents or information supporting Plaintiffs' allegation that the properties contained in the March 3 list were owned by either Trustee. Plaintiffs

have the obligation to prove their claims, which include the obligation to provide proof the alleged acts were committed by the Defendants. Whether Defendants may possess some information regarding properties is irrelevant. They are entitled to know what information Plaintiffs relied on in determining what Properties were owned by a Trustee, as well as the documents Plaintiffs possess on this subject.

Further, while Plaintiffs produced a property list on March 3, Plaintiffs' subsequent communications have established that the list is not a complete list of properties evaluated. For instance, the March 3 list substituted several properties for those that were originally included in the Second Amended Complaint. Moreover, on September 1, Plaintiffs requested additional discovery of its own on over 100 additional properties, none of which had been identified by Plaintiffs at any prior point,. Thus, Defendants renew their request that Plaintiffs identify whether the March 3 "all" Properties that they contend were owned by either Trustee.

If Plaintiffs do not have Documents or information supporting their allegation that either Trustee owned the properties at issue, they may say so. Otherwise, please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 6: Identify all facts and evidence (including each document, if the fact or evidence is contained in a document) describing how Plaintiffs selected the metropolitan areas in which to conduct Inspections of Properties, including the reasoning behind the selections and the determination of the boundaries of those metropolitan areas.**

Plaintiffs object to this Interrogatory as a contention interrogatory, because it is unduly burdensome, and because it seeks privileged information.

Defendants believe Plaintiffs' response is insufficient. The objection that identifying this information would be "unduly burdensome" appears to contradict Plaintiffs' ability to readily-identify the categories already listed in response to this Interrogatory. Further, it would not be unduly burdensome to identify "reasoning behind the selections" to the extent this reasoning is already available in Plaintiffs' records.

Plaintiffs' response also appears incomplete. For example, the response states that a "number of factors" were considered, "including" the three referred to above. This raises a question as to whether additional factors were considered that were not included in Plaintiffs' response. Plaintiffs have also not attempted to identify any Documents which may be responsive. If no additional factors or documents exist, Plaintiffs may say so.

Defendants also disagree that the Interrogatory is a "contention interrogatory" under the Federal Rules of Civil Procedure or applicable case law, as the interrogatory does not request any application of facts to law. Instead, it asks for factual information that supports Plaintiffs' method for selecting communities and properties at issue in this litigation. Moreover, even if it were a contention interrogatory, the law does not support an objection on that ground. FRCP 33 (commentary to 1970 amendment, Subdivision (b)). Such requests are prudent at this stage of discovery to allow Defendants to explore the nature of Plaintiffs' investigation through the pending discovery period. *In re Peregrine Fin. Grp. Customer Litig.*, Case No. 12 C 5546, 8 (N.D. Ill. Mar. 20, 2015) ("Contention interrogatories are permitted when answering them could contribute to clarifying the issues.")

Please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 7: Identify all facts and evidence (including each document, if the fact or evidence is contained in a document) describing how Plaintiffs identified Properties in metropolitan areas for Inspection.**

Plaintiffs object to this Interrogatory on the basis that it is a contention interrogatory, because it is unduly burdensome, and because it seeks privileged information.

Defendants believe Plaintiffs' response is insufficient because it fails to identify any facts, evidence, or documents that are responsive to this Interrogatory. For example, Plaintiffs state that they used ArcGIS mapping software, but fail to identify whether they have Documents that reflect the facts or evidence this software produced.

Defendants also believe Plaintiffs' response is insufficient to the extent it fails to identify all facts and evidence that relates to Plaintiffs' process for identifying properties for Inspection. Plaintiffs state that ArcGIS mapping is just one means they used to identify race and ethnicity data by zip code in addition to U.S. Census data, but do not elaborate on other means may have been used for this purpose. More explanation is also warranted on what "middle and working class neighborhoods with high home ownership rates," means, and what the reasoning was for focusing on these neighborhoods as opposed to higher-income neighborhoods or neighborhoods with lower home ownership rates.

