# Exhibit C

# SOULE, BRADTKE & LAMBERT

## ATTORNEYS AT LAW

402 Campbell Street, Suite 100, Geneva, Illinois 60134
Tel: 630.333.9144  Fax: 630.607.0266
www.soulebradtkeandlambert.com
Office@SBLLegal.com

Jennifer K. Soule
JSoule@SBLLegal.com

Kelly K. Lambert
KLambert@SBLLegal.com

James G. Bradtke
JBradtke@SBLLegal.com
*Of Counsel*

Steven P. Schneck
SSchneck@SBLLegal.com
*Special Counsel*

November 2, 2020

*Sent Via E-Mail*

Kenneth M. Kliebard
kenneth.kliebard@morganlewis.com
*Morgan, Lewis & Bockius LLP*
77 W. Wacker Drive, Suite 500
Chicago, IL 60601

David Monteiro
david.monteiro@morganlewis.com
Victor Cruz
victor.cruz@morganlewis.com
*Morgan, Lewis & Bockius LLP*
1717 Main Street, Suite 3200
Dallas, TX 75201

Lisa M. Krigsten
lisa.krigsten@dentons.com
*Dentons US LLP*
4520 Main Street, Suite 1100
Kansas City, MO 64111

Nathan L. Garroway
Nathan.garroway@dentons.com
*Dentons US LLP*
303 Peachtree Street, NE, Suite 5300
Atlanta, GA 30308

Kevin M. Papay
kevin.papay@morganlewis.com
Kurt Rademacher
kurt.rademacher@morganlewis.com
*Morgan, Lewis & Bockius LLP*
One Market, Spear Street Tower
San Francisco, CA 94105

Debra Bogo-Ernst
dernst@mayerbrown.com
Matthew C. Sostrin
msostrin@mayerbrown.com
Jacey D. Norris
jnorris@mayerbrown.com
*Mayer Brown LLP*
71 S. Wacker Drive
Chicago, IL  60606

Shannon Shin
shannon.shin@dentons.com
*Dentons US LLP*
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606

Re:  *Updated Discovery Information*

Dear Counsel:

This letter provides additional information regarding some of the subjects discussed during our Rule 37 conferences regarding Plaintiffs' discovery responses.  Please note that the

information provided may relate to various document requests served by Defendants as well as the referenced interrogatories. While we anticipate providing amended interrogatory responses, we wanted to promptly advise you of the information we have received so far:

1. <u>Properties Not Scored Because Occupied, Etc</u>. As I indicated in our call, we are providing a spreadsheet (attached) that identifies unscored Deutsche Bank REO properties in the NFHA database. (The document should be treated as confidential, and we will produce a Bates-stamped copy of the document shortly). Documents being produced by individual fair housing groups may identify a few additional properties that were not scored that are not in the database, but the attached spreadsheet identifies most of the Deutsche Bank unscored properties. The spreadsheet includes properties that were determined later to have been sold before inspection, as well as properties that were previously scored and re-visited.

2. <u>Additional Factors Relating to Selection of Metropolitan Areas and Identification of Boundaries. (Interrogatory No. 6).</u> In addition to the information previously provided in our Interrogatory Answer, NFHA provides the following additional information: metropolitan areas were also selected where there was no NFHA member but foreclosure rates were very high, and NFHA wanted to use its HUD funds or own resources to investigate the condition of REOs in those metropolitan areas.

3. <u>Identification of Working or Middle Class Neighborhoods (Interrogatory No. 7)</u>. In addition to the information previously provided in our Interrogatory Answer, NFHA provides the following additional information: there was not a hard and fast cutoff or rule in this regard, but NFHA exercised its judgment to avoid median income from being disproportionately high or low in comparison to the metropolitan area's median income.

4. <u>Information Regarding the Supplemental 139 Deutsche Bank Properties.</u> We will be providing you shortly with information related to the various reasons that these properties were not part of the complaint analyses. (e.g. no NFHA partner, insufficient comparators in area, etc.).

