# Exhibit L

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE INC, et al., <br><br>  Plaintiffs, <br><br> v. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION, <br><br>  Defendant. | Case No. 16-cv-06969-JSW (JSC) <br><br> **DISCOVERY ORDER** <br> Re: Dkt. Nos. 90, 91 |

The National Fair Housing Alliance (NFHA), among others, sues the Federal National Mortgage Association (Fannie Mae) for violating the Fair Housing Act by failing "to perform basic maintenance on foreclosed properties it suddenly owned in minority neighborhoods around the country, even while it did perform routine maintenance on properties it came to own in predominantly white neighborhoods." (Dkt. No. 38 at 2.) This action has been referred to the undersigned magistrate judge for resolution of discovery disputes. Now pending are two joint discovery dispute letters. (Dkt. Nos. 90, 91.) After carefully reviewing the letters and supporting material the Court concludes that oral argument is not necessary, *see* Civ. L.R. 7-1(b), and rules as set forth below.

**I.  Regression Analysis (Dkt. No. 90.)**

Plaintiffs' First Amended Complaint refers extensively to a regression analysis that purports to show that differences between Fannie Mae's maintenance of homes in predominantly white neighborhoods and predominantly minority neighborhoods are not explained by factors other than race. (Dkt. No. 39 at ¶¶ 12, 69-79.) Fannie Mae therefore seeks:

> All Documents that reflect, reference, constitute, or Relate to the regression analysis referenced in paragraph 12 of the Amended Complaint, including, but not limited to, any preliminary or interim versions of the regression analysis, any variations in the regression analysis's model formulation or use of explanatory variables, any assessment of the regression analysis's statistical assumptions, and any regression diagnostics (including goodness of fit testing, testing of statistical significance of the estimated parameters, and any other regression diagnostics) or any other tests or assessments of the regression analysis's validity.

(Dkt. No. 90-1 at 11.) Plaintiffs contend that the regression analysis and drafts and remaining related materials sought by Fannie Mae are protected by the consulting expert privilege, Fed. R. Civ. P. 26(b)(4)(D). Fannie Mae responds that Plaintiffs have waived any privilege by relying upon to the analysis in the First Amended Complaint.

Rule 26(b)(4)(D) provides:

> D) Expert Employed Only for Trial Preparation
>
> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
> . . . .
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

The material Fannie Mae seeks falls directly within this Rule as it is seeking the opinions and analysis of Plaintiffs' non-testifying expert. Fannie Mae nonetheless insists that Plaintiffs waived any privilege by referring to the regression analysis in the Amended Complaint. The Court agrees for the reasons stated in *Zeiger v. WellPet LLC*, NO. 17-cv-04056, 2018 WL 10151156, at *2-3 (N.D. Cal. Apr. 10, 2018). Plaintiffs' citation to their regression analysis was important to the plausibility of their claims.

While Plaintiffs reject any waiver, they have agreed to produce the regression analysis. The question then is whether Plaintiffs have waived the consulting expert privilege as to the additional draft and background information sought by Fannie Mae and whether such material is relevant. At this juncture, the Court concludes that the material is not relevant to a claim or defense. Fannie Mae asserts that "documents relating to the validity testing of plaintiffs' analysis

2

may show that the analysis is not statistically sound." (Dkt. No. at 90 at 4.) Maybe, but that "fact" will be relevant only if Plaintiffs decide to rely on that expert's regression analysis in opposition to summary judgment or at trial. And, if they do, then other rules will govern. *See* Fed. R. Civ. P. 26(b)(4)(A)-(C). And if those drafts and background material somehow become relevant to the testifying expert's testimony, the issue can be adjudicated then if not resolved among the parties.

Accordingly, Fannie Mae's motion to compel Plaintiffs to produce more than they already agreed to produce is DENIED without prejudice.

II. **Plaintiffs' Disclosure of Frustration of Mission Damages (Dkt. No. 91.)**

Federal Rules of Civil Procedure 26(a)(1) requires a party to make certain initial disclosures, including, "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26 (a)(1)(A)(iii). "A party is not excused from making disclosures merely because its investigation is incomplete." *Song v. Drenberg*, No. 18CV06283 LHK (VKD), 2019 WL 1949785, at *1 (N.D. Cal. May 2, 2019) (citing Fed. R. Civ. P. 26(a)(1)(E)).

Plaintiffs' disclosures identified their "frustration of missions" damages as follows:

> Fannie Mae has frustrated Plaintiffs' missions by interfering with their activities, programs, and services; harming their clients and client communities; and impairing their broader goals. Fannie Mae's discriminatory maintenance and marketing practices impeded Plaintiffs' community investment and neighborhood stabilization programs, activities, and services, and harmed Plaintiffs' clients and client communities by hindering their access to fair and equal housing and their ability to live in racially-integrated communities. Fannie Mae's discriminatory conduct frustrated Plaintiffs' missions of increasing fair and equal access to housing, eliminating racial segregation, eradicating discrimination, and promoting fair housing and fair lending. Fannie Mae's conduct undermined the efforts Plaintiffs made to advance their missions by establishing industry best practices for REO maintenance and marketing and training stakeholders on those practices; conducting advocacy and outreach to city and state governments; and conducting education and outreach to community members regarding foreclosure, homeownership, and neighborhood stabilization.

(Dkt. No. 91-1 at 3-4.)

Fannie Mae challenges this particular disclosure as inadequate because it does not provide any computation whatsoever. In particular, Fannie Mae alleges that "plaintiffs claim they

3

expended funds in an effort to reverse allegedly detrimental effects of Fannie Mae's alleged conduct by undertaking 'community investment and neighborhood stabilization programs, activities, and services,' efforts to 'establish industry best practices for REO maintenance and marketing and training stakeholders,' as well as "advocacy and outreach to city and state governments' and 'education and outreach to community members[.]'" *(*Dkt. No. 91 at 3.) Fannie Mae's challenge would be well-taken if its reading of Plaintiffs' disclosure was correct. But it is not. Plaintiffs do not claim that as a result of Fannie Mae's frustration of their missions they had to expend funds to, for example, establish industry best practices for REO maintenance and marketing and training stakeholders; instead, they claim that Fannie Mae frustrated their mission to do those things. While such damages may, in the end, be difficult to quantify and prove in an adequate matter, Plaintiffs' assertion that they cannot compute them now based on what they know and without expert assistance is entirely reasonable.

The same analysis does not apply to Plaintiffs' diversion-of-resources damages. But Plaintiffs have already agreed to supplement their disclosure with computations, as they must; thus, such disclosures are not at issue in this letter brief. Accordingly, Fannie Mae's motion to compel immediate supplementation of Plaintiffs' frustration of mission damages initial disclosure is DENIED.

This Order disposes of Docket Nos. 90, 91.

**IT IS SO ORDERED.**

Dated: April 13, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

4