IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA.<br><br>      Plaintiffs,<br><br>      v.<br><br>DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC; and ALTISOURCE SOLUTIONS, INC.<br><br>      Defendants. | Case No. 18 CV 839<br><br>Judge Harry D. Leinenweber<br>Magistrate Judge Sidney I. Schenkier<br><br>Jury Trial Demanded |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL DISCOVERY**

**INTRODUCTION**

      This brief responds to Defendants' Motion to Compel Discovery of documents besides

those Plaintiffs have already produced related to the regression analyses referenced in Plaintiffs'

1

Second Amended Complaint. The Motion misses the mark in several respects, and must be denied. First, Defendants' memorandum falsely tries to portray Plaintiffs as uncooperative in the Rule 37 process. (Defs. Mem. at 3). In fact, Plaintiffs responded promptly to all Defendants' discovery communications, held multiple Rule 37 conferences during which the discovery requests were discussed, and produced vast amounts of responsive information and documents.

Second, Plaintiffs provided the requested information, but Defendants argue that they should have received various (unspecified) additional documents related to the regression analyses without ever mentioning what they did receive, which includes: the actual regression analyses referenced in the Second Amended Complaint, the raw data, explanatory materials relating to the analyses, and thousands of documents, photographs and inspection sheets underpinning Plaintiffs' investigation. The failure to mention Plaintiffs' robust production of pertinent data and analyses is grossly misleading.

Third, Defendants' motion is conceptually flawed considering that the produced regression analyses in question simply served the purpose of fulfilling counsel's obligation to assure that "the factual contentions [of discrimination] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. Rule 11(b)(3). The draft or preliminary analyses that are the subject of Defendants' motion will never be presented as evidence at summary judgment or at trial. Additional information and data Plaintiffs have obtained in the discovery process will provide the basis for the ultimate proof in this regard. As recently observed in *National Fair Housing Alliance v. Federal National Mortgage Ass'n*, No. 16-cv-06969-JSW (N.D. Cal. Apr. 13, 2020), information concerning the validity of a pre-complaint filing such as the one here "will be relevant only if plaintiffs decide to rely on that expert's regression analysis in opposition

to summary judgment or at trial." (Defs. Mot. Ex. L at 2-3). Defendants' attempt to obtain additional information regarding Plaintiffs' pre-suit regression analyses generated through consultation with an expert should be rejected.

## ARGUMENT

### I. PLAINTIFFS FULLY COOPERATED IN THE RULE 37 PROCESS

While the substance of Defendants' motion is flawed, the Court should understand at the outset that Defendants' presentation fails to comply with Local Rule 37.2 by failing to reference pertinent communications and falsely suggesting that Plaintiffs were uncooperative in the Rule 37 process. In fact, Plaintiffs fully cooperated in a Rule 37 process discussing Defendants' discovery requests by engaging in multiple Rule 37 discussions and correspondence with Defendants' counsel. During these communications, Plaintiffs agreed to provide supplemental information related to Defendants' requests, and promptly made this information available. (*See* Section II, below).

Defendants' Statement of Rule 37.2 Compliance is inaccurate in several ways. For example, Defendants assert that "Plaintiffs did not respond" to a December 2, 2020 letter from Defendants' counsel regarding the pre-filing statistical analyses. (Defs. Mem. at 3). This is not true. On December 4, 2020, Plaintiffs sent Defendants the letter attached as Ex. A to this Response, which discusses in detail Plaintiffs' positions regarding Defendants' discovery requests on this topic:

> We also believe that the parties have different views of the *Fannie Mae* discovery ruling concerning the production of pre-Complaint statistical analyses. For example, we note that the Court's ruling in *Fannie Mae* focused more on relevance than privilege, as the Court stated that Fannie Mae's argument regarding the validity of the pre-Complaint statistical analysis "will only be relevant if plaintiffs decide to rely on that expert's regression analysis in opposition to summary judgment or at trial." *National Fair Housing Alliance v. Federal National Mortgage Association*, 4:16-cv-06969-JSW, ECF 95 at 2-3 (April 13, 2020). By producing the regression analyses supporting the Second Amended Complaint (i.e., at an earlier juncture), we have gone

