# Exhibit A

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3
     NATIONAL FAIR HOUSING         )
 4   ALLIANCE, et al.,             )
                                   )
 5              Plaintiffs,        )
                                   )
 6   -vs-                          )
                                   )  Case No. 18 C 839
 7   DEUTSCHE BANK NATIONAL        )
     TRUST, as Trustee; DEUTSCHE   )
 8   BANK TRUST COMPANY AMERICAS,  )
     as Trustee; OCWEN LOAN        )
 9   SERVICING, LLC; and           )
     ALTISOURCE SOLUTIONS, INC.,   )  Chicago, Illinois
10                                 )  April 22, 2021
                Defendants.        )  9:30 a.m.
11

12              TRANSCRIPT OF TELEPHONIC PROCEEDINGS
             BEFORE THE HONORABLE HARRY D. LEINENWEBER
13

14   APPEARANCES:

15   For the Plaintiffs:   SOULE, BRADTKE & LAMBERT
                           BY:  MS. JENNIFER K. SOULE
16   (via telephone             MR. JAMES G. BRADTKE
     conference call)      402 Campbell Street, Suite 100
17                         Geneva, Illinois  60134
                           (630) 333-9144
18
     (via telephone        NATIONAL FAIR HOUSING ALLIANCE
19   conference call)      BY:  MR. MORGAN W. WILLIAMS
                           1101 Vermont Avenue, NW, Suite 710
20                         Washington, DC  20005
                           (202) 898-1661
21
     Court Reporter:
22
                      CHARLES R. ZANDI, CSR, RPR, FCRR
23                        Official Court Reporter
                         United States District Court
24                 219 South Dearborn Street, Room 2144-G
                           Chicago, Illinois  60604
25                      Telephone:  (312) 435-5387
                  email:  Charles_zandi@ilnd.uscourts.gov
```

Case: 1:18-cv-00839 Document #: 166-2 Filed: 08/31/21 Page 3 of 15 PageID #:5088

2

```
 1  APPEARANCES:  (Continued)

 2  For the Deutsche Bank        MORGAN LEWIS & BOCKIUS, LLP
    Defendants:                  BY:  MR. KENNETH M. KLIEBARD
 3                               77 West Wacker Drive
    (via telephone               5th Floor
 4  conference call)             Chicago, Illinois  60601
                                 (312) 324-1000
 5

 6  For Defendant Ocwen          MAYER BROWN, LLP
    Loan Servicing, LLC:         BY:  MS. DEBRA L. BOGO-ERNST
 7                               71 South Wacker Drive
    (via telephone               Chicago, Illinois  60606
 8  conference call)             (312) 782-0600

 9

10  For Defendant                DENTONS US, LLP
    Altisource Solutions,        BY:  MR. NATHAN L. GARROWAY
11  Inc.:                        303 Peachtree Street, NE
                                 Suite 5300
12  (via telephone               Atlanta, Georgia  30308
    conference call)             (404) 527-4000
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Proceedings heard in open court:)
2           THE CLERK:  18 C 839, National Fair Housing versus
3   Deutsche Bank.  Please announce yourselves.
4           MS. SOULE:  Jennifer Soule for the plaintiffs.
5           MR. BRADTKE:  James Bradtke also on behalf of the
6   plaintiffs.
7           MR. WILLIAMS:  Morgan Williams as well for the
8   plaintiffs.
9           MR. KLIEBARD:  Kenneth Kliebard for defendants
10  Deutsche Bank National Trust Company and Deutsche Bank Trust
11  Company Americas.
12          MS. BOGO-ERNST:  Good morning.  Deborah Bogo-Ernst on
13  behalf of defendant Ocwen.
14          MR. GARROWAY:  Good morning.  Nathan Garroway on
15  behalf of defendant Altisource Solutions, Inc.
16          THE COURT:  Is that everybody?
17          This is the defendants' motion to compel.  Do you
18  want to explain, whoever's going to present the motion,
19  precisely what documents you're seeking from the plaintiff?
20          MR. KLIEBARD:  Yes, your Honor.  This is Ken
21  Kliebard.  I can address that.
22          So, we served document requests, obviously, on
23  plaintiffs.  They've never taken the position that they've
24  produced all relevant and responsive documents and take a
25  number of, you know, what I think are inconsistent positions

