IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, et al., | Case No. 18 CV 839 |
| Plaintiffs, | |
| v. | Judge Harry D. Leinenweber<br>Magistrate Judge Sidney I. Schenkier |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., | |
| Defendants. | Jury Trial Demanded |

**PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF WILLIAM ERBEY**

Plaintiffs, by their counsel, move to compel the Deposition of William Erbey.

**BACKGROUND**

1. For many years, William Erbey was the controlling executive who operated Defendant Ocwen, Defendant Altisource and several other affiliated companies. Mr. Erbey was the founder of Ocwen and acted as its CEO and President.[1] Concurrently, during the period from August 2009 through January 16, 2015, Mr. Erbey served as Chairman of the Board of Directors for Altisource. (See Ex. A, Excerpt, Altisource Form 10-K). As described below, Mr. Erbey is a witness with highly relevant, personal and unique knowledge relating to this case.

2. Pursuant to a 2014 Consent Order entered into between Ocwen and the New York Department of Financial Services, Mr. Erby was terminated from his position operating Ocwen. (Ex. B). He left the mainland United States and obtained Maltese citizenship. (Ex. C). In that Consent Order, Ocwen admitted to "numerous and significant violations of the law, that

---

[1] This information is reflected in Certifications of Compliance with Servicing Requirements signed by Mr. Erbey as "President/CEO," which will be provided to the Court under seal, if necessary, as they were marked "Confidential" by Defendants during document production.

1

Altisource's REALServicing "information technology systems" for mortgage loans were "inadequate," "ineffective' and "resulted in Ocwen's failure to fulfill its legal obligations," and that Mr. Erbey had improperly failed to recuse himself from transactions that involved conflicts of interest between his roles at Ocwen and his roles at Altisource. (Ex. B).

3. On June 8, 2021, Plaintiffs' counsel advised counsel for Ocwen and Altisource as a courtesy that Plaintiffs would be serving a deposition subpoena on Mr. Erbey and inquired whether counsel for Ocwen or Altisource would be representing Mr. Erbey. (Ex. J) Plaintiffs also briefly identified some matters that they would question Mr. Erbey about, including the numerous certifications personally signed by him attesting to Defendants' purported compliance with servicing standards and referencing his personal supervision of the review of such compliance in connection with Deutsche Bank RMBS Trusts containing REO properties inspected by Plaintiffs. The RMBS Trusts include hundreds or thousands of properties including those identified in the Complaint.

4. On June 24, 2021, counsel for Ocwen and Altisource informed Plaintiffs' counsel that they were not representing Mr. Erbey. (Ex. D).

5. On July 14, 2021, instead of hiring a process server, Plaintiffs' counsel wrote to Mr. Erbey, seeking his voluntary appearance at a deposition. (Ex. E). The letter to Mr. Erbey indicated that the deposition could be taken by video conference, would take less than one day to complete and would focus on his knowledge related to various aspects of the maintenance and marketing of REO properties by Ocwen and Altisource.

6. Plaintiffs' July 14 letter to Mr. Erbey was sent to a post office box in the Virgin Islands where it appeared Mr. Erbey received mail, although Plaintiffs were later informed by counsel for Ocwen that Mr. Erbey no longer resides in the Virgin Islands.

7. On August 3, 2021, Plaintiffs' counsel received a letter from counsel for Ocwen in this case stating that her law firm now represented Mr. Erbey and would accept service of a deposition subpoena. (Ex. F). Counsel also indicated that she wished to discuss the next steps regarding the subpoena. (*Id.*) The newly retained counsel for Mr. Erbey requested that a subpoena for Mr. Erbey's deposition be sent to her and requested an explanation for why Mr. Erbey was being deposed. (*Id.*)

