# Exhibit I

MORGAN STANLEY ABS CAPITAL I INC.,

as Depositor,

JPMORGAN CHASE BANK, N.A.,

as Master Servicer and Securities Administrator,

SAXON MORTGAGE SERVICES INC.

as Servicer,

COUNTRYWIDE HOME LOANS SERVICING LP,

as Servicer,

IXIS REAL ESTATE CAPITAL INC.,

as Unaffiliated Seller,

and

DEUTSCHE BANK NATIONAL TRUST COMPANY,

as Trustee and Custodian.

POOLING AND SERVICING AGREEMENT

Dated as of August 1, 2005

IXIS REAL ESTATE CAPITAL TRUST 2005-HE3

MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2005-HE3

## ARTICLE III

## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01  Servicers to Service Mortgage Loans.

(a)  For and on behalf of the Certificateholders, and for the benefit of the Class A-1 Certificate Insurer, each Servicer shall service and administer the Mortgage Loans for which it is acting as Servicer in accordance with the terms of this Agreement and the respective Mortgage Loans and, to the extent consistent with such terms, in the same manner in which it services and administers similar mortgage loans for its own portfolio, giving due consideration to customary and usual standards of practice of prudent mortgage lenders and loan servicers administering similar mortgage loans but without regard to:

(i) any relationship that such Servicer, any Subservicer or any Affiliate of such Servicer or any Subservicer may have with the related Mortgagor;

(ii) the ownership or non-ownership of any Certificate by such Servicer or any Affiliate of such Servicer;

(iii) such Servicer's obligation to make P&I Advances or Servicing Advances; or

(iv) such Servicer's or any Subservicer's right to receive compensation for its services hereunder or with respect to any particular transaction.

To the extent consistent with the foregoing, each Servicer shall seek to maximize the timely and complete recovery of principal and interest on the Mortgage Notes. Subject only to the above-described servicing standards and the terms of this Agreement and of the respective Mortgage Loans, each Servicer shall have full power and authority, acting alone or through Subservicers as provided in Section 3.02, to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable. Without limiting the generality of the foregoing, each Servicer in its own name or in the name of a Subservicer is hereby authorized and empowered by the Trustee when such Servicer believes it appropriate in its best judgment in accordance with the servicing standards set forth above, to execute and deliver any and all instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments, with respect to the Mortgage Loans and the Mortgaged Properties and to institute foreclosure proceedings or obtain a deed-in-lieu of foreclosure so as to convert the ownership of such properties, and to hold or cause to be held title to such properties, on behalf of the Trustee. Each Servicer shall service and administer the Mortgage Loans in accordance with applicable state and federal law and shall provide to the Mortgagors any reports required to be provided to them thereby. Each Servicer covenants that its computer and other systems used in servicing the Mortgage Loans operate in a manner such that such Servicer can service the Mortgage Loans in accordance with the terms of this Agreement. Each Servicer shall also comply in the performance of this Agreement with all reasonable rules and requirements of each insurer under any standard hazard insurance policy.

such liquidation that are required to be deposited into the related Collection Account have been so deposited, or that such Mortgage Loan has become an REO Property, a copy of the Request for Release of documents shall be released by the Custodian to the applicable Servicer or its designee.

Upon written certification of a Servicing Officer, the Trustee shall execute and deliver to the applicable Servicer any court pleadings, requests for trustee's sale or other documents reasonably necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity, or shall exercise and deliver to the applicable Servicer a power of attorney sufficient to authorize such Servicer to execute such documents on its behalf. Each such certification shall include a request that such pleadings or documents be executed by the Trustee and a statement as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Upon receipt of a Request for Release under this Section 3.16, the Custodian shall deliver the related Custodial File to the applicable Servicer by regular mail, unless such Servicer requests that the Custodian deliver such Custodial File to such Servicer by overnight courier (in which case such delivery shall be at such Servicer's expense). To the extent that the applicable Servicer requires an overnight courier for such delivery and incurs the related expense due to such Servicer not having previously received copies of the documents required to be delivered to such Servicer hereunder, the Unaffiliated Seller shall use commercially reasonable efforts to assist such Servicer in causing the related Originator pursuant to the related Mortgage Loan Purchase Agreement to reimburse such Servicer for such expense.

