**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, et al., | Case No. 18 CV 839 |
| Plaintiffs, | |
| v. | Judge Harry D. Leinenweber |
| | Magistrate Judge Sidney I. Schenkier |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., | |
| Defendants. | Jury Trial Demanded |

**PLAINTIFFS' RESPONSE TO TRUSTEES' MOTION FOR RULE TO SHOW CAUSE**

The Deutsche Bank Trustees have filed an unwarranted Motion for a Rule to Show Cause, which misstates and omits most of the relevant facts, and attempts to resurrect issues that were apparently resolved several months ago. As discussed below, Plaintiffs have fully complied with the Court's April 22, 2021 Order and cooperated in all respects with the Trustees with regard to production of the requested consultant documents. The Court should deny the Motion to Show Cause.

**I. FACTS**

**A. Defendants' May 22, 2020 Discovery Request**

In their May 22, 2020, Request for Production of Documents, (Ex. A), the Trustees sought various documents relating to statistical analyses conducted by Plaintiffs prior to the filing of their Complaint. The analyses were referenced in the Complaint for purposes of complying with the heightened pleading standards under *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009). In their response, (Ex. B, Response to RFP 29, et seq), Plaintiffs objected to the Trustees' requests on the basis that the analyses were performed by a consulting expert and were

1

not discoverable under Fed.R.Civ.P. 26(b)(4)(C). Nonetheless, Plaintiffs went ahead and voluntarily produced the completed regression analyses specifically referenced in the Complaint, as well as the raw data relating to the analyses. (Ex. B, Resp. to RFP 29, et seq.) The analyses sought by the Trustees were voluntarily produced by Plaintiffs even though they will not be used at trial since they were based upon data that has been superseded by additional information obtained through discovery and Plaintiffs' continued investigation.

The Trustees were dissatisfied with this production and filed a motion to compel. (ECF. 149) In their supporting brief Motion, the Trustees stressed the limited nature of their requests, asserting that they were seeking discovery regarding "factual inputs and exclusions from Plaintiffs' regression analyses cited throughout the Second Amended Complaint" and noting that "even if Plaintiffs' regression analysis was performed by a consulting expert, Defendants' motion does not seek to compel Plaintiffs to respond to interrogatories or submit their expert to a deposition." (ECF 160, pp. 1, 5).

The Court heard oral argument on the motion on April 22, 2021 and entered a minute order granting the motion. The minute order does not reference particular document requests or documents.

### B. Plaintiffs' Response to the Court's Order

Following entry of the Court's Order, Plaintiffs promptly produced to the Trustees on May 14, 2021, the following: (1) all the data files that Plaintiffs received from their consultant in Excel format that related to the pre-Complaint Analysis conducted by plaintiffs' consultant;[1] and

---

[1] Plaintiffs were unable to include the referenced Excel format spreadsheets received from their Consultant, STAT 1-2, 69, 121-122, in their Exhibit C to this Response, because of size limitations of the ECF system.

(2) all the reports prepared by that consultant that comprised the pre-filing analyses conducted for Plaintiffs' counsel demonstrating statistically significant disparities between the routine exterior maintenance of Deutsche Bank REO properties in white neighborhoods and routine exterior maintenance of Deutsche Bank REO properties in minority neighborhoods.  Ex. C, STAT 3-33, STAT 34-66, STAT 70-105 and STAT 106-120.  The only redaction to these documents was the name of the consulting expert, and this redaction was specifically indicated by Plaintiffs' counsel in the cover letter enclosing the documents.

The production of these documents supplemented other documents previously produced in discovery to Defendants months earlier relating to Plaintiffs' consulting expert's analysis, including all the following:  (1) the final regression analyses performed in support of the Second Amended Complaint; (2) the raw dataset for the regression analyses in an Excel format, the regression commands as of December 19, 2018 and the output of the analyses, each in Stat formats that may be opened with a text editor such as notepad in Microsoft windows; (3) the data dictionary in pdf format; (4) the database identifying all deficiencies documented at the REO properties during the investigation; and (5) photographs of all the Deutsche Bank REO properties taken during the testing of the properties.

