IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DEUTSCHE BANK NATIONAL TRUST, AS )<br>TRUSTEE, et al., )<br>)<br>Defendants. ) | Case No. 18-CV-839<br><br>Judge Harry D. Leinenweber<br>Magistrate Judge Sidney I. Schenkier |

**DEFENDANT OCWEN LOAN SERVICING, LLC's AND THIRD PARTY, FORMER EXECUTIVE CHAIRMAN WILLIAM ERBEY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs' Motion to Compel the Deposition of William Erbey ("Plaintiffs' Motion to Compel") (ECF No. 169) is nothing more than a thinly-disguised attempt to harass Ocwen Loan Servicing, LLC ("Ocwen") through the deposition of its former Executive Chairman, William Erbey. Indeed, the vast majority of Mr. Erbey's knowledge is irrelevant to this lawsuit because: (i) he left Ocwen in January of 2015—one month before the operative time period applicable to Ocwen in this case; and (ii) Mr. Erbey was a high-level executive with no direct personal knowledge of the day-to-day operations of how Ocwen maintained, marketed, and sold Real Estate Owned ("REO") properties. Any limited knowledge that Mr. Erbey may have: (i) is not unique; and (ii) is easily attainable through alternative, less burdensome means.

Plaintiffs claim that the "primary reason" they are seeking to depose Mr. Erbey is that he signed certifications in 2013 and 2014 attesting to Ocwen's compliance with Deutsche Bank (the trustee)'s Pooling and Servicing Agreements ("PSAs"). Pls. Mot. ¶ 15. But, as discussed below, Ocwen hired third-party auditors to perform those reviews, and Mr. Erbey simply co-signed the certifications based on the compliance reports. Moreover, those 2013 and 2014 certifications are

outside the relevant time period at issue and, for the most part, the matters to which the co-signers are certifying simply are irrelevant to the claims in this litigation.

Instead of attempting to compromise with Ocwen through the use of alternative, less burdensome discovery means (*e.g.,* written discovery requests, fact witness depositions of people actually involved with the certification process to Deutsche Bank, etc.), Plaintiffs plowed ahead, attempting to leapfrog to the deposition of Ocwen's former Executive Chairman. This is improper under the law, and Plaintiffs' Motion to Compel should be denied.

## BACKGROUND

This lawsuit is about the preservation and marketing of a select group of REO properties that Plaintiffs inspected and used as a basis to file claims against defendants under the Fair Housing Act ("FHA"). The Deutsche Bank defendants acted as trustees for the REO properties at issue, Ocwen serviced the properties, and Altisource Solutions, Inc. ("Altisource") served as Ocwen's vendor, performing the maintenance and marketing work associated with the properties.

### A. Discovery Conducted By Plaintiffs As To Ocwen

In the eighteen months of discovery that has occurred in this litigation, Plaintiffs served Ocwen with over one hundred document requests and sixteen interrogatory questions and took Ocwen's Rule 30(b)(6) deposition on numerous topics over the course of seven days. Following the deposition, Plaintiffs *never* reached out to Ocwen to say that they believed that the deponent's knowledge concerning a particular subject matter (*e.g.*, the certification process that they claim is so important now to purportedly necessitate Mr. Erbey's deposition, Pls. Mot. ¶ 15) was insufficient. Likewise, Plaintiffs never served any interrogatories concerning the subject matters for which they claim Mr. Erbey should testify. Plaintiffs have served no deposition notices for fact witness testimony on these subjects either. Instead, Plaintiffs simply served the subpoena for

2

Mr. Erbey's deposition, despite knowing full well that he was the former Executive Chairman (Pls. Mot. Ex. B ¶ 57) and that a heightened standard applies to the ability to obtain this testimony. Plaintiffs' failure to exhaust the discovery avenues available to them is one of the problems with their subpoena to Mr. Erbey. As discussed next, the relevant time period of this lawsuit is also problematic for Plaintiffs' position.

