**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, et al., | Case No. 18 CV 839 |
| Plaintiffs, | |
| v. | Judge Harry D. Leinenweber |
| | Magistrate Judge Sidney I. Schenkier |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., | Jury Trial Demanded |
| Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL
THE DEPOSITION OF WILLIAM ERBEY**

**Introduction**

Most persons who receive a subpoena to testify by deposition would probably prefer not to appear and would rather write a short declaration excusing themselves from giving testimony because it is inconvenient, and they believe that what they know is unimportant. However, that is not how the process of litigation under the Federal Rules of Civil Procedure works: the knowledge of witnesses is explored and tested under direct questioning and the determination as to the relevance and admissibility of what a witness knows (or does not know) is a matter that is decided by the Court.

Here, Plaintiffs seek to take the deposition of Mr. William Erbey, a witness represented by Defendant Ocwen's counsel, who Plaintiffs reasonably believe has relevant information relating to their claims. Plaintiffs have attempted to obtain such information from Ocwen through other means and offered to accommodate the witness by proposing that the deposition be conducted virtually, be limited in duration, and avoid subjects that the parties agree are

1

irrelevant. Mr. Erbey nonetheless refuses to appear for his deposition, and as discussed below, the various reasons offered for his refusal are insufficient.

In this reply brief, Plaintiffs first respond to the incomplete description of the so-called Apex doctrine presented by Mr. Erbey and Ocwen. Plaintiffs then respond to each of the contentions of Mr. Erbey and Ocwen in the order they are presented.

**A.     The Apex Doctrine is an Extraordinary Exception to a Party's Right to Proceed with the Discovery That it Believes is Necessary**

The following principles relating to the apex doctrine are relevant to this motion. First, the apex doctrine is not present in the Federal Rules of Civil Procedure, and appellate courts, including the Seventh Circuit, have not endorsed any specific list of requirements for its application. *See City of Rockford v. Mallinkrodt ARD, Inc., 2020 WL 1675593* at *2 (N.D. Ill. Apr. 6, 2020), *citing Patterson v. Avery Dennison*, 281 F.3d 676, 682 (7ᵗʰ Cir. 2002) *; VanMeter v Briggs*, 2019 WL 6311176 at *5 (D. New Mex. Nov. 25, 2019).

Second, "the apex deposition principle is not an automatic bar that Plaintiffs must overcome by a showing of good cause." *In Re Nat'l Western Life Ins. Deferred Annuities Litig.*, 2011 WL 1304587 at *4 n.2 (S.D. Cal. Apr. 6, 2011). Rather it is "selectively employed on a case-by-case basis when deemed appropriate." *Id.* The apex doctrine is not "an ironclad rule," Wright & Miller, *Federal Practice and Procedure*, Sect. 2036 n. 7 (3d ed. 2010), and the burden related to its application is supplied by the general rule that a party who seeks to avoid discovery "bears the burden of showing that good cause exists to prevent the discovery." *Dyson, Inc. v. Sharkninja Operating LLC*, 2016 WL 1613489 at *1 (E.D. N.C. April 22, 2016).

Third, different courts have given different formulations to the apex doctrine and phrases like "unique" knowledge or "less burdensome discovery means" referenced by some courts are not talismans. *See e.g., In re Tylenol Marketing, Sales Practices and Products Liability*

