# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, et al., | Case No. 18 CV 839 |
| Plaintiffs, | |
| v. | Judge Harry D. Leinenweber |
| | Magistrate Judge Sidney I. Schenkier |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., | Jury Trial Demanded |
| Defendants. | |

**AMENDED NOTICE TO OCWEN LOAN SERVICING, LLC n/k/a PHH MORTGAGE
CORPORATION OF VIDEOTAPED RULE 30(b)(6) DEPOSITION
BY REMOTE ELECTRONIC MEANS**

**To: Ocwen Loan Servicing, LLC,
     N/k/a PHH Mortgage Corporation**

Debra Bogo-Ernst
*dernst@mayerbrown.com*
Matthew C. Sostrin
*msostrin@mayerbrown.com*
Jacey D. Norris
*jnorris@mayerbrown.com*
*Mayer Brown LLP*
71 S. Wacker Drive
Chicago, IL 60606

*Counsel For Deutsche Bank:*

Kenneth M. Kliebard
*kenneth.kliebard@morganlewis.com*
*Morgan, Lewis & Bockius LLP*
77 W. Wacker Drive, Suite 500
Chicago, IL 60601

David Monteiro
*david.monteiro@morganlewis.com*
Victor Cruz
*victor.cruz@morganlewis.com*
*Morgan, Lewis & Bockius LLP*
1717 Main Street, Suite 3200
Dallas, TX 75201

*Counsel For Altisource Solutions, Inc.:*

Nathan L. Garroway
*Nathan.garroway@dentons.com*
*Dentons US LLP*
303 Peachtree Street, NE, Suite 5300
Atlanta, GA 30308

Lisa M. Krigsten
*lisa.krigsten@dentons.com*
Cody Wood
*cody.n.wood@dentons.com*
*Dentons US LLP*
4520 Main Street, Suite 1100
Kansas City, MO 64111

1

Kevin M. Papay
*kevin.papay@morganlewis.com*
Kurt Rademacher
*kurt.rademacher@morganlewis.com*
*Morgan, Lewis & Bockius LLP*
One Market, Spear Street Tower
San Francisco, CA 94105

Shannon Shin
*shannon.shin@dentons.com*
*Dentons US LLP*
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606

cc: Lexitas – *chicago@lexitaslegal.com*

*Counsel for Plaintiffs:*
Jennifer K. Soule
*JSoule@sbllegal.com*
Kelly K. Lambert
*KLambert@sbllegal.com*
James G. Bradtke
*JBradtke@sbllegal.com*
Steven P. Schneck
*SSchneck@sbllegal.com*
*Soule, Bradtke & Lambert*
402 Campbell Street, Suite 100
Geneva, IL 60101

Yiyang Wu
*ywu@relmanlaw.com*
Tara Ramchandani
*TRamchandani@relmanlaw.com*
*Relman Colfax PLLC*
1225 19th Street, NW, Suite 600
Washington, DC 20036

Stephen M. Dane
*sdane@fairhousinglaw.com*
*Dane Law LLC*
312 Louisiana Avenue
Perrysburg, OH 43551

Morgan Williams
*mwilliams@nationalfairhousing.org*
*National Fair Housing Alliance*
1331 Pennsylvania Avenue NW, Suite 650
Washington, DC 20004

**PLEASE TAKE NOTICE** that pursuant to Fed.R.Civ.P. 30(b)(6), Fed.R.Civ.P., and Fed.R.Civ.P. 30(b)(1) and (4), Plaintiffs, by their counsel, shall take the deposition of Defendant Ocwen Loan Servicing, LLC, n/k/a PHH Mortgage Corporation, on the subject matters listed on the attached **Exhibit A**, on the following dates and times (*Central Standard Time*):

| | |
|---|---|
| January 13, 2021 | 9:00 a.m. |
| January 14, 2021 | 9:00 a.m. |
| January 20, 2021 | 9:00 a.m. |
| January 21, 2021 | 9:00 a.m. |
| February 17, 2021 | 9:00 a.m. |
| February 18, 2021 | 9:00 a.m. |
| March 3, 2021 | 9:00 a.m. |
| March 4, 2021 | 9:00 a.m. |

At the aforesaid dates and times, Defendant shall present via remote means the officer(s), agent(s) or employee(s) who is (are) designated by Defendant to testify about, and who is (are) most knowledgeable about the identified subjects. The order of subjects/testimony as to **Exhibit A** is set forth on the Court-Approved calendar of assigned dates for Ocwen and Altisource, attached as **Exhibit B**, which order of noticed subjects may be modified by agreement of the parties. Said depositions will be recorded by stenographic/audio/video means remotely before a certified court reporter and videographer with Lexitas Court Reporting Services, 180 North LaSalle Street, Chicago, Illinois 60601- (312)-236-6936 via LegalView/Zoom software, The deponent and all parties will be appearing remotely from their

3

own locations. Lexitas Court Reporting Services will email directly each individual listed above

with a calendar invite and information on how to access and participate in the deposition.

