# Exhibit A

*Plaintiffs' Motion to Compel Defendants Ocwen and Altisource to Produce Electronic Data Relating to Deutsche Bank REO Properties Serviced by Ocwen and Altisource in the Same Zip Code as the Deutsche Bank Properties Tested by Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA. | Case No. 18 CV 839<br><br><br>Judge Harry D. Leinenweber<br>Magistrate Judge Sidney I. Schenkier<br><br>Jury Trial Demanded |
| Plaintiffs, | |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC; and ALTISOURCE SOLUTIONS, INC. | |
| Defendants. | |

## DECLARATION OF JENNIFER K. SOULE

I, Jennifer K. Soule, under penalty of perjury and based on personal knowledge state that the following facts are true and accurate:

1. I am one of the attorneys representing the Plaintiffs in the case entitled *National Fair Housing Alliance, et al. v. Deutsche Bank National Trust, As Trustee, et al., Case No. 18 CV 839.*

2. In accord with Local Rule 37.2, it has been discussed and agreed between Plaintiffs and the Servicer Defendants that the parties are at impasse concerning Plaintiffs' April 9, 2021 Requests For Production of certain electronic data concerning all Deutsche Bank REOs serviced by Ocwen and its inspection, preservation, maintenance, valuation and REO sales vendor Altisource, as limited by Plaintiffs on August 24, 2021 to all Deutsche Bank REOs serviced by Ocwen and its vendor Altisource in the same zip codes as the Deutsche Bank REOs tested by Plaintiffs from January 1, 2011 through 2017.

3. It is undisputed that the Servicer Defendants will not produce *any* property-level information beyond the properties tested by Plaintiffs, as described in paragraphs 57-66, below.

4. The discovery requests at issue, the parties' conferences and discussions, and the history of Plaintiffs' attempts over the course of discovery to narrow and focus their requests for information concerning properties serviced by Ocwen and its vendor Altisource are set forth in detail, below.

5. The specific Ocwen and Altisource data sets sought in the instant motion are referenced below in paragraphs 67-73. This set of data was produced by the Servicer Defendants limited to Deutsche Bank REO Properties tested on site by Plaintiffs they acknowledge servicing. Certain fields sought by Plaintiffs that have apparently not yet been provided, such as Total Preservation Cost, Net Present Value, and servicer and vendor fees per property, are also listed below and sought, if they exist in electronic format.

6. In addition, Plaintiffs have requested from Deutsche Bank periodic reports Ocwen

compiles for Deutsche Bank, known as Monthly Remittance Reports, as well as "Original Loan Tape" or "Onboarding Data" Ocwen provided or received concerning loans it services for Deutsche Bank that relate to REOs in the same zip codes tested by Plaintiffs from 2011 through 2017. The parties are involved in ongoing discussions and conferences about this type of information or reports. However, if any of this information Plaintiffs seek from Deutsche Bank is confirmed to be contained in data or reports maintained by Ocwen sought by this motion, it may be possible to avoid also seeking the same information from Deutsche Bank.

7.      The general background information in this Declaration concerning the Servicer Defendants' data systems is based on various Rule 37 conferences in which information was exchanged and discussed between myself and defense counsel, as well as on information obtained through my direct observation of Defendants' data system production in this case, and basic background information I obtained during subject matter depositions. I believe that the general background information concerning Defendants' data systems is essentially undisputed and I provide a general overview for the Court's understanding.

8.      As set forth in paragraphs 74-117, below, in order to include in the instant motion certain preliminary tabulations of data produced by the Servicer Defendants (based on the present level of understanding available to me), for the properties specifically tested by Plaintiffs, I used basic functions of Excel to add, subtract, divide or determine averages or percentages. I sought administrative assistance about the use of Excel functions when needed. I used fields of data from Microsoft Excel Workbooks produced by Defendants, and overlayed limited Microsoft Excel fields from Plaintiffs' centralized data base for NFHA property identification number, and racial demographic block group characteristics. I used a block group field that broke out Communities of Color and Majority White, and a second block group field that further delineated Communities

of Color into (a) African-American, (b) Hispanic, and (c) Majority Non-White and also included (d) Majority White. To select groups of properties in particular demographic groups for a calculation of a total or an average, I would sort the second block group field by group and then highlight all of the properties in the identified demographic group.

9. The Second Amended Complaint identifies 1141 Deutsche Bank REO properties tested by Plaintiffs. Through discovery, the number was increased to 1275 and the Servicer Defendants have acknowledged servicing 676 of those properties. It has been discussed that Plaintiffs understand Ocwen to service most Deutsche Bank REOs, and information to the contrary has not been provided to date.

## A. SERVICER DATA SYSTEMS AND DATA SOUGHT FOR DEUTSCHE BANK REOS IN SAME ZIP CODES AS PROPERTIES TESTED BY PLAINTIFFS

10. The Servicer Defendants (Ocwen and Altisource) maintain electronic data systems that contain information on loan servicing, inspections, property maintenance, valuation, marketing, and sales.

11. Defendants' oversight of general loan servicing activities and post-default property-level activities is conducted using these electronic data systems and staff. This is outlined in the Servicer Defendants' publicly filed Form 10K submissions and subject matter deposition testimony.

12. Defendants' filings and subject matter deposition testimony confirm that for the time period at issue, a large number of Servicer Defendant staff was located offshore, primarily in India. See e.g. Exhibits C and D to the instant motion.

13. In September, 2020, when production of initial documents began pursuant to Plaintiffs' initial March 6, 2020 Requests For Production, and resulting from extensive Rule 37 conferences, Plaintiffs identified 4 addresses from their investigation that would guide production

by Defendants of exemplar production of property-level information.

14.    Plaintiffs then received from both Altisource and Ocwen only for these four tested exemplar properties extremely voluminous sets of composite or archived documents and PDFs of paper records, covering for these four properties the full historic span of loan origination, pre-default and post-default Ocwen loan servicing activities, and Altisource inspection, maintenance and REO sales activities, inclusive of documents such as Deutsche Bank title, default/foreclosure, closing and powers of attorney (Deutsche Bank-to-Ocwen) documents.   The sample productions by Ocwen and Altisource of non-electronic data documents concerning the four exemplar properties was 20,705 pages (12,694 Ocwen; 8011 Altisource).

