# Exhibit G

*Plaintiffs' Motion to Compel Defendants Ocwen and Altisource to Produce Electronic Data Relating to Deutsche Bank REO Properties Serviced by Ocwen and Altisource in the Same Zip Code as the Deutsche Bank Properties Tested by Plaintiffs*

```
1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3   NATIONAL FAIR HOUSING          )
    ALLIANCE, et al.,              )    Case No. 18 CV 839
4                                  )
                  Plaintiffs,      )
5                                  )
              vs.                  )    Chicago, Illinois
6                                  )    December 17, 2020
    DEUTSCHE BANK, et al.,         )    9:11 AM
7                                  )
                  Defendants.      )
8
                 TRANSCRIPT OF PROCEEDINGS - Motion
9           BEFORE THE HONORABLE HARRY D. LEINENWEBER

10  APPEARANCES:

11  For the Plaintiff:        SOULE BRADTKE & LAMBERT
                              BY:  MS. JENNIFER K. SOULE
12                            402 Campbell Street # 100
                              Geneva, Illinois  60134
13
                              NATIONAL FAIR HOUSING ALLIANCE
14                            BY:  MR. MORGAN W. WILLIAMS
                              1101 Vermont Avenue NW #710
15                            Washington, DC 20005

16
    For Defendant
17  Deutsche Bank:            MORGAN LEWIS & BOCKIUS LLP
                              BY:  MR. KENNETH M. KLIEBARD
18                            77 West Wacker Drive
                              Chicago, Illinois 60601
19

20

21

22
    Court Reporter:          SANDRA M. MULLIN, CSR, RMR, FCRR
23                           Official Court Reporter
                             219 S. Dearborn Street, Room 2260
24                           Chicago, Illinois  60604
                             (312) 554-8244
25                           sandra_mullin@ilnd.uscourts.gov
```

```
 1    APPEARANCES (Continued):

 2    For Defendant
      Ocwen Loan Servicing:        MAYER BROWN LLP
 3                                 BY:  MS. DEBRA L. BOGO-ERNST
                                   71 South Wacker Drive
 4                                 Chicago, Illinois  60606

 5    For Defendant
      Altisource Solutions:        DENTONS US LLP
 6                                 BY: MR. NATHAN L. GARROWAY
                                   303 Peachtree Street NE
 7                                 Atlanta, Georgia 30308

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Proceedings heard in open court via teleconference.)

2          THE CLERK:  We're a few minutes early, but do we have

3   all parties available on 18 C 839, National Fair Housing versus

4   Deutsche Bank?

5          MS. SOULE:  Jennifer Soule for the plaintiff.  I'm

6   expecting Morgan Williams from National Fair Housing Alliance.

7   I'm not sure if he is on yet.

8          MS. BOGO-ERNST:  For the defendants you have Debra

9   Bogo-Ernst for Ocwen.

10         MR. GARROWAY:  And you also have Nathan Garroway for

11  Altisource defendant.

12         THE COURT:  Do you want to wait, or are we ready to

13  go?  We have everybody covered now?

14         THE CLERK:  I think we're waiting on one more.

15         MS. SOULE:  Yes, that's correct.

16         THE CLERK: I think someone just joined the line.

17         Can you announce yourself?

18         MR. KLIEBARD:  Yes. This is Kenneth Kliebard for the

19  Deutsche Bank defendants.

20         MS. BOGO-ERNST:  So for the defendants we're all

21  ready.

22         THE COURT:  All right.  We're just waiting for one

23  additional?

24         MS. SOULE:  That's correct, Judge.  Morgan Williams,

25  National Fair Alliance co-counsel, should be joining.

1      THE COURT:  All right.  We have a couple minutes yet.

2      THE CLERK:  Do we have all parties available on

3  18 C 839, National Fair Housing versus Deutsche Bank?  Please

4  announce yourself.

5      MS. SOULE:  Again, Jennifer Soule on behalf of

6  plaintiffs.  And it may be that Morgan Williams just signed on.

7      MR. WILLIAMS: That's correct.  This is Morgan

8  Williams.  Thank you so much.  Good morning.

9      THE COURT:  Everybody is on.  Okay.  This is the

10  second motion to compel.  And, Ms. Soule, I have reviewed your

11  motion and the documentation.  And you want to just hit some of

12  the highlights?

