IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC.; and ALTISOURCE SOLUTIONS, INC., <br><br> Defendants. | Case No. 1:18-cv-00839 <br><br> Honorable Manish S. Shah |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF ARTICLE III STANDING**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1
BACKGROUND ................................................................................................................... 1
STANDARD .......................................................................................................................... 3
ARGUMENT ......................................................................................................................... 4
    A.    Plaintiffs Cannot Create an Injury-In-Fact by Voluntarily Incurring Costs and Then Claiming "Diversion Of Resources" Damages. ..................................... 5
    B.    Plaintiffs Lack Article III Standing Because Their Asserted Frustration of Mission Is Nothing More Than A Setback of Abstract Social Goals ..................... 7
CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Soc. for Prevent of Cruelty to Animals v. Feld Ent., Inc.*,
    359 F.3d 13 (D.C. Cir. 2011) ................................................................................................6

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
    572 F.3d 440 (7th Cir. 2009) ...............................................................................................3, 4

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006) ..............................................................................................................3

*Arizona Alliance for Retired Americans v. Mayes*,
    117 F.4th 1165 (9th Cir. 2024) ..............................................................................................8

*Coal. on Homelessness v. City & Cnty. of S.F.*,
    No. 22-cv-5502, 2024 WL 4982989 (N.D. Cal. Dec. 4, 2024) ..............................................4

*Fair Housing Center of Metro. Detroit v. Singh Senior Living, LLC*,
    No. 23-3969, 2025 WL 16385 (6th Cir. Jan. 2, 2025) ...........................................................8

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ....................................................................................................... passim

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ....................................................................................................... passim

*Judicial Watch, Inc. v. The Illinois State Board of Elections*,
    No. 24 C 1867, 2024 WL 4721512 (N.D. Ill. Oct. 28, 2024) ................................................6

*Legal Aid Chicago v. Hunter Properties, Inc.*,
    23-cv-4809, 2024 WL 4346615 (N.D. Ill. Sept. 30, 2024) ........................................4, 6, 8, 9

*North Texas Equal Access Fund v. Thomas More Soc.*,
    728 F.Supp.3d 887 (N.D. Ill. 2024) .......................................................................................4

*Mathews on behalf of D.W. v. Illinois*,
    690 F.Supp.3d 808 (N.D. Ill. 2023) .......................................................................................3

*RNC v. Benson*,
    No. 24-cv-0262, 2024 WL 4539309 (W.D. Mich. Oct. 22, 2024), appeal docketed, No. 24-1985 (6th Cir. Nov. 8, 2024) ................................................................................................5

*Sarafin v. Hawai'i Pub. Hous. Auth.*,
    No. 24-cv-0066, 2024 WL 5246597 (D. Haw. Dec. 30 2024) ..............................................4

*Travelers United, Inc. v. Hyatt Hotels Corp.*,
   No. 23-cv-2776, 2025 WL 27162 (D.D.C. Jan. 3, 2025)...........................................................6

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
   322 F.3d 942 (7th Cir. 2003) .....................................................................................................3

*Wisconsin Voter Alliance v. Millis*,
   No. 23-cv-1416, 2025 WL 3577775 (E.D. Wisc. Jan. 31, 2025) ..............................................6

**STATUTES**

Fair Housing Act..................................................................................................................1, 4, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1)................................................................................................................5, 9

FED. R. CIV. P. 12(h)(3) ...................................................................................................................9

## INTRODUCTION

Plaintiffs, a collection of community organizations and advocacy groups, lack Article III standing to pursue this lawsuit under the Fair Housing Act as a result of a recent change in the law. Plaintiffs are not residents of the affected communities but instead claim standing based on a "diversion of resources" theory and the alleged "frustration" of their organizational missions. However, the Supreme Court's decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), and recent decisions interpreting it, fundamentally alter the landscape of organizational standing and compel bringing this issue to the Court's attention. These authorities make clear that neither of Plaintiffs' theories of harm suffices to establish a cognizable injury-in-fact. Stated simply, in light of this precedent Plaintiffs cannot establish an injury-in-fact by spending their way to organizational standing by preparing for a lawsuit under a "diversion of resources" theory, nor can they cite supposedly-impeded abstract social goals as an injury-in-fact. As a result, Plaintiffs lack Article III standing, and this case should be dismissed.

