# EXHIBIT D

```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
      NATIONAL FAIR HOUSING          )
 4    ALLIANCE; HOPE FAIR HOUSING    )
      CENTER, et al.,                )
 5                                   )
                                     )
 6                      Plaintiffs,  )
                                     )
 7           vs.                     ) No. 1:18-cv-00839
                                     )
 8    DEUTSCHE BANK NATIONAL         )
      TRUST, as trustee, et al.,     )
 9                                   )
                                     )
10                      Defendants.  )

11

12           The videotaped deposition of LINDSAY

13    AUGUSTINE, Volume 1, called by the Defendant for

14    examination, taken remotely pursuant to notice and

15    pursuant to the Federal Rules of Civil Procedure for the

16    United States District Courts pertaining to the taking

17    of depositions, taken before April M. Metzler, Certified

18    Shorthand Reporter, Registered Professional Reporter,

19    Certified Realtime Reporter, and Notary Public, at

20    Royersford, Pennsylvania, commencing at 9:35 a.m.

21    Central Standard Time on the 15th day of June, 2021.

22

23

24
```



```
1    APPEARANCES:

2         SOULE, BRADTKE & LAMBERT
          MR. JAMES G. BRADTKE
3         402 Campbell Street
          Suite 100
4         Geneva, Illinois 60134
          Phone:  (630) 333-9144
5         E-Mail:  jbradtke@sbllegal.com

6              On behalf of the Plaintiffs,
               appeared remotely;
7
          DANE LAW LLC
8         MR. STEPHEN DANE
          312 Louisiana Avenue
9         Perrysburg, Ohio 43551
          Phone:  (419) 873-1814
10        E-Mail:  sdane@fairhousinglaw.com

11             On behalf of the Plaintiffs,
               appeared remotely;
12
          RELMAN COLFAX PLLC
13        MS. YIYANG WU
          1225 19th Street, N.W.
14        Suite 600
          Washington, District of Columbia 20036
15        Phone:  (202) 728-1888
          E-Mail:  ywu@relmanlaw.com
16
               On behalf of the Plaintiffs,
17             appeared remotely;

18        DENTONS US LLP
          MR. NATHAN L. GARROWAY
19        303 Peachtree Street, NE
          Suite 5300
20        Atlanta, Georgia 30308
          Phone:  (404) 527-4000
21        E-Mail:  nathan.garroway@dentons.com

22             On behalf of the Defendant,
               Altisource Solutions, Inc.,
23             attended remotely;

24
```



```
 1   APPEARANCES (Continued):

 2        DENTONS US LLP
          MS. LISA KRIGSTEN
 3        4520 Main Street
          Suite 1100
 4        Kansas City, Missouri 64111
          Phone:  (816) 460-2400
 5        E-Mail:  lisa.krigsten@dentons.com

 6             On behalf of Defendant,
               Altisource Solutions, Inc.,
 7             attended remotely;

 8        MORGAN, LEWIS & BOCKIUS, LLC
          MR. KENNETH M. KLIEBARD
 9        77 West Wacker Drive
          Chicago, Illinois 60601
10        Phone:  (312) 324-1000
          E-Mail:  kenneth.kliebard@morganlewis.com
11
               On behalf of Defendant,
12             Deutsche Bank National Trust, as trustee,
               attended remotely;
13
          MORGAN, LEWIS & BOCKIUS, LLC
14        MR. VICTOR H. CRUZ
          1717 Main Street
15        Suite 3200
          Dallas, Texas 75201
16        Phone:  (214) 466-4000
          E-Mail:  victor.cruz@morganlewis.com
17
               On behalf of Defendant,
18             Deutsche Bank National Trust, as trustee,
               attended remotely;
19
          MAYER BROWN LLP
20        MS. DEBRA L. BOGO-ERNST
          MS. JACEY D. NORRIS
21        71 South Wacker Drive
          Chicago, Illinois 60606
22        Phone:  (312) 782-0600
          E-Mail:  dernst@mayerbrown.com
23
               On behalf of Defendant,
24             Ocwen Loan Servicing, LLC,
               appeared remotely.
```



```
1    ALSO PRESENT:

2         Ms. Rebecca Sipowicz,
          Ocwen in-house counsel,
3         attended remotely

4         Ms. Callan Showers, Relman Colfax PLLC,
          attended remotely
5
          Mr. Eric Spett
6
          Mr. Andrew Kim, videographer
7
                         *    *    *    *    *    *
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```



```
 1        Q.   Okay.  We'll get into the complaint later, so

 2   I do appreciate that offer.  We'll make sure we go back

 3   and ask you about the particular pieces, but you've

 4   given me a good overview, I think, to start.

