**Exhibit B**

Defendants suggest that Plaintiffs' experts have disclaimed Plaintiffs' data collection methodology. This is false, and only accomplished by misrepresenting the testimony of Dr. Timothy Guetterman, who in fact testified:

• "NFHA's . . . sampling method, I think it was appropriate in order to try to understand this issue if there was differences in REO properties between majority white, majority non-white neighborhoods"; and

• "I would say that based on the types of data that they collected, based on their work with community partners, to me, it seems to, you know, certainly fit a definition of a mixed methods study, which is an ideal fit for highly applied investigations such as this or studies such as this."

(PSF ¶ 282) His expert report states: "[T]he methods of sampling, data collection, and analysis were well-designed and rigorous. Based on the aim of the study and the selected design and methods, I am confident that this study would meet criteria for publication in high-quality, peer reviewed academic journal should the investigators decide to publish the results." (PSF ¶ 283)

Defendants misleadingly imply that Dr. Guetterman agreed with Defendants' argument that Plaintiffs' evidence is only demonstrative of disparate impact among the specific properties investigated. This is again false. Dr. Guetterman testified that he would not generalize to *other metropolitan areas* not included in the Plaintiffs' study. (PSF ¶ 284) He continued by explaining that he did not understand it was the intent of the Plaintiffs to use the data analysis to prove discrimination in areas beyond those metropolitan areas. (PSF ¶ 284) This testimony is entirely consistent with Plaintiffs' theory of the case and proof and entirely inconsistent with Defendants' suggestion that Plaintiffs' statistical showing must be limited either to the specific properties inspected or some sub-part of the metropolitan areas considered.

Dr. Ayres also testified repeatedly that there were indicia of quality in Plaintiffs' sample, which rendered the regressions "within the norms of the social science profession." (PSF ¶ 74-75) Dr. Ayres' testimony completely contradicts Defendants' claim that Plaintiffs' sample was "fundamentally flawed" or that the resulting regression is "half-baked." (Defs.' Br. at 15, 16)

Dkt. 360 at 26-27.