IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC.; and ALTISOURCE SOLUTIONS, INC., <br><br> Defendants. | Case No. 1:18-cv-00839 <br><br> Honorable Manish S. Shah |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED *DAUBERT*
MOTION AS TO OPINIONS OF STACY SEICSHNAYDRE AND MOTION FOR
CLARIFICATION ON DAMAGES ISSUES AND STANDING**

Defendants renew their Motion to Exclude Opinions of Dr. Stacy Seicshnaydre, Plaintiffs' damages expert, Dkt. Nos. 307, 308, 389 ("*Daubert* Motion") and also move for clarification of part of the Court's March 31, 2025 Memorandum Opinion and Order addressing Defendants' summary judgment and *Daubert* motions ("MSJ Ruling"). Dkt. No. 442. Granting Defendants' requests will provide helpful guidance to the parties as they approach the upcoming July 11, 2025 and August 18–20, 2025 mediation sessions and, if necessary, trial.

## I. The Seicshnaydre *Daubert* Motion Should Be Granted.

Defendants renew their *Daubert* Motion. The Court denied the motion without prejudice subject to renewal because "determining damages [was] not essential to resolving liability" when ruling on summary judgment. Dkt. No. 442 at 33. However, resolving the *Daubert* Motion will inform the parties' mediation and trial preparation efforts. Accordingly, Defendants respectfully request that the Court grant their *Daubert* Motion at this time.

## II. The MSJ Ruling Eviscerated Plaintiffs' Frustration Of Mission Damages.[1]

Defendants' *Daubert* Motion establishes that Seicshnaydre invented her frustration of damages framework from thin air; it is not a recognized way to assess such damages. But, even assuming Seicshnaydre applied a recognized framework for assessing and computing damages (which she did not), the Court's MSJ Ruling: (i) demonstrates that Seicshnaydre's failure to delineate purported damages for each Plaintiff destroys standing and their alleged frustration of mission damages; and (ii) eliminates categories within Seicshnaydre's frustration of mission damages framework. Accordingly, Plaintiffs cannot recover frustration of mission damages.

---

[1] The Court granted Defendants' Request to file this motion to, among other things, demonstrate how the Court's MSJ Ruling impacted damages. May 13, 2025 Transcript (Ex. 1 hereto) at 17.

**A.  Seicshnaydre's Failure To Determine Purported Frustration Of Mission Damages For Each Plaintiff Is Fatal To Plaintiffs' Standing And Alleged Damages.**

The Court's MSJ Ruling reminded Plaintiffs that "each organization must demonstrate standing to recover individual damages." Dkt. No. 442 at 21. This cannot be satisfied through Plaintiffs' diversion of resource logs for their purported time investigating Defendants, as Plaintiffs cannot spend their way into standing. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024). Plaintiffs are left to rely on alleged frustration of mission damages to establish standing and recover individual damages.

Yet, these purported frustration of mission damages are built on a house of cards. In each Plaintiff corporate representative deposition, the deponents testified that they were relying on expert testimony to quantify their frustration of mission and other damages.[2] As a result, it was incumbent upon Plaintiffs' damages expert, Seicshnaydre, to delineate the precise frustration of mission damages incurred by each Plaintiff. She failed to do so, despite Defendants' repeated requests for Plaintiffs to set forth their alleged damages in detail. Indeed, after Defendants questioned Seicshnaydre's initial expert report for failure to delineate purported damages, she submitted a Supplement to her Expert Report ("Supplement"). This Supplement focused on her purported methodology for calculating frustration of mission damages and provided purported

