IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., <br><br> Defendants. | Case No. 18 CV 839 <br><br> Judge Manish S. Shah <br><br> Jury Trial Demanded |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR CLARIFICATION OF THE COURT'S MARCH 31, 2025 MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' INSPECTION RESULTS**

In their Motion for Clarification of this Court's March 31, 2025 Memorandum Opinion and Order (the "March 31 Opinion") and supporting memorandum, Defendants append some scattered and incomplete excerpts from the Summary Judgment briefs filed by the parties and assert, without attempting to provide any context, that "Plaintiffs' inspection results cannot be extrapolated beyond the specific properties inspected to draw conclusions about properties titled to a DB Trustee more broadly." (Dkt. 451, p. 2; Dkt. 451-1 and Exhibits at Dkt. 451-2 through Dkt. 451-4). As discussed below, this last-ditch argument is frivolous because (a) it ignores and grossly distorts Plaintiffs' unequivocal expert testimony; and (b) it contradicts Defendants' prior representations to Judge Leinenweber and Judge Leinenweber's clear statements and discovery ruling regarding the application of statistical evidence in the case. In addition, to the extent Defendants hope to secure findings by the Court limiting Plaintiffs' damages prior to the mediation, their argument is even further misplaced and irrelevant.

**BACKGROUND**

As described in this Court's March 31 Opinion and Plaintiffs' Summary Judgment filings, after receiving widespread complaints about the maintenance of Real Estate Owned ("REO") properties in minority communities, Plaintiffs launched an investigation in 30 metropolitan areas

1

to determine whether a neighborhood's racial makeup affected the quality of the maintenance and marketing of REO properties. (Dkt. 442, p. 4; Dkt. 361, Plaintiffs' L.R. 56.1(b)(3)(C) Statement of Additional Facts ("PSAF"), ¶¶ 25-35) Plaintiffs identified metropolitan areas based on foreclosure rates (compared to state and national levels) and the racial concentration of communities. (Dkt. 442, p. 4; Dkt. 361, PSAF, ¶ 31) Within each metropolitan area, Plaintiffs: (a) identified zip codes with the highest foreclosure rates compared to the metropolitan area overall; (b) reviewed race and ethnicity data to determine zip codes that were racially concentrated; and (c) selected for inspection zip codes in middle- and working-class neighborhoods with high home ownership rates. (Dkt. 442, p. 4; Dkt. 361, PSAF, ¶ 28) After Plaintiffs conducted detailed inspections of the condition of the REO properties and extensively documented their findings with photographs, the statistical expert retained by Plaintiffs in this case (Dr. Ayres) concluded that deficiencies in Deutsche Bank-owned REO properties in non-white block groups were greater than the number observed in white block groups and that the disparities in those deficiencies were statistically significant even when controlling for non-race factors. (Dkt. 442, p. 38; Dkt. 361, PSAF, ¶¶ 72-105)

## ARGUMENT

### A. The Reports and Testimony of Dr. Guetterman Refute Defendants' Argument

Dr. Timothy Guetterman of the University of Michigan, an authority in mixed methods research and data collection, was retained by Plaintiffs to testify as an expert regarding the soundness of Plaintiffs' methodology, sampling, quality control and investigatory documentation. (Dkt. 361, PSAF, ¶ 280) As the Court observed in its March 31 Opinion, Dr. Guetterman opined that Plaintiffs conducted their investigation consistently with the commonly used "purposeful sampling" method and that Dr. Guetterman "adequately explain[ed] how plaintiffs' methods align with widely accepted standards based on his review of materials and his expertise." (Dkt. 442, p. 70). Now, in the hope of persuading the Court to revisit its conclusion and find that Plaintiffs' rigorous statistical analysis has no implications with regard to the actual metropolitan

2

areas sampled, Defendants ignore that: (a) Dr. Guetterman repeatedly opined in his reports that the scope of the conclusions from the Plaintiffs' analysis extended to the metropolitan areas examined; and (b) Dr. Guetterman confirmed this opinion at his deposition.

    **1.    Dr. Guetterman's Reports Address the Scope of the Conclusions from Plaintiffs' Statistical Study**

In both his initial and rebuttal expert reports, Dr. Guetterman clearly opined that the scope of his opinions regarding the relevance of Plaintiffs' statistical evidence extended throughout the 30 metropolitan areas sampled:

> [T]he plaintiffs' investigation was designed and conducted in a rigorous manner using a field-based mixed methods research approach that necessarily used multiple methods of data collection . . . the plaintiffs aimed to determine whether there were discriminatory practices in the maintenance and marketing of Deutsche Bank real estate owned (REO) properties in majority White neighborhoods compared to majority non-White neighborhoods *across the 30 metropolitan areas sampled in the investigation*. (Dkt. 365, Ex. A, Expert Report of Timothy C. Guetterman, PhD, MA, 9/13/22, p. 6, filed by Defendants Under Seal; emphasis added)

* * *

> The NFHA did not design this study to generalize to other metropolitan areas. The sampling strategy has limited the range of data and analysis to the metropolitan areas selected. (*Id.*, p. 9)

* * *

> NFHA's investigation was well-designed and conducted consistently with expectations for a rigorous mixed methods research study for its intended aim. The aim of NFHA's investigation was to gather and analyze data to examine whether disparities were present between the maintenance and marketing of REO properties in majority White neighborhoods compared to majority non-White neighborhoods *within the metropolitan areas sampled.* (Dkt. 365, Ex. F, Rebuttal Expert Report of Timothy C. Guetterman, PhD, MA, 4/17/23, p. 1, filed by Defendants Under Seal; emphasis added).

