**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER; OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:18-cv-00839 Honorable Manish S. Shah |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC.; and ALTISOURCE SOLUTIONS, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR RECONSIDERATION**

## INTRODUCTION

In its March 31, 2025 summary judgment opinion (Dkt. No. 442), the Court correctly dismissed Plaintiffs' claim for injunctive relief for lack of standing. This case is not about any "real and immediate" threat of future Fair Housing Act violations. It is about Plaintiffs' investigation into Defendants' real-estate owned ("REO") property preservation practices at a limited number of foreclosed properties affected by the Great Recession. Plaintiffs limited their review of properties in majority-minority neighborhoods to locations hand-selected for the disproportionate impact of the Great Recession upon them. Plaintiffs' investigation began fourteen years ago and concluded eight years ago in 2017. Plaintiffs can point to no evidence that Defendants currently own or maintain any of the properties Plaintiffs inspected. Nevertheless, Plaintiffs now ask this Court to reverse its prior standing ruling on injunctive relief without meeting any of the basic requirements for a motion for reconsideration, asserting without basis that the threat of imminent future harm warrants reinserting claims for injunctive relief into this lawsuit. Plaintiffs' Motion for Reconsideration ("Plaintiffs' Motion") should be denied.

As to the potential future harm, the Court correctly found that Plaintiffs have no evidence—because none exists—that Defendants' current REO-preservation practices impact them or their missions in any way. To establish standing for injunctive relief, Plaintiffs would need to show, at minimum, that: (1) particular properties they inspected starting in 2011 are still owned or serviced by Defendants today; (2) those properties remain subject to Defendants' REO-related preservation practices; (3) those practices are currently causing specific fair housing problems; and (4) each of the twenty Plaintiffs is currently affected by those practices in a way that impedes that Plaintiff's mission. Plaintiffs have not, even on reconsideration, made such a showing on the record here. Accordingly, the Court properly held that "[P]laintiffs do not present any evidence in the record of defendants' ongoing REO conduct that suggest a risk of future violations." Dkt. No. 442 at 22.

After seven years of litigation and more than 100 depositions, Plaintiffs support their Motion with only a few stray lines of deposition testimony from: (i) the deposition of one Plaintiff summarily concluding that unspecified "stuff" in which Deutsche Bank purportedly "engaged" continues to frustrate their mission; and (ii) three depositions from early 2021 noting a few Altisource and Ocwen policies, such as Ocwen selling REO properties "as is" rather than repairing them, had not changed at that time. Plaintiffs' Motion, however, fails to link these supposed policies to any harm to Plaintiffs today.

The Court correctly held that Plaintiffs lack standing to obtain injunctive relief, and nothing in Plaintiffs' Motion supports revisiting that decision. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("'[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Accordingly, Plaintiffs' Motion is without basis and should be denied.

## ARGUMENT

## I.   PLAINTIFFS' INJUNCTIVE RELIEF CLAIM FAILS BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED ONGOING OR FUTURE HARM.

Plaintiffs are required to establish a "real and immediate" threat of future violations to obtain injunctive relief. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013).[1] They have not done so, nor can they. And pointing to past practices that purportedly violate the Fair

---

[1] Plaintiffs criticize the Court for citing *Scherr*, calling the Seventh Circuit case "completely inapposite." Dkt. No. 462 at 6. Plaintiffs are wrong. The Court cited *Scherr* for the uncontroversial proposition that "[t]o establish standing for injunctive relief" in a Fair Housing Act case there must be a real and immediate threat of future violations. Dkt. No. 442 at 22. The plaintiff in *Scherr* established standing as to one hotel in a hotel chain because the plaintiff demonstrated a likelihood of returning to that hotel and thus a real threat of future violations, but the plaintiff lacked standing as to other hotels because she did not establish any likelihood of visiting them again. 703 F.3d at 1074–75. The holding in *Scherr* that past exposure is insufficient to obtain injunctive relief without record evidence of a real and immediate threat of future injury is hardly inapposite.

