# EXHIBIT 6

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
     NATIONAL FAIR HOUSING          )
 4   ALLIANCE; HOPE FAIR HOUSING    )
     CENTER, et al.,                )
 5                                  )
                                    )
 6                   Plaintiffs,    )
                                    )
 7          vs.                     ) No. 1:18-cv-00839
                                    )
 8   DEUTSCHE BANK NATIONAL         )
     TRUST, as trustee, et al.,     )
 9                                  )
                                    )
10                   Defendants.    )

11

12           The Fed. R. Civ. P. Rule 30(b)(6) deposition

13   on behalf of North Texas Fair Housing Center, called by

14   the Defendants for examination, taken remotely pursuant

15   to notice and pursuant to the Federal Rules of Civil

16   Procedure for the United States District Courts

17   pertaining to the taking of depositions, taken before

18   April M. Metzler, Certified Shorthand Reporter,

19   Registered Merit Reporter, Certified Realtime Reporter,

20   and Notary Public, at Dallas, Texas, commencing at

21   9:05 a.m. CST on the 24th day of January, 2022.

22

23

24
```



```
 1    APPEARANCES:

 2         RELMAN COLFAX PLLC
           MS. YIYANG WU
 3         MS. SOOHYUN CHOI
           1225 19th Street, N.W.
 4         Suite 600
           Washington, District of Columbia 20036
 5         Phone:  (202) 728-1888
           E-Mail:  ywu@relmanlaw.com
 6         E-Mail:  schoi@relmanlaw.com

 7             On behalf of the Plaintiffs,
               appeared remotely;
 8
           DENTONS US LLP
 9         MR. NATHAN L. GARROWAY
           303 Peachtree Street, NE
10         Suite 5300
           Atlanta, Georgia 30308
11         Phone:  (404) 527-4000
           E-Mail:  nathan.garroway@dentons.com
12
               On behalf of the Defendant,
13             Altisource Solutions, Inc.,
               appeared remotely;
14
           DENTONS US LLP
15         MS. LISA KRIGSTEN
           MR. CODY WOOD
16         4520 Main Street
           Suite 1100
17         Kansas City, Missouri 64111
           Phone:  (816) 460-2400
18         E-Mail:  lisa.krigsten@dentons.com
           E-Mail:  cody.n.wood@dentons.com
19
               On behalf of Defendant,
20             Altisource Solutions, Inc.,
               appeared remotely;
21

22

23

24
```



```
 1   APPEARANCES (Continued):

 2        MORGAN, LEWIS & BOCKIUS, LLC
          MR. KURT W. RADEMACHER
 3        1701 Market Street
          Philadelphia, Pennsylvania 19103-2921
 4        Phone:  (215) 963-5000
          E-Mail:  kurt.rademacher@morganlewis.com
 5
               On behalf of Defendants,
 6             Deutsche Bank National Trust, as trustee, and
               Deutsche Bank Trust Company Americas,
 7             appeared remotely;

 8        MAYER BROWN LLP
          MS. DEBRA L. BOGO-ERNST
 9        71 South Wacker Drive
          Chicago, Illinois 60606
10        Phone:  (312) 782-0600
          E-Mail:  dernst@mayerbrown.com
11
               On behalf of Defendant,
12             Ocwen Loan Servicing, LLC,
               appeared remotely.
13

