# EXHIBIT 9

```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
     NATIONAL FAIR HOUSING           )
 4   ALLIANCE; HOPE FAIR HOUSING     )
     CENTER, et al.,                 )
 5                                   )
                                     )
 6                   Plaintiffs,     )
                                     )
 7          vs.                      ) No. 1:18-cv-00839
                                     )
 8   DEUTSCHE BANK NATIONAL          )
     TRUST, as trustee, et al.,      )
 9                                   )
                                     )
10                   Defendants.     )

11

12          The Fed. R. Civ. P. Rule 30(b)(6) deposition

13   on behalf of Fair Housing Advocates of Northern

14   California, called by the Defendants for examination,

15   taken remotely pursuant to notice and pursuant to the

16   Federal Rules of Civil Procedure for the United States

17   District Courts pertaining to the taking of depositions,

18   taken before April M. Metzler, Certified Shorthand

19   Reporter, Registered Merit Reporter, Certified Realtime

20   Reporter, and Notary Public, at Mill Valley, California,

21   commencing at 10:03 a.m. CST on the 27th day of

22   January, 2022.

23

24
```



```
 1   APPEARANCES:

 2        SOULE, BRADTKE & LAMBERT
          MR. JAMES G. BRADTKE
 3        402 Campbell Street
          Suite 100
 4        Geneva, Illinois 60134
          Phone:   (630) 333-9144
 5        E-Mail:  jgbvjd@aol.com

 6             On behalf of the Plaintiffs,
               appeared remotely;
 7
          DENTONS US LLP
 8        MR. NATHAN L. GARROWAY
          303 Peachtree Street, NE
 9        Suite 5300
          Atlanta, Georgia 30308
10        Phone:   (404) 527-4000
          E-Mail:  nathan.garroway@dentons.com
11
               On behalf of the Defendant,
12             Altisource Solutions, Inc.,
               appeared remotely;
13
          DENTONS US LLP
14        MR. CODY WOOD
          4520 Main Street
15        Suite 1100
          Kansas City, Missouri 64111
16        Phone:   (816) 460-2400
          E-Mail:  cody.n.wood@dentons.com
17
               On behalf of Defendant,
18             Altisource Solutions, Inc.,
               appeared remotely;
19

20

21

22

23

24
```



```
 1   APPEARANCES (Continued):

 2       MORGAN, LEWIS & BOCKIUS, LLC
         MR. KURT W. RADEMACHER
 3       1701 Market Street
         Philadelphia, Pennsylvania 19103-2921
 4       Phone:  (215) 963-5000
         E-Mail:  kurt.rademacher@morganlewis.com
 5
             On behalf of Defendants,
 6           Deutsche Bank National Trust, as trustee, and
             Deutsche Bank Trust Company Americas,
 7           appeared remotely;

 8       MAYER BROWN LLP
         MS. DEBRA L. BOGO-ERNST
 9       MS. JACEY D. NORRIS
         MR. WILLIAM J. McELHANEY, III
10       71 South Wacker Drive
         Chicago, Illinois 60606
11       Phone:  (312) 782-0600
         E-Mail:  dernst@mayerbrown.com
12       E-Mail:  jnorris@mayerbrown.com
         E-Mail:  wmcelhaney@mayerbrown.com
13
             On behalf of Defendant,
14           Ocwen Loan Servicing, LLC,
             appeared remotely.
15

16                   *   *   *   *   *   *

17

18

19

20

21

22

23

24
```



1   investigations.  Is that what you mean, or are you

2   thinking about -- talking about something different?

3       Q.   Well, is there anything prior to the analysis

4   of your investigations that NFHA provided you in writing

5   related to Deutsche Bank's alleged discriminatory

6   conduct?

7       A.   I'm not remembering anything, unless it was

8   just, you know, emails saying, Let's all talk about --

9   you know, it looks -- have a conference call, or -- you

10   know, that would have been -- but nothing else specific

11   in writing that I can recall.

12       Q.   And if those emails occurred, then those would

13   have been provided to your counsel, right?

14       A.   Absolutely.

15       Q.   I think we discussed earlier your diversion

16   log lists a diversion of resources amount of a little

17   over $96,000, and that number has been slightly updated;

18   is that right?

19       A.   Correct.

20       Q.   And so the best document for me to look at to

21   determine that number would be an updated diversion log,

22   if and when one is created?

23       A.   Right.

24       Q.   Let's look on page 48 that FHANC frustration



1   of mission.

2       A.   Okay.

3       Q.   Who created this section of your response?

4       A.   Again, it would have been something that I

5   would have worked on with Casey Epp.

6       Q.   And it says in part of the first paragraph

7   here that:  Deutsche Bank has frustrated plaintiffs'

8   mission since at least 2013.

9            Right?

10      A.   Right.

11      Q.   Where are the records to show that each of the

12  listed items in the frustration of mission section are

13  related to Deutsche Bank REO properties specifically?

