# EXHIBIT 10

```
                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION


 NATIONAL FAIR HOUSING            )
 ALLIANCE; HOPE FAIR HOUSING      )
 CENTER, et al.,                  )
                                  )
                                  )
                 Plaintiffs,      )
                                  )
          vs.                     )  No. 1:18-cv-00839
                                  )
 DEUTSCHE BANK NATIONAL           )
 TRUST, as trustee, et al.,       )
                                  )
                                  )
                 Defendants.      )
```

         The videotaped Fed. R. Civ. P. Rule 30(b)(6) deposition on behalf of Fair Housing Center of West Michigan, called by the Defendants for examination, taken remotely pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before April M. Metzler, Certified Shorthand Reporter, Registered Merit Reporter, Certified Realtime Reporter, and Notary Public, at Grand Rapids, Michigan, commencing at 10:09 a.m. CST on the 22nd day of September, 2021.



```
 1   APPEARANCES:

 2        SOULE, BRADTKE & LAMBERT
          MS. JENNIFER K. SOULE
 3        MR. STEVEN P. SCHNECK
          402 Campbell Street
 4        Suite 100
          Geneva, Illinois 60134
 5        Phone:  (630) 333-9144
          E-Mail:  jsoule@sbllegal.com
 6
               On behalf of the Plaintiffs,
 7             appeared remotely;

 8        DANE LAW LLC
          MR. STEPHEN DANE
 9        312 Louisiana Avenue
          Perrysburg, Ohio 43551
10        Phone:  (419) 873-1814
          E-Mail:  sdane@fairhousinglaw.com
11
               On behalf of the Plaintiffs,
12             appeared remotely;

13        RELMAN COLFAX PLLC
          MS. JENNIFER KLAR
14        1225 19th Street, N.W.
          Suite 600
15        Washington, District of Columbia 20036
          Phone:  (202) 728-1888
16        E-Mail:  jklar@relmanlaw.com

17             On behalf of the Plaintiffs,
               appeared remotely;
18
          DENTONS US LLP
19        MR. NATHAN L. GARROWAY
          303 Peachtree Street, NE
20        Suite 5300
          Atlanta, Georgia 30308
21        Phone:  (404) 527-4000
          E-Mail:  nathan.garroway@dentons.com
22
               On behalf of the Defendant,
23             Altisource Solutions, Inc.,
               appeared remotely;

24
```



```
 1   APPEARANCES (Continued):

 2        DENTONS US LLP
          MS. LISA KRIGSTEN
 3        MR. CODY WOOD
          4520 Main Street
 4        Suite 1100
          Kansas City, Missouri 64111
 5        Phone:  (816) 460-2400
          E-Mail:  lisa.krigsten@dentons.com
 6        E-Mail:  cody.n.wood@dentons.com

 7             On behalf of Defendant,
               Altisource Solutions, Inc.,
 8             appeared remotely;

 9        MORGAN, LEWIS & BOCKIUS, LLC
          MR. KENNETH M. KLIEBARD
10        77 West Wacker Drive
          Chicago, Illinois 60601
11        Phone:  (312) 324-1000
          E-Mail:  kenneth.kliebard@morganlewis.com
12
               On behalf of Defendant,
13             Deutsche Bank National Trust, as trustee,
               appeared remotely;
14
          MORGAN, LEWIS & BOCKIUS, LLC
15        MR. VICTOR H. CRUZ
          1717 Main Street
16        Suite 3200
          Dallas, Texas 75201
17        Phone:  (214) 466-4000
          E-Mail:  victor.cruz@morganlewis.com
18
               On behalf of Defendant,
19             Deutsche Bank National Trust, as trustee,
               appeared remotely;
20

21

22

23

24
```



```
 1   APPEARANCES (Continued):

 2       MORGAN, LEWIS & BOCKIUS, LLC
         MR. KURT W. RADEMACHER
 3       1701 Market Street
         Philadelphia, Pennsylvania 19103-2921
 4       Phone:  (215) 963-5000
         E-Mail:  kurt.rademacher@morganlewis.com
 5
              On behalf of Defendant,
 6            Deutsche Bank National Trust, as trustee,
              appeared remotely;
 7
         MAYER BROWN LLP
 8       MS. DEBRA L. BOGO-ERNST
         MS. JACEY D. NORRIS
 9       MR. WILLIAM J. McELHANEY, III
         71 South Wacker Drive
10       Chicago, Illinois 60606
         Phone:  (312) 782-0600
11       E-Mail:  dernst@mayerbrown.com
         E-Mail:  jnorris@mayerbrown.com
12       E-Mail:  wmcelhaney@mayerbrown.com

13            On behalf of Defendant,
              Ocwen Loan Servicing, LLC,
14            appeared remotely.

15   ALSO PRESENT:

16       Ms. Rebecca Sipowicz,
         Ocwen in-house counsel,
17       attended remotely

18       Mr. Eric Spett,
         Ocwen Deputy General Counsel,
19       attended remotely

20       Ms. Ella O'Leary, Relman Colfax PLLC,
         attended remotely
21
         Mr. Andrew Kim, videographer
22       attended remotely

23
                    *    *    *    *    *    *
24
```



