# EXHIBIT 11

```
          IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION


 NATIONAL FAIR HOUSING          )
 ALLIANCE; HOPE FAIR HOUSING    )
 CENTER, et al.,                )
                                )
                                )
              Plaintiffs,       )
                                )
       vs.                      ) No. 1:18-cv-00839
                                )
 DEUTSCHE BANK NATIONAL         )
 TRUST, as trustee, et al.,     )
                                )
                                )
              Defendants.       )
```

          The Fed. R. Civ. P. Rule 30(b)(6) deposition

on behalf of South Suburban Housing Center, called by

the Plaintiffs for examination, taken remotely pursuant

to notice and pursuant to the Federal Rules of Civil

Procedure for the United States District Courts

pertaining to the taking of depositions, taken before

April M. Metzler, Certified Shorthand Reporter,

Registered Merit Reporter, Certified Realtime Reporter,

and Notary Public, at Village of Homewood, Illinois,

commencing at 10:32 a.m. CST on the 17th day of

November, 2021.



```
 1   APPEARANCES:

 2       SOULE, BRADTKE & LAMBERT
         MR. STEVEN P. SCHNECK
 3       402 Campbell Street
         Suite 100
 4       Geneva, Illinois 60134
         Phone:  (630) 333-9144
 5       E-Mail:  steve@steveschnecklaw.com

 6            On behalf of the Plaintiffs,
              appeared remotely;
 7
         DENTONS US LLP
 8       MR. CODY WOOD
         4520 Main Street
 9       Suite 1100
         Kansas City, Missouri 64111
10       Phone:  (816) 460-2400
         E-Mail:  cody.n.wood@dentons.com
11
              On behalf of Defendant,
12            Altisource Solutions, Inc.,
              appeared remotely;
13
         MORGAN, LEWIS & BOCKIUS, LLC
14       MR. KENNETH M. KLIEBARD
         77 West Wacker Drive
15       Chicago, Illinois 60601
         Phone:  (312) 324-1000
16       E-Mail:  kenneth.kliebard@morganlewis.com

17            On behalf of Defendant,
              Deutsche Bank National Trust, as trustee,
18            appeared remotely;

19       MORGAN, LEWIS & BOCKIUS, LLC
         MR. KURT W. RADEMACHER
20       1701 Market Street
         Philadelphia, Pennsylvania 19103-2921
21       Phone:  (215) 963-5000
         E-Mail:  kurt.rademacher@morganlewis.com
22
              On behalf of Defendant,
23            Deutsche Bank National Trust, as trustee,
              appeared remotely;

24
```



```
 1   APPEARANCES (Continued):

 2        MAYER BROWN LLP
          MS. DEBRA L. BOGO-ERNST
 3        71 South Wacker Drive
          Chicago, Illinois 60606
 4        Phone:  (312) 782-0600
          E-Mail:  dernst@mayerbrown.com
 5
             On behalf of Defendant,
 6           Ocwen Loan Servicing, LLC,
             appeared remotely.
 7
     ALSO PRESENT:
 8
          Mr. Eric Spett,
 9        Ocwen Deputy General Counsel,
          attended remotely
10

11                    *   *   *   *   *   *

12

13

14

15

16

17

18

19

20

21

22

23

24
```



1  Dixmoor and Markham.
2      Q.  Was this part of the REO investigation at
3  issue in this case?
4      A.  These assignments were done in conjunction
5  with REO investigations, and there are some Deutsche
6  Bank properties --
7      Q.  Looking --
8      A.  -- on this list.
9      Q.  Looking at the page number that ends in Bates
10 number 232, there's a lender column there?
11     A.  Yes.
12     Q.  I see Chase listed.
13         Did SSHC investigate Chase?
14     A.  Well, it looks looked like they were assigned
15 here.  I'd have to go back over our records to see if we
16 did any of the assignments that were made for Chase.
17         I don't know.
18     Q.  When inspectors inspected a property, did they
19 know the titleholder of that property at the time they
20 did the inspection?
21     A.  It normally was on the REO evaluation form.
22     Q.  Why was it put on the evaluation form?
23     A.  I don't know.  To try to keep straight, you
24 know, the properties that would be entered for a



1  particular lend.
2      Q.   Was it relevant to an inspector to know who
3  the lender was before they did an inspection?
4      A.   I don't believe it was.  I think it was just
5  done so that it was -- may have been easier for them to
6  download the information so that they had that as an
7  indicator on the form.
8      Q.   How were employees at SSHC paid, are they
9  salary or hourly or some combination of the two?
10     A.   All of the employees that did this
11 investigations were all salaried employees.
12     Q.   Are you salaried?
13     A.   Yes.
14     Q.   How did you compile your summary of diversion
15 damages?
16     MR. SCHNECK:  Objection to form.
17 BY THE WITNESS:
18     A.   We're moving on to a different area?
19     Q.   Yeah.
20          I may go back.
21     A.   We compiled our diversion of -- our diversion
22 damages by putting together our time records that we
23 kept to determine the amount of resources that we put
24 into these investigations -- the Deutsche Bank



