# EXHIBIT 13

```
1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                        EASTERN DIVISION

3
     NATIONAL FAIR HOUSING          )
4    ALLIANCE; HOPE FAIR HOUSING    )
     CENTER, et al.,                )
5                                   )
                                    )
6                   Plaintiffs,     )
                                    )
7          vs.                      ) No. 1:18-cv-00839
                                    )
8    DEUTSCHE BANK NATIONAL         )
     TRUST, as trustee, et al.,     )
9                                   )
                                    )
10                  Defendants.     )

11

12          The Fed. R. Civ. P. Rule 30(b)(6) deposition

13   on behalf of Connecticut Fair Housing Center, called by

14   the Defendants for examination, taken remotely pursuant

15   to notice and pursuant to the Federal Rules of Civil

16   Procedure for the United States District Courts

17   pertaining to the taking of depositions, taken before

18   April M. Metzler, Certified Shorthand Reporter,

19   Registered Merit Reporter, Certified Realtime Reporter,

20   and Notary Public, at Perry, New York, commencing at

21   8:00 a.m. CST on the 9th day of February, 2022.

22

23

24
```



```
 1   APPEARANCES:

 2        SOULE, BRADTKE & LAMBERT
          MS. JENNIFER K. SOULE
 3        MS. KELLY K. LAMBERT
          402 Campbell Street
 4        Suite 100
          Geneva, Illinois 60134
 5        Phone:  (630) 333-9144
          E-Mail:  jsoule@sbllegal.com
 6        E-Mail:  klambert@sbllegal.com

 7             On behalf of the Plaintiffs,
               appeared remotely;
 8
          RELMAN COLFAX PLLC
 9        MS. SOOHYUN CHOI
          1225 19th Street, N.W.
10        Suite 600
          Washington, District of Columbia 20036
11        Phone:  (202) 728-1888
          E-Mail:  schoi@relmanlaw.com
12
               On behalf of the Plaintiffs,
13             appeared remotely;

14        DENTONS US LLP
          MR. NATHAN L. GARROWAY
15        303 Peachtree Street, NE
          Suite 5300
16        Atlanta, Georgia 30308
          Phone:  (404) 527-4000
17        E-Mail:  nathan.garroway@dentons.com

18             On behalf of the Defendant,
               Altisource Solutions, Inc.,
19             appeared remotely;

20

21

22

23

24
```



```
 1   APPEARANCES (Continued):

 2        DENTONS US LLP
          MR. CODY WOOD
 3        4520 Main Street
          Suite 1100
 4        Kansas City, Missouri 64111
          Phone:  (816) 460-2400
 5        E-Mail:  cody.n.wood@dentons.com

 6             On behalf of Defendant,
               Altisource Solutions, Inc.,
 7             appeared remotely;

 8        MORGAN, LEWIS & BOCKIUS, LLC
          MR. KENNETH M. KLIEBARD
 9        MR. MICHAEL W. FAKHOURY
          110 North Wacker Drive
10        Chicago, Illinois 60601
          Phone:  (312) 324-1000
11        E-Mail:  kenneth.kliebard@morganlewis.com
          E-Mail:  michael.fakhoury@morganlewis.com
12
               On behalf of Defendants,
13             Deutsche Bank National Trust, as trustee, and
               Deutsche Bank Trust Company Americas,
14             appeared remotely;

15        MORGAN, LEWIS & BOCKIUS, LLC
          MR. KURT W. RADEMACHER
16        1701 Market Street
          Philadelphia, Pennsylvania 19103-2921
17        Phone:  (215) 963-5000
          E-Mail:  kurt.rademacher@morganlewis.com
18
               On behalf of Defendants,
19             Deutsche Bank National Trust, as trustee, and
               Deutsche Bank Trust Company Americas,
20             appeared remotely;

21

22

23

24
```



```
 1   APPEARANCES (Continued):

 2       MAYER BROWN LLP
         MR. WILLIAM J. McELHANEY, III
 3       71 South Wacker Drive
         Chicago, Illinois 60606
 4       Phone:  (312) 782-0600
         E-Mail:  wmcelhaney@mayerbrown.com
 5
             On behalf of Defendant,
 6           Ocwen Loan Servicing, LLC,
             appeared remotely.
 7

 8                  *    *    *    *    *    *

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```



1  estate agents.  And at the time, I charged $300 an hour
2  for my time.
