IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., <br><br> Defendants. | Case No. 18 CV 839 <br><br><br> Judge Manish S. Shah <br><br> Jury Trial Demanded |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF MARCH 31, 2025 RULING REGARDING THE AVAILABILITY OF <u>INJUNCTIVE RELIEF</u>**

**INTRODUCTION**

Defendants' lengthy Response fails to cite any authority under the Fair Housing Act (or any other statute) for the proposition that it is proper for a court to dismiss claims for injunctive relief at the summary judgment stage in circumstances where the plaintiffs' claims are sufficient to proceed to trial. Nor do Defendants substantively address the authority cited by Plaintiffs holding that such orders are inappropriate (Dkt. 462, pp. 4-5) or mandating that where violations of the Fair Housing Act are found, a remedial order should be entered to eliminate the offending practices that operate to discriminate and bar discrimination in the future. (Dkt. 462, pp. 2-6) Rather, Defendants once again rehash their rejected standing arguments, further distort standing issues as they relate to Plaintiffs' claims for injunctive relief, and essentially complain that the discovery record does not contain evidence regarding the harm that will be suffered by Plaintiffs when the trial begins in a few months. As discussed in Plaintiffs' motion and below, the Court's ruling regarding the availability of injunctive relief was premature and erroneous.

1

## I. DEFENDANTS MISCAST THE STANDING INQUIRY RELATED TO INJUNCTIVE RELIEF

Defendants' principal argument is premised on the contention that in order for the Plaintiffs to demonstrate standing with regard to their claims for injunctive relief, Plaintiffs must show that that Defendants still own and service the specific REO properties that were inspected and that Fair Housing Act violations continue at those properties. Clearly, this is not the proper inquiry: as the Court has held on two occasions, standing turns on the injuries suffered by the Plaintiffs from Defendants' conduct as opposed to the injuries to the set of properties inspected by Plaintiffs. (Dkt. 460, p. 2; Dkt. 442, pp. 17-18) As such, the foundational facts related to standing and injunctive relief are whether the Plaintiffs continue to operate as Fair Housing Organizations conducting activities within their respective service areas and whether there is any indication that Defendants have altered their challenged policies, practices, systems and conduct that Plaintiffs claim are unlawful and a jury will shortly consider.

As to these facts, there is no dispute.[1] In response to the assertion in Plaintiffs' motion that there is no indication that Defendants have changed any of their policies, practices, systems or conduct, Defendants say nothing suggesting that they no longer own or service REO properties, or that their policies, practices, systems and conduct with regard to the treatment of REO properties have changed. This should not be surprising: the deposition evidence taken during discovery (cited by Plaintiffs in their motion) indicates that business as usual has

---

[1] Defendants assert that two of the Plaintiffs are no longer "active" entities. (Dkt. 480, p. 10) This contention does not affect the general availability of injunctive relief against Defendants. It is uncontested that Defendants maintain and apply centralized systematic policies, procedures and operations. Moreover, Plaintiffs formed and operated the investigation of Defendants as a national coalition to address an unprecedented national problem. It is improper and illogical to disaggregate Plaintiffs' unified investigation in the manner suggested by Defendants.

continued for the Defendants. *See e.g.*, Exhibit A to Dkt. 462, Altisource Rule 30(b)(6) Deposition, No. 10 at 70 (Altisource's approach to code violations has not changed from 2011 through time of deposition); Exhibit B to Dkt. 462, Altisource Rule 30(b)(6) Deposition, No. 10 at 47-48 (Altisource's goal of REO disposition process remains same); Exhibit C to Dkt. 462, Ocwen Rule 30(b)(6) Deposition, No. 9 at 36-37 (Ocwen's policy with regard to selling REO properties "as is" continuing through date of deposition).[2]

## II. WHETHER DEFENDANTS' POLICIES, PRACTICES, SYSTEMS AND CONDUCT CONTINUE TO VIOLATE THE LAW SHOULD BE ADDRESSED BY THE COURT AFTER THE TRIAL

Defendants' argument that Plaintiffs' motion should be denied on the basis that the evidence in the record from discovery does not establish that Defendants' policies, practices, systems and conduct continue to violate the law or harm the Plaintiffs today is also incorrect.

First, Defendants ignore the caselaw cited by Plaintiffs consistently holding that the determination of whether injunctive relief is available should be based on the full presentation of evidence at trial (or at a subsequent hearing on equitable remedies), not on a truncated and inherently dated discovery record. *See e.g., United States of America v. Abbott*, 2024 WL 4827489 at *2 (W.D. Tex. Aug. 30, 2024)(motion seeking to exclude requested injunctive relief before full presentation of evidence at trial premature given Court's broad discretion in shaping equitable remedies); *Wilson v. Broward County*, 2007 WL 29000388 at *2 (S.D. Fla. Sept. 28, 2007)(defendants' motion for summary judgment on claim requesting permanent injunctive relief premature until full factual record developed at trial); *Inland Mediation Board v. City of Pomona*, 158 F. Supp.2d 1120, 1161-2 (C.D. Cal. 2001)(under FHA, unnecessary for court to consider

---

[2]Although Defendants' memorandum significantly misstates and overstates the scope of the Court's rulings on standing and damages in various other ways not pertinent to Plaintiffs' motion, it is unnecessary to address these contentions here.

whether it would exercise its discretion to issue injunctive relief prior to trial and an adjudication that defendant had, in fact, violated FHA). The Seventh Circuit, in accord with this authority, has affirmed the award of injunctive relief by a District Court in an FHA case based upon a post-trial hearing on remedies conducted by the District Court *subsequent to* a jury finding that defendants had violated the statute. *See United States v. Balistrieri*, 981 F.2d 916, 926, 933-4 (7th Cir. 1992). Under all this precedent, the decision to foreclose injunctive relief before a single witness has been called at trial is clearly premature.

