**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NATIONAL FAIR HOUSING ALLIANCE; HOPE
FAIR HOUSING CENTER, et al.,

     Plaintiffs,

         v.

DEUTSCHE BANK NATIONAL TRUST, AS
TRUSTEE, et al.,

     Defendants.

Case No. 18 CV 839

Judge Manish S. Shah

Jury Trial Demanded

## PLAINTIFFS' POSITION STATEMENT ON JURY SELECTION PROCEDURES

Plaintiffs, by their counsel, hereby respectfully submit for the Court's consideration Plaintiffs' position and requested procedures for jury selection. As explained in detail below, Plaintiffs request that the Court (a) utilize a written juror questionnaire comprised of the typical questionnaire on the Court's website with supplemental questions, (b) utilize reasonably limited attorney-conducted supplemental voir dire, c) seat a jury comprised of ten jurors and two alternates, and (d) provide each side with four peremptory strikes. Plaintiffs believe these procedures will ensure an efficient process for jury selection and will facilitate and enhance the Court's ability to seat a jury consistent with the constitutional requirements of the Seventh Amendment for a fair and impartial jury.

## I.    BACKGROUND

This case requires the adjudication of sensitive and complex claims of race and national origin discrimination raised by non-profit organizations from around the country against a prominent banking institution and its mortgage and property preservation agents. Issues of race and national origin discrimination have always been sensitive issues for trial that present increased risk of improper bias in the selection and seating of a jury. Those concerns,

unfortunately, are heightened in the current political environment. The evidence presented will come from the leaders of non-profit organizations, expert witnesses, banking and mortgage servicing officials, and others. The trial will require juror engagement for three to four weeks. These are all factors that call for particular care and attention in juror selection for this case to ensure a fair and impartial jury.

## II.    JUROR QUESTIONNAIRE

Plaintiffs are mindful of the Court's thoughtful consideration of the use of a juror questionnaire expressed during the November 4 Status Conference and in the Court's November 6 Order, indicating that the parties should exchange proposed questions as planned to be considered "either for a written questionnaire or for a list of preprinted questions to be answered orally." *See* ECF No. 484.[1] The Court also noted concerns regarding time management, in part due to the need for the special panel to assemble on Tuesday, February 3, and the administrative burden on Court staff to collate, copy, and distribute the written responses.

Plaintiffs have fully considered those factors and continue to believe that use of the Court's typical juror questionnaire supplemented with questions provided by the parties will be time well spent in the collection, all at one time and in one place, of juror background information that may be relevant to challenges for cause as well as the intelligent and informed exercise of peremptory challenges. This questionnaire will provide all parties and the Court with responses that alert them to possible relationships, associations, or experiences that may be a source of bias or prejudice and would thus necessitate "for cause" excusals. It will provide information necessary to ensure that no improper bias or prejudice undermines the fairness of the

---

[1] Plaintiffs plan to submit their supplemental questions pursuant to the schedule in the Pre-trial Order.

2

trial. Through the use of a questionnaire, the Court and the parties will obtain more of the information needed for the informed exercise of strikes and lessen the need for the back and forth questioning of individual jurors for initial "for cause" strikes.

To facilitate the process, Plaintiffs request that the Court provide the jurors with the questionnaire a day in advance and have them bring the completed questionnaires with them on Tuesday morning. Alternatively, if feasible, Plaintiffs would request that the jurors come in on Monday for the purpose of answering the questionnaire. To address the administrative burden on the Court staff of processing the questionnaire, Plaintiffs have identified and stand ready to employ a high quality, professional copy and delivery service, located very close to the Court, that will be prepared to reproduce the collated questionnaires quickly. Representatives of the parties can shepherd that process to ensure confidence in the integrity of the reproduction.

## III.     SUPPLEMENTAL ATTORNEY-CONDUCTED VOIR DIRE

Plaintiffs request that the Court allow attorney participation in voir dire, namely by allowing counsel to ask a reasonable but limited number of questions after the Court's questioning of the jurors. Doing so will not only be more efficient and much less cumbersome than rounds of sidebars for the Court to field requests for additional questions, but also more probative on key issues of concern to the parties, such as racial/national origin bias and bias against the types of parties involved in the case (nonprofits and banking institutions) or the type of evidence presented. Plaintiffs recognize that the Court has indicated that it was not inclined to allow attorney participation in voir dire, but would instead ask all questions itself, giving the parties the opportunity to request follow up questions to the Court. For the reasons stated below, Plaintiffs request that the Court provide a reasonable opportunity for limited supplemental attorney-conducted voir dire.

3

As to efficiency, providing counsel with a reasonable but limited number of follow-up questions would be faster than the Court asking counsel if they have follow-up questions, hosting a sidebar at the bench to discuss counsel's proposed additional questions and the reasons for them, and then asking further questions of potential jurors.

