IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC.; and ALTISOURCE SOLUTIONS, INC., <br><br> Defendants. | Case No. 1:18-cv-00839 <br><br> Honorable Manish S. Shah |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS'
POSITION STATEMENT ON JURY SELECTION PROCEDURES**

-1-

## **INTRODUCTION**

Plaintiffs' Position Statement unnecessarily complicates a process the Court has already streamlined. *See generally* Statement, Dkt. 487. Plaintiffs' submission raises three issues: (1) the use and administration of a written questionnaire; (2) attorney participation in voir dire; and (3) the size and composition of the jury. Defendants agree only to the extent Plaintiffs' request aligns with the Court's directives, as explained below. Beyond that, Plaintiffs seek unwarranted departures from this Court's standard practices—departures that would add cost and delay, increase the risk of bias, and are not needed to seat an impartial jury. Plaintiffs offer no basis for deviating from the procedure this Court has already put in place, and their proposed expansion should be rejected.

First, Defendants agree that a concise, Court-administered written questionnaire focused on for-cause issues can be a useful tool—particularly if the Court believes it will enhance efficiency. But Plaintiffs' proposal to distribute questionnaires in advance, require an juror additional appearance, and entrust sensitive juror information to a third party is unnecessarily complex, inconsistent with the Court's standard practice, and is likely to reduce candor while increasing burden. Plaintiffs identify no benefit that would justify those departures, and the Court should adhere to its streamlined process.

Second, Defendants agree that voir dire is an important tool to explore bias, but disagree that attorneys should conduct it. The Federal Rules, Seventh Circuit precedent, and this Court's stated practice all favor judge-led questioning with targeted input from the parties. Attorney-conducted questioning is neither required nor necessary. It introduces avoidable risk of confusing, influencing, or tainting the panel and provides no added value given the Court's structured, participatory approach to voir dire.

Finally, Defendants oppose Plaintiffs' request to seat ten jurors and two alternates while reducing each side to four peremptory challenges. Plaintiffs' proposal is contrary to the Federal Rules, which abolished alternates in civil trials years ago. And because Plaintiffs propose to qualify twelve jurors in any event, they offer no principled reason not to seat the full twelve jurors the Court has already indicated it intends to empanel. Defendants agree with this Court's guidance for twelve jurors, all of whom deliberate, and five peremptory challenges per side.

In short, Defendants' proposals are consistent with this Court's practice and the governing law, and they minimize cost, delay, and risk. Defendants respectfully request the following:

- Follow the Court's plan and use the Court's standard written questionnaire, administered in the courtroom on the morning of jury selection under the Court's supervision.

- Permit the parties to exchange a small set of limited and neutral supplemental questions in advance for the Court's consideration, as already contemplated by the Pre-Trial Order process.

- Maintain all juror materials within the Court's control and avoid the use of outside vendors for collection or distribution, consistent with the Court's prior practice.

- Conduct voir dire from the bench, with party-proposed supplemental questions and targeted follow-ups as the Court deems appropriate, including sidebars to promote candor where necessary.

- Seat twelve jurors, with no alternates, and allow five peremptory challenges per side, consistent with the Court's stated plan.

The path forward should remain Court-led, rule-grounded, and streamlined. Plaintiffs' requested deviations are unnecessary, impractical, and inconsistent with the Court's standard approach. For all these reasons, and those stated below, the Court should adopt Defendants' proposals in full.

**ARGUMENT**

I. **WRITTEN QUESTIONNAIRES SHOULD FOLLOW THE COURT'S INSTRUCTIONS AND PRIOR PRACTICE**

If the Court concludes that a written questionnaire would be useful and enhance efficiency, Defendants have no objection to providing one to be completed by prospective jurors in advance of voir dire. But Plaintiffs' proposal—advance distribution, an additional appearance, and outsourcing the collection and handling of juror responses to a third party—introduces unnecessary complication and burdens that are inconsistent with the Court's established procedures.

To the extent the Court elects to use a written questionnaire, it should be administered in accordance with the following principles.

*First*, the questionnaire should be concise and focused on for-cause topics. *See* Status Hearing (Nov. 4) Tr. 28:23–29:8 (The Court explaining that the parties "should not expect any questionnaire to be that detailed" and emphasizing that the purpose of any written question is to resolve for-cause issues, not to explore "every possible thing that might be of interest to every possible lawyer."). In short, the questionnaire should function as a limited screening tool to surface for-cause issues, not a vehicle for attorney-driven preferences or expansive narrative answers.

