IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, et al., | Case No. 18 CV 839 |
| Plaintiffs, | |
| v. | Judge Manish S. Shah |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., | Jury Trial Demanded |
| Defendants. | |

**MOTION FOR CLARIFICATION OF MARCH 31 ORDER OR, IN THE ALTERNATIVE, MOTION FOR LIMITED ADMISSION OF RACE-BLIND FRONT PHOTO REVIEW BY DR. IAN AYRES**

In direct response to criticisms about potential biases in Plaintiffs' inspection data, Plaintiffs' statistical expert, Dr. Ian Ayres, conducted a race-blind review of a standardized set of front photographs of REO properties ("Front Photo Review"). Defendants sought to exclude this analysis as improper evidence in a disparate-impact claim because Dr. Ayres did not control for non-race variables in this particular analysis. The Court granted this motion on the basis that Dr. Ayres's Front Photo Review was not reliable on the question of "the statistical relationship between neighborhood race and deficiencies." Dkt. 442 at 50.

Plaintiffs do not take issue with this reasoning, nor do they rely on the Front Photo Review to show that Defendants' conduct had an adverse, disproportionate impact on minority neighborhoods. Rather, Plaintiffs seek to introduce the Front Photo Review for the narrow and specific purpose of addressing Defendants' assertions of purported bias in Plaintiffs' inspection data.

Plaintiffs will face substantial prejudice if they are not permitted to rebut the attacks on the underlying data, which is their central evidence of racial disparities. To the extent the Court

1

believes there is a risk of jury confusion as to the relevance of the Front Photo Review, the proper remedy is a limiting instruction, not complete exclusion. Plaintiffs accordingly ask the Court to clarify that the Front Photo Review may be admitted for the limited purpose of responding to Defendants' attacks on data quality and/or bias.

## Background

Dr. Ian Ayres is Plaintiffs' statistical expert, and Dr. Ayres offers a number of analyses and opinions related to Plaintiffs' disparate-impact and disparate-treatment claims. Most notably, Dr. Ayres conducted a regression analysis of Plaintiffs' inspection data, evaluating whether there existed statistically significant racial disparities even after controlling for numerous other variables. Defendants subsequently disclosed their experts, two of which attempted to undermine Dr. Ayres's analysis by opining—without any support or evidence—that Plaintiffs' inspection data might be tainted by bias. The lack of support was telling, but Dr. Ayres nevertheless offered the Front-Photo Review to respond directly to these claims.

The Front Photo Review is "a race-blind review of only the photographs taken of the front of the house ("front view photos") for a stratified random sample of the properties in [the] full analysis sample." (Ex. A, Ayres Rebuttal Report, ¶10) Dr. Ayres designed a random sample of front view photos for this analysis so that it would be equally balanced by block group race and pre-foreclosure property value. (Ex. A, Ayres Rebuttal Report, ¶12) Explaining the photo choice, Dr. Ayres noted that "because these are the most standardized photographs taken by Plaintiffs' inspectors, these front view photos are the least likely to have been subject to any inspector bias that conceivably could have resulted in inspectors taking photographs of varying locations on the property based on the racial composition of the neighborhood." (Ex. A, Ayres Rebuttal Report, ¶10.) Dr. Ayres divided 418 properties into ten subgroups—one for each

2

combination of two block group race categories (White or Non-white) and five pre-foreclosure property value bands. (Ex. A, Ayres Rebuttal Report, ¶12.) Dr. Ayres and his assisting consultant were then trained in Plaintiffs' deficiency identification methodology by NFHA and sample coding of front view photographs was conducted under the direction of Dr. Ayres to assure uniformity. (Ex. A, Ayres Rebuttal Report ¶¶ 15-16.) After validating this review process, the front view photos were scored by Dr. Ayres' consultants using Plaintiffs' deficiency methodology. (Ex. A, Ayres Rebuttal Report ¶¶ 17-18.)

Dr. Ayres undertook this analysis of the underlying data in an attempt to address the alleged flaws put forward by Defendants' experts. (Ex. A, Ayres Rebuttal Report ¶ 6.) Indeed, the rebuttal report states the specific and cabined purpose of the Front Photo Review: "Although Defendants cite to no specific instances of these biases occurring in this case, to address these potential biases, I have conducted a race-blind review of only the photographs taken of the front of the house ('front view photos') for a stratified random sample of the properties in my Full Analysis Sample." (Ex. A, Ayres Rebuttal Report ¶ 10.)

