**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC.; and ALTISOURCE SOLUTIONS, INC., <br><br> Defendants. | Case No. 1:18-cv-00839 <br><br> Judge Manish S. Shah |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION
OF THIS COURT'S MARCH 31 ORDER, STYLED AS A MOTION FOR
"CLARIFICATION," AND OPPOSITION TO PLAINTIFFS' ALTERNATIVE
REQUEST FOR LIMITED ADMISSION OF DR. AYRES' FRONT PHOTO REVIEW**

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    A.    Standard of Review on a Motion for Reconsideration ............................................ 3

    B.    Plaintiffs Fail to Meet the Standard for Reconsideration ....................................... 4

    C.    The Photo Analysis Does Not Actually Have Any Relevance to the "Limited Purposed" For Which Plaintiffs Now Seek to Introduce It .................... 5

CONCLUSION ...................................................................................................................... 7

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
　906 F.2d 1185 (7th Cir. 1990) ..................................................................................................4

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
　90 F.3d 1264 (7th Cir. 1996) ............................................................................................3, 4, 5

*Freund v. Westlake Import Motors*,
　No. 94-cv-2024, 1998 WL 102632 (N.D. Ill. Feb. 26, 1998) .....................................................7

*General Elec. Co. v. Joiner*,
　522 U.S. 136 (1997) ..................................................................................................................6

*Gopalratnam v. Hewlett-Packard Co.*,
　877 F.3d 771 (7th Cir. 2017) ....................................................................................................6

*Janes v. Chicago Bd. of Educ.*,
　No. 00-cv-6128, 2002 WL 31557619 (N.D. Ill. Nov. 18, 2002) ...............................................7

*Turpin v. Merrell Down Pharms., Inc.*,
　959 F.2d 1349 (6th Cir. 1992) ..................................................................................................6

*Wilson v. Baptiste*,
　No. 13-cv-7845, 2016 WL 3878125 (N.D. Ill. July 18, 2016) .................................................3

**Other Authorities**

Fed. R. Civ. P. 702 .....................................................................................................................6, 7

Fed. R. Evid. 403 ............................................................................................................................7

# INTRODUCTION

Plaintiffs styled their motion as one seeking "clarification" of the Court's March 25, 2025 order (Dkt. 442), which excluded as unreliable a photographic analysis proffered by Plaintiffs' purported econometrics expert, Professor Ian Ayres. But there is nothing unclear about the Court's ruling, and Plaintiffs identify no ambiguity in it. Instead, Plaintiffs disagree with the Court's reasoning and ask the Court to change its mind. In substance, this is a motion for reconsideration—thinly disguised as a motion for "clarification" in an effort to evade the demanding standard that governs the relief Plaintiffs actually seek.

Plaintiffs point to no new facts, no newly discovered evidence, and no intervening change in the law that could warrant reconsideration. Rather, they simply rehash the same arguments they raised in opposing Defendants' *Daubert* motion more than two years ago—arguments the Court has already considered and rejected. That is no basis for reconsideration or "clarification."

Plaintiffs' motion therefore fails for two reasons: First, Plaintiffs do not even acknowledge, much less satisfy, the standard for reconsideration. And second, Plaintiffs are wrong on the merits. A photographic "analysis" that misleadingly omits control variables and invites precisely the sort of misleading inference that the Court found is inadmissible for any purpose cannot be rendered admissible by relabeling it or by confining it to the supposedly narrow one Plaintiffs propose.

For all of these reasons, Plaintiffs' motion should be denied.

# BACKGROUND

Professor Ayres is an economist. Although Plaintiffs have retained half a dozen experts, they have repeatedly attempted to use Ayres as an all-purpose evidentiary stopgap. Ayres has

submitted five expert reports and two declarations,[1] serving new iterations each time Plaintiffs encountered a new evidentiary obstacle, often without regard to the disclosure deadlines in this case.[2]

At the deadline to disclose the scope of expert opinions, Ayres expressly disclaimed offering any opinions on the accuracy of Plaintiffs' data.[3] Nevertheless, in a late-breaking rebuttal, Ayres introduced a "front-photo review," purportedly designed to do exactly that.[4]

For this "front-photo review," Ayres had an assistant retain two graduate students, "Ted and Spencer," to conduct the review. Ex. 2, Ayres Dep. II at 132:16-133-19. Although Ayres is an economist and not a housing expert, Ayres claimed the students received "extensive training" on how to grade deficiencies from photographs. *Id*. at 133:10-15. But Ayres neither designed nor conducted that training. Instead, the training was conducted by NFHA officer Lindsey Augustine—the architect of NHFA's investigation and one of the individuals Ayres sought to insulate from claims of bias in designing and implementing that investigation. *Id*. at 48:5-11; 126:2-13; 134:9-15.

