IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; HOPE FAIR HOUSING CENTER, OPEN COMMUNITIES; SOUTH SUBURBAN HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.; FAIR HOUSING CONTINUUM; LOUISIANA FAIR HOUSING ACTION CENTER; DENVER METRO FAIR HOUSING CENTER; METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL; FAIR HOUSING CENTER OF WEST MICHIGAN; THE MIAMI VALLEY FAIR HOUSING CENTER; FAIR HOUSING CENTER FOR RIGHTS & RESEARCH; FAIR HOUSING CENTER OF THE GREATER PALM BEACHES; FAIR HOUSING CENTER OF CENTRAL INDIANA; CENTRAL OHIO FAIR HOUSING ASSOCIATION; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; CONNECTICUT FAIR HOUSING CENTER; NORTH TEXAS FAIR HOUSING CENTER; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA.<br><br>    Plaintiffs,<br><br>        v.<br><br>DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE; DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE; OCWEN LOAN SERVICING, LLC; and ALTISOURCE SOLUTIONS, INC.<br><br>    Defendants. | Case No. 18 CV 839<br><br>Judge Manish S. Shah<br><br>Jury Trial Demanded |

**PROPOSED PRETRIAL ORDER**

## I. JURISDICTION

This Court has subject-matter jurisdiction under 28 U.S.C. §1331 for Plaintiffs' claims under the Fair Housing Act ("FHA"), 42 U.S.C. §3604, *et seq*. While Defendants do not dispute that claims under the Fair Housing Act ("FHA") present a federal question under 28 U.S.C. § 1331, Article III standing is a threshold requirement that must be satisfied before the Court may exercise jurisdiction. Plaintiffs maintain that the Court has confirmed their standing to seek relief at trial and will present evidence of the same. Defendants maintain that Plaintiffs must demonstrate at trial an injury in fact for each Plaintiff that is fairly traceable to Defendants' conduct.

## II. TRIAL ATTORNEYS

### a. Plaintiffs' Trial Attorneys

Jennifer K. Soule
jsoule@sbllegal.com
James G. Bradtke
jbradtke@sbllegal.com
Steven P. Schneck
sschneck@sbllegal.com
**SOULE & BRADTKE, PLLC**
155 N. Michigan Avenue, Ste. 504
Chicago, IL 60601
(312) 616-4422

Lila Miller
lmiller@relmanlaw.com
Edward Olds
tolds@relmanlaw.com
**RELMAN COLFAX PLLC**
1225 19th Street, N.W., Ste. 600
Washington, DC 20036
(202) 728-1888

Janell Byrd
jbyrd-chichester@nationalfairhousing.org
Morgan Williams
Mwilliams@nationalfairhousing.org
**NATIONAL FAIR HOUSING ALLIANCE**
1331 Pennsylvania Ave, NW Ste. 650
Washington, DC 20004
(202) 898-1661

Stephen M. Dane
sdane@fairhousinglaw.com
**DANE LAW LLC**
P.O. Box 1011
Perrysburg OH 43552
(419) 944-8611

Andrea D. Lyon
alyon@lyonkerr.com
**LYON & KERR, PLLC**
53 W. Jackson Blvd., Suite 1650
Chicago, IL 606045
(312) 955-4402

### b. Defendants' Trial Attorneys

#### 1. Attorneys for Defendants Deutsche Bank National Trust, As Trustee and Deutsche Bank Trust Company Americas, As Trustee

Kenneth M. Kliebard
kenneth.kliebard@morganlewis.com
Tinos Diamantatos
tinos.diamantatos@morganlewis.com

Kurt Rademacher
kurt.rademacher@morganlewis.com
Bradie R. Williams
bradie.williams@morganlewis.com

1

| | |
|---|---|
| Megan R. Braden<br>megan.braden@morganlewis.com<br>Michael W. Fakhoury<br>michael.fakhoury@morganlewis.com<br>**MORGAN LEWIS & BOCKIUS LLP**<br>110 N. Wacker Drive, Ste. 2800<br>Chicago, IL 60601<br>(312) 324-1000 | **MORGAN LEWIS & BOCKIUS LLP**<br>2222 Market St.<br>Philadelphia, PA 19103<br>(215) 963-4981<br><br>Michael S. Kraut<br>michael.kraut@morganlewis.com<br>**MORGAN LEWIS & BOCKIUS LLP**<br>101 Park Ave.<br>New York, NY 10178<br>(212) 309-6927 |

