UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, et al., | |
| Plaintiffs, | No. 18 CV 839 |
| v. | Judge Manish S. Shah |
| DEUTSCHE BANK NATIONAL TRUST, AS TRUSTEE, et al., | |
| Defendants. | |

## ORDER

Plaintiffs' motion for clarification or limited admission of Ayres's testimony [502] is denied. Plaintiffs' renewed motion to exclude defense experts [501] is denied. Plaintiffs' first-round motions in limine [503] are granted in part, denied in part. Defendants' first-round motions in limine [504] are granted in part, denied in part.

## STATEMENT

Plaintiffs' motion, [502], is denied. Ayres's front-photo review is statistically unreliable, and remains unreliable as a means of rehabilitating the underlying data. A limiting instruction does not solve the problem, because plaintiffs' proposed rehabilitative inference depends on the front-photo review supporting an inference of disparate impact, which it cannot support.

Plaintiffs' renewed motion to preclude testimony from four defense experts, [501], is denied. Skanderson's matched pair analysis is not offered to make a claim about representativeness, so that criticism is misplaced, and Skanderson is otherwise qualified and used a reliable methodology to analyze Ayres's model. Bryar need not be a statistician or sociologist to provide opinions about the mortgage industry, and his experience and qualifications suffice to allow him to explain how the industry (including as it relates to property maintenance) works. The weight of his testimony as compared to plaintiffs' experts' analyses is a matter for a jury. Stedman has an adequate background in fair lending, which subsumes fair housing, and with statisticians to provide relevant testimony here. And Linné has sufficient familiarity with statistics to opine on Ayres's analysis, within the context of Linné's valuation expertise.

*Plaintiffs' First-Round Motions In Limine [503]*

Plaintiffs' first motion in limine is granted and the REO database (and the records and photographs contained therein) are admitted. Plaintiffs' submissions cover the requisite predicates for authenticity under Federal Rules of Evidence 902(11), 902(13), and 902(14). The supporting testimony also meets the flexible contemporaneity and regularity requirements to the business records exception of Rule 803(6). Evidence admitted for the truth of the matters asserted does not mean the jury must credit that evidence. A jury could discount the database entirely or in part, based on the various critiques offered by defendants. But that goes to its weight, not its admissibility. Although I conclude the database is self-authenticating and admissible, I expect plaintiffs to call one or more witnesses with a foundation to explain the database so that the jury has a full opportunity to evaluate its credibility.

Plaintiffs' second motion in limine is denied. Defendants are not prohibited from pointing out the timing of titling, ownership, or servicing. The factual predicate for plaintiffs' inferences of discrimination is disputed, and defendants may chip away at the predicate by, among other things, pointing out that defendants did not own or service certain properties at the time of plaintiffs' inspections. That method of impeachment does not render admissible untimely or improper expert testimony from Ayres or any defense expert, and does not extend the back-and-forth between the parties over the dataset.

Plaintiffs' third motion in limine is denied. The evidence of common policies and practices does not eliminate the distinction between the two Deutsche Bank entities. Nor does it eliminate plaintiffs' burden to prove each entity's vicarious liability for Ocwen's conduct.

Plaintiffs' fourth motion in limine is denied. Evidence of business justification is not precluded. Defendants provided answers to plaintiffs' contention interrogatories, and evidence about defendants' business justification was developed through deposition testimony. Defendants' responses to the interrogatories may have been unsatisfactory to plaintiffs, but that is not a basis to exclude evidence that was disclosed in discovery. Defendants may attempt to undermine plaintiffs' proof of discrimination by providing an alternate explanation for defendants' intent.

Plaintiffs' fifth motion in limine is denied. Just because Judge Leinenweber did not find conclusive evidence of bad faith earlier in this litigation does not preclude

the defense from criticizing plaintiffs' investigation methods (to the extent those methods were the foundation for evidence admitted at trial), including pursuing bad-faith spoliation arguments. Rule 403 excludes unfairly prejudicial or inflammatory evidence, but defendants' criticisms fall far short of Rule 403's prohibition. Terms like "research misconduct" or "data doctoring" in the context of a discussion of research standards are not inflammatory, and the jury will have an appropriate context to assess defendants' criticisms. Even if defendants cannot establish bad faith and an adverse-inference instruction is not given, the jury may reasonably consider the defense critique when weighing the evidence.