Defendants disagree that the Interrogatory "requires a detailed narrative response to a far-ranging question" that would make responding unduly burdensome. The Interrogatory does not ask for a narrative, .

Defendants also disagree that the Interrogatory is a "contention interrogatory" under the Federal Rules of Civil Procedure or applicable case law, as the interrogatory does not request any application of facts to law. Instead, it asks for factual information that supports Plaintiffs' method for selecting communities and properties at issue in this litigation. Moreover, even if it were a contention interrogatory, the law does not support an objection on that ground. FRCP 33 (commentary to 1970 amendment, Subdivision (b)). Such requests are prudent at this stage of discovery to allow Defendants to explore the nature of Plaintiffs' investigation through the pending discovery period. *In re Peregrine Fin. Grp. Customer Litig.*, Case No. 12 C 5546, 8 (N.D. Ill. Mar. 20, 2015) ("Contention interrogatories are permitted when answering them could contribute to clarifying the issues.")

Please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 11: Identify each person who conducted or participated in conducting Plaintiffs' Statistical Analysis.**

Plaintiffs object to this Interrogatory on the basis that it is premature in seeking expert reports or documents, and that the documents it seeks are not discoverable pursuant to Fed.R.Civ.P. 26(b)(4)(C). Plaintiffs state they will only produce the final regression analysis performed by Plaintiffs prior to filing the Complaint, which is explicitly referenced in the Complaint. This answer is insufficient for several reasons.

First, Rule 26(b)(4)(C) is not applicable here because the Interrogatory is not seeking "communications between a party's attorney and expert witnesses." The Interrogatory only asks for the identities of individuals that conducted or participated in conducting the Statistical Analysis at issue. "Expert-staff communications

大成 DENTONS

September 17, 2020
Page 6

dentons.com

are not subject to a blanket work product protection" under Rule 26(b)(4). *NRDC, Inc. v. Illinois Power Resources Generating, LLC*, 2018 WL 3414319 at *3 (C.D. Ill. Jul. 13, 2018).

Second, any non-expert that was retained or employed by any Plaintiff (for example, any person at the NFHA that may have opined on the fitness, use, or comprehensiveness of the Statistical Analysis) would not be protected from disclosure.

Third, production of a single regression analysis is not sufficient. Plaintiffs have put at least six different regressions at issue in their Second Amended Complaint—one analyzing properties from the beginning of their investigation on, one analyzing properties from the Deutsche Bank statute of limitations period on, and one analyzing properties from the Altisource/Ocwen statute of limitations period on. Plaintiffs have also presumably had to redo these regressions after changing some properties that were identified in Appendix A of the Second Amended Complaint. Individuals who were involved in these decisions and iterations should be identified as well.

If all aspects of the Statistical Analysis (including data collection, data integration, oversight, determination of fitness, opinions on comprehensiveness and use) were conducted solely by experts and only communicated to attorneys, please state as much, and please identify at least the time period and frequency of these attorney-expert communications for purposes of determining whether a privilege log is necessary. Otherwise, please identify each person who conducted or participated in conducting the Statistical Analysis.

**INTERROGATORY NO. 12: Identify all facts and evidence (including each document, if the fact or evidence is contained in a document) describing how Plaintiffs determined whether a community was a "community of color" or a "white community" including the criteria used to make that determination and the boundaries of those communities.**

Plaintiffs object to this Interrogatory to the extent Defendants have equal access to information in the public domain (e.g. U.S. census data), and further incorporate their responses and objections to Interrogatory No. 7. Defendants incorporate their response to Interrogatory No. 7 above as if set forth herein.