5. <u>Additional Information Regarding "Grace Period."</u> In addition to the information previously provided in our Answer to Interrogatory No. 18, NFHA provides the following information: If NFHA identified a property from a property assessor website, Corelogic or Realty Trac, it applied a 30 day grace period. The only time NFHA did not apply this grace period was if the property was actively listed (e.g, on Hubzu.com or Auction.com) because it was already offered for sale. The main purpose of the grace period was to allow for a trash out and initial exterior maintenance to be conducted, so it was assumed that if a property was actively listed these activities had already been conducted.

6. <u>Criteria Considered in Testing (Interrogatory No. 13, Document Request No. 20)</u>. In addition to the information provided in our Answer to Interrogatory No. 13, NFHA directs Defendants to the glossary document that has been produced in discovery. Multiple copies of this document have been produced. (e.g. SSHC 1355, NFHA 33771). This document was used when organizations were trained to conduct the investigations and is directly tied to the REO evaluation forms used in the investigations.

7. <u>Budget and Grant Documents (Document Requests Nos. 42, 45, 47)</u>. While we continue to object to the relevance of Defendants' broad requests for this information, we are working on providing the following responsive documents: (a) detailed and redacted budget documents and/or reports for NFHA; (b) available budget reports or summaries for other plaintiffs (to be redacted); REO-related grant documents, redacted for sections inapplicable to REO. We will provide these documents on a rolling basis.

8. <u>Information Regarding Scope of Other Investigations (Interrogatory No. 21)</u>. We continue to object on grounds of relevance, *inter alia*, to providing the underlying test information relating to other REO investigations conducted by plaintiffs. We are working on providing a document that identifies the number of properties inspected by lender, with the identities of lenders that were not sued.

9. <u>Headcounts for Plaintiff Organizations (Document Request No. 49)</u>. We continue to object to the relevance of this information, but are working on providing a headcount for the staff of the Plaintiff agencies.

10. <u>ArcGis Mapping (Interrogatory No. 7, Document Request No. 8)</u>. In addition to information previously provided by NFHA in its response to this Interrogatory, NFHA provides the following information: GIS, or geographic information systems, are computer-based tools used to store, visualize, analyze, and interpret geographic data. Geographic data (also called spatial, or geospatial data) identifies the geographic location of features. These data include anything that can be associated with a location on the globe, or more simply anything that can be mapped. For example, roads, country boundaries, and address are all types of spatial data. NFHA uses ArcGIS specifically, and Esri defines ArcGIS as: "ArcGIS is a platform for organizations to create, manage, share, and analyze spatial data. It consists of server components, mobile and desktop applications, and developer tools. This platform can be deployed on-premises or in the cloud (Amazon, Azure) with ArcGIS Enterprise, or used via ArcGIS Online which is hosted and managed by Esri." Specifically, NFHA utilizes the desktop application, ArcMap, which is part of ArcGIS Desktop. NFHA used ArcMap to visualize 2010 Census race and ethnicity data, and to overlay REO property data on top of this race data. The output of this visualization was typically a PDF. It may be possible that NFHA could produce actual ArcGIS files – a .mpk file, which is a packaged version of the .mxd map file – but these would only be useful to Defendants if they actually have ArcMap Desktop installed.

11. <u>Identification of Ocwen and Altisource as Potential Defendants (Document Request No. 2)</u>. In addition to the documents and information that has been provided, NFHA notes that there were communications between Altisource and NFHA on November 4, 2014 and November 17, 2014.

12. <u>Information Regarding Properties Visited Prior to Investigation in Case</u>. Prior to the investigation that provides the basis for this case, in late 2010 and early 2011, NFHA and a few of its partners (aka the "Rescue Partnership"), preliminarily investigated REOs to inform, develop and finalize the REO methodology. These preliminary properties were not scored using the finalized REO methodology and were not utilized in any of the targeted investigations or

3

analyses that formed the basis of the complaints filed.   Nonetheless, a portion of these properties were owned by Deutsche Bank, and to avoid any confusion, we are/will be producing information that can be located relating to them.

13.  <u>NFHA Documents</u>.  We are producing to you today a set of NFHA documents, Bates-stamped Nos. 33766 to 42773.

We look forward to continuing to work with you regarding discovery in the case.  If you have questions regarding any of the foregoing, please let me know.

Kind Regards,

James G. Bradtke

4