3

beyond what is reasonably required. Furthermore, considering the additional information regarding property ownership and servicing that we have also produced, it is a certainty that the regression analyses performed before the filing of the Second Amended will not be the analyses that Plaintiffs rely on at trial or in opposition to any summary judgment motion. Also, so that there is no confusion, an expert regression analysis is only one type of evidence that will be offered in support of Plaintiffs' claims. We will also offer traditional modes of proof in fair housing cases. Lastly, as to this subject, we are willing to disclose the date prior to the filing of the initial Complaint on which an expert was engaged to perform a first regression analysis, although we do not believe this information is relevant to the statute of limitations issue.[1]

(Pls. Resp. Ex. A, pp. 2-3)

Besides overtly claiming that Plaintiffs did not respond to Defendants' December 2nd letter, Defendants' numerous exhibits to their motion also omit a letter Plaintiffs' counsel sent on February 10, 2021, reiterating Plaintiffs' position regarding this discovery matter. (Pls. Resp. Ex. B) This omission is noteworthy inasmuch as it responds to a Rule 37 letter from Defendants' counsel demanding that Plaintiffs respond to a host of matters within 24 hours – *a demand that Plaintiffs met* -- and one that is certainly ironic considering the months of delay that Plaintiffs are enduring in extracting discovery responses from Defendants.

In all respects, considering the three Rule 37 conferences held by the parties that addressed the subject at issue (September 29, 2020; October 6, 2020; and January 19, 2021) and the four letters sent from Plaintiffs' counsel to Defendants addressing this subject, (November 2, 2020; December 4, 2020; January 25, 2021; and February 10, 2021), the suggestion that Plaintiffs did not reasonably participate in the Rule 37 process is far from candid.

---

[1] In the December 4, 2020 letter, Plaintiffs also addressed Defendants' request that Plaintiffs log any related privileged communications, noted that none of the parties have provided privilege logs to date, and suggested that the parties confer as to an agreed format and scope of such logs. Pls. Resp. Ex. A, p. 2).

4

II. **PLAINTIFFS HAVE PRODUCED RESPONSIVE DOCUMENTS AND INFORMATION THAT MORE THAN SATISFIES THEIR DISCOVERY OBLIGATIONS, ESPECIALLY GIVEN THAT EXPERT DISCOVERY HAS NOT BEGUN**

Rule 26(a)(2) provides for expert disclosures, including the reports of such persons who will testify at trial and the disclosure of the data or other information they considered in forming their opinions, "at the times and in the sequence that the court orders." Fed.R.Civ.P. Rule 26(a)(2)(D). Conversely, opinions that were obtained by a party in anticipation of litigation from persons not identified to testify at trial are only discoverable "upon showing exceptional circumstances under which it is impracticable for the party [seeking discovery] to obtain facts or opinions on the same subject by other means."[2] Fed.R.Civ.P Rule 26(b)(4)(D)(ii).

Under these standards, Plaintiffs would have been justified in refusing to provide Defendants with any information relating to their pre-filing regression analyses on grounds of relevance and intrusion into their protected consultations with an expert in advance of litigation. Nonetheless, in an effort to move this litigation forward (and perhaps facilitate its resolution), Plaintiffs provided Defendants with very substantial data and information related to the pre-filing regression analyses and their factual underpinnings. The documentation and information produced by Plaintiffs that goes unmentioned in Defendants' motion includes all the following:

- the final regression analyses[3] performed by Plaintiffs in supported of the Second Amended Complaint;

---

[2] Defendants have not made any effort to show the "exceptional circumstances" necessary to invoke Fed.R.Civ.P Rule 26(b)(4)(D)(ii).