1  in that regard.
2  But on page 3 of our reply brief, we specifically
3  detail what we think plaintiffs have not produced. They've
4  produced a completed regression analysis, but they did not
5  provide us with the documents, again, which they don't say
6  don't exist, but the documents that show the steps in that
7  process, how they selected properties, how they identified
8  the geographies, why they chose to inspect some of the
9  properties and not some of the other properties, why they
10 disregarded some of the inspections that they actually
11 performed, and how they developed the list of factors that
12 they used to analyze these properties.
13 They looked for things like presence of noxious
14 weeds and broken windows and things like that, and those are
15 the factors that they deemed important to the analysis; but
16 there's no production of documents explaining how they picked
17 those factors and not some of the other factors.
18 So, again, we think those documents exist, and the
19 plaintiffs have not denied that they exist. They've just
20 refused to produce them to us.
21 THE COURT: All right. For plaintiffs?
22 MS. SOULE: Yes, Judge. This is Jennifer Soule.
23 The information Mr. Kliebard has just outlined is not in the
24 realm of additional information from the expert. This is
25 information about plaintiffs' methodology. And with respect

1 to that, we have produced a very extensive explanation in our
2 interrogatory responses of how the properties were chosen and
3 what was done.
4     And this is information that they are seeking that
5 they will be able to obtain. In -- later in May, they have
6 noticed up the deposition of a key National Fair Housing
7 Alliance witness who will have information about the
8 methodology, so --
9     THE COURT: May I interrupt you one second? Let
10 me -- are there documents -- do documents exist that -- as
11 described by counsel a few moments ago?
12     MS. SOULE: I believe all documents that exist in
13 that regard have been produced. There is a segment of ESI
14 discovery from National Fair Housing Alliance that we are
15 presently going through, and defendants are aware of that,
16 and that we will be producing as soon as, you know, we get
17 through that. But there are -- we believe the documents
18 have been or will be produced in that regard on the points
19 Mr. Kliebard just outlined.
20     THE COURT: Well, are you denying -- have you
21 refused to produce any document that was requested?
22     MS. SOULE: No. Those -- the out -- any of the
23 items that he just outlined -- what we're objecting to are --
24 is providing the nature of expert analysis beyond what we've
25 already provided, which is all of the data, all of the

1  underlying data of the investigation, the photographs, the
2  deficiencies, the -- all of the underpinnings of the experts'
3  analysis, the data fields, the data dictionary, the regression
4  calculation, all of the things -- and this is for the pre-suit
5  analysis, which as you know from our filings is not going to
6  be the same one we use later because even now, there's more
7  information that has to be analyzed.
8       So, all of that information has been provided;
9  and on the -- in the other stream of things, in terms of the
10 methodology and what plaintiffs did in choosing the, you know,
11 properties or why they chose different factors, we have
12 provided a detailed explanation of that, and we will and have
13 provided documents on that.  We're not withholding documents.
14      THE COURT:  If there's no document existing that you
15 haven't provided, then what's -- I'm trying to figure out what
16 the problem is.
17      What are you refusing to do?  I guess that's another
18 question.  You could say, "We've provided everything, period.
19 There is no more."  Then, I mean, that would presumably have
20 ended the question.
21      Is there other documents, like preliminary -- so, I
22 know the argument normally is on an expert that preliminary
23 drafts and so forth are not necessarily discoverable; however,
24 as I understand the argument in this particular case, because
25 you've pled the existence of this regression analysis, that

1    puts it on a slightly different -- different platform.
2         But I'm just trying to figure out if we're talking
3    about nothing, there isn't anything else to produce, then that
4    makes this relatively easy; but if there is something you're
5    withholding, what is it, and why not -- why shouldn't you
6    produce it?
7         MS. SOULE:  We are drawing a line with respect to the
8    preliminary pre-suit expert analysis as to information that we
9    haven't already produced.  We haven't worked with the expert
10   in quite some time.  We'd have to circle back.
11        But I don't believe that -- I mean, I think they're
12   wanting preliminary -- other preliminary analyses that the
13   expert may have done, if any, and we don't think that prior
14   to expert disclosures and discovery, which we've all agreed
15   is going to take place after fact discovery, that the
16   defendants are entitled to that, if it exists.
17        THE COURT:  What about this --
18        MS. SOULE:  And I guess that's the -- that's the
19   crux of the issue, I guess.
20        THE COURT:  Didn't you plead the existence of a
21   regression analysis?
22        MS. SOULE:  Yes, Judge.  And we did provide that
23   complete -- two, actually.
24        THE COURT:  Well, that's what --
25        MS. SOULE:  We did that --