8. On August 6, 2021, Plaintiffs' counsel transmitted a subpoena to counsel for Mr. Erbey (Ex. H), and agreed to have a general conversation regarding the scope of Mr. Erbey's deposition. (*Id.*) This conversation took place on August 24, 2021. During this conversation, Plaintiffs' counsel identified certain topics that would be covered in Mr. Erbey's deposition, including his signed certifications that a review of Ocwen's servicing activities had been conducted under his supervision and that Ocwen had fulfilled its servicing obligations in all material respects. Plaintiffs' counsel also referenced Mr. Erbey's extreme hands-on management style (a fact reflected in his termination as part of the settlement with the New York Department of Financial Services) as it would bear on the topics of servicing practices and incentives related to the maintenance and marketing of REO properties and Mr. Erbey's knowledge of the admitted massive technological shortcomings affecting Ocwen's servicing activities. Plaintiffs' counsel also conveyed that Mr. Erbey was a source of knowledge relating to the origin of and explanation for potential conflicts in the duties and incentives of Altisource and Ocwen that had an impact with regard to the maintenance, marketing and sales of REO properties. Finally, Plaintiffs' counsel also offered to discuss subjects that Plaintiffs would agree to avoid delving into during the deposition.

9. During this same conversation, counsel for Ocwen and Mr. Erbey stated for the first time that Mr. Erbey would not be produced for his deposition because he was a former high-level executive and that a motion to quash would be filed. Upon being advised of this, Plaintiffs' counsel stated that if such a motion were filed for presentation at the previously scheduled September 8, 2021 status conference, Plaintiffs would like to file a responsive brief and, as such, the motion should be filed well in advance of the status hearing, for the benefit of the Court and Plaintiffs.

10. As of the filing of this Motion to Compel, September 2, 2021, no motion to quash has been filed by counsel for Ocwen and Mr. Erby. Considering the upcoming weekend, the Labor Day holiday on Monday and the Jewish holiday next Tuesday, Plaintiffs would not have a reasonable opportunity to respond to any motion filed by counsel for Ocwen and Mr. Erbey after today. Accordingly, Plaintiffs have filed this motion to compel.[2]

**ARGUMENT**

**A. The Applicable Legal Standard**

11. A bedrock principle of the common law is the right to "everyman's evidence." *United States v. Zouras*, 497 F.2d 1115, 1121 (7th Cir. 1974).

12. A narrow exception to this principle, sometimes referred to as the "apex doctrine" exists to limit discovery relating to high level executives who may be vulnerable to numerous, repetitive, harassing or abusive depositions. Under this doctrine, the burden remains on the party seeking to avoid his or her deposition to demonstrate why an order of protection should be

---

[2] To the extent that Mr. Erbey actually files a Motion to Quash prior the status hearing, the Court can consider the motions together. Plaintiffs' Counsel's Declaration pursuant to Local Rule 37.2 is attached hereto as Exhibit K.

granted. *City of Rockford v. Mallinckrodt Ard, Inc.*, 2020 WL 1675593 at *2 (N.D. Ill. April 6, 2020).

13. The general standard related to application of the apex standard involves a court weighing "the value of the material sought against the burden of providing it and in doing so [the court] may take into consideration the burden that a deposition of an apex witness may place on the company, other reasonably available means of discovery and the amount in controversy in the case." *Mallinckrodt*, 2020 WL 1675593 at *2, (N.D. Ill. April 6, 2020), *citing Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Before restricting discovery, a court will consider the totality of the circumstances, balancing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering "the truthseeking function" in the particular case before the court. *Patterson*, 281 F.3d at 681.[3] The mere averment of a putative deponent by affidavit denying personal involvement or knowledge seldom suffices to preclude discovery. *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007).

14. The apex doctrine "is not an ironclad rule," *Mallinckrodt Ard*, 2020 WL 1675593 at *2, but requires the exercise of discretion. In this case, the pertinent factors weigh heavily in favor of allowing Plaintiffs to depose Mr. Erbey.

---

[3] In different cases, courts have phrased the considerations related to the apex doctrine slightly differently, sometimes referring to "unique or superior knowledge," the "hardship" imposed on the company in light of any restriction of the officer's duties, whether the information is relevant or tangential to the case, the availability of less intrusive means, and other factors. *See e.g., Nucorp Industries, Inc. v. Robert Bosch LLC*, 2017 WL 6059770 at *1 (N.D. Ill. Dec. 17, 2017); *Mallinckrodt Ard*, 2020 WL 1675593 at *2; *Bell v. Woodward Governor Company*, 2005 WL 8179367 at *2 (N.D. Ill. Aug. 17, 2005).