Section 3.17 <u>Title, Conservation and Disposition of REO Property</u>.

(a) This Section shall apply only to REO Properties acquired for the account of the Trustee and shall not apply to any REO Property relating to a Mortgage Loan which was purchased or repurchased from the Trustee pursuant to any provision hereof. In the event that title to any such REO Property is acquired, the applicable Servicer shall cause the deed or certificate of sale to be issued in the name of the Trustee, on behalf of the Certificateholders. Upon written request by the applicable Servicer, the Trustee shall provide such Servicer with a power of attorney prepared by such Servicer with respect to such REO Property.

(b) Each Servicer shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale. Each Servicer, either itself or through an agent selected by such Servicer, shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed. Each Servicer shall attempt to sell the same (and may temporarily rent the same for a period not greater than one year, except as otherwise provided below) on such terms and conditions as such Servicer deems to be in the best interest of

119

the Trustee. The applicable Servicer shall notify the Trustee and the Securities Administrator from time to time as to the status of each REO Property.

    (c)    [Reserved].

    (d)    [Reserved].

    (e)    Each Servicer shall segregate and hold all funds collected and received in connection with the operation of any REO Property separate and apart from its own funds and general assets and shall deposit such funds in the related Collection Account.

    (f)    Each Servicer shall deposit net of reimbursement to such Servicer for any related outstanding P&I Advances, Servicing Advances and unpaid Servicing Fees provided in Section 3.11, or cause to be deposited, on a daily basis in the related Collection Account all revenues received with respect to the related REO Property and shall withdraw therefrom funds necessary for the proper operation, management and maintenance of the REO Property.

    (g)    Each Servicer, upon an REO Disposition, shall be entitled to reimbursement for any related unreimbursed P&I Advances and Servicing Advances as well as any unpaid Servicing Fees from proceeds received in connection with the REO Disposition, as further provided in Section 3.11.

    (h)    Any net proceeds from a REO Disposition which are in excess of the applicable Stated Principal Balance plus all unpaid REO Imputed Interest thereon through the date of the REO Disposition shall be retained by the applicable Servicer as additional servicing compensation.

    (i)    Each Servicer shall use its reasonable best efforts to sell, or cause the Subservicer to sell, any REO Property as soon as possible, but in no event later than the conclusion of the third calendar year beginning after the year of its acquisition by REMIC I unless (i) the applicable Servicer applies for an extension of such period from the Internal Revenue Service pursuant to the REMIC Provisions and Code Section 856(e)(3), in which event such REO Property shall be sold within the applicable extension period, or (ii) the applicable Servicer obtains for the Trustee and the Securities Administrator an Opinion of Counsel, addressed to the Depositor, the Trustee, the Securities Administrator and such Servicer, to the effect that the holding by REMIC I of such REO Property subsequent to such period will not result in the imposition of taxes on "prohibited transactions" as defined in Section 860F of the Code or cause any REMIC created hereunder to fail to qualify as a REMIC under the REMIC Provisions or comparable provisions of relevant state laws at any time. Each Servicer shall manage, conserve, protect and operate each REO Property that it services for the Trustee solely for the purpose of its prompt disposition and sale in a manner which does not cause such REO Property to fail to qualify as "foreclosure property" within the meaning of Section 860G(a)(8) or result in the receipt by any REMIC created hereunder of any "income from non-permitted assets" within the meaning of Section 860F(a)(2)(B) of the Code or any "net income from foreclosure property" which is subject to taxation under Section 860G(a)(1) of the Code. Pursuant to its efforts to sell such REO Property, the applicable Servicer shall either itself or through an agent selected by such Servicer protect and conserve such REO Property in the same manner and to

NY1 951956v9
DB_NFHA00079976