### C.  The Trustees' Response to Plaintiffs' Court-Ordered Production

Notwithstanding this extensive production of data, documents and photographs that would enable the Trustees to conduct any analysis of NFHA's investigation they desired, the Trustees' counsel wrote to Plaintiffs' counsel on June 3, 2021 raising several issues about the production, including an unidentified and unexplained problem the Trustees' counsel perceived in terms of "gaps" in the documents provided.  (Ex. D).  On the next day, June 4, 2021, Plaintiffs wrote to address the particular issues mentioned in the letter, (Ex. E).   In the absence of any

information from the Trustees about what documents they thought might be missing, Plaintiffs'
counsel added that "in terms of gaps defendants perceive in the documents produced, [we are]
unaware of any and believe defendants are incorrect.  We produced all the documents we
received from our consultant in response to our request that the consultant produce all the
responsive documents required by the Court.  If you have specific questions in this regard, let me
know and I will, of course, follow up with the consultant."

### D. <u>The Trustees' June 29, 2021 Letter</u>.

The Trustees' counsel did not respond to the June 4, 2021 letter from Plaintiffs' counsel
until June 29, 2021, immediately prior to the next Court appearance.  (Ex. F)  After waiting
almost four weeks, the Trustees' counsel now demanded immediate production of documents
that he claimed Plaintiffs had wrongfully withheld based on his "infer[ences]" from the
multitude of documents that Plaintiffs did produce.   In particular, the Trustees' counsel
requested (1) documents reflecting programming input that generated the log files produced,
including all prior iterations; (2) correspondence or notes of meetings with the consultant,
including documents reflecting objectives and instructions given to the consultant; and (3)
internal work papers of the consultant reflecting prior iterations of the analysis.

Plaintiffs' counsel contacted their consultant the same day that Plaintiffs received the
letter from the Trustees' counsel to determine whether the issues raised by the Trustees' counsel
were valid.   Ex. G, Declaration of Jennifer Soule; Ex. H, Declaration of James Bradtke. First,
Plaintiffs' consultant indicated that the consultant had manually entered inputs, and there were
no documents reflecting prior iterations or permutations of his analysis, apart from what
Plaintiffs already produced.  (Id.)*; See e.g.*, Ex. C, STAT 3, 19, 34, 70, 86, 106, 114, 116.
Second, the consultant confirmed that he had no notes reflecting objectives and instructions

given to him.  (Ex. G; Ex. H).   Third, with regard to internal "work papers" reflecting prior iterations of the analysis, the consultant confirmed that there were no documents beyond the reports and data mentioned above that were previously provided to Defendants reflecting different permutations of the analysis. (Id.).

On the same day, Plaintiffs' counsel conveyed this information to counsel for the Trustees.  (Ex. I, 6/29/21 letter).  More generally, as regards emails of any nature between Plaintiffs' counsel and the consultant, Plaintiffs reiterated what Defendants' counsel had been told weeks earlier – that  Plaintiffs disagreed that Defendants were entitled to receive all emails between the consultant and counsel, both because: (a) such emails fell outside the scope of Defendants' motion as presented to the Court and as granted by the Court's Order; and (b) such emails were privileged under Rule 26.  Plaintiffs' counsel further advised counsel for the Trustees that Plaintiffs were preparing a privilege log regarding any such emails with counsel and that Plaintiffs were waiting to receive a portion of the emails from the consultant.

At the June 30, 2021 status hearing, counsel for the Trustees briefly referenced an issue relating to production of the documents of Plaintiffs' consultant, but suggested that the issue was not ripe.  (Ex. J, Tr. at p. 6).

### E.  The Privilege Log

On July 7, 2021, Plaintiffs produced to Defendants' counsel a Log of Privileged Documents Relating to Pre-filing Analyses.  (Ex. K).  In addition, in the interest of conclusively resolving any possible issues related to this subject, Plaintiffs also indicated that they would waive privilege and produce a batch of additional documents.  (Id.).  These documents were produced to counsel for the Trustees on July 13, 2021.

No further written communication was received from counsel for the Trustees relating to any issues concerning the consultant's documents until the Trustees filed their Motion for Rule to Show Cause on August 31, 2021.