**B.     The Time Period Relevant To Ocwen In This Lawsuit Begins In February 2015 – After Mr. Erbey Had Already Left Ocwen.**

In seeking to depose Mr. Erbey, Plaintiffs ignore the time period that is relevant to this litigation. Almost three years ago, the Court decided in ruling on the motions to dismiss that the relevant time period in this litigation—as it relates to Ocwen—begins on February 14, 2015. *See Nat'l Fair Housing Alliance v. Deutsche Bank*, 2018 WL 6045216, at *3-4 (N.D. Ill. Nov. 19, 2018) ("*NFHA I*"); *see also Nat'l Fair Housing Alliance v. Deutsche Bank Nat'l Trust*, 2019 WL 5963633, at *11-12 (N.D. Ill. Nov. 13, 2019) ("*NFHA II*"). Specifically, as the Court explained, a civil action under the Fair Housing Act must typically be filed within two years, but the two-year period is tolled while an administrative proceeding is pending. *NFHA* I, 2018 WL 6045216, at *3 (citing 42 U.S.C. § 3613(a)(1)(A)-(B)). Plaintiffs were on notice of their claims against Defendants in this suit by 2011. *See id.* at *4 (referencing Plaintiffs' 2011 report on alleged "discriminatory maintenance and marketing of white and non-white REO properties," which demonstrated Plaintiffs' "clear knowledge of their FHA claims back in 2011"). However, Plaintiffs did not file an administrative complaint against Deutsche Bank with HUD until February 26, 2014 and did not add Ocwen as a respondent until February 14, 2017. Based on the FHA's statute of limitations and tolling period, the Court found that Plaintiffs' "actionable allegations window dates … to February 14, 2015, for Ocwen," two years before Ocwen was added to the HUD proceeding. *See id.*; *NFHA* II, 2019 WL 5963633, at *11-12.

3

Mr. Erbey left Ocwen in January 2015. William Erbey Decl. ¶ 2 (Ex. A hereto).[1] As a result, Mr. Erbey had no involvement with Ocwen during Plaintiffs' "actionable allegations window" against Ocwen, which begins in February 2015.

### ARGUMENT

Rule 26 authorizes courts "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1), and to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient [or] less burdensome[.]" Fed. R. Civ. P. 26(b)(2)(C). The concerns underlying Rule 26(c)(1) and (b)(2)(C) are particularly acute when a party seeks to depose a high-ranking corporate executive, often called an "apex" deposition. "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007); *accord Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 2015 WL 12803579, at *2 (D. Minn. Apr. 7, 2015); *Celorio v. Google, Inc.*, 2012 WL 12861605, at *2 (N.D. Fla. Nov. 19, 2012).

Courts in the Northern District of Illinois have held that they "may protect high-level executives from being deposed when *any* of four circumstances exist: (1) the official has 'no unique personal knowledge of the matter in dispute'; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the officer's other duties." *Lee v. City of Chicago*, 2021 WL 2399999, at *3 (N.D. Ill. June 11, 2021); *accord DeLeon-Reyes v. Guevara*, 2021 WL 3109662, at *3 (N.D. Ill.

---

[1] Plaintiffs note that Mr. Erbey left the United States after 2015 and obtained Maltese citizenship (Pls. Mot. ¶ 2), but Mr. Erbey is still a citizen of the United States as well. Erbey Decl. ¶ 1.

4

July 22, 2011); *City of Rockford v. Mallinckrodt Ard, Inc.*, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020); *Little v. JB Pritzker for Governor*, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020).

Plaintiffs argue that the standard for apex depositions requires a balancing of the value of the discovery sought and the burden involved, citing *City of Rockford*, 2020 WL 1675593, at *2. Pls. Mot. ¶ 13. But *City of Rockford* went on to explain that courts in this District have applied the "four-part checklist" described above when performing that balancing. 2020 WL 1675593, at *2. Plaintiffs largely ignore the "four-part checklist," and relegate the "unique personal knowledge" requirement to a footnote. Pls. Mot. ¶ 13 n.3.