2

*Litigation*, 2014 WL 3035791 at *3 (E.D. Pa. July 1, 2014)(personal, superior or unique knowledge of executive together with availability of less burdensome discovery methods); *VanMeter v Briggs*, 2019 WL 6311176 at *5 (D. New Mex. Nov. 25, 2019)(factors include "severe hardship" in performing official duties); *Serrano v. Cintas Corporation*, 699 F.3d 884, 901-902 (6th Cir. 2012)(reversing order under Apex doctrine when Magistrate Judge failed to analyze purported burden); *In re Lincoln National Life COI Litigation*, 2019 WL 7581176 at *1 (E.D. Pa. Dec. 5, 2019)(unique or special knowledge and unavailability of information from other sources); *In re Valeant Pharmaceuticals International, Inc. Securities Litigation*, 2021 WL 3140030 at *3 (July 7, 2021)(no first hand personal knowledge); *Zimmerman v. Al Jazeera America, LLC*, 329 F.R.D. 1 (D.D.C. 2018)(questioning application of doctrine to corporate executives and limiting potential application to witnesses lacking relevant knowledge that cannot be obtained from other sources). Ultimately, the determination of whether the apex doctrine applies requires balancing competing interests between allowing discovery and avoiding undue burden. *See City of Rockford v. Mallinkrodt ARD, Inc., 2020 WL 1675593* at *2 (N.D. Ill. Apr. 6, 2020)(balancing of competing interests between allowing discovery and avoiding undue burden); *Gonzalez v. Woodward Governor Company*, 2005 WL 8179367 at * 2 (N.D. Ill. Aug. 17, 2005)(balancing of interests performed by Court).

Fourth, contrary to Ocwen and Mr. Erbey's assertion, it is *not* settled that the Apex doctrine applies to former executives, and numerous courts have found that the doctrine does not apply in such circumstances or merits less weight. *See e.g., See City of Rockford v. Mallinkrodt ARD, Inc., 2020 WL 1675593* at *4 (N.D. Ill. Apr. 6, 2020)(citing caselaw indicating that status as former executive militates against application of Apex doctrine); *LivePerson, Inc. v [24]7.AI, Inc.*, 2018 WL 1319424 at *2 (N.D. Cal. March 14, 2018)("the Court does not find the apex

doctrine determinative because Mr. Murphy is no longer employed by LivePerson); *Van Den Eng v. The Coleman Company, Inc.*, 2005 WL 3776352 at *2 (D. Kan. Oct. 21, 2005)(former corporate executive has no corporate responsibilities with which to interfere, militating against application of apex doctrine); *In re Lincoln National Life COI Litigation*, 2019 WL 7581176 at *2 (noting significance that proposed deponent was former executive in reviewing case law); *Raymond v. Spirit Aerosystems Holdings, Inc.*, 2021 WL 1238269 at *5 (D. Kan. Apr. 2, 2021)(denying motion to quash and noting case law declining to apply apex doctrine where former executive involved).

Fifth, the assertion of a witness that he has no personal knowledge relating to a subject does not preclude the taking of the deposition of the witness – rather, as a general rule, a party seeking discovery may test the claim of a witness that the witness lacks knowledge. *See e.g., Apple Inc. v. Samsung Electronics Co., Ltd.,* 282 F.R.D. 259, 263 (N.D. Cal. Apr. 4, 2012); *Johnson v. Jung*, 242 F.R.D. 481, 484 (N.D. Ill. 2007); *Van Den Eng v. The Coleman Company, Inc.*, 2005 WL 3776352 at *3.

**B.      Plaintiffs Attempted to Obtain Information Through Other Means**

Turning to Ocwen and Mr. Erbey's arguments on the facts, their brief goes to great lengths to complain that Plaintiffs should have pursued other discovery methods to obtain the information they are seeking rather than attempting to obtain information from Mr. Erbey about such matters as the certifications of compliance with servicing standards that he signed.  (Erbey Br.2-3, 11-12)  According to Ocwen and Mr. Erbey, Plaintiffs just "plowed ahead, attempting to leapfrog to the deposition of Ocwen's former Executive Chairman."  (Erbey Br. 2) This argument conveniently ignores how Plaintiffs actually proceeded.