Jennifer K. Soule  – JSoule@SBLLegal.com
Soule, Bradtke & Lambert
402 Campbell Street, Suite 100
Geneva, IL 60134
(630) 333-9144

Dated:  January 4, 2021

4

**EXHIBIT A**

**DEFINITIONS AND INSTRUCTIONS**

A.  "Ocwen" refers to Defendant Ocwen Loan Servicing, LLC n/k/a PHH Mortgage Corporation, or any of its successors or predecessors, any of its officials, employees, agents, representatives, contractors, attorneys, and any other persons acting or purporting to act for or on behalf of any of them, separately and collectively, including any, some, or all of the above.

B.  "Plaintiffs" refers to any of the Plaintiffs in the instant litigation, namely National Fair Housing Alliance, HOPE Fair Housing Center, Open Communities, South Suburban Housing Center, Housing Opportunities Made Equal of Virginia, Fair Housing Opportunities of Northwest Ohio, Inc., Fair Housing Continuum, Greater New Orleans Fair Housing Action Center; Denver Metro Fair Housing Center, Metropolitan Milwaukee Fair Housing Council, Fair Housing Center of West Michigan, The Miami Valley Fair Housing Center, Fair Housing Center For Rights & Research, Fair Housing Center of the Greater Palm Beaches, Fair Housing Center of Central Indiana, Central Ohio Fair Housing Association, Housing Opportunities Project for Excellence, Inc., Connecticut Fair Housing Center, North Texas Fair Housing Center, and Fair Housing Advocates of Northern California.

C.  "Employees" means all employees, including officials, managers, professional staff, office or clerical staff, interns, trainees, volunteers, contractors, consultants, agents, and all other persons providing assistance to Ocwen, regardless of whether such persons are considered or classified as an independent contractor or consultant.

D.  "REO" or "REO property" means any residential dwelling owned by a lender or investor, including but not limited to Deutsche Bank National Trust Company or Deutsche Bank Trust Company Americas, as trustee or in any other capacity, after foreclosure.

.

E.   The terms "Deutsche Bank Real Estate Owned properties" or "Deutsche Bank REO properties" mean any residential dwelling owned by Deutsche Bank National Trust Company or Deutsche Bank Trust Company Americas,  as trustee, or in any other capacity, as the result of a foreclosure.

F.   The terms "policy," "practice," and "procedure" refer to any written or formal policy, rule, regulation, guideline, or a practice of general applicability that may or may not have been reduced to writing or otherwise formalized.

G.   <u>Time Period</u>.   Without waiving Plaintiffs' position as to the relevant time period of discovery in this case being January 1, 2010 to present, and without waiving Plaintiffs' ability to seek testimony about Ocwen's policies and procedures and related subjects listed in this Notice for the time period of January 1, 2010 to present, and solely based upon Ocwen's and Altisource's combined disputed current global/general objections concerning the time period applicable to discovery in this case,[1] the time period applicable to this subject matter deposition Notice is January 1, 2010 to present, subject to two conditions:  First, Plaintiffs will first inquire about the listed policy and procedure and related subjects regarding the time period of February 14, 2015 to present.  Secondly, Plaintiffs will ask Ocwen to identify and explain as to each listed

---

[1] Deutsche Bank does not generally object to Plaintiffs' definitional time period of January 1, 2010 to present for discovery in this litigation.  Ocwen objects to discovery in this case except for the period of February 14, 2015 to February 15, 2017 (except Ocwen will state without regard to its time period objection whether it agrees it serviced Plaintiffs' scored Deutsche Bank REO properties, but only if Plaintiffs listed them as of March 3, 2020).  Ocwen will provide property-specific information without regard to its time period objection as to scored Deutsche Bank properties it acknowledges.  Ocwen stated on October 12, 2020 it did not have policies responsive to Plaintiffs' discovery requests prior to February 15, 2015.  Altisource objects to discovery in this case except for the period of February 14, 2015 to present (except Altisource will state without regard to its time period objection whether it agrees it was a vendor for Plaintiffs' scored Deutsche Bank REO properties, but only if Plaintiffs listed them as of March 3, 2020).  Altisource will provide property-specific information concerning properties it acknowledges without regard to its time period objection.  Plaintiffs dispute Ocwen's and Altisource's general objections as to time period and property lists.