15.    Altisource also early on produced "exemplar" electronic data about the four Deutsche Bank properties Plaintiffs initially designated from its various systems in the form of exports in Microsoft Excel workbooks.

16.    Ocwen later produced exemplar electronic data sets on February 23, 2021.

17.    Plaintiffs extensively reviewed and utilized the voluminous initial Ocwen and Altisource documents for the four exemplar properties, in combination with the Altisource exemplar data workbooks for the same four properties, to understand the written and electronic information utilized and maintained by Ocwen and Altisource for REOs, as well as to initially learn about Defendants' processes and procedures concerning Deutsche Bank REOs, as well as to prepare for and take subject matter depositions of the Servicer Defendants between January 2021 and March 2021.

18.    Plaintiffs determined not to seek full production of all of these voluminous documents from Ocwen for properties beyond the four exemplar properties because many of the documents pertained to the long history of regular loan servicing activities such as routine

mortgage payments, form letters about mortgages, and copies of mortgage documents. Additionally, many of the Altisource post-default documents were also contained in the Ocwen documents, and the four Ocwen exemplar sets permitted Plaintiffs to examine the types of documents from loan origination forward that might be relevant in the REO context as well as used at depositions to confirm they are standard documents that do not require repeated production for all REO properties (e.g. Powers of Attorney from Deutsche Bank to Ocwen and listing/sales documents reflecting Deutsche Bank as owner, etc.).

19.     As regards Altisource, over the course of discovery, Altisource produced what Plaintiffs understand is all documentation that would have been integrated with or linked to its systems associated with Altisource systems for the acknowledged tested Deutsche Bank REO properties, as described in paragraph 22-37, below.

20.     The parties are in discussions about additional production of email communications between Altisource and Ocwen staff using certain email addresses identified in policies, as well as custodian ESI.  In this regard, Defendants' blanket objection to providing any property level information beyond the tested properties has been confirmed and certain areas remain at impasse.

21.     Plaintiffs have focused on obtaining production from Defendants of less burdensome electronic data where possible, including by the instant motion.

### 1.    **The Altisource Systems**

22.      Altisource utilizes complex three-dimensional electronic systems, to which Ocwen users also had contemporaneous access in certain ways.  These systems include "VMS – Vendor Management System," "RealResolution," "RTNG – RealTrans Next Generation," "Vendorly" and "Hubzu" to carry out inspection, maintenance, marketing and sales of Deutsche Bank RMBS REOs.

23.     Pursuant to Plaintiffs' March 6, 2020 Requests for Production and processes agreed and required by the Court's December 22, 2020 Order setting a schedule for subject matter depositions of the Servicer Defendants, thirteen sets of the property level electronic data (including additional fields) sought by Plaintiffs were produced by Altisource without voluminous attachments integrated into the data on the following dates as to the 676 Deutsche Bank REO properties that they acknowledge servicing:

     a.  November 6, 2020
     b.  December 10, 2020

24.     This property level electronic data was provided to Plaintiffs in the form of Excel workbooks.

25.     With respect to Altisource's systems, an intricate set of "attachments" of interrelated communications and PDF documents would be accessible to the Altisource (staff or vendor) or Ocwen user as they viewed various screens pertaining to a particular property or tasks at hand.

26.      Voluminous sets of attachments to Altisource electronic systems consisting of Valuation reports, Inspection Forms, photographs, supporting PDFs and email communications (between Altisource and various parties including but not limited to its vendors and Ocwen) were produced separately by Altisource mostly as PDF documents on a rolling basis through July 28, 2021.

27.     Some central information in the voluminous and complicated Altisource PDF and attachment/communications documents is not otherwise maintained in Altisource electronic data fields, e.g. valuation details/narratives, inspection results, email correspondence and approvals, communications with local vendors, underlying code violation documents.

28.     Rather than engage in a potentially untenable subject matter deposition that,

considering the wide-ranging nature and complexity of Altisource's systems and the resulting unfamiliarity of Altisource's designated witnesses with data fields and definitions in several instances, might take multiple sittings and witnesses in order to address, Plaintiffs proposed an informal process whereby Plaintiffs would submit and Altisource would respond to written questions about data fields and records.

29.     Plaintiffs submitted data questions to Altisource on May 27, 2021.

30.     Altisource has submitted partial sets of cumulative responses on July 24, 2021, July 29, 2021, August 13, 2021, August 24, 2021, September 7, 2021 and September 24, 2021. This process is still ongoing as to follow-up.

31.     A "communication log" in one VMS data set may record portions of some intra-Altisource and/or reflect Altisource-Ocwen communications, but excludes attachments, emails, and other related documents.

32.     Certain Altisource "user" data fields shared by Altisource and Ocwen listing hundreds if not thousands of Indian (in most cases) surnames do not specify whether the (mostly off-shore) user works for Altisource or Ocwen, and there is no code or identification system showing the employer of the user who is entering information.

33.     Whereas the Altisource or Ocwen user may have one view of all the interrelated and linked information by property or otherwise, it was not and, as explained, cannot be produced to Plaintiffs by Altisource that way.

34.     Altisource data sets do not all revolve around one common identifier and use various identification numbers that may differ by Altisource system.   It is not possible for Plaintiffs to fully recreate or utilize Altisource's complex three-dimensional systems.

35.     The 13 basic data sets Produced by Altisource contain highly relevant and wide-

ranging information, are useable in and of themselves and in relationship to each other, and all contain core information relevant to Plaintiffs' claims and allegations.

36.     By the instant motion and the compromise proposed to the Servicer Defendants following Plaintiffs' April 9, 2021 Requests For Production, Plaintiffs seek only the electronically stored data, and not the various categories maintained by Altisource of attachments, photographs, PDFs and communications, for the additional Deutsche Bank REOs serviced by Ocwen and Altisource. The compromise proposed by Plaintiffs drastically reduces the number of electronic documents to be produced.