13      MS. SOULE:  Yes, Judge, I appreciate that.  There are

14  two threshold issues before the court today concerning these

15  depositions.  The first is, of course, the timeframe to be

16  allowed for the depositions.  The other is the document

17  production issue concerning documents responsive to plaintiffs'

18  March 6th request that focused on policies and procedures that

19  also relates to the noticed depositions.

20      First, regarding the calendar, plaintiffs -- we've

21  shown good faith.  We've bent over backward to facilitate the

22  process.  We've tried to help defendants prepare and will

23  continue to do that.  We don't feel -- we don't see a

24  reciprocal context to that coming from the depositions

25  preparation.  It's particularly some issues arose last evening

1    that I can get into briefly.  But we -- we want to make the

2    process as fruitful and efficient as possible.

3         From plaintiffs' point of view, the issues and the

4    numbers of parties in this case, as well as some of the lack of

5    cooperation from the defendants we're now seeing does allow, we

6    believe, the court to exercise its discretion to allow multiple

7    days for these depositions.

8         We would like, frankly, some benefit of the doubt on

9    our estimations of time.  I want to stress that plaintiffs are

10   not asking for unlimited time for these depositions.  Our

11   proposed calendars show two ranges of time -- estimated time

12   for these depositions, either a seven-hour-or-less subject or

13   half-day-or-less subjects.  We do think the schedule will best

14   stand two months instead of one.

15        I think the defendants at the last hearing, where the

16   court ordered the depositions to go forward, did not want to

17   proceed in this month, in December, and it resulted in the

18   court indicating that we should for sure do them in January.

19   And when we set out to do the calendar -- I mean, there is two

20   defendants here, so we do believe it would be best, and we

21   offered to agree to that with defendants, to extend the

22   schedule over two months.

23        We also, from the plaintiffs' perspective, take the

24   position that, if the circumstances on the ground change,

25   things produce -- get produced, things progress in a more

1   cooperative manner, plaintiffs will conclude the depositions
2   when they're concluded, or we will move on with the next
3   subject.

4          Defendants have decided to produce one witness each,
5   which we -- we question, as we noticed in our motion.  However,
6   that should actually help facilitate things moving along
7   quickly because that witness will be present and subjects can
8   be discussed that may follow along, and we're prepared to do
9   that.

10          We do understand that, depending on all of these
11  factors and the level of preparedness and cooperation, the
12  schedule in practice may end up being shorter.  But we disagree
13  very strongly with defendants' insistence on cutting things
14  short before they even start.  We don't know how we could do
15  these depositions in one day or one-and-a-half days, as
16  defendants had suggested.  We don't know how we would approach
17  such a short timeframe or how we would guard against that
18  limit.  It's just untenable to do it that way.

19          We also -- I want to clarify, too, for the court that
20  once we went through all these conferences and provided the
21  list of exhibits and, you know, talked about the subjects and
22  went through it all, we were very surprised to have the
23  defendants announce their position that we could get this all
24  done in one day but they were willing to do a day-and-a-half.
25  We wrote to them about that and defendants quickly confirmed

1     that the parties were at impasse and should bring the matter to

2     the court.  We did that promptly because we saw that the

3     holidays were coming, defendants expressed a lack of

4     availability on their part, the court wanting to do the

5     depositions in January, and we don't have a schedule.  So the

6     defendants didn't bring up a joint proposal, and we didn't even

7     imagine that they were wanting to do a joint proposal.  And so

8     we filed our motion.

9           We also wanted the court to see everything that we've

10    done to try to show the court that, you know, we're not hiding

11    anything.  We're sharing our plans and our perspectives and our

12    lists of documents, and we're acting in good faith here.

13          And I think defendants' position just hasn't changed.

14    They remain silent on that position through all these

15    conferences, and then they announce it should be a

16    day-and-a-half.

17          So we've gone through a lot to get this process set

18    up in an orderly way, and we've hit a road block.

19          We did receive -- we asked this week for a status

20    from Ocwen and Altisource about document production.  They've

21    been a little evasive, in my opinion, about where they're at

22    and what they're going to do.