## BACKGROUND

When Plaintiffs filed their initial complaint in 2018, following their earlier self-guided "investigation," they claimed various categories of damages, among them a "hind[rance] of Plaintiffs' community investment efforts," Dkt. 141 at ¶ 140, "diversion and expenditure of financial resources and staff time," *id.* at ¶ 143, and "frustrat[ration of] the mission and purpose of NFHA" to "ensure equal housing opportunities," *id.* at ¶ 151. In ruling on Defendants' motion to dismiss then, the Court discussed the Supreme Court's decision in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982). *See* Dkt. 54 at 30-31. The Court noted that Plaintiffs may have alleged an injury-in-fact that could confer standing, but cast doubt that the damages alleged by Plaintiffs could have been caused by the alleged misconduct, and dismissed the claims. *See id.*

Plaintiffs then amended their complaint twice, adding additional damages theories. In partially granting Defendants' motions to dismiss the Second Amended Complaint, the Court dismissed Plaintiffs' claim for loss of economic value of their community investments, Dkt. 97 at 20-21, as well as Plaintiffs' claim for purported "harms to minority neighborhoods," *id.* at 21. Having narrowed the scope of the lawsuit in this way, the Court permitted Plaintiffs to proceed solely based on Plaintiffs' claims for diversion of resources[1] and frustration of mission damages.[2] *Id.* at 17-20.

Following extensive fact and expert discovery, Defendants moved for summary judgment because Plaintiffs were unable to substantiate their diversion of resources damage claim and failed to demonstrate any amount of frustration of mission damages. *See* Dkt. 316 at 31-44. In opposing summary judgment, Plaintiffs argued that their diversion of resources damages were the "opportunity costs of ... pursuing the investigation" into Defendants' maintenance practices. *See* Dkt. 360 at 59. Regarding their investigation costs, Plaintiffs cited their employees' "hourly rates," extrapolated from those employees' regular salaries and an allocation of investigatory overhead expenses taken from Plaintiffs' routine overheard costs. *Id.* at 60. Plaintiffs also noted supposedly illustrative prior expenditures that would show how much they would need to "spen[d] in the future to counteract past discrimination." *Id.* at 61. The contemplated counteractive measures for which

---

[1] Regarding Plaintiffs' claimed damages for employing supposed "counteractive measures," the Court found this category to be "not meaningfully distinguishable" from the diversion of resources category. Dkt 97 at 17-18. In view of that holding, for purposes of this motion, Defendants address both "diversion of resources" and "counteractive measures" damages as a single inclusive category.

[2] While permitting Plaintiffs to attempt to substantiate their claim for frustration of mission damages, the Court expressed skepticism, noting that frustration of mission damages may be an "unnecessary extension" of the diversion of resources category that was "likely to present difficulty in assessing and attributing damages." Dkt. 97 at 19-20.

Plaintiffs claimed frustration of mission damages consist of "education and outreach campaigns" related to maintenance and marketing of foreclosed bank-owned properties. *Id.*

Plaintiffs also articulated their claimed damages for frustration of their mission. Plaintiffs said their missions, which they argue were frustrated by Defendants, are "to ensure that all persons have equal access to housing opportunities in their communities and across the nation." Dkt. 360 at 3. To support this supposedly impeded mission, Plaintiffs said their mission was to "explain the sorts of programs and services they offered that encouraged open housing, including their community investment and neighborhood stabilization services." *Id.* at 61 (internal quotations and alterations omitted). Plaintiffs cited four "categories" of "mission harm," namely "impairment" of its programs to "train" the housing industry, "impairment of the services" to "increase access to homeownership," "diminishment of the organization's ... complaint-based and consumer outreach services," and unspecified "lost opportunities and special initiatives." *Id.*

As explained below, the record demonstrates that, under the recent change in law, Plaintiffs lack Article III standing and the case should be dismissed.

**STANDARD**

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citation omitted). "Because Article III standing is a necessary ingredient of subject matter jurisdiction, standing must be established before the court can reach merits issues . . . ." *Mathews on behalf of D.W. v. Illinois*, 690 F.Supp.3d 808, 820 (N.D. Ill. 2023) (citations omitted).