 5             So Ms. Augustine, have you ever communicated

 6   with anybody at Deutsche Bank?

 7        A.   Not directly.  NFHA did have various meetings

 8   with employees at Deutsche Bank and/or lawyers, and I

 9   was present for some of those meetings.

10        Q.   So what do you mean by "not directly"?

11        A.   Well, I would have been in the room, you know,

12   conversing with them in the meeting setting, but not

13   one-on-one, not via email one-on-one.

14        Q.   That's helpful.

15             Do you remember when those meetings took

16   place?

17        A.   I don't.  I don't recall.  I would -- I would

18   have to guess approximately 2015 or '16, around there.

19   I don't have the exact date.

20        Q.   Do you remember how many meetings of which you

21   were a part which Deutsche Bank was present?

22        A.   At least -- at least one.  At least one.

23        Q.   Do you remember who from NFHA was with you in

24   that meeting or those meetings?
```

1        A.    To my recollection, that would have been

2    Shanna Smith, our previous CEO.  I believe our general

3    counsel was present, Morgan Williams, and potentially

4    also Shanti Abedin from NFHA, if I recall.

5        MS. BOGO-ERNST:  I think we're getting a little bit

6    of feedback.  If we could make sure everybody mutes

7    their line, that would be great.

8    BY MS. BOGO-ERNST:

9        Q.    And you said Shanti Abedin.

10            Did I pronounce that correctly?

11       A.    Yes.

12       Q.    What was Shanti's role?

13       A.    Shanti, I don't recall her exact title, but

14   she was a lead investigator also on the REO

15   investigations.

16       Q.    Do you recall any others present at the

17   Deutsche Bank meeting, other than the folks you've

18   testified about here today from NFHA?

19       A.    I do not recall any others.

20       Q.    How about on the Deutsche Bank side; did you

21   know any of the names of the folks who were there for

22   Deutsche Bank?

23       A.    I did not, no.  I don't recall.

24       Q.    And what do you remember about the substance



 1    of that meeting that took place?

 2         A.    That meeting was with HUD investigators.  We

 3    had a pending HUD administrative complaint against

 4    Deutsche Bank at that time.  And so the substance was

 5    regarding the allegations made in the complaint, which

 6    are similar to what we have in the litigation today.

 7         Q.    Can you remember any specific statements or

 8    things that were discussed at that meeting?

 9         A.    Generally, NFHA and we shared our evidence and

10    our investigative findings.  I don't recall any

11    specifics about what Deutsche Bank representatives would

12    have said.

13         Q.    Did you personally present any of the evidence

14    at that meeting with Deutsche Bank?

15         A.    I did not.  I would have prepared it, but not

16    presented it.  Assisted in preparing it.

17         Q.    Okay.  And who presented at that meeting for

18    NFHA?

19         A.    That would have been Shanna Smith and/or our

20    attorneys representing NFHA.

21         Q.    Was the evidence that NFHA presented at that

22    meeting with Deutsche Bank in or around 2015 or 2016,

23    was that the same evidence that's contained in the

24    complaint in this case?



1      A.   It would include some of the same evidence,

2  yes.  But since that meeting, we had collected

3  additional evidence.  So the complaint today includes

4  additional evidence.

5      Q.   Does the complaint today include the same

6  evidence from the earlier time period that you presented

7  in the HUD meeting?

8      A.   It does yes.

9      Q.   Would the complaint today include any

10 additional materials that would have existed as of the

11 time you shared at the HUD meeting?

12     A.   Can you repeat the question?  I'm sorry.

13     Q.   Yeah.  I can rephrase it, actually.

14          So, you know, what I'm trying to figure out

15 is, putting aside any additional evidence that you would

16 have gathered after the Deutsche Bank meeting, did you

17 have any precomplaint -- Or strike that.

18          Did you have any evidence in your possession

19 that you did not present at the HUD meeting for whatever

20 reason?

21     MS. WU:  Objection to form.

22 BY THE WITNESS:

23     A.   To my recollection, no, we would have

24 presented the most accurate up to date evidence that we

1    had at that time.

2         Q.   Did you present a PowerPoint or any written

3    materials at that meeting?

4         A.   I don't recall.  I don't remember.

5         Q.   If you had presented written materials, would

6    NFHA still have those today?

7         A.   We would, yes.

8         Q.   Have you told me everything you remember about

9    that meeting with Deutsche Bank in 2015 or 2016?

10        A.   Yes.

11        Q.   Let's turn to defendant Ocwen.

12             Have you ever had any direct communications

13   with anyone at Ocwen?

14        A.   I have also similarly attended various phone

15   calls or in-person meetings with Ocwen representatives

16   alongside NFHA staff and our attorneys.

17        Q.   And how many phone calls or meetings have you

18   had with Ocwen as a participant?

19        A.   I would say two or three, to my recollection.

20        Q.   Do you recall if those were all in person or