---

[2] *See, e.g.,* Ex. 2 hereto (July 13, 2022 NFHA 30(b)6) (Lisa Rice)) at 285:11–286:1 ( "I don't know how much [frustration of mission damage] we are asking. We are waiting for our expert analysis to determine that."); Ex. 3 hereto (Nov. 3, 2021 Fair Housing Continuum 30(b)(6) (David Baade)) at 198:5–13 ("Q: And how did Continuum quantify [frustration of mission]? Mr. Baade: I don't believe we did. I don't believe there's a number for frustration of mission."); Ex. 4 hereto (Apr. 14, 2022 Central Ohio Fair Housing Ass'n 30(b)(6) (James McCarthy)) at 159:7–13 (stating that the organization has not calculated frustration of mission damages and did not know what evidence it intended to expert to calculate those damages); Ex. 5 hereto (Mar. 4, 2022 Metropolitan Milwaukee Fair Housing Council 30(b)(6) (William Tisdale)) at 147:10–15 ("the frustration calculation would be made by our experts and by – with consultation with our attorneys.").

frustration of mission damages figures for the first time. In opining on damages, Seicshnaydre simply added up the staff compensation portions of available Form 990s (from some but not all Plaintiffs) for a four-year period and determined "an average annual figure of $9,950,000" for all the organizations combined.³ Dkt. No. 308-2 at 3. She then used this figure to extrapolate combined frustration of mission damages for all Plaintiffs. But she ***never attempted to apportion or otherwise divide these purported damages amounts Plaintiff-by-Plaintiff based on how each Plaintiff organization supposedly had its particular mission frustrated.*** This failure to apportion damages is fatal both to Plaintiffs' standing and to their ability to recover frustration of mission damages. *See Taylor Made Express, Inc. v. Kidd*, No. 21 CV 2903, 2024 WL 4835900 at *2 (N.D. Ill. Nov. 20, 2024) (precluding damages not calculated in plaintiffs' expert report); *Alliance for Hippocratic Medicine*, 602 U.S. at 395. And, Plaintiffs cannot get around their failure to delineate damages by saying the jury should be able to make this determination – Plaintiffs deferred to their own purported expert to calculate these damages, and their expert did not do it. *See Taylor Made Express, Inc.*, 2024 WL at *2 (citing to Fed. R. Civ. P 26(a)(1)(A)(iii), (a)(2), 37(c)(1) and explaining that "'the old-fashioned way' [of] presenting whatever evidence it wants at trial... predates the Federal Rules of Civil Procedure and controlling case law, which require parties to timely disclose their damages theories").

      Plaintiffs cannot expect the jury to do what they could not do and their expert failed to do. Accordingly, the case should be dismissed for lack of standing (*Hippocratic Medicine*, 602 U.S. at 395) or, at a minimum, Plaintiffs should be precluded from recovering any frustration of mission damages, which is the focus of Seicshnaydre's Supplement to her Expert Report.

---

³ As set forth in Defendants' *Daubert* motion, Seicshnaydre's framework for assessing damages, by using average staff compensation, has no foundation in the law and fails Fed. R. Evid. 702 and *Daubert*. Dkt. No. 308 at 4–9.

### B. The MSJ Ruling Eliminated Seicshnaydre's Five Frustration Of Mission Damages Categories.

In confining the case to the § 3604(b) claim, the Court gutted Seicshnaydre's frustration of mission damages opinions. Specifically, the Court granted summary judgment as to Plaintiffs' housing availability (§ 3604(a)), real estate financing or sales mechanisms (§ 3605), and perpetuation of segregation claims. MSJ Ruling, Dkt. No. 442 at 105, 107. Only Plaintiff's § 3604(b) claim remains, which prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of [race]." 42 U.S.C. § 3604(b). Without the dismissed claims, Plaintiffs cannot recover *any* of the five categories of frustration of mission damages outlined in Seicshnaydre's report.[4]

> *i. Impairment of broader mission of overcoming neighborhood stereotypes to achieve housing choice and integration.*

Seicshnaydre claims that Plaintiffs are entitled to $8,370,000 in frustration of mission damages for "the way Defendants' neighborhood-based discrimination perpetuated neighborhood stereotypes that derailed the [fair housing organizations'] broader mission." Dkt. No. 308-2 at 3–4. This squarely ties to Plaintiffs' perpetuation of segregation claim, which was dismissed by the Court. Accordingly, this portion of Seicshnaydre's damages opinion should be stricken, and Plaintiffs should be barred from recovering these damages.