## 2. Dr. Guetterman's Deposition Testimony Confirms His Opinions Regarding the Scope of Plaintiffs' Investigation

As noted above, instead of presenting the Court with clear and complete citations to support their flawed motion, Defendants attach scattered and incomplete excerpts from the record. In addition, Defendants incorrectly cite paragraph 22 in their Rule 56.1 Statement, when the paragraph they rely on is actually paragraph 21. (Dkt. 320, pp. 10-11, ¶21) Further, the testimony cited in Defendants' Rule 56.1 Statement that they rely on by incorporation in their current excerpts is incomplete and fails to support Defendants' contentions.

Defendants' Exhibit A (Dkt. 451-2) contains two assertions about supposed admissions made by Dr. Guetterman at his deposition that are false and misleading: Defendants' Exhibit A asserts that: (1) Dr. Guetterman testified at his deposition and "agreed that Plaintiffs' selection of properties was *not* selected randomly and, as a result, could not allow one to 'infer' conclusions to a larger population, including the metropolitan areas from which the properties were selected"; and (2) "Guetterman further conceded that he would be 'leery' of 'generalizing beyond' the exact areas included in Plaintiffs' sample." (Dkt. 451-2, citing Defendants Joint Rule 56.1 Statement of Facts, ¶ 22; emphasis supplied by Defendants)[1]

To the contrary, when the complete excerpt from Dr. Guetterman's testimony is considered, it becomes obvious that Dr. Guetterman was only indicating that Plaintiffs did not design the study to generalize *beyond the 30 metropolitan areas inspected*:

By Mr. Rademacher:
> Q. You write: The NFHA did not design this study to generalize to other metropolitan areas. Based on that statement, do you agree that any analysis of NFHA data cannot be extrapolated to geographic areas that are not in the sample?

---

[1] As noted above, Defendants' Exhibit A (Dkt. 451-2) erroneously cites paragraph 22 of their Rule 56.1 Statement when the contentions referenced are in paragraph 21.

> Mr. Schneck: Objection, form.
>
> By the Witness:
>
> A. Yes, I would agree with that. I would be leery of generalizing beyond.
>
> Q. I just want to make sure I heard that. You'd be leery of generalizing beyond.
>
> A. I used the term "leery," but I –
>
> Q. "Leery," okay.
>
> A. But to be clear, I – yes, I would not generalize beyond the areas. I don't think that was their intent either.

(Dkt. 365, Ex. B, Transcript from Deposition of Timothy C. Guetterman, Ph.D, MA, 12/7/22, pp. 65-66, filed by Defendants Under Seal)[2] Thus, Dr. Guetterman did not testify that Plaintiffs' results could not be extrapolated to other REO properties; rather, he testified that the results could not be extrapolated to other metropolitan *areas*.

Moreover, Dr. Gutterman also completely refuted Defendants' assertions in Exhibit A that there was something problematic or significant regarding the use of purposeful (rather than completely random) sampling in a mixed methods study to infer the conclusions offered by Plaintiffs regarding the metropolitan areas sampled. The complete and actual testimony of Dr. Guetterman in this regard is as follows:

> Q. For quantitative research, what kind of sampling would you typically use?
>
> A. You would typically use probability-based sampling[3].
>
> Q. What is probability-based sampling?
>
> A. So there are different forms of probability-based sampling, but the idea is, you have a certain population to which you would like to infer. And based on that, you're drawing a sampling frame which is a set of all potential individuals or cases that could be selected, and then they're selected using some kind of a

---

[2] Defendants' Rule 56.1 Statement cited to Dr. Guetterman's December 2022 deposition transcript at page 65, lines 12-18. (Dkt. 320, p. 11, ¶21) The testimony quoted above is from page 65, line 10 through page 66, line 1.
[3] The word "sampling" in this answer was incorrectly transcribed by the court reporter as "sample," but this error was corrected in Dr. Guetterman's errata sheet.

5

        random method to ensure that, essentially, each case has or, you know, participant has an equal chance of being selected.

Q. Were the properties that were the subject of plaintiffs' study in this case selected randomly?

A. No, not to my knowledge. And I don't think their goal was to get that quantitative study. I think it was more consistent with a mixed methods study where you would use some purposive sampling methods as well.