Housing Act will not suffice. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'") (quoting *Lyons*, 461 U.S. at 102). Moreover, as this Court stated in the summary judgment opinion, *each Plaintiff* must demonstrate their own ongoing harm to obtain injunctive relief:

> Because plaintiffs sue defendants "in [their] own right," individual standing requirements apply. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982); *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024). Plaintiffs must demonstrate an injury in fact that is fairly traceable to the challenged conduct of defendants and likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). *Each plaintiff* must demonstrate Article III standing *for each form of relief sought*[.] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)[.]

Dkt. No. 442 at 13 (emphasis added). Plaintiffs have not made such a showing here, even with the benefit of the Court's prior order identifying what is required. Accordingly, and as demonstrated below, the Court appropriately narrowed the scope of trial by excluding injunctive relief as an available remedy. *Id.* at 22.

### A. Plaintiffs Fail to Offer a Scintilla of Evidence of Ongoing Harm.

Although Plaintiffs insist that "there is substantial evidence in the record . . . concerning the Defendants' alleged unlawful conduct, policies and procedures that harmed and will continue to harm Plaintiffs' missions," (Dkt. No. 462 at 5), Plaintiffs fail to back up that claim with meaningful evidence. From the vast record in the case, Plaintiffs cite a meager eight pages of deposition testimony, none of which suggest a "real and immediate" threat of future harm.[2] Specifically, Plaintiffs hang their injunctive relief request on: (i) deposition testimony from

---

[2] This approach is par for the course with Plaintiffs. When it is time to demonstrate concrete harm to each Plaintiff caused by Defendants, they cannot do so. Like Plaintiffs' damages expert report, which was stricken by the Court (Dkt. No. 460), Plaintiffs resort to speculative, vague generalities in the misplaced hope that such ambiguities will carry them through to trial.

Altisource in March 2021 that Altisource approaches code violations in the same way that it did back in 2011, and that its goal for the REO disposition process is to "maximize net returns for the client during the disposition with reduced hold times of carrying costs" (Dkt. No. 462-1 at 70; 462-2 at 47-48); (ii) deposition testimony from Ocwen in January 2021 that its policy is to sell REO properties "as is" (Dkt. No. 462-3 at 36-37); and (iii) one Plaintiff organization who testified that the unspecified "stuff" in which "Deutsche Bank" was engaged continues to go on and purportedly frustrates their mission. Dkt. No. 462-4 at 137, 141-42.

But Plaintiffs' rhetoric concerning these anodyne policies is not evidence of a "real and immediate" threat of future harm to Plaintiffs under the Fair Housing Act or actionable within what is left of their claims in this case. *See Scherr*, 703 F.3d at 1074-75. For example, the Court held that the shortcomings of Plaintiffs' methodological approach to showing harm "necessarily limits the scope of inferences [of racial disparities] to inspected properties." Dkt. No. 460 at 4. Plaintiffs have failed to produce any evidence that the REO properties being maintained, at the latest, in 2017—which are the only ones Plaintiffs inspected—are still owned by Defendants, much less that they are still being disparately impacted by Altisource's "net returns" policy or Ocwen's "as-is" policy.

Moreover, as the Court noted, "[P]laintiffs disclaimed proving statistical disparities in a single service area." Dkt. No. 460 at 4. Given that Plaintiffs have disclaimed any statistical showing of harm (either past or future) in any particular service area for any of the nineteen local Plaintiffs, this disclaimer denies those Plaintiffs standing to seek injunctive relief. Similarly, Plaintiffs' reliance on their own speculative testimony about what "Deutsche Bank" did with respect to any REO property ignores the Court's ruling on summary judgment *dismissing* Plaintiffs' direct liability theory against Deutsche Bank, Dkt. No. 442 at 123; "stuff" that

"Deutsche Bank" did with respect to REO properties is no longer at issue in this case. *See Silver v. Internal Revenue Service*, 569 F. Supp. 3d 5, 9 (D.D.C. 2021) (holding that plaintiffs could not "repackage the arguments made on summary judgment that the court found to be unsuccessful" in a motion for reconsideration of standing to seek injunctive relief). Plaintiffs fail to show what particular practices or properties at issue, tied to which of the Defendants, are causing specific ongoing issues with respect to the properties remaining at issue in this case. In short, this was Plaintiffs' opportunity to showcase to the Court all of their specific ongoing and future harm through evidence produced in the case, and they came up emptyhanded.