14                  *    *    *    *    *    *

15

16

17

18

19

20

21

22

23

24
```



1    connecting them in a way that they're not connected.

2    And so --

3         Q.   Is there any connection between defendants'

4    maintenance and marketing practices and the stabilizing

5    effect that these ramps had?

6         MS. CHOI:  Objection to form, misstates prior

7    testimony.

8    BY THE WITNESS:

9         A.   We're trying to --

10        MR. WOOD:  Let me clarify that.  That was a

11   question.  I don't think I was talking about her

12   testimony, but ...

13   BY THE WITNESS:

14        A.   Well, these are programs that are meant to

15   help stabilize communities.  And by Deutsche continuing

16   to destabilize communities, it's creating more work that

17   needs to be done.  Right?

18        Q.   But, again, I'm not asking in a general sense.

19             I'm asking specifically:  Was there anything

20   about defendants' maintenance and marketing practices

21   that undid the stabilizing effects these ramps had?

22        MS. CHOI:  Objection to form, asked and answered.

23   BY THE WITNESS:

24        A.   I just don't think that they're connected that



1    way.  What they were doing didn't destabilize

2    specifically ramps, but it continued to destabilize the

3    same neighborhood.

4         Q.   Do you know if Deutsche Bank properties

5    existed in the neighborhood where these ramps were

6    constructed?

7         A.   There were Deutsche Bank properties all over

8    DFW.  So the likelihood of them being in these

9    neighborhoods we were trying to invest in is very high.

10   I can't tell you, off the top of my head, specifically

11   which properties were in those neighborhoods, but I do

12   know they were all over DFW.

13             And like I said, they're probably in those

14   same neighborhoods, because those are the neighborhoods

15   most affected by the REO problem.

16        Q.   How did -- Sorry.  Go ahead.

17        MS. CHOI:  I'm sorry.  I just wanted to check in

18   how long you might need, Cody?  We might need a break.

19   We've been going an hour and 15.

20        MR. WOOD:  Yeah.  Can we finish up with this

21   exhibit, and then we'll take five minutes?

22        MS. CHOI:  Okay.

23        MR. WOOD:  If that's okay with the witness?

24        THE WITNESS:  Yeah, that's fine.

1          MR. WOOD:  Okay.  Cool.

2    BY MR. WOOD:

3          Q.   So how did defendants' maintenance and

4    marketing practices affect the investments North Texas

5    Fair Housing Center made for 36 new homeowners under the

6    Wells Fargo settlement?

7          MS. CHOI:  Objection to form.

8    BY THE WITNESS:

9          A.   So the purpose of that program was to help

10   people with down payment assistance in specific

11   neighborhoods, in specific ZIP codes.

12              And so, again, while we're trying to --

13   because of all the damage done by the REOs, because

14   we're trying to address that, we're investing in a

15   property here and then, you know, down the street,

16   Deutsche is creating another property that's REO and not

17   taking care of.

18         Q.   Right, I guess -- might be close by.

19              But I'm asking specifically:  How did

20   defendants' maintenance and marketing practices affect

21   the down payment assistance you provided with the Wells

22   Fargo funds?

23         MS. CHOI:  Objection to form.

24   BY THE WITNESS:



1     A.   Well, we were first -- I think what we're

2   skipping over is the fact that what Deutsche is

3   continuing to do is frustrating North Texas Fair Housing

4   Center's mission.  So while we're using these funds to

5   invest in these neighborhoods, Deutsche is further

6   destabilizing them.  Not that they're in there just

7   destabilizing the exact properties that we're investing

8   in, they're destabilize -- their discrimination is

9   destabilizing the neighborhood that we're trying to

10  invest in.

11    Q.   Is there any connection between defendants'

12  maintenance and marketing practices and the 36

13  homeowners you provided down payment assistance to?

14    A.   Again, it's not --

15    MS. CHOI:  Objection to form.

16  BY THE WITNESS:

17    A.   Frustration is not --

18    Q.   I'm sorry.  I'm going to cut you off because I

19  don't want to spin the wheels.  I'm not asking about

20  frustration of mission damages or anything else.

21         I'm just asking very plainly, yes or no, is

22  there any connection, that you can think of, between

23  defendants' maintenance and marketing practices and

24  these 36 loan modifications that you provided assistance

```
 1    UNITED STATES OF AMERICA          )
      NORTHERN DISTRICT OF ILLINOIS     )
 2    EASTERN DIVISION                  )    SS.
      STATE OF ILLINOIS                 )
 3    COUNTY OF COOK                    )

 4

 5             I, April M. Metzler, Certified Shorthand

 6    Reporter, Registered Merit Reporter, Certified Realtime

 7    Reporter, and Notary Public, do hereby certify that

 8    FRANCES ESPINOZA was first duly sworn by me to testify

 9    to the whole truth and that the above remote deposition

10    was reported stenographically by me and reduced to

11    typewriting under my personal direction.

12             I further certify that the said deposition was

13    taken at the time and place specified and that the

14    taking of said deposition commenced on the 24th day of

15    January, 2022, at 9:05 a.m. CST.

16             I further certify that I am not a relative or

17    employee or attorney or counsel of any of the parties,

18    nor a relative or employee of such attorney or counsel,

19    nor financially interested directly or indirectly in

20    this action.

21

22

23

24
```



1            In witness whereof, I have hereunto set my

2    hand and affixed my seal of office at Chicago, Illinois,

3    this 9th of February, 2022.

4

5

6

7

8            APRIL M. METZLER, CSR, RMR, CRR, CRC, FCRR
             180 North LaSalle Street
9            Suite 2800
             Chicago, Illinois 60601
10           Phone:  (312) 236-6936

11
     CSR No. 084-004394
12

13

14

15

16

17

18

19

20

21

22

23

24

312.236.6936
877.653.6736
Fax 312.236.6968
www.lexitaslegal.com