14      MR. BRADTKE:  Objection, form.

15  BY THE WITNESS:

16      A.   So, again, if you are talking about -- there

17  are a number of things that we did that were -- that

18  could be attributable to general REO, and there are

19  things that could be attributable specifically to

20  Deutsche Bank and -- in terms of frustration of mission.

21      Q.   And I think we talked earlier, in connection

22  with Exhibit 6091, that listed all of the properties

23  that your organization had inspected, we discussed that

24  13 percent of the inspections roughly were related to



1  Deutsche Bank; is that right?
2      A.  Right -- I mean, I don't remember it was 13
3  percent, but -- actually, that sounds right.  I did the
4  math.
5      Q.  You did -- which I appreciate.
6          So can you tell me, looking at Exhibit 6815
7  right now, this frustration of mission section, how
8  specifically Deutsche Bank impeded these programs?
9      A.  Yeah.  I mean, there are a number of things
10 that we -- you know, I was thinking about -- because
11 this is actually not an exhaustive list.
12         I can give you an example around work that we
13 do in -- for example, there's advocacy work that we do
14 in the community, and that is to affirmatively further
15 fair housing and to try to make sure that there are
16 racially integrated, you know -- to address racially
17 segregated areas of the neighborhoods that we serve.
18         And so one example is that, you know, I -- we
19 would have been -- we would have provided more advocacy
20 were it not specifically for Deutsche Bank's -- working
21 on the results of Deutsche Bank's discrimination.
22         So I'll just give you an example.  Yesterday,
23 I was supposed to meet with community partners about a
24 local initiative related to Affirmatively Furthering

1　Fair Housing, and I was not able to -- I told them I

2　couldn't meet with them because I was preparing for this

3　deposition.

4　　　　　So those are the kinds of things that are

5　specific to Deutsche Bank.

6　　　Q.　But this section covers both things specific

7　to Deutsche Bank and things that are general REO, right,

8　as we discussed?

9　　　A.　Correct.

10　　　Q.　Has FHANC put a dollar figure on its

11　frustration of mission damages?

12　　　A.　No, we have not.

13　　　Q.　If you go to page 49, the bottom of the page,

14　you'll see a section "FHANC lost opportunities"?

15　　　A.　Yes.

16　　　Q.　-- identified these lost opportunities?

17　　　A.　I'm sorry.  You cut out just as you were --

18　　　Q.　Sorry.  I'm -- probably I'm sitting back too

19　far.

20　　　A.　No.  It's also -- I think it has to do with my

21　internet connection, so sometimes I lose parts of words,

22　so ...

23　　　Q.　Who identified the lost opportunities listed

24　here?



1    A.   I would have been the one to identify them.
2  And based on our -- what was in our housing counseling
3  and educational strategic plan that we had discussed
4  earlier, that was the programmatic plan.
5    Q.   So other than the programmatic plan, is there
6  other documentation supporting these lost opportunities?
7    A.   That's the primary source.
8    Q.   And those were produced, right?
9    A.   Yes, I think we looked at --
10    Q.   We did.
11    A.   -- it earlier. Yeah.
12    Q.   How do we know what portion of your REO work
13  for Deutsche Bank contributed to these lost
14  opportunities?
15    A.   How would we know, what's the question, the
16  percentage?
17    Q.   Sure.
18        How do you quantify this, what opportunities
19  were lost because of your REO work related to Deutsche
20  Bank specifically?
21    A.   That is not that easy to gauge, but we can
22  certainly say that it contributed to, you know,
23  something significant. And, you know, there's some
24  things that are harder to quantify and other things,

1  like the event that I mentioned yesterday that I had to

2  cancel specifically in order to prepare for this

3  deposition, was much more obvious.

4      Q.   So fair to say that it's difficult to

5  quantify?

6      A.   Yeah.  I don't have a -- I don't have an exact

7  amount that we could -- I can't say we would have done

8  "X" number of these or "Y" number of those.  I can just

9  say generally we weren't able to do certain kinds of

10 things that we planned or we weren't able to do work to

11 the extent that we planned for because of our diverting

12 our -- doing something different to address this

13 litigation and this investigation.

14     Q.   If you turn to page 53, towards the bottom of

15 the page, there's a heading titled:  Funding

16 opportunities?

17     A.   Yes.

18     Q.   And in this section, FHANC claims that it

19 could not apply for new grants and funding sources, at

20 least in some instances; is that correct?

21     A.   Yes.

22     Q.   How did Deutsche Bank's conduct or activities

23 prevent FHANC from making grant and funding source

24 applications?



```
 1   UNITED STATES OF AMERICA           )
     NORTHERN DISTRICT OF ILLINOIS      )
 2   EASTERN DIVISION                   )    SS.
     STATE OF ILLINOIS                  )
 3   COUNTY OF COOK                     )

 4

 5             I, April M. Metzler, Certified Shorthand

 6   Reporter, Registered Merit Reporter, Certified Realtime

 7   Reporter, and Notary Public, do hereby certify that

 8   CAROLINE PEATTIE was first duly sworn by me to testify

 9   to the whole truth and that the above remote deposition

10   was reported stenographically by me and reduced to

11   typewriting under my personal direction.

12             I further certify that the said deposition was

13   taken at the time and place specified and that the

14   taking of said deposition commenced on the 27th day of

15   January, 2022, at 10:03 a.m. CST.

16             I further certify that I am not a relative or

17   employee or attorney or counsel of any of the parties,

18   nor a relative or employee of such attorney or counsel,

19   nor financially interested directly or indirectly in

20   this action.

21

22

23

24
```



1    In witness whereof, I have hereunto set my
2    hand and affixed my seal of office at Chicago, Illinois,
3    this 11th of February, 2022.
4
5
6
7
8    APRIL M. METZLER, CSR, RMR, CRR, CRC, FCRR
     180 North LaSalle Street
9    Suite 2800
     Chicago, Illinois 60601
10   Phone:  (312) 236-6936
11
     CSR No. 084-004394
12

*[Notary seal: APRIL M METZLER, OFFICIAL SEAL, Notary Public, State of Illinois, My Commission Expires January 24, 2025]*

312.236.6936
877.653.6736
Fax 312.236.6968
www.lexitaslegal.com