1  we did not put a monetary value on all of these

2  activities here.

3      Q.   And how is -- what was the decision about

4  whether an activity was to be included in the

5  counteraction that was on the diversion summary or not?

6      A.   I do not recall.  We made a decision to not

7  include the meetings that were specific to the 49507

8  project on the diversion summary.  I think I mentioned

9  before, we wanted to err on the side of caution.  I

10 don't exactly remember why we made that ultimate

11 decision.

12          But, again, we, if anything, run on that

13 documentation as a baseline (phonetic).

14     Q.   So then I want to back up in this document to

15 page 48 and 49, which is "frustration of mission."

16          So starting right where you are on page 48,

17 the Fair Housing Center of West Michigan frustration.

18 And if you scroll down, it says specifically:  Deutsche

19 Bank's discriminatory maintenance and marketing

20 practices impeded plaintiffs' community investment and

21 neighborhood stabilization programs, activities, and

22 services including.

23          Do you see that sentence?

24     A.   I do see that, yes.



1  Q.  What information -- what is the source of the
2  information that's contained in those bullet points on
3  page 48 and on the top of page 49?
4  A.  I believe that these bullet points are related
5  to that 49507 project.
6  Q.  The bullet points, I think there are one,
7  two -- there are eight bullet points totaled here,
8  right?  They all begin from June 2013 through October
9  2015.
10      Are we looking at the same part of this
11  document?
12  A.  Yes.
13  Q.  Each one of these eight bullet points relates
14  to the -- 45907 exclamation point; that project?
15  A.  That's correct.
16  Q.  Did it relate to anything else other than that
17  project?
18  A.  I believe they were only related to that
19  project.
20  Q.  And then if you turn to the top of page 50 --
21  at the bottom of page 49 and at the top of page 50, it
22  says:  Deutsche Bank's discriminatory maintenance and
23  marketing practices undermines plaintiff's efforts to
24  advance its missions and goals through education and



1 advocacy and training programs, including.
2     And then there are three bullet points at the
3 top of page 50.
4     Do you see where I'm reading through the
5 document?
6     A.   I do.
7     Q.   Where are these goals recorded?  Where do
8 these goals come from?
9     A.   As I recall, those were goals in our strategic
10 plan at the time.
11     Q.   What is universal design?
12     A.   Universal design means designing buildings in
13 a way that are universally accessible for all.  So
14 having, like, accessibility, like physical accessibility
15 for all when you're designing a building and not just
16 meeting the baseline requirements required by, like, the
17 Building Code or the laws but making sure that buildings
18 are designed for people of all abilities.
19     Q.   And what did Deutsche Bank's conduct -- how
20 did Deutsche Bank's conduct relate to universal design?
21     A.   Well, because we had to divert time for
22 addressing the conduct of Deutsche Bank, we did not have
23 as much time to spend on these other components of our
24 mission.



1　　　　Q.　Has the Fair Housing Center put a dollar

2　figure on the frustration of mission damages?

3　　　　A.　Not --

4　　　　　　　　　(Multiple speakers simultaneously

5　　　　　　　　　　speaking.)

6　BY THE WITNESS:

7　　　　A.　Not that I know of.

8　　　　Q.　Are there any documents that could be used to

9　support such a calculation?