1  investigation.  And I put together information about the
2  frustration of purpose that was caused by the lack of
3  marketing and maintenance practices that we found and
4  also put together information about the lost
5  opportunities that we -- that occurred from us doing
6  these investigations, the REO investigation.
7      Q.   How did you --
8                 (Stenographer clarification.)
9  BY MR. RADEMACHER:
10     Q.   How did you determine if an opportunity was
11 lost?
12     A.   An opportunity was lost if we were spending
13 time and resources on doing one thing and we weren't
14 able to do another.
15     Q.   How did you determine what that other thing
16 was in this case, if you were undertaking an
17 investigation of Deutsche Bank --
18     A.   I looked -- I looked at all of the pressing
19 needs that we were dealing with at the time.
20     Q.   Was there a list of pressing needs?  What did
21 you consult to determine a pressing need?
22     MR. SCHNECK:  Don't interrupt his answers, Kurt.  I
23 think he was still talking when you asked that last
24 question.



```
 1   BY THE WITNESS:
 2        A.   The pressing needs deal with providing
 3   services to families in our depressed housing area,
 4   those that were suffering forms of discrimination based
 5   upon mortgage fraud, delinquency scams, people that
 6   were -- that whose properties were being overassessed
 7   real estate taxes, people's whose properties were being
 8   underassessed for appraisals, properties that -- people
 9   that were having difficulty negotiating with their
10   lenders for workout plans that were in foreclosure,
11   because their properties were underwater, and that they
12   had been robbed of the equity of their properties,
13   because of the values to have decreased greatly and not
14   increased -- not recovered during this time period.
15   Looking at all those things that we do as an
16   organization to address the needs of the families that
17   we serve, those were the things that we were --
18   opportunities that we lost, now, putting time into
19   dealing with those issues.
20        Q.   That didn't answer my question.
21        A.   I thought it did.
22        Q.   I asked what you consulted to determine what
23   opportunities were lost.
24        A.   I consulted our knowledge of what was
```



1 happening in our service area to deal with the problems

2 that were most compelling.

3     Q. The personal knowledge, your personal

4 knowledge?

5     A. No. There's all kinds of academic studies

6 that have been done to show that the service area that

7 we're in had the highest rate of foreclosure, had the

8 most homes that were underwater mortgages, that had

9 suffered all kinds of data from the housing market. It

10 shows it was a depressed area that needed some type of

11 services to rectify what was going on here. Those were

12 the services that we were deprived from dealing with.

13     Q. Did you produce those materials that you

14 consulted?

15     A. I don't believe -- this is the first time I've

16 ever heard or -- a question articulated in that way from

17 the defendant.

18     Q. Sounds like you testified that those materials

19 were the basis for some of your lost opportunity claims,

20 but it doesn't sound like they've been produced.

21     MR. SCHNECK: Objection to form, misstating his

22 testimony.

23 BY THE WITNESS:

24     A. What I would think is that we were deprived



1  dealing with the pressing problems in our service area,
2  and I was elaborating on the basis for us to make that
3  determination, which were a number of academic studies
4  that showed the depressed nature of our market.
5      Q.   Was there a specific academic study you
6  consulted to make that determination?
7      MR. SCHNECK:  Objection, what determination?
8      MR. RADEMACHER:  That he had lost opportunities.
9  BY THE WITNESS:
10     A.   We consulted academic studies that showed the
11 high rate of foreclosure, the high rate of underwater
12 mortgages, and the other conditions that showed
13 depression in our housing market.
14     Q.   And can you specifically identify any of those
15 studies today?
16     A.   Off the top of my head, I cannot.  But I
17 certainly can provide information about the condition of
18 our housing market that are contained in academic
19 studies, yes.
20     Q.   Have you produced the specific studies you
21 relied on in determining your lost opportunities?
22     MR. SCHNECK:  Objection to form of the question.
23 BY THE WITNESS:
24     A.   We can produce studies that show the condition



```
1   UNITED STATES OF AMERICA           )
    NORTHERN DISTRICT OF ILLINOIS      )
2   EASTERN DIVISION                   )   SS.
    STATE OF ILLINOIS                  )
3   COUNTY OF COOK                     )

4

5              I, April M. Metzler, Certified Shorthand

6   Reporter, Registered Merit Reporter, Certified Realtime

7   Reporter, and Notary Public, do hereby certify that JOHN

8   PETRUSZAK was first duly sworn by me to testify to the

9   whole truth and that the above remote deposition was

10  reported stenographically by me and reduced to

11  typewriting under my personal direction.

12             I further certify that the said deposition was

13  taken at the time and place specified and that the

14  taking of said deposition commenced on the 17th day of

15  November, 2021, at 10:32 a.m. CST.

16             I further certify that I am not a relative or

17  employee or attorney or counsel of any of the parties,

18  nor a relative or employee of such attorney or counsel,

19  nor financially interested directly or indirectly in

20  this action.

21

22

23

24
```



1      In witness whereof, I have hereunto set my

2  hand and affixed my seal of office at Chicago, Illinois,

3  this 2nd of December, 2021.

4

5      [APRIL M METZLER OFFICIAL SEAL, Notary Public, State of Illinois, My Commission Expires January 24, 2025]    /s/ April M Metzler

6

7

8  _____
   APRIL M. METZLER, CSR, RMR, CRR, CRC, FCRR
   180 North LaSalle Street
9  Suite 2800
   Chicago, Illinois 60601
10  Phone:  (312) 236-6936

11
   CSR No. 084-004394
12

13

14

15

16

17

18

19

20

21

22

23

24