3      Q.   And did you receive that amount from these
4  outside entities in 2013?
5      MS. CHOI:  Objection to form.
6  BY THE WITNESS:
7      A.   Yes, I did.
8      Q.   So for entries that occurred in 2016, your
9  rate reflects $350 an hour.
10          When did you impose that rate increase?
11     A.   I don't know exactly.  Sometime between 2013
12 and 2016.
13     Q.   And did you ever collect in 2016 $350 an hour
14 from any external entity?
15     A.   Yes, I did.
16     Q.   And then in 2014, your rate reflects -- or I'm
17 sorry, 2018, your entries on this chart reflect $400 an
18 hour.
19          In 2018, did you ever collect $400 an hour
20 from any external entity?
21     MS. CHOI:  Objection to form --
22 BY THE WITNESS:
23     A.   Yes, I did.
24          Sorry.



1      Q.   I think you testified at the beginning of the

2    deposition today that The Center hasn't applied for any

3    grants that covered any portion of the REO

4    investigation; is that correct?

5         MS. CHOI:  Objection to form.

6    BY THE WITNESS:

7      A.   That is correct.

8      Q.   Did the investigation of Deutsche Bank fulfill

9    any activity requirements under any grant that The

10   Center received?

11        MS. CHOI:  Objection to form.

12   BY THE WITNESS:

13     A.   No.

14        MR. RADEMACHER:  Let's open up Exhibit 7187.

15   And --

16        THE WITNESS:  Yes, I have it.

17        MR. RADEMACHER:  Okay.

18   BY MR. RADEMACHER:

19     Q.   These are plaintiffs' responses to defendants'

20   joint interrogatories.  If you scroll far down to

21   pages -- it's page 62 of the PDF, it's actually labeled

22   page 18 on the bottom, it's an exhibit.  At the top of

23   the page, it reads:  Connecticut Fair Housing Center

24   diversion.



1           Let me know when you're there.
2      A.   I'm there.
3      Q.   Did you provide the information for inclusion
4  in this interrogatory response?
5      A.   Yes, I did.
6                (Stenographer clarification.)
7      MS. CHOI:  Objection to form.
8  BY MR. RADEMACHER:
9      Q.   Did anyone else from The Center provided
10 information that's included here?
11     A.   I'm looking.  Just to be clear, yes.
12     Q.   Who?
13     A.   Sarah White, Maria Cuerda, Claudia Gonzalez --
14 no, not Claudia.  She was not around when we answered
15 this -- and James Dresser, possibly Kirschner.
16     Q.   Who is Kirschner?
17     A.   He is the legal director of the Connecticut
18 Fair Housing Center.
19     Q.   On the bottom of page 18, one of the
20 activities is:  Applying for new grants and funding
21 sources.
22          Is there a specific grant that you're aware of
23 that you could have applied to but did not because of
24 the REO investigation?



1       MS. CHOI:  Objection to form.

2  BY THE WITNESS:

3       A.   Currently we have 14, I think, funding

4  sources.  Those have only come about in the last two

5  years, when we have largely left the REO investigations

6  behind, except for with regards to the litigation.

7            So during the time that we were doing this

8  investigation, for example, we knew that the Fairfield

9  County's Community Foundation was likely to be a funder

10 because they were interested in home ownership issues in

11 particular, but equity and discrimination issues

12 specifically.  We were not able to apply for those

13 grants.

14           The Eastern Connecticut Community Foundation

15 [sic] had been looking at housing issues that were going

16 on in eastern Connecticut, which is far less populated

17 and a little bit more rural than the central and western

18 part of the state.  And we knew that there were a lot of

19 fair housing issues there, but we were not able to apply

20 for funding, even though we knew that they might be

21 interested in the work that we were doing.

22           One of the things that we wanted to do was

23 apply for money from the Community Foundation for

24 Greater New Haven because we knew there were a lot of



1  REO properties and foreclosures going on in New Haven

2  County, and we knew that it was one of the highest

3  foreclosure rates in the country, and one of the lowest

4  vacancy rates in the state.

5        And since both of those are within the mission

6  of the Fair Housing Center, we wanted to apply for

7  funding from them and we were never able to do that.