Second, Defendants fail to address the fact that Plaintiffs assert disparate impact claims challenging policies and systems of general application which Defendants have neither discontinued nor disclaimed -- a circumstance that by itself strongly suggests a substantial basis for the Court to grant injunctive relief if the jury determines that these policies and systems violate the Fair Housing Act. The significance of equitable relief to address violations of the Fair Housing Act was underscored by the Supreme Court in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 544 (2015), in which the Court held that "remedial orders . . . should concentrate on the elimination of the offending practice that "arbitrar[ily] ... operate[s] invidiously to discriminate on the basis of rac[e]." *See also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975 )(once racial discrimination is found implicating a defendant's policies or practices, a court is under a duty to render a decree which will both eliminate past discrimination and bar discrimination in the future).

The notion that a defendant can unabashedly continue to implement policies found at trial to violate the Fair Housing Act is anathema to the principles of the statute. *See* 42 U.S.C. §3613(c)(1)(specifically authorizing injunction against a defendant continuing to engage in unlawful practices). Under Defendants' reasoning, a blanket policy forbidding repairs to be

4

made to REO properties in minority census tracts could only be curtailed by repeatedly filing cases challenging the policy in all minority census districts.

Third, while Plaintiffs were under no obligation to present evidence establishing the basis for injunctive relief in the context of responding to a motion for summary judgment where the issue was not raised, the exemplative evidence referenced in Plaintiffs' Motion for Reconsideration and present in the record clearly indicates that a viable remedial issue is presented. *See e.g.*, Exhibit D to Dkt. 462, Rule 30(b)(6) Deposition of Metropolitan Milwaukee Fair Housing Council, March 4, 2022, at 137, 141-142 ("all of the stuff that Deutsche Bank engaged in . . . continues to go on . . . is a frustration of our mission"); *see also* Dkt. 489, Defendants' Opposition at pp. 8-9, citing testimony regarding ongoing harms affecting various Plaintiffs. The criticism by Defendants that deposition testimony of certain Plaintiffs regarding harms that their organizations continued to suffer was "vague" (Defs. Opp. at 8) is nothing if not ironic considering that these Rule 30(b)(6) depositions were attended by counsel for all three Defendants, any of whom could have pursued whatever inquiry they desired regarding these matters. At the depositions of the representatives of many Plaintiff organizations, Defendants never bothered to ask any questions about continuing violations or harm.

Finally, Defendants' claim that Plaintiffs should have disclosed additional evidence in discovery regarding ongoing effects of Defendants' unlawful conduct is a red herring. The voluminous evidence in discovery responses and deposition testimony regarding Plaintiffs' allegations that Defendants were in violation of the Fair Housing Act hardly needed some exclamation point to underscore that Defendants' conduct was likely to continue through the beginning of the trial. And no matter what Plaintiffs stated at their depositions and in discovery responses several years ago, Defendants would now claim that such responses do not

demonstrate the current state of affairs. Of course, this is not some real conundrum: the situation will be established at trial (and/or at the Court's discretion during a remedial hearing on injunctive remedies) through testimony from witnesses from the Plaintiff organizations and testimony from Defendants' employees regarding their present policies, practices, systems and conduct.

### III. THE INTERESTS OF JUDICIAL EFFICIENCY WEIGH IN FAVOR OF POSTPONING ANY DECISION ON THE AVAILABILITY OF INJUNCTIVE RELIEF

If the jury finds in favor of Plaintiffs at the upcoming trial, the Court will have the opportunity to rule on the availability of injunctive remedies based upon consideration of evidence relating to the merits of this issue presented by the parties during the three-week trial or at a remedial hearing. That determination, whatever it may be, will be grounded in facts in the record as opposed to assumptions about what those facts may be. In contrast, a decision denying the availability of injunctive remedies prior to trial (under a statute that specifically authorizes such relief and case law that encourages its award) would likely engender continued litigation regarding the appropriate scope of relief for Defendants' violations. *See e.g., EEOC v. United Health Programs of America, Inc.*, 350 F.3d 199, 212 (E.D.N.Y. 2018)(awarding injunctive relief in light of court's duty to render a decree which so far as possible eliminates the discriminatory effects of past discrimination and bars like discrimination in the future).

### CONCLUSION

For all the foregoing reasons, the Court should reconsider and modify its March 31, 2025, Memorandum Opinion and Order by reinstating Plaintiffs' claims for injunctive relief.

Respectfully submitted,

/s/ *Jennifer K. Soule*

6

| | |
|---|---|
| Jennifer K. Soule<br>James G. Bradtke<br>Steven P. Schneck<br>*Soule & Bradtke PLLC*<br>PO Box 231<br>Geneva, IL 60134 | Lila Miller<br>Yiyang Wu<br>Jennifer Klar<br>*Relman Colfax PLLC*<br>1225 19th Street, N.W., Ste. 600<br>Washington, DC 20036 |
| Janell M. Byrd<br>Morgan Williams<br>*National Fair Housing Alliance*<br>1331 Pennsylvania Ave, NW, Ste. 650<br>Washington, DC 20004 | Stephen M. Dane<br>*Dane Law LLC*<br>P.O. Box 1011<br>Perrysburg OH 43552 |

Dated: September 25, 2025