Attorney-conducted questioning is also consistent with the Federal Rules of Civil Procedure. Rule 47(a) provides:

> EXAMINING JURORS. The court may permit the parties or their attorneys to examine prospective jurors or may itself do so. If the court examines the jurors, it must permit the parties or their attorneys to make any further inquiry it considers proper, or must itself ask any of their additional questions it considers proper.

It is thus within this Court's discretion to allow supplemental questioning by the attorneys.

The ABA Commission on the American Jury Project (revised in 2023) states in Principle 11 subsection (B)(2):

> Following initial questioning by the court, each party should have the opportunity, under the supervision of the court and subject to reasonable time limits, to question jurors directly, both individually and as a panel. In a civil case involving multiple parties, the court should permit each separately represented party to participate meaningfully in questioning prospective jurors, subject to reasonable time limits and avoidance of repetition.

In the interest of a fair and impartial trial and due process of law, it is necessary that searching inquiry be made of the prospective jurors to uncover improper bias and prejudice that may exist. Such an inquiry should be unfettered by natural human reluctance to admit before fellow jurors and the Court that one would be influenced in his verdict by socially unacceptable feelings or viewpoints. Nowhere is this tendency to give socially acceptable answers more

pronounced than when the issue involves relations among people of different backgrounds. *See* Justice Michael B. Hyman, *Implicit Bias in the Courts*, 102 Ill. B.J. 4 (2014).[2]

Many studies have found that jurors are far more likely to be candid with attorney-led questioning than with judge-led questioning. This is because a judge is an authority figure, so jurors may feel that there is a "right" answer that the Court is seeking. *See* Paula Hannaford-Agor & Morgan Moffett, *2023 State-of-the-States Survey of Jury Improvement Efforts: Voir Dire Practices in U.S. Courts*, National Center for State Courts, at 8 (May 1, 2024), https://www.ncsc.org/resources-courts/state-states-survey-jury-improvement-efforts ("A large body of empirical research shows that attorney-conducted voir dire is more effective at soliciting candid information from jurors."); Judge Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 160 (2010).

In a recent study by Jessica M. Salerno et al., *The Impact of Minimal Versus Extended Voir Dire and Judicial Rehabilitation on Mock Jurors' Decisions in Civil Cases*, a rigorous assessment was conducted of the utility of minimal versus extended voir dire questioning. 45 Law & Hum. Behav. 336 (2021). What is clear from this study and its conclusions (and from the experience of trial attorneys) is that "[a]ttorneys need the opportunity during voir dire to ask jurors about specific attitudes that might bias their decisions because relying on jurors' self-identification of their own biases has little utility." *Id.* at 337. The study also found that "[j]udicial rehabilitation did not reduce the biasing impact of [jurors'] preexisting attitudes on case judgments—but did result in mock jurors reporting that they were less biased." *Id.* at 336.

---

[2] *See also* Megan L. Lawrence et al., *The Effects of Implicit Bias Interventions on Mock Jurors' Civil Trial Decisions and Perceptions of the Courts*, 49 Law & Hum. Behav. 186 (2025).

In order to be able to understand the potential biases that the venire may bring into the courtroom, and seeing that admonitions to put any such feelings "aside" are usually of no effect, it is essential that voir dire include more searching questions, that attorneys be allowed to participate in conducting voir dire, and that more than what the civil jury study identified as minimal voir dire be employed.

## IV.     NUMBER OF JURORS, ALTERNATES, AND PEREMPTORY STRIKES

At the November 13 court conference, the Court asked the parties about the number of juror and alternates they proposed and the number of peremptory strikes. The Court indicated that its working plan is to seat twelve jurors and two alternates, which may subsequently be reduced. The Court also explained that it typically provides three peremptory strikes when seating eight jurors, four with ten, and five with twelve. Plaintiffs request that the Court seat ten jurors with two alternates, which will reduce the total time needed for jury selection and provide additional capacity for the use of attorney-conducted supplemental voir dire and the juror questionnaire. Consistent with the Court's practice, if seating ten jurors, each side would have four peremptory strikes.

***

Wherefore, Plaintiffs respectfully request that the Court plan to seat ten jurors and two alternates, that each side be allowed four peremptory challenges, that the Court utilize a written juror questionnaire with supplemental questions provided by the parties, that more than minimal voir dire be given, and that attorney-conducted voir dire, with a reasonable limitation on the number of questions, be allowed by the Court to supplement its questioning.

Respectfully submitted,

*/s/ Janell M. Byrd*

Jennifer K. Soule
James G. Bradtke
Steven P. Schneck
*Soule & Bradtke PLLC*
155 N. Michigan Ave, Suite 504
Chicago, IL 60601

Janell M. Byrd
Morgan Williams
*National Fair Housing Alliance*
1331 Pennsylvania Ave, NW, Ste. 650
Washington, DC 20004

Lila Miller
Yiyang Wu
Jennifer Klar
*Relman Colfax PLLC*
1225 19th Street, N.W., Ste. 600
Washington, DC 20036

Stephen M. Dane
*Dane Law LLC*
P.O. Box 1011
Perrysburg OH 43552

Dated: November 21, 2025