*Second*, in advance of jury selection, the parties should exchange a limited set of neutral supplemental questions, which would then be submitted to the Court for use in its sole discretion. The existing pretrial exchange process already contemplates that the parties will propose supplemental questions as part of the Proposed Pre-Trial Order. Within that framework, the parties can submit both supplemental written questionnaire questions and supplemental voir dire questions, which the Court may use as it deems appropriate.

*Third*, the written questionnaire (and any supplemental questions) should not be provided to the venire in advance. Instead, it should be completed the morning of jury selection and read by

the Court in accordance with its standard practice. *See* Standing Order, Case Procedures: Jury Selection in Civil Trials, https://www.ilnd.uscourts.gov/judge_display.php?LastName=Shah. Administering the questionnaire in the courtroom avoids confusion and provides a uniform process under the Court's supervision. It also avoids any risk that early distribution might signal to jurors that certain types of answers are expected or preferred.

*Fourth*, there is no need to involve any outside vendor in the collection, copying, or distribution of completed questionnaires. Sensitive juror information should remain within the Court's control and be handled through the Court's established procedures. This approach ensures clarity, preserves the Court's oversight of the process, and avoids unnecessary administrative burden.

In spite of this, Plaintiffs seek to depart from the Court's established practice, but they identify no circumstances that warrant such a shift here. They do not explain *why* early distribution, advance collection, or external handling of the questionnaires is necessary nor do they suggest the Court's standard process is inadequate. Instead, Plaintiffs offer general and unsupported assertions about the "sensitive" nature of "race and national origin discrimination" cases,[1] without explaining how that "sensitiv[ity]" justifies the specific procedures they propose. *See* Statement, at 2.

A streamlined, Court-led process best serves the goals of fairness, efficiency, and clarity. The Court has already outlined a straightforward approach that balances the need to identify for-cause issues with the need to manage jury selection efficiently. Defendants' proposal adheres to that structure and adds only what is necessary to provide limited supplemental material for the Court's consideration.

---

[1] While Plaintiffs' statement makes three separate references to "national origin" bias, Plaintiffs have offered no evidence in this case suggesting discrimination in area-based property maintenance could somehow correlate to national origin.

## II. ATTORNEY-CONDUCTED VOIR DIRE IS UNNECESSARY AND RISKS BIASING THE VENIRE.

Judicially conducted voir dire is the fairest and most reliable way to seat an impartial jury, and Plaintiffs are wrong to suggest that attorney questioning yields greater candor. Defendants respectfully request that the Court follow its "usual practice for jury selection," in which jurors answer questions from a pre-written list with targeted follow-up from the Court in its sole discretion. Dkt. 484 at 2.

Plaintiffs' proposal for attorney-conducted voir dire should be rejected for at least two reasons. First, it contradicts the Court's clear instructions and finds no support in Seventh Circuit precedent or the Federal Rules. Second, Plaintiffs' reliance on generalized social-science theories cannot justify abandoning the Court's proven approach.[2] Attorney-led questioning introduces practical risks, including imprecise or leading inquiries that could contaminate—or unnecessarily disqualify—members of the venire. Reserving questioning to the Court, which has deep experience as both a trial lawyer and a judge, is the most reliable way to elicit necessary information while preserving the integrity of the pool. The Court's measured, judge-led process is both sufficient and firmly supported by the governing legal framework.

The Federal Rules of Civil Procedure and the Court's directives already ensure meaningful input without ceding control of the voir dire to counsel. Rule 47 expressly permits the Court to conduct the examination "itself," provided it "ask[s] any of [the parties'] additional questions it considers proper." Fed. R. Civ. P. 47. Here, the Court has directed the parties to "exchange proposed questions" for the Court's consideration, *see* Dkt. 484 at 2, and has confirmed that it

---

[2] Plaintiffs cite nonbinding guidance from the ABA Commission on the American Jury Project for the proposition that voir dire is insufficient without direct attorney questioning. However, this guidance counsels primarily against a "simple, perfunctory examination by a judge"—not the participatory process the Court has described. AMERICAN BAR ASSOCIATION, PRINCIPLES FOR JURIES AND JURY TRIALS 84 (2023).