Dr. Ayres concluded that the "results from my analysis of the stratified sample show that statistically significant disparities in deficiencies continue to exist when standardized subjective photos are reviewed by race-blind coders." (Ex. A, Ayres Rebuttal Report, ¶22) As such, the blinded results validate the inspection data and confirm that Plaintiffs' quality control edits did not bias the original data set. Dr. Ayres' second deposition, Dr. Ayres specifically testified about how the Front Photo Review ensures sufficient "accuracy" and "credibility" in Plaintiffs' dataset such that the regression analyses could be offered as evidence of discrimination. (Ex. B, Ayres Dep. Vol. II, pp. 35-36, 179; see also pp. 78-88, discussing how the front photo review refutes arguments that the quality control edits biased Plaintiffs' inspection data, that deficiencies were

3

scored more heavily in non-white neighborhoods and that deficiencies were underscored in white neighborhoods.")[1]

Defendants' recent pretrial exchanges make clear that Defendants intend to continue their strategy of attacking the validity of Plaintiffs' inspection data at trial: Defendants have disclosed that they will call the same experts to testify to the opinions in their reports, which included the unsupported assertions of data bias.

**Argument**

In its March 31 Opinion, the Court excluded the Front Photo Review conducted by Dr. Ayres on grounds that it was not reliable. More specifically, the Court held that this Review did not support Dr. Ayres's "bottom line conclusions" about racial disparities because it did not include controls for non-race variables. (ECF 442 at p. 50.[2])

However, Plaintiffs do not offer the Front Photo Review to evidence discrimination but instead to confirm the quality of the inspection data that Dr. Ayres has used in the other analyses. A separate evaluation of the admissibility of the Front Photo Review for this particular purpose shows that it should be presented to the jury. A limiting instruction will easily clarify this narrow purpose to the jury, preventing any risk of confusion or harm to Defendants. By contrast, wholesale exclusion of the Front Photo Review will wrongly prevent Plaintiffs from responding to the attacks on the quality of the underlying data, resulting in a lopsided and prejudicial approach to expert opinions on data quality.

---

[1] The Ayres Rebuttal Report also included discussion of other Plaintiff experts' validation efforts and responses to the criticism of defense experts. Ex A, Ayres Rebuttal Report, ¶¶ 26-38.
[2] The Court noted that Plaintiffs offered the Front Photo Review to address bias, but did not separately analyze the fit of the Review for this purpose, instead focusing on the relationship of the Front Photo Review to the ultimate issue of liability. (Dkt. 442 at p. 50.)

4

*First*, the Front Photo Review is not intended to prove discrimination, whether as evidence of a disparate impact or as circumstantial evidence of disparate treatment. Dr. Ayres's comprehensive regression analyses—which find statistically significant racial disparities even when controlling for more than eighty non-race factors—are powerful evidence of discrimination, as are the other analyses offered by Dr. Ayres. Rather, as opined by Dr. Ayres, the Front Photo Review refutes hypotheses offered by Defendants that bias tainted Plaintiffs' inspection data. (Ex. A, Ayres Rebuttal Report, ¶22; Ayres Dep. Vol. II, pp. 35-36, 78-88, 179).

It is well established both that courts may evaluate the "fit" of an expert's opinion as part of the *Daubert* process and that an opinion offered for one purpose may not be valid for another purpose. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993). The Front Photo Review is not automatically excluded for all purposes merely because the Court has determined that it cannot be offered to support the existence of racial disparities. Rather, its admissibility for a different purpose requires a separate evaluation of fit. *See, e.g.*, *id.* ("The study of the phases of the moon, for example, may provide valid scientific 'knowledge' about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact. However (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night."). Defendants have offered no argument that the Front Photo Review is not a proper mechanism for addressing the quality of the underlying inspection data, nor could they. As laid out in Dr. Ayres's report, the Front Photo Review is a methodical, race-blind analysis that directly responds to Defendants' experts' assertions.