Ayres testified that although Ayres observed this training over Zoom, Ayres did not conduct it and was not qualified to grade photos personally. *Id*. at 150:19-151:15 (attempted grading by Ayres would "give a false implication" that Ayres had been trained).

On a race-blinded basis, Ted and Spencer reviewed only photographs of the front of homes—excluding other photographs produced by Plaintiffs in discovery showing different

---

[1] Certain of Ayres's reports claimed to be mere "corrections" or "revisions" of prior ones, although these "corrections" contained substantive revisions that appeared to be the result of new analyses. *See* Dkt. 325 ¶¶ 2-10 (collecting reports and declarations).
[2] Ayres submitted a "supplemental" report without leave two months after the relevant disclosure deadline, and a 52-page "declaration" in opposition to Defendants' motions for summary judgment, served months after expert discovery closed. The Court struck this final declaration as untimely. Dkt. 442 at 43.
[3] *See* Ex. 1, Expert Report of Ian Ayres ("AR 1") at 2 n.7.
[4] *See* Ex. 2, Deposition of Ian Ayres taken June 19, 2023 ("Ayres Dep. II") 179:17-20.

angles—and coded perceived deficiencies. Ex. 3, Rebuttal Expert Report of Ian Ayres ("AR 3.2") ¶ 10. Ayres then analyzed their coding and asserted that "front view photos alone reveal disparities in deficiencies . . . in white versus non-white block groups." *Id*. at 12. Ayres characterized these results as "statistically significant." *Id*. at ¶ 22. Ayres did not affirmatively disclose, however, that Ayres omitted *all* control variables from this analysis. *See id*. at ¶¶ 9-22.

Ayres testified that the purpose of the front photo review was to "validate [that] the coding of deficiencies . . . in the full dataset [*i.e.*, Plaintiffs' REO database] have indicia . . . of accuracy." Ex. 2, Ayres Dep. II at 179:17-20. But Ayres did not compare the results of their front photo review to the coding of deficiencies in Plaintiffs' dataset. *Id*. at 182:5-8.[5] Instead, Ayres simply declared that because disparities supposedly appeared in the front photo review, Plaintiffs' dataset must be valid, without any explanation or methodological support. When asked to explain how a review Ayres never compared to Plaintiffs' dataset could validate it, Ayres could not do so. *Id*. at 182:5-8.

Defendants moved to exclude this analysis, and the Court granted that motion in its March 31, 2025 omnibus order. Dkt. 442 at 50. The Court's ruling was well-reasoned and correct, and there is no basis to disturb it.

## ARGUMENT

### A. Standard of Review on a Motion for Reconsideration

The Court set forth the standard for reconsideration in *Wilson v. Baptiste,* No. 13-cv-7845, 2016 WL 3878125, at *1 (N.D. Ill. July 18, 2016) (Shah, J.):

> "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90

---

[5] Q.· ·Did you ever compare the results of your front photo review to the results in Plaintiffs' database to see if they -- the deficiencies aligned?
A.· ·No, I -- I did not.

F.3d 1264, 1270 (7th Cir. 1996). Instead, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Id*. at 1269. A "manifest error" occurs when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id.*

### B. Plaintiffs Fail to Meet the Standard for Reconsideration

Plaintiffs do not identify any manifest errors of law or fact, nor do they present any newly discovered evidence. Instead, Plaintiffs waited more than a half a year after the Court's ruling, until the eve of trial, when the Court already faces no shortage of evidentiary disputes,[6] and simply reiterate arguments they made in November 2023.

In a rear-guard stratagem, Plaintiffs now argue that their photo analysis should be admitted for the limited purpose of "confirm[ing] the quality of the inspection data." Dkt. 502 at 4. But Plaintiffs made the exact same argument in opposing Defendants' *Daubert* motion: "The Front-Photo Review is explicitly offered to rebut the unsupported assertions of bias in deficiency scoring." Dkt. 354 at 10. The Court squarely rejected this same argument, holding that "Plaintiffs' justification about the purpose of Ayres's front-photo review has little bearing on whether the statistical analysis is reliable . . . ." Dkt. 442 at 50. Plaintiffs' disagreement with that ruling is not a basis for reconsideration or "clarification."