2. **Attorneys for Defendant Altisource Solutions, Inc**

| | |
|---|---|
| Mark G. Trigg<br>mark.trigg@dentons.com<br>Nathan L. Garroway<br>nathan.garroway@dentons.com<br>Sarah Hannah Phillips<br>sarahhannah.phillips@dentons.com<br>Sean Kirwin<br>sean.kirwin@dentons.com<br>Alizé Mitchell<br>alize.mitchell@dentons.com<br>Kayla Lee<br>kayla.lee@dentons.com<br>**DENTONS US LLP**<br>303 Peachtree Street, NE, Ste. 5300<br>Atlanta, GA 30308<br>(404) 527-4391 | Lisa M. Krigsten<br>lisa.krigsten@dentons.com<br>**DENTONS US LLP**<br>4520 Main Street, Ste. 1100<br>Kansas City, MO 64111<br>(816) 460-2554 |

3. **Attorneys for Defendant Ocwen Loan Servicing, LLC n/k/a/ Onity Group, Inc.**

Debra Bogo-Ernst
dernst@willkie.com
Matthew J. Thomas
mthomas@willkie.com
Sara Kim
skim@willkie.com
Brandon E. Villa
bvilla@willkie.com
Eve Hastings
ehastings@willkie.com
Benjamin Halom
bhalom@willkie.com
Tara Sohns
tsohns@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
300 N. LaSalle Drive
Chicago, IL 60654
(312) 728-9000

## III. CASE STATEMENT

**Plaintiffs' Proposed Case Statement:**

This case is about the treatment of homes after they have been subject to foreclosure. After the foreclosure process, title to a house is typically held in the name of the bank which foreclosed on the property. These houses then become known as Real Estate Owned properties or "REOs."

Plaintiffs are twenty non-profit fair housing organizations who allege that the Defendants' policies and practices related to REO maintenance and marketing had the purpose or effect of discriminating based on race. Specifically, Plaintiffs allege that Defendants' treatment of REO properties in communities of color was worse than Defendants' treatment of REO properties in predominantly white neighborhoods. Plaintiffs contend that this differential treatment violated the Fair Housing Act and harmed their missions, programs, activities, and services.

The REO houses at issue in this case were owned in trust by Deutsche Bank National Trust Company or Deutsche Bank Trust Company Americas—referred to as the "Deutsche Bank Defendants." The two other Defendants, Ocwen and Altisource—known as the "Servicer Defendants"—were responsible for maintaining, conserving, protecting and marketing the properties until they could be sold.

Together, Plaintiffs inspected hundreds of Defendants' REO properties across thirty metropolitan areas. During their on-site inspections, Plaintiffs collected information on numerous criteria that relate to the routine maintenance and marketing of the REO properties, such as the presence of trash, accumulated mail, overgrown grass, unsecured/broken doors and locks and damaged windows. Plaintiffs recorded their observations and took pictures of each inspected REO and of the neighboring properties. The results of this investigation were stored in a centralized database. Plaintiffs claim that their inspection findings support their allegations of race discrimination. Plaintiffs will also support their discrimination claims with evidence and expert testimony regarding their inspection methodology, the existence of statistical disparities, and Defendants' REO policies and practices.

The Defendants deny that they engaged in any discriminatory conduct, and Defendants will present their own evidence and expert testimony to rebut Plaintiffs' allegations.

**Defendants' Proposed Case Statement:**

This case is about the treatment of properties after foreclosure. Once a property has been foreclosed on, title to the property is typically held in the name of the foreclosing bank; these then become known as Real Estate Owned properties or "REOs."

3

Plaintiffs, twenty nonprofit fair housing organizations, investigated hundreds of foreclosed REO properties in both white and minority neighborhoods across thirty metropolitan areas. During their single visit on-site inspections, Plaintiffs recorded their observations on an evaluation form and took pictures. Certain information from the inspection forms was stored in a centralized electronic database, after which many of the handwritten evaluation forms were destroyed, discarded or lost by Plaintiffs. The Court has previously ruled that Plaintiffs' handling of these forms was improper spoliation of evidence, and each side will be allowed to present evidence regarding the missing forms.