Plaintiffs' sixth motion in limine is deferred until trial. "The purpose of the collateral source rule is not to prevent the plaintiff from being overcompensated, but rather to prevent the tortfeasor from paying twice." *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986). As it relates to plaintiffs' damages, if a HUD grant funded plaintiffs' expenditures such that those expenditures were not a diversion of plaintiffs' resources, it may be that plaintiffs were not damaged by having to spend that money. To the extent HUD funding was simply a source for plaintiffs' general efforts, the funding may be a collateral source for which defendants are not entitled to any offset. The motion in limine is not specific enough to resolve before trial.

Plaintiffs' seventh motion in limine is denied as overbroad and insufficiently specific for a motion in limine. The court will, of course, apply Federal Rules of Evidence 1006 and 107, but only when presented with specific exhibits and the requisite foundation for admissibility can be assessed.

*Defendants' First-Round Motions in Limine [504]*

Defendants' first motion in limine is granted in part. The only claim remaining in this case is discrimination in the provision of property maintenance services under 42 U.S.C. § 3604(b). Evidence suggesting discrimination in marketing and sales practices would unnecessarily prolong the trial and confuse the jury. I granted judgment as a matter of law in favor of defendants on any claim based on discriminatory marketing and sales, based on lack of causation. If plaintiffs were to suggest such a claim in front of the jury, I likely would have to instruct the jury that defendants were found not liable on such a claim and it is not an issue for them to consider. The REO life cycle is relevant and evidence about how property maintenance is connected to property value and marketability is not excluded. But

3

evidence suggesting that marketing and sales practices were discriminatory is excluded.

Defendants' second motion in limine is denied, and raises issues more suitable for a motion for a directed verdict at the close of plaintiffs' case in chief. It may be that a local organization cannot prove discrimination within its region, and without proving liability, a plaintiff cannot recover any damages. But it may be theoretically possible for a local organization to prove discrimination in other geographic regions that affected the local organization. Evidence related to properties that were not within plaintiffs' statistical study is not categorically irrelevant. Such properties may be examples of certain plaintiffs' missions in action and relevant to an organization's damages even if not a basis for a finding of liability.

Defendants' third motion in limine is denied as premature. The court will enforce its *Daubert* rulings at trial, but whether plaintiffs will attempt to evade those rulings can't be gleaned from its preliminary exhibit lists.

Defendants' fourth motion in limine is denied. The REO database records are admitted for the reasons plaintiffs' first motion in limine was granted. Defendants may attack the credibility of the database at trial.

Defendants' fifth motion in limine is granted in part. Evidence related to Deutsche Bank non-party affiliates is excluded as irrelevant, except to the extent the servicer defendants were directly involved in communications or meetings that bear on the servicer's property-maintenance work. An instruction limiting the evidence of the Milwaukee grants and loan program for damages only and prohibiting the jury from considering it as evidence of liability will adequately protect defendants from improper inferences. Evidence of securitization, marketing, and sale of residential mortgage-backed securities and related enforcement proceedings and litigation is irrelevant, a waste of the jury's time, and excluded.

Defendants' sixth motion in limine is granted. Altisource's high-value asset policy did not apply to REO properties and therefore does not shed light on whether Altisource discriminated because of race in the maintenance of REO properties. Nor is the policy probative of the relevant discriminatory intent. The policy came on the heels of administrative complaints and may suggest that Altisource doubled-down on a belief that higher-valued properties should be maintained better than lower-valued properties. But that does not support an inference that maintenance of REO

properties was intentionally based on race. Under Rule 403, a minitrial over the context of the high-value asset policy would waste the jury's time.

Defendants' seventh motion in limine is denied. The time records and diversion logs are admissible for reasons similar to the REO database. The diversion logs are offered under Federal Rule of Evidence 1006 (and thus are not subject to the hearsay rules). The underlying records summarized by the logs are admissible under Federal Rule of Evidence 803(6), although, as with the REO database, defendants may challenge the credibility of the summaries and underlying records.