Plaintiffs' response is deficient for several reasons. First, the data is not equally accessible to Defendants. For example, Defendants do not have access to ArcGIS data. The census data is also not equally available to Defendants to the extent it is not in the aggregated form Plaintiffs used. . Moreover, Plaintiffs have the obligation to prove their claims, which includes the obligation to provide proof the alleged acts were committed by the Defendants. Whether Defendants may possess some information regarding properties is irrelevant. They are entitled to know what information Plaintiffs relied on in conducting its statistical analysis, as well as the documents Plaintiffs possess on this subject. Plaintiffs' use of statistical analysis to analyze disparities makes this issue particularly relevant, as any misclassified data points can affect the accuracy of the final results.

Second, the answer fails to identify any Documents that contain or reference the facts and evidence in question. Plaintiffs' records of Census data, records of ArcGIS data, and records of how that data was used to identify communities, would all be relevant. If no documents exist, please state as much.

Third, the answer fails to identify the boundaries of each community. Defendants expect Plaintiffs to be able to identify and discern the location or Census tract number for each property to the extent that location or number refers to the "community" in which that property resides.

Please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 13: Identify and describe all criteria used during your Inspection of the Properties including each of the "39 objective aspects of . . . routine exterior maintenance" referenced in Paragraph 5 of the Second Amended Complaint to determine the sufficiency of the Property's exterior maintenance and identify all Related Documents.**

Plaintiffs object to this Interrogatory as unduly burdensome because it requests a substantial amount of information in narrative form.

Defendants do not believe Interrogatory is unduly burdensome as Plaintiffs make each one of these 39 aspects of exterior maintenance central to their claims throughout the Second Amended Complaint. Further, Plaintiffs apparently have readily-available information that they used to create this criteria which can be easily reproduced in response to this Interrogatory.

For example, the response generally describes that aspects were refined according to "industry standards," and that some were chosen on the basis of "common sense." Plaintiffs should also be able to describe why these aspects are "objective," and distinguish each of the 39 aspects they have listed according to how each was selected.

Please clarify the extent to which the descriptions above, in combination with the referenced documents, describe the 39 aspects of maintenance, and whether there are additional criteria that you are generally not providing for each aspect based on your alleged burden. Otherwise, please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 14: Describe the regression analyses referenced in Paragraphs 106, 107, and 108 of the Second Amended Complaint including, but not limited to, any preliminary or interim versions of the regression analysis, any variations in the regression analysis's model formulation or use of explanatory variables, any assessment of the regression analysis's statistical assumptions, and any regression diagnostics (including goodness of fit testing, testing of statistical significance of the estimated parameters, and any other regression diagnostics) or any other tests of assessments of the regression analysis's validity.**

Plaintiffs object to this Interrogatory on the basis that it is premature in seeking expert reports or documents generated and produced in this litigation, and that the documents it seeks are not discoverable pursuant to Fed.R.Civ.P. 26(b)(4)(C). Plaintiffs state they will only produce the final regression analysis performed by Plaintiffs prior to filing the Complaint. This answer is insufficient for multiple reasons.

First, Rule 26(b)(4)(C) is not applicable here because the Interrogatory is not seeking "communications between a party's attorney and expert witnesses." The Interrogatory asks for a description of the analysis at issue in the Second Amended Complaint, as well as information that is relevant for determining the validity of Plaintiffs' model. Withholding prior versions or assessments of the analysis under this objection is not appropriate where they were not attorney-expert communications. The Interrogatory is also not seeking expert reports. Plaintiffs have not made any other objection as to why this information would be protected from disclosure. Where assessments or prior versions do not reveal the substance of attorney-expert communications, they must be produced. "Expert-staff communications are not subject to a blanket

work product protection" under Rule 26(b)(4). *NRDC, Inc. v. Illinois Power Resources Generating, LLC*, 2018 WL 3414319 at *3 (C.D. Ill. Jul. 13, 2018).

Second, Rule 26(b)(4)(C) contains three exceptions that allow for the discovery of communications that relate to facts or data provided by a party's attorney considered in forming the opinions to be expressed, and for communications that identify assumptions the party's attorney provided that the expert relied on. Withheld communications that would fall within one of these exceptions should be produced.