[3] Subsequent to this Court's November 19, 2019 Opinion, (R.54), in which the Court identified a narrower applicable limitations period, Plaintiffs undertook pre-filing statistical analyses as to two different time periods – the original period alleged by the Plaintiffs and the narrower time period noted by the Court. As such, the regression analyses produced to Defendants cover two different time periods, and we refer to them in the plural.

- the raw dataset for the regression analyses in an Excel format, the regression commands as of December 19, 2018 and the output of the analyses, each in Stata formats that may be opened with a text editor such as notepad in Microsoft Windows;

- the data dictionary in .pdf format;

- the database identifying all deficiencies documented at the REO properties during the investigation;

- photographs of all the Deutsche Bank REO properties taken during testing of the properties; and

- hard copies of various supporting written materials.

Pursuant to Rule 37 discussions with Defendants' counsel, Plaintiffs later provided even more information regarding the regression analyses. For example, on November 2, 2020, Plaintiffs prepared and produced to Defendants a spreadsheet identifying reasons why certain properties that Plaintiffs had attempted to test had not been evaluated (e.g., properties were occupied, properties were sold, access was restricted because a property was in a gated community, etc.). (*See* Defs. Mot. Ex. C, p.2 and attachment). Subsequently, Plaintiffs also prepared and provided Defendants with information identifying reasons why a number of tested properties in certain metropolitan areas were not included in the pre-Complaint regression analyses (e.g., there were insufficient comparators, there was no local fair housing organization, etc.). (Pls. Resp. Ex. C, Plaintiffs' 1/5/21 Amended Response to Defendants' Joint Interrogatories, No. 7).[4]

---

[4] Also at Defendants' request, Plaintiffs disclosed to Defendants the first date upon which an expert was initially engaged by Plaintiffs to perform a regression analysis – July 24, 2017. (Def. Mot. Ex. F, p. 4)

Plaintiffs' production provides Defendants with all the pre-suit factual data from the REO tests that will be proffered as evidence of liability at trial. Defendants possess all the raw data gathered during Plaintiffs' visits to the properties, having received from Plaintiffs (in September 2020) the investigation results in full, including the dates and addresses of property inspections, the specific deficiencies Plaintiffs identified and thousands of photographs. Plaintiffs are frankly confused by Defendants' representations to the Court that Plaintiffs "have repeatedly refused to provide the underlying data that was used to perform the regression analysis." (Defs. Mot. at 2). It is also completely unclear from Defendants' motion what specific additional documents and information they supposedly need. In fact, Defendants have all the information required to probe the validity of Plaintiffs' investigation and the soundness of the regression analyses of Plaintiffs' data included in the Second Amended Complaint. Moreover, the production of the completed pre-filing regression analyses and accompanying dataset fully substantiates that Plaintiffs engaged in appropriate pre-filing analysis prior to filing the Second Amended Complaint. At this point in the litigation, prior to the disclosure of testifying experts and the preparation of expert reports, Defendants have already obtained from Plaintiffs more documents and information than they are actually entitled to receive.

### III. DEFENDANTS' ATTEMPT TO EXPAND AND RECONFIGURE THE PROCESS FOR EXPERT DISCOVERY SHOULD BE REJECTED

The Federal Rules of Civil Procedure provide for an orderly sequence regarding the disclosure of expert witnesses, opinions and related materials. *See* Fed.R.Civ.P. Rule 26(a)(2)(D). The process contemplates that expert disclosures be made separately from the general disclosures required by Rule 26(a)(1), and at a time after fact discovery has occurred and trial is approaching. *Id.* In this case, the identification of experts and the exchange of information concerning their opinions and qualifications is not yet close to occurring and, in fact,

has not even been scheduled or proposed; thus, not surprisingly, Defendants have not identified any experts, or related documents, photographs, opinions, analyses or data that they intend to rely on in connection with expert opinions. On April 9, 2021, the parties jointly proposed to extend fact discovery to November 19, 2021, and to submit a proposed post-fact-discovery expert disclosure and discovery schedule 30 days prior to the close of fact discovery. (ECF 156, 4/9/21 Joint Submission)