1  THE COURT: Since that's a factor to prove, that
2  there is one, it seems to me that you do open up your
3  preliminary drafting.
4  Now, you know, if you hadn't pled that, just said
5  that this -- that they were deficient, whatever, and then
6  you have an expert to say that, that puts you in a slightly
7  different -- it seems to me that they'd be entitled to these
8  preliminary drafts because of the fact that you pled the
9  existence of a regression analysis which shows whatever it is
10 it shows.
11 MS. SOULE: Judge, we -- we did the analysis at that
12 time for purposes of complying with the pleading standards
13 under *Iqbal*. So, the -- and we have provided the extensive
14 information, all the data, the calculations, the data fields
15 that the analysis used, the data dictionary that was used.
16 We outline all of this in our response on pages 5 and 6.
17 And we -- we take the position that it's not the
18 time for this. I mean, we've already -- so, we think that
19 during this fact discovery period, we have provided more than
20 what the defendants are -- were probably entitled to. And we
21 do think Rule 26 comes into play in this case, just like in
22 any other case.
23 Once we've done that -- we think we took a very
24 liberal approach, understanding that's the Court's inclination
25 in discovery to providing more and more information about

1 properties that were excluded, about all the data, about what
2 the expert did, the two calculations, all of the information.
3 But we think that the information they're seeking beyond that
4 will come out -- if the same person, I guess, is the expert,
5 will come out during expert disclosures and discovery.
6 So, it's not a matter of denying it. It's just
7 saying that to take the time frame of what happens
8 sequentially in discovery in an orderly way, and just because
9 we took this very liberal approach of, "Here, yes, here's all
10 of this information. Here's all of this, every piece of data,
11 all of the information. Your expert, if you have one, can go
12 and work on all of this."
13 We explained what was controlled for. We explained
14 the methodology, everything. And, yes, they're going to take
15 depositions about that coming up next month.
16 What we're saying is that that doesn't undo the
17 entire sequence of how discovery's supposed to go and doesn't
18 mean that all of a sudden, one-sided expert discovery of the
19 plaintiffs only in full happens now, rather than when we do
20 our expert disclosures, and then there's discovery and
21 depositions.
22 And the kind of things that they want, apparently,
23 that we are -- you know, may be things that they can only
24 get through depositions, and the expert depositions aren't
25 going to happen until later.

1   So, it's a matter of trying to keep with the order
2   of fact discovery first, expert discovery later.
3   MR. KLIEBARD: Your Honor, if I may, this is
4   Ken Kliebard for Deutsche Bank. I don't think counsel has
5   answered the question of what documents exist. What I heard
6   was they gave us the information in interrogatories, and we
7   can ask about it at depositions. I think we're entitled to
8   the underlying documents as we go into those depositions so
9   we can ask about it.
10  And I would agree that in the ordinary course, you
11  would not sequence expert disclosures now; but as your Honor
12  noted, by affirmatively pleading the existence of this
13  regression analysis in the second amended complaint, which
14  plaintiffs did after your Honor dismissed the original
15  complaint, they pled it and relied on it in opposing our
16  motion to dismiss the second amended complaint, they've put
17  it at issue. And I think we're entitled to, again,
18  understand.
19  And they haven't said there are no such documents,
20  documents that establish the steps in the process that they
21  deployed in arriving at that regression analysis. Because we
22  all know, you know, you can lie with statistics, right? It
23  all depends on the inputs. What factors do you think are
24  important? The presence of dandelions in people's lawns,
25  rotted wood, "No Trespassing" signs, they came up with a

1   methodology to try to prove their result.  We're trying to
2   figure out what they used and what they excluded.
3   　　　　　And again, they're not saying those documents don't
4   exist.  They're saying it's premature or we can figure it out
5   through other means in discovery.  But again, coming back to
6   my point, by having placed that at issue and relying on it in
7   the second amended complaint to avoid dismissal, we're
8   entitled to that information now under the law.
9   　　　　　THE COURT:  Anything further?
10  　　　　　MS. SOULE:  Well, Judge, I would just add that the
11  defendants have all the photographs.  They have all of the
12  information.  They didn't outline their methodology-type
13  information they're interested in until their reply brief,
14  which we got a couple of days ago.
15  　　　　　And I believe that -- so, we have produced this
16  information.  It's in all of the data.  There's 34,000
17  pictures.  There's an explanation of properties that were
18  excluded and the reasons why, all of that.  So, I believe we
19  have produced that.
20  　　　　　When we -- on the methodology and stuff -- category,
21  we have produced it and are preparing to complete the
22  production of that as we go through the rest of the ESI.
23  　　　　　It's the issue of the expert information to the
24  extent there is more drafts.  I think they're looking for
25  drafts and things.  That's the only thing I think we haven't

Case: 1:18-cv-00839 Document #: 166-2 Filed: 08/31/21 Page 13 of 15 PageID #:5098