15.     <u>The Value, Nature and Relevance of the Testimony Sought</u>.  The primary reason Plaintiffs seek to depose Mr. Erbey relates to him signing over 200 certifications[4] produced in discovery attesting that Defendant Ocwen had complied in all material respects with regard to its obligations under Deutsche Bank RMBS Servicing Agreements.  The obligations imposed under Servicing Agreements include many that are directly relevant to this case.  For example, each Servicing Agreement requires the Servicer to manage, conserve, protect and operate REO properties in accord with the specified Servicing Standard for the purpose of their prompt disposition or sale.  (Ex. I).  The Servicing Agreements also require the Servicer to comply with federal, state and local laws (which would include federal anti-discrimination laws).  (*Id*.).  The Servicing Agreements also typically require the Servicer to service and administer the loans in the same manner in which it services and administers similar mortgage loans for its own portfolio, giving due consideration to the customary and usual standards and practices of mortgage lenders and loan servicers administering similar mortgage loans.  (*Id*.).

16.     In the certifications signed by Mr. Erbey, he specifically attested that the Servicer's activities and performance related to the Servicing Agreements were reviewed under his supervision and the Servicer fulfilled all of its obligations in all material respects.

17.     The subject of these certifications – the fulfillment of Ocwen's obligations such as properly managing, conserving, protecting and operating REO properties, or its compliance with applicable laws and regulations, is highly relevant to the claims brought by Plaintiffs.  If Ocwen actually managed REO properties in accord with the requirements of the Servicing Agreements

---

[4] These are the identically-worded certifications that have been produced by the Deutsche Bank Defendants to date, and there are undoubtedly additional certifications signed by Mr. Erbey.  Some of the certifications produced were signed in 2013 and others in 2014.  For some reason, Ocwen has not produced certifications in discovery.  As noted above, the Deutsche Bank Defendants have marked the certifications confidential.  If necessary, Plaintiffs will provide certifications to the Court under seal.

and applicable laws, this would be relevant to the defense of Plaintiffs' claims. Conversely, if Ocwen failed to manage REO properties in such a manner, but asserted that it did, this would be a potential basis for an inference of discriminatory intent. *See Perdomo v. Browner,* 67 F.3d 140, 144-145 (7th Cir. 1995)(false statements as evidence of discriminatory intent). Moreover, the scope of the review supervised by Mr. Erbey by itself is highly relevant evidence. Among other questions, he will be asked: (a) what properties were reviewed?; (b) what standards were applied?; (c) what communities were the properties located in?; and (d) what did Ocwen evaluate during the scope of its review?

18.  Considering his personal endorsement as to all these matters, Mr. Erbey is an appropriate witness with unique and superior knowledge about what he believed he was certifying. Moreover, based on the Rule 30(b)(6) deposition taken of Ocwen's corporate designee, it is obvious that Mr. Erbey is the best person to question regarding the scope of the review. For example, Ocwen's corporate designee answered "I do not know" when asked how Ocwen went about preparing the certifications. (Ex. L, Ocwen Rule 30(b)(6) Subject No. 4, p. 121). The designee didn't know if there were meetings or other ways that the duly authorized officer acted as part of a review. (*Id.* at 123). The designee didn't know if there was an Ocwen policy about how the certifications were prepared. (*Id.*) When asked what documents Plaintiffs should review if they wanted to see what Mr. Erbey reviewed prior to signing any certifications, the designee again testified that he did not know. (*Id.*) The designee further testified he didn't know if there was a file or set of information that was presented for the consideration of the officer signing the certifications. (*Id.* at 124).