## II. ARGUMENT

The Trustees' Motion For Rule to Show Cause should be denied because Plaintiffs have complied with this Court's Order, cooperated with the Trustees at every step, and provided the Trustees with all the documents they sought and that are needed to probe the validity and soundness of the regression analyses of Plaintiffs' data referenced in the Second Amended Complaint. Plaintiffs' prompt, sincere and professional efforts to address issues related to production of the documents sought by the Trustees are demonstrated in the detailed chronology of events provided above. There has been no disrespect for this Court's Orders or the judicial process.

The continuing churning of this document production issue by the Trustees' counsel is substantively pointless, in view of the fact that the pre-filing analyses will not be the analyses that are presented at trial: Plaintiffs have discovered additional information regarding the tested properties that will be included, considered and analyzed in any trial-ready statistical analysis.

The Trustees' assertion that they are entitled to information regarding the identity of Plaintiffs' consulting expert is unfounded because this was not the information that the Trustees indicated that they were seeking when they filed and argued their motion to compel to the Court – to the contrary, the Trustees specifically disavowed any intention of deposing Plaintiffs' consultant. (ECF 160, p. 5) Nor is there any logic to requiring a party to disclosed protected information about the identify of a consultant simply because the party referenced in its Complaint a pre-filing analyses conducted to comply with the pleading standards under *Ashcroft*

6

*v. Iqbal*, 556 U.S.662, 678 (2009).  The viability of that analysis can be readily analyzed by Defendants based on the mounds of data Plaintiffs' counsel has produced and does not depend upon knowing who Plaintiffs' consultant was.

Moreover, allowing the Trustees to further continue down this path is manifestly unfair considering the provisions of the Federal Rules of Civil Procedure.   Under Fed.R.Civ.P. 26(b)(4), a party's consulting expert is expressly shielded from discovery absent extraordinary circumstances.  Under Fed.R.Civ.P. Rule 26(a)(2)(D), the disclosure of even *testifying* expert witnesses is made separately from the general disclosures required by Rule 26(a)(1), and at a time after fact discovery is closed and trial is approaching.  In this case, a schedule for expert discovery and the commencement of that process will occur after fact discovery closes, and Defendants have not identified any experts, or related documents, photographs, opinions or data that they intend to rely upon in connection with expert opinions.[2]

Finally, Plaintiffs note that, despite the Trustees receiving a privilege log two months ago from Plaintiffs' counsel, the Trustees have not sought to engage Plaintiffs in a dialogue as to any document listed in the log.  Nor do the Trustees attempt to make any argument in their motion that any of the documents listed in the log are relevant.  This underscores that this is a motion that has been filed for tactical, not substantive reasons.  If the Court desires, Plaintiffs will submit these emails for in camera inspection, which will only demonstrate that the emails are not proper objects of discovery.

---

[2] Plaintiffs note and acknowledge that if they determine to use their consulting expert as a witness at trial, Defendants will be able to depose the consultant fully as to any matters relating to the pre-trial analyses.

## CONCLUSION

For all the foregoing reasons, the Trustees' Motion for Rule to Show Cause should be denied.

Respectfully Submitted,

/s/ *Jennifer K. Soule*

Jennifer K. Soule  
James G. Bradtke  
Kelly K. Lambert  
Steven P. Schneck  
*Soule, Bradtke & Lambert*  
402 Campbell Street, Suite 100  
Geneva, IL 60134  
*Attorneys for Plaintiffs*

Stephen M. Dane  
*Dane Law LLC*  
312 Louisiana Avenue  
Perrysburg, OH 43551  
*Attorney for Plaintiffs*

Morgan Williams  
*National Fair Housing Alliance*  
1331 Pennsylvania Ave, NW  
Suite 650  
Washington, DC 20004  
*Attorney for Plaintiff NFHA*

Tara Ramchandani  
Rebecca Livengood  
Soohyun Choi  
Reed Colfax  
Yiyang Wu  
Lila Miller  
*Relman Colfax PLLC*  
1225 19th Street, N.W., Suite 600  
Washington, DC 20036  
*Attorneys for Plaintiffs*

Dated: September 2, 2021

8