Here, that four-part checklist readily shows that the Court should deny Plaintiffs' Motion to Compel because Mr. Erbey has no unique personal knowledge of the matters in dispute. Plaintiffs can also obtain the information they seek through other, less burdensome methods. And although Plaintiffs suggest otherwise, the apex doctrine applies equally to former executives, particularly where Mr. Erbey's deposition would impose a significant, undue burden.

**I.      Mr. Erbey Has No Unique Personal Knowledge Relevant To Plaintiffs' Claims.**

As the court recently explained in *Lee*, "[c]ourts have not hesitated to block efforts to depose high-ranking officials where … the officials do not have unique personal knowledge of the facts underlying the events that lead to the lawsuit in question." 2021 WL 2399999, at *3. As a result, it is well settled that a high-ranking executive's "mere knowledge of events is not sufficient to require a deposition: the officer must have 'unique' personal knowledge." *Little*, 2020 WL 868528, at *2; *see In re Yasmin & Yaz Prods. Liab. Litig.*, 2011 WL 3759699, at *2 (S.D. Ill. Aug. 18, 2011) ("districts courts may preclude the depositions of high-ranking executives if the witness does not possess unique or specialized knowledge relevant to the litigation"). Plaintiffs' Motion to Compel should be denied for this reason alone.

### A. Mr. Erbey Was Not At Ocwen During The Relevant Time Period In This Litigation.

Mr. Erbey's declaration confirms that he has no unique personal knowledge relevant to Plaintiffs' claims in this litigation. Mr. Erbey served as Ocwen's Executive Chairman until January 16, 2015. Erbey Decl. ¶ 2. Mr. Erbey therefore left the company before February 14, 2015, the start of Plaintiffs' "actionable allegations window" against Ocwen. *See NFHA I*, 2018 WL 6045216, at *4.[2] The fact that Mr. Erbey left Ocwen before the time period relevant to this litigation renders the testimony sought by Plaintiffs irrelevant.

### B. Mr. Erbey Has No Unique Knowledge Relevant To Plaintiffs' Claims.

Even assuming that Mr. Erbey was at Ocwen during the post-February 2015 time period relevant to this litigation—which he was not—he still has no unique personal knowledge relevant to Plaintiffs' claims of purported discriminatory practices in preservation, marketing, and sale of REO properties held in trust by Deutsche Bank.

#### 1. REO Servicing

As Executive Chairman of Ocwen, Mr. Erbey was not personally involved in servicing REO properties, which made up only a small part of Ocwen's overall servicing portfolio. Erbey Decl. ¶¶ 4-5. In fact, most of the properties serviced by Ocwen were not REO properties at all, let alone REO properties held in trust by Deutsche Bank. *Id.* ¶ 4.

Even for the small sliver of Ocwen's servicing portfolio that involved REO properties, employees who were several levels below Mr. Erbey handled the servicing of the REO portfolio.

---

[2] In *NFHA II*, the Court acknowledged that evidence pre-dating February 14, 2015 might be relevant to showing discriminatory intent for actions that occurred after February 14, 2015. 2019 WL 5963633, at *12. But that is not the case here. Plaintiffs argue that if Ocwen had falsely certified compliance with Deutsche Bank servicing standards, that might provide "a potential basis for an inference of discriminatory intent." Pls. Mot. ¶ 17. But Plaintiffs never explain how a false certification would show intentional discrimination based on race.

Erbey Decl. ¶ 5. As Mr. Erbey attests in the attached declaration, he was not personally involved in creating, interpreting, or enforcing Ocwen's *policies and procedures* related to the servicing of REO properties, nor was he involved in the day-to-day operations of how Ocwen employees *actually* worked in practice to maintain, market, or sell REO properties. *Id.* He also does not have any knowledge concerning particular policies and procedures used by Ocwen with respect to REO properties. *Id.* A deposition will be a waste of everyone's time and resources. *See, e.g., Celorio*, 2012 WL 12861605, at *2 (finding that depositions of corporate executives would have been "a complete waste of time" because they lacked relevant personal knowledge).