4

On January 4, 2021, Plaintiffs served a Notice to Ocwen for its Rule 30(b)(6) Deposition on several subjects. (Ex. A, Ocwen Rule 30(b)(6) Notice, Subject No. 4) This Notice specifically sought testimony regarding "review of servicing agreements concerning investor compliance, requirements and provisions of PSAs, *certifications of compliance with PSAs or other trust instruments encompassing the Deutsche Bank REO properties*, and Ocwen's oversight of these subjects." The certifications signed by Mr. Erbey were tendered to counsel for Ocwen as exhibits well in advance of the deposition. At the deposition, Ocwen failed to produce a witness with any knowledge regarding the certifications or the process by which they were prepared. The corporate designee testified that he did not know how the certifications were prepared, did not know if there were meetings about their preparation, did not know if there was a policy about how they were prepared, did not know what documents the certifications were based upon, and did not mention the involvement of any unidentified third-party auditors (who Mr. Erbey now asserts may have been involved). (Ex. B, Testimony of Ocwen Corporate Designee, pp. 121, 123, 124)

Mr. Erbey and Ocwen go on to argue that Plaintiffs should have served interrogatories or document requests regarding the certifications and other subjects that Plaintiffs seek testimony about from Mr. Erbey. (Erbey Br. 3, 11-12) In this regard, it should be noted that Plaintiffs' Second Request for Production of Documents specifically sought production of all documents in which Defendants had certified compliance with the terms of relevant Pooling and Servicing Agreements, but Ocwen objected to and has failed to this date to produce the certifications. Ex. C, Ocwen Response to Plaintiffs' Second Request for Production of Documents, No. 2. (The certifications were ultimately obtained from the Deutsche Bank Defendants). Plaintiffs reasonably viewed Ocwen's refusal to even produce the certifications as boding poorly for

attempting to obtain information regarding their preparation or content through written discovery methods.

Faced with the testimony of Ocwen's Rule 30(b)(6) designee, the failure of Ocwen to provide an additional witness or supplemental information regarding the certifications, and the objections of Ocwen to even producing the written certifications, Plaintiffs' decision to proceed by deposition was warranted.

## C. The Limitations Period in the Case Provides No Grounds for Excusing Mr. Erbey's Testimony

Mr. Erbey and Ocwen next argue at pp. 6-7 that he should be excused from testifying because he left his position with the Company in January 2015 as part of the New York State regulatory action taken against Ocwen, and the Court has previously ruled in this case that the actionable period regarding claims against Ocwen dates to February 14, 2015. *Nat'l Fair Housing Alliance v. Deutsche Bank, 2019 WL 5963633 at \*11 -12 (N.D. Ill. November 13, 2019)*. According to Mr. Erbey and Ocwen, this eliminates the need for his testimony regarding the hundreds of certifications of compliance with servicing standards that he signed in 2014 and earlier years. This argument falls flat for two reasons.

First, under the Court's ruling, the statute of limitations relating to the claims against the Deutsche Bank Defendants dates to February 26, 2012. *Id.* As such, Mr. Erbey's representations regarding the fulfillment of Ocwen's obligations as to conserving, protecting, and operating the Deutsche Bank REO properties and complying with applicable laws during the period prior to his departure remain relevant. If Ocwen actually managed the REO properties in accord with the Servicing Agreements and the applicable law during this period, and the certifications reflected a meaningful review of that conduct, it might bear on Deutsche Bank's defenses.

6

Second, in its ruling, the Court specifically held that "while the time-barred conduct itself is not actionable, Plaintiffs' may use Defendants' activity outside the limitations period as evidence of the discriminatory intent for actions that occurred within the limitations period." *Id.* at *12. Here, the circumstances in which Mr. Erbey signed the certifications of compliance in 2014 and earlier years include NFHA's highly publicized reports beginning in 2011 that servicing activities regarding REO properties were having serious discriminatory effects on minority communities. If false or recklessly prepared, Ocwen's certifications of its compliance with servicing standards and applicable laws during this period, in the wake of information raising issues of discrimination against minority communities, would be a potential basis for inferring discriminatory intent in later periods. *See Perdomo v. Browner*, 67 F.3d 140, 144-5 (7th Cir. 1995)(false statements as evidence of discriminatory conduct). Under the Court's ruling, such evidence would be admissible against Ocwen regarding Plaintiffs' claims even if it occurred during the period immediately preceding the actionable limitations period determined by the Court. *Nat'l Fair Housing Alliance v. Deutsche Bank*, 2019 WL 5963633 at *11-12.