6

subject, for the time period of January 1, 2010 through February 14, 2015, material differences, if any, concerning Ocwen's testimony on the subject. If Ocwen objects to providing information on any listed policy and procedure or related subject concerning all or any portion of the 2010-2015 time period, and/or if Ocwen objects to providing information on any listed subject concerning the period of time after its blanket end-date objection (February 14, 2017), it may so indicate at the deposition as to each subject. Testimony restricted by and subject to Ocwen's time period objections may be resumed at a mutually agreeable date and time, following either agreement of the parties or Order of Court.

H.      "And" and "or" mean "and/or" so that the terms are given their broadest possible meaning. In construing a request, the singular shall include the plural and the plural shall include singular. The past tense includes the present and the present tense includes the past, where the clear meaning is not destroyed by the change.

I.      "Relate," "relating to," or "regarding," or "with regard to" shall mean directly or indirectly mentioning or describing, pertaining to, being connected with, reflecting upon, or having any logical or factual connection with a stated subject matter.

## SUBJECTS OF DEPOSITIONS

1.      Policies, Practices and Procedures – Selection, Terms, Contracts with Vendors. Policies, practices or procedures adopted, utilized and/or approved by Ocwen relating to REO properties, including the Deutsche Bank REO properties, and addressing the selection, terms of engagement, contracts, compensation, monitoring, termination, assignment or reassignment of vendors or other third parties engaged by Ocwen regarding preservation, maintenance, valuation, marketing and sales/liquidation of REO properties, including the Deutsche Bank REO properties.

7

2.      <u>Policies, Practices and Procedures – Onboarding and Registering</u>.   Policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding onboarding REO properties into Ocwen's and its Vendors' systems, and registering vacant REO properties based on city, municipal or state requirements, and Ocwen's oversight of these subjects.

3.      <u>Powers of Attorney, Listing Agreements, Deeds, Contracts for Sale.</u>  The policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding:  (a) Document Approvals and Power of Attorney concerning REO properties and Ocwen's appointment as attorney in fact by Deutsche Bank (or any Deutsche Bank designee); (b)  Ocwen appointing "REO vendors" as attorney in fact,  (c) Activities carried out by Ocwen and its vendors pursuant to powers of attorney, (d) deeds and assignments of deeds, (e) listing agreements, (f) contracts for sale, and Ocwen's oversight of these subjects.

4.      <u>Investor Compliance.</u>  The policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding Investor Compliance, including but not limited to the "investor guideline matrix," review of servicing agreements concerning investor compliance, requirements and provisions of PSAs, certifications of compliance with PSAs or other trust instruments encompassing the Deutsche Bank REO properties, and Ocwen's oversight of these subjects.

5.      <u>Policies, Practices and Procedures – Classifications of REO Properties.</u>   Policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding REO properties, including the Deutsche Bank REO properties, involving any practice of classification, grouping or categorization of REO properties relating to (a) locational or geographic area, or (b) valuation or dollar value, or ( c) "status" classifications such as "available status" or "litigation status," and Ocwen's oversight of these subjects.

8

6.      <u>Policies, Practices and Procedures – Approvals and Use of Funds</u>.  Policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding the allocation of funds, approval or rejection of vendor bids, and authorization and use of funds for repair, renovation, preservation, maintenance and marketing of REO properties, including the Deutsche Bank REO properties, and Ocwen's oversight of these subjects.

7.      <u>Policies, Practices and Procedures – Completion, Purposes, Uses of Evaluations, Valuations and BPOs</u>.  Policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding the completion, purposes and uses of property evaluations, valuations, broker price opinions and reconciled broker price opinions or reconciled/reviewed valuations relating to REO properties, including the Deutsche Bank REO properties, and Ocwen's oversight of these subjects.

8.      <u>Policies, Practices and Procedures – Preservation, Maintenance and Inspection</u>. The policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding preservation, maintenance and inspection of REO properties, including the Deutsche Bank REO properties, and Ocwen's oversight of these subjects.

9.      <u>Policies, Practices and Procedures – Marketing/Liquidation</u>.  Policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding marketing, marketing plans, MLS listings, use of local realtors, use of Internet-based systems such as Hubzu, list price determinations, property auctions, disposition and/or liquidation or sale, of REO properties, including the Deutsche Bank REO properties, and Ocwen's oversight of these subjects.