37.     On August 5, 2021, Plaintiffs also served a Request For Production on Altisource focused on (a) a post-suit 2018 policy directive in the central Altisource manual (incorporated into vendor contracts) regarding placement or removal of derogatory or discriminatory comments in VMS, and (b) biased comments in valuation documents. Plaintiffs' August 5, 2021 Requests are not limited in scope to the list of addresses investigated by Plaintiffs. The instant motion does not address these requests and are not intended to limit the scope of Plaintiffs' August 5, 2021 Requests.

## 2.     Ocwen's Systems

38.     Ocwen's key loan servicing data system was created for it by Altisource and was named RealServicing.

39.     The "Real Suite" systems that Altisource created, RealServicing (Ocwen), RealResolution (Altisource) and RealTran Next Generation ("RTNG" - Altisource), along with an Altisource system used by Ocwen, Altisource and Altisource vendors called Vendor Management System ("VMS"), were integrated in some ways and users from various parts of both Ocwen and Altisource could access these systems while working together.

40.     Ocwen's RealServicing data system was decommissioned before or around the time this case was instituted.  Per counsel for Ocwen, Ocwen produced its data concerning the tested properties from an "Oracle" data base where RealServicing data is stored and maintained.   Ocwen counsel has referred to the stored RealServicing data in the Oracle data base as a "legacy data base."

41.     Ocwen's systems include relevant fields that do not appear in Altisource's systems, based on review to date of what has been produced in discovery, including basic historical information about the loans and properties, appraisal information, iterations of valuations and types, "business plan" approvals, and certain other details and fields.

42.     Altisource's systems include relevant fields that do not appear on Ocwen's systems, based on review to date of what has been produced in discovery, including many fields concerning work orders and property maintenance.

43.     Where certain limited fields are common to both Altisource and Ocwen systems, one or the other may contain more complete information as to a given property, so use of information from both systems in combination is required to obtain the highest degree of completeness.

44.     Once a loan serviced by Ocwen was in a status requiring Altisource inspection, maintenance, preservation, valuation, marketing and sales services (such as the loan being in default), Ocwen would "onboard" a subset of loan information from its system into Altisource's systems.

45.     Ocwen, the loan servicer for securitized loans bundled into Deutsche Bank trusts, from either loan origination or as a successor to another original servicer, produced 159 Excel Workbook-formatted exemplar electronic data sets originating from RealServicing by Ocwen in

an Oracle data base, for the four exemplar tested properties on February 23, 2021.

46.     Plaintiffs understand that the 159 exemplar data field groupings (referred to as data sets) were produced in the format and grouping in which they are already maintained by Ocwen in its Oracle data base.  Some field names/headings are not readily understood, while other fields and data can be understood according to plain or contextual meaning.

47.     In the course and as a result of a months-long informal process with Altisource concerning its data fields, and after reviewing Ocwen's exemplar data sets in this context, on July 27, 2021, Plaintiffs requested, via a chart by Bates number listing the Ocwen data exemplars, production of 42 of Ocwen's 159 data sets as regards the 676 specifically tested properties acknowledged to have been serviced by Ocwen.

48.     As was agreed with Altisource, Plaintiffs and Ocwen are informally exchanging information and questions and answers concerning Ocwen's data and records, which may enable Plaintiffs to limit or avoid taking a noticed subject matter deposition of Ocwen on the previously noticed data and records subjects.  For example, Plaintiffs will inquire further about definitions and uses of fields of data.

49.      Ocwen produced the requested data sets regarding the tested properties on September 22, 2021 in the form of Microsoft Excel Workbooks.

50.     Ocwen's September 22, 2021 production attributed newly disclosed file names to the Excel workbooks and no Bates numbers and did not obviously correspond with Bates numbers (alone, with no file names) used in the exemplar production.

51.     Plaintiffs corresponded with Ocwen including on October 1, 2021 concerning identifying the data sets and other questions about the data sets produced (e.g. one set did not include data, and identifying which 9-22-21 sets matched the exemplar sets).

52.     On October 13, 2021, Ocwen counsel informed Plaintiffs' counsel that she had requested the data sets be re-pulled in their entirety, and on October 29, 2021, the requested sets of Ocwen's data for the tested properties was reproduced with new Bates numbers, along with tables Ocwen provided, listing another set of file names, but not directly associating the new Bates numbers with previous identifiers.  Plaintiffs have therefore listed below the data sets sought by both the original Bates numbers of the exemplar sets and the Bates numbers (presumably of the same data sets)  in the October 29, 2021 Ocwen reproduction.  I verified that the September 22, 2021 data sets used for tabulations below matched the corresponding data sets produced on October 29, 2021.

53.     Plaintiffs also served Ocwen a Request For Production on July 30, 2021, which addressed questions and information raised in subject matter depositions, that Ocwen indicated in its August 30, 2021 response would in large part be found in the data sets Ocwen produced on September 22, 2021.   The parties' conferences concerning Plaintiffs' August 3, 2021 Requests is ongoing.

54.     The parties remain in discussions about production of certain fields of data that policies and testimony indicate may exist, but were not yet produced that would be subject to the Order sought by the instant motion, including some information that also may be in the possession of Deutsche Bank, as described above in paragraph 6.

55.     I have not yet been able to locate servicing fees charged by Ocwen to the owner or Trust in the Ocwen data, nor have I been able yet to locate the total fees charged in aggregate or per property by Altisource to Ocwen in the data produced to date.  This information is listed below regarding the instant motion.

3.    **The Discovery Dispute**

56.    Following very extensive efforts partially described above beginning March 2020 to discern Defendants' policies, procedures, records and data systems through documentary discovery and subject matter depositions, Plaintiffs served Requests For Production of Documents on April 9, 2021, specifically focusing on the Servicer Defendants' electronic data concerning all Deutsche Bank REOs they serviced. (Ex. A, attached, pertinent excerpts, April 9, 2021 RFPs). Plaintiffs' requests sought this information from January 1, 2010 to the present.  This motion seeks data from January 1, 2011 through 2017. (Ex. A, hereto).