23          They've asked us specifically for -- we said we

24    noticed, when we're looking through some of the documents, that

25    they're referencing other things that are very important that

1    are not produced yet.  Defendants asked us to please tell them

2    what we're finding.  And I promised to do a letter.  I went

3    through everything, and spent a couple days.  I've spent days

4    and days on providing them information.  And I did provide them

5    that letter, but we haven't gotten the documents or heard

6    anything.  That's been over a month now.  So this week, I --

7    and also we included those on the charts of listing exhibits we

8    want to use with the subject.

9           So this week I asked the defendants, to Ocwen and

10   Altisource, the servicer defendants, to give a status before

11   today on where the document production is, specifically on the

12   documents that seem to be missing.

13          So last evening I received e-mails from both of these

14   defendants stating that they have found -- they have located

15   these documents but they're now taking the stance that our

16   chart and our letter, which they asked for, are informal

17   requests, not formal requests, and they're going to proceed

18   with the formal request responses first.  And, also, they're

19   now taking the stance that the documents are somehow not

20   relevant, were not responsive to plaintiffs' requests.  And I

21   spent some time this morning -- I didn't get that until late

22   last night.  I spent some time this morning identifying

23   probably a dozen requests that these documents respond to.  So

24   we may have a discrete motion relating to a couple of issues,

25   but I think we can handle that if it's not resolved in the

1    context of the schedule.

2            Other than those particular missing documents,

3    defendants also represented to us last night that their

4    production of policy and procedure documents is substantially

5    complete and that they will continue to review documents and

6    produce them as expeditiously as possible.  And as you know in

7    our motion, we have requested the court to order that documents

8    that are responsive to the subjects be produced no later than

9    five days before the deposition.  That, we think, in a court

10   order will facilitate getting things produced.  And just like

11   in any other situation of a 30(b)(6) deposition, as documents

12   aren't produced that come up at the deposition, we know there

13   are ways to handle that, and we would do that.

14           So we -- we do believe -- and I can go into the

15   document issue in more detail, but obviously that may not be

16   what the court wants to hear today, on those missing documents.

17   But we do hope that defendants reconsider and produce some of

18   the key things.

19           Some things are samples.  So, for example, if a

20   policy talks about a different -- certain procedure, plaintiffs

21   think that it would be helpful to make the deposition go faster

22   if there is a sample of this or that to show the witness.  And

23   we don't have to have a sample to show the witness, but, again,

24   not producing some documents is going to make things take

25   longer.

1    One other example that -- just before I wrap up, is

2  that there is a lot of data and spreadsheets that Altisource

3  produced, and also there is a lot of reference in Ocwen's

4  procedures and the sample files from the properties that we've

5  received that show that Ocwen has an extensive data system

6  where they communicate in a shared system with Altisource about

7  what they're doing.  And Altisource has various systems and has

8  produced a lot of data about our properties.  And I would say

9  that Altisource is far, far, ahead of Ocwen in its production,

10  but, yet, we want to find out what are in these columns of

11  data.  Some are obvious, but some column headings are not

12  obvious.  And so we asked for -- from both of these defendants,

13  tell us your -- you know, user manuals for these systems.  Give

14  us that.  We asked that right away, March 6th.

15    And we also asked in our requests in the multiple

16  Rule 37 conferences for, like, data dictionaries so that we

17  would know what the information is in the systems.  They --

18  Altisource has produced a couple of these manuals, but they

19  won't -- they haven't yet produced the data dictionaries, and

20  things.  So same with Ocwen has not produced any user manuals

21  or data dictionaries.  And I use this as an example because, in

22  the deposition, we will now -- instead of having a piece of

23  paper that they gave us that says, this column heading acronym

24  means this, or put this in this area, we'll have to show a

25  witness a sample page and go through all that.  That will make

1    the depositions take longer.