Challenges to Article III standing can proceed either facially—requiring only analysis of the complaint—or factually, which requires a court to consider whether "there is *in fact* no subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)

(quoting *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (emphasis in original)). "When considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (internal alterations and citations omitted)). "A plaintiff undergoing only a facial attack enjoys treatment of her allegations as true, but that benefit does not carry into the context of a factual challenge." *North Texas Equal Access Fund v. Thomas More Soc.*, 728 F.Supp.3d 887, 895 (N.D. Ill. 2024) (alterations and citation omitted)). "If the material factual allegations are contested, the party invoking federal jurisdiction bears the burden of proving jurisdictional facts by a preponderance of the evidence." *Id.* (citation omitted).

**ARGUMENT**

When the Court previously permitted these organizational Plaintiffs to pursue damages, it did so by citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), in which the Supreme Court outlined the ways in which organizations may have standing "to sue on their own behalf for injuries they have sustained." 455 U.S. at 379 n.19. But in *FDA v. Alliance for Hippocratic Medicine*, the Supreme Court fundamentally altered the landscape of organizational standing and upended *Havens*. As one court in this District recently described *Hippocratic Medicine*, the Supreme Court has "poured some cement around bedrock principles" of standing, and limited *Havens* to its particular "context" as an "unusual case." *Legal Aid Chicago v. Hunter Properties, Inc.*, 23-cv-4809, 2024 WL 4346615, at *10 (N.D. Ill. Sept. 30, 2024).

In the few months since *Hippocratic Medicine* was decided, courts have repeatedly found organizational standing has been dramatically constricted for organization plaintiffs, such as Plaintiffs here. *See, e.g., Sarafin v. Hawai'i Pub. Hous. Auth.*, No. 24-cv-0066, 2024 WL 5246597, at *8-9 (D. Haw. Dec. 30 2024) (rejecting organization's standing to assert Fair Housing Act

claims); *Coal. on Homelessness v. City & Cnty. of S.F.*, No. 22-cv-5502, 2024 WL 4982989, at *11 (N.D. Cal. Dec. 4, 2024) (organizational plaintiff's "proffered injury amounts to a frustration-of-mission and diversion-of-resources theory that is no longer viable"); *RNC v. Benson*, No. 24-cv-0262, 2024 WL 4539309, at *12 (W.D. Mich. Oct. 22, 2024), appeal docketed, No. 24-1985 (6th Cir. Nov. 8, 2024) ("the Court lacks subject-matter jurisdiction, and dismissal under Rule 12(b)(1) is warranted," because allegations that plaintiffs "expended substantial time and resources investigating Defendants" that they would have "expended . . . on other activities or would not have expended [] at all" did not plead a concrete injury under *Hippocratic Medicine*). As explained below, *Hippocratic Medicine* and its progeny establish that in the instant lawsuit Plaintiffs' claimed damages for diversion of resources and frustration are insufficient to constitute an injury-in-fact under this new precedent.

### A. Plaintiffs Cannot Create an Injury-In-Fact by Voluntarily Incurring Costs and Then Claiming "Diversion Of Resources" Damages.

Plaintiffs first argue that they incurred an injury-in-fact sufficient to create Article III standing by pointing to "diversion of resources damages" and "opportunity costs" of conducting their pre-suit investigation. *See* Dkt. 360 at 59 & Background, *supra*. These claimed damages consist of legal expenses and the assignment of hourly wages paid to Plaintiffs' own employees. Plaintiffs also claim future damages to "counteract" Defendants' supposed discrimination. But *Hippocratic Medicine* and recent decisions from this District foreclose any argument that Plaintiffs' voluntary choice to expend their resources in these ways can create standing.

In *Hippocratic Medicine*, the organizational plaintiffs claimed that they "incur[ed] costs to oppose FDA's actions," and that the FDA "'caused' the associations to conduct their own studies," "'forced' the associations to 'expend considerable time, energy, and resources' drafting citizen petitions" and diverting resources "to the detriment of other spending priorities." 602 U.S. at 394.