21   whether some were over the phone?

22        A.   I believe at least one was over the phone and

23   I believe two were in-person, if I remember correctly.

24        Q.   These questions are going to sound familiar.

1    Just want to understand everything you remember.  Okay?

2              So from National Fair Housing Alliance, NFHA,

3    as we've been calling you in this deposition, which

4    representatives participated in the in-person meetings?

5        A.   That would have been Shanna Smith again, our

6    CEO.  Our general counsel, Morgan Williams.  I don't

7    recall if he was in person or on the phone because he's

8    located in New Orleans, Louisiana, so sometimes he is in

9    person and sometimes he is calling in, so I don't quite

10   recall.

11             And Lisa Rice may have been in attendance.

12   She is currently our CEO, and at that time would have

13   been the vice president at NFHA.

14       Q.   Anyone else that you can recall from NFHA who

15   would have participated in the in-person meetings with

16   Ocwen?

17       A.   It may also have been Shanti Abedin.  But I

18   don't have the attendees, so it's a best guess.

19       Q.   Anyone else who you can recall from NFHA?

20       A.   No.

21       Q.   And where were those in-person meetings, do

22   you remember?

23       A.   Yes.  Those were in Washington, D.C. at a --

24   at a law firm, and I don't -- I'm trying to recall the

1    name of the law firm, and I don't remember.  I don't

2    remember the law firm.  But it was at a law firm office.

3          Q.   For both meetings, correct?

4          A.   Yes.  The same office.

5          Q.   And I should have asked you about the Deutsche

6    Bank meeting.  Was that also at the same law firm in

7    Washington, D.C., or was that at a different location?

8          A.   That was located in -- at HUD in Washington,

9    D.C., Department of Housing and Urban Development.

10         Q.   No, that's good.  Thank you for the

11   clarification.

12              So back to the Ocwen meetings.

13              So the in-person one -- the in-person two

14   meetings, approximately when were those meetings?

15         A.   I don't -- I don't recall.  It would have --

16   if I would guess, it would be around 2014 to 2016, but I

17   don't quite -- I don't have that in front of me,

18   unfortunately.

19         Q.   What was the subject matter of the in-person

20   meetings with Ocwen?

21         A.   It was similar to what we would have had

22   discussed with Deutsche Bank, that we were, you know,

23   concerned with the discriminatory patterns in

24   maintenance and marketing that we were seeing in



1    communities of color, and in particular with the

2    Ocwen-serviced properties that we investigated.

3          Q.   What do you mean by "in particular with the

4    Ocwen-serviced properties"?

5          A.   Sure.  So when we met with Ocwen, we were

6    focusing on the properties that we knew were

7    Ocwen-serviced Deutsche Bank --

8                     (Stenographer clarification.)

9    BY THE WITNESS:

10         A.   -- properties.

11         Q.   So who from NFHA presented NFHA's position to

12   Ocwen?

13         A.   That would have been mainly Shanna Smith.

14         Q.   And who from Ocwen do you recall was present

15   for these meetings in Washington, D.C.?

16         A.   I do not recall.  They were -- there were some

17   in-person, and I believe there were some on the phone as

18   well.  I don't recall.

19         Q.   So in terms of the phone calls, you think

20   there was one with Ocwen; is that right?

21         A.   Yes.  To the best of my recollection, yes.

22         Q.   And would the same participants from NFHA have

23   been involved in that phone call as the in-person

24   meeting?



1      A.   Yes.  Shanna Smith and Morgan Williams.

2      Q.   And is it your testimony that you do not

3  remember who from Ocwen was on that phone call?

4      A.   That's correct, yes.

5      Q.   And so the phone call and the meetings were

6  all focused on NFHA presenting information to Ocwen

7  concerning NFHA's position on the REO maintenance and

8  marketing, correct?

9      A.   Yes, that is correct.

10      Q.   Do you know if you had written materials

11  accompanying those meetings that you presented to Ocwen?

12      A.   We may.  I don't recall.  But I -- similarly

13  to Deutsche Bank, if we did, we would have them, so ...

14      Q.   Is the information that you presented to

15  Ocwen, at least as of that point in time, is that the

16  same information that's contained in the complaint and

17  the amended complaints in this case?

18      A.   If they were Deutsche Bank-owned REOs, then,

19  yes.  We may have also shown them other lenders that

20  were serviced by Ocwen, and if those were other lenders,

21  those would not be in the Deutsche Bank complaint, but

22  if they were Deutsche Bank Ocwen-serviced REO

23  properties, yes.

24      MS. WU:  I objected to form prior to that.



1                    (Discussion off the record.)

2    BY MS. BOGO-ERNST:

3        Q.   So, Ms. Augustine, in terms of what you would

4    have presented Ocwen at the time, you would have

5    presented Ocwen all the evidence that you had gathered

6    as to Ocwen at that point in time, correct?

7        MS. WU:  Objection to form.

8    BY THE WITNESS:

9        A.   Without the materials in front of me, what I

10   recall, we -- we would have presented the analysis that

11   we had conducted to date, and we most likely, if I

12   recall correctly, would have shown them examples, you

13   know, example photographs, similar to what we have in

14   our complaints and press releases.

15       MS. BOGO-ERNST:  I think you broke up right there

16   at the end.

17            Could you repeat your last sentence?

18       THE WITNESS:  Yes.

19   BY THE WITNESS:

20       A.   We would have shown them photo examples,

21   similar to what NFHA would have shown to the press or

22   put in complaints, you know, examples of that nature.

23       Q.   Have you told me everything that you can

24   recall about your meetings and telephone call with



1  Ocwen?

2     A.   Yes.

3     Q.   Have you had any other communication, direct

4  or indirect, with Ocwen over time?

5     A.   Not that I recall.  There -- I wasn't usually

6  included on emails if our CEO or vice president and our

7  attorneys communicated with Ocwen, but I could have

8  been.  Not to my knowledge, but (nodding) ...

9     Q.   Do you remember what happened as a result of

10 your meetings with Ocwen?  Did Ocwen get back to you

11 with a position, or sort of what was the resolution of

12 those meetings and that phone call?

13    A.   To my -- I mean, as I mentioned, I wasn't

14 always included on the follow-up communications.  That

15 was usually between NFHA leadership and our attorneys.

16         But, to my recollection, nothing -- oh, go

17 ahead, sorry.

18    MS. WU:  If you're going to be learning [sic]

19 something that you learned from your attorneys, I'll

20 instruct you not to respond to that.

21    THE WITNESS:  Okay.

22 BY THE WITNESS:

23    A.   Well.  Then yes, it would have been at --

24 learned from correspondence with attorneys.



1       Q.   So sitting here today, you don't have an

2    independent basis, apart from your attorneys, to

3    understand what the resolution of the meetings and phone

4    call with Ocwen was?

5       A.   My individual understanding is that there was

6    no resolution.

7       Q.   And as a result, you later filed a complaint,

8    correct?

9       A.   That's correct, yes.

10      Q.   How about the same question with respect to

11   the Deutsche Bank meeting.  What was your understanding

12   of the results of the meeting that you had with Deutsche

13   Bank?

14      A.   Similarly, there was no resolution.

15      Q.   And were you involved in any other indirect or

16   direct conversation with Deutsche Bank which you have

17   not testified about here today?

18      A.   No.

19      Q.   Let's move to the third defendant and final

20   defendant, in terms of this line of questions,

21   Altisource.

22           So have you had any direct or indirect

23   communications with Altisource?

24      A.   To my recollection, there were also Altisource

1    representatives present at those two in-person meetings

2    with Ocwen, and they may have also -- I believe they

3    were also on that one phone call as well.

4        Q.   So that's a good clarification.  So other than

5    NFHA representatives and Ocwen representatives and

6    Altisource representatives, were there any other folks

7    involved in any of the meetings or call with Ocwen and

8    Altisource?

9        A.   Not -- not that I recall.  There may have been

10   a Deutsche Bank representative, but I don't -- I don't

11   remember, but no others.

12       Q.   So HUD was not involved in those

13   Ocwen/Altisource meetings, correct?

14       A.   No.  That is correct, HUD was not involved,

15   yes.

16            I'm sorry, I don't remember the lawyer's name,

17   but we did have a mediator, and that is at the office

18   where we met.

19       Q.   So were the two in-person meetings with Ocwen

20   and Altisource related to a mediation then?

21       A.   Well, that would not have been my role.  I

22   guess I was there more to just assist with speaking

23   about the investigation and the findings.  But I do

24   recall that the purpose was to, you know, tell them what



1    our findings, our concerns, share with them the

2    discriminatory evidence that we had found, in the hopes

3    of resolving the issue.

4         Q.   Do you know if both of the in-person meetings

5    were of a mediation context, or was one of them an

6    informal meeting without a mediator present?

7         A.   No.  A mediator was present for both meetings.

8         Q.   And do you recall the mediator's name?

9         A.   I do not.  I can see his face, but I don't --

10   no, I'm sorry.  I don't remember his name.

11        Q.   That's okay.

12             You testified that Altisource was present for

13   those two meetings and the phone call that you had.

14             Have you had any other direct communication or

15   indirect communication with Altisource that you have not

16   testified about here today?

17        A.   Not to my recollection.  Similarly to Ocwen,

18   there may have been an email or two, you know, where it

19   was NFHA leadership and our attorneys, and I may have

20   been CC'd on it.  But, to my recollection, no other

21   contact.

22        Q.   And what is your understanding of Ocwen's role

23   with respect to the Deutsche Bank properties?

24        A.   To my understanding, Ocwen is the loan