> *ii. Impairment of programs designed to train and marshal the housing industry to market and invest in neighborhoods equally.*

Seicshnaydre's report includes $5,580,000 for purported frustration of mission damages "to support the operational effort necessary to train and marshal the housing industry to market and invest in neighborhoods equally." Dkt. No. 308-2 at 4–5. This type of claimed injury falls

---

[4] See Ex. 6 hereto (Chart of Seicshnaydre's Categories of Frustration of Mission Damages, originally submitted with the *Daubert* Motion, Dkt. No. 308 at 5).

directly within the "issue advocacy" efforts that relate to Plaintiffs' broad social or policy goals like "training industry stakeholders" (rather than Defendants' "specific REO conduct") that the Court found were insufficient to confer standing. MSJ Ruling, Dkt. No. 442 at 20. As a result, the Court should strike this section of Seicshnaydre's report, and Plaintiffs should be barred from recovering these damages.

     iii. *Impairment of services designed to increase access to homeownership and promote equalization/stabilization of neighborhoods.*

Seicshnaydre opines that Plaintiffs collectively were harmed by $11,407,662 in "compensation for the way Defendants' neighborhood-based discrimination impaired the [fair housing organizations'] programs designed to mitigate the perception that African-American neighborhoods are not worthy of prime credit, equal investment and stabilization." Dkt. No. 308-2 at 5–6. While she says a portion of this activity was to counsel consumers and increase access to homeownership, Seicshnaydre also ascribes damages in this category to "address[ing] unequal credit markets" and equaliz[ing]/stabiliz[ing] neighborhoods tailored to the harm." *Id.* at 6. Like category (ii) *supra*, these purported damages are tied to "issue advocacy" efforts and should be stricken. Seicshnaydre failed to apportion particular purported damages in this category, and accordingly, the whole category of damages should be stricken. *See Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415-16 (7th Cir. 1992) (plaintiff's damages testimony was flawed because it failed to separate defendant's lawful competition from defendant's wrongful conduct); *Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*, No. CV SAG-18-3298, 2021 WL 3883597, at *16 (D. Md. Aug. 12, 2021) (excluding expert's damages opinion where it "relies on the assumption that [plaintiff] proves all of its claims and provides no means of determining what amount of damages arises from each claim" and several claims had been dismissed); *see also MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1163 (7th Cir. 1983) (striking jury award

because damages report assumed that all 22 acts charged were wrongful, but plaintiff proved liability as to just seven acts, leaving no way to apportion between the lawful and unlawful acts).

### iv. *Diminishment of past complaint-based and consumer outreach services*.

Seicshnaydre opines that Plaintiffs incurred $1,794,000 in damages for a wide-ranging, combination category, which includes "counseling, complaint intake, individual testing, systemic testing and investigations, education and training, enforcement actions, policy education and advocacy, and consumer outreach campaigns tailored to the harm." Dkt. No. 308-2 at 7–8. Many items within this category, *e.g.*, education and training, policy education and advocacy, etc., clearly have nothing to do with Defendants' purported REO conduct. Instead, they fall squarely within "issue advocacy" efforts that the Court found cannot support standing (and thus cannot support damages). Seicshnaydre again failed to apportion particular purported damages in this category, and accordingly, the whole category of damages should be stricken. *See* Part II.B.iii *supra.*

### v. *Lost opportunities and special initiatives.*

Finally, Seicshnaydre claims that Defendants are responsible for a delay of Plaintiffs' services and special initiatives, to which she ascribes $2,200,000 in purported damages. Dkt. No. 308-2 at 8–9. Seicshnaydre puts a laundry list of items in this category, including "education and training, enforcement actions, policy education and advocacy, and broader public outreach campaigns." *Id.* at 8. Again, those types of damages are "issue advocacy" efforts for which Defendants cannot be responsible. Seicshnaydre also failed to apportion particular purported damages in this category, and accordingly, the whole category of damages should be stricken. *See* Part II.B.iii *supra*.