Q. If you were to design a qualitative study, what kind of sampling approach would you typically use?

A. In a qualitative study, you would typically use more purposive or purposeful sampling, where you're selecting cases in order to provide information to address your research questions.

(*Id*., pp. 28-29)

Defendants' Exhibit A also cites scattered and incomplete excerpts from Plaintiffs' other expert, Dr. Ian Ayres, regarding his statistical study. All of Dr. Ayres' opinions in his reports and deposition testimony, including his opinion affirming "the indicia of quality" in Plaintiffs' sample (Dkt. 361, PSAF, ¶¶ 74-75), are fully consistent with Dr. Guetterman's opinions regarding the implications of the findings related to Defendants' disparate REO maintenance and marketing extending to the metropolitan areas sampled. Dr. Ayres did not state or imply in his expert reports or during deposition testimony anything to the contrary, and (not surprisingly) Defendants did not cite any such evidence. It is also telling that nowhere during the four days of deposition testimony of Dr. Guetterman or Dr. Ayres did Defendants' counsel ever bother to ask them directly the question they pose now regarding the scope of the findings relating to Plaintiffs' investigation.

### B. Defendants' Arguments Conflict with their Prior Statements to Judge Leinenweber and His Rulings on Discovery and the Scope of the Case

Defendants' motion also runs afoul of their prior representations to Judge Leinenweber and Judge Leinenweber's November 17, 2021 ruling. (Ex. 1, attached) Specifically, during

6

discovery, Plaintiffs moved to obtain information from Defendants regarding other Deutsche Bank REO properties *within the metropolitan areas sampled and inspected by Plaintiffs*. (Dkt. 192) Defendants responded by stating that "Plaintiffs do not need more data to litigate this case," and complained that if the motion was granted, they would need to gather and produce various property photographs and work orders to respond to Plaintiffs. (Dkt. 201, Ocwen and Altisource's Response to Plaintiffs' Motion to Compel, pp. 1, 3)

Judge Leinenweber denied Plaintiffs' motion based on his view of the proper framework for litigation of this case and his understanding of how statistical evidence would be used in the case:

> Seems to me that this case is proceeding -- obviously, if you put in evidence every single parcel of property that these two defendants worked on, you would presumably have a more accurate final record. However, that's not how to proceed, particularly when we're proceeding on a statistics basis. The whole idea of statistics is so that you can avoid this massive amount of data, which is presumably relevant. Obviously, [if] they had every single piece of property, put that before the jury, and had all the information concerning what it -- all the information that the plaintiffs say is collected on the 676 parcels of property, you'd have probably a more accurate record, but it'd take about five years to try the case. And the whole purpose behind the statistics approach is to avoid that. . . So the motion [to compel] is denied.

(Exhibit 1, attached, Transcript from 11/17/21 Hearing, p. 12)

Considering Judge Leinenweber's November 17, 2021 decision and Defendants' prior objections and representations to the Court with regard to Plaintiffs' attempt to obtain information regarding additional properties within the metropolitan areas sampled, Defendants' current complaints about "extrapolating" results are meritless and disingenuous.

### C. Defendants Misconstrue the Nature of Damages Analysis in this Case

At the most recent status hearings in this case, Defendants' counsel implied that a ruling on the issue raised in Defendants' (current) motion would be important with regard to the upcoming mediation. The suggestion seemed to be that Defendants would argue that Plaintiffs'

7

potential damages are more limited if the Court adopted a very narrow view of the scope of Plaintiffs' statistical analyses.

As shown above, Defendants' arguments lack any merit on a substantive basis. In addition, Defendants' arguments actually have very limited bearing on the scope of the damages that may be recovered by the Plaintiffs. This case is not, and has never been, about damages to specific properties. Rather, the damages incurred by the Plaintiff organizations turns upon organizational damages in terms of diversion of resources and frustration of mission. Moreover, the policies of Defendants challenged by Plaintiffs inherently affect properties beyond those inspected by Plaintiffs and, as such, broadly impact Plaintiffs' resources and missions. Accordingly, to the extent Defendants' motion seeks to address damages issues in advance of trial, it is further misplaced.

## CONCLUSION

For all the foregoing reasons, Defendants' motion should be denied.

Respectfully submitted,

    /s/ Jennifer K. Soule

Jennifer K. Soule
James G. Bradtke
Kelly K. Lambert
Steven P. Schneck
*Soule, Bradtke & Lambert*
PO Box 231
Geneva, IL 60134

Janell Byrd-Chichester
Morgan Williams
*National Fair Housing Alliance*
1331 Pennsylvania Ave, NW, Ste. 650
Washington, DC 20004

Lila Miller
Yiyang Wu
Jennifer Klar
*Relman Colfax PLLC*
1225 19th Street, N.W., Ste. 600
Washington, DC 20036

Stephen M. Dane
*Dane Law LLC*
P.O. Box 1011
Perrysburg OH 43552

Dated: May 29, 2025