## B. Plaintiffs Have No Other Avenues To Establish Ongoing Harm.

To the extent Plaintiffs rely on ongoing harm to community investments, a diversion of resources, or litigation-related expenses, that theory is a non-starter to support standing for injunctive relief due to the Court's prior rulings, which are fully supported by the case law. Dkt. No. 442 at 6 ("Judge Leinenweber addressed plaintiffs' injury and proximate cause as a merits question and barred plaintiffs from recovering damages based on their community investments and for harms to the minority neighborhoods that plaintiffs serve."); *Id.* at 22 ("A mere setback to an organization's 'abstract social interests' isn't sufficient to establish a concrete injury under *Havens* or *Hippocratic Medicine,* and it isn't sufficient under this circuit's precedent."); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("[An] interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.").

Having failed to present record evidence establishing standing for injunctive relief, it is far too late for Plaintiffs to try to cure that failure in their reply brief by submitting new evidence or declarations purporting to show ongoing harm. Plaintiffs failed to present such evidence previously, and they are foreclosed from doing so now. *Sonrai Sys., LLC v. Romano*, No. 16 CV

- 6 -

3371, 2025 WL 1557915, at *3 (N.D. Ill. June 2, 2025) (A plaintiff "has an affirmative obligation, under Rules 26 and 37, to disclose the evidence it believes entitles it to relief" and a defendant "does not have an obligation to elicit evidence" supporting these claims.); *see also Dynegy Mktg. & Trade v. Multiut Corp.,* 648 F.3d 506, 514 (7th Cir. 2011) (holding that a declaration purportedly summarizing evidence in the record "cannot carry the day logically . . . or legally," because the declaration would be either (1) unnecessary, if it truly contained only information that had previously been entered into the record, or (2) prejudicial, if it offered new evidence); Dkt. No. 442 at 42-43 (excluding untimely declaration).

Even though it is Plaintiffs' obligation to affirmatively disclose the evidence they contend entitles them to relief (*Romano*, 2025 WL 1557915, at *3), Defendants nevertheless repeatedly requested this information in discovery. For example:

- Defendants asked Plaintiffs for "[a]ll Documents relating to the claims and allegations in the Second Amended Complaint," to which Plaintiffs responded that they would "produce such documents on a rolling basis." Ex. 1 hereto (RFP No. 8, excerpt from Plaintiffs' July 15, 2020 Response to Defendant Trustees' First Set of Requests for Production of Documents);

- Likewise, Defendants requested "[a]ll Documents not covered by the foregoing Requests that You will use to support your claims or defenses in this Action," to which Plaintiffs responded that the request was premature but that they would "supplement their response to include such documents" as decisions were made about which documents they would use. Ex. 2 hereto (RFP No. 56, excerpt from Plaintiffs' July 15, 2020 Amended Response to Defendants Altisource's and Ocwen's First Set of Requests for Production of Documents).

Similarly, in their depositions of Plaintiffs, Defendants asked Plaintiffs about any claims of ongoing harm, and Plaintiffs repeatedly offered nothing but speculation and conclusory assertions. For example, James McCarthy of the Miami Valley Fair Housing Center stated that "we feel like our frustration of mission damages are continuing until the issue is resolved." Ex. 3 hereto (excerpt from Oct. 7, 2021 Miami Valley Fair Housing Center 30(b)(6) (James McCarthy))

at 278:17-21. This testimony does not provide concrete evidence of any actual harm which Miami

Valley Fair Housing Center is presently experiencing, and McCarthy does not specify any

particular present or future harms other than the time and resources expended on this litigation,

which does not support standing. *See Hippocratic Medicine*, 602 U.S. at 394 (holding that an

organization "cannot spend its way into standing simply by expending money to . . . advocate

against the defendant's action."). Similarly, Christopher Riehlman of Open Communities testified

that the actions of the Defendants were "frustrating the mission of Open Communities by not

listening to our education and directly discriminating against our residents." Ex. 4 hereto (excerpt

from Jan. 12, 2022 Open Communities 30(b)(6) (Christopher Riehlman)) at 127:11-19. This

testimony asserts harm without providing any evidence of it. Similarly, testimony from Kris