10　　　　MR. SCHNECK:　Objection to form.

11　BY THE WITNESS:

12　　　　A.　We've already provided some documents that

13　could be used to perform such a calculation, in terms of

14　some of the counteraction activities we took and

15　result -- so, yes, we have documentation.

16　　　　Q.　So I'm just going to say, we haven't seen any

17　documentation about counteraction activity.  So I don't

18　know -- if you say you provided it to your attorneys, I

19　guess we can talk to your attorneys about that.  But I

20　don't believe that any of that has been produced to us.

21　　　　　　So are you saying that there are documents

22　about counteraction activities that were produced to

23　your attorney?

24　　　　A.　We've provided information about



1   counteractivities to our attorney, yes.
2       Q.   And just so the record is clear, throughout
3   this deposition you've referred to your attorneys.
4           Are those the attorneys who are participating
5   in this deposition -- so we have Mr. Schneck; we have
6   Mr. Dane; we have Ms. Soule.
7           When you refer to "attorneys," are you
8   referring to those individuals?
9       A.   Not necessarily.  There's been a lot of
10  different attorneys involved in the case that have
11  corresponded with me at different points.
12      Q.   But those attorneys or the predecessors in
13  this action.
14          What I want to make sure is --
15     MR. SCHNECK:  Objection, form --
16  BY MS. KRIGSTEN:
17      Q.   -- did the Fair Housing Center have its own
18  set of attorneys that are separate from the ones who
19  have appeared or made appearances in this litigation?
20      A.   No, we don't.
21      Q.   Let us turn to that REO field evaluation form,
22  which I believe is Exhibit 577- -- no, it is not 5770 --
23  5302 [sic].
24          Mr. Wood is giving me hand signals to tell me



```
 1  these things, so ...
 2       A.   Mr. Wood is like the Wizard of Oz; we can't
 3  see him, but we know he's there.
 4                    (Sotto voce discussion between
 5                     Mr. Wood and Ms. Krigsten.)
 6  BY MS. KRIGSTEN:
 7       Q.   Apparently Exhibit 5307 is the REO field
 8  evaluation form.
 9            You're familiar with this form?
10       A.   Yes.
11       Q.   Is this the form that the Fair Housing Center
12  used when it inspected REO properties as part of the REO
13  investigation?
14       A.   I don't know if this is the same specific one.
15  I would have to match it up with our records to show
16  that they were identical.
17       Q.   Do you see anything that looks inconsistent
18  with the forms that you used -- or Fair Housing Center
19  used to inspect REO properties?
20       A.   Do you have a copy of one of our worksheets
21  that I could look at?  I ...
22            It's been a while since I looked at one of
23  these.
24       MS. KRIGSTEN:  Let's go off the record for a
```



```
1   UNITED STATES OF AMERICA           )
    NORTHERN DISTRICT OF ILLINOIS      )
2   EASTERN DIVISION                   )   SS.
    STATE OF ILLINOIS                  )
3   COUNTY OF COOK                     )

4

5              I, April M. Metzler, Certified Shorthand

6   Reporter, Registered Merit Reporter, Certified Realtime

7   Reporter, and Notary Public, do hereby certify that

8   ELIZABETH STODDARD was first duly sworn by me to testify

9   to the whole truth and that the above remote videotaped

10  deposition was reported stenographically by me and

11  reduced to typewriting under my personal direction.

12             I further certify that the said videotaped

13  deposition was taken at the time and place specified and

14  that the taking of said deposition commenced on the

15  22nd day of September, 2021, at 10:09 a.m. CST.

16             I further certify that I am not a relative or

17  employee or attorney or counsel of any of the parties,

18  nor a relative or employee of such attorney or counsel,

19  nor financially interested directly or indirectly in

20  this action.
```

312.236.6936
877.653.6736
Fax 312.236.6968
www.lexitaslegal.com



1  In witness whereof, I have hereunto set my
2  hand and affixed my seal of office at Chicago, Illinois,
3  this 6th of October, 2021.
4
5
6
7
8  _____
   APRIL M. METZLER, CSR, RMR, CRR, CRC, FCRR
   180 North LaSalle Street
9  Suite 2800
   Chicago, Illinois 60601
10 Phone:  (312) 236-6936
11
   CSR No. 084-004394
12
13
14
15
16
17
18
19
20
21
22
23
24