8        So far all of the funding that I have talked

9  about has been local funding; meaning, it is money from

10 local foundations or grant sources.

11       Recently we have been getting some national

12 funds, not because we are -- I don't know -- doing

13 anything new and different, but simply because we have

14 had the time and the ability to cultivate those national

15 foundations and national sources, in order to be able to

16 get funding from those places.

17    Q.  Who at The Center is responsible for applying

18 for new grants and funding sources?

19    MS. CHOI:  Objection to form.

20 BY THE WITNESS:

21    A.  Me, I am the primary person who writes grants.

22 We now have a director of operations who began work in

23 2010, I believe.  She also helps research and does all

24 of the budgeting and financial pieces of the grants 6,



1  that I am primarily responsible for writing the majority

2  of the grant, the narrative and the creating tasks and

3  coming up with outputs and metrics to measure success.

4      Q.   Does Ms. Dresser have any responsibility for

5  writing grants?

6      MS. CHOI:  Objection to form.

7  BY THE WITNESS:

8      A.   Mr. Dresser --

9      Q.   Mr. Dresser, correct?

10     A.   -- or Miss.

11     Q.   Right.  There were two of those.

12              (Laughter.)

13 BY MR. RADEMACHER:

14     Q.   Yes, James Dresser.

15     A.   Yes, exactly, James.  He does not and did not.

16     Q.   What about Ms. Cuerda?

17     A.   None of the staff who did the REO

18 investigations are responsible for writing grants, but

19 they are responsible for communicating issues that they

20 think we need to work on.

21          For instance, Sarah White, although she has

22 worked almost exclusively during her career on

23 foreclosure prevention issues, was involved in

24 organizing tenants and talking with legislators about



1　The Center -- about the State of Connecticut's right to
2　counsel.  And so we have now written new grants in order
3　to fund that.  And while she was not the person writing
4　the grants, she came to me and said, I think this is an
5　issue that we need to work on.  We have staff meetings.
6　　　　　We had individual, you know, meetings among
7　staff members.  And while I actually wrote the grant,
8　she was responsible for coming up with the idea and the
9　need and the tasks and the metrics, and that's certainly
10　true of almost everyone on staff.
11　　　Q.   How many man-hours does it typically take The
12　Center to apply for one grant?
13　　　　　MS. CHOI:  Objection to form.
14　BY THE WITNESS:
15　　　A.   Too many to count.  It really largely depends
16　upon the grant and the grant source.  So one of the
17　things that I have done in the last three years is,
18　applied for funding from the JPMorgan Chase foundation.
19　They have a very strict and very small character limit
20　in their narrative responses.  So of the 30 or so
21　questions that are asked, you're generally not allowed
22　more than, let's say, 300 characters, which is about two
23　paragraphs.  And so that would take a really long time.
24　　　　　HUD grants, for instance, require a whole ton



```
1   UNITED STATES OF AMERICA              )
    NORTHERN DISTRICT OF ILLINOIS         )
2   EASTERN DIVISION                      )    SS.
    STATE OF ILLINOIS                     )
3   COUNTY OF COOK                        )

4

5              I, April M. Metzler, Certified Shorthand
6   Reporter, Registered Merit Reporter, Certified Realtime
7   Reporter, and Notary Public, do hereby certify that ERIN
8   KEMPLE was first duly sworn by me to testify to the
9   whole truth and that the above remote deposition was
10  reported stenographically by me and reduced to
11  typewriting under my personal direction.
12             I further certify that the said deposition was
13  taken at the time and place specified and that the
14  taking of said deposition commenced on the 9th day of
15  February, 2022, at 8:00 a.m. CST.
16             I further certify that I am not a relative or
17  employee or attorney or counsel of any of the parties,
18  nor a relative or employee of such attorney or counsel,
19  nor financially interested directly or indirectly in
20  this action.
21
22
23
24
```



1    In witness whereof, I have hereunto set my
2 hand and affixed my seal of office at Chicago, Illinois,
3 this 3rd of March, 2022.
4
5
6
7
8 APRIL M. METZLER, CSR, RMR, CRR, CRC, FCRR
  180 North LaSalle Street
9 Suite 2800
  Chicago, Illinois 60601
10 Phone:  (312) 236-6936
11
CSR No. 084-004394
12
13
14
15
16
17
18
19
20
21
22
23
24