"will solicit the attorneys during jury selection" regarding potential follow-up questions. Status Hearing (Nov. 4) Tr. 15:11–16. This approach ensures substantial attorney participation while keeping the questioning focused on matters the Court deems appropriate. It preserves party input and juror candor without converting voir dire into attorney-led examinations, an unnecessary format the Federal Rules do not mandate.

Seventh Circuit precedent confirms there is no right to attorney-conducted voir dire and that judge-led voir dire is sufficient, including in cases implicating race. As the Seventh Circuit has made clear, "[t]he right to an impartial jury does not require that the attorneys themselves conduct the questioning." *Lee v. Parshall*, 816 F. App'x 15, 16 (7th Cir. 2020). Voir dire satisfies the Constitution and the Rules when it is "reasonably calculated to resolve the doubts raised about the juror's impartiality," and the parties have no right to dictate the format of voir dire or insist that particular questions be asked. *Id*. The Seventh Circuit in *Lee* affirmed judicial voir dire in a race-related case where the district court incorporated party-proposed questions, probed for bias, and used carefully framed questions and individual sidebars to encourage candor and avoid embarrassment. *Id*. at 17. That precedent fully supports the Court's customary process here and underscores that a judge-led format adequately addresses potential bias.

Nothing in Plaintiffs' social-science studies alters this conclusion. The Seventh Circuit has repeatedly emphasized that the district court remains "in the best position to observe" juror credibility and demeanor, including potential bias. *Marshall v. City of Chicago*, 762 F.3d 573, 577 (7th Cir. 2024). Plaintiffs' argument that only attorney-led questioning can reveal implicit bias rests on studies that "obviously could not create a true juror experience" and did not replicate genuinely interactive judicial questioning. *See* Jessica M. Salerno et al., *The Impact of Minimal Versus Extended Voir Dire and Judicial Rehabilitation on Mock Jurors' Decisions in Civil Cases*,

45 Law & Hum. Behav. 336, 352 (2021). Even Plaintiffs' preferred studies acknowledge that attorney questioning can introduce distortions. Additional empirical work confirms that when attorneys are given greater control over voir dire, "skilled and empowered attorneys can successfully stack the jury with favorably-inclined jurors." Jee-Yeon K. Lehmann & Jeremy B. Smith, *Power to Bias? The Effect of Attorney Empowerment in Voir Dire on Jury Prejudice and Race* 46 (2013). Conducting sensitive questioning from the bench—or at sidebar—avoids these risks and ensures that the process remains neutral, consistent, and fair.

The practical and supported path forward is the Court's plan to retain judicial voir dire with targeted party input as the Court deems appropriate. Defendants stand ready to collaborate with Plaintiffs to identify any areas of inquiry and to craft tailored questions for the Court's consideration, consistent with the Court's typical practice. That approach preserves meaningful party participation, promotes juror candor, protects the venire from unnecessary contamination, and avoids the risks of prejudice and delay inherent in attorney-conducted voir dire, particularly in a trial of this complexity and expected length.

**III. THE REDUCTION IN JURY SIZE AND STRIKE ALLOCATION LACKS SUPPORT AND CONTRADICTS THE COURT'S STATED PLAN.**

As their final proposal, Plaintiffs ask the Court to seat a ten-person jury with two alternates and to reduce each side to four peremptory challenges. Plaintiffs' approach fundamentally is impermissible because it contradicts the Federal Rules. *See* Fed. R. Civ. P. 47(b), advisory committee's note (1991); Fed. R. Civ. P. 48(a). The Court's standing Order expressly reflects this rule, stating that "there are no alternate jurors" and that all jurors seated will deliberate. *See* Standing Order, Case Procedures: Jury Selection in Civil Trials, https://www.ilnd.uscourts.gov/judge_display.php?LastName=Shah. Plaintiffs' proposal should be rejected for that reason alone.

Alternate jurors in federal civil cases were abolished decades ago, and the rules now provide for a civil jury of six to twelve deliberating jurors. *See* Fed R. Civ. P. 47(b), advisory committee's note (1991); Fed. R. Civ. P. 48(a). The current, accepted practice is "all-in," meaning the jury that is sworn is the jury that hears the case and returns a verdict. Plaintiffs' request would reintroduce an abandoned practice with no basis in the rules and no corresponding benefit, particularly where the Court has authority to seat a jury of up to twelve jurors as a safeguard against attrition for a three- or four-week trial. The governing rules thus point to the same framework as the Court's standing order: a single, unified panel without alternates.