*Second*, to the extent the Court has concerns that the jury will mistakenly understand the

Front Photo Review as evidence of disparities, any such risk is better addressed through a limiting instruction than through exclusion. *See* Fed. R. Evid. 105. Courts routinely give juries limiting instructions on a range of topics, as is expressly contemplated by the Federal Rules of Evidence and the Seventh Circuit's Pattern Jury Instructions. *See, e.g.*, *Wipf v. Kowalski*, 519 F.3d 380, 387 (7th Cir. 2008) (finding admission of evidence not an abuse of discretion where "[t]he district court gave a cautionary instruction to the jury clarifying the limited purpose of [it]"); Fed. R. Evid. 105; Seventh Circuit Pattern Jury Instruction - Civil 7.04. The same is true in the context of expert opinions—the jury can understand that an expert's opinion may be considered for one purpose but not another. *See, e.g.*, *Zarinebaf v. Champion Petfoods USA Inc.*, 2022 WL 910638, at *11 (N.D. Ill. 2022) ("As with all opinions that survive a *Daubert* challenge and are presented at trial, they are also available to be challenged during vigorous cross-examination. Plaintiffs could also seek a limiting instruction on these opinions should the case proceed to trial, to advise the jury on the nature of such guidelines."); *Cypress Insurance Company v. SK Hynix America, Inc.*, 2019 WL 634684, at *4 (W.D. Wash. 2019).

Because a limiting instruction will ensure that the jury properly considers the Front Photo Review only as to data quality, not as to the bottom-line existence of racial disparities, complete exclusion is unwarranted.

***Third***, without admission of the Front Photo Review, Plaintiffs will be unfairly prejudiced. To be clear: Defendants have put data quality at issue. Defendants intend to offer the opinions of Dr. Justin McCrary, whose report speculated that observer bias tainted Plaintiffs' inspection results. (Ex. C, McCrary Report, pp. 21-37) Defendants also intend to offer the opinions of Dr. David Skanderson, who likewise theorized that the inspection data was tainted by bias. (Ex. D, Skanderson Report, pp. 32-38) Defendants cannot simultaneously use their experts

6

as a sword to attack Plaintiffs' inspection data while stretching *Daubert* to shield themselves from Plaintiffs' parry.

Indeed, allowing Defendants to offer these opinions without providing Plaintiffs a chance to address data quality will leave the jury with a wrongly skewed impression of the data. The Front Photo Review is helpful and probative evidence on the topic of purported bias. If it is excluded, then the jury will have the inaccurate impression that Plaintiffs' expert either did not address data quality or does not have a supportive opinion on that front. If data quality and integrity are to be addressed, each side should have the opportunity to present expert opinions on these topics and cross-examine their opponents' experts.

It would be especially perverse to exclude the Front Photo Review because it did not control for non-race variables when Defendants' own assertions regarding bias lack these controls. Unlike Dr. Ayres, Defendants' experts offer only scattershot hypotheses about bias; they have not conducted a systematic analysis of bias, have not examined the photographs in any systematic way, nor have they applied any regression controls to their bias-related opinions. In other words, Defendants' experts' coverage of bias reflects the same issues that are the sole rationale offered to exclude the Front Photo Review.

In sum, Plaintiffs will be prejudiced by exclusion of the Front Photo Review, an outcome that is doubly improper considering that Defendants have put bias at issue without themselves conducting any sort of systematic analysis.

WHEREFORE, Plaintiffs respectfully request that the Court revise its March 31 Order to allow Plaintiffs to present the Ayres Front Photo Review into evidence at trial. If it deems necessary, the Court can issue a limiting instruction limiting the probative weight of the front photo review to responding to Defendants' accusations of bias. If the Court does not allow

admission of the Front Photo Review into evidence, in the alternative, the Court should enter an Order excluding all of Defendants evidence and arguments that the photographic evidence supporting Plaintiffs' claims was "biased," was not subjected to appropriate quality control, or otherwise overstated the observed maintenance deficiencies.

Respectfully submitted,

*/s/ Jennifer K. Soule*

| | |
|---|---|
| Jennifer K. Soule | Lila Miller |
| James G. Bradtke | Ted Olds |
| Steven P. Schneck | Yiyang Wu |
| *Soule & Bradtke, PLLC* | Jennifer Klar |
| 155 N. Michigan Avenue, Ste. 504 | *Relman Colfax PLLC* |
| Chicago, IL 60601 | 1225 19th Street, N.W., Ste. 600 |
| | Washington, DC 20036 |
| | |
| Janell M. Byrd | Stephen M. Dane |
| Morgan Williams | *Dane Law LLC* |
| *National Fair Housing Alliance* | P.O. Box 1011 |
| 1331 Pennsylvania Ave, NW, Ste. 650 | Perrysburg OH 43552 |
| Washington, DC 20004 | |

Dated: December 19, 2025