Plaintiffs devote the balance of their motion to explaining—quite candidly—how weak their case will be if they are not allowed to rely on the rejected front-photo review. Dkt. 502 at 6. Plaintiffs go so far, in an act of unmitigated chutzpah, to assert that "Defendants cannot simultaneously use their experts as a sword to attack Plaintiffs' inspection data while stretching *Daubert* to shield themselves from Plaintiffs' parry." Dkt. 502 at 6-7.

---

[6] *See. e.g.,* Dkt. 504.

But if Plaintiffs had a valid basis to challenge Defendants' experts on these issues, they were free to assert it. Plaintiffs filed a host of *Daubert* challenges in this case, *see* Dkt. 501, yet they identified no basis to challenge Defendants' experts on this point. While it may be prejudicial to Plaintiffs that the admissible evidence in this case strongly suggests Plaintiffs engaged in results-oriented revisions of their data, there is nothing *unfairly* prejudicial about that fact. That is simply what the admissible evidence shows.

Plaintiffs cite no legal authority for the proposition that the Court should remedy weaknesses in their case by allowing them to put misleading expert testimony before the jury. And most importantly, under the governing standard, an evidentiary ruling making a party's case harder to prove is irrelevant on a motion for reconsideration. Litigation disadvantage is not newly discovered evidence, nor does it establish a manifest error in law. *See Caisse,* 90 F.3d at 1270.

If Plaintiffs wanted expert testimony to counter Defendants' evidence, the solution was to offer expert evidence that met the standard for admissibility under *Daubert*, not to ask the Court after losing under those standards to lower the bar retroactively. That the Court's evidentiary rulings have consequences is not unfair prejudice; it is how litigation works.

Plaintiffs' motion for "clarification" should therefore be denied.

### C.    The Photo Analysis Does Not Actually Have Any Relevance to the "Limited Purposed" For Which Plaintiffs Now Seek to Introduce It

In a novel attempt to circumvent the Court's decision excluding the Ayre's front-photo review, Plaintiffs lob a Hail Mary, asking the Court to admit that same study supposedly for the limited purpose of "validating" that NFHA's underlying study was free from bias. That is nonsense. Ayres' rejected front photo study is inadmissible for any purpose, let alone to "validate" Plaintiffs' non-race blinded dataset. Indeed, Ayres refused to compare the two in any way. Plaintiffs' transparent aim is instead to leave jurors with the mistaken impression that race-blind

reviewers reached the same results as NFHA's race-conscious "quality control" reviewers, even though those results do not actually prove that, either on a property-by-property basis or in the aggregate.

On the first point, Defendants demonstrated in their 2023 *Daubert* motion that Ayres's supposedly "race-blinded" reviewers identified deficiencies from single front-only photographs of homes in majority-White neighborhoods that NFHA's Augustine herself had affirmatively deleted from the field inspectors' deficiency scores for those properties. *See* Dkt. 399 at 6. Ayres then admitted in deposition to having never compared the results of the front-photo review with Plaintiffs' dataset at all. Ex. 2, Ayres Dep. II at 182:5-8. But for an expert opinion to be admissible, there must be a "rational connection between the data and the opinion." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) (quotations and alterations omitted). Ayres supplied no such connection—because Ayres tellingly never looked for one.

Ayres likewise offers no analytical link between the aggregate results of the front-photo review and Plaintiffs' dataset. Instead, Ayres reports a raw disparity in the average deficiencies from the front-photo review, declares this result reflects racial disparities, and stops there. Ex. 3, AR 3.2 ¶ 22. Ayres never explains how a raw average in one dataset supposedly demonstrates the absence of bias in another one. Plaintiffs' motion does nothing to bridge the analytical chasm. It simply reasserts the same raw average and declares that it demonstrates lack of bias.

This is exactly the type of reasoning the Supreme Court has instructed courts to exclude: where "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (citing *Turpin v. Merrell Down Pharms., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992)). Opinions connected to data "only by the ipse dixit of the expert" are inadmissible under Rule 702. *Id*.