Some of the REO properties that Plaintiffs inspected were owned by Defendants Deutsche Bank National Trust Company or Deutsche Bank Trust Company Americas, as trustees (the "Deutsche Bank Trustees"). Defendants Ocwen and Altisource (the "Servicer Defendants"), were responsible for providing services related to maintaining these properties until they could be sold. It is those properties held by the Deutsche Bank Trustees and serviced by Ocwen and Altisource that are at issue in this case.

Plaintiffs allege that the Defendants' policies and practices related to REO maintenance and preservation had the purpose and effect of discriminating based on race in violation of the Fair Housing Act.

Defendants dispute Plaintiffs' claims, challenge the standing of each Plaintiff to bring this lawsuit, as each Plaintiff must prove that they suffered an injury in fact fairly traceable to Defendants' actions, and dispute Plaintiffs' request for damages. As to the Deutsche Bank Trustees, the Court has previously ruled that they can only be held "vicariously liable," meaning they are only liable to the extent that Ocwen or Altisource are found to have violated the Fair Housing Act.

## IV. TRIAL LENGTH

The Parties anticipate that trial of this case will be 4 weeks long.

## V. STIPULATIONS AND UNCONTESTED FACTS

The Parties' agreed-upon Uncontested Facts are attached hereto as Exhibit 1. With respect to stipulations, the Parties will abide by the procedures outlined by the Court at the status conferences on November 4, 2025, November 13, 2025, and December 16, 2025. The Parties have also agreed as follows:

1. The Parties will identify their anticipated witnesses and exhibits by 6:00 p.m. Central two days prior (e.g., Plaintiffs will identify witnesses and exhibits for Wednesday by 6:00 p.m. Central on Monday). For out-of-town witnesses, the Parties will identify their anticipated witnesses five days prior (e.g., Plaintiffs would notify Defendants on February 5 of an out-of-town witness for February 10).

2. The crossing Party will identify its anticipated exhibits by 6:00 p.m. Central the day prior (e.g., Defendants will identify exhibits by 6:00 p.m. on Tuesday for any witnesses identified on Monday to be called on Wednesday). Nothing in this stipulation shall preclude a party from using rebuttal exhibits not disclosed within this window.

4

3. Given the extent of overlap between the Parties' Exhibit Lists and to minimize needless duplication for the jury, if an exhibit appears on both sides' Exhibit Lists as an identical document, based on Bates stamping, the first-introduced copy will be used by all Parties (e.g., if Plaintiffs introduce an Altisource work order that Defendants later use, Defendants will use the same exhibit/copy introduced by Plaintiffs).

In addition to the above stipulations, Plaintiffs have two additional proposals to streamline trial proceedings for the Court's consideration. *First*, Plaintiffs suggest that the Parties agree to a universe of property-level data sources, produced in discovery, from which the Parties could draw single-property compilation exhibits as long as they notify the other side two days in advance (if offering the single-property compilations for direct examination one of their witnesses) or one day in advance (if offering the single-property compilations for cross examination of a witness). More specifically, Plaintiffs suggest:

1. The Parties will agree to a specific universe of admitted, property-level data from which they may draw single-property compilation exhibits.

2. When the party calling a witness alerts the other side to the witness and related exhibits at 6pm Central two days in advance, the calling party will also identify any properties for which it would use the agreed-upon data universe to draw single-property compilation exhibits. (E.g., Plaintiffs would share that for Lindsay Augustine, in addition to certain numbered exhibits, they intend to use the agreed-upon universe of property-level data to make single-property compilation exhibits for 1234 Main Street and 5678 Elm Street.)

3. The crossing party will likewise identify any properties for which it intends to make single-property exhibits from the agreed-upon universe by 6pm Central one day in advance. (E.g., Defendants would alert Plaintiffs to their numbered exhibits for cross examination of Ms. Augustine and share that they also intend to use the agreed-upon universe of property-level data to make single-property compilation exhibits for 9876 Poplar Street and 5432 Lake Avenue.)