Defendants' eighth motion in limine is denied. Punitive damages will not be bifurcated from liability. Evidence of intent, for example, is probative of both liability and the reprehensibility of conduct that bears on punitive damages. Bifurcation will not result in any efficiency, and is more likely to lead to disputes over whether evidence falls solely into one bucket or the other. Plaintiffs are barred from recovering damages based on impairment to services promoting housing choice and integration, programs for equal investment in the housing industry, and services promoting home ownership and neighborhood stability. [460] at 9. But similar evidence may be probative of frustration-of-mission damages or the cost of counteracting the harms defendants caused to plaintiffs' organizations. Non-expert testimony can establish plaintiffs' missions and expenses. Plaintiffs continue to bear the burden to prove proximate causation, including for frustration-of-mission damages, but as with defendants' second motion in limine, the sufficiency of plaintiffs' proof must await a motion for directed verdict.

Similarly, defendants' ninth motion in limine is denied. Local plaintiffs can recover for a local frustration of mission, so long as that local plaintiff proves harm caused by defendants' REO practices. The failure to prove harm within a local region may warrant a directed verdict against a plaintiff, but the sufficiency of plaintiffs' evidence and whether defendants' out-of-region conduct nevertheless damaged a local plaintiff can only be assessed at the close of their case.

Defendants' tenth motion in limine is denied to the extent it requests a mandatory adverse inference instruction on the current record, and to the extent it requests a permissive instruction in the absence of bad faith. Bad faith is a prerequisite to an adverse inference instruction. *See Bracey v. Grondin*, 712 F.3d 1012, 1018–19 (7th Cir. 2013). Defendants may offer evidence of bad faith spoliation, and plaintiffs are not precluded from arguing that the missing records or data were

mere "drafts" revised or deleted in good faith. Ultimately, Seventh Circuit Pattern Civil Jury Instruction 1.20 may be appropriate in this case, and for their planning purposes, the parties should consider that pattern instruction as the available option.

Defendants' eleventh motion in limine is granted in part, denied in part. Settlements in unrelated matters are unfairly prejudicial and excluded under Rule 403. Similarly, enforcement actions unrelated to the current case are irrelevant and unfairly prejudicial. Such evidence is not needed to help establish the relationship between the parties. Plaintiffs can testify about their missions to the extent it is probative of damages. Offshore personnel as evidence to explain why Altisource's model may be susceptible to poor management is not probative of the alleged discrimination and is excluded. Plaintiffs agree that they have no evidence that defendants' employees visited racially insensitive websites; references to those websites are irrelevant and even if some sliver of relevance exists from the potential that the websites were known to defendants, the unfair prejudice from painting with a broad brush substantially outweighs the probative value. Risk Assessment Reports unrelated to Ocwen's property maintenance or intent are irrelevant and should be redacted. Deutsche Bank Trustees' knowledge of REO impact can be relevant to vicarious liability and Deutsche Bank Trustees' knowledge and ratification of servicer conduct. Evidence of such knowledge is not excluded. Failure to terminate or evaluate performance similarly can be relevant to vicarious liability, scope of agency, and the power to control agent conduct. Eviction evidence, based on plaintiffs' proffer that it will be limited to background REO lifecycle evidence, is not excluded. Evidence of historical overlap between Ocwen and Altisource is permissible as relevant background and not excluded. Finally, defendants' challenge to photographs of negligent maintenance without control variables is underdeveloped and denied.

Defendants' twelfth motion in limine is denied. I agree with plaintiffs that evidence of the foreclosure crisis will be necessary to explain REO properties. It is also possible that evidence that defendants subjectively believed that the foreclosure crisis disproportionately affected certain racial groups and that defendants' REO maintenance practices were tied to a belief about those properties' associated racial demographics would be probative of discriminatory intent. Broad generalizations about racial disparity in foreclosures writ large across the entire economy is only weakly probative, however, and may threaten to consume unnecessary or wasteful time under Rule 403. Plaintiffs must focus on REO property maintenance.

Defendants' thirteenth motion in limine is denied. The existence of Altisource's Inappropriate Comments policy is not being offered as evidence that racially derogatory comments actually existed but rather as a point of comparison to Altisource's other conduct and thus as evidence to support an inference of intent to discriminate. A limiting instruction is unnecessary.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: January 20, 2026