Third, even if the information at issue was collected "in anticipation of litigation with Deutsche Bank," there is no objection as to why this information is not discoverable. Disclosure of the "final" regression is not acceptable where the Second Amended Complaint puts at issue a long history of inspections and analysis that has changed over time. Understanding how the regression analysis was utilized, including the types of results it showed and when it showed them, is central to these claims.

For example, Plaintiffs plead that they were not yet able to assess "[a]ny widespread national patterns of discrimination involving Deutsche Bank's REO properties" prior to April 2012, but were "[e]ventually" able to accumulate "sufficient data…to show that these Defendants were engaged in ongoing discriminatory behavior." SAC ¶ 116. Plaintiffs have also put the validity and soundness of the regression at issue. Plaintiffs' "rigorous statistical analysis during all relevant time periods controlling for non-racial factors," underpins the allegation that "routine exterior maintenance and marketing deficiencies at Deutsche Bank REO properties in communities of color cannot be explained on the basis of factors other than race." SAC ¶ 143. The regression analysis produced by Plaintiffs does not allow any of these issues to be discerned. Any historical variations and assessments of "rigorousness" or "controlled" variables, in addition to prior versions, are at issue and must be produced.

Fifth, production of a single regression analysis is not sufficient. Plaintiffs have put at least six different regressions at issue in their Second Amended Complaint—one analyzing properties from the beginning of their investigation on, one analyzing properties from the Deutsche Bank statute of limitations period on, and one analyzing properties from the Altisource/Ocwen statute of limitations period on. Plaintiffs have also presumably had to redo these regression analyses after changing some properties that were identified in Appendix A of the Second Amended Complaint.

If all aspects of the Statistical Analysis, including data collection, data integration, oversight, were conducted solely by experts and only communicated to attorneys, please state as much, and please identify at least the time period and frequency of these attorney-expert communications for purposes of determining whether a privilege log is necessary. Otherwise, please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 15: Identify and describe Your methodology for designing and implementing testing to assess "patterns of treatment" as alleged in Paragraph 93 of the Second Amended Complaint.**

Plaintiffs object to this Interrogatory as unduly burdensome, and incorporate their responses to Interrogatories 7 and 11–14.

To the extent applicable, Defendants incorporate their responses to Plaintiffs' statements in Interrogatories 7 and 11–14 herein.

This Interrogatory seeks information concerning the beginning and implementing phases of Plaintiffs' investigation into how "patterns of treatment" are discerned for the properties at issue. Defendants believe that Plaintiffs should be readily-able to describe their methodology and that it would not require a "description of a very substantial amount of information in a detailed narrative form." Please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 16: Identify all Communications between You and any Defendant regarding Your Inspection of the Properties or the findings of Your Inspections.**

Plaintiffs object to this Interrogatory on the basis that Defendants have equal access to these communications.

While individual defendants may have some knowledge of their respective communications with Plaintiffs, this does not mean they have knowledge of or access to communications between Plaintiffs and other Defendants. Moreover, Plaintiffs have the obligation to prove their claims, which includes the obligation to provide proof the alleged acts were committed by the Defendants. Whether Defendants may possess some communications is irrelevant. They are entitled to know what information Plaintiffs may claim to have provided them, as well as the documents Plaintiffs possess on this subject.

Please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections..

**INTERROGATORY NO. 17: Identify all facts and Documents in support of Your claim that any Defendant intentionally discriminated on the basis of race relating to any Property.**

Plaintiffs object to this Interrogatory on the basis that it is a contention interrogatory, that it is unduly burdensome, and that it seeks privileged information.

Defendants disagree that the Interrogatory is a "contention interrogatory" under the Federal Rules of Civil Procedure or applicable case law, as the interrogatory does not request any application of facts to law. Instead, it asks for factual information that supports Plaintiffs' method for selecting communities and properties at issue in this litigation. Moreover, even if it were a contention interrogatory, the law does not support an objection on that ground. FRCP 33 (commentary to 1970 amendment, Subdivision (b)). Such requests are prudent at this stage of discovery to allow Defendants to explore the nature of Plaintiffs' investigation through the pending discovery period. *In re Peregrine Fin. Grp. Customer Litig.*, Case No. 12 C 5546, 8 (N.D. Ill. Mar. 20, 2015) ("Contention interrogatories are permitted when answering them could contribute to clarifying the issues.").