Ignoring this context and the applicable discovery rules, Defendants seek to transform the process of a more or less simultaneous exchange of expert information into a one-sided exploration of Plaintiffs' expert consultations and preliminary analyses of data long before Plaintiffs receive any information regarding the activities and opinions of Defendants' experts. This is a giant and illogical leap to make from the pleading standards under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), which require that a complaint plead factual information indicating that a claim is plausible on its face. While Plaintiffs referenced their pre-filing regression analyses and other evidence to comply with *Iqbal*, there is nothing in that case indicating that its purpose was to give Defendants a head start on expert discovery.

Even more of a problem for Defendants' motion is the fact that these early analyses, performed for the purpose of allowing Plaintiffs to consider litigation and comply with Rule 11 and *Iqbal*, will definitely <u>not</u> be relied upon at trial. Subsequent to the filing of the Second Amended Complaint, Plaintiffs have obtained discovery regarding property ownership and servicing that will need to be included, considered and analyzed in any trial-ready regression analysis. Plaintiffs are also in the process of obtaining and analyzing additional data points from Defendants' own records relating to the disparate maintenance and marketing of REO properties in minority communities. As such, Plaintiffs' pre-Complaint analyses will be superseded based

8

upon data and information that was unavailable when the pre-Complaint analyses were conducted. This weighs heavily against Defendants' extremely broad discovery requests related to these preliminary regressions, which are now in the "rear view mirror" of the litigation.

This issue was recently addressed in *Federal National Mortgage Ass'n*, No. 16-cv-06969-JSW (N.D. Cal. Apr. 13, 2020), where the defendants in that case sought to obtain similar materials related to a pre-filing regression analysis of Fannie Mae REO properties. The Court rejected Defendants' argument that additional documents relating to the validity of plaintiffs' pre-filing regression analysis should be produced because they might show the analysis was not statistically sound. (Def. Mot. Ex. L at 2-3). To the contrary, the Court concluded that "the material is not relevant to a claim or defense" and that the statistical soundness of the pre-filing analysis "will be relevant only if Plaintiffs decide to rely on that expert's regression analysis in opposition to summary judgment or at trial." (*Id.*). *See also Apple Inc. v. Amazon.com, Inc.*, No. 11–1327 PJH (JSC), 2013 WL 1320760, at *4 (N.D. Cal. Apr. 1, 2013) (even where consulting experts assisted testifying expert, discovery limited to tailored deposition on the testifying expert's work, not the consulting expert's initial work). Consistent with *Fannie Mae*, the Court should reject Defendants' attempts to expand and restructure expert discovery here.

## IV. DEFENDANTS' CHARACTERIZATIONS OF HOW PLAINTIFFS INTEND TO PROVE THEIR CLAIMS SHOULD BE IGNORED

Defendants repeatedly make erroneous statements about the manner in which Plaintiffs will attempt to prove their claims, referring to the pre-filing regression analyses as the "definitive demonstration of their claims" and suggesting that this evidence forms the entire basis of this lawsuit. (Def. Mem. 8). Defendants' assertions are misleading and require Plaintiffs to briefly respond to these assertions so that they do not obscure the actual modes of proof and evidence that Plaintiffs will utilize.

9

Plaintiffs intend to rely on traditional modes of proof that are well-recognized in Fair Housing cases, such as comparative testing data, evidence of systemic policies and conduct resulting in discrimination, variations from established procedures, and anecdotal evidence bearing on intent and other issues. This evidence will include testimony from many neighbors in minority communities who observed and were severely affected by the discriminatory REO conditions and Defendants' refusal to address them. *See e.g.*, Pls. Resp. Ex. D, sample Declarations produced by Plaintiffs to Defendants in discovery. The evidence will also include information obtained in discovery, such as the Rule 30(b)(6) deposition testimony of Ocwen and Altisource, which supports many of Plaintiffs' allegations in the Second Amended Complaint relating to Defendants' policies and procedures including that:

- Deutsche Bank failed to monitor and ensure compliance with applicable standards for maintaining RMBS Trust properties, outsourcing its responsibilities to Ocwen and other servicers, while receiving a stream of correspondence relating to complaints and code violations;

- Ocwen failed to utilize written policies or procedures regarding the oversight of REO properties during most of the period of Plaintiffs' investigation;

- Altisource, a former Ocwen subsidiary, hired low-cost employees in India, Uruguay and the Philippines to review and process the work of outside vendors on REO properties in the United States while having less than twenty employees on the ground in the United States available to monitor work on many tens of thousands of properties;

- Altisource and Ocwen failed to perform work and correct code violations on REO properties to the detriment of the surrounding neighborhoods based on determinations

- that some properties should be sold "as is," had low value or were otherwise unworthy of being maintained properly;

- Altisource and Ocwen failed to consider the effects that their REO maintenance and marketing practices had on communities of color and believes that any detrimental effects of their practices on minority neighborhoods are irrelevant;

- Altisource and Ocwen funneled properties in communities of color to outside investors and engaged in various marketing practices that maximized Defendants' profits while negatively affecting the communities and diminishing property values; and

- Altisource directed employees (post-litigation) to remove racially biased and derogatory comments about local communities from communications about work orders and market value "reconciliations" (i.e. reductions in values and list prices) while failing to include actual anti-discrimination policy statements in procedural manuals.

(Soule Rule 37 Decl. Ex. E[5])

To be sure, at trial Plaintiffs will also present statistical summaries and analyses of data they collected themselves, and of Defendants' data concerning maintenance and marketing of

---

[5] Transcripts from subject matter depositions of Ocwen and Altisource are presently under review by Defendants for proposed confidentiality designations.

11

Case: 1:18-cv-00839 Document #: 157 Filed: 04/13/21 Page 12 of 12 PageID #:4925

REO properties,[6] but this evidence will not be the only "definitive demonstration" of the Plaintiffs' claims in this case. Thus, as in most discrimination cases, Plaintiffs' claims will be demonstrated through a montage of evidence and analyses that provide the basis for a finding that Defendants engaged in discriminatory conduct, and do not rely solely on expert statistical evidence.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion should be denied.

Respectfully Submitted,

/s/ *Jennifer K. Soule*

| | |
|---|---|
| Jennifer K. Soule | Stephen M. Dane |
| James G. Bradtke | *Dane Law LLC* |
| Kelly K. Lambert | 312 Louisiana Avenue |
| Steven P. Schneck | Perrysburg, OH 43551 |
| *Soule, Bradtke & Lambert* | *Attorney for Plaintiffs* |
| 402 Campbell Street, Suite 100 | |
| Geneva, IL 60134 | |
| *Attorneys for Plaintiffs* | |
| | |
| Morgan Williams | Tara Ramchandani |
| *National Fair Housing Alliance* | Rebecca Livengood |
| 1331 Pennsylvania Ave, NW | Soohyun Choi |
| Suite 650 | Reed Colfax |
| Washington, DC 20004 | Yiyang Wu |
| *Attorney for Plaintiff NFHA* | Lila Miller |
| | *Relman Colfax PLLC* |
| | 1225 19th Street, N.W., Suite 600 |
| | Washington, DC 20036 |
| Dated: April 13, 2021 | *Attorneys for Plaintiffs* |

---

[6] Plaintiffs have to date obtained Altisource data concerning a subset of tested Deutsche Bank REO properties that Altisource acknowledges it serviced, and sample Ocwen data concerning certain tested Deutsche Bank REO properties, all of which is subject to an agreed process, in addition to document production and testimony to date, of clarifying and confirming the use and content of Defendants' data systems. Plaintiffs have requested that Deutsche Bank identify *all* of its REO properties, and likewise, following their Rule 30(b)(6) depositions and significant (ongoing) discovery of data-related information, have specifically requested that Altisource and Ocwen provide data from their electronic systems concerning *all* Deutsche Bank REO properties.