12

1  produced.  And I think that will come out in the expert
2  discovery phase.
3         THE COURT:  Okay.  I'm going to grant the motion.
4  It seems to me that by pleading the existence of a regression
5  analysis which proves the case, you've put into issue every
6  aspect of it, which takes it out of the realm of a strictly
7  expert opinion, which of course, preliminary drafts are not
8  necessarily discoverable.
9         So, I'll grant the motion.
10        MR. KLIEBARD:  Thank you, your Honor.  This is Ken
11 Kliebard again.  One additional point is the parties had
12 separately filed a joint motion to extend fact discovery in
13 the case, and I know that's sitting out there since we don't
14 have presentment hearings anymore.  I just wanted to make sure
15 that didn't slip through the cracks.  I just wanted to remind
16 the Court that that's out there.
17        THE COURT:  How much time -- what is the existing
18 one, and what is the new suggested one?
19        MR. KLIEBARD:  The existing fact discovery cutoff is
20 May, and I think we added an additional six months to that.
21 And there will be quite a number of depositions, which we've
22 already started.  So, I think we're going to need every bit of
23 that six months.
24        THE COURT:  What's the plaintiffs' position on that?
25        MS. SOULE:  We agree, Judge.  We jointly prepared the

Case: 1:18-cv-00839 Document #: 166-2 Filed: 08/31/21 Page 14 of 15 PageID #:5099

13

|   |   |
|---|---|
| 1 | submission with all the defendants together. |
| 2 | THE COURT: Then I'll grant the motion. I'll grant |
| 3 | the six months. So, that would -- the new one would be in -- |
| 4 | help me. December? |
| 5 | MS. BOGO-ERNST: Your Honor, this is Miss Bogo-Ernst. |
| 6 | THE COURT: Middle of November? |
| 7 | MS. BOGO-ERNST: Yes, your Honor. It's docket |
| 8 | No. 156, and the joint request was to extend discovery through |
| 9 | November 19th, 2021. |
| 10 | THE COURT: All right. I'll grant that motion. |
| 11 | MR. KLIEBARD: Thank you, your Honor. |
| 12 | THE COURT: Do we need a further status, or should I |
| 13 | wait for you to disagree on something? |
| 14 | MS. SOULE: I don't know, Judge. We -- we think |
| 15 | statuses are -- can be good, you know, periodically. I mean, |
| 16 | I always think it's a good idea, maybe at 60 days. |
| 17 | But if the Court -- you know, we may have some |
| 18 | disagreements, you know, working their way through the |
| 19 | pipeline. We're still working cooperatively. |
| 20 | THE COURT: Why don't we do -- we'll have a status |
| 21 | in 90 days. |
| 22 | MS. SOULE: Okay. |
| 23 | THE CLERK: Sorry. I was on mute. June 30th at |
| 24 | 9:00 o'clock a.m. |
| 25 | MS. SOULE: Okay. |

1  submission with all the defendants together.
2          THE COURT: Then I'll grant the motion. I'll grant
3  the six months. So, that would -- the new one would be in --
4  help me. December?
5          MS. BOGO-ERNST: Your Honor, this is Miss Bogo-Ernst.
6          THE COURT: Middle of November?
7          MS. BOGO-ERNST: Yes, your Honor. It's docket
8  No. 156, and the joint request was to extend discovery through
9  November 19th, 2021.
10         THE COURT: All right. I'll grant that motion.
11         MR. KLIEBARD: Thank you, your Honor.
12         THE COURT: Do we need a further status, or should I
13 wait for you to disagree on something?
14         MS. SOULE: I don't know, Judge. We -- we think
15 statuses are -- can be good, you know, periodically. I mean,
16 I always think it's a good idea, maybe at 60 days.
17         But if the Court -- you know, we may have some
18 disagreements, you know, working their way through the
19 pipeline. We're still working cooperatively.
20         THE COURT: Why don't we do -- we'll have a status
21 in 90 days.
22         MS. SOULE: Okay.
23         THE CLERK: Sorry. I was on mute. June 30th at
24 9:00 o'clock a.m.
25         MS. SOULE: Okay.

1         THE COURT: Thank you.

2         MR. KLIEBARD: Perfect. Thank you.

3         MS. SOULE: Thank you.

4         MS. BOGO-ERNST: Thank you.

5         MR. BRADTKE: Thank you. Have a good day, everybody.

6   (Which were all the proceedings heard.)

7                 CERTIFICATE

8   I certify that the foregoing is a correct transcript from

9   the record of proceedings in the above-entitled matter.

10

11   */s/Charles R. Zandi*           *April 26, 2021*

12   Charles R. Zandi              Date
     Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25