19.  Mr. Erbey also has highly significant personal knowledge relevant to other topics in this case. As evidenced by provisions in the Consent Order with New York Department of

7

Financial Services, Mr. Erbey was the quintessential hands-on executive, who had the last word on important (and not so important) decisions. In earnings calls and other forums, he repeatedly touted Ocwen's "world class compliance management system" and "compliance focus," subjects that are of importance to the present case, but as to which Plaintiffs have found little or no supporting evidence from Defendants' other designated witnesses. Similarly, Mr. Erbey repeatedly lauded the effectiveness and efficiency of the data systems utilized by Ocwen and Altisource (from which Plaintiffs are now attempting to derive data), even though Ocwen would later admit in the 2014 Consent Order that the data systems were inadequate, Ocwen was unable to maintain adequate records, and Ocwen had insufficient controls to identify errors. (Ex. B). In addition, Mr. Erbey acted as President and CEO of Ocwen during the relevant time period in this litigation when, according to Ocwen's Rule 30(b)(6) deponent, the Company did not have pertinent written policies and procedures, making Mr. Erbey's testimony about Ocwen's conduct, oversight and procedures with regard to REO properties during that period especially relevant. In addition to the subjects mentioned to Mr. Erby's counsel as described in paragraph 8 above, Plaintiffs should also be permitted to inquire about these additional subjects at Mr. Erbey's deposition.

20.     <u>The Burden of Allowing the Deposition to Go Forward</u>. A second factor a court considers in determining whether an apex deposition should go forward is the burden to the corporation. Here, since Mr. Erbey is no longer an executive with Ocwen, there is *no* burden to Ocwen in allowing the deposition to proceed. Plaintiffs further note that appearing for the deposition will not work any substantial burden on Mr. Erbey since it will be taken virtually, and Plaintiffs have already agreed to limit the deposition to a day or less.

21. <u>The Availability of Other Means of Discovery</u>. As discussed above, Plaintiffs first sought to obtain pertinent information related to Mr. Erbey's certifications of servicer compliance at the Rule 30(b)(6) deposition of the Company's designee, but the designee was unable to provide the requested information. In this regard, Plaintiffs note that the certifications signed by Mr. Erbey were tendered to counsel for Ocwen as exhibits well in advance of the 30(b)(6) deposition, so the questioning regarding these documents could not have been a surprise.

22. <u>Avoidance of Harassment</u>. There is no indication that Plaintiffs seek to take the deposition of Mr. Erbey for purposes of harassment. Moreover, Plaintiffs' counsel offered to discuss with counsel for Ocwen the possibility of limiting inquiry into certain subjects. Plaintiffs' offer was rejected.

23. <u>The Matter in Controversy</u>. A final factor considered by some courts in applying the apex doctrine is the overall importance of the case – for example, a dispute over $1,000 might not warrant the deposition of company's chief executive. Here, the issues raised are of great importance to minority communities harmed by Defendants' alleged REO practices, which also supports the Court entering an Order compelling Mr. Erbey to appear for his deposition.

## CONCLUSION

Highly placed corporate executives or former executives are not immune from discovery because they believe that they are too important or busy. *Johnson v. Jung*, 242 F.R.D. at 486. Here, Plaintiffs have demonstrated that Mr. Erbey's knowledge is highly relevant to the case, is not available by other means, and can be obtained through a deposition without inconvenience to Defendants or Mr. Erbey. As such, the balance of interests weighs strongly in Plaintiffs' favor, and Plaintiffs' motion should be granted.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order granting their Motion to Compel the Deposition of William Erbey.

Respectfully Submitted,

/s/ *James G. Bradtke*

Jennifer K. Soule
James G. Bradtke
Kelly K. Lambert
Steven P. Schneck
*Soule, Bradtke & Lambert*
402 Campbell Street, Suite 100
Geneva, IL 60134
*Attorneys for Plaintiffs*

Stephen M. Dane
*Dane Law LLC*
312 Louisiana Avenue
Perrysburg, OH 43551
*Attorney for Plaintiffs*

Morgan Williams
*National Fair Housing Alliance*
1331 Pennsylvania Ave, NW
Suite 650
Washington, DC 20004
*Attorney for Plaintiff NFHA*

Tara Ramchandani
Rebecca Livengood
Soohyun Choi
Reed Colfax
Lila Miller
Yiyang Wu
*Relman Colfax PLLC*
1225 19th Street, N.W., Suite 600
Washington, DC 20036
*Attorneys for Plaintiffs*

Dated: September 2, 2021