### 2. Pooling And Servicing Agreement Certifications

As noted above, Plaintiffs claim that the "primary reason" they are seeking to depose Mr. Erbey is that he signed certifications in 2013 and 2014 attesting to Ocwen's compliance with Deutsche Bank (the trustee)'s PSAs. Pls. Mot. ¶¶ 3, 8, 15-18. Despite being the purported primary reason for bringing their motion, Plaintiffs did not attach any certifications to their motion.[3] Tellingly, Plaintiffs overstate both the relevance and contents of the certifications.

First, as to relevance, the certifications signed by Mr. Erbey are from 2013 and 2014. As noted above, this time period is irrelevant to Plaintiffs' claims against Ocwen. And even if the certifications were from the applicable period (which they are not), the certifications still are not relevant. The certifications are Ocwen's annual statements confirming its compliance with voluminous PSAs on a wide variety of topics related to servicing a large number of properties, only a very small percentage of which relate in any way to REO properties. Indeed, Plaintiffs could only point to one section within a several-hundred-page example PSA with any relevance to

---

[3] Plaintiffs say that they did not attach the certifications because Deutsche Bank marked them as confidential (Pls. Mot. ¶ 15 n.4), but Plaintiffs certainly could have attached them and filed them under seal.

REOs. Pls. Mot. ¶ 15 & Ex. I (attaching 3 pages of a 227-page PSA). The example section states that Ocwen:

> shall manage, conserve, protect and operate each REO Property for the Trustee solely for the purpose of its prompt disposition and sale. [Ocwen], either itself or through an agent selected by [Ocwen] shall manage, conserve, protect and operate the REO Property in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed.

*Id.* Ex. I at 119. This is a generic standard, and Mr. Erbey has no specific, particular knowledge as to how Ocwen "manage[d], conserve[d], protect[ed], and operate[d] the REO Propert[ies]" that it serviced as part of the Deutsche Bank PSAs or any other portfolio. Erbey Decl. ¶ 5.

Second, as to content of the certifications themselves, the certifications do not show that Mr. Erbey has unique personal knowledge of Ocwen's servicing of REO properties or the certification process itself. Indeed, they show the opposite. For example, all certifications are co-signed by a second executive at Ocwen, so Mr. Erbey certainly does not have unique knowledge. Example Certification (Ex. B, filed under seal). That is a fact Plaintiffs omitted from their Motion to Compel.

In addition, the generic content of the certifications is limited and does not suggest that Mr. Erbey has any unique knowledge. The certifications simply state:



8

Ex. B. Mr. Erbey did not perform the review of Ocwen's servicing activities himself to determine that Ocwen complied in "all material respects," nor did he dictate how those reviews were performed. Erbey Decl. ¶ 7. Instead, Ocwen hired third-party auditors to conduct this review, and to the best of Mr. Erbey's knowledge, those auditors conducted their work pursuant to the Uniform Single Attestation Program for Mortgage Bankers and/or in accordance with Regulation AB requirements. *Id.* Mr. Erbey relied on the third-party auditors to identify any material instances of noncompliance, and he then co-signed the certifications on behalf of Ocwen, stating simply that the review was performed "under [his] supervision" and that Ocwen had materially fulfilled its servicing obligations "[t]o the best of the undersigned Officer's knowledge." *Id.*

Mr. Erbey's high-level supervision of the certification process performed by third-party auditors does not mean that he has "unique personal knowledge." For example, in *Select Comfort*, the court rejected an attempt to depose a CEO concerning the CEO's comments on investor calls because comments were "heavily scripted," were "based on information that was provided to [the CEO] by her staff," and the CEO "did not research or draft … responses, but rather relied on analysis" prepared by others. 2015 WL 12803579, at *2-3; *accord Symantec Corp. v. Zscaler, Inc.*, 2019 WL 8331428, at *1 (N.D. Cal. Sept. 19, 2019) (rejecting attempt to depose CEO concerning CEO's comments on earnings call because "any number of people could testify to" the same thing). As in *Select Comfort*, Mr. Erbey lacks unique personal knowledge and merely co-signed certifications based on information provided by others, Ocwen's third-party auditors.