**D.      The Testimony Plaintiffs Seek from Mr. Erbey is Highly Relevant and Appropriate**

Citing Mr. Erbey's declaration, Mr. Erbey and Ocwen next argue that he lacks knowledge that would warrant his appearance at a deposition. Mr. Erbey and Ocwen's contentions are inaccurate and appear inconsistent with facts related to his role with Ocwen and matters relating to this case. Plaintiffs address below the various arguments raised in Mr. Erbey and Ocwen's brief at pp. 6 -11.

1.      Mr. Erbey's Claims About His Personal Involvement with Servicing Activities and the Scope of Ocwen's Activities Regarding REO Properties Appear Disingenuous.

Mr. Erbey first attempts to downplay the significance of servicing REO properties to Ocwen's business, with the suggested inference being that as Chief Executive, the subject of

7

servicing REO properties amounting to "a small sliver" of Ocwen's servicing portfolio would be unworthy of his attention. (Erbey Br. 6-7). This attempt to characterize Ocwen's responsibilities for REO properties as insignificant is dubious. Under the hundreds of PSA agreements under which Ocwen acted as servicer, each of which contained massive numbers of loans, Ocwen was obligated to service all the properties that went into foreclosure and became REO properties. See e.g., Pls. Mot., Ex. I. Considering the overall number of loans serviced by Ocwen, which according to the CFPB amounted to over 1,400,000 loans with an unpaid balance of approximately $209 billion in 2016 and the soaring foreclosure rate during and after the Great Recesssion, the servicing of REO properties, (whether Ocwen liked it or not), was a front-burner corporate issue. *See CFBB v. Ocwen Financial Corp.*, Case No. 9:17-CV-80495 (S.D. Fla. April 20, 2017, Dkt. No. 1, Par. 25).

Mr. Erbey's self-serving assertions about his lack of personal knowledge or involvement with the Company's policies and activities regarding servicing and REO properties also call out to be tested at a deposition. Plaintiffs' initial brief cited a sampling of statements by Mr. Erbey claiming extensive knowledge regarding company activities and noted that provisions of the 2014 Consent Order resulting in his termination were highly indicative of a hands-on executive. (Pl. Mot. at 7-8) To this day, Mr. Erbey takes personal credit for numerous Ocwen actions purportedly benefitting homeowners. For example, Mr. Erbey's current website makes the following assertions: "Bill invented the mortgage modification wherein homeowners would be offered lower interest and principal payments whilst also providing a higher net present value to the investor than foreclosure"; "Bill utilized multivariate optimization to develop solutions that saved 850,000 families from losing their homes;" "Bill sought to make the solution [to foreclosure] a win win for both homeowners and mortgage investors." (Ex. D, excerpts from

8

Erbey Website)  While Plaintiffs question the veracity of these claims considering the multitude

of regulatory actions against Ocwen resulting in billions of dollars of penalties and culminating

in Mr. Erbey's forced departure,[1] the point here is that the circumstances do not support

requiring Plaintiffs to accept vague and unsubstantiated assertions by Mr. Erbey about his lack of

knowledge regarding servicing activities.

    2.  <u>Mr. Erbey Should Be Required to Testify Regarding the Certifications He Signed</u>

Mr. Erby and Ocwen next make various arguments to the effect that the substance of the

certifications of compliance with servicing standards signed by Mr. Erbey are not topics that he

should be required to testify about.  None of these arguments is persuasive.