10.     <u>Policies, Practices and Procedures – Complaints, Violations.</u>  Policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding receiving, investigating and/or responding to informal, administrative, and formal complaints regarding the maintenance of

REO properties, including the Deutsche Bank REO properties, impacts of code violations/litigation on the preservation, maintenance and marketing of REO properties, including the funding thereof, and Ocwen's oversight of these subjects.

11.     Exemplar Property Files and Non-Electronic Systems.  The "exemplar" property "image" files produced by Ocwen on September 21, 2020 in response to Plaintiffs' discovery requests and any other non-electronic data records systems used by Ocwen to maintain information regarding preservation, maintenance and marketing of REO properties.

12.     Electronic Records/Data Systems.  Electronic records systems used by Ocwen to maintain information regarding REO properties, including but not limited to the Deutsche Bank REO properties, that were serviced,  maintained or marketed by Ocwen (or by any vendor, contractor or agent acting on Ocwen's behalf), including but not limited to the systems identified by Ocwen in response to Plaintiffs' Interrogatories, and in Oversight documents and reports identified in Ocwen's policies.

13.     Policies, Practices and Procedures – Training of Personnel.  Policies, practices or procedures adopted, utilized and/or approved by Ocwen regarding the training of persons with responsibilities for REO properties or oversight of vendors regarding REO properties, including the Deutsche Bank REO properties.

14.     Policies, Practices and Procedures – Compliance with Federal, State, Local laws.  Policies, practices or procedures adopted, utilized and/or approved by Ocwen to assure that REO properties, serviced or maintained by Ocwen, including the Deutsche Bank REO properties, are maintained or brought into compliance with federal, state or local laws, including but not limited to laws and codes governing health and safety, property preservation or maintenance and fair housing, including training of personnel assigned to oversight of these subjects.

15.  <u>Organization</u>.  The department(s), division(s), or other organizational entities of Ocwen that gather information on, manage, maintain, monitor, or otherwise have had responsibilities with respect to Deutsche Bank REO properties.

16.  Fair housing and/or fair lending assessments conducted by Ocwen related to Ocwen's REO servicing program, including internal assessments and reports to regulators

17.  Reports, analyses or other documents relating to Ocwen's REO preservation or maintenance activities submitted to third parties, including, but not limited to:  the Department of Housing and Urban Development, Congress, the Consumer Financial Protection Bureau, local governmental agencies or officials, other Government agencies, Ocwen's agents, vendors and contractors, and real estate agents and companies involved in marketing and selling REO properties.

## <u>CERTIFICATE OF SERVICE</u>

I, Jennifer K. Soule, one of Plaintiffs' attorneys, certify that on January 4, 2021, I caused a copy of Plaintiffs' Notice to Ocwen Loan Servicing, LLC n/k/a PHH Mortgage Corporation of Videotaped Rule 30(b)(6) Deposition by Remote Electronic Means to be served via electronic mail upon above addressees.


Jennifer K. Soule – JSoule@SBLLegal.com
Soule, Bradtke & Lambert
402 Campbell Street, Suite 100
Geneva, IL 60134
(630) 333-9144

Exhibit B

**DEPOSITION SCHEDULE**

## January

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | **1** | **2** |
| **3** | **4** | **5** | **6** | **7** | **8** | **9** |
| **10** | **11** | **12** | **13** Ocwen: Day 1 [Topics 15, 2, & 3] | **14** Ocwen: Day 2 [Overflow + Topics: 7 & 9] | **15** | **16** |
| **17** | **18** | **19** | **20** Ocwen: Day 3 [Topics 1 & 4] | **21** Ocwen: Day 4 [Overflow + Topics 6 & 13] | **22** | **23** |
| **24** | **25** | **26** | **27** Altisource: Day 1 | **28** Altisource: Day 2 | **29** | **30** |
| **31** | | | | | | |

**2021**

**DEPOSITION SCHEDULE**

## February

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 <br> Altisource: Day 3 | 4 <br> Altisource: Day 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 <br> Ocwen: Day 5 <br> [Topics 8, 10] | 18 <br> Ocwen: Day 6 <br> [Topics 11,12] | 19 | 20 |
| 21 | 22 | 23 | 24 <br> Altisource: Day 5 | 25 <br> Altisource: Day 6 | 26 | 27 |
| 28 | | | | | | |