57.    The Servicer Defendants asserted their standard objection (first raised in response to Plaintiffs' March 6, 2021 Discovery Requests) to providing any property level information beyond the specifically tested properties. Altisource also objected based on the volume of its production to date, providing a count of their documents produced, including counting thousands of pages from the exemplar files referenced above, and counting thousands of pages of the attachments and communications not similarly sought by Plaintiffs' April 9, 2021 Request or the instant motion.

58.    On August 24, 2021, Plaintiffs proposed a compromise to very substantially narrow the requests for property-specific Servicer Defendant records and information to a select portion of Defendants' electronic data concerning Deutsche Bank REOs.  Plaintiffs' proposal not only limited the electronic data sought to the metropolitan areas covered by the Second Amended Complaint, but also to the particular zip codes in which tested properties were located.

59.    The Servicer Defendants stated in their objections and Rule 37 conferences including on September 24, 2021 that they do not agree to produce the requested information because they do not want to "expand the case."  Plaintiffs have, from the start of discovery, stated

the position set forth in the instant motion: that the scope of Plaintiffs' allegations in this pattern and practice case defines the scope of discovery, not the set of particular REO property addresses tested by Plaintiffs. Again, Plaintiffs determined to focus and narrow their requests in this regard to electronic data.

60.     Regarding their April 9, 2021 Requests, Plaintiffs proposed a compromise that, for production of Altisource data relating to additional Deutsche Bank REOs in the same zip codes as the tested properties, Altisource could exclude attached communications, voluminous sets of documents and PDFs ordinarily attached or integrated. Altisource still rejected plaintiffs' compromise.

61.     The proposal to exclude voluminous attachments, PDFs and communications from production concerning Deutsche Bank REOs in the same zip codes tested by Plaintiffs was in part because documentary and testimonial discovery to date underscores present concerns that Plaintiffs may not able to fully discover property level facts or fully utilize data from Altisource's complex integrated information systems, especially as to property preservation and inspection records.

62.      Using the list of zip codes derived from Plaintiffs' centralized investigatory data base provided by Plaintiffs on August 25, 2021, the Servicer Defendants were able to determine on September 24, 2021 that the number of additional Deutsche Bank REOs they serviced in those locations is approximately 9,000 for the four year period from 2014 through 2017. It seems likely that the number of Deutsche Bank REOs for the additional three years sought by Plaintiffs will be similar in number because REO volume was higher in earlier years generally.

63.     Plaintiffs seek the identified data dating back to January 1, 2011, inclusive of historic property and loan-level data for the properties at issue. For example, the data includes

14

information about original loan terms and values, among other historical information, that may date prior to January 1, 2011, but is relevant to default-era servicing activities of properties that became REOs during the time frame of Plaintiffs' investigation and is relevant to Plaintiffs' claims against all Defendants as well as Plaintiffs' analysis of Defendants' policies and procedures.

64.    The Servicer Defendant data prior to 2015 is particularly relevant consider the admission by Ocwen during Rule 37 conferences and subject matter depositions that it had no written policies and procedures with regard to REO oversight prior to 2015.  The first Ocwen REO oversight policy, REO Oversight Procedure, is dated August 27, 2015,  Ocwen_0000001.

65.    Regardless of the statute of limitations that may apply to the Servicer Defendants and 2014-forward time frame identified by them, the statute of limitations for Deutsche Bank is February 26, 2012, and Ocwen and Altisource serviced Deutsche Bank REOs for the entire time frame identified in the instant motion, January 1, 2011 through 2017.  Plaintiffs' earliest identified date for which data is sought in the instant motion predates the statute of limitations for the Deutsche Bank Defendants by only one year.  The Court has indicated that information prior to the statute of limitations is relevant.

66.    In an October 13, 2021 Rule 37 Conference, Altisource and Ocwen counsel reiterated that any request for information beyond the specifically tested properties is rejected and subject to the Servicer Defendants' blanket objections of burden and "not expanding the case."

**B.      DATA FIELDS SOUGHT[1]**

<u>Altisource</u>

67.      The data sets Plaintiffs seek from Altisource as described above, are (using a brief

system reference and the Bates numbers of the data sets produced for the acknowledged plaintiff-

tested properties):

ASI000009518 (VMS Cases)
ASI000009519 (VMS Communication Log)
ASI000009520 (VMS Code Violation Data)
ASI000009521 (VMS Property Details0
ASI000009522 (Utilities)
ASI000023616 (RTNG Valuation Orders)
ASI000023618 (Hubzu NFHA data)
ASI000023619 (Offer and Closing Details)
ASI000023620 (RealResolution Property Details – produced empty)
ASI000023621 (RealResolution Property Details – populated fields produced)
ASI000023622 (RealResolution Property Status History)
ASI000023623 (Vendorly; Work Orders)

68.      Other Altisource fields not produced to date but under discussion, such as Total

Preservation Cost, Net Present Value, field showing Work Orders/Work Item numbers that were

generated but canceled or not completed, and total fees charged to Ocwen per property, will be

requested, once known/identified.

69.      For the Court's information, sample views of two of thirteen Altisource data sets

ASI00009521 and ASI00009520 are listed in the citation index in §II of Exhibit D to the instant

motion, and are attachment Nos. 36 and 37 to Exhibit D, which is filed under seal.

<u>Ocwen</u>

70.      The Ocwen data sets sought by Plaintiffs are, (using Bates numbers associated with

---

[1] If Defendants can confirm that they did not maintain data sought in fields or sets they have provided in exemplar or otherwise, those data sets or fields can be eliminated by agreement from the list of data sought.