2            So, again, the production of things is related to how

3    quick these go.  We're not getting some of the production that

4    we think would make it go faster, so, you know, for that reason

5    and for the -- because the issues in the case are what they are

6    and because, strategically, we wanted to get the lay of the

7    land.  We want to learn what's happened, what happens in all

8    these processes.  There's thousands of properties that have

9    been -- that they handle and there's over a thousand properties

10   that were investigated.  We want to find out what the future

11   discovery we need and that can be limited so that we are

12   strategically getting the documents on the properties that we

13   need and not getting things we don't need.  We want to

14   understand things and how they work so we can focus in on the

15   kinds of remaining discovery and getting ready for the rest of

16   the case.  We think this is an efficient way to proceed.  So we

17   decided that this is a good way of proceeding.  We're still

18   convinced that it is.  We think this will help streamline

19   everything going forward and clear up a lot of questions.

20           So we're asking that our schedule or some -- some

21   format.  In other words, we laid out a January-February

22   schedule to show how it would look doing both of them.  But

23   if -- if -- you know, we can always change the order, or, you

24   know, we can work with witnesses' availability, that type of

25   thing.  So it's a proposed schedule for, you know, conceptual

1    reasons to show how it can go over January and February.

2         Thank you, Judge.

3         THE COURT:  Okay.  For, I guess -- who wants to go

4    first, Altisource or Ocwen?

5         MS. BOGO-ERNST:  Hi, your Honor.  This is Debra

6    Bogo-Ernst for Ocwen.  I will go first, and then Mr. Garroway

7    will appear for Altisource.

8         So, your Honor, that was -- you know, I think it

9    gives you an example of the length of which we've been talking

10   with plaintiffs' counsel.  We have, as a defendant group, been

11   engaged in good faith with plaintiff in this case -- with

12   plaintiffs in this case.

13        There are two issues particularly in front of the

14   court today.  One is the deposition scheduling and one is the

15   documents.  I think on the documents, defendants have no

16   problem attempting to provide documentation responsive for

17   these deposition topics five days in advance of the

18   depositions.  I'll talk about that a bit.  You know, I don't

19   want to get into the minutia with the court on particular

20   document issues.  I can talk about that a bit in a second.

21        But on the first issue, on the scheduling, you know,

22   as we've said in our opposition, Rule 30 has a presumptive

23   seven-hour limit on deposition testimony.

24        THE COURT:  Yeah, but that's not going to happen in

25   this case.  I mean, this is -- you're talking about, what,

1    six-to-700 parcels of property or more, and I was told by, I

2    don't know whether you or Mr. Garroway, that, for example, one

3    of your witnesses had left the company and you were struggling

4    to find another witness to take that person's place.

5            MS. BOGO-ERNST:  Correct.

6            THE COURT:  Certainly the impression that was left

7    when we were here in, I think it was in November, was that

8    clearly there would be several people, and since there were

9    hundreds of thousands of pages, and you need to educate the

10   witnesses.  And the clear implication was there would be more

11   than one witness.

12           Now, it's wonderful that if you found the witness

13   that knows everything on all of the 30(b)(6) witness subject

14   matters.  That's wonderful.  But it seems to me that I don't

15   know how in the world -- and I thought that -- I reviewed the

16   plaintiffs' effort to indicate what documents would be

17   particularly used at each subject matter, certainly would be

18   very, very helpful.  And it seems that plaintiff has gone to

19   great lengths to make this as easy as possible, so.

20           But it just seems to me that, sure, presumptive

21   and -- but I have no problem at all exercising my discretion

22   and giving more time than ten hours.

23           MS. BOGO-ERNST:  Your Honor, a couple things with

24   respect to what you said.  Yes, it was me who told you that the

25   representative from Ocwen left.  We searched within the

1    company, and we found somebody who used to be in the

2    department.  He is in another role now.  He has knowledge, we

3    believe, on all of the 30(b)(6) topics, provided that, you

4    know, they're in line with the way plaintiffs describe them to

5    us.  So he has graciously agreed to serve as a 30(b)(6)

6    witness.  But he is now in an entirely new role with different

7    day-to-day responsibilities, so he cannot reserve the entire

8    month of January.