In rejecting this type of voluntary spending as a basis for Article III standing, the Supreme Court held that a plaintiff cannot "manufacture its own standing" by spending its way to "gather information and advocate against" the purported wrongdoing. *Id. Havens*, the Supreme Court explained, "does not support such an expansive theory of standing." 602 U.S. at 395.

Recent cases in this District explain and expand on *Hippocratic Medicine.* In particular, in *Legal Aid* the court was faced with a Fair Housing Act lawsuit that, like in the instant case, was brought by an organizational plaintiff. 2024 WL 4346615, at *1. The *Legal Aid* court held that "using staff time and money to investigate and bring this case against [defendant]" was just an "opportunity cost," and that standing "must rest on something more than the cost of suing." *Id.* at *13 (alterations omitted). Put differently, "[a]n organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing." *Id.* (citing *Am. Soc. for Prevent of Cruelty to Animals v. Feld Ent., Inc.*, 359 F.3d 13, 25 (D.C. Cir. 2011)). Accordingly, *Legal Aid* further compels the conclusion that Plaintiffs here cannot claim their self-inflicted expenditures preparing for this lawsuit as a basis for Article III standing.

So too, in *Judicial Watch, Inc. v. The Illinois State Board of Elections*, No. 24 C 1867, 2024 WL 4721512 (N.D. Ill. Oct. 28, 2024), the court considered claims for diversion of resources brought by organizational plaintiffs. The court, citing *Hippocratic Medicine*, held that an organizational plaintiff could not create standing under *Havens* "simply because an organization diverts resources in response to a defendant's actions . . . ." 2024 WL 4721512, at *6. )). As the court explained, a plaintiff "cannot spend its way into standing." *Id.* (quoting *Alliance for Hippocratic Med.*, 602 U.S. at 394. *See also Travelers United, Inc. v. Hyatt Hotels Corp.*, No. 23-cv-2776, 2025 WL 27162, at *11 (D.D.C. Jan. 3, 2025) ("[E]xpenditures on investigations and

advocacy alone are not sufficient to confer standing." (citing *Hippocratic Med.*, 602 U.S. at 395). *See also Wisconsin Voter Alliance v. Millis*, No. 23-cv-1416, 2025 WL 3577775, at *5 (E.D. Wisc. Jan. 31, 2025) (with *Hippocratic Medicine*, "the Supreme Court has shut the door on [the] argument" that "divert[ing] resources from other initiatives to litigating in federal court" can confer standing).

These decisions close the door on Plaintiffs' argument that any voluntary spending confers Article III standing on Plaintiffs. While Plaintiffs' diversion of resources argument may have sufficed under some prior overbroad applications of *Havens*, it no longer carries the day. Plaintiffs' voluntary spending and diversion of their financial and human resources in anticipation of litigation cannot confer standing following *Hippocratic Medicine.* Accordingly, Plaintiffs' first of their two grounds for Article III standing, diversion of resources, is insufficient to confer standing.

    **B.**    **Plaintiffs Lack Article III Standing Because Their Asserted Frustration of Mission Is Nothing More Than A Setback of Abstract Social Goals**

Plaintiffs' second argument that Article III standing exists here based on Plaintiffs' claimed "frustration of mission" damages also crumbles under *Hippocratic Medicine* and its progeny. Going back to the outset of this lawsuit, the Court expressed skepticism that Plaintiffs had alleged "frustration of mission damages" that could be differentiated from diversion of resources damages. *See* Dkt. 97 at 19-20. Undeterred, Plaintiffs doubled down. Specifically, in briefing summary judgment, Plaintiffs articulated their frustration of mission damages as harm to their broad social goal of "increas[ing] access to homeownership," as well as describing various forgone initiatives in "consumer outreach services," and, vaguely, "lost opportunities and special initiatives." Dkt. 360 at 61.