```
 1   UNITED STATES OF AMERICA        )
     NORTHERN DISTRICT OF ILLINOIS   )
 2   EASTERN DIVISION                )    SS.
     STATE OF ILLINOIS               )
 3   COUNTY OF COOK                  )

 4

 5

 6              I, April M. Metzler, Certified Shorthand

 7   Reporter, Registered Merit Reporter, Certified Realtime

 8   Reporter, do hereby certify that LINDSAY AUGUSTINE was

 9   first duly sworn by me to testify to the whole truth and

10   that the above videotaped remote deposition was reported

11   stenographically by me and reduced to typewriting under

12   my personal direction.

13              I further certify that the said remote

14   deposition was taken at the time and place specified and

15   that the taking of said deposition commenced on the

16   15th day of June, 2021, at 9:35 a.m. CST.

17              I further certify that I am not a relative or

18   employee or attorney or counsel of any of the parties,

19   nor a relative or employee of such attorney or counsel,

20   nor financially interested directly or indirectly in

21   this action.

22

23

24
```



1          In witness whereof, I have hereunto set my

2    hand and affixed my seal of office at Chicago, Illinois,

3    this 25th of June, 2021.

4

5

6

7    _____

8    APRIL M. METZLER, CSR, RMR, CRR, CRC, FCRR
     180 North LaSalle Street
     Suite 2800
9    Chicago, Illinois 60601
     Phone:  (312) 236-6936

10

11   CSR No. 084-004394

12

13

14

15

16

17

18

19

20

21

22

23

24