Without frustration of mission damages, Plaintiffs cannot establish standing, as their only other specified purported damages are within the diversion logs produced by Plaintiffs for their

-6-

alleged time investigating Defendants. *Hippocratic Medicine*, 602 U.S. at 395 (finding plaintiff cannot spend its way into standing). As a result, this litigation should be dismissed. *See* Dkt. No. 440 (Memorandum in Support of Dismissal for Lack of Article III Standing), § B.

## III. Defendants Request Clarification On Standing Given Court's MSJ Ruling.

### A. Standing Was Determined Prior To And Without Consideration Of The Merits.

In the MSJ Ruling, the Court analyzed standing first, making clear it did not consider the merits of Plaintiffs' claims. *See* MSJ Ruling, Dkt. No. 442 at 13, 20. In so doing, the Court did not address standing on a claim-by-claim basis, but instead focused the standing inquiry on one of Plaintiffs' alleged four categories of "core business activities and services" that were allegedly impaired by defendant's conduct – counseling and referral services that were supposedly impacted by Defendants making housing unavailable.[5] *Id.* at 18, fn.11 ("… I focus my analysis on plaintiffs' injuries tied to housing **availability** for their clients.") (emphasis added). The Court did not address standing based on Plaintiffs' alleged injuries to their (1) neighborhood stabilization activities, (2) homeownership promotion, and (3) REO-specific training and education. *See* MSJ Ruling at 17 ("I focus on plaintiffs' consumer counseling and referral services – the type of services squarely addressed in *Havens*…"). Analogizing to the impact of housing unavailability on counseling services in *Havens*, the Court concluded that that "Plaintiffs adequately identif[ied] properties that

---

[5] The Court noted that Plaintiffs' claimed injury to their counseling services is based on "defendants' discriminatory REO practices **limit[ing] the available** housing stock for the people they serve [and] Defendants' fail[ing] to maintain properties in non-white neighborhoods…effectively ma[king] those properties '**unavailable**.' In turn, fewer housing options impaired plaintiffs' ability to assist clients in finding suitable homes." *See* MSJ Ruling, Dkt. No. 442 at 18 (emphasis added). The Court also relied only on evidence related to housing unavailability in finding standing, citing HOME's explanation that its counseling "relies on there being properties on the market that are **available** to first-time home buyers" and Metropolitan Milwaukee Fair Housing Council's statement that "[t]he actions of Deutsche Bank took houses **off the market**." *Id*. at 18-19 (emphasis added).

were 'unsuitable' for their clients…" or were unavailable, and thus Plaintiffs had standing. *Id.* at 19–20.

However, when it reached the merits, the Court found that Defendants were entitled to judgment as a matter of law on Plaintiffs' cause of action under § 3604(a) because Defendants did not cause housing to be unavailable. *See* MSJ Ruling, Dkt. 442 at 91 (finding, in part, "even if § 3604(a) encompasses plaintiffs' theory of availability… plaintiffs do not raise a genuine issue of material fact that such conduct dissuaded potential buyers;"). The Court dismissed not only Plaintiffs' § 3604(a) claim, but also their § 3605 and perpetuation of segregation claims, leaving only a claim under §3604(b) – a claim untied to availability. *See id.* at 19, 91, 105 ("… plaintiffs separately pursue a claim for defendants' failure to maintain and repair properties under § 3604(b), which **does not require a showing of unavailability**.") (emphasis added). Because this Court held that Defendants did <u>not</u> make housing unavailable, the alleged injury that formed the basis for standing is gone.