Keniray of the Fair Housing Center for Rights and Research was vague, stating only that

community outreach expenditures were "ongoing" without suggesting that the harm in inspected

properties was itself continuing at that time and into the future. Ex. 5 hereto (excerpt from Feb. 3,

2022 Fair Housing Center for Rights and Research 30(b)(6) (Kris Keniray)) at 159:13-19.

   Other deposition testimony fails to establish a basis for injunctive relief because it rests on

allegations of ongoing harm that are foreclosed in this lawsuit. For example, Frances Espinoza of

the North Texas Fair Housing Center testified "what Deutsche is continuing to do is frustrating

North Texas Fair Housing Center's mission" because it was "destabilizing the neighborhood[s]

that we're trying to invest in." Ex. 6 hereto (excerpt from Jan. 24, 2022 North Texas Fair Housing

Center 30(b)(6) (Frances Espinoza)) at 226:18-227:10. Such harms to community investments

were tossed by the Court at the motion to dismiss and summary judgment stages and therefore

cannot support standing for injunctive relief. Dkt. No. 442 at 6 ("Judge Leinenweber addressed

plaintiffs' injury and proximate cause as a merits question and barred plaintiffs from recovering

damages based on their community investments and for harms to the minority neighborhoods that plaintiffs serve."). Moreover, as noted above, claims about direct actions taken by "Deutsche" have been dismissed from this case. Dkt. No. 442 at 123. Similarly, Amy Nelson of the Fair Housing Center of Central Indiana testified that diversion of resources damages continued to accrue because she continued to have "[m]eetings with attorneys" related to this case. Ex. 7 hereto (excerpt from Sep. 23, 2021 Fair Housing Center of Central Indiana 30(b)(6) (Amy Nelson)) at 172:18-174:3. These advocacy costs cannot support standing for ongoing relief after *Hippocratic Medicine*. *Hippocratic Medicine*, 602 U.S. at 394 (holding that an organization cannot "manufacture its own standing" by spending resources on advocacy against a defendant). In addition, William Robert Tisdale of the Metropolitan Milwaukee Fair Housing Council testified that his organization's "community outreach" continues today. Ex. 8 hereto (excerpt from Mar. 4, 2022 Metropolitan Milwaukee Fair Housing Council 30(b)(6) (William Robert Tisdale)) at 149:7-13. However, this activity falls into the "issue advocacy" category, which also does not support standing after *Hippocratic Medicine*. Dkt. No. 442 at 20 (holding that Plaintiffs' outreach and educational activities are "the kinds of 'issue advocacy' efforts that relate to [P]laintiffs' broad social or policy goals rather than defendants' specific REO conduct."). Finally, other Plaintiffs testified about expenses that do not support standing,[3] purported harms occurring in the past,[4] and/or that their organizations were no longer involved with REO issues.[5] In fact, at least two Plaintiff organizations were no longer active at the time of their depositions over three years ago and,

---

[3] *See, e.g.*, Ex. 9 hereto (excerpt from Jan. 27, 2021 Fair Housing Advocates of Northern California 30(b)(6) (Caroline Peattie) at 224:5-225:5.

[4] *See, e.g.*, Ex. 10 hereto (excerpt from Sep. 22, 2021 Fair Housing Center of West Michigan 30(b)(6) (Elizabeth Stoddard)) at 222:12-223:7; Ex. 11 hereto (excerpt from Nov. 17, 2021 South Suburban Fair Housing Center 30(b)(6) (John Petruszak)) at 161:10-162:19.

[5] *See, e.g.*, Ex. 12 hereto (excerpt from Nov. 3, 2021 Fair Housing Continuum 30(b)(6) (David Baade)) at 212:2-13; Ex. 13 hereto (excerpt from Feb. 9, 2022 Connecticut Fair Housing Center 30(b)(6) (Erin Kemple)) at 197:19-199:16.

accordingly, cannot establish a "real and immediate" threat of any future violations to them.[6]
*Scherr*, 703 F.3d at 1074. Accordingly, Plaintiffs' Motion should be denied.