The premise underlying Plaintiffs' proposal for ten jurors and two alternates reflects a misunderstanding of what the Court has already decided. Plaintiffs assert that the Court contemplated twelve jurors plus two alternates, with the possibility of later reduction. *See* Statement, at 6. But at the November 13 hearing, the Court expressly determined it would seat twelve jurors with five peremptory challenges per side and did not contemplate alternates. *See* Status Hearing (Nov. 13) Tr. 6:12–15 ("… I suppose I'll decide this right now…I will be looking at seating twelve [jurors] with five peremptories per side."). That plan is both appropriate and prudent for a three- to four-week trial, providing a reasonable cushion against attrition while ensuring that all sworn jurors are equally engaged throughout the presentation of evidence. It also avoids the complexities and inefficiencies inherent in designating and managing "alternates," who would hear the same evidence but not participate in deliberations—an outcome the Federal Rules no longer support. Because Plaintiffs' request rests on a misunderstanding of the Court's instruction and contradicts the Court's standing order, it should be rejected.

Plaintiffs' request to reduce the number of deliberating jurors is likewise unsupported in any statute or rule. Instead, it appears to derive from their separate proposals for attorney-led voir

dire and expanded written questionnaires, which Defendants have addressed in Sections I and II above. Because the Court does not ordinarily endorse those voir dire practices, and Defendants are requesting the Court adhere to its customary procedures, Plaintiffs' asserted rationale for resizing the jury or altering the allocation of peremptory challenges falls away.

Nor is Plaintiffs' ten-plus-two approach likely to save time. Statement, at 6. Plaintiffs themselves concede that the Court would still need to identify twelve individuals to be sworn and hear evidence. Under the Court's plan, the Court likewise qualifies twelve jurors, without regard to how many are considered alternates. The Court's approach achieves the same logistical outcome, while avoiding unnecessary complexity and complying with the governing rules.

For all of these reasons, Plaintiffs' proposal is inconsistent with the Federal Rules, incompatible with the Court's plan, and unnecessary as a practical matter. The Courts plan to seat twelve jurors, with no alternates, and to provide five peremptories per side appropriately safeguards against attribution, promotes efficiency and fairness, and fully accords with the Court's standing practice and the rules. The Court should reject Plaintiffs' proposal and proceed with a twelve-person jury, no alternates, and five peremptory challenges per side.

Dated: December 2, 2025

Respectfully submitted,

By: /s/ *Kenneth M. Kliebard*

Kenneth M. Kliebard
Tinos Diamantatos
Michael W. Fakhoury
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, Illinois 60606-1511
Telephone: (312) 324-1000
kenneth.kliebard@morganlewis.com
michael.fakhoury@morganlewis.com

Kurt W. Rademacher (admitted pro hac vice)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, Pennsylvania 19103-3007
Telephone: (215) 963-5000
kurt.rademacher@morganlewis.com

*Counsel for Defendants Deutsche Bank National Trust Company, as Trustee, and Deutsche Bank Trust Company Americas, as Trustee*


By: */s/ Debra Bogo-Ernst*

Debra Bogo-Ernst
Matthew J. Thomas
Sara Kim
Brandon E. Villa
**WILLKIE FARR & GALLAGHER LLP**
300 N. LaSalle Dr.
Chicago, IL 60654
(312) 728-9000
dernst@willkie.com
mthomas@willkie.com
skim@willkie.com
bvilla@willkie.com

*Counsel for Defendant Ocwen Loan Servicing, LLC, n/k/a Onity Group Inc.*

By: */s/ Nathan Garroway*

Nathan Garroway
Lisa M. Krigsten
Sarah Hannah Phillips
Mark G. Trigg
**DENTONS US LLP**
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
nathan.garroway@dentons.com
lisa.krigsten@dentons.com
sarahhannah.phillips@dentons.com
mark.trigg@dentons.com

*Counsel for Defendant Altisource Solutions, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on December 2, 2025.

/s/ *Debra Bogo-Ernst*