Even worse, when even two of Ayres's own control variables are applied to Ayres's "race-blinded" data, the disparity disappears entirely. Dkt. 399 at 5. In other words, when Plaintiffs' own evidence is evaluated on a race-blinded basis under consistent standards, as Defendants have argued all along it should be, that evidence undermines, rather than supports, Plaintiffs' claim of racial disparities. Plaintiffs' insistence that this means the opposite ("up means down") presents a substantial danger of misleading the jury.

Nor can a "limiting instruction" possibly cure that danger or inoculate a jury from the mistaken impression that the front photo review resulted in a finding of racial disparities. *See Freund v. Westlake Import Motors*, No. 94-cv-2024, 1998 WL 102632, at *5 (N.D. Ill. Feb. 26, 1998) (noting "danger of unfair prejudice" from statistical results that omitted relevant controls). Nor do we have to speculate about the misleading message Plaintiffs intend to convey—it is the express conclusion of Ayres' own report: "These results from my analysis of the stratified random sample show that statistically significant disparities in deficiencies continue to exist when standardized non-subjective photos are reviewed by race-blind coders." Ex. 3, AR 3.2 ¶ 22. This is exactly the inference Plaintiffs seek to plant with the jury, notwithstanding that it lacks any methodological foundation and contradicts the controlled results.

Accordingly, even if the front-photo review were admissible under Rule 702, which it is not, it is independently inadmissible under Fed. R. Evid. 403 because any minimal probative value is substantially outweighed by the risk of unfair prejudice and jury confusion. *See Janes v. Chicago Bd. of Educ.*, No. 00-cv-6128, 2002 WL 31557619, at *8 (N.D. Ill. Nov. 18, 2002) (excluding statistical analysis that omitted relevant controls pursuant Fed. R. Evid. 403).

## CONCLUSION

Plaintiffs' motion should be denied.

Dated: December 30, 2025                    Respectfully submitted,

By: /s/ *Kenneth M. Kliebard*

Kenneth M. Kliebard
Tinos Diamantatos
Megan R. Braden
Michael W. Fakhoury
**MORGAN LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, Illinois 60606
(312) 324-1000
kenneth.kliebard@morganlewis.com
tinos.diamantatos@morganlewis.com
megan.braden@morganlewis.com
michael.fakhoury@morganlewis.com

Kurt W. Rademacher (*pro hac vice*)
Bradie R. Williams (*pro hac vice*)
**MORGAN LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, Pennsylvania 19103
(215) 963-5000
kurt.rademacher@morganlewis.com
bradie.williams@morganlewis.com

Michael S. Kraut (*pro hac vice*)
**MORGAN LEWIS & BOCKIUS LLP**
101 Park Ave.
New York, NY 10178
(212) 309-6927

*Counsel for Defendants Deutsche Bank National Trust Company, as Trustee, and Deutsche Bank Trust Company Americas, as Trustee*


By: */s/ Debra Bogo-Ernst*
Debra Bogo-Ernst
Matthew J. Thomas
Sara Kim
Brandon E. Villa
Eve Hastings
Benjamin Halom
Tara Sohns

**WILLKIE FARR & GALLAGHER LLP**
300 N. LaSalle Dr.
Chicago, IL 60654
(312) 728-9000
dernst@willkie.com
mthomas@willkie.com
skim@willkie.com
bvilla@willkie.com
ehastings@willkie.com
bhalom@willkie.com
tsohns@willkie.com

*Counsel for Defendant Ocwen Loan Servicing, LLC, n/k/a Onity Group Inc.*

By: */s/ Nathan Garroway*

Nathan Garroway (*pro hac vice*)
Lisa M. Krigsten (*pro hac vice*)
Sarah Hannah Phillips (*pro hac vice*)
Mark G. Trigg (*pro hac vice*)
Kayla Lee (*pro hac vice*)
Alizé Mitchell (*pro hac vice*)
**DENTONS US LLP**
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
 (404) 527-4000
nathan.garroway@dentons.com
lisa.krigsten@dentons.com
sarahhannah.phillips@dentons.com
mark.trigg@dentons.com
kayla.lee@dentons.com
alize.mitchell@dentons.com

*Counsel for Defendant Altisource Solutions, Inc.*

## CERTIFICATE OF SERVICE

      The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on December 30, 2025.

                                                  */s/ Kenneth M. Kliebard*