4. The above would apply only to single-property exhibits drawn from the agreed-upon universe of property-level data. The Parties' other contemplated exhibits will be identified using exhibit numbers and provided on the stipulated timelines; demonstratives will be exchanged in accordance with the stipulated timelines; and Plaintiffs have otherwise proposed that Rule 1006 summary exhibits be exchanged on January 26.[1]

Plaintiffs believe this framework will help the Parties and the Court navigate the voluminous data-based evidence at issue in this case. Plaintiffs additionally believe this plan would enable the parties to effectively and efficiently make use of the property-level data at trial while limiting the risk of unfair surprise. Plaintiffs initially proposed a version of this stipulation on December 5, 2025 and the Parties conferred about property-level data on December 12, 2025

---

[1] Defendants are analyzing their contemplated Rule 1006 exhibits to determine whether January 26 is feasible and expect to be able to respond in the next two business days with their agreement or another proposed date for Plaintiffs' consideration.

and January 12, 2026. Defendants have indicated that they are willing to confer again on this topic before the Final Pre-Trial Conference.

Given the implications for trial preparation, Plaintiffs would respectfully request the Court's input on this proposal, and Plaintiffs are appreciative for the Court's consideration.

*Second*, on January 11, 2026, Plaintiffs offered the following stipulation to streamline the evidence to be provided to the jury during deliberations:

> Although the Court may pre-admit certain exhibits for use at trial, given the volume of potential exhibits, not all pre-admitted exhibits will automatically be provided to the jury during deliberations. Instead, the only exhibits that will be provided to the jury during deliberations are:
> - Exhibits used by any Party at trial, including during closing statements;
> - Pre-admitted exhibits specifically identified for deliberations by a Party prior to the start of deliberations; and
> - Other exhibits as specifically agreed to by the Parties and/or permitted by the Court prior to the start deliberations.

This proposal is designed to ensure that the jury is not burdened with hundreds, if not thousands, of exhibits that were not used by a Party at trial or identified for deliberations by the Parties and/or the Court. The jury will already need to wade through significant evidence to evaluate the claims at issue in this case, and its evaluation will not be aided by exhibits that neither side deemed necessary to use or otherwise select for the jury's consideration.

Plaintiffs offer this proposal at this stage to make clear that, even if they have not interposed a specific objection to one of Defendants' exhibits and are agreeable to its preadmittance, they do not necessarily agree that the exhibit should automatically be provided to the jury for deliberations. Defendants believe that this stipulation is premature at this time, but Defendants are willing to work with Plaintiffs on a proposal for the Court's consideration in advance of jury deliberations. Ultimately, Defendants will defer to the Court on what exhibits are appropriate to be submitted to the jury.

## VI. WITNESS LISTS AND NAMES THAT WILL BE MENTIONED

Plaintiffs' Witness List and Names that Will Be Mentioned is attached hereto as Exhibit 2. Defendants' Witness List and Names that Will Be Mentioned is attached hereto as Exhibit 3.

## VII. EXHIBIT LISTS

Plaintiffs' Exhibit List, including Defendants' objections and Plaintiffs' responsive theory of admissibility for objected-to exhibits, is attached hereto as Exhibit 4. Defendants' Exhibit List including Plaintiffs' Objections and Defendants' responsive theory of admissibility for objected-to exhibits, is attached hereto as Exhibit 5.

Given the volume of exhibits and in an effort to facilitate review, the Parties agree to file Targeted Exhibit Lists five calendar days before the Pre-Trial Conference. The Targeted Exhibit Lists will identify priority exhibit disputes for the Court's consideration.

## VIII. DEPOSITION DESIGNATIONS

Plaintiffs' Deposition Designations, including Defendants' objections and cross designations, are attached hereto as Exhibit 6. Defendants' Deposition Designations, including Plaintiffs' objections and cross designations, are attached hereto as Exhibit 7. A joint set of designations for fact witnesses affirmatively designated by both sides, including objections and cross designations, is attached hereto as Exhibit 8. Transcripts will be provided for the Court's review upon the Court's instruction in advance of the deposition presentation at trial.

## IX. REQUESTED RELIEF

Plaintiffs seek several categories of relief:

1. **Compensatory Damages**: Plaintiffs will ask the jury to award compensatory damages to redress the organizational injuries caused by Defendants' conduct, including damages for the impairment to Plaintiffs' activities (at times referred to as "frustration-of-mission damages"[2]) and the consequent drain on Plaintiffs' resources (at times referred to as "diversion-of-resources damages"[3]). Plaintiffs intend to ask the jury to award the amount it deems appropriate for compensatory damages and will provide specific dollar figures for diversion-of-resources damages as set forth below.