. The remainder of Plaintiffs' response simply re-states information already set forth in the Second Amended Complaint. Defendants disagree that responding to the Interrogatory would be "unduly burdensome" where Plaintiffs appear readily-able to identify these alleged indicators of discrimination, and to the extent no "detailed narrative response" is necessary.

Please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

dentons.com

September 17, 2020
Page 10

**INTERROGATORY NO. 18:** Identify and describe the "grace period" You allegedly used prior to inspecting any Property as alleged in Paragraph 92 of the Second Amended Complaint.

Plaintiffs object to this Interrogatory to the extent it asks them to "identify" the grace period. Defendants do not understand what this objection intends to say. Please clarify the basis for this objection, and the type of information you are not providing based on this objection.

**INTERROGATORY NO. 20:** Identify all facts in support of Your claim for damages including a computation of the total amount of these damages and any mathematical formula used in creating that computation.

Plaintiffs object to this Interrogatory on the basis that it is unduly burdensome, that damages may accrue as discovery continues, and that the Interrogatory calls for the premature disclosure of expert opinion. Plaintiffs also state an earlier presentation of damages may be made in the context of mediation.

Defendants disagree, and incorporate their response to Plaintiffs' objections to Interrogatory No. 3 herein. Defendants also believe that providing a mathematical calculation and formula is not unduly burdensome to the extent Plaintiffs know the costs and expenditures made in their investigation to date. This portion of the Interrogatory asks for a discrete calculation and does not call for any "extremely detailed data in narrative form." Defendants also do not believe it is proper to stipulate that they will know the amount of damages in the context of mediation. Defendants are entitled to knowing what damages are available now.

Please let us know whether you intend to continue to withhold the information requested by this Interrogatory on the basis of your objections.

**INTERROGATORY NO. 21:** Identify any individuals and entities other than the Trustees, Ocwen, and Altisource whose REO property preservation, maintenance, or marketing practices investigated or whose REO properties You inspected during the time when Your Inspections of the Properties was ongoing.

Plaintiffs object to this Interrogatory on the grounds that it is overbroad and not likely to lead to admissible evidence because it relates to other individuals and entities. Defendants disagree. Defendants must know the extent to which Plaintiffs' investigation of Defendant properties overlapped with other investigations. This information is relevant to ascertain the extent to which Plaintiffs may seek to recover, or have already recovered, damages Plaintiffs claim as being available to them in this lawsuit. Defendants request a meet and confer to discuss whether Plaintiffs intend to stand on this objection.

**INTERROGATORY NO. 22:** Identify and describe all damage awards that You have received, including any settlement payments, from any individual or entity for alleged Fair Housing Act violations or property maintenance and/or marketing deficiencies in the "30 metropolitan areas" included in Your Inspections. Identify each and every person who responded to, supplied information requested by, or assisted in the preparation of the answers to, these Interrogatories.

Plaintiffs object to the part of this request relating to damage awards as not relevant nor likely to lead to discovery of relevant evidence. Defendants believe this information is relevant as to what damages are available given Plaintiffs' investigated non-Defendant REO properties in these metropolitan areas at the same time as the Investigation at issue in this case. This Interrogatory will lead to the discovery of admissible evidence on the question of whether damages that may be available to Plaintiffs in this case

September 17, 2020
Page 11

dentons.com

were offset by any awards received in other cases. Defendants request a meet and confer to discuss whether Plaintiffs intend to stand on this objection.

Sincerely,

*/s/ Nathan Garroway*

Counsel for Altisource Solutions, Inc.

*/s/ Debra Bogo-Ernst*

Counsel for Ocwen Loan Servicing n/k/a PHH Mortgage Company ("Ocwen")