Similarly, in *Murillo v. Kohl's Corp*, the court rejected an attempt to depose a corporate executive based on her "overall role in overseeing" certain functions where the plaintiffs presented no basis to conclude that she had specialized or unique knowledge. 2016 WL 6090862, at *3 (E.D. Wisc. Oct. 18, 2016). The same is true here. Mr. Erbey has no specialized or unique knowledge

9

concerning the details of how the third-party auditors performed their reviews. Yet, that is the type of information Plaintiffs claim to seek from Mr. Erbey. Plaintiffs indicate that they intend to ask Mr. Erbey for details on what properties were reviewed, what standards were applied, where properties were located, and the scope of the review. Pls. Mot. ¶ 17. Mr. Erbey does not know the answer to those questions. Erbey Decl. ¶ 7. As a result, the deposition of Mr. Erbey also would be futile. *See, e.g., Celorio*, 2012 WL 12861605, at *2.

### 3. Other Topics

Plaintiffs also claim that Mr. Erbey has "highly significant personal knowledge" relevant to other topics. Pls. Mot. ¶ 19. But Mr. Erbey does not have unique personal knowledge of any of these remaining issues. For example, Plaintiffs suggest—without any support—that Mr. Erbey was a "hands-on executive" who had the "last word" on many decisions. *Id.* Plaintiffs do not identify any particular decisions made by Mr. Erbey, and even then, Plaintiffs' unsupported assertion that Mr. Erbey had the "last word" implicitly concedes that others within Ocwen were also involved. Indeed, every executive at the highest level of the corporate hierarchy theoretically has the "last word" on a host of decisions; that alone cannot be enough to justify burdening an Executive Chairman with an apex deposition.

Moreover, Plaintiffs cite generic public statements by Mr. Erbey regarding the effectiveness and efficiency of Ocwen's data systems and imply that its 2014 Consent Order with the New York Department of Financial Services ("2014 Consent Order") allegedly later proved those statements wrong. Pls. Mot. ¶ 19 & Ex. B. This is another red herring. The 2014 Consent Order primarily related to foreclosure-related processes and data issues (*see, e.g., id.* Ex. B ¶¶ 2-3, 7-8, 12, 14), neither of which is relevant to this case involving the post-2015 preservation, maintenance, and marketing of REO properties (which exist post-foreclosure). Contrary to

Plaintiffs' insinuation, the way in which Ocwen maintained REO data was not at issue in the 2014 Consent Order. In any event, Mr. Erbey does not have unique knowledge of Ocwen's data systems, as there are many IT professionals at Ocwen, most of whom have much more detailed knowledge on its systems over time. This fact also serves a fatal blow to Plaintiffs' Motion to Compel. *See, e.g., Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at \*16 (N.D. Cal. May 9, 2011) ("The mere fact that [a CEO] made public statements, even on issues that [plaintiff] considers relevant to its claims, [is] insufficient to justify his deposition. Courts have repeatedly denied apex depositions even on a showing that the executive made public statements on relevant issues.").

Finally, Plaintiffs note that Ocwen did not have written policies and procedures about the oversight of REO properties when Mr. Erbey served as Executive Chairman and, as a result, Mr. Erbey's testimony on those subjects is purportedly "especially relevant." Pls. Mot. ¶ 19. As noted above, not only is this pre-2015 time period irrelevant to the lawsuit, but also Mr. Erbey does not have any knowledge concerning the particular policies and procedures used by Ocwen with respect to day-to-day work on REO properties at any time, much less when he was a high-level executive at the company. Erbey Decl. ¶ 5. As a result, any attempted deposition on that subject would be pointless. *See, e.g., Celorio*, 2012 WL 12861605, at \*2.

II. **Plaintiffs Can Obtain Information Through Other Discovery Methods.**

An "apex" deposition of Mr. Erbey also is not appropriate for a second, independent reason: Plaintiffs can obtain the information they claim to seek from Mr. Erbey through other, less burdensome discovery methods.