First, Mr. Erbey complains that only a few sections of the lengthy PSAs address REO

servicing activities and that, therefore, a certification of compliance with respect to REO

property servicing standards is not "relevant."  (Erbey Br. at 7) The problem with this argument

is that the portion of the PSAs regarding the management, conservation, protection, operation,

and disposition of REO properties (quoted at Erbey Br. 8), addresses the very subjects at issue

here, and unqualified representations as to compliance with servicing standards are accordingly

relevant.   Plaintiffs further note that Mr. Erbey omits to mention the PSA servicing provisions

requiring compliance with federal, state, and local laws, which also fall within the scope of his

certifications, further rendering inquiry into the basis of the certifications relevant.

Second, Mr. Erbey makes a tautological argument that he should not be deposed

regarding the certifications because of the existence of a co-signer on the certifications, rendering

---

[1]See e.g., December 13, 2013 Consent Order Between CFPB, State Attorney Generals and Ocwen, requiring Ocwen to change practices and provide $2 billion in relief to homeowners for systemic misconduct in mortgage servicing process; December 22. 2014  Consent Order Between Ocwen and New York State Department of Financial Services admitting unlawful conduct with regard to servicing activities; March 29, 2019 Ocwen settlement with State of Massachusetts providing relief relating to improper servicing activities affecting tens of thousands of loans.

Mr. Erbey's knowledge no longer "unique." However, this only suggests the possibility that both witnesses will need to be deposed. Besides overreading how courts apply the factor of "unique or superior knowledge" in the context of generally applying the apex doctrine, Mr. Erbey and Ocwen fail to mention that the co-signor was also a high-level officer of the Company, generally the Treasurer or Secretary. Notably, Ocwen has made no suggestion that such individuals would be "better" witnesses regarding the basis for Ocwen's certifications or that Ocwen does not believe that the apex doctrine covers a request for their testimony. As such, any request for the deposition testimony of a signatory of the certifications would apparently fall into the "heads I win, tails you lose," category. As far as Plaintiffs making a choice between Mr. Erbey, whose responsibilities spanned the whole spectrum of the activities of the Company, and the Company's Secretary/Treasurer, whose activities are inherently limited in that position, Plaintiffs believe that the decision to depose Mr. Erbey was reasonable.

Third, contrary to the language of the certifications, Mr. Erbey (vaguely) disclaims having specific knowledge regarding the certifications he signed or the process by which they were produced. The initial problem with Mr. Erbey's claim that he lacks any knowledge is that it does not jibe with the language of the certifications citing the review of servicing performance "under [his] supervision," and the representation that the certification reflects the "best of [his] knowledge." (*See* Ex. B to Erbey Resp., sample certification filed under seal). These statements, unless they are just fatuous, connote some knowledge of pertinent facts.

Mr. Erbey then refers to work being performed by certain unnamed auditors, who are not named in the certifications and were not previously mentioned by the Company's designee during the Rule 30(b)(6) deposition regarding the certifications or by the Company's counsel. Mr. Erbey's attempt to punt to the unnamed auditors raises more questions and red flags than it

answers, and Plaintiffs are entitled to inquire of him about these auditors and exactly what they did to support his certifications. Aside from providing no information regarding the identity of the auditors, the suggestion that the auditors may have conducted whatever work they did "pursuant to the Uniform Single Attestation Program for Mortgage Brokers and/or in accordance with Regulation AB requirements" is not reflected in the unqualified certifications of compliance signed by Mr. Erbey that make no reference to these provisions. Nor is any information provided by Mr. Erbey regarding the review certified by him to have been conducted "under his supervision" in terms of who at the Company was involved, what they did or didn't do, what documents were produced or reviewed by him, or any other pertinent information.

Moreover, at the end of the day, even if after direct and specific questioning regarding the review of servicing standards supervised and certified by Mr. Erbey, the witness maintains a lack of knowledge as to anything substantive related to the review, that denial would in itself be evidence as to the lack of reliability of the review and the Company's disregard and lack of attention to contractual requirements and laws relating to Plaintiffs' claims.