### 2021

Exhibit B

## March

**DEPOSITION SCHEDULE**

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | **1** | **2** | **3** Ocwen: Day 7 (Subjects 5, 14) t/b/d -and Overflow | **4** Ocwen: Day 8 t/b/d – and Overflow |
| **5** | **6** | **7** | **8** | **9** | **10** Altisource: Day 7 | **11** Altisource: Day 8 |


| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | **1** | **2** | **3** Ocwen: Day 7 (Subjects 5, 14) t/b/d -and Overflow | **4** Ocwen: Day 8 t/b/d – and Overflow | **5** |
| **6** | **7** | **8** | **9** | **10** Altisource: Day 7 | **11** Altisource: Day 8 | **12** |
| **13** | **14** | **15** | **16** | **17** | **18** | **19** |
| **20** | **21** | **22** | **23** | **24** | **25** | **26** |
| **27** | **28** | **29** | **30** | **31** | | |

**2021**

# Exhibit B

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
    NATIONAL FAIR HOUSING          )
 4  ALLIANCE; HOPE FAIR HOUSING    )
    CENTER, et al.,                )
 5                                 )
                                   )
 6                   Plaintiffs,   )
                                   )
 7         vs.                     ) No. 1:18-cv-00839
                                   )
 8  DEUTSCHE BANK NATIONAL         )
    TRUST, as trustee, et al.,     )
 9                                 )
                                   )
10                   Defendants.   )