Ocwen's September 22, 2021 exemplar production and with its October 29, 2021 reproduction)[2]:

**Exemplar Ocwen Data Set Bates Numbers**

| | | | |
|---|---|---|---|
| OCWEN_0014280 | OCWEN_0014248 | OCWEN_0014209 | OCWEN_0014167 |
| OCWEN_0014278 | OCWEN_0014245 | OCWEN_0014204 | OCWEN_0014166 |
| OCWEN_0014273 | OCWEN_0014244 | OCWEN_0014203 | OCWEN_0014165 |
| OCWEN_0014272 | OCWEN_0014242 | OCWEN_0014202 | OCWEN_0014149 |
| OCWEN_0014271 | OCWEN_0014238 | OCWEN_0014196 | OCWEN_0014145 |
| OCWEN_0014269 | OCWEN_0014234 | OCWEN_0014184 | OCWEN_0014139 |
| OCWEN_0014267 | OCWEN_0014224 | OCWEN_0014182 | OCWEN_0014138 |
| OCWEN_0014263 | OCWEN_0014221 | OCWEN_0014180 | OCWEN_0014137 |
| OCWEN_0014259 | OCWEN_0014211 | OCWEN_0014179 | OCWEN_0014136 |
| OCWEN_0014257 | OCWEN_0014210 | OCWEN_0014173 | OCWEN_0014132 |
| | | OCWEN_0014172 | OCWEN_0014124 |

**10/29/2021 Ocwen Data Set Bates Numbers**

| | | | |
|---|---|---|---|
| OCWEN_0015536 | OCWEN_0015553 | OCWEN_0015570 | OCWEN_0015587 |
| OCWEN_0015537 | OCWEN_0015554 | OCWEN_0015571 | OCWEN_0015588 |
| OCWEN_0015538 | OCWEN_0015555 | OCWEN_0015572 | OCWEN_0015589 |
| OCWEN_0015539 | OCWEN_0015556 | OCWEN_0015573 | OCWEN_0015590 |
| OCWEN_0015540 | OCWEN_0015557 | OCWEN_0015574 | OCWEN_0015591 |
| OCWEN_0015541 | OCWEN_0015558 | OCWEN_0015575 | OCWEN_0015592 |
| OCWEN_0015542 | OCWEN_0015559 | OCWEN_0015576 | OCWEN_0015593 |
| OCWEN_0015543 | OCWEN_0015560 | OCWEN_0015577 | OCWEN_0015594 |
| OCWEN_0015544 | OCWEN_0015561 | OCWEN_0015578 | OCWEN_0015595 |
| OCWEN_0015545 | OCWEN_0015562 | OCWEN_0015579 | OCWEN_0015596 |
| OCWEN_0015546 | OCWEN_0015563 | OCWEN_0015580 | OCWEN_0015597 |
| OCWEN_0015547 | OCWEN_0015564 | OCWEN_0015581 | OCWEN_0015598 |
| OCWEN_0015548 | OCWEN_0015565 | OCWEN_0015582 | OCWEN_0015599 |
| OCWEN_0015549 | OCWEN_0015566 | OCWEN_0015583 | OCWEN_0015600 |
| OCWEN_0015550 | OCWEN_0015567 | OCWEN_0015584 | OCWEN_0015601 |
| OCWEN_0015551 | OCWEN_0015568 | OCWEN_0015585 | OCWEN_0015602 |
| OCWEN_0015552 | OCWEN_0015569 | OCWEN_0015586 | |

71.    For the Court's information, sample views of two of the sought Ocwen data sets

Ocwen_0014182 (or Ocwen_0015573) and Ocwen_0014210 (or Ocwen_0015584) are listed in

---

[2] Plaintiffs note that the table of reproduced (October 29, 2021) data sets provided by Ocwen lists 67 data sets, whereas the list Plaintiffs requested from the exemplar set was 42. Plaintiffs will endeavor to ascertain why this is the case, by endeavoring to create a single table matching all 4 differing sets of identifiers in the Ocwen productions of this information.

the citation index in §II of Exhibit D to the instant motion and are attachment Nos. 38 and 39 to Exhibit D, filed under seal.

72.     Plaintiffs also request from Ocwen: (a) data fields reporting or summarizing servicer fees and vender fees per property, and (b) net proceeds of REO sales per property or other bases (reported to owner/trustee/investors).

73.     Other Ocwen fields not produced to date but which may exist and are under discussion, such as Total Preservation Cost and Net Present Value, will be requested, once known/identified.

## C.     PRELIMINARY TABULATION OF SERVICER VALUATION DROPS AND BUYER TYPES

74.     For purposes of the instant motion, I tabulated the percentage changes in various Deutsche Bank REO property values and prices, and counted the number of sales to non-individuals, using fields from the following data provided by Altisource and Ocwen in Excel workbooks during discovery for the Deutsche Bank REO properties tested by the Plaintiffs and acknowledged to be serviced by Ocwen and Altisource in the above-referenced case:

a. ST_INACTIVE_MFILE (exemplar Ocwen_0014271; 10/29/21 Ocwen_0015559)
b. ST_MORTGAGE_VW (exemplar Ocwen_0014182; 10/29/21 Ocwen_0015573)
c. ST_MORTAPRQ (exemplar Ocwen_0014259; 10/29/21 Ocwen_0015564) ST_PROPERTY or ST_PROPERTY RR (exemplar Ocwen_0014209 or Ocwen_0014210 ; 10/29/21 Ocwen_0015586 or 10/29/21 Ocwen_0015584)
d. ASI000023618  (Hubzu NFHA Data)
e. ASI000023619 (RealResolution Offer and Closing Details)
f. ASI000023621 (RealResolution Property Details)
g. ASI000023623 (Vendorly Work Order Report)

75.     Using address and NFHA identification number from Plaintiffs' centralized data base, I added a field for racial demographics from the Plaintiffs' centralized data base for each property in the Altisource and Ocwen data using Excel.

      a.   Communities of Color includes (a) African-American, (b) Hispanic, (c) Majority Minority, and each are separately tracked in the Plaintiffs' demographics per tested property.