9            You know, I hear what your Honor is saying.  These

10   depositions actually don't get into the nuances of the

11   thousands of properties.  These depositions cover written

12   policies and procedures and related documentation.  So if your

13   Honor is inclined to go beyond the presumptive limits, as a

14   defendant we would ask that it is not the entire month of

15   January and that we try to reach some sort of compromise here

16   because it is very hard for these business folks to reserve

17   that much time.  And I think that if the plaintiffs are

18   judicious in the way they're asking questions that we can

19   proceed here efficiently.

20           You know, from our perspective, some of these topics,

21   like training, the answer is going to be that it's on-the-job

22   training.  You know, at least at this point we haven't seen any

23   written documents describing the training.  It's, you know,

24   hands on, you sit by somebody.  And so that topic should go

25   fairly quickly, at least for Ocwen.

1      And your Honor's point about plaintiffs providing

2   information about what documentations that they're going to be

3   using in the depositions, that was extremely helpful, and we

4   very much appreciate it.

5      From the defendants' perspective, though, some of

6   those documents in those charts are entirely new, which were

7   not requested by the requests for production.  And so we're

8   trying to run those down to see if we can provide that level of

9   sampling, for example, that Ms. Soule talked about when she

10  spoke earlier.  So we're trying to find the information.  But,

11  your Honor, it is a bit of a moving target.  We're still

12  nailing down some of the documentation that was originally

13  requested, so then you're adding to it new things, which we're

14  happy to provide if we can find them in advance of the

15  depositions within that timeframe.  But, remember, we do not

16  have a close of discovery in this case for several months.

17  Plaintiffs requested these depositions early, which is

18  certainly their prerogative.  So we're trying to get them the

19  documentation that they requested as soon as possible.  But

20  when we have additional things being requested, it is adding

21  more time and burden to us, and they're not through the regular

22  request for production.

23      So there's a lot of moving pieces here.  The

24  defendants certainly have been moving forward in good faith on

25  the data front, at least for Ocwen.  Ocwen doesn't have access

1  to a lot of data here because Altisource is the one who is

2  doing the day-to-day work.  Altisource is the one who has the

3  manuals, which is why they've provided them.  So we're finding

4  what Ocwen does have because they're at a level of oversight

5  above them.

6          So, your Honor, we are working very expeditiously, as

7  much as we can, to get the information to plaintiffs.  But

8  simply from our perspective, reserving one or two months for

9  these depositions is not reasonable.  So if your Honor is

10 inclined to go beyond the presumptive limits, we strongly urge

11 that there is some sort of compromise in the middle that won't

12 take up this much time for our corporate representative.

13         I don't know, Mr. Garroway, if you have something to

14 add there for Altisource.

15         MR. GARROWAY: I do, thank you.  This is Nathan

16 Garroway for Altisource.  I think that with respect to the

17 document issue, real quickly, we've produced thousands and

18 thousands of pages over the last month, as opposing counsel

19 recognized.  And so I feel like we've -- we've gotten very

20 close to where plaintiffs wants us to be to prepare for these

21 depositions now in terms of the documents we produced.

22         With respect to the timing issue, it feels like to me

23 that we're a bit backwards here.  Plaintiff is asking for, you

24 know, nine days of deposition testimony for 12 or 13 topics of

25 Altisource.  It feels like that is an extreme amount of time.

1    It's, you know, combined, between Ocwen and Altisource, the

2    plaintiff is seeking 133 hours of deposition time.  I can fully

3    recognize why this case is not limited to the seven hours, but

4    it also doesn't feel like before we've even taken a deposition

5    that it's proper to begin with 133 hours.  It seems like that

6    we should start taking the depositions with a set time period,

7    and then the parties can meet-and-confer to the extent that the

8    plaintiff doesn't think that they got the testimony they

9    needed.  And it feels like starting with 133 hours combined

10   between Ocwen and Altisource really doesn't put any sort of

11   limits on the plaintiff in terms of trying to be efficient in

12   the way they'll take the deposition.

13          And then I think most importantly the problem with

14   133 hours, even over a two-month timeframe, is the massive

15   amount of time it's going to take away from these folks'

16   ability to help with their business duties in addition to --

17          THE COURT:  What about this.  Why don't you -- I

18   don't think you have to have the same witness for each of

19   the -- each of the subjects.  I mean, presumably more than one

20   person is familiar with the various subjects.  It seems to me

21   you can split it up among -- both of you, among your employees.