But these are precisely the type of generalized abstract harms that are insufficient to constitute the concrete injury needed for Article III standing under *Hippocratic Medicine*. As the

Court explained in *Hippocratic Medicine*, "legal, moral, [and] ideological" objections are insufficient to confer standing. 602 U.S. at 396. The Court reiterated that "[a] plaintiff must show 'far more than simply a setback to the organization's abstract social interests.'" *Id.* at 394 (quoting *Havens*, 455 U.S. at 379)). Rather, the Supreme Court explained, the plaintiff must show its ability to undertake its mission was itself "perceptibly impaired." *Id.* at 395 (quoting *Havens*, 455 U.S. at 379. In other words, to establish standing, the plaintiff must demonstrate not the impairment of its abstract end *goals*, but rather of the very *means* of its ability to undertake its work. *See Fair Housing Center of Metro. Detroit v. Singh Senior Living, LLC*, No. 23-3969, 2025 WL 16385, at *1 (6th Cir. Jan. 2, 2025) (to confer standing, plaintiff must show that its "core business activities" are impaired (quoting *Hippocratic Medicine*, 602 U.S. at 395)).

The Ninth Circuit recently applied *Hippocratic Medicine* in flatly rejecting a nearly identical claim that frustration of mission damages confers Article III standing in *Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 1165 (9th Cir. 2024). In rejecting the argument that the plaintiff organization there had standing because it spent money advocating against the defendant's actions, the Ninth Circuit held that prior precedents "allow[ing] plaintiffs to satisfy Article III using the sort of frustration-of-mission and diversion-of-resources theories the Supreme Court rejected in *Hippocratic Medicine*" are "irreconcilable with *Hippocratic Medicine*—and thus overruled." *Id.* at 1178. The same result should issue here.

To the same effect is *Legal Aid Chicago*. In that Fair Housing Act case, the "gist of the alleged injury" asserted by the plaintiff was that it was "harder for [plaintiff] to accomplish its mission." 2024 WL 4346615, *Id.* at *12. Citing *Hippocratic Medicine*, the *Legal Aid* court held that this was "not a recipe for standing" because defendants' "alleged actions are exactly the target of Legal Aid Chicago's work, and its reason for operating." *Id.* As the *Legal Aid Chicago* court

explained, a plaintiff cannot recover for frustration of mission unless there was "an impairment of its ability to do work *within* its core mission." 2024 WL 4346615, at *10 (emphasis in original). In short, creating more work for an organization to do "doesn't stop it from doing [its] job. It is what creates and deepens the need for the job." *Id.*

That reasoning applies here. Plaintiffs assert that their "mission is to ensure that all persons have equal access to housing opportunities in their communities and across the nation." Dkt. 360 at 3. Plaintiffs have *not* shown a frustration of their ability to undertake their work to "ensure equal access," but rather are suing Defendants for creating a *greater need* for Plaintiffs' work. In other words, Defendants' challenged conduct is Plaintiffs' *raison d'etre*. It is thus the opposite of a frustration of Plaintiffs' mission. Accordingly, under *Hippocratic Medicine*, this type of abstract injury, which at most provides Plaintiffs with more work to fulfil their stated missions, does not confer Article III standing.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' claims pursuant to FED. R. CIV. P. 12(b)(1) and 12(h)(3).

Dated: February 7, 2025

Respectfully submitted,

By: */s/ Kenneth M. Kliebard*
Kenneth M. Kliebard
Michael W. Fakhoury
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, Illinois 60606-1511
Telephone: (312) 324-1000
kenneth.kliebard@morganlewis.com
michael.fakhoury@morganlewis.com

Kurt W. Rademacher (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, Pennsylvania 19103-3007

Telephone: (215) 963-5000
kurt.rademacher@morganlewis.com

*Counsel for Defendants Deutsche Bank National Trust Company, as Trustee, and Deutsche Bank Trust Company Americas, as Trustee*

By: */s/ Debra Bogo-Ernst*
Debra Bogo-Ernst
**WILLKIE FARR & GALLAGHER LLP**
300 N. LaSalle Dr.
Chicago, IL 60654
(312) 728-9000
dernst@willkie.com

*Counsel for Defendant Ocwen Loan Servicing, LLC, n/k/a Onity Group Inc.*

By: */s/ Nathan Garroway*
Nathan Garroway
**DENTONS US LLP**
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
nathan.garroway@dentons.com

*Counsel for Defendant Altisource Solutions, Inc.*

## CERTIFICATE OF SERVICE

      The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on February 7, 2025.

                                                 /s/ *Kenneth M. Kliebard*