### B. Plaintiffs Cannot Establish Article III Standing Under § 3604(b).

Plaintiffs now lack standing because this Court found the alleged injury that initially gave Plaintiffs standing without merit and for two additional reasons: (1) setting aside this Court's ruling on summary judgment, an injury based on housing unavailability is insufficient to establish standing for a § 3604(b) claim; and (2) Plaintiffs do not have standing based on their other alleged injuries.

First, the injury upon which this Court found standing (impairment to counseling services based on housing unavailability) does not establish standing for a § 3604(b) claim. To establish standing, Plaintiffs must present sufficient evidence to show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)); *see also Hummel v. St. Joseph Cnty. Bd. of Comm'rs,* 817 F.3d 1010, 1016 (7th Cir. 2016) (finding "plaintiffs cannot rest on 'mere allegations' but must offer evidence to support standing") (quoting *Lujan*, 504 U.S. at 561. In the MSJ Ruling, this Court found that the injury that formed the basis for standing – an injury arising out of housing unavailability – was not supported by the evidence. MSJ Ruling, Dkt. 442 at 90.

As to the second element, as this Court and others have recognized, Plaintiffs' "must demonstrate standing for each claim that they press and for each form of relief that they seek.'" *Gilbert v. TrueAccord Corp.*, 608 F. Supp.3d 656, 663 (N.D. Ill. 2022) (quoting *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2208 (2021)); *see also* MSJ Ruling, Dkt. 442 at 13 (noting plaintiffs must demonstrate an injury that is "fairly traceable to the challenged conduct"). The injury is not "fairly traceable" to Defendants' conduct because, again, not only did the Court find Defendants did not make housing unavailable and, thus, could not have impaired Plaintiffs' related counseling services, but whether a property is available is irrelevant to the conduct challenged under § 3604(b). *See* MSJ Ruling, Dkt. 442 at 90; *see also id.* at 19, 104. Relatedly, any injury to Plaintiffs' counseling services based on housing unavailability cannot be redressed by a favorable decision because their claim related to said housing unavailability – § 3604(a) – was dismissed. Thus, the ground for standing determined prior to the merits does not establish standing for Plaintiffs' sole remaining claim under § 3604(b).[6]

The other claimed categories of damages to Plaintiffs' "core business activities" also do not provide a basis for standing to assert the surviving § 3604(b) claim. Again, "the plaintiff

---

[6] As this Court noted, "a plaintiff must demonstrate standing 'at every stage of litigation,'" including post-summary judgment. MSJ Ruling, Dkt. 442 at 2 (citing *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021)).

must… show that the violation harmed the interest that the statute was designed to protect." *Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 704 (N.D. Ill. 2020). (citing *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 331–33 (7th Cir. 2019). Thus, Plaintiffs must show that Defendants' conduct impaired their "core business activities" that relate to "the provision of services or facilities in connection [with the sale or rental of a dwelling]." 42 U.S.C. § 3604(b).

This Court did not previously determine (but seriously called into question) whether Plaintiffs' other claimed injuries to their (1) neighborhood stabilization activities, (2) homeownership promotion, and (3) REO-specific training and education were sufficient to provide standing. *See* MSJ Ruling, Dkt. 442 at 17. However, the Court's discussion of said injuries suggests that these types of claimed injuries are not the types of "core business activities" that provide standing under *Havens* but are instead, the types of "abstract social interests" that are insufficient to establish a concrete injury under *Havens* and *Hippocratic Medicine*:

> … plaintiffs also claim injury to "**abstract social interests**" that would be insufficient to confer standing under *Havens* or *Hippocratic Medicine*. Plaintiffs' core business activities related to **REO-specific education** include training industry stakeholders on best practices; meeting with local governments to encourage code violation enforcements for REOs; and issuing reports on REO discrimination to raise awareness of the issue. I agree with defendants that these are the kinds of "issue advocacy" efforts to relate to plaintiffs' broad social or policy goals rather than defendants' specific REO conduct.