## II. THE COURT MAY ADDRESS STANDING FOR INJUNCTIVE RELIEF AT ANY TIME, INCLUDING PRIOR TO TRIAL.

Plaintiffs contend that because Defendants did not expressly challenge Plaintiffs' standing for injunctive relief in Defendants' summary judgment papers, Defendants are somehow foreclosed from doing so now and the Court should not have ruled on it *sua sponte*. *See* Dkt. No. 462 at 3-4. This is wrong because: (i) standing is a threshold, foundational issue that can be addressed at any time in the litigation; (ii) deciding standing before trial is appropriate; and (iii) Defendants have consistently challenged Plaintiffs' standing, including Plaintiffs' claim for injunctive relief.

First, standing is a fundamental, jurisdictional requirement derived from Article III of the U.S. Constitution, which confines federal courts to adjudicating actual cases or controversies. *Freedom From Religion Found., Inc. v. Zielke,* 845 F.2d 1463, 1467 (1988) ("Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action."). Standing may be raised at any time in the litigation. *Native Am. Arts, Inc. v. Waldron Corp.,* 253 F. Supp. 2d 1041, 1045 (N.D. Ill. 2003) (holding that standing is jurisdictional and not subject to waiver, even if contested for the first time at a later stage of litigation). Thus, even if Defendants did not raise the issue of Plaintiffs' standing at summary judgment, the Court may address standing *sua sponte* at any time.

Second, while Plaintiffs argue that it was "unnecessary and inappropriate" for the Court to determine Plaintiffs lacked standing for injunctive relief prior to trial (Dkt. No. 462 at 3, 5), the

---

[6] *See, e.g.*, Ex. 12 hereto (excerpt from Nov. 3, 2021 Fair Housing Continuum 30(b)(6) (David Baade)) at 7:13-21, 212:2-13; Ex. 14 hereto (excerpt from Mar. 14, 2022 Central Ohio Fair Housing Association 30(b)(6) (James McCarthy)) at 31:4-33:12.

Court was justified in doing so. Because standing is a jurisdictional question, federal courts are obligated to ensure that jurisdiction exists *before* proceeding to the merits of a case. "[A] federal court has an independent duty to check its jurisdictional moorings, including the existence of standing." *Legal Aid Chicago v. Hunter Props., Inc.*, No. 23 CV 4809, 2024 WL 4346615, at *5 (N.D. Ill. Sept. 30, 2024) (citing *Iten v. County of Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023) ("[F]ederal courts have a duty to raise, sua sponte, questions of standing before addressing the merits.")). This duty applies at the outset of a case and at any point thereafter. Thus, the Court properly considered Plaintiffs' standing for injunctive relief at the summary judgment stage before proceeding to trial. This will save the parties, the Court, and the jury needed time. Plaintiffs' citation to four out-of-circuit cases from Texas, New Mexico, California, and Florida does <u>not</u> support a different result. Dkt. No. 462 at 4. All four cases involve unique facts and circumstances, which are not applicable here, and, contrary to Plaintiffs' insinuation, the cases do *not* establish a blanket rule that courts cannot rule on the availability of injunctive relief before trial.[7]

Third, Defendants have challenged Plaintiffs' standing *repeatedly* as to all claims. For example, in their motions to dismiss, Defendants challenged Plaintiffs' allegations of injury. *See* Dkt. No. 30 at 17, 19-22; Dkt. No. 46 at 10-11; Dkt. No. 62 at 17-18, 22; Dkt. No. 72 at 19-20, 24. By challenging Plaintiffs' standing many times in this litigation, Defendants placed the issue