2. **Punitive Damages**: Plaintiff will ask the jury to award the amount it deems appropriate to punish Defendants for their intentional conduct.

3. **Prejudgment Interest**: Plaintiff will submit a calculation of prejudgment interest at the appropriate time.

4. **Attorneys' Fees and Costs**: Plaintiff will submit a fee petition at the appropriate time.

Diversion Damages: The maximum dollar amount that each Plaintiff may seek for diversion-of-resources damages is set forth below, broken down by the value of time expended and out-of-pocket costs. The following figures are derived from information Plaintiffs produced in discovery and reflected in their proposed Exhibits.

| Plaintiff | Value of Diversion | Additional Out-of-Pocket Expenses |
|---|---|---|
| Miami Valley Fair Housing Center | $54,348.96 | $0.00 |

---

[2] *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394-96 (2024); *see also* ECF 442 at 17 (describing harm where a defendant's conduct "impaired" an organization's "ability to provide services").

[3] *Havens*, 455 U.S. at 379.

7

| | | |
|---|---|---|
| Central Ohio Fair Housing Association | $2,963.40 | $0.00 |
| Fair Housing Center for Rights & Research (f/k/a Housing Research & Advocacy Center) | $45,621.87 | $1,057.21 |
| Toledo Fair Housing Center (f/k/a Fair Housing Opportunities of Northwest Ohio) | $48,617.50 | $805.93 |
| Fair Housing Center of the Greater Palm Beaches | $48,240.00 | $0.00 |
| Denver Metro Fair Housing Center | $62,002.35 | $0.00 |
| North Texas Fair Housing Center | $39,724.40 | $0.00 |
| Fair Housing Advocates of Northern California | $102,460.91 | $1,517.50 |
| Open Communities | $9,605.00 | $0.00 |
| Metro Milwaukee Fair Housing Center | $45,972.59 | $0.00 |
| South Suburban Housing Center | $63,255.75 | $213.21 |
| HOPE Fair Housing Center, Wheaton, IL | $286,900.50 | $195.54 |
| Fair Housing Center Western Michigan | $65,056.45 | $0.00 |
| Fair Housing Center of Central Indiana | $25,920.00 | $297.52 |
| National Fair Housing Alliance | $1,782,250.60 | $91,854.90 |
| Housing Opportunities Made Equal of Virginia | $130,109.25 | $0.00 |
| Louisiana Fair Housing Action Center (f/k/a Greater New Orleans Fair Housing Action Center) | $35,658.41 | $0.00 |
| Housing Opportunities for Excellence, Inc | $118,150.00 | $0.00 |
| Connecticut Fair Housing Center | $18,459.06 | $0.00 |
| Fair Housing Continuum | $42,121.04 | $315.99 |

**Defendants' Response**: Plaintiffs are not entitled to any of the damages they seek. First, Plaintiffs each need to prove standing, which they cannot do. Second, for the reasons set forth in Defendants' Motions in Limine Nos. 8-9, 16, and 20, among other things, Plaintiffs' request for "frustration-of-mission" damages — while declining to identify any non-speculative evidentiary basis or methodology — is legally insufficient and unduly prejudicial, and the Seventh Circuit does not permit awards untethered to competent proof of actual injury. *See City of Chicago v. Matchmaker Real Est. Sales Ctr.*, 982 F.2d 1086, 1099 (7th Cir. 1992). Deferring quantification to the jury on this record invites impermissible speculation and the risk of anchoring to factors unrelated to Plaintiffs' proven harms. Third, Plaintiffs are not entitled to diversion of resource damages unless they first prove frustration of mission damages. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394–96 ("But an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action.") Even if Plaintiffs prove frustration of mission damages, Plaintiffs' "diversion-of-resources" theory fails absent proof of impairment to core services and a consequent drain on resources tied to the limited, property-specific sample the

8

Court has allowed, and the Court has already barred recovery for community harms, precluded expenditures, and similar untethered categories. *See, e.g.*, Clarification Mem. Op. at 9; *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.* ("NFHA III"), 2025 WL 975967, at *7-9 (N.D. Ill. Mar. 31, 2025). Fourth, Plaintiffs are not entitled to punitive damages. See *United States v. Balistrieri*, 981 F.2d 916, 936 (7th Cir. 1992) (punitive damages require at least reckless or callous disregard). Finally, without any damages, Plaintiffs also cannot recover attorneys' fees.