As noted above, Plaintiffs have served over one hundred requests for production and sixteen interrogatory questions on Ocwen, and took Ocwen's Rule 30(b)(6) deposition on numerous topics over the course of seven days. Following the deposition, Plaintiffs *never* followed up to say that they believed the deposition was insufficient to address any topics, much less the

11

certification process which Plaintiffs now contend is a primary reason why they want to depose Mr. Erbey. Pls. Mot. ¶ 15. Yet, in their Motion to Compel, Plaintiffs now say that they need to depose Mr. Erbey because Ocwen's 30(b)(6) representative did not know the process used to prepare the certifications attesting to Ocwen's compliance with Deutsche Bank servicing standards. *Id*. ¶¶ 18, 21.

If Plaintiffs are interested in learning more about the certification process (even though it is irrelevant, as shown above), Ocwen would agree to provide a written, sworn response explaining the compliance reviews performed by its third-party auditors. The parties could discuss the parameters of that written response so that Plaintiffs could meet their objectives (*e.g.*, understanding the scope of the review, etc.), to the extent such information is available. Pls. Mot. ¶ 17. After reviewing the written response, if Plaintiffs still believe that they require additional information, the parties can meet and confer to evaluate what, if any, additional discovery on the certification process might be appropriate, apart from any deposition of Mr. Erbey. Mr. Erbey will not know the answers to those questions, in any event. Erbey Decl. ¶ 7.

Plaintiffs also could use the various other discovery tools available to them (interrogatories, other fact witness depositions, etc.), if they have other questions which remain unanswered following the seven days of Rule 30(b)(6) depositions. Deposing Mr. Erbey is not the answer.

### III. Mr. Erbey Would Be Significantly Burdened By the Deposition.

The third, independent reason why Plaintiffs' Motion to Compel should be denied is that Mr. Erbey's deposition would be burdensome. Mr. Erbey has not been involved in the company for more than six years. Mr. Erbey is currently the Chairman of System73, a holding company for five technology-related companies in the areas of internet streaming, education, and electric motors. Erbey Decl. ¶ 3. He also works with, and invests in, The Strataca Group, a company that

12

designs medical devices to reduce Cardiorenal syndrome deaths. *Id.* He currently spends approximately 60 hours per week in his various positions, and his business ventures are extremely busy, leaving him with little free time. *Id.*

Plaintiffs' only justification for the burden on Mr. Erbey is that he no longer serves as an Ocwen executive. Pls. Mot. ¶ 20. It is "well settled," however, that "'[t]he apex doctrine is no less applicable to former officials than to current officials.'" *Lee*, 2021 WL 2399999, at *3 (collecting cases); *see Moyle v. Liberty Mut. Retirement Ben. Plan*, 2012 WL 5373421, at *3 (S.D. Cal. Oct. 30, 2012) ("Former executives … are within the scope of the apex doctrine."); *Sargent v. City of Seattle*, 2013 WL 1898213, at *3 n.2 (W.D. Wash. May 7, 2013) ("Courts have extended the [apex] rule to cover depositions of former high-ranking officials.").

Based on Plaintiffs' motion, it appears that Plaintiffs simply seek to harass Mr. Erbey, including with respect to the circumstances of his resignation from Ocwen and the 2014 Consent Order with New York regulators. Pls. Mot. ¶ 2. But the terms of the 2014 Consent Order speak for themselves. And Plaintiffs do not identify any relevant questions that they seek to ask Mr. Erbey concerning the 2014 Consent Order. *Id.* ¶ 19.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel the Deposition of William Erbey.

Dated: September 23, 2021

Respectfully submitted,

By: /s/ Debra Bogo-Ernst
Debra Bogo-Ernst
Matthew Sostrin
Jacey Norris
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600

*Counsel for Ocwen Loan Servicing, LLC and Third Party William Erbey*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on September 23, 2021.

/s/ Debra Bogo-Ernst