    3. <u>Plaintiffs are Entitled to Mr. Erbey's Testimony Regarding Other Subjects.</u>

Plaintiffs' Motion to Compel identified several other (non-exclusive) topics as to which Plaintiffs seek to depose Mr. Erbey: (a) Ocwen's compliance programs; (b) widespread problems related to Ocwen's admittedly "inadequate" and "ineffective" data systems resulting in numerous and significant violations of the law; (c) Ocwen's lack of written policies and procedures, including the lack of written policies and procedures relating to REO properties; and (d) potential conflicts relating to the duties and financial incentives of Ocwen and Altisource (which was spun off from Ocwen) as they affected the maintenance, marketing and sales of REO

properties.  (Pltf. Motion at 3, 8)  Plaintiffs reply to Ocwen and Mr. Erbey's responses regarding these topics below.

First, as to the Ocwen compliance and data systems that Mr. Erbey repeatedly lauded, but which were later found to be grossly deficient, Mr. Erbey makes two arguments.  First, Mr. Erbey asserts without any real support that widespread admitted deficiencies in Ocwen's REALServicing System (a system which also contained information related to REO properties) did not taint information related to the matters at issue in this case, particularly as to the post-2015 period.   Plaintiffs find these claims uncertain, at best. In a 2017 lawsuit filed by the Consumer Protection Bureau against Ocwen, the Complaint alleges that Ocwen's Chief Executive Officer, Head of Servicing, described Ocwen's technology as an "absolute train wreck" and that Ocwen's former Head of Servicing Compliance testified that "[E]very business unit in the entire organization" lacked sufficient controls to prevent mistakes and to detect when mistakes occurred."  *See CFBB v. Ocwen Financial Corp.*, Case No. 9:17-CV-80495 (S.D. Fla. April 20, 2017, Dkt. No. 1, Pars. 50, 68).  The CFPB Complaint further alleges that in 2016, Ocwen's Chief Information Officer and other personnel performed an architectural assessment of REALServicing and still reported, among other things, that REALServicing had "significant deficiencies represent[ing] significant risk and expense to Ocwen." *Id.* at Par. 57.   Based on these admissions, Plaintiffs believe that the scope of issues related to the REALServicing system is a subject that they are entitled to explore.

Second, Ocwen and Mr. Erbey argue that Mr. Erbey is not an IT professional and, as such, is not an appropriate witness to testify about this subject.  This argument might have some merit if Plaintiffs intended to depose Mr. Erbey about the technical intricacies of the REALServicing, but that is not what Plaintiffs seek to do.  Rather, given Mr. Erbey's statements

12

extolling the virtues of Ocwen's compliance and data systems, and the high-profile nature of issues relating to such systems, Plaintiffs are entitled to Mr. Erbey's more general testimony related to his knowledge concerning the scope of the problems with the system and any potential effects related to this case.

Another area where Plaintiffs seek Mr. Erbey's testimony is Ocwen's failure to have written policies or procedures related to REO properties during the period of Mr. Erbey's tenure. Mr. Erbey's response that he lacks knowledge regarding Ocwen's day to day operations with respect to REO properties (Erbey Decl. Par. 5) misses the point: the reasons for the absence of policies in this area is inherently a topic that implicates high level decisionmakers, and, considering all the regulatory scrutiny and investigations facing Ocwen during this period, this is a reasonable subject for Plaintiffs to take up with Mr. Erbey at his deposition.

Plaintiffs also seek to depose Mr. Erbey regarding the various incentives and effects that the corporate spin-off of Alitsource from Ocwen may have had in connection with the servicing of REO properties. This spinoff had the effect of Ocwen farming out some responsibilities related to servicing functions to Altisource, including property preservation and maintenance, with Altisource remaining a related company subject to Mr. Erbey's influence and control. The transmission of these functions to a related party that acted as a "vendor," but was not a party to the PSA, had significant ramifications for the overall servicing process. The corporate spinoff was undoubtedly a decision taken at the highest level of Ocwen management (Mr. Erbey), and Plaintiffs are entitled to inquire regarding any effects or incentives flowing from the resulting structure that may have impacted property preservation and marketing activities.