11

12           The Fed. R. Civ. P. Rule 30(b)(6) deposition

13  on behalf of Ocwen Loan Servicing, Subject 4, called by

14  the Plaintiffs for examination, taken remotely pursuant

15  to notice and pursuant to the Federal Rules of Civil

16  Procedure for the United States District Courts

17  pertaining to the taking of depositions, taken before

18  April M. Metzler, Certified Shorthand Reporter,

19  Registered Merit Reporter, Certified Realtime Reporter,

20  and Notary Public, at West Palm Beach, Florida,

21  commencing at 9:06 a.m. CST on the 17th day of

22  February, 2021.

23

24
```



1      A.    I thought in earlier testimony we saw in one

2  of the pooling and servicing agreements that this was a

3  requirement, but I don't recall specifically.

4      Q.    If we could look back to page -- in

5  Exhibit 8 -- 27604.

6      A.    27604 ...

7      Q.    That would be that Exhibit H with the table.

8      A.    Yes, I see it.  Okay.

9      Q.    Are these the servicing criteria again that

10  need to be complied with that would be subject to the

11  certification letter we're looking at in Exhibit 196?

12      A.    It appears to talk about some of the same

13  characteristics, yes.

14      Q.    And how did Ocwen go about collecting the

15  information to prepare these letters, as we're looking

16  at examples of in Exhibit 196?

17      A.    I do not know.

18      Q.    And I think you've just said a couple of

19  minutes ago that it would have been investor relations

20  that prepared this, or is it at some higher level than

21  that?

22      A.    No.  It's -- I think investor relations

23  prepares it.  And like I said, if I recall, they have

24  some assistance from other folks within the



1   review the activities of the servicer and of the

2   servicer's performance under the related servicing

3   agreements?

4        A.   So, again, this looks like this ties back to

5   the Reg AB testing that's done by the independent third

6   party, which is ultimately then, you know, either

7   identified we're in compliance or instances where we're

8   not in compliant are identified, they're reported

9   through here.

10            And then -- you know, so that's ultimately how

11   the review is completed and the results of that review

12   are shared with Mr. Erbey, and then ultimately he signs.

13        Q.   Are there any meetings or other ways that the

14   duly authorized officer undertakes a review of the

15   activities for the prior calendar year?

16        A.   I do not know.

17        Q.   Is there an Ocwen policy about how these

18   certifications are prepared?

19        A.   I don't know.

20        Q.   If we wanted to see what documents that

21   Mr. Erbey in this case reviewed, in order to make this

22   certification, where would we look?

23        A.   I do not know.

24        Q.   For each of these reviews that's done on an

 1   annual basis, is there a file created or set of

 2   information put together that is presented to, in this

 3   case, the duly authorized officer, in this case,

 4   Mr. Erbey, to review and see, you know, whether -- so

 5   that he can make a determination to sign this?

 6        A.   I don't know.  I don't know.

 7        Q.   Is there a separate certification for each

 8   PSA -- for each individual PSA?

 9        A.   I don't know.  I know that they do Reg AB USAP

10   testing where required, which would, you know, most

11   likely tie to these certificates.  But I don't know if

12   it's done in every case.  I think it's determined by the

13   pooling and servicing agreement itself.

14                    (Stenographer clarification.)

15   BY MS. SOULE:

16        Q.   And with respect to these certifications that

17   we're looking at here, is Ocwen certifying that it was

18   maintaining the Deutsche Bank REO properties according

19   to a particular standard?

20        A.   We're attesting that we're managing the REO

21   properties per the pooling and servicing agreement.

22        Q.   And does every PSA require its own

23   certification?

24        MS. BOGO-ERNST:  Object to form.



# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, et al., | ) | |
| | ) | Case No. 1:18-cv-00839 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Harry D. Leinenweber |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT OCWEN'S OBJECTIONS AND RESPONSE TO PLAINTIFFS' SECOND
REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Ocwen Loan Servicing, LLC n/k/a PHH Mortgage Corporation ("Ocwen"), by and through its attorneys, hereby submits its responses and objections to Plaintiff's Second Request for Production of Documents to Defendant Ocwen Loan Servicing, LLC (the "Requests"). The following responses are provided subject to the "Preliminary Statement," "General Objections," and "Objections to Definitions" set forth fully in Ocwen's June 22, 2020 Objections and Responses to Plaintiffs' First Request for Production of Documents, which Ocwen hereby incorporates by references into each response.

**RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:**

All records containing information regarding the property maintenance and property preservation of any REO properties identified by Plaintiffs in their March 3, 2020 production to Defendants for which you or any vendor or contractor retained by you (or by any vendor or contractor retained by you) have had any responsibilities, including but not limited to property

1

maintenance and repair records, dates of maintenance, services provided, cost of such services, and photographs and images of properties.

**RESPONSE TO REQUEST NO. 1:**

In addition to its General Objections, Ocwen specifically objects to this Request on the ground that the terms "records containing information regarding the property maintenance of property preservation" and "responsibilities" are undefined, vague, and ambiguous. Ocwen also objects to this Request on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of this litigation to the extent that it seeks "all records" without limitation. Ocwen further objects to this request on the grounds that it is overly broad in time, scope, and duration and concerns documents that fall outside the relevant time period for this litigation. Ocwen also objects to this Request to the extent that it seeks Privileged Documents or Information. Ocwen additionally objects to this request to the extent that it seeks confidential business and proprietary information, trade secrets, and other confidential business, financial, or customer information, or otherwise commercially sensitive or commercially competitive information and documents; Ocwen objects to the production or disclosure of any such information and documents prior to the entry of an appropriate protective order.