76.     I utilized Excel and the following fields from the above data sets to tabulate changes in Deutsche Bank REO property values and prices:

      a.   Book Value (Ocwen_0014209)
      b.   BOOK_VAL_AMT (Altisource 23621)
      c.   ORGAPPRVAL (Ocwen 14182)
      d.   ASISLOWMKTVAL (highest) (Ocwen_0014529)
      e.   ASISLOWMKTVAL (lowest) (Ocwen_0014529)
      f.   FIRST_LIST_PRICE (Altisource 23618)
      g.   REO SALE PRICE (Altisource 23618, Altisource 23619)
      h.   Buyer Name (Altisource 23619)

77.     "Book Value" appears as a data field in both Ocwen and Altisource Property Details data. Book Value appears to be assessed after Original Appraised Value seen in Ocwen data (e.g. Ocwen_0014209, Ocwen_0014210 and their equivalents), appears to be assessed before default, and appears to be assessed before REO life cycle values such as "ASISLOW," etc., or "REO Sales Price," which are associated with dates relating to default and the REO life cycle. Book Value is most often lower than Original Appraisal Value and higher than REO life cycle type valuations (e.g. As Is Low).

78.     "Original Appraisal Value" appears in Ocwen_0014182 and appears to be the appraised value at the time of loan origination.

79.     Based on my review of information in Ocwen data fields, and consistent with subject matter testimony, at or around the dates of default vacancy or REO date once a property is in default, Ocwen data includes valuation assessments for "as is low" market value, "as is mid" market value, "as is high" market value, "repair low" market value, "repair mid" market value, and "repair high" market value. Repair is denoted as "REP." These types of ranges are also seen

in the PDF formats of various types of Altisource reviews of values for REO properties. Ocwen data shows there may be more than one of these sets of REO life cycle valuations assessed per REO property (and there may be multiple appraisals per property after the Original Appraisal).

80.    Altisource did not produce this "As Is Low" type information in data fields, though Altisource valuations/asset management/sales units provided these REO property values for Ocwen likely using shared systems. Thus, Plaintiffs received this incremental valuation information associated with REO list and sales prices in data fields from Ocwen on September 22, 2021 and as reproduced on October 29, 2021.

81.    I observed that Altisource data included one or more fields showing "market value" and "asset value" but it was not possible to associate when these values were created and the informal exchange of questions about data with Altisource indicates that these figures may have been overwritten over time when newer values were generated by Altisource valuations staff (in Altisource's asset management section) working for/as Ocwen. In some cases, Altisource indicated in response to Plaintiffs' questions that valuation information in its data fields was received from "the client," Ocwen (though REO life cycle valuations were done for Ocwen by Altisource staff or contractors), and in other cases Altisource indicated it could not define terms.

82.    REO Sales Price appears in Altisource Data, but per Plaintiffs' initial review to date does not appear to be included in Ocwen data, though Plaintiffs presently understand that Ocwen informs Deutsche Bank/trustee/investor of net proceeds of sales of REO properties owned by Deutsche Bank.

### 1.    Tabulation of Number of Properties Sold to Non-Individuals (Investors)

83.    For properties where buyers were listed in Altisource data field "Buyer Name," I counted the number of non-individual buyers, based on names including LLC, Inc., Corp, Co.,

Group, GP, Enterprises, and Cash For Deed (CFD). Altisource testimony and applicable policies state that properties $50,000 and below are sold to CFD buyers, also defined as investors. (See Exhibits C and D to the instant motion for citations). Where buyer name appeared for 579 properties, I totaled the numbers of sales to non-individuals for the noted demographic group, and divided the number for the noted demographic group by the total for that group to arrive at the following percentages:

   a. 56.86% of 357 properties in Communities of Color were sold to non-individuals, regardless of property value.
   b. 39.64% of 222 properties in in Majority White Communities were sold to non-individuals, regardless of property value.
   c. For properties sold above $50,000, 52.45% of properties in Communities of Color and 57.63% of properties in African-American Communities were sold to non-individuals, while 36.81% of properties in Majority White Communities were sold to non-individuals.
   d. For properties sold above $100,000, 64.71% of properties in African-American Communities were sold to non-individuals, and 36.27% of properties in Majority White Communities were sold to non-individuals.

84.     For properties where buyers were listed in Altisource data field "Buyer Name," and using the same approach to identify non-individual buyers described in the preceding paragraph, I counted sales to non-individuals for various "Book Value" levels as follows:

   a. Zero homes in Majority White Communities with a Book Value below $50,000 were sold to non-individuals.
   b. For properties with Book Value above $100,000, 57.64% of homes in Communities of Color were sold to non-individuals.
   c. For properties with Book Value above $100,000, 35.63% of homes in Majority White Communities were sold to non-individuals.

**2.     Tabulation of Valuation Decreases**

85.     The Average percentage decrease from Original Appraisal Value to REO Sales price for the properties tested by Plaintiffs by group is:

   a. Majority White: 45.95%
   b. Community of Color: 59.41%

      c.   African-American: 63.79%

86.     For every property in the Ocwen and Altisource data sets including the stated values of Book Value, First List Price or REO Sale Price, I calculated the following average percentage decreases in REO values observed in the listed Ocwen and Altisource data fields, by racial demographics from the Plaintiffs' central data base, as follows:

      a.   Book Value to First List Price
      b.   Book Value to REO Sale Price

87.     The average percentage decrease for these types of stated values (for properties where there were decreases, and excluding those properties with missing data) is:

      a.   33.12% for Majority White Communities from Book Value to First List Price
      b.   48.84% for Communities of Color from Book Value to First List Price
      c.   51.74% for African-American Communities from Book Value to First List Price
      d.   41.94% for Majority White Communities from Book Value to REO Sales Price
      e.   57.17% for Communities of Color from Book Value to REO Sales Price
      f.   61.70% for African-American Communities from Book Value to REO Sales Price