22   Some come in and testify on certain topics and then some others

23   on others.

24          Now, I appreciate the fact -- I think it's better if

25   it's one person because presumably you can probably leapfrog

1  some of the issues by virtue of the fact you have a witness who

2  is very familiar with one particular area and just proceed to

3  go beyond the scope of that particular -- go to more than one

4  subject at a time.  I mean, I don't see any problem with that.

5        I would certainly -- but it seems that -- I thought

6  the plaintiffs' organization was exceptionally good.  I don't

7  think I've seen organization, at least set forth in a case of

8  this application, quite as thoroughly.  So, I get the

9  impression, I say this, we exercise discretion a lot of times

10  based upon impressions of what we think is going to happen

11  because you never know.  I mean, it could turn out the

12  plaintiff is the most antagonistic type of person in the world

13  and, you know, turns everything into a fight and extend it well

14  beyond what would reasonably be required.

15        I don't get the impression that this case, the fact

16  that you've apparently been very, very cooperative up to now

17  and that why you would cease being cooperative just because

18  I've given a certain amount of leeway to proceeding.  It seems

19  to me that forcing a plaintiff in, you know, compressing their

20  questions into a particular timeframe sometimes creates more of

21  a problem than not, particularly if -- it depends on how the

22  other side treats the deposition too.  If there is continual

23  objection as to form, which I hear thousands and thousands of

24  times over, and over, and over again on depositions, which I

25  never fully understand what that objection means, I'm not

1    saying you're going to do that, but I've seen that over, and

2    over again.  And so that adds -- every time you ask a question,

3    there is an objection as to form, and then the witness has to

4    decide whether or not they should proceed to answer the

5    question or not answer the question.  So that delays things.

6         So I don't know how you folks intend to handle the

7    depositions.  I said I've seen many cases where the depositions

8    have been handled very expeditiously and proceeds and people

9    get the job done.  And then I've seen other cases where the

10   absolute opposite, that one side or the other attempts to delay

11   and create problems and cause extended amounts of time.  So I

12   don't know whether that's going to happen or not.  I would hope

13   it wouldn't in this case, and I don't expect it would.  I'm not

14   suggesting I expect it would, but I've seen it in the past.

15   And I'm always reluctant to hamstring one side or the other on

16   a real tight schedule.  So certainly not -- I would certainly

17   suggest that it could be done -- it doesn't mean 18 days, but I

18   can't say that it can be done in two days either, so --

19        MS. BOGO-ERNST:  Well, your Honor.

20        THE COURT:  -- that's my view of the situation at

21   this particular time.

22        MS. BOGO-ERNST:  Your Honor, this is Ms. Bogo-Ernst

23   again.  You know, there has got to be a compromise, then,

24   between two and 18 days; right?  I mean, according to the US

25   Securities and Exchange Commission *Kandalepas* case that we've

1    cited in our opposition, the better practice is for the

2    deposition to go forward to determine how much time can be

3    covered, and if additional time is needed, the parties try to

4    reach a stipulation.  If not, you know, court intervention may

5    be sought.  That was a Northern District of Illinois case.

6             I mean, can we compromise in between, your Honor, go

7    forward, see if we can be as expeditiously as possible rather

8    than require us to commit to this many days up front?

9             THE COURT:  All right.  Why don't you start this way.

10   Start taking depositions and see how they go.  And my initial

11   reaction would be not to issue a deadline that -- for each of

12   the depositions -- each of the subjects at this particular

13   time, but start out the depositions.  And if I see that one

14   side or the other, in my judgment, is unduly prolonging the

15   matter, then I certainly would not hesitate to cut back or

16   prolong, as the case may be.

17            It seems to me, without knowing how the -- seeing the

18   plaintiff -- the subjects the plaintiff has, and I've been told

19   about -- there is 100,000 pages of documents, there is

20   six-to-700 pieces of property.  And so I have no way of telling

21   whether the plaintiff is being reasonable.