MSJ Ruling, Dkt. 442 at 20 (emphasis added)[7]; *see also id*. at 17.

In fact, as set forth more fully in Defendants' Reply Memorandum in Further Support of Defendants' Motion to Dismiss for Lack of Article III Standing (*see* Dkt. 440 at 10–12), Defendants did not impair Plaintiffs' services encompassed in the three above-listed categories. The Plaintiffs' claimed injuries all relate to activities performed in their normal course of business. *See id*. Plaintiffs otherwise failed to establish that Defendants' alleged deficient maintenance

---

[7] This Court ultimately did not decide whether these injuries are sufficient to support standing. *See id.*

caused their alleged injuries. *See id.* For example, with respect to "neighborhood stabilization efforts," Plaintiffs failed to explain how Defendants' alleged failure to maintain properties impaired their ability to engage in "beautification projects, repurpose[ing] of vacant lots, renovat[ion of] blighted properties, and create[ion of] community programming." *See id.* at 10 (quoting Dkt. 435 at 8). As to Plaintiffs' "homeownership promotion" operations, the claimed impact – "devalu[ing] homes in minority neighborhoods and limit[ing] access to credit" – is to community members, not Plaintiffs' operations. *See id.* at 13 (quoting Dkt. 435 at 10). Lastly, and as previously addressed by this Court, Plaintiffs' REO-specific training is but "issue advocacy," aiming to "reform the industry and elicit compliance" without any demonstrable impact on Plaintiffs' operations. *See id.* at 12 (quoting Dkt. 435 at 12); *see also* MSJ Ruling, Dkt. 442 at 17.[8]

Because this Court found the injury that provided the basis for standing without merit in ruling on summary judgment and because the other claimed grounds for standing are likewise without merit (as this Court previously suggested but did not ultimately reach), Plaintiffs cannot establish standing at this stage of the case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Renewed Seicshnaydre *Daubert* Motion and provide clarification on the requested damages aspects of the Court's MSJ Ruling and standing.

---

[8] This Court held that Plaintiffs may pursue their § 3604(b) claim under disparate impact and disparate treatment theories. *See* MSJ Ruling, Dkt. 442 at 105, 112. But this holding does not establish an injury to Plaintiffs for standing purposes because the inquiry is focused on whether Defendants caused a disparity in property maintenance, impacting a protected class – not how such alleged violation impacted Plaintiffs who must establish "individual standing." *See id.* at 13, 92, 112.

Dated: May 21, 2025                    Respectfully submitted,

By: /s/ Kenneth M. Kliebard
Kenneth M. Kliebard
Michael W. Fakhoury
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, Illinois 60606-1511
Telephone: (312) 324-1000
kenneth.kliebard@morganlewis.com
michael.fakhoury@morganlewis.com

Kurt W. Rademacher (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, Pennsylvania 19103-3007
Telephone: (215) 963-5000
kurt.rademacher@morganlewis.com

*Counsel for Defendants Deutsche Bank National Trust Company, as Trustee, and Deutsche Bank Trust Company Americas, as Trustee*

By: /s/ Debra Bogo-Ernst
Debra Bogo-Ernst
Brandon E. Villa
**WILLKIE FARR & GALLAGHER LLP**
300 N. LaSalle Dr.
Chicago, IL 60654
(312) 728-9000
dernst@willkie.com
bvilla@willkie.com

*Counsel for Defendant Ocwen Loan Servicing, LLC, n/k/a Onity Group Inc.*

By: /s/ Nathan Garroway
Nathan Garroway
**DENTONS US LLP**
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
nathan.garroway@dentons.com

*Counsel for Defendant Altisource Solutions, Inc.*

**CERTIFICATE OF SERVICE**

      The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on May 21, 2025.

/s/ <u>*Debra Bogo-Ernst*</u>