---

[7] *See, e.g.*, *Wilson v. Broward Cnty.*, No. 04-61068-CIV, 2007 WL 2900388, at *2 (S.D. Fla. Sept. 28, 2007) (focusing on parameters of settlement agreement and whether it remedied future injury); *United States v. Abbott*, No. 1:23-CV-853-DAE, 2024 WL 4827489, at *1-2 (W.D. Tex. Aug. 30, 2024) (declining to find that relief requested was unavailable as a matter of law under the Rivers and Harbors Act of 1899 because the Court had specific statutory authority to "shape the scope of any potential injunction granted to the United States" if it won dispute about construction of a barrier system across Rio Grande River at trial); *United States v. N.M. State Univ.*, No. 16-CV-911-JAP-LF, 2018 WL 737451, at *2 (D.N.M. Feb. 6, 2018) (finding that, under Title VII, court "has the discretion to determine an appropriate equitable remedy based upon the particular facts of the case"); *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1161-62 (C.D. Cal. 2001) (denying request for summary judgment where plaintiffs "raised triable issues of fact" as to future discriminatory housing practices).

of Plaintiffs' standing for injunctive relief within the "adversarial issues presented to the Court," even if Defendants did not specifically name it in their summary judgment papers. *See Fox v. Admiral Ins. Co.*, No. 12 CV 8740, 2016 WL 3520145, at *4 (N.D. Ill. June 28, 2016) (Shah, J.) (holding that although "[n]either party's summary judgment briefs used the specific phrase 'anticipatory breach,'" the issue was not raised *sua sponte* or "outside the adversarial issues presented to the Court" because the plaintiff's motion for summary judgment was based on that idea). Accordingly, Plaintiffs' Motion should be denied.

## III.    PLAINTIFFS DO NOT MEET THE HIGH BAR FOR RECONSIDERATION.

Plaintiffs' Motion should be denied for the additional reason that it does not meet the high standard necessary for reconsideration of the Court's injunctive relief decision. Motions for reconsideration "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996) (affirming denial of motion for reconsideration where evidence was available at summary judgment) (internal quotation omitted). "A 'manifest error' occurs when 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Wilson v. Baptiste,* No. 13 CV 07845, 2016 WL 3878125, at *1 (N.D. Ill. July 18, 2016) (Shah, J.) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990)) (denying motion for reconsideration). Because there is a high standard for a motion for reconsideration, "[i]ssues appropriate for reconsideration rarely arise and the motion to reconsider should be equally rare." *Wilson*, 2025 WL 3878125 at *1 (internal quotation omitted). "'Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.'" *Id.* (quoting *Caisse Nationale,* 90 F.3d at 1270).

Here, Plaintiffs fail to demonstrate a manifest error of law or fact and fail to present newly discovered evidence that necessitates a change in outcome on the Court's decision to deny injunctive relief. According, Plaintiffs' Motion should be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Reconsideration.

Dated: September 18, 2025                    Respectfully submitted,


                                              By: */s/ Debra Bogo-Ernst*
                                              Debra Bogo-Ernst
                                              Matthew J. Thomas
                                              Sara Kim
                                              Brandon E. Villa
                                              Eve Hastings
                                              Ben Halom
                                              Tara Sohns
                                              **WILLKIE FARR & GALLAGHER LLP**
                                              300 N. LaSalle Dr.
                                              Chicago, IL 60654
                                              (312) 728-9000
                                              dernst@willkie.com
                                              mthomas@willkie.com
                                              skim@willkie.com
                                              bvilla@willkie.com
                                              ehastings@willkie.com
                                              bhalom@willkie.com
                                              tsohns@willkie.com

                                              *Counsel for Defendant Ocwen Loan Servicing, LLC,*
                                              *n/k/a Onity Group Inc.*

By: */s/ Kenneth M. Kliebard*
Kenneth M. Kliebard
Michael W. Fakhoury
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, Illinois 60606-1511
Telephone: (312) 324-1000
kenneth.kliebard@morganlewis.com
michael.fakhoury@morganlewis.com

Kurt W. Rademacher (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, Pennsylvania 19103-3007
Telephone: (215) 963-5000
kurt.rademacher@morganlewis.com

*Counsel for Defendants Deutsche Bank National Trust Company, as Trustee, and Deutsche Bank Trust Company Americas, as Trustee*


By: */s/ Nathan Garroway*
Nathan Garroway
**DENTONS US LLP**
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
nathan.garroway@dentons.com

*Counsel for Defendant Altisource Solutions, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on September 18, 2025.

/s/ *Debra Bogo-Ernst*