## X. MOTIONS IN LIMINE

Plaintiffs have filed the following Motions in Limine at ECF Nos. 503 and 513:

1. Motion for an Order that Records and Photographs in the REO Database Are Self-Authenticated and Admissible Under Rules 902(11), 902(13), 902(14), and 802(6).
2. Motion to Bar Defendants' Counsel or Witnesses from Making Unsupported, Untimely, and Misleading Claims Regarding the Agreed Upon Dataset of Properties Serviced by Ocwen and Altisource and Analyzed by Plaintiffs' Statistical Expert.
3. Motion to Preclude Evidence or Argument Referring to Purported Distinctions Between the Deutsche Bank Defendant Entities as Bearing on Defendants' Liability.
4. Motion to Preclude Defendants Ocwen and Altisource from Offering Evidence of Business Justification.
5. Motion to Preclude Defendants from Implying Baid Faith or Using Inflammatory Terms Regarding Plaintiffs' Document Retention.
6. Motion for an Order that the Plaintiffs' Receipt of HUD Funding Cannot Be Used to Offset Any Award of Damages.
7. Motion for an Order Permitting the use of Summaries, Charts, or Calculations Pursuant to Federal Rule of Evidence 1006 or, in the Alternative, Federal Ruel of Evidence 107.
8. Motion to Exclude Evidence of or Reference to the Outcomes of Plaintiffs' Administrative Complaint Against U.S. Bank and *Bank of America* Proceedings
9. Motion to Preclude Deficiency Quizzes
10. Motion to Exclude Lay Evidence of Industry Standards
11. Motion to Exclude Undisclosed Documents
12. Motion to Exclude Undisclosed Witnesses
13. Motion to Exclude References to Damages Expert
14. Motion to Exclude Evidence of Pre-Litigation Regression Analysis
15. Motion to Admit Previously Admitted Facts

In addition to the above, Plaintiffs filed a Motion to Renew their Consolidated Motion to Preclude Testimony from Four Defense Experts, ECF 501, and a Motion for Clarification of March 31 Order or, in the Alternative, Motion for Limited Admission of Race-Blind Front-Photo Review by Dr. Ian Ayres, ECF 502.

Defendants have filed the following Motions in Limine at ECF Nos. 504 and 514:

1. Exclude Evidence Related to Defendants' Sales and Marketing Practices.
2. To Exclude Evidence Not Tied to Specific Properties at Issue and Limit the Scope of Statistical Inferences.
3. To Confirm *Daubert* Limitations on Plaintiff's Experts.
4. To Exclude REO Database Records.
5. To Preclude Plaintiffs from Presenting Evidence Related to Non-Party Affiliates of the Deutsche Bank Trustees
6. To Exclude Any Evidence Regarding Policies That Did Not Apply to Properties at Issue.
7. To Exclude Certain Investigation Evidence That Cannot Be Authenticated.
8. Motion to Exclude Evidence of Purported Damages Already Ruled Improper.
9. Exclude Testimony of Local Frustration of Mission Which Plaintiffs Have Disclaimed.
10. To Request an Adverse Inference Regarding Spoliation and Exclude Testimony or Argument on "Drafts."
11. To Exclude Irrelevant and Inflammatory Evidence.
12. Exclude Evidence Related to the Foreclosure Crisis and Foreclosure Issues.
13. To Exclude Reference to Altisource's Comment Policy Without Foundation.
14. Limiting Scope of REO Properties at Issue and Exclude Evidence Related to Properties Outside the Proper Scope.
15. Exclude Testimony of Third-Party Witnesses.
16. Exclude Damages Evidence and Computations Plaintiffs Refused to Disclose in Fact Discovery.
17. To Exclude Irrelevant and Inflammatory Evidence.
18. Exclude Unsupported Testimony Regarding Defendants' "Notice" of REO Maintenance Issues.
19. Clarify "Trustee Defendants," Limit Scope of Vicarious-Liability, and Require Specificity as to Alleged Policies.
20. To Exclude Evidence Relevant Only to Dismissed or Unavailable Damage Categories.

## XI. JURY SELECTION QUESTIONS

The Parties' proposed Voir Dire is attached hereto as Exhibit 9, including agreed-upon questions, Plaintiffs' proposed questions, and Defendants' Proposed questions.