**E.    The Deposition of Mr. Erbey Is Not Sought for Purposes of Harassment**

Mr. Erbey and Ocwen claim that his deposition is being sought by Plaintiffs solely to harass him. (Erbey Br. at 1). The facts are all to the contrary. As set out in Plaintiffs' Motion to Compel, Plaintiffs did not seek to depose Mr. Erbey at all until Ocwen's corporate designee was unable to provide any information regarding the certifications signed by Mr. Erbey. At that point, rather than having a process servicer serve a subpoena on Mr. Erbey, Plaintiffs reached out to counsel for Defendants to see if they would be representing Mr. Erbey. After counsel indicated that they did not represent Mr. Erbey, Plaintiffs sought Mr. Erbey's voluntary acceptance of a subpoena for a limited virtual deposition, at which point, counsel for Ocwen informed Plaintiffs that she had been retained to represent him.

Next, at the request of counsel for Ocwen and Mr. Erbey, Plaintiffs participated in discussions regarding the scope and need for Mr. Erbey's deposition. Plaintiffs identified some of the topics that they desired to depose Mr. Erbey about. Plaintiffs also indicated that they were willing to discuss subjects as to which Plaintiffs would not inquire, a significant fact weighing against any claim of harassment.

Plaintiffs remain willing to take a limited, virtual deposition of Mr. Erbey, at a mutually agreeable time. Throughout this process, Plaintiffs have been courteous and sought to accommodate Mr. Erbey, and Plaintiffs' conduct is a far cry from "harassment."

**F.    The Deposition of Mr. Erbey Does Not Work an Undue Burden**

By all accounts, including his own website, "in early 2015, Mr Erbey retired and switched his attention to "angel investing in the tech space." (Ex. D) Plaintiffs acknowledge Mr. Erbey's assertions in his declaration that he continues to be "extremely busy," and has "little free time," although this is probably a claim that most potential witnesses could make.

14

Moreover, whatever burdens this deposition might cause Mr. Erbey would  be substantially alleviated by the fact that his deposition would be taken virtually.  Under all the circumstances, a deposition proceeding for less than one day, taken virtually, is a reasonable burden to impose on a person with Mr. Erbey's lengthy tenure with Ocwen and substantial involvement related to the issues in this case.

### Conclusion

It is impractical, if not impossible, to prejudge arguments about the significance of evidence that may adduced at a deposition in the guise of ruling on a protective order.  *In re Lincoln National Life COI Litigation*, 2019 WL 7581176 at *3.  This is not a situation where the matters as to which testimony is sought "are so obviously trivial or far off (or beneath) the radar screen of a high-ranking executive" as to reasonably infer that the deposition is sought for purposes of harassment.  For the foregoing reasons, Plaintiffs' Motion to Compel Mr. Erbey's deposition should be granted.

Respectfully Submitted,

/s/ *James G. Bradtke*
_____

Jennifer K. Soule
James G. Bradtke
Kelly K. Lambert
Steven P. Schneck
*Soule, Bradtke & Lambert*
402 Campbell Street, Suite 100
Geneva, IL 60134
*Attorneys for Plaintiffs*

Morgan Williams
*National Fair Housing Alliance*
1331 Pennsylvania Ave, NW Suite 650
Washington, DC 20004
*Attorney for Plaintiff NFHA*

Dated: September 30, 2021

Stephen M. Dane
*Dane Law LLC*
312 Louisiana Avenue
Perrysburg, OH 43551
*Attorney for Plaintiffs*

Tara Ramchandani
Rebecca Livengood
Soohyun Choi
Reed Colfax
Yiyang Wu
Lila Miller
*Relman Colfax PLLC*
1225 19th Street, N.W., Suite 600
Washington, DC 20036
*Attorneys for Plaintiffs*