Subject to and without waiving its objections, Ocwen states that, at this time, it will not produce any documents in response to this request. The parties have not agreed upon the properties at issue in this litigation. Once the parties agree upon the properties, to the extent they exist, are in Ocwen's possession, and are readily retrievable, Ocwen will produce certain non-privileged, property-specific documents related to exterior preservation and maintenance of the properties at issue for the relevant time period of the litigation.

2

**REQUEST NO. 2:**

All documents in which Defendant(s) has(ve) certified that there has been compliance with the terms of any Pooling Service Agreement(s) or other trust instrument(s) applicable to any of the properties (or related mortgages) identified by Plaintiffs in their March 3, 2020 production to Defendants.

**RESPONSE TO REQUEST NO. 2:**

In addition to its General Objections, Ocwen specifically objects to this request on the ground that the terms "certified," "compliance," "terms," "Pooling Service Agreement(s)," and "trust instrument(s)" are undefined, vague, and ambiguous. Ocwen also objects on the ground that this request seeks information that is neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. Ocwen additionally objects to this Request on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of this litigation to the extent that it seeks "all documents" without limitation. Ocwen further objects to this request on the grounds that it is overly broad in time, scope, and duration to the extent that it seeks documents or information that fall outside the relevant time period for this litigation. Ocwen also objects to this request to the extent that it seeks Privileged Documents or Information. Ocwen further objects to this request to the extent that it seeks confidential business and proprietary information, trade secrets, and other confidential business, financial, or customer information, or otherwise commercially sensitive or commercially competitive information and documents; Ocwen objects to the production or disclosure of any such information and documents prior to the entry of an appropriate protective order.

Subject to and without waiving its objections, Ocwen states that, at this time, it will not produce any documents in response to this request.

**REQUEST NO. 3:**

All documents in which Defendant(s) has(ve) certified that there has been compliance with federal, state or local statutes or regulations applicable to any of the properties (or related mortgages) identified by Plaintiffs in their March 3, 2020 production to Defendants.

**RESPONSE TO REQUEST NO. 3:**

In addition to its General Objections, Ocwen specifically objects to this request on the ground that the terms "certified" and "compliance" are undefined, vague, and ambiguous. Ocwen additionally objects to this Request on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of this litigation to the extent that it seeks "all documents" without limitation. Ocwen also objects to this request on the grounds that it is overly broad in time, scope, and duration to the extent that it seeks documents or information that fall outside the relevant time period for this litigation. Ocwen further objects to this request on the grounds that it is duplicative of other requests including Request Nos. 12, 13, and 15 of Plaintiffs' March 6, 2020 Request for Production of Documents. Ocwen additionally objects to this request to the extent that it seeks Privileged Documents or Information. Ocwen also objects to this request to the extent that it seeks confidential business and proprietary information, trade secrets, and other confidential business, financial, or customer information, or otherwise commercially sensitive or commercially competitive information and documents; Ocwen objects to the production or disclosure of any such information and documents prior to the entry of an appropriate protective order.

Subject to and without waiving its objections, Ocwen states that, at this time, it will not produce any documents in response to this request.

Dated: June 29, 2020

Respectfully Submitted,

Ocwen Loan Servicing, LLC, n/k/a PHH Mortgage Corporation

By: /s/ Debra Bogo-Ernst
     One of Its Attorneys

Debra Bogo-Ernst
Matthew Sostrin
Jacey Norris
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
Tel: (312) 701-7403
Fax: (312) 706-8474
dernst@mayerbrown.com
msostrin@mayerbrown.com
jnorris@mayerbrown.com

## CERTIFICATE OF SERVICE

I, Debra Bogo-Ernst, hereby certify that on this 29th day of June, 2020, a copy of the foregoing was sent by electronic mail to following counsel of record:

Jennifer K. Soule
James G. Bradtke
Kelly K. Lambert
*Soule, Bradtke & Lambert*
402 Campbell Street
Suite 100
Geneva, IL 60134

Stephen M. Dane
Yiyang Wu
*Relman, Dane & Colfax PLLC*
1225 19th Street, N.W.
Suite 600
Washington, DC 20036

Morgan Williams
*National Fair Housing Alliance*
1331 Pennsylvania Ave., NW
Suite 650
Washington, DC 20004

Kenneth M. Kliebard
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Telephone: (312) 324-1000

Shannon Y. Shin
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Email: shannon.shin@dentons.com

Lisa Krigsten (admitted *pro hac vice*)
DENTONS US LLP
4520 Main Street
Suite 1100
Kansas City, MO 64111
Telephone: (816) 460-2400
Email: lisa.krigsten@dentons.com

Nathan Garroway (admitted *pro hac vice*)
DENTONS US LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Email: nathan.garroway@dentons.com

/s/ Debra Bogo-Ernst_____
Debra Bogo-Ernst

# Exhibit D

# WILLIAM C. ERBEY (/)

**ABOUT**

# Passion.
# Experience.
# Diligence.



**FOUNDER**

## Bill Erbey

William C. Erbey is a serial entrepreneur having founded 6 multi-billion dollar public companies traded on the NYSE and NASDAQ. In 2013, two of those companies were the 12th and 20th fastest growing companies according to Fortune Magazine. In 2014, Fortune Magazine listed those same two companies as

the 8th and 26th fastest growing companies[.] In early 2015, Mr. Erbey retired and switched his attention to angel investing in the tech space including internet streaming, electric motors and medical devices. He is a graduate of the Harvard Business School with Distinction.