88.     For every property in the Ocwen and Altisource data sets including the stated values of Book Value and ASISLOW, I calculated the following average percentage decreases in REO values, where there were decreases, by racial demographics from the Plaintiffs' central data base, as follows:

      a.   Book Value to Highest As Is Low valuation (default/REO life cycle)
      b.   Book Value to Lowest As Is Low valuation (default/REO life cycle)

89.     The average percentage decrease for these types of stated values (for properties where there were decreases, and excluding those properties with missing data) is:

      a.   32.67% for Majority White Communities from Book Value to Highest As Is Value
      b.   50.30% for Communities of Color from Book Value to Highest As Is Value
      c.   53.65% for African-American Communities from Book Value to Highest As Is Value

      d. 39.04% for Majority White Communities from Book Value to Lowest As Is Value

      e. 54.60% for Communities of Color from Book Value to Lowest As Is Value

      f. 59.06% for Communities of Color from Book Value to Lowest As Is Value

90. For every property with Original Appraisal Value and As Is Low Value, I calculated the average percentage differences in decreases by racial demographics:

      a. 41.85% for Majority White Communities
      b. 56.66% for Communities of Color
      c. 59.84% for African-American Communities

91. The average percentage decrease from the highest As Is Low Market Value to the lowest As Is Low Market Value by racial demographics is as follows:

      a. 25.20% for Majority White
      b. 29.06% Community of Color
      c. 31.27% African-American

**3.**     **Placement of Properties In Value Bands By Demographics By (a) Book Value; or (b) REO Sales Price**

92. $136,432.81 is the average Book Value for Majority White Deutsche Bank REO properties tested by Plaintiffs (where Book Value is listed in the data).

93. $119,607.68 is the average Book Value for African-American Deutsche Bank REO properties tested by Plaintiffs (where Book Value is listed in the data).

94. For Deutsche Bank REO properties tested by Plaintiffs, the average REO sales prices for Communities of Color, African-American Communities and Majority White Communities are as follows:

      a. Majority White Average REO Sales Price: $126,616.32
      b. Community of Color Average REO Sales Price: $77,053.81
      c. African-American Average REO Sales Price: $61,725.32

95. Using Book Value for Deutsche Bank REO properties $50,000 and below:

      a. 7.94% are in Majority White Communities

    b.   13.01% are in Communities of Color
    c.   14.71% are in African-American Communities

96.    Using Book Value for Deutsche Bank REO properties $50,001 to $75,000:

    a.   3.17% are in Majority White Communities
    b.   12.10% are in Communities of Color
    c.   12.42% are in African-American Communities

97.    Using Book Value for Deutsche Bank REO properties $75,001 to $100,000:

    a.   15.48% are in Majority White Communities
    b.   15.53% are in Communities of Color
    c.   18.30% are in African-American Communities

98.    Using Book Value for Deutsche Bank REO properties $100,001 to $150,000:

    a.   28.17% are in Majority White Communities
    b.   22.15% are in Communities of Color
    c.   21.57% are in African-American Communities

99.    Using Book Value for Deutsche Bank REO properties $150,001 to $200,000:

    a.   16.27% are in Majority White Communities
    b.   13.70% are in Communities of Color
    c.   13.73% are in African-American Communities

100.    Using Book Value for Deutsche Bank REO properties $200,001 to $250,000:

    a.   9.13% are in Majority White Communities
    b.   9.82% are in Communities of Color
    c.   7.84% are in African-American Communities

101.    Using Book Value for Deutsche Bank REO properties $250,001 to $300,000:

    a.   6.35% are in Majority White Communities
    b.   7.53% are in Communities of Color
    c.   7.19% are in African-American Communities

102.    Using Book Value for Deutsche Bank REO properties $300,001 to $350,000:

    a.   1.98% are in Majority White Communities
    b.   3.42% are in Communities of Color
    c.   2.29% are in African-American Communities

103. Using Book Value for Deutsche Bank REO properties $350,001 to $400,000:

    a. 0.79% are in Majority White Communities
    b. 1.37% are in Communities of Color
    c. 1.31% are in African-American Communities

104. Using Book Value for Deutsche Bank REO properties $400,001 to $450,000:

    a. 3.17% are in Majority White Communities
    b. 0.23% are in Communities of Color
    c. 0.00% are in African-American Communities

105. Using Book Value for Deutsche Bank REO properties $450,001 to $500,000:

    a. 2.38% are in Majority White Communities
    b. 0.23% are in Communities of Color
    c. 0.00% are in African-American Communities

106. Using REO Sales Price for Deutsche Bank REO properties $40,000 and below:

    a. 15.00% are in Majority White Communities
    b. 35.24% are in Communities of Color
    c. 45.00% are in African-American Communities

107. Using REO Sales Price for Deutsche Bank REO properties $50,000 and below:

    a. 17.92% are in Majority White Communities
    b. 42.18% are in Communities of Color
    c. 52.86% are in African-American Communities

108. Using REO Sales Price for Deutsche Bank REO properties $50,001 to $75,000:

    a. 17.50% are in Majority White Communities
    b. 20.35% are in Communities of Color
    c. 17.86% are in African-American Communities

109. Using REO Sales Price for Deutsche Bank REO properties $75,001 to $100,000:

    a. 19.17% are in Majority White Communities
    b. 10.67% are in Communities of Color
    c. 9.29% are in African-American Communities

110. Using REO Sales Price for Deutsche Bank REO properties $100,001 to $150,000:

    a. 17.92% are in Majority White Communities
    b. 13.40% are in Communities of Color
    c. 11.79% are in African-American Communities

111. Using REO Sales Price for Deutsche Bank REO properties $150,001 to $200,000:

    a. 11.67% are in Majority White Communities
    b. 7.20% are in Communities of Color
    c. 6.07% are in African-American Communities

112. Using REO Sales Price for Deutsche Bank REO properties $200,001 to $250,000:

    a. 5.00% are in Majority White Communities
    b. 3.97% are in Communities of Color
    c. 1.43% are in African-American Communities