22            I will say that 18 days sounds excessive, but two

23   days, under the facts as I understand in this case, is

24   certainly -- is the opposite extreme.  And so obviously that --

25   it would behoove both sides to compromise.  Whether you can do

1    it by agreement or see to start out and see how it goes.  And

2    then I would certainly be willing to cut back if I think the

3    plaintiff is unwilling -- you know, unreasonably taking time.

4         MS. BOGO-ERNST:  So, your Honor, do you want us to go

5    back, attempt to work out a compromise between the two

6    positions and present it to you?

7         THE COURT:  That would be my desire.  If not -- let

8    me hear what the plaintiff -- I've just spoken.  Let me hear

9    what the plaintiff has to say.

10        MS. SOULE:  Judge, I do -- I think that -- I can tell

11   the court, I can confirm for the court and the defendant that

12   we will not be wasting time or trying to cause problems.  We're

13   going to try to proceed as efficiently as possible.

14        I do think that if the document production -- if we

15   have some documents that clear up issues, we don't -- we just

16   confirm things instead of asking from scratch, I think we're

17   going to be able to go more quickly.

18        I've also said a number of times, some of the

19   subjects are common, are similar.  We would ask one defendant

20   about a subject, we also have to ask the other.  I've said

21   numerous times that, if it turns out we learn a great deal

22   about the subject from the first of those two, it is extremely

23   likely that the second iteration of that with the other

24   defendant, depending on what happens, could be much, much

25   shorter.  So we would then be completely willing to shorten the

1   second of those two.  And if things take a shorter amount of

2   time, we are just as happy.  We have all this work to do in

3   this case, and we -- we want to get done with it as well.

4           So I think it's highly likely that the -- you know,

5   18 full days are not going to be necessary.  But when we're

6   setting out the schedule, trying to get this done -- and we're

7   not -- it's not like we're doing this too soon.  We served our

8   document requests March 6th, specifically focused them on this

9   area, policies and procedures and information about the 700

10  properties.  And, you know, here we are, we're looking at the

11  new year, and we -- we think -- the defendants have said that

12  their document production should be done around this time, and

13  they aren't.  So we think this is a perfect time to do this.  I

14  just want that to be clear.  And we're -- we are not intending

15  to take more time than is needed.

16          We could proceed as the court said.  I don't think

17  there is a need to come up with a compromise ahead of the fact

18  because the compromise is built into what plaintiffs have

19  represented to defendants in our numerous calls already.  We've

20  compromised by giving a list of exhibits.  We've compromised by

21  going through every subject:  What are we going to do.  What

22  are we not going to do.  What are we going to ask.  What are we

23  not going to ask.  We have given lists of documents that are

24  referenced in what's produced to make sure we're not sitting at

25  a deposition, looking at a page, saying, well, this says

1  there's an investor guidelines or there is a delegated

2  authority matrix, but that hasn't been produced.  What is that?

3  Can you describe it?  Wouldn't it be better if the document

4  that is laid out on the page was also there so we could just

5  jump right in.

6       While I think the schedule, as it rolls out, will

7  allow for those documents to be produced, and it will shorten

8  things.  But, you know, I think we deserve a little bit of

9  credit for what we've done, and I think that the end of the

10  schedule is going to be shortened point by point, and it will

11  work out.  The compromise is built into what we've committed.

12       THE COURT:  Well, you've heard what I said, and I've

13  already, I think, given you credit for organization.  And I

14  think that's --

15       MS. SOULE:  Yes, Judge.

16       THE COURT:  I think possibly what you should do is

17  start the depositions and, you know, Subjects 1, 2, 3, 4, and

18  see how you're going.  And then I can either compress or extend

19  based upon how things are going.  That would give both sides an

20  incentive, you know, to speed the thing along as possible and

21  get these -- I think the fact that defendants have been able to

22  find a single witness on each side for each, Altisource and

23  Ocwen, certainly makes things a lot less cumbersome, you know,

24  if you have -- you know, to wait for another witness, and so

25  forth.  And I appreciate the fact that a witness probably would

1    be -- find it difficult to spend nine days, but certainly they

2    can -- this is litigation, important litigation.  It's a case

3    that has to be concluded at some point, so this has to be done.