## XII. PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS

The Parties agree to the following Seventh Circuit Pattern Jury Instructions: 1.02, 1.05. 1.06, 1.07, 1.08, 1.09, 1.10, 1.11, 1.12, 1.13, 1.14, 1.16, 1.17, 1.18, 1.21, 1.22, 1.24, 1.27, 1.31, 1.33, 2.01, 2.04, 2.05, 2.06, 2.08, 2.09, 2.14. This list and a set of agreed-upon modified Seventh Circuit Pattern Jury Instructions is attached hereto as Exhibit 10.

Plaintiffs' Proposed Jury Instructions and Defendants' Objections thereto are attached hereto as Exhibit 11.

Defendants' Proposed Jury Instructions and Plaintiffs' Objections thereto are attached hereto as Exhibit 12.

Plaintiffs' Proposed Verdict Form and Defendants' Objections thereto is attached hereto as Exhibit 13.

Defendants' Proposed Verdict Form and Plaintiffs' Objections thereto is attached hereto as Exhibit 14.

Respectfully Submitted,

| | |
|---|---|
| */s/ Jennifer K. Soule* | */s/ Debra Bogo-Ernst* |
| Jennifer K. Soule | Debra Bogo-Ernst |
| James G. Bradtke | Matthew J. Thomas |
| Steven P. Schneck | Sara Kim |
| **Soule & Bradtke, PLLC** | Brandon E. Villa |
| 155 N. Michigan Avenue, Ste. 504 | Eve Hastings |
| Chicago, IL 60601 | Benjamin Halom |
| *Counsel for Plaintiffs* | Tara Sohns |
| | **Willkie Farr & Gallagher LLP** |
| Lila Miller | 300 N. LaSalle Drive |
| Edward Olds | Chicago, IL 60654 |
| Yiyang Wu | (312) 728-9000 |
| Jennifer Klar | *Counsel for Defendant Ocwen Loan* |
| **Relman Colfax PLLC** | *Servicing, LLC n/k/a/ Onity Group, Inc.* |
| 1225 19th Street, N.W., Ste. 600 | |
| Washington, DC 20036 | |
| *Counsel for Plaintiffs* | |
| | |
| Stephen M. Dane | Mark G. Trigg |
| **Dane Law LLC** | Nathan L. Garroway |
| P.O. Box 1011 | Sarah Hannah Phillips |
| Perrysburg OH 43552 | Sean Kirwin |
| *Counsel for Plaintiffs* | Alizé Mitchell |
| | Kayla Lee |
| Janell M. Byrd | **Dentons US LLP** |
| Morgan Williams | 303 Peachtree Street, NE, Ste. 5300 |
| **National Fair Housing Alliance** | Atlanta, GA 30308 |
| 1331 Pennsylvania Ave, NW, Ste. 650 | *Counsel for Defendant Altisource* |
| Washington, DC 20004 | *Solutions, Inc.* |
| *Counsel for Plaintiffs* | |
| | |
| Andrea D. Lyon | Lisa M. Krigsten |
| **LYON & KERR, PLLC** | **Dentons US LLP** |
| 53 W. Jackson Blvd. | 4520 Main Street, Ste. 1100 |
| Suite 1650 Chicago, IL 606045 | Kansas City, MO 64111 |
| *Counsel for Plaintiffs* | *Counsel for Defendant Altisource* |
| | *Solutions, Inc.* |

Dated: January 14, 2026

Kurt Rademacher
Bradie R. Williams
**Morgan Lewis & Bockius LLP**
2222 Market St.
Philadelphia, PA 19103
 *Counsel for Defendants Deutsche Bank National Trust, As Trustee and Deutsche Bank Trust Company Americas, As Trustee*

Michael S. Kraut
**Morgan Lewis & Bockius LLP**
101 Park Ave.
New York, NY 10178
*Counsel for Defendants Deutsche Bank National Trust, As Trustee and Deutsche Bank Trust Company Americas, As Trustee*

Kenneth M. Kliebard
Tinos Diamantatos
Megan R. Braden
Michael W. Fakhoury
**MORGAN LEWIS & BOCKIUS LLP**
110 N. Wacker Drive, Ste. 2800
Chicago, IL 60601
*Counsel for Defendants Deutsche Bank National Trust, As Trustee and Deutsche Bank Trust Company Americas, As Trustee*