Bill Erbey is a successful serial entrepreneur, investor and a retired public company Chairman/CEO. He is passionate about solving big problems and finding better ways of doing things. Over a period of four decades, Bill founded and scaled up companies in diverse industries, ranging from loan servicing, real estate services, mortgage services to online real estate sales and video broadcasting technology. While the industries Bill has operated in are diverse, the common theme is always about use of innovative technology to serve a large and inefficient market. Bill holds a Bachelor of Arts in Economics from Allegheny College and a Master of Business Administration from Harvard University. ·

Bill started his career with General Electric in 1975, continuing to serve there in various capacities till 1983. In his last role he was the President and Chief Operating Officer of General Electric Mortgage Insurance Corporation. Bill also served as the Program General Manager of GECC's Commercial Financial Services Department and as the President of Acquisition Funding Corporation.

Bill served as a Managing General Partner of The Oxford Financial Group, a private investment partnership from 1983 to 1995. He was the Chief Executive Officer of Ocwen Financial Corporation (NYSE : OCN) a leading sub-prime servicer from 1988 to 2010 and served as the Executive Chairman of its Board of Directors, from 1996 to 2015. Bill has also served as Chairman of the Board of Directors for several other public companies, Altisource Portfolio Solutions S.A. (NASDAQ : ASPS), Home Loan Servicing Solutions,

Ltd.), Front Yard Residential Corporation (NYSE : RESI) and Altisource Asset Management Corporation (NYSE : AAMC).

home (/home-harris) | about (/about-harris) | (https://www.billerbey.com/investments)testimonials (https://www.billerbey.com/testimonials) | news (/news-harris)

# Applying a multidisciplinary approach to innovation and business

William C. Erbey is a serial entrepreneur having founded six multi-billion dollar public companies traded on the NYSE and NASDAQ. In 2013, two of those companies were the 12th and 20th fastest growing companies according to Fortune Magazine. In 2014, Fortune Magazine listed those same two companies as the 8th and 26th fastest growing companies. In early 2015, Mr. Erbey retired and switched his attention to angel investing in the tech space including internet streaming, electric motors and medical devices. He is a graduate of the Harvard Business School with Distinction.

# Areas of Expertise

### MORTGAGE MODIFICATIONS

For more than 30 years, Bill has been a staunch proponent of helping

### INTERNET CONGESTION

With the explosive growth of the internet, congestion is becoming an ever increasing

### HIGHER EDUCATION

Bill and Elaine Erbey believe that a large portion of the population is being priced out of receiving a college

struggling homeowners stay in their homes and avoid foreclosure. In practice, Bill sought to make the solution a win win for both homeowners and mortgage investors. The loss of a home to foreclosure has a devastating effect on the family. Bill invented the mortgage modification wherein homeowners would be offered lower interest and principal payments whilst also providing a higher net present value to the investor than foreclosure. Bill utilized multivariate optimization to develop solutions that saved 850,000 families from losing their homes.

## MEDICAL TECHNOLOGY

8-10% of the world population suffers from Cardiorenal syndrome, i.e. kidney failure. Medicare will spend in excess of $100 billion on treatment but still experience a 50% mortality rate resulting in 12 Americans dying daily. Worldwide 7.5 million people die annually. Bill and Elaine Erbey have invested in their nephew's company - The Strataca Group (https://strataca-systems.com/) – which has developed and patented a

problem. To date, conventional thinking has been to solve congestion through greater hardware investment. Bill conceived and patented a mathematical/software solution to enhance Quality of Experience while utilizing less hardware. Employing Artificial Intelligence to forecast congestion, coupled with multi-variate optimization, Bill and Elaine's company, System73 (https://system73.com/), is able to structure an optimized topology overlay to the internet that significantly reduces internet congestion by more efficiently utilizing existing network capacity (https://system73.com/multi-cdn-2020/).

## ENERGY CONSERVATION

Per Elon Musk: "…for an electric motor, it's easy to get peak power for a short period of time – it's hard to have sustained peak power, because you overheat, and it's hard to get high efficiency over a complicated drive cycle. Those tend to be the problems we wrestle with." Bill has invented a patent pending control system for

education. The cost of a college education is rising faster than wages making student debt unsustainable. And, it will only get worse. The population of college aged individuals will begin to decline in the next several years placing even greater strain on the high fixed cost budgets of colleges and universities. That is why we created Scholarly. American institutions of higher learning are a national treasure and sought after around the world. Scholarly has developed outreach programs to match international students with colleges and universities both for on campus as well as live, virtual classrooms utilizing System73 where students can interact real time with their professors and fellow students from around the world. Not only will this enhance revenue, but, in certain circumstances enable colleges and universities to deliver higher quality education at a lower cost.

## PHILANTHROPY

The Erbey's have donated 90+% of their net worth to institutions of higher learning. Bill and Elaine believe that

low cost and highly effective method to drastically reduce Cardiorenal syndrome deaths.

electric motors and generators which reduces the heat generated by 50% and increases their efficiency by approximately 8%. The Kira motor technology will drastically enhance the modern electric motor by increasing the driving range of electric vehicles which significantly increases their mass adoption.

education is the primary driver to enhancing peoples' standard of living and quality of life. Their interest in education has led to the formation of Scholarly.co (https://www.scholarly.co/).

> "An investment in knowledge pays the best interest"

— BENJAMIN FRANKLIN