113. Using REO Sales Price for Deutsche Bank REO properties $250,001 to $300,000:

    a. 5.00% are in Majority White Communities
    b. 0.74% are in Communities of Color
    c. 0.36% are in African-American Communities

114. Using REO Sales Price for Deutsche Bank REO properties $300,001 to $350,000:

    a. 2.08% are in Majority White Communities
    b. 0.99% are in Communities of Color
    c. 0.00% are in African-American Communities

115. Using REO Sales Price for Deutsche Bank REO properties $350,001 to $400,000:

    a. 0.42% are in Majority White Communities
    b. 0.00% are in Communities of Color
    c. 0.00% are in African-American Communities

116. Using REO Sales Price for Deutsche Bank REO properties $400,001 to $450,000:

    a. 0.42% are in Majority White Communities
    b. 0.00% are in Communities of Color
    c. 0.00% are in African-American Communities

117. Using REO Sales Price for Deutsche Bank REO properties $450,001 to $500,000:

    a. 0.83% are in Majority White Communities
    b. 0.00% are in Communities of Color

c.  0.00% are in African-American Communities

Further Declarant Sayeth Not.

*/s/ Jennifer K. Soule*

*Soule, Bradtke & Lambert*
402 Campbell Street, Suite 100
Geneva, IL 60134
*Attorney for Plaintiffs*

Dated: November 5, 2021

# Exhibit A

to the Declaration of Jennifer K. Soule

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, et al., | Case No. 18 CV 839 |
| Plaintiffs, | |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., | Judge Harry D. Leinenweber Magistrate Judge Sidney I. Schenkier |
| Defendants. | Jury Trial Demanded |

**PLAINTIFFS' APRIL 9, 2021 REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ALTISOURCE SOLUTIONS, INC.**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that Defendant Altisource Solutions, Inc. respond to the following Requests for Production of Documents by producing and making available the following documents within 30 days of service at the offices of Soule, Bradtke & Lambert, 402 Campbell Street, Suite 100, Geneva, Illinois, 60134, in accordance with the Definitions and Instructions below.

**DEFINITIONS**

As used in these Requests, the following terms are to be interpreted in accordance with the following definitions. Notwithstanding any definition below, each word, term or phrase used in these document requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.     The use of the singular form of any word includes the plural and vice versa.

2.     The use of a verb in any tense shall encompass all other tenses, wherever necessary, to bring within the scope of the discovery request matters that might otherwise be construed as outside the scope of the request.

1

Nevertheless, counsel or the Parties should discuss cost sharing for OCR or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each Party. If a producing Party creates OCR of paper documents or non-text-searchable electronic images it produces for its own use, that producing Party should provide OCR to the other Party.

        ii.        Nothing in these ESI Instructions shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

## DOCUMENTS REQUESTED

<u>Request No. 1.</u>   All documents and/or electronically stored information relating to any property owned by Deutsche Bank National Trust or Deutsche Bank Trust Company Americas or the Deutsche Bank Defendants (as denoted by name, Trust, Pooling and Servicing Agreement name or number or any Investor Codes or Investor Identification numbers associated with Deutsche Bank), for which Altisource provided any Pre-Foreclosure or Post-Foreclosure services, including but not limited to property inspection, preservation, maintenance and/or marketing services.  The documents and/or electronically stored information provided should include, but not be limited to, data maintained or stored in the following systems or their predecessor or successor systems, identified by Altisource on August 17, 2020 in response to Plaintiffs' First Set of Interrogatory No. 9, (a) Vendor Management System ("VMS"); (b) REALResolution, (c) ResWare, (d) Vendorly Invoice, (e ) REALTran Next Generation, (f) Hubzu, (g) Equator, (h) REALRemit, (i) iCasework, and (b) MSP.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, et al., | Case No. 18 CV 839 |
| Plaintiffs, | |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., | Judge Harry D. Leinenweber Magistrate Judge Sidney I. Schenkier |
| Defendants. | Jury Trial Demanded |

**PLAINTIFFS' APRIL 9, 2021 REQUEST FOR PRODUCTION OF DOCUMENTS TO
DEFENDANT OCWEN LOAN SERVICING, LLC**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that Defendant Ocwen Loan Servicing, LLC, respond to the following Requests for Production of Documents by producing and making available the following documents within 30 days of service at the offices of Soule, Bradtke & Lambert, 402 Campbell Street, Suite 100, Geneva, Illinois, 60134, in accordance with the Definitions and Instructions below.

**DEFINITIONS**

As used in these Requests, the following terms are to be interpreted in accordance with the following definitions. Notwithstanding any definition below, each word, term or phrase used in these document requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.      The use of the singular form of any word includes the plural and vice versa.

2.      The use of a verb in any tense shall encompass all other tenses, wherever necessary, to bring within the scope of the discovery request matters that might otherwise be construed as outside the scope of the request.

1

i.      Nothing in these ESI Instructions should require ESI and other tangible or hard copy documents that are not text-searchable to be made text-searchable. Nevertheless, counsel or the Parties should discuss cost sharing for OCR or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each Party. If a producing Party creates OCR of paper documents or non-text-searchable electronic images it produces for its own use, that producing Party should provide OCR to the other Party.

ii.      Nothing in these ESI Instructions shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

## DOCUMENTS REQUESTED

<u>Request No. 1.</u>  All documents and/or electronically stored information relating to any property owned by Deutsche Bank National Trust or Deutsche Bank Trust Company Americas or the Deutsche Bank Defendants (as denoted by name, Trust, Pooling and Servicing Agreement name or number or any Investor Codes or Investor Identification numbers associated with Deutsche Bank), for which Ocwen provided any default loan servicing or services (including Pre-Foreclosure and Post-Foreclosure/REO services).  The documents and/or electronically stored information produced should include, but not be limited to, data maintained or stored in the following systems or their predecessor or successor systems as identified by Ocwen in response to Plaintiffs' First Set of Interrogatory, No. 9, (a) REALServicing,(b) REALRemit, (c)REALResolution, (d) REALTran Next Generation, and (e) MSP.