4           So my idea is, let's proceed as -- with the schedule

5    as plaintiff has suggested it with the particular subjects.

6    And since there is only one witness, we don't have to worry

7    about the witness, and see how far you can go.  And, for

8    example, in a particular day, maybe you can get three or four

9    subjects done in one day, and then -- which would mean that

10   possibly for -- they would reduce from nine days to three days

11   for each -- the Ocwen witness and for the Altisource.  So it

12   seems to me that would be the way to proceed, the way that I

13   would suggest that you proceed.

14          Now, if you want to formalize an agreement, I

15   certainly would be willing to give you a chance to do that.

16   But my ideas would be to proceed sort of without a particular

17   schedule, nine days, six days, three days, or one day, and see

18   how you get along, and then I can analyze and either shorten

19   it.  And if I think the plaintiff is taking too much time by

20   asking irrelevant questions or same question over and over

21   again and -- or the defendant is hampering the procedure, I can

22   either extend or reduce the time and force the plaintiff or the

23   defendant to complete the work in the shorter period of time.

24          So that would be my suggestion.  If you want to take

25   a chance to work it out, I would be happy to let you do that.

1    But I would suggest get ready to proceed as soon as possible.

2    MS. BOGO-ERNST:  Your Honor, so this is

3    Ms. Bogo-Ernst for the defendant.  I would like a chance to

4    attempt to work out a schedule because, for example, our

5    witness is not available that first week of January.  I think

6    that has some depositions with -- on plaintiffs' schedule.  Our

7    witness would like to do two days together, for example, to see

8    if you can just keep rolling.  So maybe we set up, you know,

9    two, two-day blocks, things like that, going forward.  So I

10   think the logistics still need to be worked out.

11   But I like your Honor's idea of seeing how this goes

12   and having the opportunity to come back to the court either

13   way.  So I would appreciate at least the opportunity to try to

14   work out an agreed schedule.

15   THE COURT:  Why don't you come back next week.

16   When are we in next week, Mel?

17   THE CLERK:  Tuesday, December 22nd.  Let me find a

18   time.

19   THE COURT:  If you want to try to do something in the

20   next week, that's the first day -- I only sit on two days a

21   week per our lockdown schedule.  So if you would like to do

22   that, that's fine.  Is that all right with the plaintiff?

23   MS. SOULE:  Yes, Judge.  We fully agree that we

24   should look at it.  And I do think we need to extend the

25   schedule over January and February just because of the number

1   of potential days.  And we could sit down and hammer out

2   what -- like, to lift off of our January-February template and

3   reorganize how those fall in a way that both sides like to

4   have.

5           THE COURT:  Yeah, now that you know that you don't

6   have to prepare for -- or a different witness, it seems to me

7   that, you know, if you conclude one subject at 2:00 o'clock in

8   the afternoon, for example, and proceed to the next subject

9   where you wouldn't have to wait for --

10          MS. SOULE:  Agree.

11          THE COURT:  -- this to come in.  So it seems to me

12  that this idea that one witness for each, Altisource and Ocwen,

13  can handle the entire thing is really very helpful.

14          So, all right.  Why don't you come back next Tuesday,

15  and either you'll have an agreement, or I'll order a specific

16  way it's going to proceed.

17          MS. SOULE:  Okay.  That sounds great.  Thanks, Judge.

18          MS. BOGO-ERNST:  What time, your Honor?

19          THE CLERK:  10:15 a.m.

20          MS. BOGO-ERNST:  Thank you very much.

21          THE COURT:  Thank you.

22          MR. GARROWAY: Thank you, your Honor.

23          MR. WILLIAMS:  Thank you.

24      (Which were all the proceedings heard.)

25

1 CERTIFICATE

2   I certify that the foregoing is a correct transcript from

3 the record of proceedings in the above-entitled matter.

4

5 /s/ *SANDRA M. MULLIN*    December 31, 2020

6 SANDRA M. MULLIN, CSR, RMR, FCRR
 Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25